# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | <u>Oral Argument Requested</u> |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## MOTION OF I. LEWIS LIBBY TO COMPEL DISCOVERY OF INFORMATION REGARDING NEWS REPORTERS AND ORGANIZATIONS

Theodore V. Wells, Jr.
James L. Brochin
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3089

Joseph A. Tate
Dechert LLP
2929 Arch Street
Cira Centre
Philadelphia, PA  19104

William H. Jeffress, Jr.
Alex Bourelly
Baker Botts LLP
1299 Pennsylvania Ave., NW
Washington, DC  20004
(202) 639-7751

John D. Cline
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax:  (415) 875-5700

January 26, 2006

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................. iii

BACKGROUND .......................................................................................................... 1

    A.    The Indictment Alleges That Mr. Libby Lied About
             Conversations with Three Reporters.......................................................... 1

    B.    Mr. Libby's Requests for Production of Relevant Materials
             Pertaining to News Reporters and Organizations Have Been Denied ........ 2

    C.    The Information Sought by This Motion .................................................. 4

ARGUMENT ............................................................................................................... 6

    A.    Courts In This Circuit Interpret Rule 16 Broadly ..................................... 6

    B.    The Discovery Mr. Libby Has Requested is Material to
             the Preparation of His Defense ................................................................ 8

            1.    The Indictment Places News Reporters' Knowledge
                   About Ms. Wilson's Employment Status Squarely at Issue ........... 8

                   a.    Allegations Concerning Tim Russert ...................................... 9

                   b.    Allegations Concerning Matthew Cooper
                       and Judith Miller ............................................................. 11

            2.    Information About News Reporters' Sources Is
                   Material to the Preparation of Mr. Libby's Defense .................... 12

            3.    The Defense Needs the Requested Discovery To Investigate
                   Whether There Was a Plan to "Punish" Mr. Wilson by Leaking
                   Information about Ms. Wilson to the Press ............................... 14

             4.    The Requested Discovery is Material to the Defense's
                   Investigation of Whether Ms. Wilson's Affiliation With
                   the CIA Was Known Outside the Intelligence Community
                   and Whether Such Information Was Regarded as Classified ....... 16

    C.    The Government's Cramped Reading of Rule 16 is Wrong
             As a Matter of Law ............................................................................... 18

    D.    Much of the Information Mr. Libby Has Requested Is
             Discoverable Under *Brady* .................................................................... 20

**Page(s)**

E.   The Government's Disclosure Obligations Extend to Subpoenas and Agreements to Limit the Scope of Documents or Testimony by Reporters............................................................................. 22

CONCLUSION........................................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

## CASES

<u>Page(s)</u>

*Brady* v. *Maryland*, 373 U.S. 83 (1963)............................................................................ 20

*Giglio* v. *United States*, 405 U.S. 150 (1972)................................................................. 20

*In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887 (D.C. Cir. 1999) ..... 20

*United States* v. *Bagley*, 473 U.S. 667 (1985)................................................................ 20

*United States* v. *Edwards*, 191 F. Supp. 2d 88 (D.D.C. 2002)........................................ 22

*United States* v. *George*, 786 F. Supp. 11 (D.D.C. 1991).................................................. 7

*United States* v. *Lloyd*, 992 F.2d 348 (D.C. Cir. 1993)..................................................... 7

*\*United States* v. *Marshall*, 132 F.3d 63 (D.C. Cir. 1998) ...................................... 6-8, 16

*United States* v. *Paxson*, 861 F.2d 730 (D.C. Cir. 1988) ................................................ 21

*United States* v. *Poindexter*, 727 F. Supp. 1470 (D.D.C. 1989)........................................ 7

*\*United States* v. *Safavian*, No. Crim. 05-0375 (PLF), --- F.R.D. ---,
    2005 WL 3529834 (D.D.C. Dec. 23, 2005).................................................*passim*

*United States* v. *Sudikoff*, 36 F. Supp. 2d 1196 (C.D.Cal. 1999) .................................... 21

## RULES

Fed. R. Crim. P. 16 .........................................................................................*passim*

Fed. R. Crim. P. 17 ............................................................................................ 6, 22

Fed. R. Crim. P. 26.2.............................................................................................. 23

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | Oral Argument Requested |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## MOTION OF I. LEWIS LIBBY TO COMPEL DISCOVERY OF INFORMATION REGARDING NEWS REPORTERS AND ORGANIZATIONS

Defendant I. Lewis Libby, through his counsel, hereby moves for an order compelling the government to produce information in its possession obtained from or relating to certain news reporters and organizations that is (a) material to the preparation of the defense under Fed. R. Crim. P. 16, and/or (b) exculpatory or impeachment information discoverable under the *Brady* doctrine.  The information that is the subject of this motion has been requested by the defense from the Office of Special Counsel, but the request has been denied.

## BACKGROUND

A.    The Indictment Alleges That Mr. Libby Lied About Conversations with Three Reporters

The government's investigation in this case began in the wake of the July 14, 2003 publication of a Robert Novak column identifying Valerie Plame as a CIA employee.  A "major focus" of the investigation "was to determine which government officials had disclosed to the media prior to July 14, 2003 information concerning the

affiliation of Valerie Wilson with the CIA, and the nature, timing, extent, and purpose of such disclosures."  (Indictment, Count One at ¶ 28.)

The indictment in this case charges Mr. Libby with obstruction of justice, false statements, and perjury based upon statements he made during FBI interviews and before a grand jury about his conversations with three reporters.  Specifically, the charges against Mr. Libby focus on his testimony concerning conversations prior to July 14, 2003 with:  (1) Tim Russert of NBC News, (2) Matthew Cooper of *Time* magazine, and (3) Judith Miller of *The New York Times*.

The indictment alleges that Mr. Libby lied when he testified that Tim Russert asked him if he "knew that [Joseph] Wilson's wife worked for the CIA," and Mr. Russert told him that "all the reporters knew it."  (*Id.* at ¶ 32(a)(i).)  According to the indictment, Mr. Russert did not make such statements to Mr. Libby.

The indictment also alleges that Mr. Libby lied when he testified that he told Matthew Cooper and Judith Miller "that he had heard that other reporters were saying that Wilson's wife worked for the CIA."  (*Id.* at ¶ 32(b), (c).)  In addition, the indictment alleges that prior to July 14, 2003 Ms. Wilson's employment by the CIA was classified and not common knowledge outside the intelligence community.  (*Id.* at ¶ 1(f).)

B.    Mr. Libby's Requests for Production of Relevant Materials Pertaining
       to News Reporters and Organizations Have Been Denied_____

Mr. Libby has made numerous discovery requests to the government under Rule 16 and the *Brady* doctrine.  This motion concerns the defense's request for production of documents and information regarding three important issues in this case: what did the press know prior to July 14, 2003 about whether Valerie Plame Wilson

2

worked at the CIA, from whom did they learn it, and with whom did they discuss it. This information is important for a number of reasons. Most significantly, it relates directly to the truth or falsity of two alleged false statements by Mr. Libby: (1) that Mr. Russert said "all the reporters knew" about Ms. Wilson's employment status; and (2) that Mr. Libby "had heard that other reporters were saying that Wilson's wife worked for the CIA."

Accordingly, the defense asked the government to provide, for example, all documents in its possession reflecting knowledge by any reporter or news organization of Ms. Wilson's possible affiliation with the CIA prior to July 14, 2003. In response, the prosecution invoked an extraordinarily narrow conception of its disclosure obligations. The government has agreed to produce documents relating to news reporters only to the extent that the documents reflect contact between Mr. Libby and reporters. The government has refused to produce information in its possession about what reporters learned from sources other than Mr. Libby about Ms. Wilson's employment status prior to July 14, 2003 on the ground that such documents are not relevant to a perjury and obstruction case.[1]

The government's decision to withhold the requested materials from the defense is based on a view of relevance that ignores its own indictment. The charges put squarely at issue what "reporters knew" about Ms. Wilson's employment status. It is

_____

[1] The government's refusal to provide any further documents or information concerning news reporters is indicative of what has been in general a narrow and overly restrictive view of its discovery obligations. For example, the prosecution has disclaimed its obligation to obtain and produce documents and information within the possession, custody or control of Executive Branch agencies other than the Office of Special Counsel and the FBI. The defense will address this issue in a separate motion.

material to the preparation of the defense to determine the identity of all reporters who knew that Ms. Wilson worked for the CIA, and to discover when they learned such information, from whom they learned it, and whether they disclosed it further after learning it. Such information will be useful not only for investigating the truth or falsity of the indictment's allegations, but also for exploring the ways in which information about Ms. Wilson's employment status circulated in Washington or reached Mr. Libby.

There can be no information more material to the defense of a perjury case than information tending to show that the alleged false statements are, in fact, true or that they could be the result of mistake or confusion. The government should not be allowed to charge Mr. Libby with lying about statements concerning what reporters knew about Ms. Wilson's identity, and at the same time deny him information that may establish one of these possible defenses. On this important point, Mr. Libby is entitled to know what the government knows. Only with this information can the defense adequately investigate the accuracy of the allegations in the indictment and begin to determine if potential witnesses may have misremembered the conversations alleged in the indictment.

C.    The Information Sought by This Motion

Because the government has failed to meet the disclosure mandates of Rule 16 and *Brady*, this motion seeks to compel the government to produce:

>    1.    All documents[2] and other information reflecting knowledge by any news reporter or employee of a news organization of Valerie

---

[2]    As used herein the term "documents" includes all written or recorded materials of any kind, all e-mails and electronically stored information, and all video or audio recordings.

Plame Wilson's[3] possible affiliation with the CIA or her role in connection with Joseph Wilson's trip to Niger prior to July 14, 2003.[4]

2.  All documents and other information reflecting any mention of Valerie Plame Wilson in any communication between a news reporter and a government official, another news reporter, an employee of a news organization, or any other person prior to July 14, 2003.

3.  Copies of subpoenas issued to reporters and news organizations during the grand jury investigation, and any agreements by the FBI or Office of Special Counsel to limit the scope of the information supplied pursuant to those subpoenas.[5]

The information requested by this motion is not the only information Mr. Libby seeks under Rule 16 and *Brady*.  Further discovery motions will be necessary once we closely review the government's recently received response to our latest written requests and complete our review of the discovery we have received or have been promised.  The present motion is filed at this time because the government has informed the defense that it will not fully disclose the information sought by the defense concerning news reporters and media organizations voluntarily.  Early resolution of this dispute will enable the defense to determine the necessity and scope of pretrial subpoenas

---

[3]  As used herein "Valerie Plame Wilson" means the wife of former Ambassador Joseph Wilson, whether referred to by name (including the names Valerie Plame, Valerie Wilson, Victoria Wilson, and Valerie Flame), or by other reference such as "Wilson's wife" or "wife" or initials where the reference is believed to concern Valerie Plame Wilson.

[4]  We note that documents and information are responsive to the requests in this motion as long as they relate to events or communications that occurred prior to July 14, 2003, even if they were generated after that date.

[5]  The government has advised that it will provide the defense with copies of subpoenas and pertinent correspondence relating to reporters referenced in the indictment and/or whom the government expects to call at trial.  However, the government is withholding subpoenas and correspondence relating to other reporters.

duces tecum to third parties – subpoenas that we anticipate may be resisted by some news organizations and therefore lead to protracted legal proceedings.

To the extent that the information requested by this motion is already in the possession of the government, obtaining the information from the government rather than from reporters or news organizations may minimize prolonged litigation with those parties. Such litigation may not be entirely avoidable, however, given that the government may not possess all of the information relating to news reporters and organizations that the defense needs to prepare for trial. But the government should not be permitted to withhold the information sought by this motion and force the defense to engage in protracted litigation with media organizations regarding the enforceability of Rule 17(c) subpoenas simply to obtain information the government is obligated to provide itself.

<u>ARGUMENT</u>

A.    <u>Courts In This Circuit Interpret Rule 16 Broadly</u>

Rule 16(a)(1)(E)(i) of the Federal Rules of Criminal Procedure requires the government to disclose to the defense all documents and other materials "within the government's possession, custody, or control" that are "material to preparing the defense." The D.C. Circuit has consistently taken an expansive view of what the term "material" means in this context. Under the D.C. Circuit's approach, "evidence is material under Rule 16 as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States* v. *Marshall*, 132 F.3d

63, 68 (D.C. Cir. 1998) (quoting *United States* v. *Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)) (internal quotation marks omitted).

Courts in this jurisdiction interpret the scope of Rule 16 broadly to ensure that the defense has a fair opportunity to prepare for trial. *United States* v. *Poindexter*, 727 F.Supp. 1470, 1473 (D.D.C. 1989) ("The language and the spirit of the Rule are designed to provide to a criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case."). Accordingly, the "materiality standard normally is not a heavy burden." *Lloyd*, 992 F.2d at 351 (internal citation and quotation marks omitted); *United States* v. *George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (the materiality hurdle "is not a high one").

Two additional points bear mentioning here. *First*, Rule 16 focuses on the *preparation* of the defense. Therefore, documents are material under Rule 16 and subject to disclosure if they help the defense to ascertain the strengths and weaknesses of the government's case. *Marshall*, 132 F.3d at 67-68. For that reason, the government is required to disclose both inculpatory and exculpatory evidence under Rule 16. *Id.* at 67 ("Inculpatory evidence . . . is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence"); *United States* v. *Safavian*, No. CRIM.05-0370 PLF, ---- F.R.D. ----, 2005 WL 3529834, *4 (D.D.C. Dec. 23, 2005) (Rule 16 "is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence from disclosure") (a copy of this opinion is attached as Ex. A). Understanding the "true strength of the government's evidence" is critical, because such knowledge allows the defense to prepare strategies to confront damaging evidence at trial, conduct

investigations to discredit such evidence, or avoid presenting defenses that are undercut
by such evidence. *Marshall*, 132 F.3d at 68. That is precisely how Mr. Libby intends to
use the information sought from the government here.

       *Second*, the government is forbidden from "engag[ing] in gamesmanship
in discovery matters." *Id.* at 69. This prohibition means "the government cannot take a
narrow reading of the term 'material' in making its decisions on what to disclose under
Rule 16." *Safavian*, 2005 WL 3529834 at *3. In that vein, the government is not
permitted to avoid its Rule 16 disclosure obligations by attempting to define or limit what
types of defenses are appropriate for the defendant to set forth to counter the charges in
an indictment. *Id.* (the government may not "put itself in the shoes of defense counsel in
attempting to predict the nature of what the defense may be or what may be material to its
preparation"). Yet, that is exactly what the government is attempting to do here.

    B.    **The Discovery Mr. Libby Has Requested is Material to the Preparation
of His Defense**

       Applying these standards leads to the inexorable conclusion that the
documents requested by this motion, if in the possession of the United States, must be
disclosed to the defense.

    1.    The Indictment Places News Reporters' Knowledge About Ms.
Wilson's Employment Status Squarely at Issue

       The alleged false statements by Mr. Libby in the indictment consist largely
of characterizations of what journalists knew and were saying prior to the publication of
the Novak column on July 14, 2003 about Ms. Wilson's employment by the CIA.
Consequently, what reporters *in fact* knew about Ms. Wilson, when they knew such
information, from whom they learned it, and with whom they may have subsequently

8

discussed it is material to the preparation of the defense. And such evidence is no less material if it fails to relate directly to a conversation between Mr. Libby and a news reporter.

a.    Allegations Concerning Tim Russert

The indictment alleges that Mr. Libby falsely stated that Mr. Russert asked him if he "knew that Wilson's wife worked for the CIA," and that Mr. Libby falsely stated that Mr. Russert told him that "all the reporters knew" about Ms. Wilson's employment status. Accordingly, critical questions for the defense in preparing its case are whether, prior to July 14, 2003, Mr. Russert may have known – from whatever source – that Ms. Wilson was employed by the CIA, and whether it was true that other reporters knew this information. The government's refusal to turn over the requested documents undermines the ability of the defense to investigate fully the answers to these questions.

The expected testimony of Mr. Russert illustrates precisely why the information Mr. Libby seeks in this motion is material to the preparation of the defense within the meaning of Rule 16. The government presumably expects to call Mr. Russert at trial to testify that when he spoke with Mr. Libby on or about July 10, he did not ask Mr. Libby if he "knew that Wilson's wife worked for the CIA," and did not tell Mr. Libby "that all the reporters knew it." In response to that testimony Mr. Libby would have the right, if he elected to do so, to produce testimony to the jury tending to show that many reporters *did* know about Ms. Wilson's employment status and that Mr. Russert did make the statement Mr. Libby allegedly attributed to him, but has forgotten about it. Accordingly, in light of Mr. Russert's likely testimony, the materiality of the requested information is indisputable.

9

Another issue concerning Mr. Russert's expected testimony which the defense needs to investigate to examine him effectively at trial is whether any of the NBC reporters who worked for him were aware of Ms. Wilson's identity prior to July 14, 2003.[6]  If any such NBC reporters knew this information before that time, the defense would be entitled to gather that information to prepare its cross-examination of Mr. Russert.  Once the defense gets further information about the sources who disclosed Ms. Wilson's employment status, we can investigate whether these sources were in communication with any reporters in the NBC Washington bureau prior to July 14, 2003, or if they talked to other individuals who might have passed this information on to NBC's Washington reporters.

In this vein, we note that on October 3, 2003, an NBC News reporter who works with Mr. Russert stated on television that Ms. Wilson's employment by the CIA was "widely known among those of us who cover the intelligence community."  (Tr. CNBC, "Capital Report," Oct. 3, 2003, attached as Ex. B.)  Although in public statements made two years later, she appears to have retracted her original statement, the defense is entitled to investigate further what she knew about Ms. Wilson's identity and when she knew it.

In addition, the defense could choose to advance the argument that the statement that "all the reporters knew" is a factually correct statement that was made to Mr. Libby, and show that Mr. Libby is simply confused about whether Mr. Russert is the source of the statement.  To build the case that "all the reporters knew," it is essential for

---

[6]   Mr. Russert is the NBC News Washington bureau chief, and as such he functions in a managerial capacity with respect to a number of other NBC reporters.

the defense to analyze the information in the government's possession regarding what reporters knew, how they learned it, and with whom they discussed it. Indeed, information about the persons who disclosed the information in the first place is critical. Further follow-up may show that these sources relayed information about Ms. Wilson to other reporters or other persons, who in turn may have told others as part of a chain of conversations that reached Mr. Libby.

        b.        Allegations Concerning Matthew Cooper and Judith Miller

        Mr. Libby also needs the documents sought by this motion to prepare his defense to the charges that he lied about his conversations with Mr. Cooper and Ms. Miller. The indictment alleges that Mr. Libby lied when he said he told Mr. Cooper and Ms. Miller "that he had heard that other reporters were saying that Wilson's wife worked for the CIA." (Indictment, Count One ¶ 32(b), (c).) The defense thus has the right to investigate and develop evidence showing that other reporters both knew about Ms. Wilson's employment by the CIA prior to June 14, 2003 and were discussing this fact with government officials, some of whom in turn may have shared such information with Mr. Libby. Such evidence would demonstrate that the alleged false statement by Mr. Libby is factually correct.

        The relevance of this information does not hinge on whether or not Mr. Libby was involved in any such conversations. Mr. Libby talked to dozens of people each day, many of whom talked to reporters frequently themselves. Mr. Libby may well have heard what reporters were saying about Ms. Wilson indirectly, through any one of the many government officials with whom he interacted each day. The defense has a

right to explore the extent to which reporters were saying that Ms. Wilson worked at the CIA and to discover to whom they made such statements.

Further, just as the defense may seek to present the argument that Mr. Libby misrecollected how or from whom he heard information about Ms. Wilson's identity, the reporters who have provided information to the government may also be confused about how they learned that Ms. Wilson worked for the CIA. That is, they may have mistakenly attributed statements to Mr. Libby that were in fact made by other government officials. The defense needs discovery materials about reporters' discussions with other sources to investigate this possibility.

      2.     Information About News Reporters' Sources Is Material to the Preparation of Mr. Libby's Defense

It is necessary for the defense to determine and investigate which individuals served as sources for journalists who learned about Ms. Wilson's employment status prior to July 14, 2003. The defense is certainly permitted to conduct an investigation to ascertain if there are more reporters who knew about Ms. Wilson's employment status than those identified to us by the government. The identity of the reporters' sources, and the nature of the sources' conversations with reporters, are particularly significant to the preparation of the defense.

Obtaining such information will allow the defense to further investigate and evaluate the accuracy of alleged statements that "all the reporters knew" about Ms. Wilson's identity and analyze factual allegations that Ms. Wilson's employment status was not common knowledge outside the intelligence community. Once we learn the names of the reporters' sources, we will attempt to interview them, investigate whether

they discussed information about Ms. Wilson with anyone else, and evaluate whether to subpoena them for testimony at trial.

Each source who divulged information concerning Ms. Wilson prior to July 14, 2003 represents the first link in a potential chain of discussions that the defense is entitled to investigate. For example, in a recent, post-indictment development, a *Washington Post* reporter publicly stated that he learned of Ms. Wilson's employment well before Mr. Libby is alleged to have disclosed it outside the government, from a source who has been disclosed to the Special Counsel, but not to Mr. Libby. (Jim VandeHei & Carol Leonnig, *Woodward Was Told of Plame More than Two Years Ago*, WASHINGTON POST, Nov. 16, 2005, at A01, attached as Ex. C.) The same reporter disclosed that he mentioned this information to another *Washington Post* reporter, and that he possibly mentioned it to Mr. Libby. (*Id.*; Bob Woodward, *Testifying in the CIA Leak Case*, WASHINGTON POST, Nov. 16, 2005, at A08, attached as Ex. D.) Such revelations underscore that when reporters learned of Ms. Wilson's identity from their sources, those reporters in turn became secondary sources who conveyed information about Ms. Wilson to other journalists or other government officials. Those government officials could have passed on what they heard from reporters to Mr. Libby.

The defense is entitled to explore all such primary and secondary sources as part of a thorough investigation regarding who outside the intelligence community learned of Ms. Wilson's employment status prior to July 14, 2003, and how widely such information was spread. Such information bears directly on the accuracy or inaccuracy of whether "all reporters knew"; whether Mr. Libby "had heard that reporters were saying

that Wilson's wife worked for the CIA"; and whether Ms. Wilson's employment status was not well known outside the intelligence community.

>3.    The Defense Needs the Requested Discovery To Investigate
>       Whether There Was a Plan to "Punish" Mr. Wilson by Leaking
>       Information about Ms. Wilson to the Press

Potential witnesses in this case have stated publicly that they believe the Administration waged a campaign to "punish" Mr. Wilson by leaking his wife's name to journalists. The government's investigation also pursued this line of inquiry. The defense needs the requested discovery concerning what government officials other than Mr. Libby said to reporters about Ms. Wilson to investigate whether such a plot in fact existed. Documents that assist such an investigation are thus material to the preparation of the defense for several reasons.

As a threshold matter, if a witness holds the belief that the Administration leaked Ms. Wilson's name because it sought revenge on Mr. Wilson, it is possible that witness could be biased against Mr. Libby. The defense must investigate and determine how to address such potential bias before trial, and must be prepared, if necessary, to demonstrate the falsity of the accusation that Ms. Wilson's name was leaked for malicious purposes.

For example, Mr. Cooper, one of the government's key witnesses, has written articles and made public statements that advance the idea that the Administration pursued a coordinated effort to punish Mr. Wilson by leaking information about his wife. On July 17, 2003, Mr. Cooper published an article on *Time*.com titled "A War on Wilson?" He suggested in that article that the possibility of such a war against Wilson by the Administration was supported by interviews with "government officials":

> [S]ome government officials have noted to TIME in
> interviews, (as well as to syndicated columnist Robert
> Novak) that Wilson's wife, Valerie Plame, is a CIA official
> who monitors the proliferation of weapons of mass
> destruction.  These officials have suggested that she was
> involved in her husband's being dispatched to Niger . . .

(Matthew Cooper, *A War on Wilson*, Time.com, July 17, 2003, attached as Ex. E.)  The

article went on to quote Mr. Wilson as saying that such disclosures constituted "a smear

job."  (*Id.*)  Almost a year and a half later, Mr. Cooper elaborated on what he saw as a

"malevolent" plot during a televised interview:

> What I was trying to do in my piece in July 2003 . . . was to
> point out what the leakers were doing.  I was trying to call
> attention to it.  And I think Novak was in a way kind of a
> transmission belt for the leakers, basically repeating their
> smears.  *I was trying to say, hey, they're smearing this guy.*
> *There are some malevolent things going on here.*  Take a
> look.

(Tr. CNN, "Reliable Sources," December 12, 2004, attached as Ex. F.)  (Emphasis

added.)

In light of such statements by a key government witness like Mr. Cooper,

whether or not the Administration attempted to smear Mr. Wilson or his wife is certainly

information that is important for the defense to investigate and consider for purposes of

its examination of Mr. Cooper.  A belief that Mr. Libby may have been involved in a

coordinated smear campaign relates directly to possible bias.  But to decide whether and

how to address such possible bias, the defense must first investigate which persons

disclosed Ms. Wilson's identity, determine their motivations, and finally assess whether

such evidence can reasonably be construed to support accusations of a smear campaign.

*Second*, whether a plot to harm Mr. Wilson existed is directly relevant to

issues of motive and intent that may arise at trial.  The government may well argue that

Mr. Libby's motive to lie was to avoid discovery of this alleged plot. Should Mr. Libby

take the stand, the prosecution could also seek to cross-examine him about his

motivations for certain of his statements to reporters. In such a scenario, Mr. Libby must

be prepared to deal with challenges to his credibility during the government's cross-

examination, and learning whether a plot to punish Mr. Wilson existed is critical to such

preparation. The defense has a clear obligation to anticipate the government's arguments

regarding Mr. Libby's motivations and credibility and to begin evaluating strategies for

countering such attacks in advance of trial. Without the information requested by this

motion regarding the nature of disclosures about Ms. Wilson to reporters, the defense

cannot complete these crucial tasks. *See Marshall*, 132 F.3d at 67-68 (evidence must be

disclosed pursuant to Rule 16 if it helps the defense prepare to avoid "potential pitfalls"

and "minefield[s]" at trial).

> 4.    The Requested Discovery is Material to the Defense's
> Investigation of Whether Ms. Wilson's Affiliation With the CIA
> Was Known Outside the Intelligence Community and Whether
> Such Information Was Regarded as Classified

The indictment also puts directly at issue the question of who outside the

intelligence community knew that Ms. Wilson worked at the CIA by alleging that this

fact was classified and not "common knowledge outside the intelligence community."

(Indictment, Count One at ¶ 1(f).) The government presumably intends to offer proof in

support of that allegation. Mr. Libby is entitled to contest that proof and offer proof of

his own to the contrary. The defense has the right to show the jury that Ms. Wilson's

identity was common knowledge among certain reporters or other individuals before Mr.

Novak's article was published. Evidence, or information that might lead to evidence,

16

tending to contradict an allegation of the indictment is unquestionably evidence that the government has an obligation to disclose. And if any of that information is contained in documents, those documents are plainly "material to the preparation of the defense" and must be disclosed under Rule 16(a)(1)(E).

The nature of conversations between reporters and their sources is particularly relevant to whether Ms. Wilson's employment status was regarded as classified. For example, the *Washington Post* reporter referred to above has stated publicly that when he testified under oath in this case, he told the government that when his source mentioned Ms. Wilson, the reference seemed "casual and offhand," and did not appear "either classified or sensitive." (Bob Woodward, *Testifying in the CIA Leak Case*, Ex. D.) The defense is entitled to learn more about this particular conversation, and to investigate any other such conversations between journalists and individuals who shared information concerning Ms. Wilson's employment status. For example, it would certainly be material to the preparation of the defense if the *Washington Post* reporter's source told any other reporters or any other individuals the same information about Ms. Wilson, and in the same casual and offhand manner. If many other individuals in Washington did not consider Ms. Wilson's affiliation with the CIA classified or even sensitive, Mr. Libby has the right to learn about these facts as part of preparing his defense. Similarly, if the converse is true, and certain reporters or government officials did believe Ms. Wilson's employment status was a well-kept secret, such information is just as important to the preparation of the defense.

C.    The Government's Cramped Reading of Rule 16 is Wrong
As a Matter of Law

In resisting disclosure, the government has asserted that this is a prosecution involving "purely obstruction offenses" to which the requested information concerning news reporters bears little relevance. The government considers information relating to reporters' knowledge regarding Ms. Wilson's employment status irrelevant to this case unless such information also refers to Mr. Libby. The government's view of relevance is both factually and legally wrong.

As we have shown above, the government's claim that Mr. Libby is not entitled to the documents sought by this motion because they "bear little relevance to the prosecution of a charge involving purely obstruction offenses" is wrong as a matter of fact. Such documents are highly relevant to this case as the government has charged it in the indictment. The prosecution's position is wrong as a matter of law as well. As Judge Friedman recently pointed out, in complying with its obligations under Rule 16 the government cannot substitute its own view of what is needed to prepare the defense for that of the defendant. *See Safavian*, 2005 WL 3529834 at *3. The documents sought are material if they will help the defense with trial preparation tasks such as evaluating the strength of the government's case, investigating possible defenses, finding additional relevant evidence, and developing strategies to impeach government witnesses. *Id*. at *4. It is not up to the government to define Mr. Libby's defenses to the indictment or to determine what is useful in preparing them.

Indeed, the government recently tried to advance a similarly narrow view of its obligations under Rule 16 and *Brady* in *Safavian,* which also involved charges of obstruction and false statements. Not surprisingly, the court rejected that view. In that

18

case, the defendant was accused of falsely stating to various government officials that a

certain lobbyist had no business with his employer, the General Services Administration

("GSA").  *Id.* at *1.  At the outset of the case, the defendant requested from the

government e-mails and correspondence between associates of the lobbyist concerning

certain GSA projects.  *Id.* at *7.  The government refused to produce the requested

documents "largely on the ground that since [the defendant] never saw these e-mails and

other correspondence they could have no bearing on his state of mind when he

communicated with [various government officials], or be otherwise material to any

conceivable defense."  *Id.*

    The Court rejected the government's narrow conception of the scope of its

discovery obligations and ordered production of the requested e-mails, stating:

> Simply because the e-mails themselves were not sent to or
> received by [the defendant] and therefore do not directly
> reflect his state of mind, and may or may not be admissible
> in evidence at trial, does not mean that they are not material
> to the preparation of a defense or that they will be unlikely
> to lead to admissible evidence.  To the contrary, [the
> requested] e-mails . . . may very well include information
> helpful to the defendant in finding witnesses or documents
> that could support his contention.

*Id.*  Applying this rationale here compels the same result.  The government should be

required to produce all documents and information in its possession pertaining to what

reporters knew about Ms. Wilson, and with whom they discussed that knowledge, prior to

July 14, 2003.

D.    Much of the Information Mr. Libby Has Requested Is
       Discoverable Under *Brady*

The government's disclosure obligations do not end with Rule 16. Much of the discovery sought by this motion is also firmly within the ambit of documents that must be disclosed under the doctrine set forth in *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny.

Information, for example, that tends to show that in fact, as Mr. Libby is alleged to have stated with respect to Mr. Russert, "all reporters" did know that Ms. Wilson worked for the CIA is discoverable under *Brady*. Similarly, information that, contrary to what is alleged in the indictment, Ms. Wilson's affiliation with the CIA was indeed common knowledge outside the intelligence community falls within the scope of *Brady*. (Indictment, Count One at ¶ 1(f).) The same is true for information that tends to show that people who knew that Ms. Wilson worked for the CIA did not treat that information as classified.

Under *Brady*, the government has an affirmative duty to produce any evidence favorable to the defendant that is material to either guilt or punishment. *See United States* v. *Bagley*, 473 U.S. 667, 674-75 (1985) (the prosecution is required "to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial"). Both exculpatory information and evidence that can be used to impeach the prosecution's witnesses are considered "favorable" under *Brady* and must be disclosed by the government. *Id.* at 676-77; *see also Giglio* v. *United States*, 405 U.S. 150, 154-55 (1972); *In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 892 (D.C. Cir. 1999).

The prosecution must produce to the defense not only all favorable evidence that is admissible, but also all evidence "that is likely to lead to favorable evidence that would be admissible." *Safavian*, 2005 WL 3529834 at *5 (quoting *United States* v. *Sudikoff*, 36 F. Supp. 2d 1196, 1198-99 (C.D.Cal. 1999)). Just as with Rule 16 disclosure, the government must interpret its *Brady* obligations broadly. "Where doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure." *Id.* (citing *United States* v. *Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988) (insufficient for government to provide "niggling excuses" for its failure to provide potentially exculpatory evidence)). And, in some respects, the *Brady* disclosure obligation is broader than Rule 16 because it requires production not just of documents, but also of information known to prosecutors that is not contained in documentary evidence.

This motion requires the Court to evaluate the government's *Brady* obligations before trial rather than in the post-conviction context, as is more often the case. *Safavian* is again particularly instructive. In that decision, the court explained the materiality standard under *Brady* that applies to pretrial discovery:

> [T]he government must always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed-- with the benefit of hindsight--as affecting the outcome of the trial. The question before trial is not whether the government thinks that disclosure of the information or evidence it is considering withholding might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed. . . . The only question before (and even during) trial is whether the evidence at issue may be "favorable to the accused"; if so, it must be disclosed without regard to whether the

> failure to disclose it likely would affect the outcome of the
> upcoming trial.

*Id.* (citing cases); *see also United States* v. *Edwards*, 191 F. Supp. 2d 88, 90 (D.D.C. 2002) (in the pre-trial context, courts "look with disfavor on narrow readings by prosecutors of the government's obligations under *Brady*").

E.    The Government's Disclosure Obligations Extend to Subpoenas and
        Agreements to Limit the Scope of Documents or Testimony by Reporters

Finally, the defense is entitled to discovery of all subpoenas issued to the press and any agreements the government may have reached with reporters or their employers to limit the scope of their testimony or the documents they would produce. The government has agreed to produce such information for the reporters referred to in the indictment and/or whom it intends to call at trial, but has refused to produce it for other reporters. This effort by the government to avoid its discovery obligations is based on the same fundamentally flawed view of materiality that has driven the government's refusal to provide other discovery from reporters that is not directly connected to Mr. Libby.

Information about subpoenas and agreements to limit their scope is discoverable under Rule 16 because it will help the defense ascertain what additional information must be obtained from news reporters to prepare for trial. The defense needs to determine whether to issue pretrial subpoenas to journalists or their employers for the necessary information, and may need to demonstrate that such subpoenas meet the prerequisites of Rule 17(c). This need is not limited to documents the defense may seek with respect to Mr. Cooper, Mr. Russert, and Ms. Miller. Although they are the only reporters identified by name, the indictment refers repeatedly to "all reporters" or

"reporters" generally, extending the universe of discoverable information beyond Cooper,

Miller and Russert.  Further, discovery of such agreements is necessary so the defense

can adequately analyze the witness statements that the government will provide under the

Jencks Act and Rule 26.2.

<u>CONCLUSION</u>

For the reasons stated herein, the request for disclosure of documents and

information should be granted, and an Order entered in the form attached hereto.

January 26, 2006                                  Respectfully submitted,


/s/ Theodore V. Wells, Jr.                        /s/ Theodore V. Wells, Jr. for
Theodore V. Wells, Jr.                            William H. Jeffress, Jr.
(DC Bar No. 468934)                               (DC Bar No. 041152)
James L. Brochin                                  Alex Bourelly
(DC Bar No. 455456)                               (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                     Baker Botts LLP
  & Garrison LLP                                  1299 Pennsylvania Ave., NW
1285 Avenue of the Americas                       Washington, DC  20004
New York, NY  10019-6064                          (202) 639-7751
(212) 373-3089


/s/ Theodore V. Wells, Jr. for                    /s/ Theodore V. Wells, Jr. for
Joseph A. Tate                                    John D. Cline
Dechert LLP                                       (D.C. Bar No. 403824)
2929 Arch Street                                  Jones Day
Cira Centre                                       555 California Street, 26th Floor
Philadelphia, PA  19104                           San Francisco, CA  94104
                                                  Tel:  (415) 626-3939
                                                  Fax:  (415) 875-5700