## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | <u>Oral Argument Requested</u> |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## MOTION OF I. LEWIS LIBBY TO COMPEL DISCOVERY OF RULE 16 AND *BRADY* MATERIAL IN THE POSSESSION OF OTHER AGENCIES

Theodore V. Wells, Jr.
James L. Brochin
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
(212) 373-3089

Joseph A. Tate
Dechert LLP
2929 Arch Street
Cira Centre
Philadelphia, PA  19104

William H. Jeffress, Jr.
Alex Bourelly
Baker Botts LLP
1299 Pennsylvania Ave., NW
Washington, DC  20004
(202) 639-7751

John D. Cline
(D.C. Bar No. 403824)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax:  (415) 875-5700

January 31, 2006

## TABLE OF CONTENTS

**Page(s)**

BACKGROUND ............................................................................................................2

ARGUMENT ................................................................................................................5

I.    THE GOVERNMENT'S DISCOVERY OBLIGATIONS EXTEND, AT
      A MINIMUM, TO THE CIA, THE DOJ, THE FBI, AND THE OFFICE
      OF THE VICE PRESIDENT ................................................................................5

      A.    Rule 16 ...............................................................................................6

      B.    *Brady* .................................................................................................8

II.   THE REQUESTED DOCUMENTS MUST BE PRODUCED UNDER
      RULE 16, *BRADY*, AND *YUNIS* ..................................................................10

      A.    Rule 16(a)(1)(B)(i):  Mr. Libby's Own Notes ...........................................10

      B.    Rule 16(a)(1)(E)(i):  Documents Material to the Preparation of the
            Defense ............................................................................................15

      C.    *Brady* ...............................................................................................17

      D.    The *Yunis* Qualified Privilege ...............................................................19

CONCLUSION ............................................................................................................20

# TABLE OF AUTHORITIES

## CASES

Pages(s)

*Arthur Andersen LLP v. United States*, 125 S.Ct. 2129 (2005) ..................................................... 12

*\*Brady v. Maryland*, 373 U.S. 83 (1963) ...................................................................................... 1

*United States v. Baker*, 626 F.2d 512 (5th Cir. 1980) .................................................................... 12

*United States v. Beers*, 189 F.3d 1297 (10th Cir. 1999) ................................................................. 9

*United States v. Brooks*, 966 F.2d 1500 (D.C. Cir. 1992) ............................................................... 8

*United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989) ................................................................. 7

*\*United States v. Deutsch*, 475 F.2d 55 (5th Cir. 1973) ............................................................... 10

*\*United States v. Dunnigan*, 507 U.S. 87 (1993) ........................................................ 11, 12, 13, 18

*United States v. Edwards*, 191 F.Supp.2d 88 (D.D.C. 2002) ......................................................... 18

*United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990) ............................................................ 12

*United States v. George*, 786 F.Supp. 11 (D.D.C. 1991) ........................................................ 19, 20

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) ....................................................... 7, 11

*United States v. Jennings*, 960 F.2d 1488 (9th Cir. 1992) .............................................................. 8

*United States v. Lloyd*, 992 F.2d 348 (D.C. Cir. 1993) .................................................................. 15

*\*United States v. Marshall*, 132 F.3d 63 (D.C. Cir. 1998) ....................................................... 7, 15

*United States v. Paxson*, 861 F.2d 730 (D.C. Cir. 1988) ............................................................... 18

*United States v. Perdomo*, 929 F.2d 967 (3d Cir. 1991) ................................................................. 9

*United States v. Pickett*, 353 F.3d 62 (D.C. Cir. 2004) ................................................................. 12

*\*United States v. Poindexter*, 727 F.Supp. 1470 (D.D.C. 1989) ........................................... 8, 14, 15

*United States v. Rezaq*, 134 F.3d 1121 (D.C. Cir. 1998) .......................................................... 10, 19

*United States v. Russo*, 104 F.3d 431 (D.C. Cir. 1997) ................................................................. 12

**Pages(s)**

*United States v. Safavian*, No. Crim. 05-0375 (PLF), -- F.R.D. --, 2005 U.S.Dist.
LEXIS 34982 (D.D.C. Dec. 23, 2005)........................................................................6, 8, 18

*United States v. Santiago*, 46 F.3d 885 (9th Cir. 1995)..............................................................7, 8

*United States v. Sudikoff*, 36 F.Supp.2d 1196 (C. D. Cal. 1999)....................................................18

*United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989).......................................................10, 11, 19

OTHER AUTHORITIES

Fed. R. Crim. P. 16 ....................................................................................................................*passim*

17 Am. Jur. Proof of Facts § 163 ................................................................................................14

Deborah Davis and William C. Follette, *Foibles of Witness Memory for Traumatic/High
Profile Events*, 66 J. Air L. & Comm. 1421 (2001).............................................................14

Justin S. Teff, *Human Memory Is Far More Fallible and Malleable Than Most
Recognize*, 76 N.Y. St. B.A.J. 38 (June 2004).....................................................................14

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | <u>Oral Argument Requested</u> |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## MOTION OF I. LEWIS LIBBY TO COMPEL DISCOVERY OF RULE 16 AND *BRADY* MATERIAL IN THE POSSESSION OF OTHER AGENCIES

Defendant I. Lewis Libby, through his counsel, moves the Court under

Fed. R. Crim. P. 16(a), U.S. Const. Amends. V and VI, and *Brady v. Maryland*, 373 U.S.

83 (1963), and its progeny, for an Order compelling disclosure of the five narrow

categories of unclassified and classified documents listed below. The defense has

requested these documents from the Office of Special Counsel ("OSC"). The OSC has

declined to produce them, primarily on the ground that the documents are not in its

possession or in the possession of the FBI.[1]

The documents Mr. Libby seeks through this motion are as follows:

1.      All of Mr. Libby's notes for the period May 6, 2003 through

March 24, 2004, to the extent not already produced.

2.      All documents provided to Mr. Libby in connection with his

morning intelligence briefing during the period May 6, 2003 through March 24, 2004,

---

[1]    *See* Letter from John D. Cline to Patrick J. Fitzgerald, Dec. 14, 2005 (attached as Exhibit A); Letter from Patrick J. Fitzgerald to John D. Cline, Jan. 9, 2006 (attached as Exhibit B).

including the President's Daily Brief ("PDB"), in its entirety, and additional materials provided for the Vice President and Mr. Libby with the PDB.

        3.     All documents relating to inquiries made during or in connection with Mr. Libby's morning intelligence briefing for the period May 6, 2003 through March 24, 2004, and all documents provided to Mr. Libby as a result of those inquiries.

        4.     Any assessment done of the damage (if any) caused by the disclosure of Valerie Wilson's status as a CIA employee.

        5.     All documents, regardless of when created, relating to whether Valerie Wilson's status as a CIA employee, or any aspect of that status, was classified at any time between May 6, 2003 and July 14, 2003.

## BACKGROUND

        The indictment charges Mr. Libby with false statements, perjury, and obstruction of justice. The charges rest on statements and testimony Mr. Libby gave to FBI agents and before the grand jury between October 2003 and March 2004 about the details of conversations he had with three reporters and several government officials in May, June and July 2003. Those details concern the status of Ambassador Joseph Wilson's wife, Valerie Wilson, as an employee of the CIA.

        Through this motion, Mr. Libby seeks five narrow and specific categories of unclassified and classified documents relevant to the preparation of Mr. Libby's defense against these charges. Categories 1, 2, and 3 request documents that Mr. Libby either wrote or reviewed during the period between May 6, 2003 (the date of the first media reference to Ambassador Wilson's findings in Niger) and March 24, 2004 (the date

2

of Mr. Libby's second and last appearance before the grand jury).[2] These documents will

establish that Mr. Libby was immersed throughout the relevant period in urgent and

sensitive matters, some literally matters of life and death. Based in part on the

documents, Mr. Libby will show that, in the constant rush of more pressing matters, any

errors he made in his FBI interviews or grand jury testimony, months after the

conversations, were the result of confusion, mistake, or faulty memory, rather than a

willful intent to deceive. Further, such documents can be used to help establish that Mr.

Libby did not participate in any plan to punish Mr. Wilson by leaking his wife's identity

to the press, and that Mr. Libby had no motive to lie to conceal such a plot.[3]

Category 4 seeks "[a]ny assessment done of the damage (if any) caused by

the disclosure of Valerie Wilson's status as a CIA employee." Exhibit A at 2. Although

the OSC insists that no "formal assessment" has been done, Exhibit B at 3, we are

confident that the CIA – which referred the disclosure of Ms. Wilson's employment

status for investigation and prosecution – has undertaken *some* assessment (whether or

not "formal") of the damage caused by the disclosure.[4]

---

[2]    The OSC has produced to the defense only a limited subset of Mr. Libby's notes from certain dates during this time period, consisting only of those notes that the OSC had already obtained from the Office of the Vice President. The OSC has disclaimed the responsibility to go back to the Office of the Vice President to obtain and produce the additional notes requested by this motion.

[3]    As discussed in Mr. Libby's brief in support of his Motion to Compel Discovery of Information Regarding News Reporters and Organizations at pp. 14–16, the defense must investigate whether a plot existed to punish Mr. Wilson by leaking information about his wife's employment status, as this issue may arise at trial.

[4]    The OSC has subsequently reiterated that it has "no formal damage assessment in [its] possession," but has stated that it "intend[s] to address the matter of the relevance and admissibility of Ms. Wilson's employment at the CIA in the context of

The defense is entitled to review the damage assessment(s) sought by this motion because potential harm to national security was a focus of the government's investigation. In fact, the indictment alleges that disclosure of the fact that individuals such as Ms. Wilson "were employed by the CIA had the potential to damage the national security." Indictment, Count One, at ¶ 1(d). Similarly, at an October 28, 2005 press conference announcing the indictment, the Special Counsel stated that when Ms. Wilson's affiliation with the CIA was disclosed, "the damage wasn't to one person. It wasn't just Valerie Wilson. It was done to all of us." Special Counsel Patrick Fitzgerald's Press Conference, Tr. Oct. 28, 2005 at 4 (attached as Exhibit D). At trial the government may attempt to focus on potential harm to national security caused by this disclosure to emphasize to the jury the gravity of the charges against Mr. Libby. Accordingly, it is material to the preparation of the defense to ascertain whether any damage to national security in fact resulted from the disclosure of Ms. Wilson's employment status.

Category 5 requests documents concerning the allegation in the indictment that "[a]t all relevant times from January 1, 2002 through July 2003, Valerie Wilson was employed by the CIA, *and her employment status was classified.*" Indictment, Count One at ¶ 1(f) (emphasis added). The government will presumably seek to prove this allegation at trial, in part to show Mr. Libby's alleged motive for lying. Mr. Libby is entitled to disclosure of evidence necessary to determine the strength or weakness of this particular allegation. The OSC has agreed to review and produce documents responsive

CIPA." Letter from Patrick J. Fitzgerald to William Jeffress, *et al.*, Jan. 23, 2006 (attached as Exhibit C at 3).

4

to this request if it has already received such documents from the CIA in the course of its investigation, but has not agreed to produce any responsive documents from the CIA that it does already possess.

The government resists disclosure of these documents primarily on the ground that neither the OSC nor the FBI possesses them.[5] As we demonstrate in Part I below, this represents an impermissibly cramped view of the government's disclosure obligations. The government also suggests that the requested documents do not fall within the scope of Rule 16 and *Brady*. As shown in Part II, this argument also is wrong. And to the extent the documents sought by this motion are classified, Mr. Libby has made the showing of helpfulness necessary to overcome the government's classified information privilege.

## ARGUMENT

## I.    THE GOVERNMENT'S DISCOVERY OBLIGATIONS EXTEND, AT A MINIMUM, TO THE CIA, THE DOJ, THE FBI, AND THE OFFICE OF THE VICE PRESIDENT.

The OSC insists that it has no obligation to produce documents in the possession of federal agencies other than the FBI. *See* Exhibit B at 1.[6] This assertion is flatly inconsistent with settled law. Federal courts have consistently held that the prosecution's disclosure obligation under Rule 16 and *Brady* extends far more broadly.

---

[5]    As to category 5, concerning the alleged classification of Ms. Wilson's employment status, the government has indicated that it intends to address the discovery of responsive documents under CIPA § 4.

[6]    We assume that the OSC acknowledges its responsibility to produce documents in the possession, custody, or control of the Department of Justice, of which it purports to be a part. If the OSC disputes that responsibility, then we ask that the Court hold that the DOJ falls within the term "the government" for purposes of Rule 16 and *Brady*.

5

At a minimum, that obligation in this case covers documents in the possession of the CIA

(which referred the case to the Department of Justice for prosecution) and the Office of

the Vice President (which cooperated with the investigation at the direction of President

Bush and where Mr. Libby worked throughout the relevant period), as well as the FBI

and the DOJ.[7]

### A.    Rule 16.

Rule 16 requires production of documents "within the government's

possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(B)(i), 16(a)(1)(E). As Judge

Friedman of this Court recently declared, "'the government' [in Rule 16] includes any

and all agencies and departments of the Executive Branch of the government and their

subdivisions, not just the Justice Department, the FBI, . . . and other law enforcement

agencies." *United States v. Safavian*, 2005 U.S. Dist. LEXIS 34982, at *7 (D.D.C.

Dec. 23, 2005).

Judge Friedman's ruling comports with the plain language of Rule 16. It

also squares with other federal decisions, which have consistently rejected efforts by

federal prosecutors to limit their discovery obligations under the Rule to the Department

of Justice and the FBI. For example, in decisions on which *Safavian* relies, the Ninth

Circuit has held that documents are in the possession, custody, or control of "the

---

[7]    This motion focuses on the CIA and the Office of Vice President because we believe
that those entities have possession, custody, or control of most, if not all, of the
requested documents identified in this particular motion. Consistent with *Safavian*,
however, it is our position that the government's discovery obligations under Rule 16
and *Brady* extend to all Executive Branch agencies, and we reserve the right to pursue
discovery from additional agencies, including the State Department, the Office of the
President, and the National Security Council, in the future upon an appropriate
showing.

government" for purposes of Rule 16 (1) when the agency that holds the documents participated in the investigation of the defendant, or (2) when the prosecutor has "'knowledge of and access to the documents.'" *United States v. Santiago*, 46 F.3d 885, 893-94 (9th Cir. 1995) (quoting *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989)); *see also, e.g., United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998) ("[A] prosecutor may not sandbag a defendant by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing access to it in preparing his case for trial. . . . Under such circumstances, that evidence is plainly within [the prosecutor's] Rule 16 control.") (citations and quotations omitted; brackets in original); *United States v. Haldeman*, 559 F.2d 31, 74 (D.C. Cir. 1976) (referring to "agenc[ies] allied with the prosecution").

Under these standards, the government must produce documents within the possession, custody, or control of the CIA and the Office of Vice President ("OVP"), as well as the FBI and the DOJ. First, the CIA referred the disclosure of Ms. Wilson's employment status to the DOJ for possible prosecution. Dana Milbank and Susan Schmidt, *Justice Department Launches Criminal Probe of Leak*, Wash. Post, Oct. 1, 2003, at A1 (attached as Exhibit E). As the complaining agency and the employer of the alleged victim, the CIA plainly is "allied with the prosecution," *Haldeman*, 559 F.2d at 74, and has participated in the investigation, *see Santiago*, 46 F.3d at 894. The OVP should similarly be considered "allied with the prosecution" in light of President Bush's directive to the White House (which includes the OVP) to cooperate with the criminal investigation into the disclosure of Ms. Wilson's employment status. White House counsel's message to staffers (attached as Exhibit F).

7

Second, the OSC has "knowledge of and access to" the documents Mr. Libby requests. *Santiago*, 46 F.3d at 894. We have identified the documents precisely. *See* Exhibit A at 2. Thus, even if the OSC did not know of their existence before our request, it does now. And President Bush's directive to cooperate with the investigation leaves no doubt that the OSC has access to the documents Mr. Libby seeks, regardless of whether they reside at the CIA, the OVP, or another federal agency. The OSC has only to ask for the documents, and it will receive them. *See, e.g., United States v. Poindexter*, 727 F. Supp. 1470, 1477-78 (D.D.C. 1989) (where Independent Counsel benefited from White House cooperation, "he cannot now, in fairness, be permitted to disclaim all responsibility for obtaining Presidential documents that are material to the preparation of the defense").[8]

## B.    *Brady.*

The government's disclosure obligation under *Brady* and its progeny similarly extends beyond the OSC and the FBI. The prosecution must produce favorable documents and information in its possession, custody, or control or in the possession, custody, or control of any agency "'closely aligned with the prosecution.'" *Safavian*, 2005 U.S. Dist. LEXIS 34982, at * 17 (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). Under this principle, courts have held that federal prosecutors cannot evade their *Brady* obligations "by claiming lack of control over the files or procedures of other executive branch agencies." *United States v. Jennings*, 960 F.2d

---

[8]    To the extent the OSC denies that the CIA, the OVP, and the DOJ are "allied with the prosecution" or that it has access to documents at those agencies, we request discovery and an evidentiary hearing at which to challenge the OSC's position.

1488, 1490 (9th Cir. 1992) (citing cases); *see, e.g., United States v. Beers*, 189 F.3d 1297,

1304 (10th Cir. 1999) (under *Brady*, information "possessed by other branches of the

federal government, including investigating officers, is typically imputed to the

prosecutors of the case"); *United States v. Perdomo*, 929 F.2d 967, 970-71(3d Cir. 1991)

(*Brady* requires prosecution to produce evidence favorable to the defendant that is

"readily available" to the prosecution; evidence is "readily available" if it is "in the

possession of some arm of the state"); *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir.

1973), overruled on other grounds by *United States v. Henry*, 749 F.2d 203 (5th Cir.

1984) ("[T]here is no suggestion in *Brady* that different 'arms' of the government,

particularly when so closely connected as this one for the purpose of the case, are

severable entities.").

      *Deutsch* is instructive. In that case, a mailman testified that the two

defendants tried to bribe him to give them credit cards from the mail. The defendants

disputed the mailman's account and moved before trial for production of his personnel

file. The prosecution refused to produce the file because it did not possess it, and the

district court agreed that "[t]he prosecution cannot be compelled to disclose something

which it does not have. Furthermore, the Post Office Department does not appear to be

an arm of the prosecution as contemplated by *Brady*." *Id.* (quoting district court). The

Fifth Circuit rejected this rationale. It declared that "[t]he government cannot

compartmentalize the Department of Justice and permit it to bring a charge affecting a

government employee in the Post Office and use him as its principal witness, but deny

having access to the Post Office files." *Id.* In words fully applicable here, the court

9

added: "In fact [the prosecution] did not even deny access, but only present possession without even an attempt to remedy the deficiency." *Id.*

Here, as in *Deutsch*, the government has brought charges that directly "affect [] a government employee" – Ms. Wilson, who worked at all relevant times for the CIA. It brought those charges after an investigation that the CIA requested. It charged an employee of the OVP – Mr. Libby – after receiving the full cooperation of the OVP at the President's direction. And here, as in *Deutsch*, the OSC "d[oes] not even deny access, but only present possession without even an attempt to remedy the deficiency." Under these circumstances, *Brady* requires the OSC to obtain the requested documents from the CIA and the OVP, as well as from the FBI and the DOJ.

## II.    THE REQUESTED DOCUMENTS MUST BE PRODUCED UNDER RULE 16, *BRADY*, AND *YUNIS*.

The documents that Mr. Libby seeks through this motion fall squarely within the terms of Rule 16 and *Brady*. To the extent responsive documents are classified, Mr. Libby also satisfies the "helpfulness" requirement established in *United States v. Rezaq*, 134 F.3d 1121 (D.C. Cir. 1998), and *United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989).

### A.    Rule 16(a)(1)(B)(i):  Mr. Libby's Own Notes

In his first discovery request, Mr. Libby seeks his own notes for the period May 6, 2003 through March 24, 2004, to the extent not already produced. The OSC obtained from the OVP during its investigation, and produced to the defense, a far more limited subset of Mr. Libby's notes than are material to the preparation of his defense and sought by this motion. That is, the OSC has produced Mr. Libby's notes only for the

10

periods May 6 through May 10, 2003, June 1 through July 25, 2003, July 28 and 29,

2003, and September 27 through October 13, 2003, and any other documents from the

OVP from February 1, 2002 through January 23, 2004 that relate to Ambassador Wilson,

Valerie Wilson, or Ambassador Wilson's trip to Niger. The OSC maintains that "[w]e do

not have any other notes of Mr. Libby and therefore cannot produce them to you."

Exhibit B at 2. Mr. Libby now requests the remainder of his notes for the period from the

first public disclosure of Ambassador Wilson's trip through his final appearance before

the grand jury.

Rule 16(a)(1)(B)(i) requires production of all "relevant" written statements

of the defendant. "The requirement that statements made by the defendant be relevant

has not generally been held to create a very high threshold. Generally speaking, the

production of a defendant's statements has become 'practically a matter of right even

without a showing of materiality.'" *Yunis*, 867 F.2d at 621-22 (quoting *Haldeman*, 559

F.2d at 74 n. 80).

Mr. Libby's notes from the May 6, 2003 through March 24, 2004 period

plainly satisfy the "minimal showing of relevance" Rule 16(a)(1)(B)(i) requires. *Yunis*,

867 F.2d at 622. The notes sought by this motion are relevant to determine whether the

government can meet the specific intent prong of the charges against Mr. Libby. This

inquiry is critical given that perjury, false statements and obstruction charges can all be

defeated by showing that the defendant's misstatements were not intentional, but rather

the result of confusion, mistake, faulty memory, or another innocent reason.[9]

---

[9]    The perjury statute requires proof that the defendant "g[ave] false testimony
concerning a material matter with the willful intent to provide false testimony, rather
than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*,

11

As a threshold matter, Mr. Libby does not concede, for the purposes of these discovery motions, that any of the alleged false statements in the indictment are untrue. However, he is entitled to investigate, and, if he so chooses, to show at trial, that if any of his statements and testimony were indeed inaccurate, such inaccuracy resulted from "confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94. The notes will permit Mr. Libby to "place his job before the jury in a concrete, palpable context, and . . . to explain his understanding of the world in which he worked." *United States v. Fernandez*, 913 F.2d 148, 164 (4th Cir. 1990). In particular, with the notes, Mr. Libby may be able to show the jury that the matters at issue here -- "when, and the manner and means by which, [he] acquired and subsequently disclosed to the media information concerning the employment of Valerie Wilson by the CIA," Indictment, Count One at ¶ 31 – were of relatively less importance compared to other matters that fell within his sphere of responsibility during the relevant period as Assistant to the President of the United States, Chief of Staff to the Vice President of the United States, and Assistant to the Vice President for National Security Affairs.

Mr. Libby's notes are important and material to the preparation of his defense because they will assist in establishing two critical points: (1) that the

---

507 U.S. 87, 94 (1993). Section 1001 requires proof that the defendant knew the statement at issue was false, *see, e.g., United States v. Pickett*, 353 F.3d 62, 66 (D.C. Cir. 2004), and thus that he did not make the statement by "inadvertence, mistake, carelessness or for any other innocent reason," *United States v. Baker*, 626 F.2d 512, 516 (5th Cir. 1980). And the obstruction statute requires proof that the defendant acted "corruptly"--that is, "knowingly and dishonestly, with the specific intent to subvert or undermine the integrity" of the grand jury proceeding. *Arthur Andersen LLP v. United States*, 125 S. Ct. 2129, 2136 (2005) (quoting pattern instruction); *see, e.g., United States v. Russo*, 104 F.3d 431, 436 (D.C. Cir. 1997) (knowingly offering false testimony to grand jury can constitute obstruction).

conversations with reporters and others in June and July 2003 alleged in the indictment

occurred in the midst of an unending torrent of meetings, briefings, and discussions of far

more urgent and sensitive issues, including, for example, the detection and prevention of

terrorist attacks against the United States, the establishment of security in Iraq following

the fall of Saddam Hussein, and the effort to halt the proliferation of nuclear weapons and

other weapons of mass destruction to countries such as Iran, North Korea, Libya, and

Syria, and (2) that in the three to nine months between the conversations alleged in the

indictment and the statements and testimony Mr. Libby provided to investigators and the

grand jury between October 2003 and March 2004, he remained inundated, from early in

the morning until late at night, with the most sensitive national security issues that this

country faces.

These two points (and the notes that support them) are highly material to

showing that Mr. Libby's statements and testimony, to the extent they were inaccurate,

resulted from "confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94. As

Mr. Libby demonstrates in more detail in the memorandum concerning the use,

relevance, and admissibility of the classified information in his first CIPA § 5 Notice, the

relative insignificance of the conversations at issue, compared to other matters occupying

Mr. Libby's mind at the time, bears directly on whether he deliberately lied (as the

government contends) or made honest misstatements. Similarly, the extraordinary

number and sensitivity of the meetings, briefings, and discussions in which Mr. Libby

participated between May and July 2003 (when he had the conversations at issue in the

indictment) and the period October 2003 (when he gave his first statement to the FBI) to

March 2004 (when he testified before the grand jury for the last time) increases the likelihood that he may have forgotten or confused certain details of those conversations.[10]

Mr. Libby is also entitled to production of his notes because they are material to the preparation of defenses with respect to motive. Potential witnesses in this case have stated publicly that they believe the Administration waged a campaign to "punish" Mr. Wilson by leaking his wife's name to journalists, and this issue may surface during their testimony at trial. The government's investigation also pursued this line of inquiry, and the government might attempt to cross-examine Mr. Libby on this issue, should he choose to testify. The defense has the right to use Mr. Libby's notes to help establish that he was not aware of or a participant in such a plot against Mr. Wilson, and thus that he lacked the specific intent to mislead the government's investigation.

*United States v. Poindexter* is particularly instructive here. In that case, the defendant was accused of entering into an agreement to lie to Congress and to obstruct a congressional inquiry concerning the government's support for the Contras. 727 F. Supp. at 1475. The defendant sought to defend himself by presenting the defense that he believed in the legality of his activities and had no motive to conceal them. *Id.* The defendant argued that absence of a motive would refute the specific intent prong of the prosecution's obstruction charges. *Id.* Pursuant to Rule 16, the court ordered

---

[10] For useful summaries of the research on these and related memory issues, see, *e.g.*, Justin S. Teff, *Human Memory Is Far More Fallible and Malleable Than Most Recognize*, 76 N.Y. St. B.A.J. 38 (June 2004), *reprinted at* 2004 WL 2165736; Deborah Davis and William C. Follette, *Foibles of Witness Memory for Traumatic/High Profile Events*, 66 J. Air L. & Com. 1421, 1427-54, 1486-1544 (2001); and 17 Am. Jur. Proof of Facts 163 §§ 31-43, 48-50, 55, 64, 66-67 (Sept. 2005).

14

production of the materials sought by the defendant on the ground that "[e]vidence regarding the absence of motive is usually admitted to negate specific intent." *Id.* (citing cases).

Precisely the same result is compelled in this case. Documents that may be useful for countering potential attacks on Mr. Libby's motivations and credibility at trial are undoubtedly material to the preparation of his defense.

For these reasons, Mr. Libby's notes are "relevant" under Rule 16(a)(1)(B)(i) and must be produced.

## B.    Rule 16(a)(1)(E)(i): Documents Material to the Preparation of the Defense

The five categories of documents Mr. Libby requests must be produced under Fed. R. Crim. P. 16(a)(1)(E)(i). Rule 16(a)(1)(E)(i) directs the government to produce documents that are "material to preparing the defense." A document is "material" under the Rule if "'there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *Marshall*, 132 F.3d at 68 (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotations omitted)).

Each of the five categories of discovery Mr. Libby seeks through this motion meets this standard. As described above, Mr. Libby's notes are firmly within the ambit of documents that are material to the preparation of the defense.

The second and third categories, which include documents relating to Mr. Libby's morning intelligence briefings, such as the Presidential Daily Briefs and additional materials sought by or provided to Mr. Libby, are similarly "material to

15

preparing the defense." Each morning except Sunday, Mr. Libby personally received the PDB, related documents intended for the Vice President, and additional materials for Mr. Libby himself. The PDB and associated documents summarize the most pressing intelligence of the day – the items that the intelligence community selects as most worthy of the President's attention. In conjunction with the PDB, Mr. Libby and the Vice President received a daily intelligence briefing from a CIA briefer that covered and expanded upon the PDB information. During these briefings, Mr. Libby or the Vice President would frequently make inquiries and request additional information on matters of particular concern to them.

Taken together, these documents – the PDB and related materials provided to Mr. Libby and the Vice President in conjunction with their morning intelligence briefing, the inquiries they made to the CIA briefer, and the documents provided to Mr. Libby as a result of those inquiries – reflect many of the most weighty national security issues that he faced and the issues with which he was most preoccupied. For the two periods at issue here – May 6, 2003 through July 14, 2003, when Mr. Libby was having the conversations alleged in the indictment, and July 15, 2003 through March 24, 2004, the period between the conversations and Mr. Libby's final grand jury appearance – these documents are material to establishing that any misstatements he may have made were the result of confusion, mistake, and faulty memory resulting from his immersion in other, more significant matters, rather than deliberate lies. The documents will assist in preparing Mr. Libby (if he chooses) to testify, and they will corroborate any testimony he or others give about the constant rush of meetings, briefings, and discussions that preoccupied him during the relevant period.

The fourth and fifth categories, which include any damage assessment relating to the disclosure of Ms. Wilson's identity and all documents relating to whether her employment status was classified, are similarly "material" under Rule 16(a)(1)(E)(i). The defense is entitled to review any CIA damage assessment – whether "formal" or not – to investigate whether the disclosure of Ms. Wilson's status as a CIA employee did any harm to national security. If evidence shows that this disclosure did very little, if any, harm to national security, this fact will undermine the prosecution's expected argument that Mr. Libby had a motive to lie to cover up his alleged disclosure of Ms. Wilson's CIA affiliation.

Similarly, documents concerning the allegation in the indictment that "[a]t all relevant times from January 1, 2002 through July 2003, Valerie Wilson was employed by the CIA, *and her employment status was classified*" are also material to the preparation of the defense. Indictment, Count One at ¶ 1(f) (emphasis added) The defense is entitled to investigate this allegation and prepare to challenge the prosecution's contention that Mr. Libby had reason to lie to the FBI and the grand jury about his conversations with reporters in July 2003. Even if such documents do not contradict the allegations in the indictment, they must nevertheless be disclosed under Rule 16, which requires the government to produce both inculpatory and exculpatory materials. Without documents concerning Ms. Wilson's employment status, Mr. Libby cannot prepare this critical element of his defense.

### C.    *Brady.*

In the pretrial setting, *Brady* requires disclosure of any information "'favorable to the accused' . . . without regard to whether the failure to disclose it likely

would affect the outcome of the upcoming trial." *Safavian*, 2005 U.S. Dist. LEXIS 34982, at *15 (citing *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1198-99 (C.D. Cal. 1999). Information is "favorable to the accused" if it "relates to guilt or punishment" and "tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses." *Id.* at *15-16. "[C]ourts in this jurisdiction look with disfavor on narrow readings by prosecutors of the government's obligations under *Brady*." *United States v. Edwards*, 191 F. Supp. 2d 88, 89-90 (D.D.C. 2002) (citing *United States v. Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988)).

For the reasons outlined in Parts II(A) and II(B) above, the five categories of discovery Mr. Libby seeks through this motion contain information "favorable to the accused" and thus must be produced. The information in categories 1, 2, and 3 may bolster the defense case that, to the extent Mr. Libby erred in his statements to the FBI and his grand jury testimony, he did so because of "confusion, mistake, or faulty memory," and not a "willful intent to provide false testimony." *Dunnigan*, 507 U.S. at 94. In addition, the discovery in those categories may assist in the impeachment of any prosecution witness who attempts to portray as memorable the conversations in June and July 2003 in which Mr. Libby allegedly discussed Ms. Wilson's employment status. Further, the requested information may assist Mr. Libby in contradicting any assertion by the prosecution or its witnesses that Mr. Libby had a motive to punish Mr. Wilson or a motive to conceal a vendetta against Mr. Wilson from the FBI or the grand jury. And the information in categories 4 and 5 may assist the defense in rebutting the prosecution's efforts to portray Ms. Wilson's employment status as a sensitive national security matter.

**D.    The *Yunis* Qualified Privilege.**

The preceding analysis demonstrates that, to the extent the documents Mr.

Libby requests are unclassified, the OSC must obtain and produce them under Rule 16

and *Brady*. To the extent those documents are properly classified, however,[11] the law of

this Circuit requires an additional step in the analysis. Before requiring the production of

classified documents, the Court must determine, under *Rezaq*, *Yunis*, and CIPA § 4, that

the documents "may be helpful to [the defendant's] defense." *Rezaq*, 134 F.3d at 1142;

*see Yunis*, 867 F.2d at 623; *cf. United States v. George*, 786 F. Supp. 11, 14 (D.D.C.

1991) (noting that "[i]t is unclear whether the *Yunis'* formulation actually alters the

requirement of materiality under [Rule 16(a)(1)(E)(i)]"). "A court applying this rule

should, of course, err on the side of protecting the interests of the defendant." *Rezaq*, 134

F.3d at 1142. For the reasons set forth in detail in Parts II(A) and (B) above, the five

requested categories of documents satisfy the "helpfulness" standard.

Any government claim of privilege is particularly weak in light of Mr.

Libby's past and current access to classified material. The defendants in *Rezaq* and *Yunis*

were charged with terrorism offenses. Neither had ever had access to classified

information. Disclosure of classified information to them would present a direct and

obvious threat to national security. By contrast, Mr. Libby had access to this country's

most sensitive secrets throughout his government career. That access continues now in

connection with this case. Moreover, categories 1, 2, and 3 consist of documents that Mr.

---

[11]    As *Yunis* makes clear, the Court must "determine if the assertion of [the classified information] privilege by the government is at least a colorable one." 867 F.2d at 623. The Court should review the requested documents *in camera* to make this determination.

Libby himself wrote (his notes) or that he saw in the course of his duties (the PDB and associated documents). Disclosure of these materials, in accordance with the CIPA protective order, presents no conceivable threat to national security. And although Mr. Libby has not previously seen documents in categories 4 and 5, the government cannot seriously contend that production of those materials to Mr. Libby and his counsel in their Sensitive Compartmented Information Facility would pose any realistic danger. Thus, "[w]hile . . . the high security clearance of the defendant does not necessarily remove this case from the strictures of the *Yunis* rule . . . [t]he concerns of the court and the government in *Yunis* are not fully applicable here because there has been no allegation that the defendant might use the information to bring harm to anyone." *George*, 786 F. Supp. at 14 n.1.

## CONCLUSION

For the foregoing reasons, the Court should hold (1) that "the government" for purposes of Rule 16 and *Brady* includes, at a minimum, the OSC, the FBI, the DOJ, the CIA, and the OVP, (2) that the five categories of documents requested in Mr. Libby's motion must be produced under Rule 16(a)(1)(B)(i), 16(a)(1)(E)(i), and *Brady*, to the extent they are unclassified, and (3) that the five categories of documents, to the extent they are classified, are "helpful to the defense" and must therefore be produced under *Rezaq*, *Yunis*, and CIPA § 4.

Finally, with respect to our requests for materials that may be classified, we emphasize that at this juncture the sole issues are whether these documents are material or helpful to the defense, and whether the OSC has an obligation to produce them. The question of how these classified materials may in fact be used before a jury will be

determined at a later date pursuant to the procedures outlined in CIPA.

January 31, 2006                                    Respectfully submitted,


/s/ Theodore V. Wells, Jr.                  /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                      William H. Jeffress, Jr.
(DC Bar No. 468934)                         (DC Bar No. 041152)
James L. Brochin                            Alex Bourelly
(DC Bar No. 455456)                         (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton               Baker Botts LLP
 & Garrison LLP                             1299 Pennsylvania Ave., NW
1285 Avenue of the Americas                 Washington, DC  20004
New York, NY  10019-6064                    (202) 639-7751
(212) 373-3089


/s/ Joseph A. Tate                          /s/ John D. Cline
Joseph A. Tate                              John D. Cline
Dechert LLP                                 (D.C. Bar No. 403824)
2929 Arch Street                            Jones Day
Cira Centre                                 555 California Street, 26th Floor
Philadelphia, PA  19104                     San Francisco, CA  94104
                                            Tel:  (415) 626-3939
                                            Fax:  (415) 875-5700