# EXHIBIT A

*HAND-DELIVERED TO CSO*
*MIKE MIRUSSO 12/14/05*
*2:15 PM*

# JONES DAY

555 CALIFORNIA STREET, 26TH FLOOR · SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE: (415) 626-3939 · FACSIMILE: (415) 875-5700



Direct Number: 415-875-5812
jcline@jonesday.com

December 14, 2005

**VIA HAND-DELIVERY**

Patrick J. Fitzgerald, Esquire
Special Counsel
Office of Special Counsel
Bond Building
1400 New York Avenue, Ninth Floor
Washington, DC NW  20530

    Re:    <u>United States</u> v. <u>I. Lewis Libby</u>, No. CR 05-394 (RBW);
            First Request for Classified Discovery

Dear Mr. Fitzgerald:

    As you know, this firm will take the lead on addressing classified information issues for the Libby defense. On behalf of Mr. Libby, we submit this first request for classified discovery. The documents that we request are discoverable under the Fifth and Sixth Amendments to the United States Constitution, <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963), and its progeny, and Fed. R. Crim. P. 16. We ask that you provide the discovery requested in this letter (including both classified and unclassified responsive documents) and advise us of any specific requests with which the government declines to comply. To the extent the government has already produced documents responsive to these requests, it is not necessary that those documents be produced again. We will be glad to meet with you to discuss the requests and attempt to resolve any differences we might have. We reserve the right to supplement these requests as the case progresses. These requests do not limit or modify requests already made or to be made in the future.

    The documents[1] requested include not only documents in the possession, custody, or control of your office, but also (a) documents in the possession, custody, or control of any agency allied with the prosecution, including without limitation the FBI, the CIA, and the Office of the Vice President ("OVP"), and (b) all other documents of which your office has knowledge

---

[1] The word "documents" includes all books, papers, letters, correspondence, e-mails, notebooks, reports, memoranda, studies, diaries, notes, messages, computer facilitated or transmitted materials, images, photographs, information in any computer database, audio and video tapes, recordings, transcripts, ledgers, printouts, and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever.

    As used in this letter, the words "and" and "or" mean "and/or," and the words "includes" and "including" mean "includes (or including) without limitation."

JONES DAY

Patrick J. Fitzgerald, Esquire
December 14, 2005
Page 2

and to which it has access. See, e.g., Kyles v. Whitley, 514 U.S. 419, 437 (1995); United States v. Santiago, 46 F.3d 885, 893-94 (9th Cir. 1995); United States v. Brooks, 966 F.2d 1500, 1501-05 (D.C. Cir. 1992); United States v. Haldeman, 559 F.2d 31, 74 (D.C. Cir. 1976); United States v. Poindexter, 727 F. Supp. 1470, 1477-78 (D.D.C. 1989).

## DISCOVERY REQUESTS

A. All of Mr. Libby's notes for the period May 6, 2003 through March 24, 2004, to the extent not already produced.

B. All documents provided to Mr. Libby in connection with his morning intelligence briefing during the period May 6, 2003 through March 24, 2004, including the President's Daily Brief ("PDB"), in its entirety, and additional materials provided for the Vice-President and Mr. Libby with the PDB.

C. All documents relating to inquiries made during or in connection with Mr. Libby's morning intelligence briefing for the period May 6, 2003 through March 24, 2004, and all documents provided to Mr. Libby as a result of those inquiries.

D. Any assessment done of the damage (if any) caused by the disclosure of Valerie Wilson's status as a CIA employee.

E. All documents, regardless of when created, relating to whether Valerie Wilson's status as a CIA employee, or any aspect of that status, was classified at any time between May 6, 2003 and July 14, 2003.

These documents are essential to the defense, including, for example, to negate any showing by the government that Mr. Libby acted with the mens rea alleged in the indictment and, in particular, that he knew the statements and testimony at issue were false when given. We would appreciate your response to these requests as soon as possible, so that we can attempt to resolve any disputes informally and timely file any necessary discovery motions.

**JONES DAY**

Patrick J. Fitzgerald, Esquire
December 14, 2005
Page 3

                              Very truly yours,

                              /s/

                              John D. Cline

Cc:   Theodore V. Wells, Jr., Esquire
       William H. Jeffress, Jr., Esquire

# EXHIBIT B



# Office of Special Counsel

Patrick J. Fitzgerald  
Special Counsel

Chicago Office: Dirksen Federal Building  
219 South Dearborn Street, Fifth Floor  
Chicago, Illinois 60604  
(312) 353-5300

Washington Office: Bond Building  
1400 New York Avenue, Ninth Floor  
Washington, DC NW 20530  
(202) 514-1187

*Please address all correspondence to the Washington Office*

**Via Telefax & Express Mail**                January 9, 2006

John D. Cline, Esquire  
JONES DAY  
555 California Street, 26th Floor  
San Francisco, CA 94104

Re:   United States v. I. Lewis Libby  
      No. CR 05-394 (RBW)

Dear Mr. Cline:

In response to your letter of December 14, 2005, requesting discovery both classified and unclassified, we adopt and incorporate as appropriate our responses to the prior discovery requests by other law firms representing Mr. Libby. In particular, we maintain the position expressed in our December 3, 2005 letter to counsel for Mr. Libby, that for purposes of Rule 16, we are not aligned with the various delineated government agencies other than the Federal Bureau of Investigation.

Moreover, we view the discovery request in the context of a criminal indictment which charges perjury, false statements and obstruction of justice but does not charge substantive violations of statutes premised on the wrongful disclosure of classified information.

With regard to your five specific requests, we respond as follows:

Request A: There are numerous documents which either have been provided to Mr. Libby and his counsel (hereafter collectively referred to as "Mr. Libby") or are in the process of being provided consistent with the process of a declassification review. We have previously advised counsel that it was our intention to provide copies of all documents produced to us by the Office of Vice President, which includes all copies of Mr. Libby's notes that we have in our possession. The documents obtained from the Office of Vice President number approximately 10,000 pages. In making such production, we are exceeding the scope of what is required to be produced pursuant to Rule 16. We will also commit that, if during the review of the documents received by us from the Office of Vice President we determine that it is not appropriate to produce a particular document to Mr. Libby, we will not withhold any such document without presenting an application to Judge Walton for a protective order pursuant to Rule 16 of the Federal Rules of Criminal Procedure or pursuant to the Classified Information Procedures Act ("CIPA").

John D. Cline, Esquire
JONES DAY
January 9, 2006
Page 2

    Your request, however, seeks copies of all notes of Mr. Libby for the time period of the eleven (11) months from May 6, 2003, through March 24, 2004. We did not seek (and thus did not obtain) all of Mr. Libby's notes from that time period. Instead, we have sought (and thus presumably obtained) from the Office of Vice President all of Mr. Libby's notes for the time periods May 6 through May 10, 2003, June 1 through July 25, 2003, July 28, 2003 and July 29, 2003, and September 27 through October 13, 2003. We have also requested more generally from the Office of Vice President all documents from February 1, 2002 through January 23, 2004 relating to Ambassador Joseph Wilson or his wife; Valerie Plame Wilson (or "Valerie Wilson" or "Valerie Plame"); and the trip undertaken by former Ambassador Joseph Wilson to Niger in 2002 (even if the items/documents themselves did not refer to Wilson by name). It is our assumption that all of Mr. Libby's notes that are responsive to our requests within that two-year time frame have been produced to us, and are thus in the set of materials being produced to you. We do not have any other notes of Mr. Libby and therefore cannot produce them to you.

Requests B and C: As you are no doubt aware, the documents referred to as Presidential Daily Briefs ("PDBs") are extraordinarily sensitive documents which are usually highly classified. We have never requested copies of any PDBs. However, we did ask for relevant documents relating to Ambassador Joseph Wilson or his wife; Valerie Plame Wilson (or "Valerie Wilson" or "Valerie Plame"); and the trip undertaken by former Ambassador Joseph Wilson to Niger in 2002 (even if the items/documents themselves did not refer to Wilson by name) from the Executive Office of the President and the Office of Vice President. We also sought from the Central Intelligence Agency documents relating to the same items, with the exception that the CIA was not requested to produce documents in its files regarding Valerie Plame Wilson that were not related directly or indirectly to Ambassador Wilson's travel to Niger in February 2002. In response to our requests, we have received a very discrete amount of material relating to PDBs and discussions involving Mr. Libby and/or Vice President Cheney concerning or related to the PDBs. We have provided to Mr. Libby and his counsel (or are in the process of providing such documents consistent with the process of a declassification review) copies of any pages in our possession reflecting discussions of Joseph Wilson, Valerie Wilson and/or Wilson's trip to Niger contained in (or written on) copies of the President's Daily Brief ("PDB") in the redacted form in which we received them. We have also included any writings in or on documents reflecting inquiries by Mr. Libby and any responses to him which concern Ambassador Wilson, his wife or the trip to Niger.

    Your request seeks copies of all PDBs (and any additional materials provided to the Vice President and any documents reflecting any inquiries or responses, presumably about any topic) for the time period of approximately eleven (11) months from May 6, 2003, through March 24, 2004, and without regard to whether the content is relevant to the subject matter of this case. We do not have such materials in our possession other than to the very limited extent discussed above.

John D. Cline, Esquire
JONES DAY
January 9, 2006
Page 3

**Request D:** A formal assessment has not been done of the damage caused by the disclosure of Valerie Wilson's status as a CIA employee, and thus we possess no such document. In any event, we would not view an assessment of the damage caused by the disclosure as relevant to the issue of whether or nor Mr. Libby intentionally lied when he made the statements and gave the grand jury testimony which the grand jury alleged was false.

**Request E:** We have neither sought, much less obtained, "all documents, regardless of when created, relating to whether Valerie Wilson's status as a CIA employee, or any aspect of that status, was classified at any time between May 6, 2003, and July 14, 2003." We will review all documents we received from the CIA for any discussion concerning whether Valerie Wilson's status as a CIA employee, or any aspect of that status, was classified at any time between May 6, 2003, and July 14, 2003. Although we do not concede that all such documents in our possession are required to be produced by Rule 16, if we locate any such documents, we will either produce them to you or seek an appropriate protective order pursuant to either Rule 16 or CIPA. In our view, documentation regarding Ms. Wilson's then classified job status is not relevant to the issue of whether or nor Mr. Libby intentionally lied when he made the statements and gave the grand jury testimony that the grand jury alleged was false. That Ms. Wilson's employment status was classified may generally be relevant for the limited purpose of placing the investigation in context does not mean that all documents discussing that fact become discoverable in a perjury prosecution.

I should also add that we have discussed with counsel for Mr. Libby on a prior occasion a proposal that we seek permission of the Court for both parties to obtain early return of trial subpoenas and suggested that we consider an agreement that both parties promptly would provide reciprocal production of all documents obtained. If counsel for Mr. Libby is agreeable to such a proposal, we can make such an application jointly at the time of our February 3, 2006 conference, or by motion prior to such time if necessary.

Should you have any questions or comments regarding any of the foregoing, or should you wish to discuss this matter generally, please do not hesitate to call me at the number listed above.

Very truly yours,

PATRICK J. FITZGERALD
Special Counsel

cc: Theodore V. Wells, Jr., Esquire
William H. Jeffress, Jr., Esquire
Joseph A. Tate, Esquire

# EXHIBIT C



# Office of Special Counsel

| | | |
|---|---|---|
| Patrick J. Fitzgerald<br>Special Counsel | Chicago Office: Dirksen Federal Building<br>219 South Dearborn Street, Fifth Floor<br>Chicago, Illinois 60604<br>(312) 353-5300 | Washington Office: Bond Building<br>1400 New York Avenue, Ninth Floor<br>Washington, DC 20530<br>(202) 514-1187 |

*Please address all correspondence to the Washington Office*

**Via Telefax & Regular Mail**          January 23, 2006

William Jeffress, Esquire          Theodore V. Wells, Esquire          Joseph A. Tate, Esquire
BAKER BOTTS                        PAUL WEISS LLP                      DECHERT LLP
The Warner                         1285 Avenue of the Americas         Cira Centre
1299 Pennsylvania Avenue, N.W.     New York, NY 10019-6064             2929 Arch Street
Washington, DC 20004-2400                                              Philadelphia, PA 19103

Re: United States v. I. Lewis Libby

Dear Counsel:

This letter is in response to your letter of January 5, 2006. We incorporate the prior responses in our letters of December 3, 2005, and January 9, 2006. This follows our telephone conference of January 18, 2006.

As a preliminary matter, your letter indicates a belief that it is "very common" in the District of Columbia to engage in "open file" discovery, but my understanding is to the contrary. To my understanding, "open file" discovery is not common in that district, nor in the Department of Justice more broadly. That is particularly the case where the matter involves extensive classified and national security materials. Moreover, it is not the ordinary practice for federal prosecutors to provide discovery in a perjury/obstruction of justice prosecution as to all matters that were considered but not charged in the overarching grand jury investigation, particularly one that is ongoing. As you are aware, your client has not been charged with a substantive violation of Title 18, United States Code, Section 793. Accordingly, your client is not entitled to discovery of sensitive national security materials pertinent only to a prosecution of a substantive violation of that statute.

In any event, the fact that we have not elected to provide you with everything the defense has requested should not obscure the fact that the defense is being given far more discovery than is required by the language of Rule 16 of the Federal Rules of Criminal Procedure. To cite but one example, we are making available to you all material obtained from the Office of Vice President: in essence, "open file" discovery regarding the office where your client was employed. We have endeavored to draw a line that expedites resolution of this matter while at the same time safeguarding other governmental interests and the ongoing investigation. In making discovery

Attorneys Jeffress, Wells & Tate
January 23, 2006
Page 2

determinations, we have endeavored to provide no preferential treatment of Mr. Libby solely on account of his former official position.

I note that our January 18, 2006, telephone conference was productive in achieving a clearer understanding of the areas where we disagree which will lend itself to presentation to the court for resolution. We also agreed during the telephone conference that if we decided to produce any items to you despite our belief that we were not required to do so that you would not view such production as a waiver of our position that such discovery was not required or argue that such a production was a concession that we were obligated to produce any additional documents that may be in the possession of other government agencies.

In your requests, you greatly expand the sweep of subsection 16(a)(1)(E) which governs "documents and objects" by making requests for "information," rather than "documents and objects," and by defining documents "material to preparing the defense" to include memos, recordings and transcripts in a manner which would sweep in grand jury minutes and reports of interview (most commonly reports of interview in the form of FBI form 302's). That is flatly inconsistent with the narrower category of "documents and objects" set forth in subsection 16(a)(1)(E) and is contrary to both subsection 16(a)(2) which says that reports and government memoranda (prepared by an attorney or agent) are not discoverable, and to subsection 16(a)(3) which limits grand jury transcript discovery to the defendant's grand jury testimony. To define "documents" to include grand jury transcripts and debriefing reports would contravene the Jencks Act and the enumerated provisions of Rule 16. Thus, in reviewing our response, you should understand that, unless specified otherwise below, we are not producing such grand jury transcripts or FBI 302's or other reports, as they are not required to be produced pursuant to Rule 16.

We respond in greater detail to your enumerated requests as follows:

(1): You demand access to all documents referencing Mr. Wilson's 2002 trip to Iraq. The relevance of Mr. Wilson's 2002 trip is the fact that it occurred and that it became a subject of discussion in spring 2003. What took place during that trip is not relevant to the issue of whether Mr. Libby lied about his spring 2003 conversations with various reporters and government officials about Mr. Wilson's wife's employment at the Central Intelligence Agency ("CIA"). Thus, a request for every document which in any way relates to Mr. Wilson's trip and any communications Mr. Wilson had with anybody at any time about the trip is over broad and any attempt to comply with such a request would significantly delay, not expedite, resolution of this matter. Nonetheless, all documents in our possession reflecting conversations involving defendant Libby about Wilson's trip, or meetings Mr. Libby attended during which Mr. Wilson's trip was discussed, have been produced or will be produced prior to February 3. Moreover, when you review the materials in our possession which we have produced or will be producing to you, specifically including the copies of all documents obtained from the Office of Vice President and the materials from our set of

Attorneys Jeffress, Wells & Tate
January 23, 2006
Page 3

documents obtained from the Central Intelligence Agency ("CIA"), you will note that they include substantial materials which concern or reflect Mr. Wilson's trip.

(2): We do not have any responsive materials other than material that would be produced pursuant to the Jencks Act if the Government were to call Mr. Wilson to testify at trial, which we do not expect to do. You are obviously aware that Mr. Wilson has made public speeches, written an Op Ed in the *New York Times*, published a book and has been interviewed by media.

(3): As set forth in our prior correspondence, we will not produce every document related in any way to Ms. Wilson's employment, nor is Mr. Libby entitled to every document that might reflect on the damage to national security from disclosure of her employment. However, as we discussed during our telephone conference call on January 18, we intend to address the matter of the use, relevance and admissibility of information concerning Ms. Wilson's employment at the CIA in the context of the Classified Information Procedures Act ("CIPA").

(4): While we do not believe we are required to do so, we will advise you of certain information responsive to your request by letter on or before February 3.

(5): As we previously advised you, we have no formal damage assessment in our possession but, as we discussed during our telephone conference call on January 18, we intend to address the matter of the relevance and admissibility of Ms. Wilson's employment at the CIA in the context of CIPA.

(6) (7) and (8): Aside from any Jencks Act material which will not be produced as discovery, all responsive documents have been produced to you or will be produced to you on or before February 3. As we noted during our conference call, we do not agree that you are entitled to all such materials or that the scope of your request is proper but you are receiving all responsive documents in our possession. We also advised you that when gathering materials during the investigation we did not focus our searches on a topic as broad as that set forth in the request in 7(e).

(9): This request in effect seeks discovery concerning any other subjects of the ongoing investigation. We have not produced, and do not intend to produce, all documents regarding contacts between government officials other than Mr. Libby and reporters prior to July 14, 2003, but have produced (or will produce before February 3) all documents reflecting contact between Mr. Libby and reporters responsive to this request. Lest there be any doubt, we do have some documents responsive to your request which we are electing not to produce because we do not agree that we are obligated to provide them.

(10) and (11): Aside from any Jencks Act material which will not be produced as discovery, all responsive documents have been produced to you or will be produced to you on or before February 3.

Attorneys Jeffress, Wells & Tate
January 23, 2006
Page 4

In your section entitled "Information Relating to the Government's Investigation of the Media," you assert that the government takes the position that the defense is not entitled to receive in discovery the contemporaneous notes made by the reporters who spoke to Libby, but do not note that you have been provided with all notes in the government's possession that were made by reporters when speaking to Mr. Libby. (As discussed above, the Government has declined to provide notes of conversations between reporters and other government officials.) You elsewhere stated that we declined to provide "any" information about reporters when in fact we have produced documents obtained from media entities as you elsewhere acknowledge.

(12)-(16): While we do not intend to provide discovery in this regard, and while not required to do so, in order to expedite litigation of this matter we advised you during the January 18 conference call that we were not aware of any reporters who knew prior to July 14, 2003, that Valerie Plame, Ambassador Wilson's wife, worked at the CIA, other than: Bob Woodward, Judith Miller, Bob Novak, Walter Pincus and Matthew Cooper.[1] There are published accounts of when Ms. Miller and Mr. Cooper first learned about Mr. Wilson's wife and from whom. Mr. Woodward has publicly described his conversation with Mr. Libby on June 27, 2003, as well as the general timing ("mid-June") of his conversation with another unnamed government official with whom he then spoke about Mr. Wilson's wife. Mr. Woodward has also described his conversations in 2003 and later with Mr. Pincus on the subject. Mr. Pincus has published his account of when he first learned information about Wilson's wife from a source he does not name. Mr. Novak has published his account of when he learned about Wilson's wife (some time after July 6) without naming his sources in the account.

We also advise you that we understand that reporter John Dickerson of *Time* magazine discussed the trip by Mr. Wilson with government officials at some time on July 11 or after, subsequent to Mr. Cooper learning about Mr. Wilson's wife. Any conversations involving Mr. Dickerson likely took place in Africa and occurred after July 11.

We note that we understand from our January 18 telephone conference that the requests numbered 13 and 14 were intended to be requests limited to the time frame prior to July 14, 2003.

We otherwise are not producing documents responsive to your request concerning other officials who were in contact with other reporters, as outlined above.

In addition, you seek miscellaneous items for discovery in an effort to prepare motions. While we do not agree that there is a separate entitlement to discovery in order to facilitate motions which may or may not be well grounded, we advise you of the following in response to your enumerated requests:

---

[1] This statement is not meant to imply that each and every reporter named knew her name prior to July 14, 2003.

Attorneys Jeffress, Wells & Tate
January 23, 2006
Page 5

(17): We are reviewing the CIA referral document and will either produce the same to you or advise you otherwise shortly. We do not intend to produce "all documents relating to" that referral document as that could potentially implicate all documents in this investigation.

(18): We are seeking to obtain a copy of the order empaneling the grand jury public which we did not have in our possession and will either produce the same to you or advise you otherwise shortly.

(19)-(22): We will be providing to you prior to February 3 copies of subpoenas and pertinent correspondence relating to reporters referenced in the Indictment and/or whom we expect to call at trial.[2] We are specifically withholding subpoenas (and correspondence) which were addressed to reporters whose testimony was directed towards government officials other than Mr. Libby.

The Requests for Asserted "Brady" Material

We recognize that your requests for discovery seek the categories of items requested both pursuant to Rule 16 as well as pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). We do not agree, however, that each of your requests is appropriate under the governing standards nor, as discussed in prior correspondence, do we agree with your implicit view that we are aligned with all government agencies for purposes of discovery.

(A): We are aware of our *Brady* and *Giglio* obligations regarding witnesses and will comply with those obligations.

(B) and (C): We do not agree that if there were any documents indicating that Ms. Wilson's employment was not classified during the relevant times that any such documents would constitute *Brady* material in a case where Mr. Libby is not charged with a violation of statutes prohibiting the disclosure of classified information.[3]

(C): We do not agree that if there were any documents indicating that Ms. Wilson did not act in an undercover capacity or did not act covertly in the five years prior to July 2003 (which we neither confirm nor deny) that any such documents would constitute *Brady* material in a case where

---

[2] We are not providing correspondence such as transmittal letters, legal briefs filed, appellate briefs filed and various correspondence concerning scheduling, filing, sealing, redacting and unsealing of briefs and other court documents regarding litigation.

[3] I note that Ms. Wilson's employment status was classified but has since been declassified so that we may now confirm such status. In any event, we are not aware of any documents in our possession stating that Ms. Wilson's affiliation with the CIA was not classified at the relevant times.

Attorneys Jeffress, Wells & Tate
January 23, 2006
Page 6

Mr. Libby is not charged with a violation of statutes prohibiting the disclosure of classified information.

(D) and (E): We do not agree that any documents indicating that any reporter heard or suspected prior to July 14, 2003, that Ms. Wilson worked at the CIA constitutes *Brady* material but in any event incorporate our earlier response on this issue.

(F): We do not agree that any time witnesses disagree on facts that you are entitled to all documents so indicating in advance. We are aware of our *Brady* and *Giglio* obligations regarding witnesses and will comply with those obligations.

(G): We do not agree that all documents reflecting favorably on Mr. Libby's character or reputation for truthfulness or reflecting his propensity to comply with laws, regulations and nondisclosure agreements or of assuring that others complied with those regulations constitute *Brady* material (nor that such documents could be easily defined) as prior instances of non-criminal conduct are not considered exculpatory.

(H): Your request for *Giglio* impeachment material is premature and over broad. You will receive such material for Government witnesses, not for "potential" Government witnesses (however that term is defined). Moreover, the scope of records you seek is far beyond the scope of what is required. By way of illustrative (but not exhaustive) example, you seek all documents relating to any juvenile arrest of any potential government witness in a case where there will be no witnesses where any such arrest would be remotely recent or relevant to the trial.

Other requests:

There have been no search warrants executed and no communications intercepted pursuant to Title III at the direction of the prosecution team during the course of this investigation.

At this time we do not intend to offer any evidence of "other crimes" pursuant to Rule 404(b). As we discussed during our telephone conversation, Mr. Libby testified in the grand jury that he had contact with reporters in which he disclosed the content of the National Intelligence Estimate ("NIE") to such reporters in the course of his interaction with reporters in June and July 2003 (and caused at least one other government official to discuss the NIE with the media in July 2003). We also note that it is our understanding that Mr. Libby testified that he was authorized to disclose information about the NIE to the press by his superiors. We expect that such conduct will be the subject of proof at trial in that we intend to introduce Libby's grand jury transcript in evidence and Mr. Libby has testified that the purpose of his July 8 meeting with Ms. Miller was to transmit information concerning the NIE. Our anticipated basis for offering such evidence is that such facts are inextricably intertwined with the narrative of the events of spring 2003, as Libby's testimony itself makes plain. At this time, we do not intend to offer the evidence pursuant to Rule 404(b).

Attorneys Jeffress, Wells & Tate
January 23, 2006
Page 7

      We are not obligated at this time to disclose impeachment material of Mr. Libby should he testify in his defense.

      We are aware of no evidence pertinent to the charges against defendant Libby which has been destroyed. In an abundance of caution, we advise you that we have learned that not all email of the Office of Vice President and the Executive Office of President for certain time periods in 2003 was preserved through the normal archiving process on the White House computer system.

      Should you have any questions or comments regarding any of the foregoing, or should you wish to discuss this matter generally, please do not hesitate to call me at the number listed above.

                              Very truly yours,

                              PATRICK J. FITZGERALD
                              Special Counsel