UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. NO 05-394 (RBW) |
| v. | ) | |
| | ) | |
| I. LEWIS LIBBY, | ) | |
| also known as "Scooter Libby" | ) | |

### GOVERNMENT'S CONSOLIDATED RESPONSE TO
### DEFENSE MOTIONS TO COMPEL DISCOVERY

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, SPECIAL

COUNSEL, respectfully submits the following consolidated response to the Motion of I.

Lewis Libby to Compel Discovery of Information Regarding News Reporters and

Organizations, and to Compel Discovery of Rule 16 and Brady Material in the Possession

of Other Agencies.

### INTRODUCTION

On October 28, 2005, a federal grand jury returned a five-count indictment charging

defendant I. Lewis "Scooter" Libby with obstruction of justice, perjury, and making false

statements to federal investigators, in violation of 18 U.S.C. §§ 1503, 1623 and 1001, in

connection with an investigation concerning leaks to reporters of then-classified information

regarding the employment of Valerie Plame Wilson.

As reported to the Court on February 6, 2006, the government has provided defendant

with more than 11,000 pages of classified and unclassified discovery, including numerous

documents obtained from the defendant's former employer, the Office of the Vice President,

as well as relevant documents obtained by subpoena from other government agencies and

individual witnesses.  By the instant motions, defendant seeks an order requiring the production of (a) materials concerning communications between news reporters and government officials other than defendant during the spring of 2003; (b) materials unrelated to Ms. Wilson's employment status, including defendant's notes and Presidential Daily Briefs, prepared during the period May 6, 2003 through March 24, 2004; and (c) documents referencing Ms. Wilson's classified employment status and the actual damage caused by the disclosure of such status.  As demonstrated below, the government has produced all documents and information to which defendant is entitled, and requiring the production of the additional materials sought by defendant would unreasonably encroach on legitimate interests of national security, grand jury secrecy, and executive privilege, and would cause unnecessary delay in the litigation of this case, with little or no benefit to the defendant.

## **ARGUMENT**

### I.    **Applicable Legal Standards**

#### A.    **Documents and Tangible Objects Material To the Preparation of the Defense**

"The law is clear that the United States is not required simply to turn all its files over to a defendant." *United States v. Poindexter*, 727 F. Supp. 1470, 1485 (D.D.C. 1989), rev'd on other grounds, 951 F.2d 369 (D.C. Cir.1991). *See also United States v. Agurs*, 427 U.S. 97, 106 (1976)(the government is under "no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor"); *United States v. Bagley*, 473 U.S. 667, 676 (1985)("the prosecutor is not required to deliver his entire file to defense counsel");

*Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)(there is no general constitutional right to discovery in a criminal case). To the contrary, discovery in a criminal case is limited to that provided by statute, rule, or case law. See Fed. R. Crim. P. 12(I), 12.1, 12.2, 12.3, 16, 26.2, and 46(I); 18 U.S.C. §§ 3500 and 3505(b); Fed. R. Evid. 404(b), 803(24), and 804(b)(5); and *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972).

Fed. R. Crim. P. 16 provides:

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

In order to obtain discovery on the ground that documents are material to the preparation of defendant's defense, it is insufficient to show that the documents sought "bear some abstract logical relationship to the issues in the case." *United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991)(Lamberth, J.)(*citing United States v. Secord*, 726 F. Supp. 845, 846 (D.D.C. 1989) and *United States v. Ross*, 511 F.2d 757, 762-63 (5th Cir.), *cert. denied*, 423 U.S. 836 (1975)). *See also United States v. Caaicedo-Llanos*, 960 F.2d 158, 164, fn. 14 (D.C. Cir. 1992). Instead, "[t]here must be some indication that pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor." *Id.* Specifically, the defendant must show that "'there is a strong indication that [the documents sought] will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'"

3

*United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998)(quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

In the context of Rule 16, "'the defendant's defense' means the defendant's response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462-63 (1996). Therefore, "[w]hen analyzing materiality, a court should focus first on the indictment which sets out the issues to which the defendant's theory of the case must respond." *George*, 786 F. Supp. at 13 (*citing United States v. Secord*, 726 F. Supp. 845, 846 (D.D.C.1989)) (quoting *United States v. Ross*, 511 F.2d 757, 762-3 (5th Cir.), *cert. denied*, 423 U.S. 836 1975)).

"Materiality is, to some degree, a sliding scale; when the requested documents are only tangentially relevant, the court may consider other factors, such as the burden on the government that production would entail or the national security interests at stake, in deciding the issue of materiality." *George*, 786 F. Supp. at 58 (citing *Ross* 511 F.2d at 763 and *Poindexter*, 727 F. Supp. at 1473). In determining whether information is material, the court also must consider the extensiveness of the material that the government already has produced, and the availability of the disputed material from other sources, including the defendant's own knowledge. *See United States v. Ross*, 511 F.2d at 762-63, and cases cited therein.

4

B.    **Statements of Prospective Witnesses**

Statements and grand jury testimony of prospective witnesses are protected from pretrial disclosure by the Jencks Act, and thus are not covered by Rule 16. *United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988)("Federal Rule of Criminal Procedure 16(a)(2) prohibits discovery of statements by government witnesses or prospective government witnesses except as provided in the Jencks Act, 18 U.S.C. Sec. 3500"). *See also Palermo v. United States*, 360 U.S. 343 (1959)(Rule 16 does not authorize "the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. Sec. 3500."); *United States v. Haldeman*, 559 F.2d 31, 77 n. 111 (D.C. Cir. 1976)("'statements of a government witness made to an agent of the Government which cannot be produced under the terms of 18 U.S.C. Sec 3500 ... cannot be produced at all.'")(quoting *Palermo v. United States*, 360 U.S. at 351).

C.    **Favorable Evidence**

The government has a duty to produce to the defendant evidence favorable to the defendant that is material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Bagley*, 473 U.S. 667, 674-75 (1985). Evidence that is exculpatory, and evidence that may be used to impeach the prosecution's witnesses is considered "favorable," and, if material, must be disclosed to the defendant. *Giglio v. United States*, 405 U.S. 150, 154-44 (1972). The government is not, however, required to "provide to the defendant evidence that . . . is merely not inculpatory and might therefore form the

groundwork for some argument in favor of the defense." *United States v. Poindexter*, 727 F. Supp. 1470, 1485 (D.D.C. 1989), *rev'd on other grounds*, 951 F.2d 369 (D.C. Cir.1991).

### D.    Documents and Objects In the Possession or Control of the Government

A prosecutor's duty to disclose information under Rule 16 and *Brady* extends to "others acting on the government's behalf in the case." *Strickler v. Greene*, 527 U.S. 263, 281 (1999)(quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). Thus, the government has a "duty to search files maintained in branches of government 'closely aligned with the prosecution.'" *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)(given close relationship between Washington Metropolitan Police and the U.S. Attorney for the District of Columbia, federal prosecutor had duty to search for and disclose specific file related to witness); *United States v. Jordan*, 316 F.3d 1215, 1249 (11th Cir. 2003) (possession, custody, or control of the government for Rule 16 purposes includes government agencies "closely connected to the prosecutor"); *Moon v. Head*, 285 F.3d 1301, 1309-10 (11th Cir. 2002)("'prosecution team' means 'the prosecutor or anyone over whom he has authority'")(internal citations and quotations omitted), *cert. denied*, 537 U.S. 1124 (2003).

Conversely, the prosecution has no general duty to locate and disclose information possessed by other government agencies that have no involvement in the investigation or prosecution at issue. *See, e.g., United States v. Casas*, 356 F.3d 104, 116 (1st Cir.)(no *Brady* violation where prosecution failed to disclose document in the possession of another federal agency not under the prosecution's control), *cert. denied*, 541 U.S. 1069 (2004);

6

*United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir.)(no *Brady* violation despite failure to disclose information possessed by Office of Thrift Supervision, SEC, and IRS where prosecutor was unaware agencies held any exculpatory evidence and agencies were not part of investigative or prosecution team), *cert. denied*, 519 U.S. 868 (1996); *United States v. Velte*, 331 F.3d 673, 680 (9th Cir. 2003)(no *Brady* violation despite failure to disclose report held by government weather station where station was not "acting on the government's behalf"), *cert. denied*, 541 U.S. 912 (2004); *United States v. Pelullo*, 399 F.3d 197, 218 (3d Cir. 2005)(prosecution had no obligation to produce documents of related agency in absence of indication that prosecution had control over agency officials who were collecting documents, or that agency engaged in joint investigation or shared resources), *cert. denied*, 126 S.Ct. 1141(2006).

Where the prosecutor has both 'knowledge of and access to the documents sought by the defendant,'" the government may be required to produce documents in the possession of other agencies. *United States v. Santiago*, 46 F.3d 885, 893-94 (9th Cir.) *cert. denied*, 515 U.S. 1162 (1995)(holding that prosecutor had duty to produce documents in possession of the Bureau of Prisons where the prosecutor had both knowledge of and access to the requested document).

The prosecution is not required to obtain and produce documents from other agencies, simply because they are part of the Executive Branch. As stated in *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir.), *cert. denied*, 493 U.S. 858 (1989), a

> federal prosecutor need not comb the files of every federal agency which might have documents regarding the defendant in order to fulfill his or her obligations under Rule16(a)(1)(C). [G]iving 'government' its broadest reading by expanding it to include all federal agencies . . . would not only wreak havoc, but would give the defense access to information not readily available to the prosecution[.]

(internal quotations omitted). Similarly, the court in *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999), *cert. denied*, 529 U.S. 1077 (2000) commented:

> the imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis.

(internal quotations and citations omitted in original). *See also United States v. Liquid Sugars, Inc.*, 158 F.R.D. 466, 474 (E.D. Ca. 1994) ("for obvious practical reasons, not every governmental agency can be considered as part of the 'government' for discovery purposes"). *But see United States v. Safavian*, 2005 WL 3529834 (D.D.C. Dec. 23, 2005)(Friedman, J.) (holding, without supporting authority, that the government's discovery obligations extend to all Executive Branch agencies).

### E.    Discovery of Classified Documents

"[A] defendant seeking classified information is not entitled to receive it on a mere showing of theoretical relevance, but is entitled only to information that is at least helpful to the defense of the accused." *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998)(quoting *United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989)(internal quotation marks and citation omitted).

## II.     Defendant's Motion to Compel Discovery Concerning Reporters Should be Denied.

The defendant seeks access to all documents and information reflecting knowledge of the employment of Valerie Plame Wilson on the part of any reporter or news organization in the government's possession, regardless of whether there exists any connection between such information or documents and the defendant.  Specifically, the defendant has moved to compel the production of:  (a) all documents and information reflecting knowledge by any reporter or employee of any news organization concerning Ms. Wilson's possible affiliation with the CIA, or any role of Ms. Wilson in connection with former Ambassador Wilson's trip to Niger, prior to July 14, 2003 (the date upon which such information was disseminated through the publication of an article by a syndicated columnist Robert Novak); (b) all documents and information reflecting any mention of Ms. Wilson in any communication between any government official and any reporter or news organization employee, prior to July 14, 2003; and (c) copies of all subpoenas to reporters, and all agreements regarding the scope of testimony and documents to be provided by those reporters.

The government has provided the defendant with full disclosure of documents and information obtained during the course of the investigation that relate in any way to the defendant's communications with members of the news media concerning Ms. Wilson.[1]  The

---

[1]  The materials produced to defendant, and the materials withheld from discovery, are itemized in an Affidavit of Special Counsel dated February 16, 2006, which is submitted *ex parte* and under seal because it makes extensive references to sensitive grand jury information, including the identities of witnesses, the substance of grand jury testimony, and the strategy or direction of the investigation, which is continuing.  *See In re Grand Jury Subpoena, Miller*, 405 F.3d 17, 18 (D.C.

materials produced to the defendant include subpoenas, correspondence, and other documents related to all reporters with whom the defendant spoke or claimed to have spoken regarding Ms. Wilson prior to July 14, 2003, all reporters who were questioned about contacts with the defendant, and all persons with whom Libby spoke or claimed to have spoken regarding communications with reporters on this subject. While the government has not disclosed statements and testimony of reporters whom the government expects to call as witnesses at trial (Jencks Act material), the government has produced to the defendant transcripts of grand jury testimony of some reporters.

In an effort to expedite the litigation, the government also provided the defendant with information and documents related to reporters who obtained information regarding Ms. Wilson's employment from sources other than the defendant, despite its view that such documents and information were not relevant or material to the preparation of the defendant's defense.[2] The government disclosed to the defendant the identity of every reporter whom the government had identified as receiving information regarding Ms. Wilson's employment prior to July 14, 2003, and also has disclosed the substance of many of the reporters' testimony or statements regarding their knowledge of Ms. Wilson's

---

Cir. 2005); *In re Grand Jury Subpoena, Judith Miller*, 397 F.3d 964, 973 (D.C. Cir. 2005).

[2] The government produced these materials on the condition that the production would not be taken as a waiver of its contention that the such items were irrelevant and immaterial to the preparation of the defendant's defense.

employment prior to that date.  The government further produced to defendant copies of all subpoenas issued to reporters and/or news organizations to date.

The only type of evidence related to reporters the government has withheld is information and testimony regarding individuals other than the defendant.  This evidence need not be disclosed because the evidence (a) is neither relevant nor material to the preparation of the defendant's defense; and (b) could not be disclosed consistently with the government's obligation to protect grand jury secrecy under Fed. R. Crim. P. 6(e) in order to shield from disclosure the "innocent accused," as well as to assure the integrity of the grand jury's ongoing investigation.  *See In re Grand Jury Subpoena, Judith Miller*, 2006 WL 250224 (D.C. Cir. Feb. 3, 2006).  *See also In re Sealed Case*, 237 F.3d 657, 667 (D.C. Cir. 2001)(quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 n. 6 (1958)(internal quotation marks omitted)); *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 219 (1979).

The defendant has not, and cannot, establish that the withheld information is material to the preparation of his defense, much less that his need for the information outweighs the continuing need for grand jury secrecy.  Indeed, information regarding reporters with whom the defendant had no contact, and reporters' sources other than the defendant, is highly unlikely to "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'"  *See Marshall*, 132 F.3d at 68.  The defendant is not charged with falsely characterizing what journalists

11

knew prior to the July 14, 2003, as he contends.  Instead, the indictment charges the defendant with lying about what *he* knew and did not know about Ms. Wilson, what reporters said and did not say to *him*, and what *he* said and did not say to reporters, prior to July 14, 2003.  Given the nature of the charges, defendant's legitimate defense necessarily must focus on the defendant's state of mind, rather than that of others.  *See*, *e.g.*, *United States* v. *Secord*, 726 F. Supp. 845, 848-49 (D.D.C. 1989)(Robinson, J.)(holding that information of which defendant had no knowledge was immaterial to the defendant's state of mind, intent or motive).[3]  The fact that some reporters may have known of Ms. Wilson's employment could only be relevant if the defendant, or the reporters with whom the defendant spoke, became aware of it.

Nor is information regarding other reporter's sources material to the issue of whether the defendant was involved in a plot to discredit Mr. Wilson, or the issue of whether reporter Matthew Cooper is biased against the defendant.  The defendant is not charged with participating in a plot to discredit Wilson, and even if he were, the motives of others would have little if any probative value with respect to the defendant's motive and intent.  Similarly, only information known to Mr. Cooper, rather than facts of which Mr. Cooper was unaware,

---

[3] In *George*, when comparing the ruling of Judge Greene in *Poindexter* allowing discovery concerning documents about the knowledge of others and the ruling of former Chief Judge Robinson in *United States* v. *Secord*, 726 F. Supp. 845  (D.D.C. 1989), denying discovery concerning the knowledge of others absent proof that the defendant knew what information the others had, Judge Lamberth commented that "Judge Robinson has the better of the argument," and denied the defendant's motion for discovery.  *Id*. at 64. *But see United States v. Safavian*, 2005 WL 3529834 (D.D.C. Dec. 23, 2005).

could form any possible basis for cross-examination related to bias, and information concerning Mr. Cooper's knowledge is available to the defendant through Mr. Cooper's published articles. Nor is the defendant entitled to know the identity of every reporter's source in order to prove that such a source may not have "considered" Ms. Wilson's employment classified, or to be able to investigate the possibility that Ms. Wilson's employment was actually well known outside the intelligence community before July 14, 2003. Since the withheld evidence is not relevant, much less material, it certainly cannot be characterized as "favorable" to the defense within the meaning of *Brady*.

Because the best that can be said is that the evidence at issue here is tangentially relevant, this Court must consider other factors, such as the extensiveness of the other evidence produced by the government, and the potential burden of requiring production. *See George*, 786 F. Supp. at 58 ; *Ross*, 511 F.2d at 762-63, and cases cited therein. As detailed in the *ex parte* submission of Special Counsel, the government has produced to the defendant substantial documents and information in its possession related to reporters and news organizations, and has withheld only limited information in order to preserve grand jury secrecy with respect to matters that are not material to the defendant's defense. Moreover, the defendant is aware of the substance of the testimony of most of the reporters based on the reporters' public accounts. Because the costs of producing the withheld information, including prejudice to the "innocent accused," interference with an ongoing grand jury investigation, and potentially protracted litigation of claims of reporter's privilege, far

outweigh the minimal value of the information that has not been produced to the defendant, this Court should deny the defendant's motion to compel discovery of information regarding reporters.

### III.   The Defendant's Motion to Compel Discovery of Rule 16 and Brady Material Should Be Denied.

The government has agreed to provide the defendant with documents obtained from the Office of the Vice President, and to seek a ruling from the Court with respect to any such documents that it determines should not be produced.  In addition, the government has provided relevant documents obtained from sources other than the Office of the Vice President that reflect communications between government officials and others regarding Ms. Wilson's employment.

The defendant now seeks access to a wide array of intelligence-related information, much of which has no relation to the crimes of which he is charged.  Specifically, the defendant seeks:  (a) for the period May 6, 2003 through March 24, 2004, his own notes and all documents provided to the defendant in connection with his morning intelligence briefing, including the President's Daily Brief, and additional materials provided to the defendant and the Vice President; (b) for the period May 6, 2003 through March 24, 2004, all documents relating to inquiries made during or in connection with the defendant's morning intelligence briefing, and all documents provided to the defendant as a result of those inquiries; (c) any assessment done of the damage (if any) caused by the disclosure of Valerie Wilson's employment; and (d) all documents related to Ms. Wilson's employment, and the

classification of Ms. Wilson's employment status. The defendant argues that the government is required to produce all requested documents in the possession of the Special Counsel, as well as other federal agencies including, at a minimum, the CIA, DOJ, FBI, and the Office of the Vice President.

Whether by design or otherwise, compliance with Libby's discovery demands for extraneous materials would collide directly with the need to protect sensitive national security information and information protected by presidential communications and deliberative process privileges. It is respectfully submitted that in addressing these discovery requests, this Court be mindful that the incentive for defendants facing trial to engage in "greymail" to seek to derail a trial is so well recognized that Congress passed the Classified Information Procedures Act statute ("CIPA") to deal with it.

### A. The Prosecution is Not Obligated to Provide Discovery of Documents Held by Agencies Which Have Not Participated in the Investigation and Over Which it Has No Control.

Contrary to the defendant's suggestion, the government has declined to comply with the defendant's demands for additional discovery primarily on the ground that the documents demanded by the defendant go far beyond what could reasonably be held to be "material to the preparation of the defendant's defense," rather than on the ground that such documents are not in our possession. Focusing on whether particular agencies are "aligned" with the prosecution as the primary issue to be determined obscures the point that the documents the defendant seeks are irrelevant and implicate serious national security and privilege issues.

15

The prosecution should not be burdened by an obligation to search the offices of various government agencies (other than the Department of Justice, including the FBI) for documents, most of which are classified, which would not be required to be disclosed if they were in the prosecution team's possession. The Special Counsel's attempts to expedite the litigation in this case by disclosing responsive materials in its possession, though not obligated to do so, should not be understood as an indication that the government has drawn the line on discovery based solely or principally upon the location of the documents requested.

That being said, the defendant's claim that the government's discovery obligations extend to all Executive Branch agencies is inconsistent with the law and unreasonable. Contrary to the defendant's contention, an agency's status as a witness does not automatically align that agency with the prosecution, or give the prosecution knowledge of, access to, or control over that agency's records. This is particularly true with respect to an agency such as the Central Intelligence Agency, the records of which implicate national security and are otherwise highly confidential and sensitive. As a matter of fact, Valerie Plame Wilson is not the "alleged victim" of the charged crimes (perjury, obstruction, and false statements), which victimize society at large, and thus the CIA is not the victim's employer. Nor did that agency participate in the grand jury investigation that led to the indictment in this case. Accordingly, neither the CIA nor its employees "act[] on the government's behalf in the case." *See*

*Strickler v. Greene*, 527 U.S. 263, 281 (1999).  Nor can it be fairly said that the prosecution has knowledge of or access to documents in the possession of the CIA.

The defendant's claim that the Office of the Vice President is closely aligned with prosecution also lacks merit.  The fact that the President of the United States directed that all government employees cooperate with the investigation did not, and could not, give the prosecution knowledge of, access to, or control over all the records of the Office of the Vice President, many or most of which implicate national security and are otherwise highly confidential and sensitive.  Nor did it render the Office of the Vice President "closely aligned with the prosecution" in connection with an investigation which resulted in the prosecution of the Office of the Vice President's former second in command.  *See United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992).  The Office of the Vice President cooperated by providing responsive documents, not by conducting the investigation jointly.

Accordingly, while the government does not object to playing a role in facilitating the production of documents in the possession of other agencies that are held by the Court to be discoverable, the prosecution's discovery obligations cannot properly be said to extend to being held accountable for producing documents in the possession of other agencies of which it has no knowledge or access, and which it does not control.

**B.    The Records the Defendant Seeks Are Neither Favorable to the Defendant Nor Material to the Preparation of Defendant's Defense.**

The defendant asks this Court to compel the government to produce materials relating to extraneous matters and crimes of which he is not charged: violations of the Intelligence

17

Identities Protection Act (50 U.S.C. § 421) and the Espionage Act (18 U.S.C. § 793). While the documents the defendant demands are not relevant, much less "helpful to the defense," the documents sought are some of the most sensitive classified documents in government.

In *United States* v. *George*, 786 F. Supp. 56 (D.D.C. 1992), Judge Lamberth set out the approach to a motion to compel production of documents in a case involving classified documents:

> When analyzing materiality, *a court should focus first on the indictment which sets out the issues to which the defendant's theory of the case must respond.* See *United States* v. *Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989), *rev'd on other grounds*, 951 F.2d 369 (D.C. Cir. 1991). An 'abstract logical relationship to the issues in this case' is not, however, sufficient to force the production of discovery under Rule 16. *Ross* 511 F.2d at 762. Materiality is, to some degree, a sliding scale; when the requested documents are only tangentially relevant, the court may consider other factors, such as the burden on the government that production would entail or the national security interests at stake, in deciding the issue of materiality. See *id*. at 763; *Poindexter*, 727 F. Supp. at 1473. It may also be relevant that the defendant can obtain the desired information from other sources. *See Ross*, 511 F.2d at 763.

786 F. Supp. at 58 (emphasis added). Applying this approach to the defendant's demands in this case, it is clear that the defendant's motion to compel discovery must be denied.

### 1.    Request for Additional Notes of the Defendant

The defendant requests copies of all his notes for a period of almost eleven months, to the extent that they have not already been produced. The government sought from the Office of Vice President copies of the defendant's notes (without limitation to subject matter) for the period May 6 through May 10 and then June 1 through July 25, 2003, which comfortably spans the three dates on which the defendant discussed Ms. Wilson with reporter

Judith Miller (June 23, July 8 and July 12, 2003), and the dates on which he talked to reporters Tim Russert (July 10) and Matt Cooper (July 12, 2003), and for the period from July 28 and 29 and September 27 through October 13, 2003, which covered the date of the defendant's FBI interview (October 10, 2003). In addition, the government sought from the Office of the Vice President all documents, including notes of the defendant, that referred to Ambassador Wilson, his trip to Niger and/or his wife for the period February 1, 2002 through January 23, 2004. The government agreed to produce copies of the foregoing documents, or to seek a ruling from the court in the event that any such documents were not produced.

In light of the fact that the documents previously obtained from the Office of the Vice President included all pertinent documents related to Ambassador Wilson, his wife, and his trip to Niger, the defendant's request for additional notes necessarily is designed to obtain materials concerning *other* matters. Indeed, the defendant acknowledges that the notes pertain to matters other than Ms. Wilson in the reasons he gives for needing them. The defendant argues that he needs the requested notes to establish *"the constant rush of more pressing matters*," and argues that the additional notes will establish that the conversations the defendant had with reporters and others "in June and July 2003 . . . occurred in the midst of an unending torrent of meetings, briefings, and discussions of *more urgent and sensitive issues*" (emphasis added). Yet the defendant has already been provided with his notes for June 1 through July 25, 2003 – which spans a period of about three weeks before the

defendant's first conversation with a reporter about Wilson's wife through a date almost two weeks after the last conversation at issue. The defendant adds as a second basis that the notes between the time when events happened and his statements to the FBI and the grand jury would prove that Mr. Libby "remained inundated, from early in the morning until late at night, with the most sensitive national security issues that this country faces."

The defendant then attempts to bootstrap his argument about the relevance of the notes by arguing that they will "help establish that he was not aware of or a participant in . . . a plot against Mr. Wilson, and thus lacked the specific intent to mislead the government's investigation." The defense's logic in this regard is not ineluctable. First, additional notes which do not address the topics of Wilson, his trip, or his wife do not add or detract from any other proof indicating or refuting that Libby was part of a concerted effort to punish Wilson. As noted by the court in *Poindexter,* a *Brady* request is not an excuse to rummage through all the government files:

> The law is clear that the government is not required simply to turn all its files over to a defendant. *United States* v. *Bagley*, ... Nor is it required to provide to the defendant evidence that is not exculpatory but is merely not inculpatory and might therefore form the groundwork for some argument in favor of the defense. *United States* v. *Hauff*, 473 F.2d 1350, 1354 (7th Cir. 1973); *United States* v. *Whitehorn*, 710 F. Supp. 803, 827 (D.D.C. 1989).

727 F. Supp. at 1485.

The defendant relies upon the decision in *United States v. Fernandez*, 913 F.2d 148 (4th Cir. 1990), in support of his claim that he is entitled to the requested records to show the world in which he worked. The decision in *United States v. George*, 786 F. Supp. 56 D.D.C.

1992) is far more apposite, however.  In *George*, the defendant, a former Deputy Director of Operations ("DDO") at the CIA, who was charged with obstruction and false statement offenses, sought to compel production of numerous classified documents having no connection to the topics concerning which he was alleged to have made false statements, for the purpose of showing the "context in which he worked." *George*, 786 F. Supp. at 59.  The court in *George* distinguished the decision in *Fernandez* on the ground that, unlike George, the defendant in *Fernandez* sought a narrow array of documents which were directly related to the matters on which he was accused of testifying falsely, in order to prove the truth of his allegedly false statements.  The defendant in *George*, in contrast, demanded documents in an attempt to "prove the negative by proving everything else." *Id.*  These documents, the court ruled, "would have only the most minimal impact on a jury's ability to 'realistically and fairly evaluate' his [Mr. George's] allegedly false statements." *Id.*  The court explained that:

> Defendant is arguing that everything he knew about any topic related to CIA covert actions is relevant and material to what he knew about Iran- contra and what his intent was. *Evidence concerning the "context" of his job at the DDO, particularly the massive documentary support by which defendant seeks to describe his day-to-day activities, will not "substantially alter the quantum of proof in his favor." Ross*, 511 F.2d at 763. *Indeed, the court concludes that, at best, such evidence is only abstractly related to the issues raised in the indictment. See id.* at 762.  The logic of defendant's request would make everything about the defendant's life – from the traffic he faced in the morning every day while he was DDO to what he did for dinner every night for four years – material to his defense because it describes the context in which he worked and things which might have occupied his mind.

*Id.* at 61 (emphasis added).

21

The defendant makes an argument almost identical to that made by the defendant in *George*. He claims that the notes, PDBs, and related materials he has demanded "reflect many of the most weighty national security issues that he faced and the issues with which he was most preoccupied." (Memo at 16.) The defendant further asserts that the documents "will assist in preparing Mr. Libby (if he chooses) to testify, and they will corroborate any testimony he or others give about the constant rush of meeting, briefings, and discussions that preoccupied him during the relevant period." *Id.* As determined by the court in *George*, documents needed "to establish a 'preoccupation' defense, showing that the multitude of pressing matters which his job entailed would explain his lack of knowledge in one particular area" are neither favorable nor material to the defense. *See id.* at 62.

The defendant's reliance on *United States* v. *Poindexter*, 727 F. Supp. 1470 (D.D.C. 1989) is also misplaced. As the defendant notes (Memo. at 14),[4] Poindexter was accused of "entering into an agreement to lie to Congress and to obstruct a Congressional inquiry concerning the government's support for the Contras." However, Libby is not charged with conspiracy or any other offense involving acting in concert with others, and the indictment lists no unindicted coconspirators. Like the court in *George*, the court in *Poindexter* denied requests for documents concerning covert operations other than Iran Contra, reasoning that:

> they could in a sense be regarded as having some relevance to the issues in this case, but certainly not much more so than anything else the defendant might subjectively describe in that way. That is not a sufficient basis for compelling discovery under

---

[4] Citations to the defendant's Motion to Compel Discovery of Rule 16 and *Brady* Materials in the Possession of Other Agencies are to "Memo.," followed by the page number.

22

Rule 16. There must be a showing of a tenable relationship between the materials sought and the preparation of the defense.

*Id.* at 1480 (citation omitted). Accordingly, the court in *Poindexter* ruled,"where requested categories of documents deal with events or activities that are remote from or unrelated to the specific charges, discovery will not be compelled, as the conceivable relevance of these documents even to the question of motive or legality is too attenuated." 727 F. Supp. at 1476.

Moreover, given the nature of the defendant's former position, the defendant's notes necessarily implicate presidential confidentiality concerns.[5]  Generally, "the movant filing a motion to compel must first demonstrate the relevance of the material sought before the burden shifts to the deponent to prove an applicable privilege."  *See Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 185, 187 (D.D.C. 1999).  Thus, the Court should make a determination concerning the scope of discovery, applying the normal principles of relevance and materiality, prior to considering any assertions of privilege.  To the extent that documents reflecting presidential communications and deliberative process are classified, it may be possible to render moot any executive privilege issues by agreeing to alternatives such as stipulated facts and summaries of privileged materials under CIPA.  *See In re Sealed Case*, 121 F.3rd 729, 756 (D.C. Cir. 1997)("Efforts should first be made to determine whether sufficient evidence can be obtained elsewhere, and the [party seeking the privileged material] should be prepared to detail these efforts and explain why evidence covered by the

---

[5] Indeed, most of documents at issue in this case, most notably PDBs and other intelligence-related materials, also raise serious presidential confidentiality and privilege concerns requiring resolution.

presidential privilege is still needed.").[6]  In determining whether to compel discovery of documents having only marginal relevance, it is appropriate for the Court to consider the burden of producing extremely sensitive documents, as well as the potential delays that may result from the need to litigate assertions of executive privilege.  In any event, should any of the requested documents be required to be produced, it will be necessary to provide for the review of the documents, prior to production, in order to determine whether claims of presidential confidentiality and privilege can, should, and will be asserted.

### 2.    Request for Copies of More Than 275 Presidential Daily Briefs and Related Documents

Libby requests copies of all Presidential Daily Briefs ("PDBs"), as well as all documents provided to Mr. Libby or the Vice President in connection with such briefings (or in response to any questions Mr Libby asked) for a period of nearly eleven months.  The PDB is provided to the President and Vice President each day of the week other than Sunday. While employed at the White House, Libby was provided the PDB (in addition to supplemental materials provided to him and the Vice President) six days per week, sometimes in the presence of the Vice President.

The defendant's request to compel the production of approximately 277 PDBs from May 6, 2003 through March 24, 2004 to establish his "preoccupation defense" is nothing

---

[6] Similar alternatives may also be used for unclassified documents reflecting presidential communications and deliberative process.

short of breathtaking.  As the defendant well knows,[7] the PDB is an extraordinarily sensitive

document which implicates very serious concerns about both classified information and

executive privilege.  When President Bush declassified and made available a portion of the

August 6, 2001, PDB discussing Usama Bin Laden in conjunction with the work of the

National Commission on Terrorist Attacks Upon the United States, more commonly known

as the "9/11 Commission," it apparently marked the first time that a sitting President has

made a PDB publicly available.[8]

    The defendant's effort to make history in this case by seeking 277 PDBs in discovery

– for the sole purpose of showing that he was  "preoccupied" with other matters when he

gave testimony to the grand jury – is a transparent effort at "greymail."  A similar effort was

rejected in *George* where a former CIA Deputy Director of Operations tried to grant himself

*de facto* immunity by demanding access to materials so sensitive as to preclude prosecution

if disclosure were required.

---

[7]  On May 19, 2002, during Libby's service as Chief of Staff to the Vice President, Vice President Cheney described the PDBs in a Fox News interview as the "family jewels" of the government, noting that the PDBs come from the "most sensitive sources and methods that we have as a government." May 19, 2002 Fox News Transcript.

[8]  On the only prior occasion in which PDBs were publicly disclosed, portions of a discrete number PDBs from the administration of President Johnson became public upon declassification by the expiration of time and, according to a posting on the State Department website, these documents were only declassified in error.

3.    **Request for Information Concerning Damage Caused By the Disclosure**

The defendant also argues that he is entitled to information about any assessment of the damage caused by the disclosure of Ms. Wilson's employment because "potential harm to national security was a focus of the government's investigation." (Memo. at 4). This claim is illogical. First, there were many things that were investigated that are not reflected in the charges in the indictment. The *actual* – as opposed to *potential* – damage caused by the outing of Ms. Wilson is not alleged in the indictment, nor was it a focus of the grand jury investigation. The indictment alleges only that the outing of CIA employees *could* cause damage.[9] The actual damage resulting from uncharged conduct is irrelevant to whether the defendant lied about his conversations with reporters.

Even if the defendant had been charged with a violation of either the Espionage Act (18 U.S.C. § 793) or the Intelligence Identities Protection Act (50 U.S.C. § 421), there would be no requirement for the prosecution to prove actual damage, much less obtain, or produce, a damage assessment prior to trial. Actual damage is not an element of either substantive

---

[9] In that regard, the defense cites to a press conference statement by the Special Counsel that did not address specific harm to Ms. Wilson but a general loss of confidence when CIA employees are outed. Indeed, at the press conference, the Special Counsel indicated an unwillingness to address the damage caused "with a ten foot pole." Transcript annexed to Defendant's Motion as Exhibit D at p. 17.

offense.[10]  *A fortiori*, where as here Libby is charged only with obstruction offenses, there is no basis for requiring discovery of any documents bearing on a damage assessment.

Libby makes the argument that "[i]f the evidence shows that this disclosure did very little, if any, harm to national security, this fact will undermine the prosecution's expected argument that Mr. Libby had a motive to lie to cover up his alleged disclosure of Ms. Wilson's CIA affiliation."  Even if the defendant were to contend that at the time he spoke to the FBI and testified to the grand jury, he did not believe that any actual damage had resulted from the earlier disclosure so that he had no reason to lie, this purported belief could not have been based upon any official government analysis that he never saw, and that had yet to be undertaken.

Moreover, the publication of any informal assessment of actual damage caused by the leak could compound the damage by disclosing intelligence sources and methods.  Given that the defendant has not established that such an assessment would be material, much less "helpful" to the defense, there is no basis even to consider providing him with access to such sensitive classified information.  *See United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989).  In any event, the defendant's entitlement to documents related to the assessment of actual

---

[10]  Section 421 of Title 50 would require the government to prove that the compromised person had engaged in covert work within 5 years prior to the compromise and that the government took affirmative steps to conceal the compromised person's identity. Proof of a violation of Section 793(d) of Title 18 would require proof that the information compromised "related to the national defense" and the person who compromised the information had "reason to believe [the information] could be used to the injury of the United States or to the advantage of any foreign nation." Neither statute requires a showing of actual damage, although damage is likely to result when the statutes are violated.

damage is appropriately addressed in an *ex parte* filing pursuant to Section 4 of CIPA, and the government will follow this course.

      **4.**     **The Requests for Information Concerning the Classified Status of Ms. Wilson's Employment**

The defense also seeks all documents "relating to whether Valerie Wilson's status as a CIA employee, or any aspect of that status, was classified at any time between May 6, 2003 and July 14, 2003." Mr. Libby predicates his request on a single reference in the indictment to the fact that Ms. Wilson's employment status was classified during the relevant time.[11] (Paragraph 1(f) of the Indictment). The defendant overlooks the simple fact that Ms. Wilson's employment status was either classified or it was not. If the government had any documents stating that Ms. Wilson's employment status was not classified during the relevant time – and we do not – we would produce them though not strictly required to under the doctrine of *Brady v. Maryland*. The defense is not entitled to every document mentioning a fact merely because that fact is mentioned in the indictment.[12]

Nor can the defendant persuasively argue that documents reflecting the classified status of Ms. Wilson's employment would have any bearing on the defendant's state of mind in the absence of any evidence that defendant ever saw such documents. As stated in *United*

---

[11] While this fact provides context to the charges, Ms. Wilson's classified employment status is not an element of any of the three statutory violations charged.

[12] By this logic, the defense could ask for every document reflecting the fact that the CIA was an agency "whose mission was to collect, produce, and disseminate intelligence," every document reflecting that the President delivered his State of the Union address on January 28, 2003, and every document reflecting that Libby was employed at the White House at the relevant times.

*States* v. *Secord*, 726 F. Supp. 845 (D.D.C. 1989) with respect to a demand for evidence purportedly relevant with respect to a defendant's lack of motive to lie:

> To affect Defendant's state of mind, his specific intent, a piece of information must have been perceived by him *personally*, or been conveyed to him via his contacts in the Executive Branch. . . . The point is simply that Defendant's state of mind can only come from what he hears or sees . . . Conversations or correspondence which never reached Defendant in any manner, however, remain immaterial to motive. . . . The bottom line is that if at the time of his testimony . . . General Secord had no knowledge of the contents of these materials, they have nothing whatsoever to do with his state of mind or his intent. They are absolutely meaningless for the purposes of divining defendant's motives before Congress.

726 F. Supp. at 848-49 (emphasis in original).  Thus, the defendant's claim that "without documents concerning Ms. Wilson's employment status, Mr. Libby cannot prepare this critical element of his defense" lacks any basis in law, fact, or logic.

###### 5.    Entitlement to Documents Under *Brady*.

The defendant's claim of entitlement to the same documents pursuant to *Brady v. Maryland* similarly does not withstand scrutiny.  The defendant asserts without elaboration that the requested documents "may assist in the impeachment of any prosecution witness who attempts to portray as memorable the conversations in June and July 2003 in which Mr. Libby allegedly discussed Ms. Wilson's employment status."   To put it succinctly, Presidential Daily Briefs are not discoverable as "impeachment material" of unnamed witnesses simply because those witnesses may testify as to direct conversations they had with defendant Libby about matters not reflected in the PDBs.

29

6.    **Security Clearances Provide No Independent Justification for Discovery.**

The defendant also argues that counsel's possession of a security clearance eliminates any need to withhold such information, and therefore even if it is not otherwise required by Rule 16, no harm could come from production.  While the *absence* of a security clearance generally *bars* one from access to classified information, *holding* a security clearance does not *entitle* counsel to access to information (classified or otherwise) to which there is otherwise no entitlement.  Not only is all classified information generally made available on a "need to know" basis, but even the perception by intelligence sources and allies that classified materials not germane to a prosecution are routinely made available to defense counsel in criminal trials could cause harm to our national security by causing such sources and allies to be less forthcoming for fear of compromise.  Nor does the fact that the defendant previously had access to the classified documents he demands justify requiring production.  Indeed, in the *George* case, relied upon by Libby, Judge Lamberth denied the former DDO of the CIA access to classified materials to which he had previous access because he had failed to make the required showing of materiality.  *See also United States v. Poindexter*, 727 F. Supp. 1470, 1481, n. 22 (D.D.C. 1999)(Greene, J.)(production of classified documents to defendant having security clearance reduces, but does not eliminate, security risks; requirement that more than theoretical relevance be shown still applies).

In sum, possession of a security clearance does not obviate the need to demonstrate relevance, materiality and helpfulness to the defense, particularly where the documents at issue implicate important interests of presidential confidentiality.

Accordingly, because none of the additional documents demanded by the defendant are relevant, material, or helpful to the defense, the defendant's motion to compel discovery under Rule 16 and *Brady* should be denied.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that this Court deny the defendant's motions to compel discovery.

Respectfully submitted,

_____
PATRICK J. FITZGERALD
Special Counsel
Office of the United States Attorney
Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

Dated:   February 16, 2006.

31

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 16th day of February, 2006, I caused true and correct copies of the foregoing to be served on the following parties by first class mail and electronically:

> William Jeffress, Esq.
> Baker Botts
> The Warner
> 1299 Pennsylvania Avenue, N.W.
> Washington, DC 20004-2400
> Facsimile: 202-585-1087
>
> Theodore V. Wells, Esq.
> Paul Weiss
> 1285 Avenue of the Americas
> New York, NY 10019-6064
> Facsimile: 212-373-2217
>
> Joseph A. Tate, Esq.
> Dechert LLP
> 4000 Bell Atlantic Tower
> 1717 Arch Street
> Philadelphia, PA 19103-2793
> Facsimile: 215-994-2222
>
> John D. Cline, Esq.
> Jones Day
> 555 California Street
> San Francisco, CA 94104
> Facsimile: 415-875-5700

> Patrick J. Fitzgerald
> Special Counsel
> U.S. Department of Justice
> 10th & Constitution Ave., NW
> Washington, D.C.  20530
> 202-514-1187

> By:   /s/ Peter R. Zeidenberg
>       Deputy Special Counsel

32