## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | <u>Oral Argument Requested</u> |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS OF
## I. LEWIS LIBBY TO COMPEL DISCOVERY

Theodore V. Wells, Jr.
James L. Brochin
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Tel.:  (212) 373-3089
Fax:  (212) 492-0089

Joseph A. Tate
Dechert LLP
2929 Arch Street
Cira Centre
Philadelphia, PA  19104
Tel:  (215) 994-2350
Fax: (215) 994-2222

William H. Jeffress, Jr.
Alex Bourelly
Baker Botts LLP
1299 Pennsylvania Ave., NW
Washington, DC  20004
 Tel.:  (202) 639-7751
 Fax:  (202) 585-1087

John D. Cline
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax: (415) 875-5700

February 21, 2006

TABLE OF AUTHORITIES

PAGE

**CASES**

*Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979) ............................................... 12

*Dubuque Fire and Marine Insurance Co. v. Union Compress and Warehouse Co.*,
    143 F.Supp. 128 (W.D. La. 1956) ................................................................................. 16

*In re Grand Jury Subpoena, Judith Miller*, No. 04-3139, --- F.3d ---,
    2006 WL 250224 (D.C. Cir. Feb. 3, 2006) .................................................................... 11

*In re Sealed Case*, 237 F.3d 657 (D.C. Cir. 2001) ............................................................. 11-12

*United States v. Dunnigan*, 507 U.S. 87 (1993) ........................................................................ 14

*United States v. George*, 786 F. Supp. 11 (D.D.C. 1991) ......................................... 5, 14, 20, 22

*United States v. George*, 786 F. Supp. 56 (D.D.C. 1992) ...................................................... 20-23

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) ....................................................... 25

*United States v. Lloyd*, 992 F.2d 348 (D.C. Cir. 1993) ............................................................... 4

*United States v. Marshall*, 132 F.3d 63 (D.C. Cir 1998) ............................................................ 5

*United States v. Nixon*, 418 U.S. 683 (1974) ........................................................................... 26

*United States v. Osidach*, 513 F. Supp. 51 (E.D. Pa. 1981) ...................................................... 16

*United States v. Poindexter*, 727 F. Supp. 1470 (D.D.C. 1989) ......................................... 5, 25-26

*United States v. Poindexter*, 732 F. Supp. 142 (D.D.C. 1990) .................................................. 26

*United States v. Poindexter*, 1990 U.S.Dist. LEXIS 2881 (D.D.C. Mar. 21, 1990) ..................... 26

*United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958) ................................................... 12

*United States v. Ramirez*, 54 F. Supp.2d 25 (D.D.C. 1999) ...................................................... 11

*United States v. RMI Industries*, 599 F.2d 1183 (3d Cir. 1979) ................................................ 11

*United States v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005) .................................................. 5, 9, 24-25

i

*United States* v. *Santiago*, 46 F.3d 885, 727 F. Supp. 1470 (9th Cir. 1995)................................25

*United States v. Secord*, 726 F. Supp. 845 (D.D.C. 1989) ...........................................................28

*United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989) ...............................................................24

## STATUTES

Fed. R. Crim P. 6(e) ....................................................................................................10-12

Fed. R. Crim P. 16 ..................................................................................................*PASSIM*

## OTHER AUTHORITIES

17 Am. Jur. *Proof of Facts* § 163 ...................................................................................17

Wayne R. La Fave, *Criminal Procedure* § 8.5(g) .......................................................11

Daniel L. Schacter, *Searching for Memory: The Brain, The Mind, and the Past 36*
    (Basic Books 1996) ...........................................................................................17

Defendant I. Lewis Libby, through his counsel, respectfully submits this memorandum in reply to the Government's Consolidated Response to Defense Motions to Compel Discovery (the "Consolidated Response").[1]

<u>INTRODUCTION</u>

The government's argument that the information sought by Mr. Libby is not material to his defense is entirely unconvincing. The government therefore attempts to bolster its opposition with three phantom concerns: (1) the specter of "greymail" and potential harm to national security; (2) hypothetical assertions of privilege; and (3) illusory grand jury secrecy interests. All of these theoretical concerns are groundless. None of them should interfere with Mr. Libby's right to obtain the discovery necessary for him to contest the charges in the indictment vigorously at trial.

*First*, the government's "greymail" accusation is not only false, but insulting. Greymail is not possible under CIPA. The government itself acknowledges that "Congress passed the Classified Information Procedures Act statute ("CIPA") to deal with [greymail]." (Gov't Br. at 15.) The prosecution is well aware that the use, relevance and admissibility of any classified materials at trial will be addressed at CIPA hearings in this case. In addition, as the government knows, just like the other highly sensitive documents that have already been provided to Mr. Libby, any additional classified document productions would be filed in the defense SCIF pursuant to the CIPA protective order in this case.

Accordingly, there is absolutely no foundation for the government's claim that the discovery Mr. Libby seeks "collide[s] directly with the need to protect sensitive national security information." (*Id.*) Denying Mr. Libby's requests because they pertain to "extraordinarily

---

[1] The Consolidated Response will be cited as "Gov't Br. at __."

1

sensitive" documents would have the effect of penalizing Mr. Libby for serving in a position that required him to address urgent national security matters every day.

   *Second*, the government repeatedly suggests that production of the requested documents may lead to invocations of executive privilege, reporters privilege or the deliberative process privilege. None of these arguments have any merit. The Special Counsel is not permitted to invoke any of these privileges himself, and the chance that a third party may do so provides no legitimate reason to deny Mr. Libby's discovery requests. In a case where reporters and government officials will be key witnesses, it is unremarkable that the Court may be called upon to address assertions of privilege raised by these third parties, and the government's suggestion that such litigation should short circuit the discovery process should be summarily rejected.

   *Third*, the government also tries to withhold material information from the defense based on purported concerns about grand jury secrecy. But the government cites no applicable precedent to support the position that it can withhold documents material to the preparation of the defense simply because a grand jury investigation may be continuing. In fact, the Court has entered a protective order in this case to maintain the confidentiality of grand jury materials.

   Finally, in its arguments concerning materiality, the government ignores precedent from this jurisdiction that is directly on point and attempts to dictate what kinds of defenses are appropriate for Mr. Libby to bring. For example, the prosecution baldly asserts that state of mind is not an issue for any witness except for Mr. Libby, and in effect demands that the defense concede that Ms. Wilson's employment status was classified without seeing any proof. The prosecution's attempts to limit the defenses available to Mr. Libby in such a manner are

fundamentally inconsistent with the basic principles of fairness found in our criminal justice system.

In any other criminal case, the discovery requests the defense has made would be routinely granted. They are directly relevant to the most significant allegations in the indictment and are critical to Mr. Libby's defenses at trial. Compliance would impose no significant burden, if any, on the government, and the government does not even claim that it would be difficult to obtain the materials Mr. Libby seeks. Therefore, defendant's motions to compel should be granted.

<u>ARGUMENT</u>

**I.      The Government Seeks To Impose A Higher Materiality Standard Than The Courts In This Jurisdiction Have Set**

The government begins its Consolidated Response by declaring that it is not obligated to turn over all of its files to the defendant. (Gov't Br. at 2.) This argument is a straw man. The defense did not move to compel the prosecution to turn over its entire file, but instead made specific requests for targeted categories of documents that are directly linked to the allegations of the indictment. In addition, in its opening briefs, the defense demonstrated through concrete examples that the information sought is material to the preparation of the defense because it is necessary to probe the strengths and weaknesses of the government's case. The law requires no more than that.

According to the established precedent in this Circuit, the materiality standard under Rule 16 "normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States* v. *Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal citations and quotations omitted).

3

Applying this standard, courts in this jurisdiction have consistently rejected narrow rulings of the government's disclosure obligations under Rule 16.

  The government attempts to ground its refusal to provide the requested documents pursuant to Rule 16 on the statement in *United States* v. *George* that such discovery must "alter the quantum of proof" in the defendant's favor. 786 F. Supp. 11, 13 (D.D.C. 1991) ("*George I*"). In previous cases, the United States has unsuccessfully argued that this particular language raises the materiality threshold in this Circuit. *See, e.g., United States* v. *Marshall*, 132 F.3d 63, 67-68 (D.C. Cir. 1998) (holding that the government's argument was unavailing because it "unpersuasively point[ed] to isolated language from our prior opinions"). Accordingly, the government's reliance on *United States* v. *George* to justify its withholding of relevant documents is misplaced.

  In *United States* v. *Safavian*, a recent case involving Rule 16 disclosures in the context of false statements and obstruction charges, Judge Friedman emphasized that "Rule 16 is intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case.'" 233 F.R.D. 12, 15 (D.D.C. 2005) (quoting *United States* v. *Poindexter*, 727 F.Supp. 1470, 1473 (D.D.C. 1989)). In its Consolidated Response, the government makes no attempt to distinguish *Safavian*, confining its references to that decision to two "*but see*" citations. (Gov't Br. at 8, 12 n.3.) Instead, the government merely rehashes the same unpersuasive arguments that were made by the United States in that case – and were emphatically rejected by the Court.

4

**II.     Defendant's Motion to Compel Discovery Concerning Reporters Should Be Granted**

      A.     The Material Concerning Reporters That Has Been Withheld By The Government Is Material To Preparing The Defense

      A week after the defense filed its Motion to Compel Discovery Regarding News Reporters and Organizations (the "Reporters Motion"), the government disclosed some, but not all, of the information sought by the motion. The government suggests that it has now satisfied its disclosure obligations and that the remaining evidence reflecting reporters' knowledge of Ms. Wilson's identity prior to July 14, 2003 is only tangentially related to the case. But the government has in fact withheld information concerning reporters' knowledge and communications that is critical to counsel's ability to prepare Mr. Libby's defense. The government has expressly withheld the identity of the sources who disclosed Ms. Wilson's employment status to Mr. Woodward and Mr. Novak. In a sealed affidavit filed by Theodore V. Wells, Jr., dated February 21, 2006, we explain in detail why the identity of these sources is crucial to the defendant's preparation for trial.[2]

      The government has also disclaimed any obligation to disclose "information and testimony regarding individuals other than the defendant." (Gov't Br. at 11.) Thus, even though the government has disclosed a limited amount of such information, the defense cannot be sure it has received all information in the possession of the government revealing what reporters heard about Ms. Wilson's employment prior to July 14, 2003 and from whom they heard it.

      We will first summarize our understanding of what portions of the information sought by the motion have now been satisfied, and then what portions remain for decision by the

---

[2]    We have filed this affidavit under seal because it discusses information disclosed in the government's discovery letter dated February 2, 2006, and the government has designated the information in that letter as confidential pursuant to the protective order in this case. The letter itself, to our understanding, does not contain any classified information.

Court.  On February 2, 2006, the government provided what it represented to be copies of all grand jury subpoenas issued to news reporters and news organizations.  It also furnished correspondence between the Special Counsel and attorneys for news reporters and organizations that described agreements concerning what information would and would not be sought from them.  Although the government has not specifically represented that the information disclosed reflects *all* such agreements, we assume that to be so.[3]  Accordingly, we regard request 3 in the Reporters Motion to be satisfied.

On February 2, the government also disclosed to the defense grand jury testimony transcripts of certain reporters regarding their conversations with Mr. Libby.  The government states that it has now provided "full disclosure of documents and information obtained during the course of the investigation that relate in any way to the defendant's communications with members of the news media concerning Ms. Wilson," other than statements and testimony of reporters the government intends to call as witnesses at trial.  (Gov't Br. at 9-10.)  Thus, to the extent requests 1 and 2 made in our motion cover communications between Mr. Libby himself and news reporters regarding Ms. Wilson, the government's recent disclosures and its representation to the Court moot that portion of the requests.

Finally, the government disclosed to the defense on February 2 some information regarding communications between reporters and government officials regarding Ms. Wilson that went beyond conversations involving Mr. Libby.  However, it is clear from both the government's disclosures and its Consolidated Response that the government has not fully

---

[3]    If any other agreements between the Special Counsel and news reporters or news organizations exist that have not been disclosed to the defense, we ask that the government so advise the defense and the Court at or before the hearing on this motion so that the matter may be addressed.

provided *all* information covered by requests 1 and 2 in the Reporters Motion.[4]  Accordingly,

defendant continues to request that the Court enter the proposed order requiring full compliance

with these two requests.  We continue to rely on the arguments set forth at pages 8-19 of the

Reporters Motion regarding why the requested documents are material to the preparation of the

defense.  The government's Consolidated Response has not raised any arguments that undercut

the clear materiality of this information.

        B.      The Government Has No Legitimate Basis For Withholding
                The Requested Materials

        The government has raised three arguments with respect to why the requested

materials should be withheld:  (1) the defense is limited to focusing on the state of mind of

Mr. Libby, and the state of mind of other persons is irrelevant; (2) Rule 6(e) bars production of

the requested materials; and (3) protracted third-party litigation is possible.  As demonstrated

below, none of these arguments justify withholding the requested information.

        1.      The Government Is Improperly Seeking To Act As the Arbiter of What Is
                Relevant to the Defendant's Case

        The government argues that "defendant's legitimate defense necessarily must

focus on the defendant's state of mind, rather than that of others."  (Gov't Br. at 12.)  That

argument is wrong for two reasons.

---

[4]    Requests 1 and 2 in that motion read as follows:

      1.      All documents and other information reflecting knowledge by any news reporter
            or employee of a news organization of Valerie Plame Wilson's possible affiliation
            with the CIA or her role in connection with Joseph Wilson's trip to Niger prior to
            July 14, 2003.

      2.      All documents and other information reflecting any mention of Valerie Plame
            Wilson in any communication between a news reporter and a government official,
            another news reporter, an employee of a news organization, or any other person
            prior to July 14, 2003.

Reporters Motion at 4-5 (footnotes omitted).

*First*, it is inappropriate for the government to attempt to dictate what kinds of defenses Mr. Libby can and cannot present. *See Safavian,* 233 F.R.D. at 15 (The government "may [not] put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation.")   In a case that essentially pits Mr. Libby's memory of certain conversations against the recollections of three reporters, in which knowledge by the reporters as well as by Mr. Libby is at issue, it is astounding for the government to assert that Mr. Libby should not have the opportunity to investigate the state of mind of any other witness.

*Second*, the information Mr. Libby seeks is necessary to prepare the defense not only based upon state of mind, but also based on the truth of Mr. Libby's testimony to the grand jury that he and other government officials were hearing from reporters that Ms. Wilson worked at the CIA.  In that regard, the defense is not bound by a reporter's published statement, much less by the Special Counsel's conclusion, about what a particular reporter knew or heard. Further, in a case where one journalist publicly stated that Ms. Wilson's employment by the CIA was "well known" to journalists covering national intelligence matters, Mr. Libby is obviously entitled to all the information in the government's possession that would assist him in investigating and establishing the truth of that statement.

Mr. Libby is also entitled to investigate whether the reporters who will testify at trial are mistaken, biased, or otherwise not credible.  The government concedes that "[t]he fact that some reporters may have known of Ms. Wilson's employment could only be relevant if the defendant, *or the reporters with whom the defendant spoke*, became aware of it."  (Gov't Br. at 12 (emphasis added).)  This is precisely one of the issues that the defense is seeking to investigate.  For example, the indictment alleges that Mr. Libby falsely stated that Tim Russert

told him that "all the reporters" knew about Ms. Wilson's employment at the CIA. Accordingly, the defense is entitled to investigate which reporters did know about Ms. Wilson's employment status, and whether Mr. Russert could have been aware of such information before he spoke to Mr. Libby. The requested documents are necessary to investigate fully the answers to these questions and to prepare for the cross-examination of reporters like Mr. Russert and Mr. Cooper.

The government's assertion that state of mind is not a relevant issue with respect to any of the reporters who are likely to testify at trial is nothing more than a transparent attempt to force the defense to accept that the reporters' testimony, as presented in the indictment, is completely truthful, accurate and unbiased – simply based on the Special Counsel's word. To the extent the defense wants to investigate certain reporters' testimony further, the government expects the defense to rely on those reporters' publicly available statements. (Gov't Br. at 13.) This is unreasonable. The defense has the right to inspect the same information that reporters furnished to the government. Further, information concerning reporters in the government's possession is material whether it is consistent or inconsistent with the reporters' public statements, because the defense needs such information to evaluate the veracity and credibility of these witnesses.

2.    Rule 6(e) Does Not Bar The Prosecution From Providing The Defense With Material Information Under Rule 16(a)

The government argues that requiring production of the additional materials sought by the Reporters Motion "would unreasonably encroach on . . . grand jury secrecy." (Gov't Br. at 2, 13-14.) But Rule 16(a)(1)(E) is clear that the prosecution must provide all documents "material to the preparation of the defense." The rule makes no exception for documents covered by Rule 6(e)'s secrecy requirements. Significantly, the government has cited no case supporting its claim that an ongoing grand jury investigation allows the government to

deny an indicted defendant access to documents that are material to the preparation of his defense.

Documents subpoenaed by the government as part of a grand jury investigation must be disclosed to the defense if they fall within Rule 16. *See United States* v. *RMI Industries*, 599 F.2d 1183 (3rd Cir. 1979); *see also* Wayne R. La Fave, *Criminal Procedure* § 8.5(g) (2d ed. 1999) ("[D]ocuments and physical evidence subpoenaed by the grand jury are treated in the same fashion as documents and physical evidence otherwise obtained by the prosecution. They are discoverable insofar as they meet the traditional standards for discovery of such material" under Rule 16). Further, to the extent that any of the information sought by defense motions constitutes *Brady* material, Rule 6(e) is wholly inapplicable. *See United States* v. *Ramirez,* 54 F.Supp.2d 25, 32-33 (D.D.C. 1999) ("*Brady* trumps Rule 6(e) of the Federal Rules of Criminal Procedure, and the government must disclose *Brady* information in a timely manner even if it also is grand jury material.").

The cases cited by the government to suggest that Rule 6(e) justifies its refusal to disclose responsive documents are inapposite, and none address the nexus between the government's discovery obligations under Rule 16 and Rule 6(e)'s secrecy requirement. In *In re Grand Jury Subpoena, Judith Miller*, the D.C. Circuit considered whether certain members of the press had sufficiently demonstrated that the grand jury material in this case had become public, thereby obviating the need for continued secrecy. No. 04-3139, ---F.3d---, 2006 WL 250224 (D.C. Cir. Feb. 3, 2006). The court's ruling in that case is manifestly not controlling here because the press lacks the discovery rights pursuant to Rule 16 that Mr. Libby possesses.

*In re Sealed Case*, on which the government also relies, is likewise inapplicable. In that decision, the court considered whether the Federal Election Commission had violated the

Federal Election Campaign Act, 2 U.S.C. § 437, by publicly disclosing matters which it was investigating. 237 F.3d 657 (D.C. Cir. 2001). The court merely cited Rule 6(e) by way of analogy when it recognized that the statute at issue created a strong confidentiality interest. *Id.* at 667. Finally, the remaining two cases cited by the government on this point involved civil proceedings where Rule 16 was not at issue. *See Douglas Oil Co.* v. *Petrol Stops Northwest,* 441 U.S. 211, 219 (1979); *United States* v. *Procter & Gamble Co.,* 356 U.S. 677, 682 (1958).

      The government's reliance on Rule 6(e) to justify withholding material evidence is eviscerated by the simple fact that its production to the defense, which totals approximately 11,000 pages, contains extensive grand jury material. Those documents were provided pursuant to a protective order that imposes a continuing obligation on the defense to maintain the confidentiality of that information. The government has failed to articulate why the secrecy of additional grand jury material could not be similarly safeguarded if further disclosure was made pursuant to the same protective order.

      If the government was truly concerned with the need for continued grand jury secrecy during the ongoing investigation, it should have delayed the filing of the indictment against Mr. Libby. Once Mr. Libby was indicted, it was not only foreseeable but inevitable that certain information that had been provided to the grand jury would need to be shared with the defense. At most, the government has raised a timing issue with respect to when Mr. Libby should receive the requested disclosure. The grand jury investigation has already lasted over two and a half years, and it will presumably end before Mr. Libby's trial is scheduled to begin.

> 3.    The Possibility Of Protracted Litigation Regarding Reporters'
>        Privilege Claims Is Insufficient Justification For Withholding The
>        Evidence

The government points to "potentially protracted litigation of claims of reporter's privilege" as another purported "cost[] of producing the withheld information." (Gov't Br. at 13-14.) That argument is puzzling. Disclosure of information already in the government's possession would seem to lessen, not increase, the necessity of litigation with reporters to obtain the same information. In any event, speculation about journalists' invocations of privilege offers no legitimate basis for the denial of Mr. Libby's motion. The possibility that compliance with discovery requests by the defense may lead to litigation with third parties does not minimize the materiality of the requested documents to the defendant's case. Furthermore, it is apparent that during its investigation the Office of Special Counsel chose not to seek information from many reporters and news organizations that is essential to a full investigation of the charges made against Mr. Libby. Thus, it will be necessary for the defense to issue Rule 17(c) subpoenas to certain journalists and their employers in any event, and litigation concerning reporters' privilege may be unavoidable in this case.

**III.    Defendant's Motion to Compel Production of Intelligence Reports, Mr. Libby's Personal Notes and Other Documents from the CIA Should Be Granted**

> A.    Documents Mr. Libby Reviewed During His Morning Intelligence
>        Briefings Are Discoverable Pursuant to Rule 16

As explained in Mr. Libby's opening brief, an important part of his defense will be that any misstatements he made during his FBI interviews or grand jury testimony were the result of confusion, mistake or faulty memory.[5] (*See* Motion of I. Lewis Libby to Compel

---

[5]    Mr. Libby does not plan to rely solely on a defense showing that he was confused or mistaken, and had no motive to lie. We expect the evidence at trial will show that

Discovery of Rule 16 and *Brady* Material in the Possession of Other Agencies ("Other Agencies

Motion") at 12-18; Affidavit of Theodore V. Wells, Jr., dated February 21, 2006, in support of

Other Agencies Motion, attached as Exhibit A.)  Access to certain intelligence materials is

crucial to establishing that defense.

       The government does not and cannot contest that lack of specific intent is a

complete and well-recognized defense to perjury, false statements and obstruction of justice

charges.  *See, e.g., United States* v. *Dunnigan*, 507 U.S. 87, 94 (1993).  Indeed, it insists that

Mr. Libby's defense "must focus on [his own] state of mind."  (Gov't Br. at 12.)

Notwithstanding that concession, the government seeks to deny Mr. Libby access to evidence

that goes *directly* to his state of mind at the time the charged statements were made.  It claims

that Mr. Libby's request for production of documents from his morning intelligence briefings,

including certain PDBs,[6] is merely "a transparent effort at 'greymail.'"  (Gov't Br. at 25.)  It

urges the Court to deny Mr. Libby's motion because the materials requested are "extraordinarily

sensitive."  *Id.*  And it contends, again placing heavy reliance on *United States* v. *George*, *supra*,

that these documents are not material to the defense.  Each of the government's arguments is

baseless and should be rejected.

---

Mr. Libby's recollection on certain disputed events is correct, and the government's
witnesses are confused, mistaken or otherwise not credible.

[6]    The term "PDBs" as used here is to some extent a misnomer, because the documents sought
are comprised of briefing materials that were provided to Mr. Libby, not just the President,
and some of the intelligence reports at issue were prepared specially for Mr. Libby.
Accordingly, the requested documents should be viewed as Mr. Libby's daily briefings.
Such a routine request for the production of a defendant's own files is, contrary to the
government's assertion, neither "breathtaking" nor "histor[ic]," and would be routinely
granted in a typical criminal case.  (Gov't Br. at 25.)

1.    The Requested Materials are Relevant to Mr. Libby's Defense

Prior to this indictment, Mr. Libby held the titles of Assistant to the President of

the United States, Chief of Staff to the Vice President of the United States, and Assistant to the

Vice President for National Security Affairs.  The government does not (because it cannot) deny

that a significant portion of Mr. Libby's job involved highly sensitive national security matters.

Six mornings a week, Mr. Libby received a briefing from a CIA official detailing the pressing

security matters of the day, sometimes but not always in the presence of the Vice President.

(Gov't Br. at 24.)  This briefing was based on a notebook of documents.[7]  In the course of

reviewing the notebook, Mr. Libby asked questions about particular intelligence reports, which

often led the CIA briefer to provide Mr. Libby further documents and even more information.

Even after the morning intelligence briefings concluded and throughout each work day, Mr.

Libby remained intently focused on many of the critical national security issues outlined in the

PDBs and supporting materials.

The defense intends to prove each of the foregoing facts at trial.  We will then

establish that because Mr. Libby was so focused on urgent national security matters, it is hardly

surprising that he would later confuse, forget or misremember isolated portions of conversations

about less important topics (*e.g.*, Ms. Wilson's identity and employment status).[8]  This element

of Mr. Libby's defense is consistent with the testimony Mr. Libby provided to the grand jury,

---

[7]    These notebooks ranged from 12 to 30 pages long, on average, and consisted of three
sections:  (1) the PDB; (2) additional intelligence information for the Vice President; and (3)
additional intelligence information prepared specifically for Mr. Libby.

[8]    The defense will not, of course, contend that Mr. Libby forgot about the controversy caused
by Mr. Wilson's public claims that the Administration had misled the public concerning
whether Iraq was seeking uranium from Africa.  However, few people, and certainly not
Mr. Libby, believed the employment of Wilson's wife by the CIA was an important part of
the rebuttal to Wilson's claims.

when he explained that he had recollection problems resulting from the high-pressured demands of his job:

> I get a lot of information during the course of a day. . . . I tend to get between 100 and 200 pages of material a day that I'm supposed to read and understand and I – you know, I start at 6:00 in the morning and I go to 8:00 or 8:30 at night, and most of that is meetings. So a lot of information comes through to me, and I can't possibly recall all the stuff that I think is important, let alone other stuff that I don't think is as important. . . . I apologize if there's some stuff that I remember and some I don't, but it's – I'm just trying to tell you what I do in fact remember.

(March 5, 2004 Grand Jury Tr. at 193-94.)[9]

This defense also comports with common sense and case law. *See, e.g., United States* v. *Osidach*, 513 F. Supp. 51, 86 n.16 (E.D. Pa. 1981) (holding that the reliability and credibility of witnesses must be evaluated in light of "the fact that an event testified to may have been a relatively unimportant or minor detail, as opposed to a matter of significance"). For example, a federal district court in Louisiana applied precisely these principles in choosing between two diametrically opposed recollections of a conversation, one by the president of a company (W.P. Martin), the other by Dean Lee of Louisiana State University. The court found both men honest. It credited Martin's recollection, however, because "[t]o Mr. Martin this transaction was a highly important event, which he remembered well," while "[t]o Dean Lee it represented merely one more detail in his complex, State-wide duties--a detail which he probably forgot almost as soon as it happened, due to other distractions close at hand." *Dubuque Fire and Marine Insurance Co.* v. *Union Compress and Warehouse Co.*, 143 F. Supp. 128, 133 (W.D. La. 1956). Dean Lee's inability to recall accurately "one more detail in his complex, State-wide

---

[9]    Defense counsel has advised the government of its intention to include this quote from Mr. Libby's grand jury testimony. The government agreed not to object to this limited use of the grand jury testimony, which does not reveal substantive grand jury information.

duties" closely resembles Mr. Libby's difficulty "recall[ing] all the stuff that I think is important, let alone other stuff that I don't think is as important."

Further, this defense is consistent with scientific research in the field of memory and cognition. *See, e.g.,* Daniel L. Schacter, *Searching for Memory: The Brain, The Mind, and the Past* 46 (Basic Books 1996) ("Our memory systems are built so that we are likely to remember what is most important to us."); William Littell, 17 Am. Jur. *Proof of Facts* 163 § 31 (Sept. 2005) ("The largest single factor in the maintenance of a memory over a period of time is the degree to which the material is meaningful to the person.") (summarizing memory research).

As made clear in Mr. Libby's opening brief, access to the requested intelligence materials is crucial to establishing the defense outlined above. For one thing, these materials are necessary to refresh Mr. Libby's recollection of the specific national security issues on which he focused during the relevant period, to identify with precision the exact timing of the national security issues that commanded his attention, and to ensure that Mr. Libby ultimately testifies accurately about such matters. In addition, the documents will provide essential corroboration for Mr. Libby's anticipated testimony about the relative importance of the portions of conversations that related to Ms. Wilson – a point we expect the government to contest fiercely.

Approximately two-and-a-half years have passed since most of the events alleged in the indictment occurred. Given the passage of time, Mr. Libby cannot reasonably be expected to recall with the specificity needed to prepare for trial the exact nature of the national security concerns that demanded his concentration on particular days in the summer of 2003. It would be

unfair to require him to testify about the context for such events without being able to re-review the materials that dictated the course of his sensitive national security duties.[10]

Further, to explain why Mr. Libby's memory may have failed with respect to certain events, the defense must be able to explore the temporal relationship between the national security matters that Mr. Libby was required to address and the particular conversations alleged in the indictment. Only the materials Mr. Libby reviewed during his morning intelligence briefings will allow the defense to accurately understand the nexus between these two categories of events.

Three different time periods will be relevant to Mr. Libby's defense with respect to mistake, confusion or faulty memory: (1) the period when Mr. Libby allegedly had conversations in which Ms. Wilson was mentioned (May through July 2003); (2) the period when Mr. Libby was called upon to retrieve his memory of those conversations (October 2003 through March 2004); and (3) the intervening period. The PDBs will permit the defense to show, with respect to each period, the critical issues on which Mr. Libby focused. For the first period, this evidence will show why he may have forgotten or misremembered details of other, less important events that took place during the same time. For the second period, the evidence will show why Mr. Libby's ability to recall the conversations that occurred months earlier was impaired. And for the third period – the intervening period – the evidence will show that the

_____

[10]    Although Mr. Libby's notes shed light on some of the critical classified projects he completed, the subjects covered in the notes and the materials from his morning intelligence briefings are not coterminous. In fact, Mr. Libby generally did not take notes during the morning briefings, so the notes are not cumulative of the intelligence reports he reviewed at those meetings. Mr. Libby needs both his personal intelligence briefings, including the PDBs and supporting materials, and his notes to assist his counsel in preparing this critical aspect of his defense.

constant press of urgent matters contributed to the decay of Mr. Libby's memory of the conversations and interfered with his ability to retrieve those memories later.

For example, if a government witness testifies that he told Mr. Libby a particular fact about Ms. Wilson on June 11, 2003, and Mr. Libby does not recall hearing such a statement, the defense might attempt to show that on the days in proximity to the conversation, Mr. Libby was focused on a crisis such as a terrorist threat or a nuclear proliferation emergency, and that the employment status of Ms. Wilson paled in comparison. Similarly, we expect to establish that important or distracting events that occur between the encoding of a memory and its retrieval can also affect the accuracy of that recollection. For these reasons, Mr. Libby is fully justified in seeking the requested intelligence materials.

The government's primary argument in opposition to Mr. Libby's request for the materials provided during his intelligence briefings is that they are "extraordinarily sensitive" documents. But that is our point exactly. It is precisely because of their sensitivity that they commanded Mr. Libby's attention, and snippets of conversation concerning the identity of Ms. Wilson did not. From early in the morning until late at night, the "extraordinarily sensitive" issues in the daily intelligence briefings were at the forefront of Mr. Libby's mind. As the government surely is aware, the intensity and urgency of these matters greatly strengthen a defense based on mistake, confusion or faulty memory. For example, the prosecution knows that a jury will likely understand that seeking to counter a terrorist threat that may kill tens of thousands of Americans is likely to be more memorable than a ten second conversation with a CIA briefer or State Department official, or a ten-minute call with a reporter. Mr. Libby is entitled to show the jury that his reasonable, even commendable, focus on these issues explains why he may have forgotten or misremembered less significant conversations.

18

The government's insistence that Mr. Libby cannot have access to these materials because they are "extraordinarily sensitive" unfairly penalizes Mr. Libby for working on matters of great importance to the United States. For five years, the government urged Mr. Libby to focus intently on classified information to protect his fellow citizens. That same government cannot now bar him from reviewing such information to refresh his memory and to show the jury what led him to be confused or to forget about less salient events. Such precedent would be unfair to public servants who work on sensitive national security matters.

As for the government's "greymail" claim, the use, relevance and admissibility of classified documents such as the PDBs at trial will be addressed under CIPA. All Mr. Libby asks for at this point is the opportunity to re-review a discrete number of documents that will refresh his recollection concerning his daily responsibilities during the relevant time period. Accordingly, the government's argument that the extraordinary sensitivity of the requested materials precludes their production to the defense is misplaced and premature. In addition, given Mr. Libby's past and continuing access to the nation's most sensitive secrets, disclosure of such documents within the confines of the defense SCIF and pursuant to a CIPA protective order presents no conceivable threat to national security.

B.     *United States* v. *George* Is Readily Distinguishable

The government also relies on a mistaken application of *United States* v. *George*, 786 F. Supp. 56 (1992) (*George II*), to support its position with respect to the intelligence reports shown to Mr. Libby, as well as his notes. In that case, the defendant, Clair George, attempted to compel production of a tremendous number of classified documents, which would have ground his case to a halt. Each of the reasons articulated by the court in *George* for denying the defendant's overbroad discovery requests actually cuts in favor of production to Mr. Libby here.

19

*Number of Documents Requested.* George II requested "literally millions of documents" that spanned a three- or four-year time period, including over one million CIA cables. *Id.* at 59. In contrast, Mr. Libby has requested fewer than one thousand documents, totaling (in our estimate) four or five boxes, spanning the nine most critical months in the indictment. Mr. Libby could have issued a blanket request for a hundred thousand or more pages of classified documents that related to his national security duties to help establish his defense of confusion, mistake or faulty memory. Instead, consistent with the principles set forth in *George II*, Mr. Libby identified a limited category of documents that will explain his most important duties during the specific time periods relevant to the charges against him.

*Personal Knowledge of Requested Documents.* George asked for documents "created by other people and about other people which were sent through his office," many of which he may not have personally reviewed. *Id.* Thus, the court found that the defendant was "arguing that everything he knew or could have known is material to his defense." *Id.* at 61 n.2. Mr. Libby does not make such sweeping requests. He is seeking only documents that he either wrote (*i.e.*, the notes) or actually reviewed during morning intelligence briefings.[11]

*Burden of Production.* George's requests would have required "months" for production and "even longer" for defense review. *Id.* at 60. By contrast, Mr. Libby's notes are likely to be found in a limited number of files in the OVP itself or its archives, and can be retrieved in a day or two. The PDBs and other intelligence documents he reviewed are readily accessible at the CIA, and perhaps even available on a computer database, and could be located in a few minutes. Notably, the government does not contend that production of the PDBs would

---

[11]   To the extent that there is any uncertainty with respect to Requests 2 or 3 in our motion, which concern documents relating to Mr. Libby's morning intelligence briefings, we clarify here that through those requests we seek only documents that were actually provided to Mr. Libby.

be unduly burdensome. The defense can review the requested documents and list them as appropriate on CIPA notices in ample time to complete the CIPA process before the current trial date.

Because of these facts, the *George* decision cited by the government does not apply. Indeed, in an earlier opinion in that same case, Judge Lamberth observed that "[a]t least one of the rationales behind the materiality requirement (and limiting discovery by criminal defendants generally) is to ensure that the government not expend excessive time and effort securing documents for defendants." *George I*, 786 F.Supp. at 14. Because certain materials sought by George in the motion discussed in that opinion imposed "no burden on the government," the court ordered them disclosed. *Id.*

*Willingness to Narrow Requests.* George "made no attempt to hone his requests or limit them to fewer documents that could serve as examples for the points which he wishes to make." *George II*, 786 F. Supp. at 59. Accordingly, the court attributed its ruling to the defendant's "own unreasonableness and refusal to compromise (or even argue in the alternative for anything less)." *Id.* at 65. Here, the defense started with specific, targeted requests, and neither the Court nor the government has suggested the possibility of narrowing these requests further as a workable compromise.

*Relevance of Requested Documents to the Articulated Defense Strategy.* The court found fault with George's defense strategy, stating that although he "suggested that he might have been 'preoccupied' . . . he has never specified when [the events described in the requested documents] occurred or how these instances might be material to this indictment." *Id.* at 59. In contrast, here the defense has explained precisely how the documents sought are material to the charges in the indictment. As discussed above, the defense intends to show that

the alleged snippets of conversation about Ms. Wilson were of relative insignificance at the time when compared to the matters of life and death on which Mr. Libby focused. Therefore, the requested documents bear directly on Mr. Libby's defenses with respect to state of mind and motive.

Further, George does not appear to have argued that his alleged false statements and perjury were the result of confusion, mistake, or faulty memory, and he failed to show any logical connection between his proposed defense and the extraordinarily burdensome discovery he requested. By contrast, Mr. Libby has shown a tight logical link between his narrow, focused discovery requests and the confusion, mistake and faulty memory defense that he intends to offer at trial. Case law supports that link. Memory research supports it. And common sense supports it. Indeed, if this were any other defendant in any other setting, no one would dispute his right to show the jury in concrete terms why he recalled certain events incorrectly or forgot snippets of conversation months after they occurred.

C.    Mr. Libby's Own Notes Should Be Produced

The government does not dispute that certain of Mr. Libby's notes are relevant to his defense, and has provided some of those notes to the defense already. With respect to the production of the notes, the government and the defense disagree only about the relevant time period. The government's refusal to produce any additional notes from a broader time period constitutes an improper attempt to prevent Mr. Libby from establishing the defense outlined above – that any misstatements he made to the FBI or the grand jury were not intentional, but rather innocent mistakes or the result of confusion.

The government argues that Mr. Libby's request for additional notes should be denied because "the notes pertain to matters other than Ms. Wilson." (Gov't. Br. at 19.) But this is precisely why the request should be granted. That is, Mr. Libby is properly seeking evidence

of the other important national security matters on which he worked, which he will then use to explain why his memory of less significant events may be confused or flawed. His notes, reflecting the matters that he himself chose to memorialize, constitute powerful evidence of the issues and tasks that commanded his attention during the relevant time period.

Because the requested notes are critical to establishing that any incorrect statements attributed to Mr. Libby were the result of confusion, mistake or faulty memory, the notes undeniably meet the "helpfulness" standard set forth in *United States* v. *Yunis*, 867 F.2d 617 (D.C. Cir. 1989), and should therefore be produced to the defense.

D.    Documents Held by the OVP and the CIA Are Within the Possession
      of the Government and Must Be Produced to the Defense

In its discovery letters to the defense, the government has repeatedly set forth the untenable claim that it has no duty to produce responsive documents from other agencies. This is not even a close question. Under Rule 16 and *Brady*, the prosecution's disclosure obligations certainly extent to at least the OVP and the CIA.

Particularly because the defense has identified discoverable materials in the possession of these two agencies, it is necessary for the Court to reach this issue, despite the government's protestations to the contrary. (*See* Gov't Br. at 15-16.) In *Safavian*, a case that is directly on point, this Court held that for the purposes of both Rule 16 and *Brady* discovery, "'the government' includes any and all agencies and departments of the Executive Branch of the government and their subdivisions." 233 F.R.D. at 14. The defense has not, however, sought to burden the prosecution with the task of scouring every Executive Branch agency for responsive documents – only the CIA and OVP, which are already intimately connected to this case, and only for a limited number of documents that the defense has specifically identified.

Similarly, in other applicable decisions, courts "are more concerned with fairness to the defendant, on the one hand, and the government's ease of access to the documents sought, on the other, than with the issue whether the documents are actually within the physical possession of the prosecutor." *United States* v. *Poindexter*, 727 F. Supp. 1470, 1477 (D.D.C. 1989). These cases indicate that when deciding if the prosecution is obligated to produce documents from other government agencies, courts should require production if those other agencies have participated in the investigation, if the prosecutor has "knowledge of and access to the documents," or if the agencies are "allied with the prosecution." *United States* v. *Santiago*, 46 F.3d 885, 893-94 (9th Cir. 1995); *Poindexter*, 727 F. Supp. at 1477 (citing *United States* v. *Haldeman*, 559 F.2d 31, 73-74 (D.C. Cir. 1976)). Here, the defense requests easily satisfy this standard.

The government argues that OVP did not participate in its investigation and is not allied with the prosecution because the OVP "cooperated by providing responsive documents, not by conducting the investigation jointly." (Gov't Br. at 17.) But such cooperation is sufficient under applicable law to make the prosecution responsible for producing additional documents from the OVP. For example, in *Poindexter*, the defendant successfully sought documents from his former employer, the White House. The court held:

> In this case, the Independent Counsel has had access in the course of its investigation to extensive quantities of White House documents . . . . He has benefitted from the cooperation of the White House in this area, and he cannot now, in fairness, be permitted to disclaim all responsibility for obtaining Presidential documents that are material to the preparation of the defense.

*Poindexter*, 727 F. Supp. 1470 at 1478. The same rationale applies here with respect to the OVP. Further, *Poindexter* also stands for the principle that the prosecution has an obligation to produce documents from the government agency where the defendant was formerly employed. *See id.*

24

The government also contends that its discovery obligations do not extend to the CIA because it regards that agency as a mere witness in its investigation. This argument ignores the CIA's unique involvement in this case. The CIA is responsible for starting the investigation, by sending a referral to DOJ indicating that a crime might have occurred when Ms. Wilson's identity was disclosed outside the intelligence community.

Finally, the government's argument about what constitutes "knowledge of and access to documents" sets the relevant standard too high. In the pre-trial context, the defense easily satisfies this standard where, as here, it identifies specific categories of relevant documents in the possession of agencies that have cooperated with the government's investigation.

E.    Potential Assertions of Executive Privilege Cannot Trump
      the Prosecution's Discovery Obligations

The government's brief ruminates about the possibility of future executive privilege claims. (*See* Gov't Br. at 23-24 and n.5.) But this privilege cannot be invoked by the Special Counsel to avoid the disclosure obligations of Rule 16 and *Brady*. Instead, executive privilege must be specifically asserted by the President; once asserted, it can be overcome by a sufficient showing. *United States* v. *Nixon*, 418 U.S. 683, 713-14 (1974). The court should not deny discovery simply because the government has speculated that executive privilege might be claimed with respect to certain documents that are within the ambit of Rule 16 and *Brady*. It should order the discovery, allow an opportunity for the privilege to be asserted, and then determine whether the defense has made a showing sufficient to overcome the privilege. *See, e.g., United States* v. *Poindexter*, 1990 U.S. Dist. LEXIS 2881 (D.D.C. Mar. 21, 1990); *United States* v. *Poindexter*, 732 F. Supp. 142 (D.D.C. 1990).

F.     Mr. Libby Is Entitled to the Requested Documents from the CIA

      1.     Mr. Libby is Entitled to Information Concerning Any Damage Caused by the Disclosure of Ms. Wilson's Identity

The government argues that evidence concerning whether any damage resulted when Ms. Wilson's identity was "leaked" should not be provided to the defense because a claim of actual damage is not explicitly alleged in the indictment. The defense has every right to anticipate that the government will attempt to portray the disclosure in question as a damaging breach of national security at trial. This expectation is reinforced by the Special Counsel's statement at his October 28, 2005 press conference that when Ms. Wilson's affiliation with the CIA was made public, "the damage wasn't to one person. It wasn't just Valerie Wilson. It was done to all of us." (Fitzgerald Press Conference Tr., Other Agencies Motion, Ex. D., at 4.) The government's assertion that the Special Counsel did not address the subject of damage "with a ten foot pole" (Gov't Br. at 26, n.9) is insupportable.

In addition, the government's statement that "publication of any informal assessment of actual damage caused by the leak could compound the damage by disclosing intelligence sources and methods" is misleading. (Gov't Br. at 27.) The government knows full well that any such "informal assessment" would be produced to the defense only pursuant to a CIPA protective order and would not be publicly disclosed without further proceedings pursuant to CIPA.

      2.     Mr. Libby Is Entitled to Documents Concerning Whether Ms. Wilson's Employment Status Was Classified

By refusing to provide any documents confirming the allegation in the indictment that Ms. Wilson's employment status was classified during the relevant time period, the government has in effect demanded that the defense concede that this allegation is correct. Such a demand is flatly inconsistent with the basic principles of our criminal justice system. The

defense is entitled to investigate this allegation and determine whether any factual support for it exists.

The government argues that "Ms. Wilson's employment status was either classified or it was not," and states that it if it possessed any documents stating her employment was *not* classified, it would produce such documents.  (Gov't Br. at 28.)  What Mr. Libby seeks, however, is all documents supporting the indictment's allegation that her employment *was* classified, as well as those showing it was not.  *To date, the defense has not received a single document showing that Ms. Wilson's employment was classified information.*  Further, the government has told us that it "neither sought, much less obtained," from the CIA the documents we requested with respect to Ms. Wilson's employment status.  (Other Agencies Motion, Ex. B at 3.)  This assertion calls into question how the government can represent to the Court that no *Brady* material on this issue exists.

Finally, the government's reliance on *United States* v. *Secord*, 726 F. Supp. 845 (D.D.C. 1989), is misplaced.  That case actually supports Mr. Libby's position, because it states that information can affect a "[d]efendant's state of mind" if it has "been conveyed to him via his contacts in the Executive Branch."  *Id.* at 848.  The indictment suggests that after officials at the CIA and State Department allegedly conveyed information about Ms. Wilson to Mr. Libby, he thought that her position was classified or otherwise sensitive.  For example, the indictment states that when Mr. Libby's Principal Deputy

> asked [him] whether information about Wilson's trip could be shared with the press to rebut the allegations that the Vice President had sent Wilson[,] Libby responded that there would be complications at the CIA in disclosing that information publicly, and that he could not discuss the matter on a non-secure telephone line.

(Indictment, Count One, ¶ 13.)  The defense needs to determine whether Ms. Wilson's employment status was in fact classified to put such allegations in proper perspective.  Further, if Mr. Libby takes the stand, the prosecution will doubtless attempt to cross-examine him on whether he believed or had heard that Ms. Wilson held a classified position.  Accordingly, consistent with the reasoning set forth in *Secord*, whether Ms. Wilson's employment status was in fact classified, and whether Mr. Libby and others understood that, is certainly at issue in this case.

<u>CONCLUSION</u>

For the reasons stated herein, and in our Reporters Motion and Other Agencies

Motion, the requests for disclosure of documents and information should be granted.


February 21, 2006                        Respectfully submitted,


/s/ Theodore V. Wells, Jr.                /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                    William H. Jeffress, Jr.
(DC Bar No. 468934)                       (DC Bar No. 041152)
James L. Brochin                          Alex Bourelly
(DC Bar No. 455456)                       (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton             Baker Botts LLP
  & Garrison LLP                          1299 Pennsylvania Ave., NW
1285 Avenue of the Americas               Washington, DC  20004
New York, NY  10019-6064                  Tel.:  (202) 639-7751
Tel.:  (212) 373-3089                     Fax:  (202) 585-1087
Fax:  (212) 492-0089


/s/ Joseph A. Tate                        /s/ John D. Cline
Joseph A. Tate                            John D. Cline
Dechert LLP                               (D.C. Bar No. 403824)
2929 Arch Street                          Jones Day
Cira Centre                               555 California Street, 26th Floor
Philadelphia, PA  19104                   San Francisco, CA  94104
Tel:  (215) 994-2350                      Tel:  (415) 626-3939
Fax: (215) 994-2222                       Fax: (415) 875-5700