UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                              )    CR. NO. 05-394 (RBW)<br>)<br>I. LEWIS LIBBY,                          )<br>    also known as "Scooter Libby," )<br>    Defendant.                           ) | |

**AFFIDAVIT OF THEODORE V. WELLS, JR. IN SUPPORT OF
MOTION OF I. LEWIS LIBBY TO COMPEL DISCOVERY OF RULE 16
AND *BRADY* MATERIAL IN THE POSSESSION OF OTHER AGENCIES**

STATE OF NEW YORK    )
                                     )   ss.:
COUNTY OF NEW YORK  )

Theodore V. Wells, Jr., being sworn, says:

1. I am counsel to I. Lewis Libby, and I submit this affidavit in support of Mr. Libby's Motion to Compel Discovery of Rule 16 and *Brady* Material in the Possession of Other Agencies, dated January 31, 2006.

2. In particular, this affidavit focuses on Mr. Libby's requests for production of (a) certain of his own notes and (b) documents read and reviewed by him during his morning intelligence briefings, including Presidential Daily Briefs ("PDBs").

3. In its Consolidated Response to Defense Motions to Compel Discovery at page 25, the government characterizes Mr. Libby's document requests as "a transparent effort at 'greymail.'" The greymail accusation by the government is false and baseless.

4. The defense requested Mr. Libby's notes and the intelligence reports he reviewed because one of the central themes of Mr. Libby's defense at trial will be that any misstatements

he made during his FBI interviews or grand jury testimony were not intentional, but rather the result of confusion, mistake or faulty memory. Given the urgent national security issues that commanded Mr. Libby's attention, it is understandable that he may have forgotten or misremembered relatively less significant events. Such relatively less important events include alleged snippets of conversations about Valerie Plame Wilson's employment status.

5.  The defense of confusion, mistake or faulty memory is a valid and well-recognized defense to perjury, false statements and obstruction of justice charges, which all include specific intent requirements.

6.  During his first grand jury appearance, Mr. Libby testified at length about how his recollection may have been inaccurate because of the pressing matters of his job, stating that:

> I get a lot of information during the course of a day. . . . I tend to get between 100 and 200 pages of material a day that I'm supposed to read and understand and I – you know, I start at 6:00 in the morning and I go to 8:00 or 8:30 at night, and most of that is meetings. So a lot of information comes through to me, and I can't possibly recall all the stuff that I think is important, let alone other stuff that I don't think is as important. . . . I apologize if there's some stuff that I remember and some I don't, but it's – I'm just trying to tell you what I do in fact remember.

(March 5, 2004 Grand Jury Tr. at 193-94 (LL007-09946 - LL007-09947).)[1]

7.  In preparing the defense based on confusion, mistake or faulty memory, the defense has reviewed extensive research on the functioning of memory. Scientific literature on memory and cognition shows that people tend to remember things that are personally important to them and may forget or confuse things that are not. *See, e.g.,* Daniel L. Schacter, *Searching for Memory: The Brain, The Mind, and the Past* 46 (Basic Books 1996) ("Our memory systems

---

[1] Defense counsel has advised the government of its intention to include this quote from Mr. Libby's grand jury testimony. The government agreed not to object to this limited use of the grand jury testimony, which does not reveal substantive grand jury information..

2

are built so that we are likely to remember what is most important to us."); William Littell, 17 Am. Jur. *Proof of Facts* 163 § 31 (Sept. 2005) ("The largest single factor in the maintenance of a memory over a period of time is the degree to which the material is meaningful to the person.") (summarizing memory research).

8. It is our present, good faith intention to offer proof of the following facts at trial:

   a. Mr. Libby held the titles of Assistant to the President of the United States, Chief of Staff to the Vice President of the United States, and Assistant to the Vice President for National Security Affairs. A significant portion of his job involved highly sensitive national security matters.

   b. When he served in these positions, a CIA briefer provided Libby with a notebook containing the PDB and other supplemental intelligence reports during a morning meeting six days per week, sometimes in the presence of the Vice President.

   c. The notebook provided to Mr. Libby during his morning intelligence briefing ranged from 12 to 30 pages long, on average, and was divided into three sections: (1) the PDB; (2) additional intelligence information for the Vice President; and (3) additional intelligence information prepared specifically for Mr. Libby.

   d. The PDBs that Mr. Libby reviewed contained information about daily emergencies as well as long term national security risks. It was not unusual for Mr. Libby to remain focused on an issue addressed in a PDB for weeks or months.

   e. In the course of his morning intelligence briefing, Mr. Libby asked questions about particular intelligence reports, which sometimes led the CIA briefer to provide him with further documents and information.

   f. After the morning intelligence briefings concluded, throughout each work day, Mr. Libby remained intently focused on many of the critical national security issues outlined in the PDBs and supporting materials.

9. It is highly likely that Mr. Libby will testify at trial, and the materials he reviewed during his morning intelligence briefings will be critical for his witness preparation. The defense intends to use the requested documents to refresh Mr. Libby's recollection of the specific national security issues on which he focused during the relevant period, to identify with precision

3

the exact timing of the national security issues that commanded his attention, and to ensure that Mr. Libby ultimately testifies accurately about such matters. We may also seek to introduce the requested documents to corroborate Mr. Libby's anticipated testimony about the urgent matters that commanded his attention, subject of course to the Court's CIPA rulings.

10. Three different time periods will be relevant to Mr. Libby's defense with respect to mistake, confusion or faulty memory: (1) the period when Mr. Libby allegedly had conversations in which Ms. Wilson was mentioned (May through July 2003); (2) the period when Mr. Libby was called upon to retrieve his memory of those conversations (October 2003 through March 2004); and (3) the intervening period. The PDBs will permit the defense to show, with respect to each period, the critical issues on which Mr. Libby focused. For the first period, this evidence will show why he may have forgotten or misremembered details of other, less important events that took place during the same time. For the second period, the evidence will show why Mr. Libby's ability to recall the conversations that occurred months earlier was impaired. And for the third period – the intervening period – the evidence will show that the constant press of urgent matters contributed to the decay of Mr. Libby's memory of the conversations and interfered with his ability to retrieve those memories later.

11. Mr. Libby's general practice was not to take notes during his morning intelligence briefings. Thus, even if the government is compelled to produce the additional notes that Mr. Libby has sought, we will not be able to establish the defense of confusion, mistake or faulty memory without the requested intelligence reports, including the PDBs.

12. Mr. Libby can neither recall with specificity nor adequately prepare to demonstrate at trial the nexus between the particular urgent national security matters on which he focused and the events alleged in the indictment without re-reviewing the documents he was

4

shown during his morning intelligence briefings. Approximately two and a half years have passed since most of the events alleged in the indictment occurred, making it difficult for Mr. Libby to recall with precision the exact timing of the events of 2003 and early 2004. It would be unfair to require him to testify about the context for such events without being able to re-review the materials that dictated the course of his sensitive national security duties.

13.   Barring Mr. Libby from preparing for trial by reviewing the documents that formed the basis for his most important tasks would penalize him for five years of service at the highest levels of government. To the extent that the documents Mr. Libby seeks are extraordinarily sensitive, this is simply because he formerly worked on matters of great importance to the United States, often at the request and direction of the President or Vice President. His fundamental right to prepare for and present a defense should not be diminished because his job focused on urgent issues of national security.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 21, 2006

_____
Theodore V. Wells, Jr.

Sworn to before me this
21st day of February, 2006

_____
Notary Public

AUSTIN KWAME WILKINSON
Notary Public, State of New York
No. 01WI5051848
Qualified in Kings County
Certificate Filed in New York County
Commission Expires Nov. 13, 2008

5