# 05-CR-394 -- EXHIBIT A





# Department of Justice

### DEPARTMENT OF JUSTICE PRESS CONFERENCE
### WASHINGTON, D.C.

### APPOINTMENT OF SPECIAL PROSECUTOR TO OVERSEE INVESTIGATION INTO ALLEGED LEAK OF CIA AGENT IDENTITY AND RECUSAL OF ATTORNEY GENERAL ASHCROFT FROM THE INVESTIGATION

### DEPUTY ATTORNEY GENERAL JAMES COMEY
### ASSISTANT ATTORNEY GENERAL CHRISTOPHER RAY
### DECEMBER 30, 2003

**MR. COMEY:** Good afternoon, folks. I'm joined behind the podium by Assistant Attorney General Christopher Ray. We are here to announce a couple of procedural developments in the investigation into allegations that the identity of a CIA employee was improperly disclosed to the media last July.

The first development is that effective today, the attorney general has recused himself and his office staff from further involvement in this matter. By that act, I automatically become the acting attorney general for purposes of this case with authority to determine how the case is investigated, and if warranted by the evidence, prosecuted.

The attorney general, in an abundance of caution, believed that his recusal was appropriate based on the totality of the circumstances and the facts and evidence developed at this stage of the investigation. I agree with that judgment. And I also agree that he made it at the appropriate time, the appropriate point in this investigation.

The second development is that prior to his recusal, the attorney general and I agreed that it was appropriate to appoint a special counsel [read: special prosecutor] from outside our normal chain of command to oversee this investigation.

By his recusal, of course, the attorney general left to me the decision about how to choose a counsel, who that person should be and what that person's mandate should be. In anticipation of this development, I have given a great deal of thought to this in recent days and have decided that, effective immediately, the United States attorney for the Northern

District of Illinois, Patrick J. Fitzgerald, will serve as special counsel in charge of this matter. I chose Mr. Fitzgerald, my friend and former colleague, based on his sterling reputation for integrity and impartiality. He is an absolutely apolitical career prosecutor. He is a man with extensive experience in national security and intelligence matters, extensive experience conducting sensitive investigations, and in particular, experience in conducting investigations of alleged government misconduct.

I have today delegated to Mr. Fitzgerald all the approval authorities that will be necessary to ensure that he has the tools to conduct a completely independent investigation; that is, that he has the power and authority to make whatever prosecutive judgments he believes are appropriate, without having to come back to me or anybody else at the Justice Department for approvals. Mr. Fitzgerald alone will decide how to staff this matter, how to continue the investigation and what prosecutive decisions to make. I expect that he will only consult with me or with Assistant Attorney General Ray, should he need additional resources or support

You should know that as I thought about this matter in recent days, I considered other alternatives. I first considered having the matter handled by Assistant Attorney General Ray and myself acting as ultimate supervisors and decision-makers.

You will not be surprised to learn that I have great confidence in my own ability to be fair and impartial. I also have complete confidence in Chris Ray's ability to be fair and impartial. He is -- those of you who don't know him, he is a total pro and one of the people who makes this department great.

But as I said, both the attorney general and I thought it prudent -- and maybe we are being overly cautious, but we thought it prudent to have the matter handled by someone who is not in regular contact with the agencies and entities affected by this investigation. As part of our counterterrorism responsibilities, Assistant Attorney General Ray and I work every single day with the national security intelligence community here in Washington. Mr. Fitzgerald, in Chicago, does not.

At a time when fighting terrorism is the department's top priority, as it should be, it is imperative that Mr. Ray and I be able to focus on that responsibility without the complication that would come from also having to make decisions about this investigation.

Let me add that my decision to assign this matter to the United States attorney from Chicago is not a reflection on the people who have conducted this investigation to date or the way they have done it. We have a fabulous team of FBI agents working this case, coordinating with some of our very best career lawyers. I now know in great detail the work that they have done very quickly in this investigation, and it is impressive.

I should add that Mr. Fitzgerald may well decide to keep some or all of the career team that has been working this case, but that's entirely his call.

I also considered naming a special counsel from outside the government.

The regulations promulgated in 1999 by Attorney General Reno say that an outside special counsel should -- and I'm going to read you the quote -- "be a lawyer with a reputation for integrity and impartial decision-making, and with appropriate experience to ensure both that the investigation will be conducted ably, expeditiously and thoroughly and that

investigative and prosecutorial decisions will be supported by an informed understanding of the criminal law and Department of Justice policies."

When I read that, I realized that it describes Pat Fitzgerald perfectly. I once told a Chicago newspaper that Pat Fitzgerald was Eliot Ness with a Harvard law degree and a sense of humor. Anyone who knows him, who knows his work, who knows his background, knows that he is the perfect man for this job.

The attorney general and I agree that all leak investigations must be conducted with energy and urgency. That is all the more true when the investigation centers on allegations that there has been a disclosure of national security information. To date this investigation has been conducted professionally and expeditiously, and I believe it would not be in the public interest for anything I do to cause this investigation to be put on hold for any period of time.

My choice of Pat Fitzgerald, a sitting United States attorney, permits this investigation to move forward immediately and to avoid the delay that would come from selecting, clearing and staffing an outside special counsel operation. In addition, in many ways the mandate that I am giving to Mr. Fitzgerald is significantly broader than that that would go to an outside special counsel.

In short, I have concluded that it is not in the public interest to remove this matter entirely from the Department of Justice, but that certain steps are appropriate to ensure that the matter is handled properly and that the public has confidence in the way in which it is handled. I believe the assignment to Mr. Fitzgerald achieves both of those important objectives.

Now I'd be happy to take any questions you might have.

Yes, sir?

**Q:** What happened? I mean, you guys were defending the professional staff here at the Justice Department to handle it, and now all the sudden you're appointing Mr. Fitzgerald. What happened to tip it?

**MR. COMEY:** Well, I think what the Department of Justice has said to date is that all options were open; that it was being handled professionally by the career lawyers and FBI agents on the matter. And that's absolutely true. I know the details of this investigation. I've been down in the weeds and looked at the work they've done, and it's exactly what you were told it was: career prosecutors working very, very hard on it.

It's just that we reached a point in the investigation where the attorney general and I thought it was appropriate to make the judgment that's been made.

**Q:** Well what's different? Why did you decide now to send it to Fitzgerald if everything was going so well?

**MR. COMEY:** Well, I can't tell you that, and the reason for that is obvious; I can't tell you about the details of any criminal investigation because our goal is to make sure that anyone we're pursuing doesn't know what we're doing, and also, anyone who might not be charged with a crime is not unfairly smeared.

What happened is that the attorney general and I have periodically looked at these facts that have been developed and made a judgment, based on the totality of the circumstances, as to whether he should remain involved in it, and if he's to be out of it, what I should do with it. And so I just decided that based on what I knew about it, it was appropriate, for the reasons I said, for the attorney general to step aside -- a conclusion he reached on his own -- and for me to assign it to an independent United States Attorney.

Yes, sir?

Q: Even without names, was there some conflict, particular conflict that arose?

MR. COMEY: Well, the issue surrounding the attorney general's recusal is not one of actual conflict of interest that arises normally when someone has a financial interest or something. The issue that he was concerned about was one of appearance. And I can't go beyond that. That's the reason he decided, really in an abundance of caution, that he ought to step aside and leave me as acting attorney general for those matters.

Yes, sir?

Q: You mentioned the facts and the evidence that's been developed and how that played a role in this decision. Should this be seen as a sign that the evidence has taken you closer to people that Mr. Ashcroft has a connection with and that could create at least the appearance of a conflict? Has the evidence led you in that direction?

MR. COMEY: I can't answer that, Eric. And I know it's inevitable that you're going to speculate. I really hope you don't do that because as I said, the attorney general made this judgment based on the totality picture, looking at all the circumstances and facts and evidence in the case. If you were to speculate in print or in media about particular people, I think that would be unfair to them. The reason, as you know, that we work so hard -- I've done this for a long time -- to keep these investigations secret is so that we don't do that to people.

What I can tell you is that the investigation has been moving along very, very quickly; has been worked very, very hard and very, very well, and it reached a point where we simply thought these judgments were appropriate.

Yes, sir?

Q: Jim, but you did say, when you were asked why now, that you can't tell us that, you can't talk about the details of any criminal investigation. Is it at least safe to say that it's the details at this point that tipped the balance? Is that accurate?

MR. COMEY: It's fair to say that an accumulation of facts throughout the course of the investigation over the last several months has led us to this point. What those facts are and where they tell us we're going is stuff I can't get into and that I would hope you would not speculate about.

Yes, sir?

Q: Without getting in the details of people, can you describe sort of the scope of the

investigation in terms of how many agents are working on it? I guess there's another prosecutor that's been added recently. How many agents, how many prosecutors, and how many people have been interviewed?

**MR. COMEY:** That's the kind of detail -- exactly the kind of detail I can't get into. All I can tell you is that based on my inspection of it, it's been worked well, it's been worked appropriately, it's been staffed appropriately. But beyond that, I can't say.

Yes, ma'am?

**Q:** Do you have any sort of timeline about when you think this investigation will be over?

**MR. COMEY:** I do not. That will be Mr. Fitzgerald's call. He'll be in charge of the matter and he'll make that judgment.

**Q:** How will this work from a procedural standpoint? Mr. Fitzgerald clearly is in Chicago, over 500 miles away. How will he lead an investigation that (normally ?) takes place here in Washington?

**MR. COMEY:** Well, there are -- I think hourly -- flights, maybe very half-hour, to Chicago. And he'll get to know those folks.

**Q:** (Off mike) -- from Chicago? I mean, how will this work?

**MR. COMEY:** That's his --

**Q:** How will he juggle it with his duties based in Illinois?

**MR. COMEY:** Well, that's a call he'll have to make. He understands the priority here. I told him that my mandate to him was very simple: Follow the facts wherever they lead, and do the right thing at all times. And that's something, if you know this guy, is not something I even needed to tell him.

Yes, ma'am?

**Q:** Can you clarify the timeline a little bit? You said Ashcroft made the decision to recuse himself and informed you of it. Can you tell us when that decision was made, when he told you? You said you've been thinking for a couple days on how to proceed. Can you tell us about that timeline?

**MR. COMEY:** Well, this has come together really in the last week. The attorney general entered -- I don't know whether it was entered an order, but a document was created this morning that memorialized the recusal. It has to be done kind of officially. Once that was done, I officially became assistant -- excuse me, acting attorney general for the purpose of this case, and then was in a position to do what I've described. But because we've been discussing this matter and had sort of reached this conclusion over the last week, I had plenty of time to think about what I wanted to do with it.

**Q:** Is this a suggestion that you brought to him first?

**MR. COMEY:** I don't want to talk about my discussions with the attorney general. What I can tell you is that it was always in his mind that it might be necessary at some point for him to step away from this, step aside from this, and that it might be necessary to change the way it was approached, to move it outside the normal chain of command.

I can't -- and for that reason -- that was the reason -- much was made in the press, apparently, that he was learning about the facts of it. He was being briefed periodically on the facts, so that he could make the very judgment he made here. And I can tell you none of that acted to delay this investigation in any way. The attorney general learned enough about the case that at a point where it was appropriate, he made the judgment to step aside.

And I, at the same time, was making my own judgments, and that is agreeing with him that it was appropriate for him to step aside, but also reaching the conclusion that it was appropriate to change the way we were handling this, for the reasons I talked about in my statement.

And as I said, I have great confidence in the two guys standing on this stage. And -- but my judgment was, simply because of the subject matter involved here and our duties -- which most people don't realize, but we spend part of every day working on national security intelligence stuff -- that it was better for us to be able to focus on that, which is our nation's number-one priority, and not, at the same time, be making judgments about who to interview and all the things that come with an investigation.

Yes, sir?

**Q:** Pat Fitzgerald works a lot with national security and intelligence issues as well, however, does he not? I mean, he's running one of the largest U.S. attorney's offices in the country. He's overseen some major prosecutions. Where's the line between the contact you two have versus the kind of contact that he -- he's also fairly well-known, I think, for his work in national security.

**MR. COMEY:** He is, but his -- not to say what he's doing now is not real important, but his role is very, very different. I mean, every day Chris Ray and I are dealing with the key national security intelligence agencies. Mr. Fitzgerald is not. He may have a case that occasionally brings him into contact with that, but he's running a U.S. attorney's office, working on corruption cases, drug cases, gang cases. It's a very different sort of connection. And so that's why I thought this was appropriate.

Yes, sir?

**Q:** Will this office be an independent office that's set up someplace outside of Justice and the FBI, where most of the people may be drawn from? (Off mike) -- special prosecutor's office.

**MR. COMEY:** I don't know where it'll be housed. Wherever Mr. Fitzgerald wants to house it, we'll make sure we get him the space that he wants. That's not a matter I've discussed with him.

**Q:** You mentioned that the attorney general's office -- the staff in his office itself are also

being recused. Why was that decision made? And who and how many people are included in that recusal?

**MR. COMEY:** I don't know how many people. The entire -- "personal staff" is not what they call it, but the entire staff of the office of the attorney general would be recused. And that, I believe, is fairly standard fare, because they are -- just as my staff, whether they like it or not, is an extension of me, his staff is an extension of him, and they're of a piece.

There was a question --

**Q:** Attorney General Reno said several years ago -- and I think many of us quoted this when all this came up -- that many of the investigations -- leak investigations are closed without a suspect ever being identified. Can you tell us if a suspect or suspects, in your term of art, has been identified in this case, or do you -- are you confident that that is likely to happen in this case?

**MR. COMEY:** I can't do that. Just -- and it's not this particular investigation. I would never say that kind of details on any pending criminal investigation. I just can't do it, for the reasons I said. We don't want people that we might be interested in to know we're interested in them. We also don't want to smear somebody who might be innocent and might not be charged. That's why the secrecy of our process, I think, is what makes our process great.

**STAFF:** A question here. Sir?

**Q:** Does the attorney general still have the authority to fire the U.S. attorney?

**MR. COMEY:** No. I don't think the attorney general ever has the authority to fire a U.S. attorney. It's one of the things I loved about being a U.S. attorney. I believe the president is the only person who has authority to remove a United States attorney.

In this circumstance, because the attorney general is recused, I am the acting attorney general, for purposes of this matter. So to the --

**Q:** Could you fire Fitzgerald?

**MR. COMEY:** That's a great question. (Laughter.) Now I believe that I could revoke the delegation of authority that I've given to him. I don't believe that I could --

**Q:** So how does that move it outside the traditional chain of command, as you put it?

**MR. COMEY:** Well, because what I've done with Fitzgerald is -- the normal outside counsel, appointed outside, or the ordinary U.S. attorney, if he needs to issue a subpoena involving the media, for example, or if he wants to grant immunity to somebody or if he wants to take an appeal, has to come for approval to the Department of Justice. Pat Fitzgerald will not, for these purposes.

He is a --

**Q:** If you don't like what he's doing, you can end it.

**MR. COMEY:** Well, in theory, if I know what he's doing, in theory I could, yeah. And I'd better have a darn good reason for doing it, because you'd have your hands in the air.

Yes, sir?

**Q:** I wanted to ask you an unrelated question about the Code Orange and the terrorism alert. As we go into the New Year's Eve, can you discuss at all what the current status is, whether you think threats are diminishing or staying the same or getting more intense? And also if you can comment at all about the flights from Paris, the Air France flights, and what seems to be a disconnect between the French, saying that there doesn't appear to be that much of a problem, and people here saying that they do believe there was a threat on that flight?

**MR. COMEY:** Okay. All of those questions really are best addressed to Homeland security. What I can tell you is I think what Secretary Ridge has already said, and that is that we are in a period of heightened concern, and as he said, I think, that extends into January. Folks shouldn't think that if the New Year's Eve passes, that we're out of the woods with regard to the heightened alert. So that remains.

With respect to the Air France flight, that's really not something I could comment on.

Yes, sir?

**Q:** How was the White House informed about this decision?

**MR. COMEY:** I contacted each of the general counsels of the agencies that had been affected in some way or contacted as part of this investigation. That is, I called Defense, State, CIA and White House Counsel's Office to simply inform them that there was going to be a change in the prosecutor in charge of this matter, I would announce it at 2:00. I did that in the last several hours.

**Q:** But there was no separate consultation with the White House?

**MR. COMEY:** No. No. All I did was just inform them, as I did, as I said, State, Defense, CIA: I just want to tell you, here's what I'm announcing at 2:00.

**Q:** And the attorney general didn't consult with them or inform them personally of his decision?

**MR. COMEY:** I can't speak to -- I don't believe so. I can't speak to that. I don't think there was any consultation of the attorney general with those agencies.

Yes, sir?

**Q:** You mentioned that the -- you felt that Fitzgerald will have a broader -- actually a broader mandate, broader abilities than an outside counsel. Can you expand on that a little bit? In what respect will he have a --

**MR. COMEY:** Yes. An outside counsel has a -- the regulations prescribe a number of ways in which they're very similar to a U.S. attorney. For example, they have to follow all Department of Justice policies regarding approvals. So that means if they want to subpoena

a member of the media, if they want to grant immunity, if they want to subpoena a lawyer -- all the things that we as U.S. attorneys have to get approval for, an outside counsel has to come back to the Department of Justice. An outside counsel also only gets the jurisdiction that is assigned to him and no other. The regulations provide that if he or she wants to expand that jurisdiction, they have to come back to the attorney general and get permission.

Fitzgerald has been told, as I said to you: Follow the facts; do the right thing. He can pursue it wherever he wants to pursue it.

An outside counsel, according to the regulations, has to alert the attorney general to any significant event in the case; file what's called an "urgent report." And what that means is just as U.S. attorneys have to do that, he would have to tell the attorney general before he brought charges against anybody, before maybe a significant media event, things like that. Fitzgerald does not have to do that; he does not have to come back to me for anything. I mean, he can if he wants to, but I've told him, our instructions are: You have this authority; I've delegated to you all the approval authority that I as attorney general have. You can exercise it as you see fit.

And a U.S. attorney or a normal outside counsel would have to go through the approval process to get permission to appeal something. Fitzgerald would not because of the broad grant of authority I've given him.

So, in short, I have essentially given him -- not essentially -- I have given him all the approval authorities that rest -- that are inherent in the attorney general; something that does not happen with an outside special counsel.

Q: I assume this is written down somewhere, and are we going to get a copy of it?

MR. COMEY: I don't know whether you'll get a copy, but he will.

Q: Getting back to orange alert for a second, what are DOJ's responsibilities in an orange alert situation? I mean, we know what TSA does, DHS. What does the Justice Department do?

And also, do you plan to file any kind of response on the Padilla case? (Off mike) -- halfway through the 30 days.

MR. COMEY: With respect to the orange alert, the Justice Department's role in general, obviously, is before the alert level is raised, the attorney general is part of any deliberations about raising that.

More generally, I hope you know what we do, and that is the men and women of the FBI and all of our agencies are out there working like crazy to try and keep the homeland safe. I can't answer it other than -- as broadly as that. A lot of people's holidays have not been holidays because of the effort they've been putting forth, and I hope people remember that.

With respect to Padilla, I can't comment. I know we still have time on the clock, but I don't know exactly where it stands.

Eric?

**Q:** President Bush said, soon after the leak story broke, that he wasn't sure that the leaker would ever be caught. I know you can't talk about specific suspects that you may be narrowing in on, but in general, are you confident that this case is going to result in a prosecution?

**MR. COMEY:** That's not a characterization I can make. I wouldn't do it about any case, but I'm not going to do it about this case. All I can tell you is that I'm confident that the facts will be found professionally and that the judgments will be made by someone with impeccable judgment and impartiality, and that is Mr. Fitzgerald.

Yes, ma'am?

**Q:** Have you set a budget for Mr. Fitzgerald's office? And -- well, that's it.

**MR. COMEY:** The answer is no.

Mr. Fitzgerald's office has a budget, which he no doubt -- as U.S. attorney -- no doubt thinks is too small. And that's what I meant when I said resources. If he needs people or money or chairs or sticky pads, he can come back to me or to Assistant Attorney General Ray and we'll make sure that he gets it. I would expect that because he's already in the Department of Justice, we already have a team in place, he'll at least be able to draw on some, maybe all, of those resources and supplement them. He happens to run one of the best U.S. attorney's offices in the country, and he has senior people with great experience in a host of issues that might be relevant. So I would expect he'd draw on those troops.

**Q:** So there won't be a separate budget for this independent investigation?

**MR. COMEY:** No.

Yes, ma'am?

**Q:** He's just building on what Mr. Dionne (sp) has already completed; is that correct? And what happens to Mr. Dionne (sp)? Will he work for MR. Fitzgerald? Will he continue to play an important role in this investigation since he's conducted the majority of the investigation to this point?

**MR. COMEY:** Well, that's a judgment for Mr. Fitzgerald to make as to what he builds on, what he does. I'm sure he knows of Mr. Dionne's (sp) reputation just as I do. But again, I don't want to prejudge that. It's entirely his call as to how he staffs it. Like I said, I wouldn't be surprised if he thought maybe he ought to keep some or all of the career folks involved.

I know that one of the things that makes Mr. Fitzgerald a great prosecutor is that he works quickly. He understands that justice delayed is not a good thing. So I would expect -- and that's one of the things that made me prefer this over an outside option. Mr. Fitzgerald can be here -- (snaps his fingers) -- like that to pick up this ball and to run with it, which would not be possible with the alternative.

**Q:** (Off mike) -- bring people from Chicago -- (off mike) -- to Washington?

**MR. COMEY:** The answer to that is I don't know. And I really would not presume to tell

him that. I'm giving him a broad mandate and saying this is your charge.

Yes, sir?

**Q:** A quick question. Eric asked if you were confident that you could -- that you might be able to prosecute the leaker. That's a pretty high standard of proof. Are you confident that you will be able to identify the leaker or leakers?

**MR. COMEY:** Same answer I gave Eric, which I hope was vague and noncommittal.

Thank you, folks.

(end transcript)

# 05-CR-394 -- EXHIBIT B



U. S. Department of Justice

Office of the Deputy Attorney General

---

The Deputy Attorney General            Washington, D.C. 20530

MEMORANDUM

TO:         David Margolis
            Associate Deputy Attorney General

FROM:       James B. Comey
            Deputy Attorney General

SUBJECT:    <u>Delegation of Authority</u>

      In the attached correspondence to Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, dated December 30, 2003, and Feburary 6, 2004, I delegated to Mr. Fitzgerald all of the authority of the Attorney General with respect to the Department's investigation into the alleged unauthorized disclosure of a Central Intelligence Agency employee's identity.  By virtue of the authority vested in me as Deputy Attorney General under the law, including 28 C.F.R. § 0.15(a), I delegate to you all of my authority as Acting Attorney General with respect to that investigation and Mr. Fitzgerald's service as Special Counsel, as delineated in that correspondence.  This delegation to you in no way retracts or modifies the scope of the prior delegations of authority to Mr. Fitzgerald.

<u>August 12, 2005</u>                          <u>/s/ James B. Comey</u>
Date                                      James B. Comey

Attachments (2)

cc:  Robert D. McCallum, Jr.
     Patrick J. Fitzgerald

# 05-CR-394 -- EXHIBIT C



# Office of the Deputy Attorney General
## Washington, D.C. 20530

December 30, 2003

The Honorable Patrick J. Fitzgerald
United States Attorney
219 S. Dearborn Street
Chicago, IL 60604

Dear Patrick,

    By the authority vested in the Attorney General by law, including 28 U.S.C. §§ 509, 510, and 515, and in my capacity as Acting Attorney General pursuant to 28 U.S.C. § 508, I hereby delegate to you all the authority of the Attorney General with respect to the Department's investigation into the alleged unauthorized disclosure of a CIA employee's identity, and I direct you to exercise that authority as Special Counsel independent of the supervision or control of any officer of the Department.

                                                  /s/ James B. Comey
                                                  James B. Comey
                                                  Acting Attorney General

# 05-CR-394 -- EXHIBIT D



**Office of the Deputy Attorney General**
Washington, D.C. 20530

February 6, 2004

The Honorable Patrick J. Fitzgerald
United States Attorney
Northern District of Illinois
219 S. Dearborn Street
Chicago, Illinois 60604

Dear Patrick:

    At your request, I am writing to clarify that my December 30, 2003, delegation to you of "all the authority of the Attorney General with respect to the Department's investigation into the alleged unauthorized disclosure of a CIA employee's identity" is plenary and includes the authority to investigate and prosecute violations of any federal criminal laws related to the underlying alleged unauthorized disclosure, as well as federal crimes committed in the course of, and with intent to interfere with, your investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; to conduct appeals arising out of the matter being investigated and/or prosecuted; and to pursue administrative remedies and civil sanctions (such as civil contempt) that are within the Attorney General's authority to impose or pursue. Further, my conferral on you of the title of "Special Counsel" in this matter should not be misunderstood to suggest that your position and authorities are defined and limited by 28 CFR Part 600.

                                        Sincerely,

                                        /s/ James B. Comey
                                        James B. Comey
                                        Acting Attorney General