UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY | ) | |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

**MOTION OF I. LEWIS LIBBY TO BAR EX PARTE SUBMISSIONS UNDER CIPA § 4 WITHOUT A PARTICULARIZED SHOWING OF EXCEPTIONAL CIRCUMSTANCES**

Defendant I. Lewis Libby, through his counsel, moves the Court under 18 U.S.C. App. III, § 4 (CIPA § 4) and the Fifth Amendment Due Process Clause for an Order barring the government from making ex parte submissions concerning discovery issues absent a particularized showing, through adversarial proceedings, of exceptional circumstances. If the Court permits the government to proceed ex parte, over our objection, it should afford the defense, in accordance with prior decisions, a corresponding opportunity to make an ex parte presentation to the Court in support of its discovery requests.

**INTRODUCTION**

The government has announced its intention to make an ex parte submission to the Court concerning classified discovery issues. Although we do not know precisely what relief the government will seek through the secret submission, we assume it will

argue that it should be excused from providing certain discovery or that it should be allowed to provide substitutions or redactions under CIPA § 4.[1]

For the reasons that follow, the Court should reject the government's request to proceed ex parte unless it makes a particularized showing of exceptional circumstances in an adversarial proceeding. Mr. Libby had access to highly classified information--including, in all likelihood, some of the information that the government now seeks to withhold--throughout his tenure as National Security Advisor and Chief of Staff to the Vice President. Mr. Libby's counsel have been granted high level security clearances. The defense works out of a SCIF equipped to handle even the most sensitive information. Under these circumstances, barring Mr. Libby and his counsel from participating in discovery determinations would cripple the adversarial process with no commensurate benefit to national security. Secret proceedings would constitute an abuse of discretion under CIPA § 4 and would violate Mr. Libby's right to due process. To ensure both "the appearance and the reality of fairness," the Court should not permit the government to proceed ex parte without an adequate showing. *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986), *aff'd by an equally divided Court*, 484 U.S. 1 (1987).

To be clear, we do not object to in camera consideration of potentially discoverable classified documents by the Court. In camera review is a traditional means

---

[1] Even before obtaining a ruling from the Court, the government has unilaterally assumed the authority to produce redacted documents. We understand that some of the documents that the defense has received with redactions were produced to the OSC in that form. The OSC apparently redacted others before production at the request of the producing agency. We object to this extrajudicial redaction policy and intend to challenge at least some of the redactions in a forthcoming discovery motion.

2

of determining whether documents are discoverable.[2] We do object, however, to any ex parte argument by the government that particular documents are not discoverable or that it should be permitted to redact or provide substitutions for discoverable documents. Moreover, once the Court determines that a document falls within the scope of Rule 16 or *Brady*, the defense should have access to the document for purposes of arguing that any redactions or substitutions the government proposes will not afford Mr. Libby substantially the same ability to make his defense as the complete document.

If the Court permits the prosecution to make discovery submissions ex parte, then it should level the playing field, as other courts have done under similar circumstances, by affording the defense a corresponding opportunity to make an ex parte presentation in support of our discovery requests.

## ARGUMENT

I.  **THE COURT SHOULD EXERCISE ITS DISCRETION UNDER CIPA § 4 TO REFUSE TO ACCEPT EX PARTE SUBMISSIONS FROM THE GOVERNMENT EXCEPT ON A PARTICULARIZED SHOWING OF EXCEPTIONAL CIRCUMSTANCES.**

This Court has declared unequivocally that "[e]x parte communications between a district court and the prosecution in a criminal case are greatly discouraged, and should only be permitted in the rarest of circumstances." *United States v. Rezaq*, 899 F. Supp. 697, 707 (D.D.C. 1995); *see, e.g., United States v. George*, 786 F. Supp. 11, 16 (D.D.C. 1991) ("Ex parte proceedings are generally disfavored, even when the federal rules

---

[2] *See, e.g., Palermo v. United States*, 360 U.S. 343, 354 (1959) (in camera review of witness' prior statements); *Abourezk*, 785 F.2d at 1061 (noting that court may consider evidence "*in camera* and alone for the limited purpose of determining whether [an] asserted privilege is genuinely applicable"); Fed. R. Crim. P. 26.2(c) (in camera review of witness' prior statements).

expressly permit them."). In accordance with this principle, rooted in the Fifth Amendment Due Process Clause, the Court should reject ex parte submissions from the prosecution absent a showing, through adversarial proceedings, of exceptional circumstances. *See Rezaq*, 899 F. Supp. at 707.

The government proposes to proceed ex parte under CIPA § 4. That provision allows the Court to authorize the government, "upon a sufficient showing," to delete classified information from the discovery it provides or to furnish substitutions for the classified information in the form of summaries or admissions. The statute adds that "[t]he court *may* permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone." CIPA § 4 (emphasis added).

The use of the permissive "may" in CIPA § 4, rather than the mandatory "shall," makes clear that the Court has discretion to reject ex parte submissions.[3] Congress patterned the ex parte provision of CIPA § 4 on a similar provision in Fed. R. Crim. P. 16(d)(1), which governs protective orders in criminal cases. *See* S. Rep. No. 823, 96th Cong. 2d Sess. 6 (discussing relation between CIPA § 4 and Fed. R. Crim. P. 16(d)(1)), *reprinted in* 1980 U.S. Code Cong. & Ad. News 4294, 4299-4300. Rule 16(d)(1) states that a court "may" permit a party to show good cause for a protective order through an ex parte statement. Congress amended the language of proposed Rule 16(d)(1) from *requiring* ex parte proceedings on the request of a party to *permitting* such proceedings.

---

[3] When Congress intends to *require* ex parte procedures in the national security setting, it knows how to say so. In the Foreign Intelligence Surveillance Act, for example, Congress declared that the Court "shall" review FISA applications, orders, and related materials ex parte if the Attorney General submits an affidavit asserting that an adversarial proceeding would harm national security. 50 U.S.C. § 1806(f).

4

The House Judiciary Committee observed that in determining whether to proceed ex parte, a court should "bear[] in mind that ex parte proceedings are disfavored and not to be encouraged." Fed. R. Crim. P. 16, Advisory Committee Notes, 1975 Enactment. Ex parte proceedings are similarly discretionary and disfavored under CIPA § 4. *See, e.g., United States v. Rezaq*, 156 F.R.D. 514, 526 (D.D.C. 1994) (under CIPA § 4 and Rule 16(d)(1), "ex parte filings are not required . . . nor even favored"), *modified*, 899 F. Supp. 697 (D.D.C. 1995).

No basis exists here to abandon the presumption against ex parte proceedings in general or under CIPA § 4. The government cannot plausibly contend that sharing its arguments and the complete text of discoverable documents with the defense, under the protections of the CIPA protective order, will jeopardize national security. Mr. Libby has been, and continues to be, entrusted with this country's most sensitive secrets, potentially including some of the very information the government now seeks to withhold. This crucial fact distinguishes Mr. Libby's case from every reported case we have found in which a court permitted the government to make ex parte discovery submissions under CIPA § 4; those cases uniformly involve non-government defendants who never had authorized access to classified information.[4] In addition, Mr. Libby's counsel have

---

[4] *See, e.g., United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) (ex parte CIPA proceeding in drug case); *United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998) (government permitted to file ex parte motion for protective order in aircraft piracy case); *United States v. Yunis*, 924 F.2d 1086, 1094-95 (D.C. Cir. 1991) (ex parte CIPA proceedings in aircraft piracy and hostage taking case); *United States v. Sarkissian*, 841 F.2d 959, 965-66 (9th Cir. 1988) (ex parte CIPA proceedings in terrorism case); *United States v. Pringle*, 751 F.2d 419, 425-27 (1st Cir. 1984) (ex parte CIPA proceeding in drug case); *United States v. Ressam*, 221 F. Supp. 2d 1252, 1258-59 (W.D. Wash. 2002) (ex parte CIPA proceedings in terrorism case); *United States v. Scarfo*, 180 F. Supp. 2d 572, 580-81 (D.N.J. 2001) (ex parte CIPA

5

undergone rigorous and intrusive background investigations and have demonstrated their trustworthiness. Thus, this is not a case where "'an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.'" *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (quoting H. Rep. No. 831, 96th Cong., 2d Sess. 27 n.22 (1980)); *see, e.g., George*, 786 F. Supp. at 14 n.1 (noting that "[t]he concerns of the court and the government in *Yunis* are not fully applicable here because there has been no allegation that the defendant might use the [classified] information to bring harm to anyone"); *United States v. Poindexter*, 727 F. Supp. 1470, 1473 & n.4 (D.D.C. 1989) (court erred on side of granting classified discovery of matters encompassed in the indictment, in part "since this defendant, unlike the defendant in such cases as [*Yunis*], had high security clearances, and production of sensitive information would be less likely to harm national security interests").[5]

Ex parte discovery proceedings will damage the adversarial process and reduce the accuracy of the Court's determinations. The Supreme Court has observed that "'[f]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights.'" *United States v. James Daniel Good Real Property*, 510 U.S. 43, 55 (1993) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-72 (1951) (Frankfurter, J., concurring)). In the Fourth Amendment context, the Court has twice

---

proceedings in gambling and loansharking case); *United States v. Rahman*, 870 F. Supp. 47 (S.D.N.Y. 1994) (ex parte CIPA proceedings in terrorism case).

[5] In *George* and *Poindexter* the government sought to restrict discovery (although it apparently did not resort to ex parte proceedings to do so) on the basis that disclosure to defense attorneys and staff might endanger national security. *George*, 786 F. Supp. at 14 n.1; *Poindexter*, 727 F. Supp. at 1481 n.22. We see no such danger here, given the stringent clearance process defense personnel have undergone. Nevertheless, we

rejected the use of ex parte proceedings on grounds that apply here. In *Alderman v. United States*, 394 U.S. 165 (1969), the Court addressed the procedures to be followed in determining whether government eavesdropping in violation of the Fourth Amendment contributed to its case against the defendants. The Court rejected the government's suggestion that the district court make that determination ex parte. The Court observed that

> [a]n apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances.

*Id.* at 182. In ordering disclosure of improperly recorded conversations, the Court declared:

> Adversary proceedings will not magically eliminate all error, but they will substantially reduce its incidence by guarding against the possibility that the trial judge, through lack of time or unfamiliarity with the information contained in and suggested by the materials, will be unable to provide the scrutiny that the Fourth Amendment exclusionary rule demands.

*Id.* at 184; *see also Franks v. Delaware*, 438 U.S. 154, 169 (1978) (permitting adversarial proceeding on showing of intentional falsehood in warrant affidavit because the magistrate who approves a warrant ex parte "has no acquaintance with the information that may contradict the good faith and reasonable basis of the affiant's allegations").

The same considerations that the Supreme Court found compelling in *Alderman* and *Franks* militate against ex parte procedures in the CIPA context, at least absent powerful national security considerations that have not been shown to exist here. The

---

will agree to further limit access to classified information that the government

Court, which has had no opportunity to review the discovery, consult with Mr. Libby, or otherwise investigate the facts of this case, cannot be expected to surmise the factual nuances of the defense--the ways in which "[a]n apparently innocent phrase, a chance remark, [or] a reference to what appears to be a neutral person or event" might be critical to Mr. Libby's defense. *Alderman*, 394 U.S. at 182. As the Supreme Court remarked in rejecting ex parte review of a witness' grand jury testimony, "In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875 (1966).

We recognize, as did the court in *Rezaq*, that exceptional circumstances could arise that might justify ex parte proceedings. But the Court should permit the government to proceed ex parte only on a particularized showing that such circumstances exist, and it should direct that "the government file future motions for leave to file submissions ex parte, with the understanding that such motions must be served on the defendant and then litigated in an adversarial hearing before this court." *Rezaq*, 899 F. Supp. at 707.

II. **IF THE COURT PERMITS THE GOVERNMENT TO MAKE AN EX PARTE SUBMISSION UNDER CIPA § 4, OVER MR. LIBBY'S OBJECTION, IT SHOULD PERMIT THE DEFENSE TO MAKE AN EX PARTE PRESENTATION IN SUPPORT OF ITS CLASSIFIED DISCOVERY REQUESTS, AS OTHER COURTS HAVE DONE.**

To the extent the Court permits the government to make an ex parte submission under CIPA § 4, it should level the playing field by permitting the defense to proceed ex parte in support of the requested discovery. Other courts have adopted this approach. In

---

identifies as particularly sensitive.

*United States v. Clegg*, 740 F.2d 16 (9th Cir. 1984), for example, the district court accepted ex parte submissions from both parties on discovery issues. *See id.* at 17. In *Poindexter*, the court permitted the defense to explain ex parte the relevance of certain Presidential and Vice-Presidential documents. *See* 727 F. Supp. at 1479 & n.16. And in *United States v. North*, 698 F. Supp. 322 (D.D.C. 1988), the court (with the agreement of the prosecution) heard a four hour ex parte defense presentation concerning the defendant's need for classified discovery he had requested. *Id.* at 324.

Although we consider ex parte submissions by either party to be generally inappropriate, we request the opportunity, as permitted in *Clegg*, *Poindexter*, and *North*, to make such a presentation in support of our classified discovery requests if the Court permits the government to proceed ex parte in opposition. An ex parte defense presentation will go some distance toward remedying the perceived and real unfairness of allowing the government to challenge Mr. Libby's discovery requests in secret.

## CONCLUSION

For the foregoing reasons, the Court should bar the government from making ex parte submissions concerning discovery issues absent a particularized showing, through adversarial proceedings, of exceptional circumstances. If the Court permits the government to proceed ex parte, over our objection, it should afford the defense a corresponding opportunity to make an ex parte presentation to the Court in support of its discovery requests.

9

February 24, 2006                                                         Respectfully submitted,


_____/s/_____                                         _____/s/_____
Theodore V. Wells, Jr.                                                    William H. Jeffress, Jr.
(DC Bar No. 468934)                                                       (DC Bar No. 041152)
James L. Brochin                                                          Alex Bourelly
(DC Bar No. 455456)                                                       (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                                             Baker Botts LLP
  & Garrison LLP                                                          1299 Pennsylvania Ave., NW
1285 Avenue of the Americas                                               Washington, DC  20004
New York, NY  10019-6064                                                  (202) 639-7751
(212) 373-3089


_____/s/_____                                    _____/s/_____
Joseph A. Tate                                                            John D. Cline
Dechert LLP                                                               (D.C. Bar No. 403824)
2929 Arch Street                                                          Jones Day
Cira Centre                                                               555 California Street, 26th Floor
Philadelphia, PA  19104                                                   San Francisco, CA  94104
                                                                          Tel:  (415) 626-3939
                                                                          Fax:  (415) 875-5700