# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

*Let this be filed
3/2/06
Judge Walton*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR. NO. 05-394 (RBW) |
| | : | |
| I. LEWIS LIBBY, | : | ████████ Affidavit |
|     a/k/a "Scooter Libby" | : | |

PATRICK J. FITZGERALD, being duly sworn, deposes and says:

## Introduction

1. I am the United States Attorney for the Northern District of Illinois. For purposes of the instant matter, I serve in the capacity as "Special Counsel." I submit this *ex parte* affidavit in opposition to the motion by defendant I. Lewis Libby ("Libby") to compel discovery of all "documents and information" regarding contact between news reporters and government officials. This affidavit describes with specificity the items not being produced (and information not being disclosed) to the defense so that the Court may decide the pending motion with concrete knowledge of what is at issue. The affidavit is submitted *ex parte* because it makes extensive references to sensitive grand jury information, including the identity of witnesses, the substance of grand jury testimony, and the strategy and direction of the investigation, which is continuing.

## Overview

2. The information and items responsive to Libby's demands and which we are not producing generally consists of testimony, information and items which: (i) reveal the identity of
   **REDACTED**
(ii) concern others subjects of the investigation and numerous witnesses who testified about their knowledge of the conduct of those subjects, often focusing on conversations after July 14, 2003, during which various persons referenced events of spring 2003 not relevant to defendant Libby; and (iii) concern witnesses whom we expect to testify at defendant Libby's trial, for whom appropriate materials will be produced pursuant to the Jencks Act.

3. In this affidavit, I describe the investigation at some length even though the specific items not being disclosed to the defense are very few. I have erred on the side of caution in describing the broader investigation in considerable detail because I am concerned that a literal reading of the relief sought by the defense – disclosing all documents or information regarding conversations between officials and reporters in spring 2003 regardless of when the documents were created – would sweep in virtually every grand jury transcript and reports of interview of most witnesses and many irrelevant documents as nearly every discussion or document about the investigation – even documents created in 2005 about conversations in 2005 – refer back to the baseline fact that information was leaked to reporter Robert Novak in July 2003. We are proceeding on the assumption that such a broad scope is not appropriate. However, we set forth at pages 2 through 12 a description of the larger investigation in order to provide the Court the full scope of the materials implicated by the language of that defense request, which, if complied with, would compromise "innocent accuseds" in an investigation where more than ● witnesses have been interviewed and more than ● witnesses have testified before the grand jury or in depositions ancillary to the grand jury. The affidavit then discusses at pages 12 through 15 what information is known to investigators about conversations between reporters and officials prior to July 14, 2003, and what information has and has not been disclosed to Libby. The affidavit then describes at pages 15 through 18 what documents, grand jury transcripts and related materials have been provided and what has not been produced.

4.


REDACTED


5.


REDACTED

2

REDACTED

6.

REDACTED

7

REDACTED

REDACTED

8.

REDACTED

9.

REDACTED

10.

REDACTED

REDACTED

11.

REDACTED

12.

REDACTED

REDACTED

13.

REDACTED

REDACTED

REDACTED

14.

REDACTED

15.

REDACTED

16.

REDACTED

REDACTED

17.

REDACTED

18.

REDACTED

19.

REDACTED

8

20.

REDACTED

21.

REDACTED

22.        REDACTED

**REDACTED**
                                                                We have
also produced to Libby the documents obtained from Cooper regarding his conversation with

REDACTED
                                                                We have

---

[2]Libby testified that he learned from REDACTED on July 10 or July 11 that Novak was aware of Wilson's wife's employment at the CIA and that Novak planned to publish a story about Wilson and his wife. REDACTED

Indeed, Libby stated that when he talked to reporters about Wilson's wife's employment he understood that "reporters" in the plural – namely Russert and Novak – were saying that Wilson's wife worked at the CIA.

REDACTED

9

further provided Libbby's defense team with a copy of REDACTED email to  REDACTED   referencing the conversation with

REDACTED

**REDACTED**

23.

REDACTED

24.  REDACTED

REDACTED

25.

REDACTED

---

[3] More recently, Mr. Dickerson has published an online column setting forth his recollection of pertinent events which would seem to indicate that he was not affirmatively told Ms. Wilson's employment but that he was encouraged by officials to look into the question of who sent Mr. Wilson on the trip.

10

26.

REDACTED


27.


REDACTED

28.


REDACTED


29.


REDACTED


30.


REDACTED


11

31.

REDACTED

32.

REDACTED

REDACTED

33.

REDACTED

34.

REDACTED

REDACTED

35.    REDACTED

36.    REDACTED

REDACTED

37.    REDACTED

REDACTED

4

REDACTED

5    REDACTED

REDACTED

## *What Defendant Libby Already Knows*

38. Libby                REDACTED                    __ has been informed
of the identities of all the reporters that we are aware of who knew this information. It has also
been publicly reported that Mr. Woodward and Mr. Novak knew about Wilson's wife's
employment before July 14 and Mr. Libby is charged with telling Ms. Miller and Mr. Cooper.
Even to the extent that Mr. Woodward believed he may have told Mr. Pincus – and Mr. Pincus
denies that – the same has been publicly reported. Mr. Pincus has published that he learned on
July 12 and filed an affidavit when litigating his subpoena, which we have provided to the Libby
defense team.

39. Beyond that, most of the reporters have published accounts of what they learned and
how. Mr. Cooper published articles twice about his conversations with Mr. Libby and Mr. Rove.
Ms. Miller published her account of her conversation with Mr. Libby. Mr. Novak has published
a brief description of how he learned the information, albeit declining to name his sources
(  REDACTED        ). Mr. Libby indisputably knows at least one of Mr. Novak's sources:
REDACTED  Mr. Libby testified in the grand jury that      told Libby that Novak was publishing a
column about Wilson's wife before it was ever published.

40. Moreover, Mr. Russert and Mr. Kessler have each published accounts of their
absence of conversations with Libby about Wilson and his wife. And while Libby cites Andrea
Mitchell's account implying that she knew about Wilson's wife before July 14, there is a later
statement by NBC that she *did not*.

## *What Defendant Libby Has Been Told*

41. In addition to the documents and objects disclosed (as discussed above), the
Government advised the defense team of much of the information learned in the investigation by
letters dated January 23, 2006, and February 2, 2006. (Copies annexed as Exhibits A and B.) The
discovery provided in those two letters in substantial part moots the defendants' motion, though
granting Libby's motion would trigger production of many items pertinent to the investigation of
other subjects – and particularly their conduct in the fall of 2003 and later – because their
conversations in some way reference back to the events of spring 2003, as described in detail at
pages 2 to 12.

14

42. I note that the Government could have taken the approach that it satisfied its obligations regarding any disclosures concerning various reporters because all such reporters have been publicly identified. Thus, Libby's counsel could seek to speak to those individuals. The government has gone far beyond that by outlining what it knows and in several cases disclosing transcripts of grand jury testimony in whole or in part and producing other documents that are not directly relevant to the question of whether Libby lied when he provided specific testimony about conversations with various reporters.

*What Defendant Libby is Not Being Told*

43. The one significant piece of information that Libby is not being told is the identity of REDACTED as a source for REDACTED

Moreover, Libby has been given a redacted transcript of the conversation between Woodward and REDACTED and Novak has published an account briefly describing the conversation with his first confidential source ( REDACTED ).

*What "Documents" Pertaining to Reporters the Government Has Produced*

44. As set forth in detail in the letter of February 2, we have produced a number of documents to the defense, including all documents received from Mr. Cooper and Time Inc. (whether they concerned Mr. Libby or REDACTED , all documents received from Judith Miller, all documents received from Walter Pincus of the Washington Post and the documents from Bob Woodward pertaining to Libby. There are no responsive documents pertaining to Mr. Russert.

*What "Documents" Pertaining to Reporters the Government Has Not Produced*

45.

REDACTED

(i)

REDACTED

(ii)

REDACTED

15

REDACTED

(iii)

REDACTED

(iv)

REDACTED

*What Grand Jury Transcripts the Government Has Produced*

46.  While we do not believe we were required to produce grand jury transcripts (other than transcripts of Mr. Libby's testimony), we produced the following grand jury transcripts or deposition transcripts to Mr. Libby's counsel in order to expedite litigation.[6]

REDACTED

Glenn Kessler (the entire deposition),

Walter Pincus (the entire deposition), and

Robert Woodward (that part of his deposition where he discusses his conversation with
    Mr. Libby and that part describing the substance of his conversation with his other
    source, REDACTED with REDACTED name redacted).

We produced these transcripts in part because we did not intend to call these witnesses at trial, and because these reporters had spoken publicly about their role in this case to varying degrees.

---

[6]

REDACTED

REDACTED

47.          REDACTED


             REDACTED


48.

                    REDACTED


49.

             REDACTED


50.

             REDACTED

17

REDACTED

*All Subpoenas Issued to Reporters To Date Were Produced*

51.  As set forth in the February 2 letter, the Government produced copies of all subpoenas to reporters and news organizations to date.  I note that no formal subpoenas were issued to Robert Woodward and Glenn Kessler of the *Washington Post*, though we have produced transcripts of their testimony to Libby.

REDACTED

REDACTED
There are no subpoenas responsive to the request not being produced to the defense.

52.  As described in our letter of February 2, 2006, we provided defendant Libby with all agreements to limit the scope of information provided pursuant to subpoenas through January 31, 2006.  We redacted only one letter concerning Mr. Woodward to protect the identity of  REDACTED REDACTED as his source.  In addition, in the February 2 letter we took the added step of setting forth the nature of our understandings with counsel for Ms. Miller and the *New York Times*, though much of that information had not been reduced to writing previously.  We produced such materials in order to facilitate the ability of the defense to address the issues of what reporters or media organizations they may wish to subpoena.

53.

REDACTED

*Conclusion*

54.  As set forth above, the materials not being produced to the defense fall into the

18

narrow category of documents specified which concern other subjects of investigation and matters not relevant to Libby's conduct. In addition, we have relied upon the broader principles that grand jury transcripts and other materials are not discoverable because to require production of such materials on the scale sought by the defense would implicate a number of grand jury transcripts not relevant to Libby's case, while implicating issues of classified information, reporter confidentiality and executive privilege while at the same time compromising the rights of innocent accused and the confidences of witnesses before the grand jury.

Patrick J. Fitzgerald
Special Counsel

Sworn to before me this
16th day of February 2006

Notary Public

OFFICIAL SEAL
MARGARET R CUSACK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/23/06