**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FILED

MAR 1 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| v. | )  Criminal No. 05-394 (RBW) |
| | ) |
| I. LEWIS LIBBY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION

On February 24, 2006, this Court heard extensive argument on the defendant's Motion to

Compel Discovery of Information Regarding News Reporters and Organizations[1] and his Motion

to Compel Discovery of Rule 16 and Brady Material in the Possession of Other Agencies.[2] At

that hearing, this Court, from the bench, resolved a number of the disputed requests.[3] This

---

[1] This motion also sought copies of all "subpoenas issued to reporters or news organizations during the grand jury investigation, and any agreements by the FBI or Office of Special Counsel to limit the scope of the information supplied pursuant to those subpoenas." The defendant's reply brief, however, indicates that this request has been complied with and is therefore now moot. Def.'s Reply at 6.

[2] The following papers have been submitted in connection with these motions: (1) Motion of I. Lewis Libby to Compel Discovery of Information Regarding News Reporters and Organizations ("Def.'s Mot. I); (2) Motion of I. Lewis Libby to Compel Discovery of Rule 16 and Brady Material in the Possession of Other Agencies ("Def.'s Mot. II"); (3) the Government's Consolidated Response to Defense Motions to Compel Discovery ("Gov't's Opp'n"); and (4) Reply Memorandum of Law in Support of Motions of I. Lewis Libby to Compel Discovery ("Def.'s Reply"). In addition, the Special Counsel has filed an ex parte affidavit in support of the government's opposition, and the defendant's attorney, Theodore V. Wells, Jr., has filed an affidavit to support the defendant's motions. Both affidavits have been filed under seal.

[3] Specifically, the Court granted the defendant's request for his personal notes for the period of May 6, 2003 through March 24, 2004. However, the Court concluded that the defendant was not entitled to any documents, other than those already produced, which related to "knowledge by any news reporter or employee of a news organization of Valerie Plame Wilson's possible affiliation with the CIA or her role in connection with Joseph Wilson's trip to Niger prior to July 14, 2003," or documents containing "any mention of Valerie Plame Wilson in any communication between a news reporter and a government official, another news reporter, an employee of a

(continued...)

1

Memorandum Opinion addresses two of the remaining disputes — whether the defendant is entitled to (1) "[a]ll documents provided to [the defendant] in connection with his morning intelligence briefing during the period of May 6, 2003 through March 24, 2004, including the President's Daily Brief ("PDB"), in its entirety, and additional materials provided for the Vice President and Mr. Libby with the PDB" and (2)"[a]ll documents relating to inquiries made during or in connection with [the defendant's] morning intelligence briefing for the period of May 6, 2003 through March 24, 2004, and all document provided to [the defendant] as a result of those inquiries."[4] Def.'s Mot. II at 1-2.  For the reasons set forth below, the Court grants in part and denies in part the defendant's requests.[5]

## I.    Background

In September 2003, the Department of Justice authorized the Federal Bureau of Investigation ("FBI") to commence a criminal investigation into the possible unauthorized

---

[3](...continued)
news organization, or any other person prior to July 14, 2003."  In so ruling, the Court concluded that the documents which the government has not produced are not material to the preparation of the defense as they do not in any way relate to conversations either the defendant had with other news reporters or conversations that Judith Miller, Tim Russert, or Matthew Cooper had with other news reporters, or other government officials.  Although the Court denied these requests, it reserved ruling on one set of documents that might be responsive to the defendant's requests.  The Court required the government to submit these disputed documents to the Court for its in camera review so it could determine whether production should be ordered.  The government has now done so, and upon careful review of these additional documents that the government had withheld, it is clear that the documents are not material to the preparation of the defense, nor do they qualify as Brady material, and thus need not be produced.

[4]  As discussed later in this opinion, the defendant has now agreed to further narrow these requests. Response of I. Lewis Libby to March 2, 2006 CIA Declaration and Court's February 27 Order ("Def.'s Response") at 4-6.

[5]  The Court anticipates resolving the final two disputes raised in connection with these motions — whether the defendant it entitled to "[a]ny assessment done of the damage (if any) caused by the disclosure of Valerie Wilson's status as a CIA employee" or "[a]ll documents, regardless of when created, relating to whether Valerie Wilson's status as a CIA employee, or any aspect of that status, was classified at any time between May 6, 2003 and July 14, 2003" — in a subsequent memorandum opinion that will be issued after the Court has the opportunity to carefully consider the government's notice submitted pursuant to Section 4 of the Classified Information Procedures Act ("CIPA").

disclosure of classified information — Valerie Plame Wilson's affiliation with the Central

Intelligence Agency ("CIA") — to several journalists. Indictment at 8, ¶ 25. As part of the

investigation, the defendant was interviewed by Special Agents of the FBI in October and

November, 2003, id. at 9, ¶ 26, and in March, 2004, the defendant twice provided testimony to

the grand jury investigating the possible unauthorized disclosure, id. at 11, ¶ 30. As a result of

statements made to the FBI Special Agents and testimony provided to the grand jury, the

defendant was charged in a five-count indictment with obstruction of justice in violation of 18

U.S.C. § 1503 (2000), two counts of false statements in violation of 18 U.S.C. § 1001(a)(2)

(2000), and two counts of perjury in violation of 18 U.S.C. § 1623 (2000).

The count of the indictment charging the defendant with obstruction of justice alleges that

he "knowingly and corruptly endeavor[ed] to influence, obstruct and impede the due

administration of justice . . . by misleading and deceiving the grand jury as to when, and the

manner and means by which, [the defendant] acquired and subsequently disclosed to the media

information concerning the employment of Valerie Wilson by the CIA." Indictment at 11, ¶ 31.

Count Two of the indictment charges the defendant with making false statements to Special

Agents of the FBI on October 14 and November 26, 2003, alleging that the defendant knowingly

made a false statement when recounting a July 2003 conversation he had with Tim Russert of

NBC News. Id. at 15-16, ¶¶ 3-4. Count Three also charges the defendant with making false

statements to Special Agents of the FBI, and specifically alleges that the defendant knowingly

made false statements when relating a July 2003 conversation he had with Matthew Cooper of

Time magazine. Id. at 17, ¶¶ 2-3. Counts Four and Five of the indictment charge the defendant

with perjury arising out of his testimony presented to the grand jury when he recounted his

conversations with both Russert and Cooper. Id. at 18-22.  The defendant claims he needs the

documents he has requested from the prosecutor in order to prepare his defense against these

charges and to present a viable defense during his trial.

## II.    Discovery Standards of Review

"Criminal discovery is not a game.  It is integral to the quest for truth and the fair

adjudication of guilt or innocence." Taylor v. Illinois, 484 U.S. 400, 419 (1988) (Brennan, J.,

dissenting).  Discovery in federal criminal cases is governed by federal statutes, the Federal Rules

of Criminal Procedure, and case law.  See, e.g., 18 U.S.C. § 3500 (2000); Fed. R. Crim. P. 12,

12.1, 12.2, 12.3, 16, 26.2 and 46(j);  Giglio v. United States, 405 U.S. 150 (1972); Brady v.

Maryland, 373 U.S. 83 (1963).  Each party has obligations under these authorities and together

they "contribute[] to the fair and efficient administration of criminal justice . . . by otherwise

contributing to an accurate determination of the issue of guilt or innocence." Fed. R. Crim. P.

16, advisory committee note to 1974 amendment.  Here, the Court is concerned with Federal

Rule of Criminal Procedure 16.[6]

Rule 16 requires the government to disclose certain information upon the defendant's

request.  Fed. R. Crim. P. 16 (a)(1).  Specifically, Rule 16 provides for the pre-trial disclosure by

the government of five types of documents:[7]  (1) the defendant's oral, written or recorded

statements; (2) the defendant's prior criminal record; (3) certain documents and objects "within

the government's possession, custody, or control;" (4) reports of examinations and tests; and (5)

---

[6]  The defendant also opines that his discovery requests implicate Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, but the Court's review of the parties' submissions leads the Court to the conclusion that the defendant's position in that regard is baseless.

[7]  The Court uses the term "documents" throughout this opinion to describe generally the class of items that are discoverable under Rule 16 and subject to the requests in this case.

4

a summary of testimony from an expert witness that the government will rely upon. Fed. R.

Crim. P. 16(a)(1)(A) - (G).[8]  Here, the Court is concerned with the third category of documents,

which is governed by Rule 16(a)(1)(E).  This provision of the rule provides, in part:

> Upon a defendant's request, the government must permit the defendant to inspect and to
> copy or photograph books, papers, documents, data, photographs, tangible objects,
> buildings or places, or copies or portions of any of these items, if the item is within the
> government's possession, custody, or control and:
>     (I) the item is material to preparing the defense . . . .

Fed. R. Crim. P. 16(a)(1)(E).[9]  Based on a plain reading of the text of this part of the rule,

production of documents under Rule 16(a)(1)(E) is required only if (1) the documents are "within

the government's possession, custody, or control," and (2) the documents are material to the

preparation of the defense.  "The language and the spirit of the Rule are designed to provide to a

criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and

receive such materials in the possession of the government as may aid him in presenting his side

of the case." United States v. Poindexter, 727 F. Supp. 1470, 1473 (D.D.C. 1989).

As to the first prong of this test, "[c]ourts have in the main been more concerned with

fairness to the defendant, on the one hand, and the government's ease of access to the documents

sought, on the other, than with the issue whether the documents are actually within the physical

possession of the prosecutor." Id. at 1477.  Thus, when determining whether the government has

possession, custody, and control of documents, the District of Columbia Circuit has found, albeit

in the Brady context, that documents maintained by other components of the government which

---

[8]  Rule 16 also provides for discovery of certain information from the defendant. Fed. R. Crim. P. 16(b).

[9]  Rule 16(a)(1)(E) also requires the production of documents "within the government's possession, custody, or control" that the "government intends to use . . . in its case-in-chief at trial; or . . . [were] obtained from or belong[] to the defendant."  These provisions of the rule are not at issue here.

are "closely aligned with the prosecution" must be produced. United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (quoting United States v. Fairman, 769 F.2d 386, 391 (7th Cir. 1985)). As the Court in Brooks noted, the "bureaucratic boundary [between agencies is] too weak to limit the duty" to disclose. Id.; see United States v. Ehrlichman, 559 F.2d 31, 74 (D.C. Cir. 1976). Relying on these cases, among others, other members of this Court have concluded that Rule 16 compels the same conclusion. See, e.g., Poindexter, 727 F. Supp. at 1477; see also United States v. Safavian, 2005 WL 3529834, at *2 (D.D.C. Dec. 23, 2005).

The Ninth Circuit has similarly rejected adopting a definition under Rule 16 that limits the phrase "possession and control" to only those files of agencies that participated in the investigation, concluding that "'the scope of the government's obligation'" to produce documents under Rule 16 "turn[s] on the 'extent to which the prosecutor has knowledge of and access to the documents.'" United States v. Santiago, 46 F.3d 885, 894 (9th Cir. 1995) (quoting United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989) (noting that "the scope of the government's obligation . . . should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case.")); see also Poindexter, 727 F. Supp. at 1477-78 (observing that "several courts have noted that a prosecutor who has had access to documents in other agencies in the course of his investigation cannot avoid his discovery obligations by selectively leaving the materials with the agency once he has reviewed them."). On the other hand, to require the government to search the files of every agency in the Executive Branch "would not only wreak havoc, but would give the defense access to information not readily available to the prosecution." Bryan, 868 F.2d at 1036 (quotation marks and citation omitted). The Ninth Circuit's holding in Santiago, although arguably slightly more expansive

6

than the District of Columbia Circuit's holding in <u>Brooks</u>, largely comports with the conclusions reached by other Circuit Courts that prosecutors' discovery obligations were not violated by their failure to produce documents that were possessed by agencies which had no part in the criminal investigation or when the prosecution had no control over the agency officials who physically possessed the documents.[10] <u>See, e.g.</u>, <u>United States v. Pellullo</u>, 399 F.3d 197, 218 (3d Cir. 2005); <u>United States v. Casas</u>, 356 F.3d 104, 116 (1st Cir. 2004); <u>United States v. Velte</u>, 331 F.3d 673, 680 (9th Cir. 2003); <u>United States v. Morris</u>, 80 F.3d 1151, 1169 (7th Cir. 1996). Nonetheless, it is settled that the government generally need not produce documents that are in the possession, custody, or control of a separate branch of government such as Congress, <u>Safavian</u>, 2005 WL 3529834, at *2, or a state or local government agency, <u>United States v. Marshall</u>, 132 F.3d 63, 68 (D.C. Cir. 1998).[11] But see <u>Brooks</u>, 966 F.2d at 1503.

As to the second-prong of the Rule 16(a)(1)(E) analysis, a court must determine whether the requested documents are "material to preparing the defense." In the context of Rule 16, "'the defendant's defense' means the defendant's response to the Government's case in chief." <u>United States v. Armstrong</u>, 517 U.S. 456, 462 (1996). Accordingly, a court must first start with the

---

[10] Recently, another member of this Court, relying in part on the Ninth Circuit's standard, concluded that "'the government' includes any and all agencies and departments of the Executive Branch of the government and their subdivisions, not just the Justice Department, the FBI, . . . and other law enforcement agencies." <u>Safavian</u>, 2005 WL 3529834, at *2. By its own admission, this holding expands the government's obligation to search for documents beyond agencies "closely aligned" with the prosecution and would also seemingly go even beyond the requirements of knowledge and access enunciated by the Ninth Circuit. <u>See United States v. Safavian</u>, ___ F. Supp. 2d ___, ___ n.1, 2006 WL 456723, at *2 n.1 (D.D.C. Feb. 22, 2006). The Court in <u>Safavian</u> indicated that the government's search was to be limited only by the "rule of reason." <u>Id.</u> This Court need not (nor does it believe it could) adopt such a broad reading of the applicable caselaw in this Circuit to properly resolve the pending motions.

[11] While such documents are not discoverable, the Circuit Court has made clear that "a prosecutor may not sandbag a defendant by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial . . . . Under such circumstances, that evidence is plainly within the prosecutor's Rule 16 control." <u>Marshall</u>, 132 F.3d at 69 (internal quotation marks and citations omitted). This statement comports with this Court's view that documents will be presumed to be in the government's possession, custody and control if the government has both knowledge of and access to the documents.

indictment when determining what is material, as the indictment delineates the evidence to which the defendant's case must respond. See United States v. George, 786 F. Supp. 11, 13-15 (D.D.C. 1991). Thus, the District of Columbia Circuit has stated that evidence is material to preparing the defense "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks and citation omitted); see Marshall, 132 F.3d at 68 (quoting Lloyd, 992 F.2d at 351). The materiality standard "is not a heavy burden." Lloyd, 992 F.2d at 351 (internal quotation marks and citation omitted). However, although the materiality burden is not onerous, "the evidence must not simply 'bear some abstract relationship to the issues in the case,'" George, 786 F. Supp. at 13 (citation omitted), and the "government must disclose Rule 16 evidence only if such evidence 'enables the defendant significantly to alter the quantum of proof in his favor.'" Marshall, 132 F.3d at 68 (quoting United States v. Graham, 83 F.3d 1466, 1474 (D.C. Cir. 1966)). This Circuit has concluded that both inculpatory and exculpatory evidence may be material to the preparation of a defense to ensure that the defendant is aware of both the "potential pitfalls" and the strengths of his defense strategy. Marshall, 132 F.3d at 67.

It is also important to note that the discovery of classified information is governed by Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C., appx. III (2000). Although this "Section creates no new rights of or limits on discovery of a specific area of classified information . . . [,] it contemplates an application of the general law of discovery in criminal cases to the classified information based on the sensitive nature of the classified information." United States v. Yunis, 867 F.2d 617, 621 (D.C. Cir. 1989). Accordingly, to the

extent that a defendant seeks documents and information that are classified, the District of

Columbia Circuit imposes an additional requirement. Specifically, the Circuit Court has held

"that classified information is not discoverable on a mere showing of theoretical relevance in the

face of the government's classified information privilege, but that the threshold for discovery in

this context further requires that a defendant seeking classified information . . . [demonstrate]

that [it] is at least 'helpful to the defense.'" Id. at 623 (citation omitted).[12]

### III.    Analysis

Before applying the two-prong Rule 16(a)(1)(E) analysis discussed above, it is helpful to

begin by reiterating the defendant's discovery requests that are the subject of this opinion. In his

initial motion, the plaintiff requested the following:

1.    All documents provided to Mr. Libby in connection with his morning intelligence
briefing during the period of May 6, 2003 through March 24, 2004, including the
President's Daily Brief ("PDB"), in its entirety, and additional materials provided
for the Vice President and Mr. Libby with the PDB.

2.    All documents relating to inquiries made during or in connection with Mr. Libby's
morning intelligence briefing for the period of May 6, 2003 through March 24,
2004, and all documents provided to Mr. Libby as a result of those inquiries.

Although the defendant maintains that documents responsive to these requests should be

produced, he has subsequently agreed to limit these requests in an attempt to alleviate the

---

[12] The government's obligation does not end with Rule 16. The Jencks Act specifically governs the
discovery and production of statements made by prospective government witnesses protected by the Act. 18 U.S.C.
§ 3500 (2000). The Jencks Act provides that "[a]fter a witness called by the United States has testified on direct
examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the
witness in the possession of the United States which relates to the subject matter as to which the witness has
testified." 18 U.S.C. § 3500(b). The purpose of requiring such disclosure only after a witness testifies on direct
examination is "to protect witnesses from intimidation or worse." Poindexter, 727 F. Supp. at 1484. However, it is
well settled that the government's obligations under Brady trump the protections provided by the Jencks Act.
See United States v. Tarantino, 846 F.2d 1384, 1414 n.11 (D.C. Cir. 1988) ("limitations on discovery contained in
the Jencks Act do not lessen" the government's Brady obligations).

government's proffered production burden. Def.'s Response at 4 n.3. Specifically, as to the first set of documents, the defendant proposes to limit the request to only those morning intelligence briefing documents that were provided to the Vice President, and which the defendant reviewed. Id. at 5-6. Moreover, the defendant proposes additional security safeguards to ensure the protection of these highly classified documents.[13] Id. at 6. And, the defendant appears to agree, in large part, to reduce the time period for which he seeks the production of documents. Id. Finally, as to the second request, the defendant proposes to limit the request only to the documents reflecting the defendant's inquiries he made during the morning intelligence briefings, and not the responses he received to those inquiries. Id. at 4-5.

**(A)    Are the Requested Documents "Within the Government's Possession, Custody, or Control"?**

Based on representations by the parties, both in their papers submitted to this Court, as well as statements made during argument on the pending motions, the documents responsive to the two requests noted above are not currently in the physical possession of the Office of Special Counsel. Rather, they are in the physical possession of the White House, and more specifically the Office of the Vice President ("OVP") and/or the CIA. See Def.'s Mot. II at 7-8; Gov't's Opp'n at 15-16. Thus, the first question for the Court to answer is whether documents in the physical possession of the OVP or the CIA are within the possession, custody, or control of the prosecutor under Rule 16.[14] The defendant contends that the documents should be considered in

---

[13] Specifically, the defendant agrees to the entry of a protective order that would require (1) the PDBs and related material to be produced for examination only at the SCIF maintained by the Department of Justice at the Department of Homeland Security in Washington, D.C.; (2) access to these documents would be limited to the defendant and four of his attorneys; and (3) these materials would not be copied. Def.'s Response ¶ 4.

[14] There is no dispute that the Special Counsel has an obligation to turn over all discoverable documents in
(continued...)

10

the possession, custody, or control of the government because both the OVP and the CIA are

aligned with the prosecution and the Office of Special Counsel has knowledge of and access to

the documents. Def.'s Mot. at 7. To support this argument, the defendant points the Court to

documents indicating that the CIA initiated the investigation that ultimately resulted in the

defendant's indictment and that the President of the United States issued an explicit directive for

every member of the White House staff to cooperate fully with the investigation. Id. at 7-8. The

Special Counsel, however, posits that his office is not obligated, under Rule 16, to search for

discoverable documents in the OVP or at the CIA. Gov't's Opp'n at 16. With regard to the CIA,

the Special Counsel contends that the agency did not participate in the grand jury investigation

that led to the indictment in this case, but rather has the "status" of nothing more than a "witness"

in the investigation. As such, the Special Counsel avers that the CIA is not aligned with the

prosecution. Id. Similarly, the Special Counsel argues that the President's directive for White

House employees to cooperate with the investigation does not align the OVP with the

prosecution because the OVP did not join in the investigation, but merely provided responsive

documents to the Office of Special Counsel upon request. Id. at 17. The Special Counsel also

notes that the President's directive did not provide the Office of Special Counsel with complete

access to documents contained in the OVP. Id. Accordingly, the Special Counsel alleges that the

documents responsive to the defendant's requests are not "within the possession, custody, or

control of the government" as envisioned by Rule 16.

The "possession, custody, or control" inquiry is fact-intensive and must be resolved on a

---

[14](...continued)
the physical possession of the Department of Justice, including the FBI. Gov't's Opp'n at 16.

case-by-case basis. United States v. Brazel, 102 F.3d 1120, 1150 n.19 (11th Cir. 1997). Nonetheless, the Court finds guidance from other Courts who have been presented with cases with analogous factual situations. For example, the defendants in United States v. Deutsch, 475 F.2d 55 (5th Cir. 1973) were charged with bribing an employee of the United States Postal Service ("USPS"). Deutsch, 475 F.2d at 56, overruled on other grounds, United States v. Henry, 749 F.2d 203 (5th Cir. 1984). For the purpose of acquiring "insight into the character of [the] prospective witness" (the USPS employee), the defendants, before trial, sought to obtain, through the prosecutor, the witnesses's personnel file.[15] Deutsch, 475 F.2d at 57 (internal quotation marks omitted). The prosecutor responded that it could not produce the file, claiming that it was not in its possession. Id. The district court agreed and declined to compel its production. Id. On appeal, the Fifth Circuit reversed, noting that "[t]he government cannot compartmentalize the Department of Justice and permit it to bring a charge affecting a government employee in the Post Office and use him as its principal witness, but deny having access to the Post Office files." Id. In reaching this conclusion, the Court noted that "different 'arms' of the government, particularly when so closely connected as this one for the purpose of this case, are [not] severable entities" under Brady. Id. Similarly, in Santiago, the district court denied the defendant's request for the Bureau of Prisons ("BOP") files of several government witnesses in a case in which the defendant was charged with first-degree murder of a fellow inmate. Santiago, 46 F.3d at 893. In reversing the district court, the Ninth Circuit first noted that the "Bureau of Prisons actually contributed to the investigation by locating most of the physical evidence during the initial

---

[15] The request in Deutsch was predicated on Brady. This distinction, however, is immaterial. As this Court has previously discussed, the possession, custody, or control analysis under Brady is identical to the analysis under Rule 16.

search" and that the government had obtained the defendant's prison file from the BOP. Id. Accordingly, the Court concluded that government had knowledge of and access to the requested documents and thus the government was required to produce the requested BOP files. Id. Similarly, in another case, the prosecution was deemed to be in possession, custody, or control of documents that were in the physical possession of government agencies that were not part of a criminal investigation jointly undertaken by the Department of Justice and the Environmental Protection Agency, but who had provided files to the prosecution team and allowed their employees to be interviewed by the prosecution as part of that investigation. United States v. W.R. Grace, 401 F. Supp. 2d 1069, 1078-79 (D. Mont. 2005).

Here, while the exact contours of the roles played by the OVP and the CIA are not entirely clear to this Court, the following is undisputed. In September 2003, the White House Counsel's Office sent a message to White House staff mandating the preservation of all documents which might relate to the Special Counsel's investigation. Def.'s Mot. II., Ex. F. As part of this message, then-White House Counsel Alberto Gonzales declared that "[t]he president has directed full cooperation with this investigation." Id. Accordingly, the White House, in response to requests from the Office of Special Counsel, produced a substantial number of documents, which included, among other things, "documents relating to Ambassador Joseph Wilson [and] his wife . . . and the trip undertaken by former Ambassador Joseph Wilson to Niger in 2002." Id., Ex. B at 2. It is clear that such documents have included, at a minimum, both notes and emails from various members of the White House staff, as well as documents either sent to or from various White House offices. Indictment at 4, ¶ 5. There is no indication that the White House denied the Office of Special Counsel access to documents which were responsive

13

to its requests. The CIA's involvement in the investigation is less transparent. It is clear,

however, that the agency undertook internal deliberations regarding whether to refer the alleged

unauthorized disclosure of classified information to the Department of Justice for criminal

investigation. Motion for Leave to Supplement the Record ("Mot. to Supp. Rec."), Ex. 1. These

internal deliberations resulted in the creation of documents containing "pre-decisional

preliminary evaluations and recommendations of government officials" and also a "legal analysis

and opinion prepared by a CIA attorney, as well as communications between the CIA attorney

and the Department of Justice." Id. The Department of Justice later authorized the FBI to

investigate these allegations. Indictment at 8, ¶ 25. Moreover, once the investigation

commenced, the Office of Special Counsel requested and received documents from the CIA.

Def.'s Mot. II., Ex. B at 2-3, Ex. C at 2-3. For example, the Office of Special Counsel was

provided with, at a minimum, documents that had been in the physical possession of the CIA

relating to Ambassador Wilson or Valerie Wilson, and Ambassador Wilson's trip to Niger.

Def.'s Mot. II, Ex. B at 2. It also appears that the Office of Special Counsel received from the

CIA a copy of the initial documents prepared by the CIA when determining whether to refer the

alleged unauthorized disclosure to the FBI for criminal investigation. Mot. to Supp. Rec., Ex. 1.

    The Office of Special Counsel has therefore sought and received a variety of documents

from both the OVP and the CIA. It was well aware at the outset of this investigation that both of

these entities had documents pertinent to the investigation. Moreover, there can be little doubt

that upon the Office of Special Counsel's requests, there has been a rather free flow of

documents to that Office from both the OVP and the CIA, which have then been used to

investigate the alleged unauthorized disclosure of classified information and which were used as

14

the basis for obtaining the indictment in this case. These entities have therefore contributed significantly to the investigation, and without their contribution it is unlikely that the indictment in this case would ever have been secured. Thus, this Court concludes that it has been established that the Office of Special Counsel has knowledge of and access to the documents responsive to the defendant's requests for Rule 16 purposes. See Santiago, 46 F.3d at 893-94; Deutsch, 475 F.2d at 57-58; W.R. Grace, 401 F. Supp. 2d at 1077-80. Moreover, based upon the nature of the relationship between the Office of Special Counsel and the OVP and the CIA, this Court must conclude that these entities are closely aligned with the prosecution. Accord Brooks, 966 F.2d at 1503. To hold otherwise, would permit the Office of Special Counsel access to a plethora of documents from the OVP and CIA, which are likely essential to the prosecution of this case, but leave other documents with these entities that are purportedly beyond the Special Counsel's reach, but which are nonetheless material to the preparation of the defense. W.R. Grace, 401 F. Supp. 2d at 1079; Poindexter, 727 F. Supp. at 1478 . Such a result would clearly conflict with the purpose and spirit of the rules governing discovery in criminal cases. Accordingly, because the Office of Special Counsel "has benefitted from the cooperation of the White House [and the CIA], . . . he cannot now, in fairness, be permitted to disclaim all responsibility for obtaining Presidential [and CIA] documents that are material to the preparation of the defense."[16] Poindexter, 727 F. Supp. at 1478.

---

[16] The government cites a number of cases where courts have concluded that there was no duty on the prosecution to locate requested documents in the physical possession of another federal agency. See Gov't's Opp'n at 6-7. The facts of those cases, however, reveal that the other governmental agencies had no involvement in the investigation or the prosecution. See Puello, 399 F.3d at 216; Casas, 356 F.3d at 116; Velte, 331 F.3d at 680; Morris, 80 F.3d at 1169. As discussed above, the same cannot be said here.

**(B)    Are the Requested Documents "Material to Preparing the Defense"?**

In this case, the question of materiality is a much more difficult, and closer question. As any discussion of materiality must, this Court begins with the indictment. George, 786 F. Supp. at 13-15. Here, the defendant is charged with obstruction of justice, false statements, and perjury. Indictment at 1. These charges are predicated on statements made to FBI Special Agents in October and November 2003 and testimony provided to a grand jury on two occasions in March 2004, during which the defendant recounted conversations he allegedly had with various news reporters in June and July 2003. Each of these offenses requires that the government establish, among other things, that the defendant acted with specific intent. See generally 18 U.S.C. §§ 1001(a)(2), 1503, 1623. Accordingly, the charges could possibly be defeated by the defendant demonstrating that the alleged misstatements were not made intentionally, but were merely the result of confusion, mistake, faulty memory, or another innocent reason. See, e.g., United States v. Dunnigan, 507 U.S. 87, 95 (1993) (noting that to defeat a perjury charge a defendant can establish that he gave "inaccurate testimony due to confusion, mistake, or faulty memory"); United States v. Montague, 202 F.3d 261 (4th Cir. 2000) (observing that if a false statement was the product of mistake, evidence of intent would be lacking); United States v. Baker, 626 F.2d 512, 516 (5th Cir. 1980).

The defendant asserts that defeating specific intent may be one of the means by which he mounts a defense against the charges he faces. Specifically, the defense may attempt to establish that because the defendant was "so focused on urgent national security matters, it is hardly surprising that he would later confuse, forget or misremember isolated portions of conversations about less important topics." Def.'s Reply at 14. Accordingly, the defendant suggests that the

16

requested documents are material to the preparation of his defense in two respects: (1) they will assist him in preparing to testify (if he chooses to do so), and (2) the documents will corroborate any testimony he or others give about the constant rush of meetings, briefings, and discussions that preoccupied him during the times relevant to this case. Id. at 16. The Special Counsel counters that the requested documents are neither material nor will they be "helpful" to the preparation of the defense. Gov't's Opp'n at 17-18. Rather, opines the Special Counsel, the requested documents relate to "extraneous matters and crimes" not charged in the indictment. Id. at 17. In addition, the Special Counsel challenges the defendant's assertion that these documents would be material to the preparation of his defense and argues that they are not favorable or material to a "preoccupation" defense.[17] Id. at 21-23. Moreover, the Special Counsel suggests that the defendant's attempt to require the production of documents responsive to this request, which are undoubtedly highly classified, "is a transparent effort at 'greymail.'"[18] Id. at 25.

The Court is compelled to conclude that neither party has it exactly right. This Court

---

[17] The government relies heavily on George, 786 F. Supp. at 56, as support for this proposition. However, this Court does not believe that the holding in George is applicable to the facts in this case. In George, the defendant sought production of a substantial number of documents covering virtually an unlimited timeframe, many of which were highly classified, for the alleged purpose of demonstrating the "universe" in which he worked. Id. at 59. And to the extent that George intended to assert a "preoccupation" defense, the Court noted that he "never specified when these things occurred or how these instances might be material to this indictment." Id. The request in George was considered incredibly broad and the defendant refused to narrow or limit the scope of his request. Id. These documents were needed, opined George, to establish that he lacked knowledge of the information that formed the basis for the false statements and perjury allegations charged in the indictment. Id. The district court rejected the defendant's arguments. Here, however, one of the defendant's potential defenses is not that he lacked knowledge of the events that provide the basis for the indictment, but rather his defense is based on his confused, mistaken, or faulty memory. Moreover, the defendant has submitted more reasonable requests for documents, and has subsequently narrowed his requests even further. And finally, the documents requested by the defendant here clearly have a much closer relationship to the defense than did the documents requested in George. Thus, while this Court agrees with result reached by the Court in George, the factual circumstances there were substantially dissimilar from the situation in this case.

[18] "'Greymail' occurs when a defendant seeks to disclose classified information as part of his or her defense, requiring the government either to permit disclosure or to dismiss the prosecution." United States v. Smith, 899 F.2d 564, 565 n.1 (6th Cir. 1990).

17

simply cannot accept the defendant's proposition that the substantive information contained in this country's most sensitive intelligence documents and the methods by which that intelligence is gathered are material to the preparation of his preoccupation defense under Rule 16. Nor can the Court agree with the Special Counsel's narrow view of what is material to the preparation of the defense, which would appear to limit the defendant to acquiring only those documents that relate solely to the defendant's interactions with various news reporters and which relate to the defendant's knowledge of Valerie Wilson and Ambassador Wilson. What the Court concludes is material to the preparation of the defendant's preoccupation defense is information that reveals why the defendant allegedly had a faulty memory about the conversations he had with reporters when he spoke to the FBI and testified before the grand jury, thus potentially negating the specific intent element of the charged offenses. Such information is therefore discoverable under Rule 16. See Poindexter, 727 F. Supp. at 1475-76.

Thus, the question this Court must resolve is whether the documents identified by the defendant are in fact material to the preparation of the defense. To prepare his defense, the defendant claims he needs access to a variety of documents which detail the national security and intelligence issues he was confronting. Specifically, the defendant is requesting that this Court order the government to produce the documents the defendant used to conduct his morning intelligence briefings as well as all documents that indicate the inquiries he made during these briefings.[19] Documents responsive to these requests would necessarily include some of the most highly classified documents generated by the government, including a number of the President's

---

[19] The defendant claims he needs these documents for the period of May 6, 2003 through March 24, 2004. The defendant, however, appears not to raise a significant objection to narrowing this time period. Def.'s Response at 8-9. The Court will address the time period it considers material after examining whether disclosure of the documents is warranted at all.

Daily Briefs. Before examining whether these documents would be material to the preparation of

the defense, it is important to understand what these documents are and what type of information

they include. The PDBs, for example, contain "the most sensitive information and the best

analytic judgment in a complete, accurate, and timely package intended to inform the President

and his most senior advisors as they make and implement the nation's defense and foreign

policies." Declaration of Marilyn A. Dorn ("Dorn Decl.") ¶ 10. The PDBs often include

information not shared with the rest of the intelligence community, including:

> (a) raw operational information, including source-identifying information normally
> protected by crypotnyms or other generic source descriptions, (b) sensitive operational
> information specially added by the [National Clandestine Services ("NCS")], (c) specific
> intelligence methods, including highly compartment technical operations that may
> indicate the method of collection, and (d) information from methods specially developed
> or acquired only by the CIA or the National Security Agency.

Id. ¶ 13. The defendant's morning intelligence briefings, although often substantially similar to

the briefings provided to the Vice President, were not necessarily identical. Id. ¶ 21. Often, the

defendant's morning intelligence briefings included information responsive to earlier questions

from the defendant, as well as additional information the defendant's CIA briefer believed would

be of interest to the defendant. Id. And, occasionally, the President and the Vice President

would be provided documents not provided to the defendant. Id. ¶ 20. Although not explicitly

stated in the Dorn Declaration, it seems apparent that CIA responses to the defendant's briefing

inquiries would also likely contain information similar to the information contained in the

PDBs.[20]

---

[20] According to Ms. Dorn, responses to PDB related inquiries were provided in a number of ways,
including: email, telephone, facsimile, memorandum, subsequent PDBs, or a new intelligence report. Dorn Decl. ¶
17.

As made clear by the defendant, his preoccupation defense is predicated upon his involvement with pressing matters of national security and intelligence which consumed much of his time throughout an extended work day. It is the Court's view that preparation of this defense can be accomplished with a general topic description of the matters presented to the defendant during his morning intelligence briefings. These general descriptions, along with the defendant's personal notes that this Court has already ordered produced and the defendant's daily calendar,[21] would provide the defendant everything he needs to prepare his preoccupation defense. Accordingly, the Court concludes that in order to refresh his recollection about those events and to provide credibility for his preoccupation defense, the defendant does not need the explicit details of the intelligence documents he desires to obtain. Such details will not be "significantly" helpful to the preparation of his defense, and therefore are not material to it. Marshall, 132 F.3d at 68. Rather, the only material portion of these morning intelligence briefing documents are the general topics of the information contained in the documents, or the equivalent of tables of contents. The general topics of these documents would provide the defendant exactly the information he seeks — listings of the pressing matters presented to him during the times relevant to the case. It is inconceivable that the defendant's memory of matters of significance to him have totally vanished and would not be refreshed upon viewing the general descriptions of those matters, along with knowing when that information was submitted to him. Being provided with topical information would therefore undoubtedly be sufficient to refresh the defendant's recollection of these important matters and thus potentially lend credibility to the testimony of

---

[21] There has been no motion filed seeking to compel the production of the defendant's daily calendar.

anyone (including himself) who might testify on the subject.[22] Cf. United States v. Bailey, 262 F.

Supp. 331, 332 (D.C. Kan. 1967) (noting that Rule 16 is a means to acquire documents to refresh

a defendant's recollection). The defendant strenuously objects to this limited production, arguing

that mere topic disclosure would "not permit [him] to recall or the defense to assess the urgency

of the national security issues that the documents reflect or to convey that urgency to the jury."

Def.'s Response at 9-10. The defendant's defense must necessarily be predicated upon what the

defendant believed to be the pressing and time sensitive national security and intelligence issues

that dominated his work day. The substance of the documents the defendant received during his

morning intelligence briefing do not reflect what the defendant believed important, rather those

document reflect what the CIA judged important to include in those documents.[23] Accordingly,

only the defendant can attest to what issues he focused on, and the topics covered in the

documents would contain sufficient information for the defendant to refresh his recollection to

adequately accomplish the objectives of his defense.

The Court further concludes that documents reflecting inquiries made by the defendant

during his morning intelligence briefings are also material as they would tend to identify those

matters in the morning intelligence briefings on which the defendant presumably focused his

attention and therefore requested additional information. However, just as providing the general

topics of the morning intelligence briefing documents is sufficient to accomplish the goals of the

---

[22] The defendant also opines that summaries will only increase the government's burden of production. Def.'s Response at 12. Should the government find the compilation of summaries too burdensome, it is of course welcome to produce the entire document. That is a call, however, the government must make.

[23] In fact, the defendant's initial Section 5 notice under CIPA makes clear that he currently possesses substantial knowledge about many of those issues of national security that he was presented with during the relevant time periods. And, subject to any limitations imposed by the Court in subsequent CIPA proceedings, the defendant would likely be able to testify to those matters.

defense, so too would a listing of the general topics of the defendant's inquiries.

It is therefore this Court's conclusion that a general description of the topics discussed in the various intelligence documents provided to the defendant during his morning intelligence briefings and the general topics of the documents reflecting the inquiries made by the defendant for additional information during these briefings are material to the preparation of his defense and thus must be produced.[24]  Obviously, the Court appreciates that it may be impossible for the Special Counsel to simply produce redacted versions of the documents for discovery purposes, which is often done when a court determines that only some portions of a document are discoverable. See, e.g., United States v. Martinez-Martinez, 2001 WL 1287040, at *7 (S.D.N.Y. Oct. 24, 2001).  Accordingly, if for some reason redacted documents cannot be produced, the Court concludes that the government may satisfy its discovery obligations by providing the defendant with other documentation that lists the general topic areas that comprised the morning intelligence briefings covered by this opinion.  If presented in this manner, the documentation would have to include the date the information was presented to the defendant and indicate the general topics discussed with the defendant at the morning intelligence briefings.  Regardless of the form the government ultimately employs to produce this information,[25] the production must

---

[24]  To expedite production of these documents, the defendant has withdrawn his request for documents that were provided only to him during these morning intelligence briefings and documents which were created in response to inquiries made during the morning intelligence briefings.  Accordingly, disclosure of those documents need not be addressed by the Court.

[25]  The Court appreciates that filings already made by the government indicate that there may be opposition or inability by the Special Counsel to produce the information even as limited by the Court.  Such challenges or opposition, however, will be addressed in other motions which seem sure to follow and possible CIPA proceedings thereafter.  CIPA obviously provides the legal mechanism through which the Court will have to address disclosure disputes that go beyond the materiality question, and CIPA is implicated only after the Court has resolved questions of materiality.  See Poindexter, 727 F. Supp. at 1473; 26 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5672 (2005) ("Once the trial court determines that classified information is . . .

(continued...)

22

be accompanied by an affidavit from the individual(s) who either redacted the documents or who compiled the topic overview of the documents attesting that the production is an accurate representation of the topics that comprise the original documents.

Finally, the Court must determine which dates are material to the preparation of the defense. The defendant posits that the time period which is material is May 6, 2003 through March 24, 2004.[26] This Court cannot agree that documents covering such a sweeping time period are material to the preparation of the defense. The defendant appears to have first learned that Valerie Wilson was Ambassador Wilson's wife on or around June 9, 2003. Indictment at 4, ¶ 5. He later allegedly discussed this information with various news reporters on various occasions between June 23, 2003 and July 12, 2003. Indictment at 6, ¶ 14; Id. at 8, ¶¶ 22-24. Clearly, documents encompassing this period of time, June 9, 2003 until July 12, 2003, are material to the

---

[25](...continued)
discoverable . . ., the government can" file a motion under the CIPA). It is during the CIPA proceedings that the Court will have to address, among other things, whether otherwise discoverable material has to be further redacted or substituted based on national security concerns and allegations of greymail. This is therefore not the proper time to make such determinations. In addition, the Court gleans from the papers that have been submitted to it that the Special Counsel envisions that the executive privilege doctrine will be implicated if it is ordered by the Court to disclose any of the information that is the subject of this opinion. If, following resolution of any executive privilege claims and resulting CIPA proceedings, it is determined that the documents discussed herein will not be produced, the Special Counsel will be afforded the opportunity to assert why the information contained in these documents is not necessary for the defendant to properly present his preoccupation defense at trial. And on this point, the Court notes that the Special Counsel does not deny that the defendant worked on significant matters of national security and intelligence. In addition, it appears that the defendant's attorney is acknowledging that the substance of the requested intelligence documents is not what the defense desires to present to the jury. In fact, it is unlikely that this Court would permit anything other than the general topic areas of these documents to be introduced at trial and would be prepared to advise the jury through an instruction that due to national security concerns the defendant is prohibited from discussing the details about the matters he was working on and that it is undisputed that the defendant was extremely busy during his work day, worked long hours, and worked on highly sensitive national security and intelligence matters.

[26] Recently, the defendant has indicated a willingness to limit the time period for which he seeks documents responsive to his request in an effort reduce the time for which the production of responsive documents is necessary. Def.'s Response at 6. Unlike the defendant's explicit withdrawal of portions of his discovery requests, id. at 5-6, it is unclear to the Court whether the defendant has explicitly withdrawn his requests for documents outside the time period discussed in his recent response to the Dorn Declaration. Accordingly, this Court must make that determination.

preparation of the defense. And, the Court concludes that to ensure that the defendant is afforded a reasonable opportunity to accurately determine what he was doing on the relevant dates, it is necessary that he be provided with the same information for those dates in close proximity to when the events occurred, and two days both before and after this time period would accomplish this goal. In addition, the defendant provided statements to Special Agents of the FBI on October 14 and November 26, 2003. Id. at 9, ¶ 26. Therefore, documents on which the defendant was briefed and requests he made for further information on these dates, as well as two days before and after these dates, are deemed material to the preparation of the defendant's defense. And finally, the defendant provided testimony to the grand jury on March 5 and March 24, 2004. Id. at 11, ¶ 30. As with statements provided to the Special Agents, the same documents for the dates of the grand jury appearances along with the same documents that covered the two days before and the two days after those appearances are also deemed material to the preparation of the defendant's defense.

## IV.  Conclusion

The Court has painstakingly endeavored to ensure that the defendant is provided with the information he truly needs to prepare his defense based upon what he has represented through counsel will be his theory of why he should not be held culpable for the offenses charged in the indictment. It is based upon this assessment that the Court has concluded that the topic areas of the documents used to brief the defendant during his morning intelligence briefings and the subjects areas of documents that contain the inquiries the defendant made during these briefings are material to the preparation of the defense and thus discoverable under Rule 16. Accordingly, and consistent with this opinion, the Court will require the government to produce either (1)

24

redacted versions of those documents with the defendant being provided what in effect is a table of contents for each set of documents or separate topic overviews of the subject matter contained in those documents and (2) the topic areas of any documents reflecting the inquiries made by the defendant for additional information during his morning intelligence briefings. This production, however, shall be limited to only the following time periods: June 7 through July 14, 2003, October 12 - 16, 2003, November 24 - 28, 2003, March 3 - 7, 2004, and March 22- 26, 2004.

 The Court, therefore, grants in part and denies in part the defendant's motion to compel.

**SO ORDERED** this 10th day of March, 2006.[27]

            _____
            REGGIE B. WALTON
            United States District Judge

---

[27] The papers provided to the Court reveal that great efforts, by both parties, have been made to amicably resolve disputes without this Court's intervention. The Court commends the parties for these efforts. The defendant is scheduled to file yet another motion to compel in this case on March 17, 2006. The Court will require the parties to meet and confer about the requests in that motion before it is filed to determine whether this Court's ruling in this memorandum opinion affects either parties' position in the anticipated motion to compel and whether any of the parties' disputes can be resolved without the Court's assistance.