UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. NO. 05-394 (RBW) |
| ) | |
| I. LEWIS LIBBY ) | |
| also known as "Scooter Libby," ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF MOTION OF I. LEWIS LIBBY TO BAR EX PARTE SUBMISSIONS UNDER CIPA § 4 WITHOUT A PARTICULARIZED SHOWING OF EXCEPTIONAL CIRCUMSTANCES**

Just days after submitting an unsealed, unclassified CIA declaration explaining the national security implications of disclosing the President's Daily Brief, the government insists that it cannot address other discovery disputes over classified information in a similarly open fashion. The government asserts, in fact, that it must be permitted to litigate classified discovery disputes ex parte, without any showing of need for such extraordinary measures.[1] For the following reasons, the Court should either reject the government's position and bar ex parte submissions except upon a showing of particularized need or grant the defense a similar opportunity to appear ex parte.

1.      The government's assertion that it must proceed ex parte to protect national security rings hollow following the recent litigation over the PDB. Despite the government's claim that the PDB is among the most sensitive intelligence documents, it managed to explain to the Court in an unclassified CIA declaration both the alleged national security impact and the practical burdens of complying with Mr. Libby's

---

[1] Government's Response to Defendant's Motion to Bar Ex Parte Submissions Under CIPA Section 4 Without a Particularized Showing of Exceptional Circumstances at 7 (filed Mar. 10, 2006) ["Opp."].

discovery requests. If the government can litigate discovery of the PDB in an adversarial setting, it can surely do so with other, less sensitive documents. If necessary, of course, the discovery litigation can be conducted like other CIPA disputes, with sealed filings and hearings conducted in a closed courtroom.

The PDB litigation demonstrates the value of adversarial, rather than ex parte, discovery proceedings. Following review of the CIA declaration, the defense challenged some of the agency's assertions and tailored its discovery requests to ease the asserted burden of production. The ability of the defense to respond to the government's position enhanced the fairness and the accuracy of the decisionmaking process. The ex parte discovery proceedings that the government contemplates will deprive the Court of the benefits of adversarial testing.

2.   In its discussion of CIPA § 4 and cases construing that provision, the government blurs three important points. First, the government treats the discretion that CIPA § 4 confers on the district court to accept ex parte submissions as a command that it *must* accept such submissions whenever classified information is at issue. But the statute provides that "[t]he court *may* permit the United States" to present its argument ex parte, CIPA § 4 (emphasis added); unlike the Foreign Intelligence Surveillance Act, for example, CIPA does not mandate that discovery proceedings "shall" be ex parte. 50 U.S.C. § 1806(f). By rewriting the permissive "may" as the mandatory "must," the government seeks to obliterate the presumption against ex parte proceedings that CIPA § 4 adopts from Fed. R. Crim. P. 16(d)(1). *See, e.g., United States v. Rezaq*, 156 F.R.D. 514, 526 (D.D.C. 1994) (under CIPA § 4 and Rule 16(d)(1), "ex parte filings are not required . . . nor even favored"), *modified,* 899 F. Supp. 697 (D.D.C. 1995).

2

Second, the government ignores the distinction between submitting the documents at issue for ex parte, in camera review, *see, e.g.*, *United States v. Felt*, 491 F. Supp. 179, 184-85 (D.D.C. 1979) (cited at Opp. 3), which we do not oppose, and making legal and factual arguments against discovery of those documents ex parte, to which we vigorously object. As noted in our initial memorandum, it is commonplace for a party opposing discovery to submit the documents at issue for review by the court. It is extraordinary, however, to bar the party seeking discovery from even participating in the process.

Third, the government relies extensively on cases involving alleged terrorists, spies, and drug dealers--cases, in other words, involving defendants who never had authorized access to classified information. *E.g.*, Opp. at 3-4 (citing cases). The risks to national security of permitting such defendants to participate fully in classified discovery litigation may well, in some instances, justify ex parte proceedings under CIPA § 4. But there is obviously no such risk here. Mr. Libby--like the defendants in the *North*, *Poindexter*, and *George* cases, where the government did not make ex parte discovery presentations--has diligently protected some of this country's most sensitive secrets throughout his many years of public service.

3.   In an unseemly attempt to avoid the force of the Iran-Contra cases, the government asserts that "[u]nderlying the crimes charged in this case is the failure by a senior national security official"--presumably Mr. Libby--"to adequately safeguard sensitive classified information." Opp. 7. The "sensitive classified information" to which the government apparently refers is Valerie Wilson's CIA employment. The government continues to talk out of both sides of its mouth on this issue. When drafting an indictment, or holding a press conference, or seeking to exclude Mr. Libby from the

3

discovery process, the government asserts that Ms. Wilson's employment status was classified. But when Mr. Libby seeks to test that assertion, the government reverses field and insists that the classification issue is so far removed from the charges that the defense can obtain--at most--only limited discovery on it.[2] The government's invocation, yet again, of Ms. Wilson's allegedly classified employment status highlights the importance of Mr. Libby's pending motion to compel discovery on that issue.

It is wrong for the government to suggest that the facts of this case show irresponsibility by Mr. Libby in handling sensitive classified information, even if it turns out Ms. Wilson's status was classified. As far as we can tell from the allegations of the indictment or from discovery, there is no evidence to support a contention that Mr. Libby knew Ms. Wilson was employed in any capacity other than an analyst whose identity is neither secret nor sensitive. What is more, although the government is well aware that Mr. Libby talked to numerous journalists in June and July about the "16 words" issue, it has found only one -- Judith Miller -- who claims that he disclosed anything about Mr. Wilson's wife, and another -- Matthew Cooper -- who says that when Mr. Cooper told Mr. Libby that he had heard Mr. Wilson's wife worked at the CIA, Mr. Libby replied with words to the effect of "I've heard that too." Thus even the allegations of the indictment afford little basis to contend that Mr. Libby engaged in any effort to "out" the identity of a CIA operative, and the evidence at trial will completely disprove any such contention.

In any event, the government cannot seriously contend that disclosure of even the most sensitive intelligence information to Mr. Libby or his defense team poses a risk to

---

[2] *See, e.g.*, Government's Consolidated Response to Defense Motions to Compel

4

national security. Such a reckless accusation dishonors Mr. Libby's loyal service to this country. More than seventy years ago, the Supreme Court declared that while a federal prosecutor "may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). The government's false suggestion that Mr. Libby cannot be trusted with classified information is a foul blow.

4.  The government asserts that Mr. Libby and his counsel lack a "need to know" the classified information that the prosecution intends to present to the Court ex parte. Opp. 8-10. That might or might not be true with respect to the underlying documents that Mr. Libby seeks to discover; he and his counsel have a need to know only those classified documents that the Court finds helpful to the defense under *Yunis* and *Rezaq*. It is partly for that reason that we do not oppose ex parte review of the documents themselves. But Mr. Libby and his counsel unquestionably have a need to know the arguments by which the government seeks to persuade the Court to deny the requested discovery. It is the very nature of the adversary system that each party has a need to know--and an opportunity to meet--the legal and factual claims that the other party presents to the tribunal. For those claims, ex parte review is inappropriate except upon a particularized showing of exceptional circumstances.

5.  Although the government is eager to offer its own advocacy to the Court ex parte, it insists that the defense should have no comparable opportunity. Opp. 10-11. The government concedes, however, that judges in other cases--including Judges Greene and Gesell of this Court in *Poindexter* and *North*--have adopted this procedure. Opp. 11. It makes no attempt to distinguish these decisions or to undermine their reasoning. Thus,

---

Discovery at 28-29 (filed Feb. 16, 2006); T. 2/24/06 at 78-87.

if the Court permits the government to proceed ex parte, over our objection, it should afford the defense a similar ex parte hearing.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Mr. Libby's initial memorandum, the Court should bar the government from making ex parte submissions concerning discovery issues absent a particularized showing, through adversarial proceedings, of exceptional circumstances. If the Court permits the government to proceed ex parte, over our objection, it should afford the defense a corresponding opportunity to make an ex parte presentation to the Court in support of its discovery requests.

March 15, 2006                                     Respectfully submitted,

_____/s/_____                                    _____/s/_____
Theodore V. Wells, Jr.                             William H. Jeffress, Jr.
(D.C. Bar No. 468934)                              (D.C. Bar No. 041152)
James L. Brochin                                   Alex Bourelly
(D.C. Bar No. 455456)                              (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                      Baker Botts LLP
 & Garrison LLP                                    1299 Pennsylvania Ave., NW
1285 Avenue of the Americas                        Washington, DC  20004
New York, NY  10019-6064                           (202) 639-7751
(212) 373-3089

_____/s/_____                                    _____/s/_____
Joseph A. Tate                                     John D. Cline
Dechert LLP                                        (D.C. Bar No. 403824)
2929 Arch Street                                   Jones Day
Cira Centre                                        555 California Street, 26th Floor
Philadelphia, PA  19104                            San Francisco, CA  94104
(215) 994-2222                                      (415) 626-3939

6