UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA     )
                                    )     CR. NO. 05-394 (RBW)
           v.                 )
                                      )
I. LEWIS LIBBY,             )
      also known as "Scooter Libby"   )

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION TO DISMISS THE INDICTMENT**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, SPECIAL

COUNSEL, respectfully submits the following response to the Motion of I. Lewis Libby to

Dismiss the Indictment.

**INTRODUCTION**

On October 28, 2005, a federal grand jury returned a five-count indictment charging

defendant I. Lewis "Scooter" Libby with obstruction of justice, perjury, and making false

statements to federal investigators, in violation of 18 U.S.C. §§ 1503, 1623 and 1001, in

connection with an investigation concerning the disclosure to reporters of then-classified

information regarding the employment of Valerie Plame Wilson. The defendant has moved

"to dismiss the indictment on the ground that it was obtained, approved, and signed by an

official – Special Counsel Patrick J. Fitzgerald – who was appointed and exercised his

powers in violation of the Appointments Clause of the Constitution and applicable federal

statutes." Def. Mot. at 1.[1]  The defendant's motion is based on faulty factual and legal

---

[1] Citations to defendant's Motion to Dismiss the Indictment and Memorandum in Support
are to "Def. Mot.," followed by the relevant page number.

premises and is without merit.

Special Counsel Fitzgerald's exercise of delegated authority was, and is, in conformity with the statutes under which the acting Attorney General made the delegation and the Appointments Clause.  To avoid any appearance of a conflict of interest, Acting Attorney General James Comey exercised his statutory authority to delegate to another officer of the Department of Justice authority for the investigation into the alleged unauthorized disclosure of a CIA employee's identity. As explained below, and contrary to defendant's claim, the Acting Attorney General's delegation of authority to Special Counsel Fitzgerald was in complete conformity with the applicable provisions of Title 28 that give the Attorney General broad authority to delegate any of his functions to another officer of the Department of Justice.  Acting Attorney General Comey was under no obligation to appoint an outside Special Counsel pursuant to Department of Justice regulations.  In order to ensure that the investigation proceeded apace, Acting Attorney General Comey opted to delegate to an official within the Department of Justice, but from outside of Washington, namely, the United States Attorney for the Northern District of Illinois, an officer of the Department previously appointed by the President with the advice and consent of the Senate.  Thus, the Acting Attorney General's action vesting United States Attorney Fitzgerald with authority to conduct the investigation as Special Counsel was a proper delegation of authority to an existing subordinate officer rather than a formal appointment of a new officer implicating the Appointments Clause.

Even if the Appointments Clause were deemed implicated in this case, the delegation of authority to United States Attorney Fitzgerald was in complete conformity with that constitutional provision. The courts have uniformly rejected Appointments Clause challenges to the appointment of special prosecutors, and this Court should do so here. The delegation of authority by the Acting Attorney General to Special Counsel Fitzgerald was limited in the ways that the Supreme Court in *Morrison v. Olson* determined render a special prosecutor a properly appointed "inferior officer": Special Counsel Fitzgerald can be removed by the Acting Attorney General; he does not have authority to formulate policy; and his office is limited in jurisdiction and tenure. Indeed, in contrast to the Independent Counsel in *Morrison* who was removable only for good cause subject to judicial review, Special Counsel Fitzgerald is subject to removal at will by the Acting Attorney General. Contrary to defendant's contentions, Special Counsel Fitzgerald's scope of jurisdiction and tenure are limited to completion of a specific task and subject to expansion only by the Acting Attorney General. Also contrary to defendant's claims, as an official of the Department of Justice, Special Counsel Fitzgerald is bound to follow, and has followed, Department regulations other than procedural rules for obtaining chain-of-command approvals for specific actions.

Rather than focus on the factors addressed by the Supreme Court in *Morrison*, the defendant rests his Appointments Clause argument on the faulty premise that *Morrison* is no longer good law after *Edmond v. United States*. The defendant claims that the four-factor analysis used in *Morrison* has been supplanted by a new test under which any delegation of

authority by a principal officer to another officer is in violation of the Appointments Clause unless the principal officer engages in what the defendant terms "meaningful supervision." Def. Mot. 10, 18. The defendant's interpretation of the Supreme Court's Appointment Clause cases does not withstand scrutiny. The *Edmond* decision*,* noting that *Morrison*'s four-factor test was not tailored to the challenge concerning Coast Guard judges that was before the court, did not question the appropriateness of applying *Morrison*'s four-factor analysis to cases involving special prosecutors. The *Edmond* decision never suggested, much less stated, that the Independent Counsel at issue in *Morrison* was not "directed and supervised at some level," which is the criterion for an inferior officer applied in *Edmond*. In short, the Supreme Court in *Edmond* never questioned the outcome in *Morrison* or hinted that the analysis leading to the outcome in *Morrison* had been supplanted by a new Appointments Clause "test" for determining whether a special prosecutor is an inferior officer. *Morrison* is still good law, and under *Morrison* the defendant's Appointment Clause challenge fails.

For the reasons set forth below, the defendant's motion to dismiss the indictment should be denied.

**ARGUMENT**

**The Special Counsel's Exercise of Delegated Authority is in Conformity with the Statutes Authorizing the Attorney General to Delegate His Functions and the Appointments Clause of Article II.**

I.      **Legal Background**

The Attorney General of the United States is the head of the Department of Justice, and in the event of the Attorney General's absence or disability, the Deputy Attorney General may exercise the duties of the Attorney General.  28 U.S.C. §§ 503, 508(a).  Both the Attorney General and Deputy Attorney General are appointed by the President with the advice and consent of the Senate.  28 U.S.C. §§ 503, 504.  Under the authority of the Appointments Clause, Congress has vested in the Attorney General the power to conduct criminal investigations and litigation, the power to appoint subordinate officers to assist him, and the power to delegate any of his functions to "any other officer, employee, or agency of the Department of Justice."  28 U.S.C. §§ 509, 510, 515, 516.  *See  United States v. Nixon*, 418 U.S. 683, 694-95 (1974).

The Appointments Clause of Article II of the Constitution "divides all its officers into two classes."  *United States v. Germaine,* 99 U.S. (9 Otto) 508, 509 (1879).  "Principal officers" are selected by the President with the advice and consent of the Senate, while Congress may vest the appointment of "inferior officers" in "the President alone, the Courts of Law, or in the Heads of Departments."  *Buckley v. Valeo*, 424 U.S. 1, 132 (1976).

In order to avoid the potential conflict of interest created by the Attorney General's

direction of criminal investigations of high-ranking members of his own administration, special prosecutors have been utilized from time to time pursuant to the Attorney General's above-described statutory authority to delegate his functions or under the now-lapsed Ethics in Government Act in which Congress, by statute, vested the power of the Attorney General in Independent Counsels. *See* 28 U.S.C. § 591 *et seq.* (effect of chapter terminated June 30, 1999). The delegation and exercise of power under both of these legal regimes has been subject to the same challenge that defendant Libby advances here, namely, the claim that special prosecutors were principal officers (not inferior officers) under the Appointments Clause and that the lack of Presidential appointment with the advice and consent of the Senate rendered the special prosecutor illegitimate. Such Appointments Clause challenges to the delegation and exercise of powers to special prosecutors have been rejected uniformly by the courts on the ground that the special prosecutors were inferior officers (not principal officers) under the Appointments Clause, so their appointment other than by the President with Senate confirmation was constitutional.

In *Morrison v. Olson*, 487 U.S. 654 (1988), the Supreme Court rejected an Appointments Clause challenge to an Independent Counsel appointed under the Ethics in Government Act. Under that Act, the Independent Counsel was appointed by a special court rather than the President and without the advice and consent of the Senate. Thus the case hinged on whether the Independent Counsel was an inferior officer; if not, the Act would have violated the Appointments Clause. *Id.* at 670-71. Although the Court did not draw a

6

precise line of demarcation between principal and inferior officers, it found that the Independent Counsel "clearly [fell] on the 'inferior officer' side of that line." *Id.* at 671. In reaching this conclusion, the Court relied on several factors. First, the Court noted that the Independent Counsel was removable by the Attorney General, notwithstanding the fact that the grounds for removal were limited to "good cause" or physical or mental incapacity, with removal subject to judicial review. *Id.*; *see* 28 U.S.C. §596(a). Second, the Court pointed to the fact that the Independent Counsel was "empowered under the Act to exercise only certain, limited duties." *Morrison*, 487 U.S. at 671. On that score, the Court noted that, although the Independent Counsel was granted "the full power and independent authority" of the Department of Justice, the grant of authority did not authorize the Independent Counsel to formulate department policy and required her to comply with department policy to the extent possible. *Id.* at 671-72. Third, the Court took into account that the Independent Counsel's office was limited in jurisdiction to the scope of the grant of authority from the special court that appointed her. *Id.* at 672. Fourth, the Court focused on the fact that the Independent Counsel's office was limited in tenure because it was temporary in that the office expired when the single task assigned was accomplished. *Id.* The Court concluded: "In our view, these factors relating to the 'ideas of tenure, duration. . . and duties' of the independent counsel . . . are sufficient to establish that appellant is an 'inferior officer' in the constitutional sense." *Id.* citing *Geramine,* 99 U.S. at 511.

In *Morrison*, the Supreme Court stated that its conclusion was consistent with its

statement in *United States v. Nixon*, 418 U.S. 683 (1974), that the office of Watergate Special Prosecutor, which had authority similar to the Independent Counsel, was a subordinate officer.  *Morrison*, 487 U.S. at 673.  In *Nixon*, the Supreme Court considered the Acting Attorney General's appointment of a special prosecutor pursuant to 28 U.S.C. §§ 509, 510, 516, 515, 533, the same legal regime under which Special Counsel Fitzgerald was appointed. In the aftermath of the firing of Special Prosecutor Archibald Cox, the Acting Attorney General, under the authority of the statutes in Title 28, issued a regulation under which a new Special Prosecutor, Leon Jaworski, was appointed.  The regulation "delegated the authority to represent the United States in these matters to a Special Prosecutor with unique authority and tenure."  *Nixon*, 418 U.S. at 694.  The regulation gave the Special Prosecutor plenary authority to investigate and litigate concerning matters including "offenses arising out of the 1972 Presidential election for which the Special Prosecutor deems it necessary and appropriate to assume responsibility" and "allegations involving the President, members of the White House staff, or Presidential appointees." *Id.* at 695 n. 8 citing 38 Fed.Reg. 30739 as amended by 38 Fed.Reg. 32805.  The regulation further provided as follows:

> In exercising this authority, the Special Prosecutor will have the greatest degree of independence that is consistent with the Attorney General's statutory accountability for all matters falling within the jurisdiction of the Department of Justice.  The Attorney General will not countermand or interfere with the Special Prosecutor's decisions or actions.  The Special Prosecutor will determine whether and to what extent he will inform or consult with the Attorney General about the conduct of his duties and responsibilities.  In accordance with assurances given by the President to the Attorney General that the President will not exercise his Constitutional powers to effect the discharge of the Special Prosecutor or to limit his independence that he is hereby given,

8

the Special Prosecutor will not be removed from his duties except for extraordinary improprieties on his part and without the President's first consulting the Majority and Minority Leaders and Chairmen and ranking Minority Members of the Judiciary Committees of the Senate and the House of representatives and ascertaining their consensus is in accord with his proposed action.

*Id*. The Court in *Nixon* found that under this delegation by the Attorney General the Watergate Special Prosecutor was a subordinate officer. *Id*. at 694-96. The Court in *Morrison* stated that the conclusion in *Nixon* that the Watergate Special Prosecutor was a subordinate officer was consistent with its conclusion with respect to the Independent Counsel in the case before it, since the two prosecutors had similar authority. *Morrison*, 487 U.S. at 673. In dissent in *Morrison*, Justice Scalia disagreed with the majority's reading of *Nixon*, stating that the key factor that supported the *Nixon* Court's finding that the Special Prosecutor was a subordinate officer was the fact that, "in the end, the President or the Attorney General could have removed him at any time, if by no other means than amending or revoking the regulation defining his authority." *Id*. at 721 (Scalia, J., dissenting). Justice Scalia's narrow reading of *Nixon* highlights the substantial weight accorded an Attorney General's (or President's) at-will removal power in determining a special prosecutor's subordinate status. Even with the elaborate charter given the Watergate Special Prosecutor and the regulation's broad grant of jurisdiction and detailed measures to assure independence, the ultimate power to revoke the regulation and fire the prosecutor resulted in subordinate status. Indeed, Justice Scalia reinforced this point in another portion of his dissent in *Morrison* in which he discussed the fact that the Independent Counsel was only

9

removable for good cause. Justice Scalia flatly stated: "If [the Independent Counsel] were removable at will by the Attorney General, then she would be subordinate to him and thus properly designated as inferior. . . ." *Id.* at 716 (Scalia, J., dissenting). Of course, the majority in *Morrison* held that the Independent Counsel was an inferior officer notwithstanding that she was removable only for good cause, and thus made clear that it is not necessary for a special prosecutor to be removable at will to be an inferior officer. However, the Court's analysis left no doubt that the ability of an Attorney General to remove a special prosecutor at will strongly supports a determination of inferior status because the power to remove officers is a powerful tool for control by principal officers. *Bowsher v. Synar*, 478 U.S. 714, 727 (1986); *Myers v. United States*, 272 U.S. 52 (1926).

The D.C. Circuit's decision in *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987), is fully consistent with this view. *In re Sealed Case* was decided before the Supreme Court upheld the Independent Counsel law in *Morrison*. In *In re Sealed Case*, the court considered an Appointments Clause challenge to the Attorney's General's issuance of a regulation governing the appointment of Lawrence Walsh as "Independent Counsel: Iran/Contra." Walsh previously had been appointed to investigate the Iran/Contra matter under the Independent Counsel statute, 28 U.S.C. § 591 *et seq.*, but to hedge against challenges to the Independent Counsel statute, the Attorney General acted under his authority pursuant to statute and regulation to independently appoint Walsh to investigate Iran/Contra under terms almost identical to his original appointment as Independent Counsel, including requiring

good cause for removal by the Attorney General.  *In re Sealed Case*, 829 F.2d at 52-53.  In concluding that the Attorney General had statutory authority to "create an Office of Independent Counsel virtually free of ongoing supervision," *id*. at 55, the court noted that the Supreme Court in *Nixon* "presupposed the validity of a regulation appointing the Special Prosecutor, a position indistinguishable from the one at issue here."  *Id*. at n. 30.  The court then went on to analyze the claim that the Attorney General's appointment of the "Independent Counsel:  Iran/Contra" violated the Appointments Clause.  The court rejected the claim, stating:

> The crucial difference is that the Independent Counsel: Iran Contra serves only for so long as the March 5, 1987, regulation remains in force.  Subject to generally applicable procedural requirements, the Attorney General may rescind this regulation at any time, thereby, abolishing the Office of Independent Counsel: Iran/Contra.  As a result, we must conclude that the Independent Counsel: Iran /Contra "is charged with the performance of the duty of a superior [i.e., the Attorney General] for a limited time and under special and temporary conditions." *United States v. Eaton*, 169 U.S. 331, 343 . . . (1898).  As such, "he is not thereby transformed into the superior and permanent official," *id*., but rather remains an "inferior official" whom the Attorney General as "Head[] of [a] Department[]," may appoint under the express terms of the Appointments Clause.  *See id.* at 343-44.

*In re Sealed Case*, 829 F.2d at 56-57 (footnotes omitted).

The defendant contends that  the Supreme Court has altered and perhaps supplanted the approach taken in *Morrison, Nixon*, and *In re Sealed Case* to determining inferior-officer status in the context of the appointment of special prosecutors in a way that calls into question the result in those cases.  The defendant argues that under *Edmond v. United States*, 520 U.S. 651 (1997), "the ultimate touchstone of inferior-officer status is *direction and*

11

*supervision.*" Def. Mot. at 22.  At several points, the defendant describes the "*Edmond* test"

as one of "meaningful supervision and direction." Def. Mot. at 10, 18. Further, the defendant

states that *Morrison* and *In re Sealed Case* must be read in light of *Edmond* and that *Edmond*

may have "wholly supplanted" the approach in *Morrison*.  Def. Mot. at 19, n. 8, 23.  Contrary

to the defendant's contention, *Edmond* did not work a sea change in the interpretation of the

Appointments Clause, and that opinion did not supplant the analysis this court should apply

in this case.

In *Edmond*, the Supreme Court held that judges of the Coast Guard Court of Criminal

Appeals are inferior officers under the Appointments Clause who may be appointed by the

Secretary of Transportation.  520 U.S. at 666.  In reviewing its precedents regarding the

distinction between inferior and principal officers, the Court noted its holding in *Morrison*

and set forth the four factors that guided the Court's analysis, stating that two of the

*Morrison* factors (limited duties and jurisdiction) did not fit the analysis of the question

before it regarding the Coast Guard judges.  *Id.* at 661.  The Court stated that none of the

prior cases purported to "set forth an exclusive criterion" and that *Morrison* "did not purport

to set forth a definitive test" for determining whether an officer is inferior.  *Id.*  Significantly,

the Court expressed no doubt about the outcome of *Morrison* and no reservations about the

application of the *Morrison* factors to the determination of whether a special prosecutor is

an inferior officer.  Instead the Court stated in general terms:  "[W]e think it evident that

'inferior officers' are officers whose work is directed and supervised at some level by others

who were appointed by Presidential nomination with advice and consent of the Senate." *Id.*

at 663. In finding that the Coast Guard judges were supervised for appointment Clause

purposes, the Court emphasized that they could be removed without cause, the formulation

of rules of procedure by superiors, and the limited review of the judges' decisions by other

officers before they become final. *Id.* at 661-62. The Court gave no hint that an Independent

Counsel who met the four-factor *Morrison* test would not also be "directed and supervised

at some level" within the meaning of *Edmond*. Accordingly, we respectfully submit that this

Court is obligated to follow the analysis set forth in *Morrison* and reject the defendant's

thesis that *Edmond* dramatically altered the law.[2]

## II.    The Delegation to the Special Counsel Conforms with Both Applicable Statutory Provisions and the Appointments Clause.

### A.    The Delegation to the Special Counsel.

Upon the recusal of Attorney General John Ashcroft from the investigation into the

alleged unauthorized disclosure of a CIA employee's identity, Deputy Attorney General

James Comey became Acting Attorney General for that matter pursuant to 28 U.S.C.

---

[2] A leading critic of *Morrison* has stated that "even though it may be overreading the Court's intervening decision in *Edmond* to suggest that it implicitly overruled *Morrison*, *Edmond's* explanation of the importance of *supervision* of any officer claiming inferior status would at least support reexamination of *Morrison* if the issue of the independent counsel statute's constitutionality were to reach the Supreme Court again." Laurence H. Tribe, *American Constitutional Law* 689 (2000). It should be noted that Professor Tribe was writing before the Independent Counsel statute expired, *see id.* at 690, and that, as noted *supra*, the now-lapsed statute required good cause for removal. As noted previously, Justice Scalia, who authored the majority opinion in *Edmond*, stated in dissent in *Morrison* that had the statute allowed for removal at will that the Independent Counsel would have been an inferior officer. 487 U.S. at 716 (Scalia, J., dissenting).

13

§ 508(a).[3]  The Acting Attorney General determined that because he and others in the normal chain of command worked on a day-to-day basis with national security agencies affected by the investigation, it would be prudent to appoint an independent prosecutor.  Ex. D at  2, 6. The Acting Attorney General considered appointment of an outside Special Counsel pursuant to 28 CFR Part 600, but determined that the public interest would best be served by avoiding having to put the investigation "on hold" during "the delay that would come from selecting, clearing, and staffing an outside counsel operation." Ex. D at 3.  Therefore, Acting Attorney General Comey decided to delegate authority to conduct the investigation to an existing officer of the Department of Justice, the United States Attorney for the Northern District of Illinois, Patrick Fitzgerald.  The delegation was made pursuant to the Acting Attorney General's statutory authority under 28 U.S.C. § 510 to delegate any of the functions of the Attorney General to any other officer of the Department of Justice.[4]  The delegation was made by a letter from Acting Attorney General Comey to United States Attorney Fitzgerald

---

[3] Section 508(a) provides in pertinent part: "In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office. . . ."

[4] Section 510 provides: "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice any function of the Attorney General.  28 U.S.C. § 509 defines the functions of the Attorney General as follows: "All functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General. . . ." (omitting three exceptions not applicable here).

14

dated December 30, 2003:

> By the authority vested in the Attorney General by law, including 28 U.S.C. §§ 509, 510, and 515, and in my capacity as Acting Attorney General pursuant to 28 U.S.C. § 508, I hereby delegate to you all the authority of the Attorney General with respect to the Department's investigation into the alleged unauthorized disclosure of a CIA employee's identity, and I direct you to exercise that authority as Special Counsel independent of the supervision or control of any officer of the Department.

Ex. A.  The delegation of authority was clarified by a letter from Comey to Fitzgerald dated

February 6, 2004:

> At your request, I am writing to clarify that my December 30, 2003, delegation to you of "all the authority of the Attorney General with respect the Department's investigation into the alleged unauthorized disclosure of a CIA employee's identity" is plenary and includes the authority to investigate and prosecute violations of any federal criminal laws related to the underlying alleged unauthorized disclosure, as well as federal crimes committed in the course of, and with the intent to interfere with, your investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; to conduct appeals arising out of the matter being investigated and/or prosecuted; and to pursue administrative remedies and civil sanctions (such as civil contempt) that are within the Attorney General's authority to impose or pursue.  Further, my conferral on you of the title "Special Counsel" in this matter should not be misunderstood to suggest that your position and authorities are defined and limited by 28 CFR Part 600.

Ex. B.

The Acting Attorney General and United States Attorney Fitzgerald had a mutual understanding of the scope and limits of the delegation of authority to Fitzgerald as Special Counsel.  The attached affidavit of Acting Attorney General James B. Comey states:

> It has always been my understanding and my intention that the letters of December 30, 2003 and February 6, 2004 defined and limited the subject matter of Special Counsel Fitzgerald's authority to investigate and prosecute.

15

My understanding was that any expansion of the scope of the Special Counsel's investigation would require my approval as Acting Attorney General. Furthermore, it has always been my understanding that, having exercised my discretion to delegate authority for the matter to the Special Counsel, that the delegation was revocable at will. In addition, although the Special Counsel was delegated approval authority with respect to specific actions such as issuing media subpoenas, granting immunity, or taking appeals, it was my intention that the Special Counsel would follow substantive Department policies concerning such specific actions, as he was obligated to do as an employee of the Department. To the best of my knowledge, the Special Counsel shared each of these understandings and knew the intended limits on his authority.

Ex. F.  The attached affidavit of Special Counsel Patrick J. Fitzgerald states:

At my request, on February 6, 2004, Mr. Comey issued a letter clarifying the letter of December 30, 2003, to make it abundantly clear that my subject matter jurisdiction included any attendant obstruction crimes. I asked him for the clarifying letter because I understood that my authority was derived entirely from his delegation. I have always understood that the letters of December 30, 2003 and February 6, 2004 limited the subject matter of my authority to investigate and prosecute to a defined subject matter. I always understood that any expansion of the subject matter – which I have never sought – would have to come from the Acting Attorney General. I have never had any understanding to the contrary. . . . It has always been my understanding that the delegation of authority to me was revocable at will. In addition, although I understood that I had been delegated approval authority for specific actions such as issuing media subpoenas and granting immunity, I always understood that I was required to follow substantive Department of Justice policies and regulations concerning such specific actions. Indeed, I did so.

Ex. G.

**B.    The Delegation of the Attorney General's Functions to Another Officer of the Department of Justice is Authorized by Statute.**

The defendant contends that the delegation of authority to United States Attorney

Fitzgerald as Special Counsel "violates federal law." Def. Mot. at 25. The defendant further

claims that the Acting Attorney General's delegation to Associate Deputy Attorney General Margolis of authority to oversee to Special Counsel matter was in violation of law. Def. Mot. 29-30. Both of these arguments are without merit. The Attorney General has been granted by Congress broad statutory authority to delegate any of his functions to other officers of the Department of Justice. The delegations at issue here were pursuant to that authority.[5]

The defendant first claims that two statutory provisions in Chapter 31 of Title 28 concerning the Attorney General's authority over litigation have been violated. The first is 28 U.S.C. § 516, which provides as follows:

> Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefore, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

The second is 28 U.S.C. § 519, which provides as follows:

> Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

Both Sections 516 and 519 allow for exceptions authorized by law. As set forth in the

---

[5] The defendant claims that the Acting Attorney General "sidestepped" and "bypassed" the provisions for appointment of an outside Special Counsel under 28 U.S.C. Part 600. Def. Mot. at 4. Of course, "Part 600 is not a substantive (legal) limitation on the authority of the Acting Attorney General to delegate department functions to Special Counsel Fitzgerald." GAO Letter of September 30, 2004 at 7, Def. Mot., Ex. G. The Acting Attorney General expressed good and sound reasons for exercising his discretion to delegate authority to an officer within the Department. Ex. D at 1-3.

December 30, 2003 letter delegating authority to the Special Counsel, the Acting Attorney General was acting pursuant to related provisions of Chapter 31 of Title 28 that clearly authorize the delegation, namely, Sections 508, 510, and 515. Section 509 defines the functions of the Attorney General, vesting in the Attorney General "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice."[6] In Section 510, Congress authorized the Attorney General to delegate authority as follows:

> The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice any function of the Attorney General.

Section 515 authorizes officers of the Department of Justice, "when specifically directed by the Attorney General" to conduct legal proceedings which United States Attorneys are authorized to conduct whether or not the attorney is a resident of the district in which the proceeding is pending.

Reading these related statutory provisions together, the authority of the Acting Attorney General to delegate his functions to an officer of the Department of Justice is crystal clear.[7] This is not a complicated exercise in statutory construction. The D.C. Circuit had "no

---

[6] Section 509 contains three exceptions not applicable here.

[7] The delegation here was to an officer of the Department of Justice pursuant to the statutory authority of Section 510. This case does not present the issue of the Attorney General's power to supervise and direct litigation involving other agencies. Def. Mot. at 25-27. As explained *infra*, the delegation of authority to the Special Counsel is consistent with the statutory provisions vesting the supervision and direction of litigation in the Attorney General.

18

difficulty concluding that the Attorney General has statutory authority" to create the "Office of Independent Counsel: Iran/Contra" pursuant to Sections 509, 510, and 515.  *In re Sealed Case*, 829 F.2d at 55.  The court stated: "While these provisions do not explicitly authorize the Attorney General to create an Office of Independent Counsel virtually free of ongoing supervision, we read them as accommodating the delegation at issue here." *Id.*  The court noted that the Supreme Court in *Nixon* "presupposed the validity of a regulation appointing the Special Prosecutor, a position indistinguishable from the one at issue here." *Id.*, n.30.

The defendant apparently believes that *In re Sealed Case* reached the wrong result because the court failed to take account of Sections 516 and 519, which give the Attorney General the authority to direct and supervise all litigation.  The defendant views the delegation to the Special Counsel in this case as an abdication of the Attorney General's duty to supervise and direct litigation.  Def. Mot. at 26-27.  Sections 510 and 515, the defendant argues, "in no way suggest that the Attorney General may *renounce entirely all supervision and direction*." Def. Mot. at 25.  Of course, the defendant ignores the plain language of Section 510 allowing the Attorney General to delegate *any* of his functions to other officers of the Department of Justice.  Alternatively, even if the Attorney General's function of supervising and directing litigation is viewed as not being subject to delegation under Section 510, the provisions vesting the Attorney General with authority to supervise and direct litigation must be read in harmony with the provision vesting the Attorney General with the power to delegate.  That is easily accomplished by interpreting the Attorney General's

19

delegation of functions to other officers of the Department as one manner of the exercise of his authority the supervise and direct litigation. The defendant's argument assumes both that the duties described in Sections 516 and 519 are not subject to delegation under Section 510 and that the terms "supervision" and "direction" require ongoing, active monitoring and oversight by the Attorney General. The defendant appears to state that the supervision by the Attorney General under 28 CFR Part 600 is the minimum required and that no lesser a degree of supervision is consistent with the Attorney General's statutory obligations. Def. Mot. 30-31. There is no basis for that view. This view would, among other things, prevent the Attorney General from using his authority to address potential conflicts of interest by delegating authority to special prosecutors "virtually free of ongoing supervision." *In re Sealed Case*, 829 F.2d at 55. The Attorney General may well conclude that the public interest warrants such a delegation. Under any such a delegation pursuant to Section 510, the Attorney General retains the ultimate authority to revoke or modify the delegation, so the ultimate power to direct and supervise litigation is at all times vested in the Attorney General. The delegation of authority to the Special Counsel was in conformity with Sections 508, 510, 515, 516 and 519.

The defendant advances one additional statutory argument. He contends that the Acting Attorney General violated Section 508 by delegating to Associate Deputy Attorney General Margolis his role as Acting Attorney General in the CIA leak investigation. According to defendant's argument, upon a vacancy in the office of the Deputy Attorney

General (who also was Acting Attorney General for this matter), the duties of the Acting Attorney General are to exercised by the Associate Attorney General. Def. Mot. at 29-30. The problem with defendant's argument is that neither the office of Deputy Attorney General or the Office of Acting Attorney General were vacant when the Acting Attorney exercised his authority under Section 510 to delegate his function as Acting Attorney General to another officer of the Department, namely Associate Deputy Attorney General Margolis. Ex. C. When Deputy Attorney General Comey subsequently left the Department of Justice, the delegation of the role of Acting Attorney General for this matter was inherited by, and subject to revocation by, Mr. Comey's successor. The attached affidavit of James B. Comey states:

> On August 12, 2005, while still serving as Deputy Attorney General and Acting Attorney General on the matter delegated to the Special Counsel, pursuant to 28 U.S.C. § 510, I delegated my authority as Acting Attorney General to Associate Deputy Attorney General David Margolis. It is my understanding that, after I left the department of Justice on August 16, 2005, pursuant to 28 U.S.C. § 508, Associate Attorney General Robert McCallum held the authority of my office, which included the authority as Acting Attorney General to modify or revoke my delegation of authority to Associate Deputy Attorney General Margolis.

Ex. F. The delegation to Mr. Margolis was, and is, in complete conformity with the relevant statutes. Defendant's statutory arguments are without merit.

## C.    The Delegation Conforms With The Appointments Clause.

Because the Acting Attorney General, pursuant to 28 U.S.C. § 510, delegated authority to act as Special Counsel in this matter to an existing subordinate officer of the

Department of Justice, there was no "appointment" for purposes of the Appointments Clause. United States Attorney Fitzgerald, who previously was appointed by the President and confirmed by the Senate, already was an officer of the Department of Justice at the time of the delegation of authority as Special Counsel. Thus, the delegation by the Acting Attorney General did not implicate the Appointments Clause.

Even if the appointment of Special Counsel Fitzgerald is analyzed as if he was not already an officer of the Department of Justice at the time of the delegation of authority, the delegation fully conforms with the Appointments Clause. Under *Morrison*'s four-factor analysis, the Special Counsel in this case is subordinate to the Acting Attorney General and therefore is an inferior officer under the Appointments Clause. The Special Counsel is removable at will, performs limited duties in conformity with substantive Department of Justice policies, and is limited in jurisdiction and tenure. Each factor will be considered in turn.

***The Special Counsel is Removable at Will.*** In *Morrison*, the Supreme Court found that the power of the Attorney General to remove the Independent Counsel indicated the Independent Counsel's inferior status. 487 U.S. at 671. The Supreme Court reached that conclusion despite the fact that the Independent Counsel was removable "only for good cause, physical disability, mental incapacity, or any other condition that substantially impairs the performance of such independent counsel's duties" and despite that fact that any removal of an Independent Counsel was subject to judicial review. *Id.* at 663-64 quoting 28 U.S.C.

22

§§ 596(a)(1), 596(a)(2).   In contrast to *Morrison*, the Special Counsel in this case is removable by the Acting Attorney General at will.   The power of the Acting Attorney General to remove the Special Counsel at will, by itself, makes the Special Counsel an inferior officer and places political accountability in the principal officer to which the Special Counsel is subordinate.   Even Justice Scalia, dissenting in *Morrison*, stated that had the Independent Counsel at issue in that case been removable at will, "then she would be subordinate to him and thus properly designated as inferior." 487 U.S. at 716 (Scalia, J., dissenting).   As discussed above, the ultimate power of the Attorney General (or President) to remove a special prosecutor at will by revocation of the regulation creating the office appears to have been decisive to the determination that the special prosecutors at issue in *Nixon* and *In re Sealed Case* were inferior officers, despite the fact that the terms of the regulations limited removal to cases of good cause.   The delegation of authority to the Special Counsel in this case has at all times been subject to revocation at will by the Acting Attorney General, making the Special Counsel an inferior officer.  Ex. D at 7-8 (Acting Attorney General's statement that "I believe that I could revoke the delegation of authority that I've given to [the Special Counsel]").   The attached affidavits of James B. Comey and Patrick J. Fitzgerald both make clear that the Special Counsel's delegation of authority was at all times revocable at will by the Acting Attorney General.  Ex. F, G.

The defendant argues that the power to remove the Special Counsel at will is not effective because the Acting Attorney General declined to engage in oversight of the Special

Counsel's investigation. Def. Mot. at 22. The defendant points to the Acting Attorney General's statement that he had the power of at-will removal "in theory." Ex. D at 8. The defendant's argument ignores the fact that the special prosecutors found to be inferior officers in *Morrison*, *Nixon*, and *In re Sealed Case* all exercised the full authority of the Attorney General without any obligation to keep the Attorney General informed about the investigation. The lack of a flow of information to the Attorney General in those cases did not render the power of removal a less weighty factor in favor of the special prosecutor's inferior status. Indeed, in *Nixon* the Court referred to the power to revoke the regulation empowering the Special Prosecutor as "theoretically possible." 418 U.S. at 696. Of course, restricting the flow of information to the Attorney General promotes public confidence in the independence of the investigation. It does not, however, convert a special prosecutor into a principal officer because the power to remove the special prosecutor and ultimate political accountability remain with the Attorney General. Furthermore, as a practical matter, much information about the investigation of the Special Counsel is in the public domain and therefore available to the Acting Attorney General in exercising the power to remove the Special Counsel. In any event, the power to remove at will carries with it the power to demand information if the Acting Attorney General deems it necessary. The Acting Attorney General's power to remove the Special Counsel at will makes the Special Counsel subordinate for purposes of the Appointments Clause.

***The Special Counsel Performs Only Certain, Limited Duties.*** The second factor considered in *Morrison* focuses on the delegation of authority limited to investigation and prosecution without policy making authority or administrative duties beyond operation of an office, and subject to the requirement of complying to the extent possible with Department of Justice policies. 487 U.S. at 671-72. The defendant incorrectly contends that Special Counsel Fitzgerald was not bound by substantive Department of Justice regulations and posits as evidence of this claim erroneous allegations that the Special Counsel did not comply with Department regulations. Def. Mot. at 14-18. One of the false legal premises for the argument is that the Acting Attorney General's delegation of approval authority to the Special Counsel freed the Special Counsel from the obligation to follow the substantive policies of the Department. Def. Mot. at 21. In fact, the Special Counsel was, and is, required to comply with Department of Justice policies to the extent possible. The attached affidavits of James B. Comey and Patrick J. Fitzgerald reaffirm this fact. Ex. F, G.

The other false legal premise for the argument is that the Acting Attorney General's February 6, 2004 letter stating that the Special Counsel's authority was not "defined and limited" by 28 CFR Part 600 frees the Special Counsel from any obligation to follow substantive Department policies because Part 600.7 requires outside Special Counsels to comply with Department policies. Def. Mot. at 21. However, the substantive policies of the Department of Justice concerning such matters as media subpoenas and public statements in pending criminal cases must be followed by all Department of Justice personnel, including

25

the Special Counsel.  Ex. F, G.

The false factual premise of the defendant's argument is that the Special Counsel violated Department policy, particularly the policy on public statements in pending criminal cases, where the defendant alleges that the Special Counsel went "far beyond those guidelines" during the October 28, 2005 press conference.[8]  Def. Mot. at 16-17.  *See* 28 CFR § 50.2; USAM § 1-7.520.  To the contrary, the Special Counsel submits that he fully complied with department policy.  Of course, department policy allows public statements concerning the "substance of the charge, limited to that contained in the . . . indictment" and the "public policy significance of a case."  USAM § 1-7.520.  As the transcript of the October 28, 2005 press conference reveals (*see* Exhibit E), the Special Counsel repeatedly made clear that he was staying within the four corners of the indictment in describing the charges.[9]  The Special Counsel also reminded the audience of the presumption of innocence on several occasions.  In addition, the press conference concerned a matter of significant public interest about which little information had been public, and the Special Counsel was

---

[8]  The defendant does not allege that the Special Counsel failed to comply with other department policies.  For example, the defendant acknowledges that the Special Counsel was found to be in full compliance with the department policy on the issuance of subpoenas to the media.  Def. Mot. at 15, n. 6.  *See* 28 CFR §50.10; *In re: Special Counsel Investigation*, 338 F. Supp 2d 16, 17 (D. D.C. 2004)("Assuming, *arguendo*, the at the DOJ guidelines did vest a right in Ms. Miller, this court holds that the DOJ guidelines are fully satisfied by the facts of this case as presented to the court in the *ex parte* affidavit of Patrick Fitzgerald").

[9]  The defendant states that the Special Counsel made the "unqualified statement" that Mr. Libby was the first official to disclose Plame's employment.  Def. Mot. at 16-17.  The defendant fails to acknowledge, however, that the Special Counsel initially said that the defendant was the "first known" to have disclosed this information, Ex. E at 1, which was consistent with the information known to the Special Counsel at the time.

entitled to comment on the public policy significance of the case in the interest of furthering law enforcement goals. The Special Counsel's conduct of the October 28th press conference was in compliance with the guidelines; it certainly in no way demonstrates that the Special Counsel believed he was not bound by the guidelines.

*The Office of Special Counsel is Limited in Jurisdiction and Tenure.* The third and fourth factors considered in *Morrison* were the Independent Counsel's limited jurisdiction and tenure. 487 U.S. at 672. The Independent Counsel's subject matter jurisdiction was defined and her tenure was limited and temporary in that she was appointed to accomplish a single task. *Id.* When the Acting Attorney General appointed the Special Counsel, the subject matter of the Special Counsel's jurisdiction was spelled out in the letters of December 30, 2004 and February 6, 2004. Ex. A , B. That jurisdiction was limited in scope to the matter from which the Attorney General had recused himself: the Department's investigation into the alleged unauthorized disclosure of a CIA employee's identity. The February 6th letter clarified the December 30th letter by stating that the Special Counsel has "authority to investigate and prosecute violations of any federal criminal laws related to the underlying alleged unauthorized disclosure, as well as federal crimes committed in the course of, and with the intent to interfere with, your investigation. . . . " Ex. B. The Special Counsel at all times believed he was bound by this subject matter limitation and that his tenure ended when the task assigned was completed. He further believed that the subject matter jurisdiction could only be expanded by the Acting Attorney General or his designee. That is, the Special

27

Counsel believed that his authority to exercise the powers of the Attorney General was limited to the subject matter described in the December 30th and February 6th letters. The attached affidavit of Patrick J. Fitzgerald confirms his understanding. Ex. G.

The defendant argues that the Special Counsel had "unilateral authority to expand his jurisdiction as he sees fit." Def. Mot. at 12, 20. The primary basis for defendant's claim is a piece of parol evidence, namely, a statement in response to a question by Acting Attorney General Comey at the December 30, 2003 press conference.

> Q: You mentioned that the – you felt that Fitzgerald will have a broader – actually a broader mandate, broader abilities than an outside counsel. Can you expand on that a little bit? In what respect will he have a –
>
> Mr. Comey: Yes. An outside counsel has a – the regulations prescribe a number of ways in which they're very similar to a U.S. Attorney. For example, they have to follow all the Department of Justice policies regarding approvals. So that means if they want to subpoena a member of the media, if they want to grant immunity, if they want to subpoena a lawyer – all the things that we as U.S. attorneys have to get approval for, an outside counsel has to come back to the Department of Justice. An outside counsel also only gets the jurisdiction that is assigned him and no other. The regulations provide that if he or she wants to expand that jurisdiction, they have to come back to the attorney general and get permission.
>
> Fitzgerald has been told, as I said to you: Follow the facts; do the right thing. He can pursue it wherever he wants to pursue it.
>
> An outside counsel, according to the regulations, has to alert the attorney general to any significant event in the case; file what's called an "urgent report." And what that means is just as U.S. Attorneys have to do that, he would have to tell the attorney general before he brought charges against anybody, before maybe a significant media event, things like that. Fitzgerald does not have to do that; he does not have to come back to me for anything. I mean, he can if he wants to, but I've told him, our instructions are: You have this authority; I've delegated to you all the approval authority that I as attorney

28

general have.  You can exercise it as you see fit.

And a U.S. attorney or a normal outside counsel would have to go through the approval process to get permission to appeal something.  Fitzgerald would not because of the broad grant of authority I've given him.

So, in short, I have essentially given him – not essentially – I have given him all the approval authorities that rest – that are inherent in the attorney general; something that does not happen with an outside special counsel.

Ex. D at 8-9.  In his attached affidavit, Acting Attorney General Comey makes clear that his understanding was that the Special Counsel's subject matter jurisdiction was limited by the letters of December 30, 2003 and February 6, 2004.  Ex. F.  Mr. Comey's affidavit states: "Nothing I said at the press conference of December 30, 2003 was intended to convey a contrary understanding, nor could any statement by me at a press conference modify the delegation of authority set forth in the letters of December 30, 2003 and February 6, 2004." Ex. F.  With respect to the portion of the press conference quoted above, Mr. Comey's affidavit states as follows:

Apart from perhaps inadvertently demonstrating the perils of giving a 347-word extemporaneous answer at a press conference, I did not, by my discussion of the regulatory regime for an outside counsel, intend to convey that Special Counsel Fitzgerald was free to pursue any matter without regard to the mandate I gave him.  My intention at the press conference – however inartfully described in this particular passage – was to convey that I had given Fitzgerald the authority to investigate the alleged unauthorized disclosure of a CIA employee's identity and that in doing so, he did not need my approval on those investigative measures for which a U.S. Attorney would otherwise need to seek approval.  It was not my intention to convey – because it was not true – that the Special Counsel could decide to investigate crimes outside that mandate without seeking a modification of his mandate.

Ex. F.  Therefore, the Special Counsel simply did not have the power to unilaterally expand

29

his jurisdiction. The Special Counsel was limited in his jurisdiction and tenure consistent with the discussion of those factors in *Morrison*.

Even if Acting Attorney General Comey's statement at the press conference could somehow be interpreted as having delegated authority to the Special Counsel to approve the expansion of his own jurisdiction – a conclusion that the Acting Attorney General and Special Counsel emphatically reject – that does not compel the finding that the Special Counsel was not an inferior officer subordinate to the Acting Attorney General. That is because, unlike the Independent Counsel in *Morrison*, the Special Counsel was subject to being dismissed by the Acting Attorney General at will. If the Acting Attorney General believed the expansion of jurisdiction was inappropriate, he could have removed the Special Counsel.[10] The power to remove the Special Counsel at will renders him an inferior officer even if he had been given some authority to expand his investigation.

Therefore, even if the Appointments Clause were deemed to be implicated in this case, under the factors discussed in *Morrison*, the Special Counsel is an inferior officer subordinate to the Acting Attorney General. The defendant asserts that *Edmond*, not *Morrison*, is controlling. As explained above, nothing in the *Edmond* decision called into question the viability of the *Morrison* four-factor test or the outcome in *Morrison*. Therefore, the obvious reading of *Edmond* is that the Court's statement that an inferior officer must be

---

[10] If the Special Counsel had expanded his own jurisdiction, it would have been necessary to convey any such expansion to the Acting Attorney General so that the Attorney General could consider expanding the scope of his recusal.

"directed and supervised at some level" is consistent with the result in *Morrison*. It is no stretch to say that a Special Counsel who can be removed by the Acting Attorney General (particularly at will), who cannot formulate policy, has no additional administrative duties and must comply with Department policies to the extent possible, who is given limited jurisdiction and tenure limited to the accomplishment of the assigned task is "directed and supervised at some level." Indeed, it no stretch to say that a Special Counsel delegated authority for a specific matter subject to substantive Department policies and removable at will by the Acting Attorney General is subordinate even if the original grant of authority allowed the Special Counsel to approve expansion of his own jurisdiction. Nevertheless, the defendant presses the argument that *Edmond* controls the outcome in this case and requires the finding that the Special Counsel is not an inferior officer.

One strand of the defendant's argument is a matter of semantics over substance. The defendant argues that the Acting Attorney General's December 30th letter appointing the Special Counsel, which states that the delegated authority is "independent of the supervision or control of any officer of the Department," compels the conclusion that the Special Counsel is not an inferior officer. Def. Mot. at 4, 10. However, the use of the term "supervision" in the appointment letter does not necessarily mean the same as "directed and supervised at some level" for purposes of the Appointments Clause. The Appointments Clause cases concerning special prosecutors look to removability, limited duties, limited jurisdiction, and limited tenure to determine if an inferior officer is "directed and supervised at some level."

31

An analysis of those factors reveals whether a special prosecutor is sufficiently subordinate to be an inferior officer. The use of the term "supervision" in the December 30th letter, or any of the other phrases describing the delegation to which the defendant points (*see* Def. Mot. at 4-5) surely do not resolve the Appointments Clause question.[11]

The other strand of defendant's argument is based on a reading of *Edmond* that is untenable and unwise. The defendant's interpretation of *Edmond* is that the four-factor *Morrison* analysis no longer determines whether a special prosecutor is an inferior officer. Under the defendant's reading, "directed and supervised at some level" does not describe the Office of Independent Counsel upheld in *Morrison*, but rather it constitutes a new test for inferior officer status that the Independent Counsel law could not have met. The defendant contends that the Court's use in *Edmond* of the phrase "directed and supervised at some level" requires what the defendant terms "meaningful supervision." Def. Mot. at 10, 20. As argued above, the *Edmond* decision gave no explicit indication that it was disapproving the analysis or the result in *Morrison*. In addition, the defendant's approach to the Appointments Clause would be fraught with difficulty. Under the defendant's "meaningful supervision" test, the power to remove an officer to whom authority is delegated and the limits placed on the delegation would not be sufficient to establish inferior status. Instead, some unknown degree of active oversight and monitoring by the principal officer would be required, opening

---

[11] Similarly, the Department of Justice's decision to fund the Office of Special Counsel from the permanent indefinite appropriation does not affect his status as an inferior officer. See Def. Mot.13, Ex. G.

the door to Appointments Clause challenges not only to special prosecutors but to delegations by the Attorney General of cases to prosecutors in the normal chain of command. This Court should reject the defendant's reading of *Edmond.*

The delegation of authority to the Special Counsel is in conformity with the Appointments Clause.

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that this Court deny the defendant's motion to dismiss the indictment.

Respectfully submitted,


_____/s/_____

PATRICK J. FITZGERALD
Special Counsel

JAMES P. FLEISSNER
DEBRA RIGGS BONAMICI
KATHLEEN M. KEDIAN
*Deputy Special Counsels*

Office of the United States Attorney
Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300


Dated:   March 17, 2006.

33

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 17th day of March, 2006, I caused true and

correct copies of the foregoing to be served on the following parties by electronic mail:

William Jeffress, Esq.
Baker Botts
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Facsimile: 202-585-1087

Theodore V. Wells, Esq.
Paul Weiss
1285 Avenue of the Americas
New York, NY 10019-6064
Facsimile: 212-373-2217

Joseph A. Tate, Esq.
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793
Facsimile: 215-994-2222

John D. Cline, Esq.
Jones Day
555 California Street
San Francisco, CA 94104
Facsimile: 415-875-5700

Patrick J. Fitzgerald
Special Counsel
U.S. Department of Justice
10th & Constitution Ave., NW
Washington, D.C.  20530
202-514-1187

By: _____/s/_____

Kathleen M. Kedian
Deputy Special Counsel