UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,        )
                                 )
        v.                       )   CR. NO. 05-394 (RBW)
                                 )
I. LEWIS LIBBY,                  )
                                 )
        Defendant.               )
_____)

### DECLARATION OF MARILYN A. DORN
### INFORMATION REVIEW OFFICER
### CENTRAL INTELLIGENCE AGENCY

I, MARILYN A. DORN, hereby declare and state:

1. I am the Information Review Officer (IRO) for the National Clandestine Service (NCS) of the Central Intelligence Agency (CIA). My duties and responsibilities are described in my 2 March 2006 declaration, which I hereby incorporate by reference.

2. I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

#### Purpose of This Declaration

3. In its 10 March 2006 order (Order), the Court ordered the Government to produce to the defendant "either (1) redacted versions of the documents provided to the

defendant during his morning intelligence briefing that were also viewed by the Vice President or (2) topic overviews of the subject matter contained in those documents." The Court further ordered the Government to produce to the defendant "a topic index of any inquiries reflecting additional information the defendant requested during his morning intelligence briefing." The Court specified that the production being ordered by the Court shall be limited to the following time periods: 7 June - 14 July 2003; 12-16 October 2003; 24-28 November 2003; 3-7 March 2004; and 22-26 March 2004. Finally, the Court ordered that if either the White House or the CIA deems it appropriate to assert any privilege with regarding to these documents, such a motion asserting privilege shall be filed by 24 March 2006.

4. Upon issuance of the Order, the CIA[1] promptly consulted with the Executive Office of the President (EOP) to determine whether the EOP intended to assert a claim of privilege over the responsive documents. It was immediately apparent, however, that the EOP would not be in

---

[1] The Director of National Intelligence is now the principal adviser to the President on intelligence matters relating to the national security, and since 2005, the Office of the Director of National Intelligence (ODNI) is responsible for oversight of the PDB process. Because the materials responsive to the Order pre-date the establishment of the ODNI and remain in the custody of the CIA, I refer only to the CIA throughout this declaration. I note, however, that the ODNI is assisting in the review and production of the materials responsive to the Order.

a position to make a document-by-document determination with respect to privilege until it had reviewed the responsive documents and the CIA's proposed redactions or topic overviews. Since the entry of the Court's Order, the CIA has been able to retrieve only a small sample of responsive documents. Based upon its review of the sample, the EOP determined that the sample contains Presidential communications that clearly are protected by the Executive privilege, and that the remainder of responsive documents also probably contains similarly privileged communications.

5. Faced with the CIA's inability to retrieve all of the responsive documents by the 24 March 2006 deadline for claiming privilege, the EOP must choose between making a blanket assertion of Executive privilege for all responsive documents or seeking an extension of time to permit it to assert privilege on a document-by-document basis. Notwithstanding the applicability of privilege, the CIA and the EOP have determined that there is a reasonable prospect that--through the use of redactions and topic overviews and with sufficient time--the Government will be able to avoid a blanket assertion of privilege and instead be able to satisfy the defense's discovery request by making a minimal number of assertions of Executive privilege, if any, on a document-by-document basis.

3

6. Based upon the time required to retrieve and review the sample, the CIA estimates that it will take twelve weeks to retrieve, assemble, review, and redact or create topic overviews of all of the responsive documents, consult with the EOP, produce the documents to the defendant, and assert any claims of privilege. The purpose of this declaration is to describe for the Court the basis of the CIA's estimate.

### Time Required to Comply with the Court's Order

7. For the reasons described in my 2 March 2006 declaration, the CIA is unable to retrieve--much less review and redact or create topic overviews of--all of the responsive documents by the 24 March 2006 deadline for claiming privilege, even for the restricted dates specified in the Court's Order. In the short time permitted since the Order, the CIA has been able to retrieve only a sample of the documents provided to the defendant for six days (one week) of his morning intelligence briefings.

8. After retrieving this sample of the materials responsive to the Order, the CIA has concluded that it requires two experienced intelligence analysts working full-time for one week to retrieve six days (one week) of responsive documents. Therefore, to retrieve responsive

4

documents for all fifty-six days (or approximately nine weeks), I estimate that it will take two full-time experienced intelligence analysts nine weeks. Taking into account the time required to review, redact or create topic overviews of the documents and consult with the EOP, I estimate that the CIA will require twelve weeks to produce the documents to the defendant. The CIA cannot devote more than two full-time analysts for twelve weeks to the task of researching the responsive materials, due to the staffing limitations described in this declaration and the pressing need to prepare and distribute the President's Daily Briefing (PDB) materials for each day's intelligence briefing. Every resource that the CIA devotes to this single discovery demand diverts resources from the preparation of each day's PDB, and therefore detracts from the ability to provide the most senior leaders of our government with critical intelligence information necessary to preserve the national security in a time of war.

9. The materials that relate to Mr. Libby's morning intelligence briefings and are responsive to the Order are not centrally located in one file or database. Nor are all of these materials located in one office within the CIA. Rather, because of their different authors and sensitivities, different materials are maintained in

5

different offices, requiring the PDB staff to research their locations individually.

10. In order to locate the materials responsive to the Order, the CIA must first retrieve the briefing report submitted by Mr. Libby's briefer for each date specified in the Order. The briefing report for each date contains a shorthand description of or the citations to the documents provided to Mr. Libby on that date. The CIA must then research where each document is stored. If the items provided to Mr. Libby include a copy of the President's briefing, or items that were provided in the President's briefing, such items can be located by retrieving the President's PDB for that date. Other documents listed on Mr. Libby's daily briefing report, including intelligence reports, memoranda, intelligence cables or other communications, charts and matrices, and open-source or press articles, must be individually researched and located within the CIA office or other agency that provided it for inclusion in the PDB.

11. The briefing report also contains inquiries from Mr. Libby that were received in relation to his morning intelligence briefing and transmitted by the PDB briefers to the CIA for further research and analysis. In some cases, the topic of the inquiry is not clear from the text

and can only be determined or understood by locating the underlying document on which Mr. Libby was briefed. In such cases, the CIA may be required to undertake additional research to locate such documents.

12. Staffing and compartmentation issues further complicate the process of working with materials relating to the PDB. The information provided to the President and his senior advisors in the PDB is the most sensitive, highly classified, and compartmented intelligence information in the possession of the United States Government. Because the information involved is so highly classified and compartmented, the CIA cannot simply increase the number of people assigned to the task of retrieving and reviewing the materials responsive to the Order. Rather, the task of retrieving, assembling, reviewing, and redacting or creating topic overviews of the materials in question will have to be undertaken by individuals who are cleared for access to the materials: the same staff that is responsible for producing the PDB each day.

13. In addition to requiring specialized security clearances, retrieving the materials responsive to the Order requires familiarity with the briefing reports and specialized databases that must be used to perform the

necessary research. Also required is familiarity with the types of documents and materials included in the PDB, as well as the CIA offices and other agencies that provide materials for inclusion in the PDB. As explained above, the materials must be identified and retrieved from the originating CIA offices or other agencies.

14. The small staff that prepares the PDB lacks surplus personnel resources. The number of staff members is purposely limited, both for security reasons and because a larger staff is not typically required in order to produce the daily intelligence briefing. While this staff will use its best efforts to retrieve and assemble the materials responsive to the Order, these efforts will necessarily be limited by the small size of the staff and the need to continue preparing the PDB each day for the President and his most senior advisers.

15. In order to determine whether to assert privilege, including Executive privilege, with regard to the materials responsive to the Order, the CIA and the EOP must consider both the original form of the responsive documents and the proposed redactions or topic overviews that would be produced to the defense. Moreover, the documents must be considered in total, rather than in a piecemeal fashion, because it is often impossible to assess

the importance of a single piece of information, or the impact of its release, except by looking at it in the context of the universe of information to be disclosed. The true significance or the overall sensitivity of certain pieces of information, or even of the absence of certain information, may be evident only in the context of patterns that appear over periods of days, weeks or months. Such patterns may be easily overlooked, or impossible to discern altogether, when materials are reviewed individually or in the context of short time periods.

### Clarification of the Court's Order

16. The Court ordered the CIA to produce to the defendant either redacted versions of the documents or topic overviews of the subject matter of the documents provided to the defendant during his morning intelligence briefing that were _also_ viewed by the Vice President. I understand that the Court may have used the word "also" to indicate that the Court was referring primarily to the morning intelligence briefings that the CIA provided to the Vice President and Mr. Libby on the five out of six days of the week that they typically received the briefings together. However, determining what documents were _also_ provided to the Vice President would require the CIA to

9

retrieve not only Mr. Libby's morning intelligence briefings, but also to retrieve the Vice President's morning intelligence briefings, and then to compare the two to eliminate documents that were briefed to one, but not both. While the CIA maintains a complete file copy of the PDB materials provided to the President on any given day, no similar file is maintained for any other official who also receives a morning intelligence briefing. Therefore, in order to locate the materials provided to the Vice President, the CIA would have to undertake the same process of research as required to locate Mr. Libby's materials. The CIA respectfully suggests that the defendant will receive more information and receive it sooner if the CIA produces to the defendant the redacted versions of the documents or the topic overviews for Mr. Libby's morning intelligence briefings, without regard to whether the Vice President also received the same documents. The CIA's twelve-week estimate is based upon the assumption that the Court will approve the production of materials that were provided to the defendant, without regard to whether the Vice President also received or reviewed the same materials.

17. In addition to Executive privilege, the overwhelming majority of responsive documents contain

classified information that is privileged from disclosure under Executive Order 12958, as amended. I understand that the Court's Order is asking the CIA to produce the documents to the defense as part of classified discovery in this case. Therefore, without prejudice to the Government's position in subsequent proceedings in the case regarding the use, relevance, and admissibility of such classified information under the Classified Information Procedures Act (CIPA), 18 U.S.C. Appendix III, the CIA will not at this time make a blanket assertion of privilege for classified information with respect to materials responsive to the Order.

18. In addition, although not specified in the Order, it is the CIA's assumption that the materials to be produced pursuant to the Order will be treated as stipulated by the defendant in Section I.D.4. of the 7 March 2006 Response of I. Lewis Libby to March 2, 2006 CIA Declaration and Court's Order dated 27 February 2006. Specifically, the CIA expects that any documents that the CIA produces to the defense will be produced for examination only at the SCIF; access to the documents will be restricted to the defendant, Messrs. Wells, Jeffress, and Cline, and Ms. Maxwell; and the defense will be barred from copying the documents.

19. Finally, in light of the above, I understand that the CIA's production to the Office of Special Counsel or the defendant of the limited information in the manner prescribed in the Court's Order does not operate as a waiver of, and is without prejudice to, any claim of privilege, including Executive privilege, that the Government may assert with respect to the disclosure of such information in subsequent proceedings in this case, including public disclosure at trial or to any third parties.

20. I understand that the Court is rightfully concerned about resolving this matter without protracted litigation regarding the scope of privilege. The CIA and the EOP share the Court's concern. If the understandings set forth in the foregoing paragraphs 16-19 of this declaration are correct, then in the interest of expediting the resolution of this matter, it may be possible to produce materials to the defense and assert any claim of privilege over the responsive materials for the period 7 June - 14 July 2003, on a document-by-document basis, within eight weeks, and to produce materials and assert any claim of privilege over the materials relating to all of the remaining dates within twelve weeks. Production in this manner may be feasible due to the temporal separation

of the 7 June - 14 July 2003 period from the remaining periods of time. Due to this temporal separation, the CIA may be able to assess the significance and sensitivity of the 7 June - 14 July 2003 materials as a discrete compilation, and similarly may be able to assess the significance and sensitivity of the materials relating to all of the remaining time periods as a second discrete compilation. I note that the production cannot be further subdivided without encountering the issues described in paragraph 15 above; namely, that information must be reviewed in context, with attention to the appearance of patterns over time, in order to assess its true significance and sensitivity and the impact of its release in any form.

21. If my understandings are mistaken and the Court takes another position regarding the assertion of privilege, I respectfully request that the Court clarify its Order so that the CIA and the EOP can determine whether to assert any claims of privilege at this time.

## Conclusion

22. For all of the foregoing reasons, I respectfully request that the Court grant the Government's Motion for

13

Clarification and to Adjust Schedule for Asserting Privilege.

\* \* \*

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of March, 2006.

*[signature]*

Marilyn A. Dorn
Information Review Officer
National Clandestine Service
Central Intelligence Agency