## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | <u>Oral Argument Requested</u> |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THIRD MOTION OF
## I. LEWIS LIBBY TO COMPEL DISCOVERY

Theodore V. Wells, Jr.
James L. Brochin
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Tel.:  (212) 373-3089
Fax:  (212) 492-0089

William H. Jeffress, Jr.
Alex J. Bourelly
Baker Botts LLP
1299 Pennsylvania Ave., NW
Washington, DC  20004
Tel.:  (202) 639-7751
Fax:  (202) 585-1087

Joseph A. Tate
Dechert LLP
2929 Arch Street
Cira Centre
Philadelphia, PA  19104
Tel:  (215) 994-2350
Fax: (215) 994-2222

John D. Cline
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax: (415) 875-5700

April 12, 2006

TABLE OF CONTENTS

PAGE

INTRODUCTION ....................................................................................................1

ARGUMENT..........................................................................................................3

I.     The Jencks Act Does Not Apply to the Materials Sought by This Motion ........................3

II.    Documents Relating to Mr. Wilson's Trip to Niger Are Material to the
       Preparation of the Defense ..................................................................................6

       A.     The Government's General Arguments To Restrict Discovery Are
              Unavailing ...........................................................................................7

       B.     The Government Has Failed to Counter the Core Arguments in Mr.
              Libby's Moving Brief ............................................................................8

              1.     The Defense Is Entitled to Documents Necessary To Prepare To
                     Examine Witnesses .....................................................................9

              2.     The Defense Is Entitled to Documents that Will Establish the
                     Proper Context in which To View the Events Described in the
                     Indictment ...............................................................................16

              3.     The Defense Is Entitled to Documents that Will Help Establish that
                     Mr. Libby Had No Motive To Lie ...............................................19

III.   Whether Other Agencies Are Aligned With the Prosecution Is Not At Issue In
       This Motion....................................................................................................22

IV.    The CIA Referral Documents Are Material to the Preparation of the Defense ................23

CONCLUSION.....................................................................................................26

<u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**CASES**

*In re Sealed Case*, 856 F.2d 268 (D.C. Cir. 1988)............................................................25

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)..........................................................25

*United States* v. *Lloyd*, 992 F.2d 348 (D.C. Cir. 1993)...................................................11

*United States* v. *Marshall*, 132 F.3d 63 (D.C. Cir. 1998)...............................................11

*United States* v. *Poindexter*, 727 F. Supp. 1470 (D.D.C. 1989).........................................2

*United States* v. *Safavian*, 233 F.R.D. 12 (D.D.C. 2005)....................................10-11, 19

*United States* v. *Thomas*, 97 F.3d 1499 (D.C. Cir. 1996)..................................................4

**STATUTES**

18 U.S.C.A. § 3500 ..........................................................................................................4

Fed. R. Crim. P. 6(e) .......................................................................................................9

Fed. R. Crim. P. 16...................................................................................................*passim*

Defendant I. Lewis Libby, through his counsel, respectfully submits this memorandum in reply to the Government's Response to Defendant's Third Motion to Compel Discovery ("Gov't Br.").

## INTRODUCTION

It is a fundamental tenet of our criminal justice system that as of this moment the government has proven nothing about its case against Mr. Libby. The broad, expansive factual allegations outlined in the indictment are just that – allegations and nothing more. It is necessary to restate these fundamental ideas because, in an effort to deny defendant necessary discovery, the government ignores them. Instead, it proceeds from the flawed premise that the defense must accept the government's version of the facts in crafting its discovery demands. From there, it leaps to the unreasonable conclusion that the defense is not entitled to documents that will assist it in contesting the allegations in the indictment.

But, of course, the opposite is true: the defense has the right to challenge at trial all of the allegations in the indictment. The discovery materials sought by this motion include documents generated, received, or reviewed by key potential trial witnesses about events the government describes in the indictment. These are precisely the documents that will allow the defense to demonstrate to the jury that the government's view of this case is not accurate.

One example illustrates our point. The indictment alleges that in June 2003, Under Secretary of State Marc Grossman told Mr. Libby that Mr. Wilson's wife worked at the CIA. The government assumes that Mr. Grossman's testimony about any such conversation, including that it took place at all, is accurate and that any further discovery concerning Mr. Grossman's knowledge of these issues is not "relevant to preparing for Mr. Grossman's examination." (Gov't Br. at 11.)

1

During his grand jury appearances, Mr. Libby testified that he did not recall any conversations with Mr. Grossman about Mr. Wilson's wife. The defense is absolutely entitled to investigate whether the conversation alleged by Mr. Grossman actually occurred and to test Mr. Grossman's memory and credibility about what he did or did not say to Mr. Libby at trial. Like every fact alleged in the indictment, the facts surrounding Mr. Grossman's alleged conversation with Mr. Libby have not yet been established – they are in dispute. There is simply no precedent for the government's view that this Court must accept the truth of the government's proffered evidence and the accuracy of its theories in determining relevance and materiality under Rule 16.

The government's cramped view of Rule 16 is at odds with both the law and fundamental principles of fairness. Rule 16 must be interpreted to provide a defendant with "the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case." *United States* v. *Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989). The defense has received nothing close to this kind of "opportunity" thus far based on the six boxes or so of materials produced by the government.

Finally, nearly all of the arguments the government raises to deny discovery to Mr. Libby amount to efforts to have it both ways. When the government is trying to narrow the scope of permissible discovery, the defense's arguments about its need to provide the jury with context are deemed "an irrelevant distraction." (Gov't Br. at 18.) Yet, when the government perceives an advantage in taking a broader view, it does not hesitate to do so. While claiming that the issues in the case are limited to what Mr. Libby said and did, the government offers an elaborate and detailed discussion of the "context" in which the events surrounding the disclosure of the 2002 National Intelligence Estimate ("NIE") took place. Far from focusing on what Mr. Libby said and did, the government's disclosure focused on the role of two other players in the

2

matter, President Bush and Vice President Cheney, setting off an avalanche of media interest.[1] In other words, the government has effectively conceded that the case extends far beyond Mr. Libby, but refuses to provide defendant with discovery that reflects that fact.

The government does not deny that it has documents in its possession that will help the defense tell the full story of how the government responded to Mr. Wilson's criticism. When the issue of Valerie Wilson's employment is viewed in its proper context, and the full story is revealed, it will be clear that Ms. Wilson's role was a peripheral issue. If the press stories surrounding the government's NIE disclosure illustrate anything, it is that this case is factually complex and that the government's notion that it involves only Mr. Libby and the OVP is a fairy tale. The Court should order the government to turn over what are clearly material documents so that the defense can get on with the work of preparing for trial.

<u>ARGUMENT</u>

**I.    The Jencks Act Does Not Apply to the Materials Sought by This Motion**

As this Court has previously ruled in this case, the starting point for determining what documents are material to the preparation of the defense under Rule 16 is the indictment. That document "delineates the evidence to which the defendant's case must respond."

---

[1]   Perhaps not surprisingly, given the media's overwhelming interest in this case, an erroneous statement in the government's response brief led to stories in the press that falsely accused Mr. Libby of making inaccurate statements – or even lying – to reporter Judith Miller about the contents of the NIE. (*See, e.g.,* Walter Pincus, *Specter Says Bush, Cheney Should Explain Leak*, WASHINGTON POST, April 10, 2006, at A04, attached as Ex. A.) The government has since written a letter to the Court to indicate that, consistent with his grand jury testimony, Mr. Libby did *not* tell Ms. Miller "that a key judgment of the NIE held that Iraq was 'vigorously trying to procure' uranium." (*See* Ltr. from Patrick J. Fitzgerald to Hon. Reggie B. Walton, dated April 11, 2006, attached as Ex. B.) Instead, during his testimony, Mr. Libby drew careful distinctions between the key judgments of the NIE about WMD and its section on uranium. Accordingly, there is no basis for the media reports that accused Mr. Libby of misrepresenting the key judgments of the NIE to Ms. Miller.

Memorandum Opinion dated Mar. 10, 2006 at 7-8. Further, evidence is material where there "is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* at 8. The government and the defense agree on these fundamental principles, and have stated so repeatedly in their respective briefs. However, the government persists in offering the narrowest possible application of the legal standards to its discovery obligations – an application that is incompatible with the expansive interpretation of Rule 16 adopted by the D.C. Circuit.

Perhaps in an implicit recognition that the law with respect to Rule 16 does not support its position, the government raises a series of arguments under other – inapplicable – legal principles. The government attempts to minimize the scope of its Rule 16 obligation by arguing that the "bulk" of the documents Mr. Libby seeks fall within the scope of the Jencks Act, and that requiring production of those materials now would eviscerate any limitations on Rule 16. The government, however, has never raised this argument in response to any of our discovery requests, and cites no case to support its statement that "correspondence, e-mails, and reports generated by potential witnesses *and those around them*" fall within the scope of the Jencks Act. (Gov't Br. at 8 (emphasis added).) Contrary to the government's brief, the Jencks Act certainly does not apply to statements made by persons "around" witnesses.

Further, we explicitly stated in our opening brief that the defense is not seeking true Jencks materials such as grand jury transcripts and FBI 302 reports at this time. (Third Motion of I. Lewis Libby to Compel Discovery ("Def. Mot.") at 18.) The Jencks Act governs the discovery and production only of certain statements made by government witnesses. *See* 18 U.S.C.A. § 3500(e). Ignoring the plain text of the statute, the government fails to recognize that "not everything a witness has written constitutes his 'statement' within § 3500(e)(1)." *United*

*States* v. *Thomas*, 97 F.3d 1499, 1501 (D.C. Cir. 1996). The government has not and cannot show how the routine correspondence, memoranda, and emails at issue here fall within the Jencks Act. An email Mr. Grossman received, for example, could not possibly qualify as his statement under the Act.

Moreover, even documents that do qualify as "statements made by Government witnesses" are not covered by the Act if the government does not intend to call those witnesses at trial. The government has made clear that it intends to call one witness from the State Department and two from the CIA, which even under the government's unsupportable view of the Jencks Act hardly justifies a wholesale withholding of material documents from agencies such as the State Department, the White House and the CIA.[2]

The government similarly attempts to limit its discovery obligations by drawing a distinction between potential government witnesses and potential defense witnesses. But the government cites no authority to suggest that it is not appropriate to use Rule 16 to obtain documents that relate to potential defense witnesses. More importantly, the government's focus on which party may call a potential witness as a way of assessing whether Rule 16 discovery is relevant to that witness is a red herring. As we explained in our opening brief, our discussion of how the documents we seek might be relevant to the examination of potential witnesses was a way to provide concrete examples of how documents *otherwise responsive* to our Rule 16 requests could be used to prepare our defense. The witness by witness discussion did not add a new category of requests. The government's arguments to the contrary are nothing more than an attempt to avoid its basic obligation to comply with our core discovery requests.

---

[2]  For the purposes of this motion, we use the term "White House" to refer to the Executive Office of the President, including any of its subdivisions.

**II.    Documents Relating to Mr. Wilson's Trip to Niger Are Material to the Preparation of the Defense**

The indictment puts directly at issue Mr. Wilson's trip to Niger and subsequent comment and analysis concerning the trip, including discussions about Mr. Wilson's wife and her role in selecting him for the trip. The government has previously acknowledged that "[t]he relevance of Mr. Wilson's 2002 trip is the fact that it occurred and that it *became a subject of discussion* in spring 2003." (Ltr. from Patrick Fitzgerald to William Jeffress, *et al.*, dated Jan. 23, 2006, at 2 (emphasis added), attached as Ex. C.) Reports, memoranda and other documents relating to the trip itself are relevant because the circumstances and origins of the trip are discussed in the indictment. Further, because the defense may call Mr. Wilson as a hostile witness, we need to prepare to examine him, if necessary, on the details of the trip, including his wife's role in selecting him for the assignment and the findings he reported to the CIA, and later, to the press.

In addition, the government introduced a variety of new factual issues in its response brief. Those issues included, for example, disclosures of the NIE, the role of the President in the Administration's response to Mr. Wilson's criticism, and Mr. Libby's purported fear that he would be fired for disclosing classified information.

Yet, even after injecting additional factual allegations into this case that reconfirm the defense's view that the case extends beyond Mr. Libby and the OVP, the government maintains a constricted view of its discovery obligations under Rule 16. With few exceptions, the government has refused to produce documents from agencies other than the OVP that reflect reactions of the various agencies to Mr. Wilson's criticism of the Administration. In support of its position, the government relies on three general arguments, all of which fall short of the mark.

A.    **The Government's General Arguments To Restrict Discovery Are Unavailing**

*First*, the government contends that the defense is not entitled to open file discovery. This argument and the cases cited to support it are beside the point, because the defense has not sought unlimited access to the prosecution's files. Consistent with Rule 16 and D.C. Circuit case law, we have made targeted requests for specific categories of documents.

The discovery we seek may constitute a significant number of documents, but we seriously doubt that granting this motion would be tantamount to ordering open file discovery. The government has admitted to the defense that it collected hundreds of thousands of documents. So far, the government has produced or been ordered to produce approximately 14,000 pages of classified and unclassified discovery – only about six boxes. If, for example, the government gathered a total of 200,000 pages of materials, then the defense has received less than 10 percent of the government's file. On the numbers alone, the government's document production has been exceptionally meager, and it appears even more paltry and insufficient in light of all of the complicated factual issues in this case.

*Second*, the government argues that production of the requested documents is not warranted because Mr. Libby has been charged with perjury, not other crimes. As we discussed in our opening brief, this contention ignores the expansive nature of the factual allegations in the indictment, all of which the defendant has the right to challenge.

*Third*, the government frequently contends that Mr. Libby's document requests are overbroad. Its brief is punctuated with conclusory assertions that identifying responsive documents would be unduly burdensome. But the government never explains how compliance with our targeted requests would involve any significant burden. For example, it does not estimate the number of responsive documents, the time it would take to find them, or the

resources that would need to be devoted to producing them. In fact, the government admits that many of the documents we seek are already in the possession of the OSC.

Nevertheless, to reduce any burden on the government, with respect to documents responsive to requests A(1) (which asks for documents concerning Mr. Wilson's trip and subsequent discussion of it), B(1) and B(2) (which relate to the NIE), and B(3) (which asks for documents relating to the July 11, 2003 statement by Director of Central Intelligence George Tenet), the defense will agree to limit these requests to documents that are currently in the actual possession of the OSC or which the OSC knows to exist.[3]

We emphasize that request B(1), which calls for documents relating to the declassification of the NIE, triggers the government's *Brady* obligations. At trial, the government intends to introduce testimony regarding Mr. Libby's disclosures of portions of the contents of the NIE, which appears to be a unique story. Upon hearing about these events, jurors may suspect that Mr. Libby mishandled classified information or did something else wrong when he made these disclosures – even if the government does not argue that Mr. Libby's actions were unauthorized or illegal. The defense has the right to argue at trial that Mr. Libby's actions with respect to the NIE were authorized at the highest levels of the Executive Branch, and would be entitled to bolster such arguments with documents and testimony.

**B.     The Government Has Failed to Counter the Core Arguments in Mr. Libby's Moving Brief**

Our moving brief set forth three reasons why documents from government agencies other than the OVP pertaining to Mr. Wilson's trip that the prosecution has refused to

---

[3]     In the event it turns out that the OSC has not sought these documents from other relevant agencies, we reserve the right to renew our request and ask that the OSC obtain them.

produce are material to the defense.  Below, we describe how the government's brief distorts all three of these positions and elaborate on why the requested documents are material.

1.    The Defense Is Entitled to Documents Necessary To Prepare To Examine Witnesses

To reiterate the document request at the heart of this motion, we seek documents that concern Mr. Wilson's trip to Niger, including reports about the origin and circumstances of the trip, as well as subsequent comment and analysis concerning the trip, such as discussions of the role played by Ms. Wilson and reactions of Administration officials to Mr. Wilson's attacks. The defense is entitled to all such documents from each government agency that has played a significant role in the case:  the White House, the State Department and the CIA.  At a minimum, we are entitled to documents concerning Mr. Wilson's trip to Niger that were generated, sent or received by officials from these agencies who are likely to testify at trial, so we can prepare to examine them.

The government argues that it does not have to produce documents concerning certain government officials who are "subjects of the ongoing grand jury investigation or 'innocent accused' whose identities are protected from disclosure by Fed. Crim. P. 6(e)."  (Gov't Br. at 26.)  But Rule 16 makes no exception for documents covered by the secrecy requirements of Rule 6(e).  Significantly, the government has cited no case supporting its claim that an ongoing grand jury investigation allows the government to deny an indicted defendant access to documents that are material to the preparation of his defense.  Mr. Libby has a firm trial date, and the prosecution has no right to resist providing Rule 16 discovery on the grounds that the investigation is continuing.

On page seven of its brief, in a section addressing Mr. Libby's requests for documents concerning potential trial witnesses, the government identifies two specific categories of documents in the possession of the OSC that it has refused to produce:

- "[D]ocuments related to Mr. Wilson's trip" from agencies other than the OVP that the government deems "irrelevant to defendant's knowledge or communications regarding Mr. Wilson, Ms. Wilson, or Mr. Wilson's trip to Niger"; and

- Certain documents that could be "characterized as reflecting a possible attempt or plan to discredit or punish Mr. Wilson or Ms. Wilson." (*Id.* at 7.)

With respect to the first category of documents, the key disagreement between the government and the defense is whether Rule 16 authorizes the production of documents even if they do not "relat[e] to conversations, correspondence, or meetings involving [Mr. Libby] in which Mr. Wilson's trip was discussed." (*Id.*) The government's refusal to produce the requested documents is unwarranted because the materiality prong of Rule 16 requires only that a document be helpful for trial preparation, not that it must have been seen by the defendant, as opposed to another witness, to be discoverable.

Significantly, the arguments the government relies on here were resoundingly rejected in another perjury case in this jurisdiction, *United States* v. *Safavian*, 233 F.R.D. 12 (D.D.C. 2005). In *Safavian,* the defendant sought, pursuant to Rule 16, the production of email messages sent or received by other witnesses, which he had never personally seen. The government opposed Mr. Safavian's requests on the ground that because he had never seen these documents they could have "no bearing on his state of mind" when he made the allegedly false statements and thus could not be "material to any conceivable defense." *Id.* at 18. In rejecting the government's narrow view of discovery, the court held that documents that do not "directly reflect" the defendant's state of mind may be material to the preparation of a defense to perjury

charges if they "include information helpful to the defendant in finding witnesses or documents that could support his contention."  *Id.*

In this case, Mr. Libby's need for documents that he may not have seen is exactly the same.  The requested documents may, among other things, corroborate Mr. Libby's grand jury testimony and illuminate potential witness biases.  The documents may also permit Mr. Libby to avoid certain "pitfalls" at trial, which is another purpose of Rule 16 discovery.  *See United States* v. *Marshall*, 132 F.3d 63, 67-68 (D.C. Cir. 1998) (evidence must be disclosed pursuant to Rule 16 if it helps the defense prepare to avoid "potential pitfalls" and "minefield[s]" at trial).

*United States* v. *Lloyd*, 992 F.2d 348 (D.C. Cir. 1993), is also particularly instructive here.  In that case, the D.C. Circuit ordered the government to produce documents pursuant to Rule 16 that the defendant had not generated or reviewed so the defense could evaluate the credibility and conduct of the government's witnesses.  The defendant, Lloyd, a tax preparer, had been charged with preparing false tax returns for numerous individuals.  The defense requested that the government produce tax returns of the government's taxpayer witnesses for years prior to when those witnesses had engaged Lloyd's services.  *Id.* at 349-350. The Court of Appeals ruled that such tax returns were material under Rule 16 because "a similar treatment of a similar issue in a prior year, as to which the indicted tax preparer had played no role, would tend to suggest that the falsity originated with the taxpayer rather than the preparer," and also held that such a return could be "a promising tool for impeachment."  *Id.* at 351.

*Lloyd* demonstrates that the government is wrong to claim that "the state of mind of other individuals is of negligible value" to the defense and that the "conduct of others" is not relevant.  (Gov't Br. at 18.)  Moreover, what the government describes as attempts by the

11

defense to put the conduct and state of mind of others on trial are in reality efforts by the defense to investigate whether the allegations in the indictment are accurate. In a case where the jury will be asked to decide whose memory is accurate and whose statements are not trustworthy, it is perfectly appropriate to use Rule 16 to gather evidence that will tend to suggest that the testimony of certain government witnesses about their conversations with Mr. Libby is not believable. The materiality of such documents is not tied to whether the documents were reviewed by Mr. Libby or whether they describe meetings or conversations in which he took part.

Below, we provide further examples of why the documents we seek are necessary to prepare to examine three particular witnesses – Mr. Grossman, Mr. Fleischer, and Mr. Rove.

Marc Grossman. As discussed in the introduction, the government plans to call Under Secretary Grossman to testify that he discussed Ms. Wilson's CIA employment with Mr. Libby – a conversation that Mr. Libby testified in the grand jury he did not recall and which may not have occurred as alleged in the indictment. For example, the indictment asserts that this conversation occurred "[o]n or about June 11 or 12, 2003." (Indictment, Count One, at ¶ 6.) Accordingly, Mr. Grossman's activities in that time period, including any other communications about Ms. Wilson that he may have had, are highly relevant. If, for example, documents indicate that Mr. Grossman confused details of the conversation alleged in the indictment with a conversation with another government official, the defense will use such documents to suggest that his recollection is faulty. In a case where it is already manifest that the memories of many witnesses conflict regarding many different conversations, it is not fair to foreclose the possibility that witnesses other than Mr. Libby may be confused or mistaken about relevant events.

It is unreasonable for the government to contend that because Mr. Grossman's "testimony will not be offered to prove the truth of the matter asserted," it is irrelevant whether his statements are substantively true. (Gov't Br. at 11.) Regardless of the government's limited offer, the defense has a constitutional right to attempt to demonstrate, if it so chooses, that the substance of Mr. Grossman's testimony is incorrect, and that all of his testimony should be rejected, including his allegation that he spoke to Mr. Libby about Ms. Wilson on a particular day. The best way to do that would be to show that some part or all of Mr. Grossman's statements were substantively untrue.

The government responds to the defense contention that bias on the part of Mr. Grossman deserves to be explored by stating that "loyalty to Mr. Armitage or to the State Department" would not cause Mr. Grossman to "invent conversations . . . and testify to them under oath." (*Id.* at 14.) Whether the government's statement on this point is true is for the jury to decide, and there is certainly nothing unusual about a defendant arguing that the personal and professional allegiances of a witness may result in false or distorted testimony.

Finally, by arguing that Mr. Grossman's credibility is beyond challenge, the government has once again staked out two hopelessly inconsistent positions. The government asserts that Mr. Libby was motivated to lie under oath to avoid causing "great embarrassment to the administration." (*Id.* at 26.) Yet, at the same time, the government also argues that the defense should not have the opportunity to determine whether Mr. Grossman might be motivated to testify in a manner that would prevent embarrassment to the State Department.

Ari Fleischer. The government states that it intends to call former White House press secretary Ari Fleischer to testify about a conversation with Mr. Libby, during which

Ms. Wilson's identity was allegedly discussed.[4]  Again, as with Mr. Grossman, the defense has

the right to challenge this allegation and investigate when and how Mr. Fleischer learned of

Ms. Wilson's employment.  The government has admitted that "multiple officials in the White

House discussed her employment with reporters prior to (and after) July 14," and the defense has

the right to explore whether any of these other officials may also have discussed Ms. Wilson

with Mr. Fleischer.  (*Id.* at 30, n.10.)  In addition, Mr. Fleischer may have learned about Ms.

Wilson's identity from someone at the State Department or the CIA.  The defense therefore

needs access to any documents discussing Mr. Wilson, his wife, or his trip to Niger that may be

found in the White House or at other agencies.  Such documents are needed to investigate

properly when and how Mr. Fleischer learned that Ms. Wilson worked for the CIA and when and

with whom (other than Mr. Libby) he discussed that fact.

           In our moving brief, the defense pointed to an even more specific reason to

scrutinize the government's proffered version of Mr. Fleischer's testimony.  Press accounts

suggest that Mr. Fleischer may have learned about Ms. Wilson during his trip to Africa after

seeing it in a classified report sent to Mr. Powell on Air Force One and then disclosed this

information to reporters.  Yet, the government claims that nothing further is required for Mr.

Fleischer's cross-examination than "a copy of the report in question."  (*Id.* at 12.)  In so arguing,

the government is once again attempting to dictate which defenses may be raised and which

allegations in the indictment may be challenged.  Nothing in Rule 16 or the case law of this

Circuit suggests that the defense should be limited to cross-examining Mr. Fleischer with only

the one report that the government deigns to disclose.

---

[4]    Further reasons why documents pertaining to Mr. Fleischer are material to the defense are set
       forth in the sealed Declaration of Theodore V. Wells, Jr., dated April 12, 2006.

The government's contention that the report is all the defense needs to cross-examine Mr. Fleischer is unpersuasive. Other documents, totally unrelated to the report, may show that Mr. Fleischer learned about Ms. Wilson from someone other than Mr. Libby. Also, the substance of the report is not as important as what Mr. Fleischer did with or said about the report. That information is likely reflected in correspondence, notes, or e-mails in Mr. Fleischer's files, not in the report itself. After reviewing such documents, the defense will be better equipped to examine Mr. Fleischer about whether he saw the report on Air Force One, whether he recognized that it contained classified information, and whether he communicated its contents to anyone else.

Finally, the defense also seeks documents that will shed light on the Administration's response to criticism from Mr. Wilson. The government questioned Mr. Libby about this topic at length in the grand jury, and it put it at issue in the indictment and with its proposed use of the NIE. As the White House press secretary, Mr. Fleischer likely played a key role in orchestrating and implementing the Administration's strategy for rebutting Mr. Wilson's claims. Documents from his files – or from anywhere in the White House – that relate to this subject must be produced pursuant to Rule 16.

Karl Rove. Senior White House advisor Karl Rove figures prominently in the government's indictment. He allegedly spoke both to Mr. Novak and Mr. Libby about Ms. Wilson's affiliation with the CIA. Accordingly, the government's statement that it does not presently intend to call Mr. Rove does not diminish his importance in this case.

The defense is likely to call Mr. Rove to provide testimony regarding Mr. Libby's conversations with Mr. Rove concerning reporters' inquiries about Ms. Wilson, as expressly discussed in the indictment. (Indictment, Count One, at ¶ 21.) Documents from Mr. Rove's files

about the subjects outlined in the indictment are discoverable pursuant to Rule 16 because without them the defense cannot effectively prepare for Mr. Rove's examination. As discussed above, Rule 16 compels disclosure of such documents even if Mr. Rove remains a subject of a continuing grand jury investigation.

> 2.    The Defense Is Entitled to Documents that Will Establish the Proper Context in which To View the Events Described in the Indictment

Our moving brief explained that the prosecution chose to write a wide-ranging indictment. The indictment describes in detail the media controversy over the sixteen words in the President's 2003 State of the Union address, refers to the contents of five newspaper and magazine articles, and portrays the actions of nine witnesses from various offices of the Executive Branch, including the White House, the State Department, and the CIA. Because the indictment's narrative exaggerates the attention that government officials paid to Ms. Wilson's identity prior to July 14, 2003, it is essential for the defense to correct the government's distorted version of events.

The defense intends to show the jury that the controversy over intelligence failures during the spring and summer of 2003 led certain officials within the White House, the State Department, and the CIA to point fingers at each other. This bureaucratic infighting provides necessary context for the testimony of witnesses from different government agencies. In addition, Mr. Libby plans to demonstrate that the indictment is wrong when it suggests that he and other government officials viewed Ms. Wilson's role in sending her husband to Africa as important. We need the requested documents to prepare this crucial aspect of his defense.

The government, in one of the many instances in which it asks the Court to accept the prosecution's view of the case as a basis to deny discovery to the defense, provides a lengthy and highly misleading version of the evidence regarding the importance that Mr. Libby attached

16

to Ms. Wilson's CIA employment in June and July 2003.  (Gov't Br. at 18-21.)  The government

pretends that Mr. Wilson's wife was a part of the response Mr. Libby was instructed to make to

Mr. Wilson's false claims, and even argues that "[d]isclosing the belief that Mr. Wilson's wife

sent him on the Niger trip was one way for defendant to contradict the assertion that the Vice

President had done so . . ."  (*Id.* at 19.)  In fact, as the government is well aware,

contemporaneous documents reflect the points that Mr. Libby was to make to reporters, and

these documents *do not include any information about Wilson's wife*.  Further, the government's

theory ignores the fact that neither the indictment nor the evidence supports the notion that Mr.

Libby told any reporter that "Mr. Wilson's wife sent him on the Niger trip."  The only reference

to such an idea in the indictment is the allegation in paragraph 23 that Matthew Cooper *asked*

*Mr. Libby* on July 12, 2003 whether he had heard that Wilson's wife was involved in sending

him on the trip, and Libby said "he had heard this information too."

      The government's argument that Mr. Libby attached importance to "the

controversy about Mr. Wilson and/or his wife" (*id.* at 20) cleverly masks the fact that the

evidence on which this argument relies – *e.g.*, the involvement of the President and Vice-

President, the declassification of the NIE, the Vice President's direction that Mr. Libby speak to

the press, the rarity of "on the record" statements by Mr. Libby – *has nothing whatsoever to do*

*with Mr. Wilson's wife*.  Mr. Libby must be in a position at trial to show the jury that, consistent

with his grand jury testimony, he responded in good faith *on the merits* to Mr. Wilson's

allegations, instead of seeking to question his allegiances or motives.  For that reason it is vital

that Mr. Libby obtain discovery of the truth regarding Mr. Wilson's allegations, including all

communications by him with the CIA, the State Department, or anyone else concerning those

allegations.

The government's brief suggests that only the OVP's response to Mr. Wilson is relevant to the charges in the indictment.  But efforts of Mr. Libby and other officials in the OVP to deflate criticism of the Administration cannot be neatly separated from the actions of officials from other agencies – particularly the CIA, the White House, and the State Department.  For example, Mr. Libby worked with the CIA and the NSC to determine how to respond to the controversy over the sixteen words.  The indictment itself refers to Mr. Libby's alleged concerns about how the CIA was responding to the controversy.  The indictment also describes actions by officials at the White House, including senior advisor Karl Rove and former press secretary Ari Fleischer, who both spoke to reporters about Mr. Wilson.  Now, with the government's injection of the NIE story into this case, the government has placed even more emphatically at issue the actions of the White House – including President Bush – in responding to media criticism about the 16 words.

In light of the involvement of high-level officials from these other agencies in responding to Mr. Wilson's attacks on the Administration, the government cannot meet its discovery obligations by focusing solely on the OVP.  Moreover, if documents that pertain to the Administration's media strategy for addressing Mr. Wilson's charges do not mention his wife, the defense will inform the jury of this fact.  If, on the other hand, Mr. Wilson's wife was indeed mentioned in such documents, pursuant to Rule 16 the defense has the right to discover such information and prepare to avoid it or explain it at trial.

In response to these arguments, the government turns its back on its expansive indictment, and argues that the broader factual context the defense intends to develop at trial is irrelevant because Mr. Libby faces only obstruction charges.  These arguments are belied by the sweeping factual background information included in the indictment.  Further, it is telling that in

its response, the government does not dispute that its indictment encompasses issues far removed from the three conversations with reporters about which Mr. Libby allegedly lied. Instead, the government argues that Mr. Libby is improperly trying to place the state of mind and conduct of others at issue. The government maintains that only Mr. Libby's state of mind is relevant, and argues that documents that Mr. Libby has not seen cannot provide useful context. (*Id.* at 18.)

By switching the topic to issues of state of mind and the conduct of others (which we discussed in subsection II(B)(1) above), the government fails to address our arguments about context on the merits. The government has effectively conceded the importance of context, but it refuses to provide the defense with the documents we need to correct the distorted picture found in the indictment. Rule 16 and basic principles of fairness require that Mr. Libby be granted the documents he needs to show the jury the true and complete story.

3.    The Defense Is Entitled to Documents that Will Help Establish that Mr. Libby Had No Motive To Lie

In our moving brief, the defense explained that we intend to demonstrate at trial that Mr. Libby had no motive to lie by showing that he did not participate in a campaign to harm Mr. Wilson and did not cover up efforts by others to do so. The government responds that Mr. Libby has not been charged with conspiracy-based offenses. This is true, but beside the point. Jurors understand that people lie to cover up their own misdeeds or the wrongdoing of others. Mr. Libby is entitled to show jurors that neither motive explains his conduct, which will help them realize that any misstatements he made are in fact innocent mistakes. Again, the government is improperly attempting to dictate what defenses are appropriate to present to a jury. *See Safavian*, 233 F.R.D. at 15 (the government may not "put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation").

A key government witness, Matthew Cooper, and another potential witness, Mr. Wilson, have both contended that Mr. Libby participated in a smear campaign organized by the White House to punish Mr. Wilson by outing his wife as a CIA agent. This idea has also been expressed in news articles that were used as grand jury exhibits and that the government may intend to introduce as trial exhibits.[5] The government asserts that documents exist that could be characterized as demonstrating that the White House planned to punish Mr. Wilson, and that the plan involved talking to reporters about Mr. Wilson's wife. (Gov't Br. at 29-30.) However, the government says that although it has divulged some of those documents to the defense, it is currently withholding others. Rule 16 entitles the defense to *all* such documents. On this critical issue, the defense needs to know everything the government knows, to avoid getting blindsided with unexpected testimony about such a plot at trial.

Further, in its response, the government articulates for the first time its own theory of Mr. Libby's purported motive to lie. According to the government, Mr. Libby made false statements and committed perjury because he knew "there would be great embarrassment to the administration if it became publicly known that [he] had participated in disseminating information about Ms. Wilson's CIA employment," and because he "would have had every reason to assume he would be fired if his true actions became known." (*Id.* at 26.)

In its response, the government also tells the story regarding the NIE for the first time. The government asserts that the President through the Vice President authorized the disclosure of certain portions of the NIE by Mr. Libby to a reporter. According to the

---

[5]    Mike Allen and Dana Priest, *Bush Administration Is Focus of Inquiry*, WASHINGTON POST, Sept. 28, 2003 at A01, attached as Ex. D; Allen and Priest, *Probe Focuses on Month Before Leak to Reporters; FBI Agents Tracing Linkage of Envoy to CIA Operative*, WASHINGTON POST, Oct. 12, 2003, attached as Ex. E. *See also* Matthew Cooper, *A War on Wilson*, Time.com, July 17, 2003, attached as Ex. F.

government, these events were "unique in [Mr. Libby's] recollection." (*Id*. at 20.) Yet, after stating that the highest officials in the Executive Branch took unusual steps to counter Mr. Wilson's criticism, the prosecution argues that information about such events can be used only to further its *own* arguments regarding Mr. Libby's state of mind and that any additional discovery on these issues is irrelevant. Once again, the prosecution is trying to have it both ways. The government's discussion of the NIE indicates that at trial all aspects of the government's response to Mr. Wilson will be relevant – including any actions taken by the President.[6]

To prepare to address the government's arguments about motive and the NIE at trial, the defense needs additional documents. In particular, the defense needs documents from all the relevant agencies, including the White House, State Department, and CIA that relate to the Administration's strategies for countering Mr. Wilson's criticism. Based on the government's articulated motive theory, the defense is also entitled to investigate the Administration's response to the leak, such as any alleged threats by the President to fire officials who were involved. For example, if documents indicate that notwithstanding the President's public statements about the leak investigation, Mr. Libby had no reason to fear losing his job, the defense is entitled to the production of such documents. That is the essence of Rule 16.

Finally, the government's arguments about motive further underscore that the defense is entitled to discovery about whether Ms. Wilson's employment status was classified, as the defense has requested in previous motions. The government resists disclosing information regarding the allegedly classified status of Ms. Wilson's employment, and the knowledge and understanding of others as to whether that employment was classified, on the ground that the

---

[6]    We emphasize that, consistent with his grand jury testimony, Mr. Libby does not contend that he was instructed to make any disclosures concerning Ms. Wilson by President Bush, Vice President Cheney, or anyone else.

information is not relevant to the defense. Yet, almost in the same breath, the government presents an argument on Mr. Libby's motive to lie that makes this information highly relevant and material to preparation of the defense.

The government states that it will argue Mr. Libby feared losing his job because the President "had vowed to fire anyone involved in leaking classified information" (*id*. at 28), and because Mr. Libby had requested that the White House Press Secretary say that "Libby was not the source of the Novak story. And he did not leak classified information." (*Id*.) Mr. Libby was not, of course, a source for the Novak story. And he testified to the grand jury unequivocally that he did *not* understand Ms. Wilson's employment by the CIA to be classified information. The government's argument puts squarely at issue the credibility of Mr. Libby's position that he did not leak classified information. The government surely cannot, on the one hand, contend that Mr. Libby knew he *had* revealed classified information (and thus felt in jeopardy of being fired), and on the other hand withhold from the defense information that would tend to prove her employment status was *not* classified and that others who knew of that employment had the same understanding.

## III. Whether Other Agencies Are Aligned With the Prosecution Is Not At Issue In This Motion

The government ends its brief with a plea that "the Court reconsider its holding that the OVP is 'closely aligned' with the prosecution," and further asks that the Court not rule that the White House, NSC and the State Department are similarly aligned. (*Id*. at 33.)

The government's first request is both unjustified and procedurally improper. The Court's ruling that the OVP was aligned with the prosecution was firmly grounded in the applicable case law, and the decision should stand. If the government wants to challenge the decision, then it should make a procedurally proper motion for reconsideration and allow for full

briefing on the issue.  It is inappropriate for the government to seek such relief through its

opposition brief to the defense's motion to compel discovery.

> The government's second request is moot as it relates to materials covered by this

motion.  In an effort to alleviate any burden on the government and move as swiftly as possible

to trial, the defense has agreed to limit its requests for documents to those documents which are

in the Special Counsel's possession or of which the Special Counsel has knowledge.  Therefore,

the Court need not consider the issue of alignment.

### IV.    The CIA Referral Documents Are Material to the Preparation of the Defense

> Mr. Libby has requested the CIA's criminal referral to the Department of Justice

("DOJ") and all documents referenced or relied upon in preparation of the referral (collectively,

the "referral documents").  The government resists this request on the grounds that the referral

documents bear no relationship to the perjury charges against Mr. Libby, because the author of

the referral will not be a witness and the referral does not summarize statements made by

government witnesses.  This is not the appropriate standard for assessing materiality under Rule

16.  In arguing that these documents have no relevance to perjury charges, the government once

again ignores the breadth of the indictment brought against Mr. Libby.

> The indictment alleges that Ms. Wilson's employment was classified, and that

disclosure of that fact "had the potential to damage the national security."  (Indictment, Count

One at ¶¶ 1(d), (f).)  Ms. Wilson's employment status and any damage caused by the disclosure

of her identity are thus directly at issue in this case, and the referral documents are a uniquely

valuable source of information about both of these subjects.

> As we argue above, a key component of Mr. Libby's defense is that he had no

motive to lie to either the FBI or the grand jury because he had no reason to believe, before July

14, 2003, that Ms. Wilson's employment status was classified.  In spite of its importance to the

case, the government has provided the defense no evidence of this purported fact.  Based on

published news reports, it appears that the referral documents address this very issue.  (*See* Def.

Mot. at 32.)

   The referral documents are likewise material to defense counsel's ability to

prepare for the examination of any CIA official who may offer testimony in support of the

indictment's allegations regarding Ms. Wilson's employment status or harm to national security.

To the extent that the CIA's documents suggest that the DOJ hesitated to begin its investigation

of the disclosure of Ms. Wilson's identity, and that hesitancy was related to the DOJ's

uncertainty that any crime had been committed based on the information provided by the CIA,

the defense should have the opportunity to use such information to prepare to cross-examine CIA

witnesses at trial.

   Moreover, the referral documents are relevant to understanding any bias on the

part of the CIA as an institution, which may manifest itself in the testimony of CIA witnesses at

trial.  CIA officials have been openly critical of the OVP – and indeed, according to the

indictment, Mr. Libby was critical of the CIA as well.  In that context, agency and witness bias

are a legitimate concern for the defense.  And, to the extent that Director Tenet was involved in

the creation of the referral documents, or actively pushed the DOJ to investigate the disclosure of

Ms. Wilson's identity, the referral documents would show that the bias against Mr. Libby

reached to the highest levels of the CIA and did not simply represent the complaints of lower-

ranking employees.  Further, Mr. Tenet is a likely witness.  If he was personally involved in the

referral process, then the referral documents would be important for preparing to examine him on

the issue of bias. To prepare for trial effectively, the defense must have the opportunity to explore all of these issues further.

At the very least, the referral documents should be provided to the Court for an *in camera* review to determine if Mr. Libby has sufficiently established his need for the documents and overcome the qualified privileges asserted by the government. *See In re Sealed Case*, 856 F.2d 268, 272-273 (D.C. Cir. 1988); *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). Should the Court determine that the documents are in fact privileged, we respectfully request that the Court make specific findings on this point, which would make the reviewed documents and findings part of the official record and permit appropriate appellate review, if necessary.

<u>CONCLUSION</u>

For the reasons stated herein, and in our Third Motion to Compel Discovery, the requests for disclosure of documents and information should be granted.

April 12, 2006                                    Respectfully submitted,


/s/ Theodore V. Wells, Jr.                    /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                        William H. Jeffress, Jr.
(DC Bar No. 468934)                           (DC Bar No. 041152)
James L. Brochin                              Alex J. Bourelly
(DC Bar No. 455456)                           (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                 Baker Botts LLP
  & Garrison LLP                              1299 Pennsylvania Ave., NW
1285 Avenue of the Americas                   Washington, DC  20004
New York, NY  10019-6064                      Tel.:  (202) 639-7751
Tel.:  (212) 373-3089                         Fax:  (202) 585-1087
Fax:  (212) 492-0089


/s/ Joseph A. Tate                            /s/ John D. Cline
Joseph A. Tate                                John D. Cline
Dechert LLP                                   (D.C. Bar No. 403824)
2929 Arch Street                              Jones Day
Cira Centre                                   555 California Street, 26th Floor
Philadelphia, PA  19104                       San Francisco, CA  94104
Tel:  (215) 994-2350                          Tel:  (415) 626-3939
Fax: (215) 994-2222                           Fax: (415) 875-5700