UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. No. 05-394 (RBW) |
| v. | ) | |
| | ) | |
| I. LEWIS LIBBY, | ) | |
|     also known as "Scooter Libby" | ) | |

**MOTION FOR CLARIFICATION OF THE OPINION OF APRIL 5, 2006
CONCERNING *EX PARTE* SUBMISSIONS UNDER CIPA SECTION 4,
OR IN THE ALTERNATIVE, MOTION FOR RECONSIDERATION**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, SPECIAL COUNSEL, respectfully moves for clarification of this Court's Opinion of April 5, 2006 (the Opinion), which sets forth a procedure for submitting filings under Section 4 of the Classified Information Procedures Act (CIPA), 18 U.S.C. Appdx. III (2000). Although the Opinion provided a detailed analysis, out of an abundance of caution the government respectfully seeks this clarification so that it does not misconstrue the Opinion and so that the government can comply with the Court's intent. Of paramount importance to the government is its ability to invoke, in limited situations, a procedure to present a statement or document *ex parte* to this Court where the government believes the information is not discoverable and even the act of disclosing the specific nature or existence of the information would risk a harm to national security, a violation of grand jury secrecy, or a breach of some other rule of privilege or secrecy. We believe that the Court's Opinion allows for the possibility of such a procedure under Federal Rule of Criminal Procedure 16(d), but this motion seeks clarification with respect to that issue. In the alternative, if the Opinion did not leave open that option, the government respectfully

1

moves for reconsideration so that the procedure remains available in limited, appropriate circumstances. In further support of this motion, the government states as follows.

## BACKGROUND

*February 27, 2006 Ruling on Ex Parte Rule 16 Filings*

On February 16, 2006, the government filed a consolidated response to the defendant's Rule 16 and *Brady* motions to compel discovery that the defendant had filed by that date. Government's Consolidated Response to Defense Motions to Compel Discovery (Docket No. 36). In support of the Consolidated Response, the government contemporaneously filed an affidavit describing materials produced to, and withheld from, the defendant during discovery. The affidavit was filed *ex parte* and under seal because it contained extensive references to grand jury material, and described information relating to "innocent accused" persons who were subjects of the grand jury investigation but not charged. *See* Consol. Resp. at 9 n.1, 11-14. After the defendant questioned the need to file the entirety of the affidavit *ex parte*, on February 21, 2006, this Court allowed for some portions to remain *ex parte* but also ordered that the government submit a redacted affidavit disclosing the portions of the affidavit that "discuss and provide a description of the information and documents that have been provided to the defendant by the Special Counsel." Order of 2/21/06 (Docket No. 38). On February 22, 2006, the Special Counsel's redacted affidavit was provided to the defendant and the Court.

On February 24, 2006, this Court held a status hearing in the case, and the defendant's counsel complained during the hearing about the prior *ex parte* filing and the submission of argument *ex parte*. 2/24/06 Tr. 39, 40. In considering the defendant's request, the Court expressed its concern over *ex parte* filings, but also observed that the unattractive alternative

would be for the government to make unilateral decisions that information was not discoverable rather than err on the side of caution by seeking a ruling from the Court:

> I am always troubled by having to consider information *ex parte*. However, if the government is of the view that something is not discoverable which is what I understand their position is in reference to what they submitted that you are challenging, the only other option then is to, because it is a government obligation, is to again shut down the flow to me. Tell them not to do it. You make the call. Don't give it to me and, therefore, the decision that you make is final because Rule 16 is their obligation. If they're not going to give it to me, and they make it one of their own, I mean I'm happy to get it out of the picture. (2/24/06 Tr. 40).

* * *

> I think you know counsel obviously have to be circumspect in what is submitted to the court *ex parte*. But on the other hand, it seems to me that *if I am going to play a role in making judgment calls where the government questions whether information is discoverable or not* and they want to submit that to me for my evaluation[] and when we are talking about something that is foreign to the court that the government is obviously in a better position to explain what it is, [then] it seems to me it is appropriate for the government to do that, mindful of the obligation of trying to have an open proceeding . . . . (2/24/06 Tr. 42) (emphasis added).

* * *

> So I would obviously caution counsel to make sure that when things are submitted to me *ex parte*, that there is good cause to do that but I am not prepared to rule that the government can't in the future make such submissions to me. Otherwise, it seems to me *I do put the case in the posture where the government is independently making its decision as to whether it has an obligation under Rule 16* or otherwise to produce and I guess that becomes final until the case ultimately would be reviewed on appeal and I don't want to proceed in that manner. So I understand your concerns but I would deny that request. (2/24/06 Tr. 43) (emphasis added).

The Court denied the defendant's request in a written order on February 27, 2006. Order of 2/27/06 (Docket No. 52).

### *Opinion Regarding Ex Parte Filings under CIPA 4*

After the February 24 hearing, the defendant turned from Rule 16 *ex parte* filings to CIPA § 4 filings, and moved to "bar ex parte submissions under CIPA § 4 without a

particularized showing of exceptional circumstances." Def.'s Mot. (Docket No. 51). The defendant sought a blanket order forbidding the United States from proceeding *ex parte* under CIPA § 4 without first demonstrating particularized exceptional circumstances. Neither party discussed an issue that seems central to the April 5, 2006 Opinion, that is, whether CIPA § 4 applies *only* to classified information that has *already* been determined to be discoverable. Mem. Op. at 6.

Specifically, the Opinion reasoned that, "[b]y its terms, Section 4 applies only after it has been determined that documents are discoverable" or after "the government decides to produce information contained in classified documents even though it is under no legal obligation to produce the information." Mem. Op. at 6. Thus, the Opinion continued, CIPA § 4 applies only after the information has been deemed discoverable and the threshold question of materiality has been made in favor of disclosure. *Id.* The Opinion stated that "questions of materiality must be litigated in a separate adversarial setting, just as the Court did when addressing the defendant's first two motions to compel." *Id.* With regard to CIPA § 4 filings, the Opinion (and the accompanying order) directed that the government not present materiality arguments in *ex parte* Section 4 filings and required that the government file an affidavit with any *ex parte* Section 4 filing justifying the *ex parte* procedure, but otherwise declined to prohibit *ex* parte Section 4 filings or to prohibit the government from including written justifications for proposed substitutions or redactions. *Id.* at 7, 10-11. The Opinion also authorized the defendant to present an *ex parte* affidavit detailing his defense for the purpose of assisting the Court in evaluating the propriety of a proposed redaction or substitution. *Id.* at 11-12.

# ARGUMENT

## I.   Rule 16 Authorizes the Government To Proceed *Ex Parte* Where Appropriate.

When the government seeks the court's authority to withhold classified information from discovery, it typically moves *ex parte* pursuant to CIPA § 4 and Rule 16(d)(1) of the Federal Rules of Criminal Procedure. While the government respectfully disagrees with the Opinion's view that CIPA § 4 is not triggered until classified information is deemed discoverable, we seek to clarify that there remains a mechanism by which to present to the Court *ex parte* the issue of whether information is discoverable in the first instance. In particular, where the act of disclosing the specific nature or even the existence of information would present a risk of harm to national security, violate grand jury secrecy, or would breach some other rule of privilege or secrecy, and where the government does not believe the information is discoverable, it is extremely important to the government that it be able to seek the Court's ruling on discoverability rather than make the unilateral decision that the information is not discoverable. As the Court recognized at the February 24, 2006 motions hearing, to cut off the government's ability to present the threshold discoverability question to the Court would compel the government to choose between two unattractive choices: either disclose to the defendant sufficient details about the information to hold discoverability arguments "in an adversarial setting" and thereby incur the very harms that the government seeks to avoid, or instead avoid those harms by withholding the nature and existence of the classified information from the Court and the defendant and suffer the consequences should this unilateral decision later be found to be in error. *See* 2/24/06 Tr. 40 ("the only other option then is to, because it is a government obligation, is to again shut down the flow to me. . . . Don't give it to me and, therefore, the decision that you make is final because Rule 16 is their obligation); *id.* at 42 ("if I am going to

play a role in making judgment calls where the government questions whether information is discoverable or not and they want to submit that to me for my evaluations and when we are talking about something that is foreign to the court that the government is obviously in a better position to explain what it is, [then] it seems to me it is appropriate for the government to do that"); *id.* at 43 ("Otherwise, it seems to me I do put the case in the posture where the government is independently making its decision as to whether it has an obligation under Rule 16 or otherwise to produce and I guess that becomes final").

To avoid misconstruing the Court's order, the government wishes to clarify that the Court's Opinion and Order of April 5, 2006 leave open the possibility, in the limited circumstances described above, of an *ex parte* presentation under Federal Rule of Criminal Procedure 16(d)(1) to determine the discoverability of information in the first instance. Rule 16(d)(1) expressly authorizes the Court to permit the government to show "good cause" for denying discovery or inspection, or for granting other appropriate relief, by an *ex parte* written statement of reasons:

> **Protective and Modifying Orders.** At any time the court may, *for good cause*, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. *The court may permit a party to show good cause by a written statement that the court will inspect ex parte.* If relief is granted, the court must preserve the entire text of the party's statement under seal.

Fed. R. Crim. P. 16(d)(1) (emphases added). In light of this explicit authorization to present an *ex parte* written statement of reasons to show good cause, courts have repeatedly evaluated the discoverability of information based on the government's *ex parte* presentation under Rule 16(d) where the defendant does not know the specific nature of the evidence proposed to be withheld. *E.g.*, *United States v. Carmichael*, 232 F.3d 510, 517-18 (6th Cir. 2000) (no error where prosecutor informed the court *ex parte* that a cooperating witness had been intercepted in an

6

ongoing wiretap); *United States v. Felt*, 491 F.Supp. 179, 184 (D.D.C. 1979) (adopting, pursuant to Rule 16(d)(1), *ex parte* procedure to evaluate relevancy and materiality of classified documents, and to determine whether documents contained *Brady* information); *United States v. Pelton*, 578 F.2d 701, 706 (8th Cir. 1978) (describing procedure in which district court received an *ex parte* presentation by the government under Rule 16(d)(1) to determine if recordings contained exculpatory information); *United States v. Lamont*, 565 F.2d 212, 219 (2d Cir. 1977) (describing procedure in which district court examined an *ex parte* application by the government under Rule 16(d)(1) "in evaluating the possible usefulness" of an exhibit's contents); *see also United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003) (government's *ex parte* submission under both CIPA § 4 and Rule 16 reviewed for materiality); *United States v. Yunis*, 867 F.2d 617, 619 (D.C. Cir. 1989) (same). In short, there is nothing unusual about invoking Rule 16(d)(1) to permit an *ex parte* government submission discussing whether information is even discoverable in the first instance.[1]

One hypothetical example that illustrates the propriety of such an *ex parte* presentation was offered at the February 24, 2006 motions hearing in which the Court denied the defendant's request to bar future *ex parte* Rule 16 filings. *See* 2/24/06 Tr. 41. It is not uncommon for the government to have intercepted the communications of a defendant in more than one wiretap investigation, but the investigations are separate and the intercepted calls in one are not necessarily relevant to the other. The government could, but would rather not, make the

---

[1] There may well be instances when the Court does not need a written statement because no argument about discoverability is necessary. These situations may arise, for example, if the Court is intimately familiar with the material the government seeks to withhold, or the material is obviously irrelevant. In many situations, however, the government can provide helpful argument to the court regarding discoverability. The government's present motion for clarification is aimed at this latter situation.

unilateral decision that the recorded statements of the defendant in the still-covert investigation are not relevant, Fed. R. Crim. P. 16(a)(1)(B), to the defendant's prosecution arising from the other investigation. If the government were not able to offer the Court an *ex parte* presentation in which the government discussed the discoverability of the statements recorded in the covert investigation, then the government would have to disclose the nature of the information it sought to withhold, thus risking the disclosure of the ongoing and still-covert investigation. *See Carmichael*, 232 F.3d at 517-18.

Ultimately, what the government seeks is to clarify that it is not precluded from making *ex parte* arguments about the discoverability of information in those situations where disclosing the information's specific nature or existence would risk a harm to national security, a violation of grand jury secrecy, or a breach of some other rule of privilege or secrecy. The authorization to proceed this way is grounded in Rule 16(d)(1), prior cases applying the rule, and this Court's ruling from the February 24, 2006 motions hearing. The availability of such a procedure is critical,[2] though the government would invoke it only in limited circumstances. The government of course will be cautious in invoking this type of *ex parte* presentation, *see* Mem. Op. at 6 n.7 (noting that the government has not attempted to make materiality arguments in its § 4 filing in this case), and would certainly include in any such presentation a detailed explanation to the

---

[2]The availability of such a procedure is critical even where the defendant was a former national security official and defense counsel have security clearances: the entire purpose of the classification system is to keep to a bare minimum the number of persons who know the information so as to prevent intentional, reckless, or even inadvertent disclosure. *E.g.*, *Felt*, 491 F. Supp. at 183-84 (adopting *ex parte* procedure even though defendants argued that they were former FBI officials who had previously viewed much of the requested material); *United States v. Kampiles*, 609 F.2d 1233, 1248 (7th Cir. 1979) (approving *ex parte* procedure even though defendant was a former CIA employee).

Court why the government believes it must proceed *ex parte*, thus making it possible for the Court to determine whether the government is justified in proceeding *ex parte*.

## II. If the Opinion Was Intended to Preclude All *Ex Parte* Argument Regarding Discoverability, Then the Government Moves for Reconsideration.

If the government has misread the Opinion, and it indeed precludes all *ex parte* argument concerning the discoverability of information, then the government respectfully seeks reconsideration. According to such a reading, issues of materiality under CIPA must be litigated in a separate adversarial proceeding, in advance of submitting classified information to the Court under CIPA § 4. That interpretation of CIPA § 4 would reflect an unnecessarily restrictive reading of the text of CIPA § 4; would be at odds with the legislative history and purpose of the statute; and would conflict with long-standing precedent and established national practice.

### *Statutory Text*

To be sure, it has previously gone unnoticed in other cases that a portion of the text of CIPA § 4 could justify reading that section to apply only after the documents at issue are deemed discoverable. As the Opinion explains, § 4 does speak in terms of "delet[ing]" information from documents "to be made available to the defendant through discovery." Mem. Op. at 6.

However, we respectfully disagree with an interpretation of CIPA § 4 that would preclude all *ex parte* argument concerning the discoverability of classified information. Section 4 is entitled "Discovery of classified information by defendants." The text does not specifically suggest the necessity of a bifurcated proceeding under which questions of discoverability under Rule 16 must be resolved in an adversarial setting and in advance of invoking CIPA § 4. Indeed, the statute expressly permits the government to request the court's approval to "delete" classified information from discovery to be made available to the defense, which is another way of

9

denying discovery altogether. Furthermore, it makes better sense to read CIPA § 4 to cover discoverability in the first instance because, with regard to many items of classified information, it would be difficult for a court to entertain argument from the defense on the question of the materiality of the information in dispute without compromising that very information if its specific nature is disclosed to the defendant. The deletion of classified information from discovery, as contemplated by CIPA § 4, is almost always intertwined with the materiality of the information. *See, e.g., United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998) (stating that "[t]he district court's substitution decisions turned on the relevance of the facts contained in the discoverable documents"). Unless the court hears from the government, which has the initial responsibility to protect classified information and upon whom the discovery obligation rests, the court will have little or no basis other than the classified information itself on which to predicate its discovery ruling. The practical, unintended effect of such a construction of CIPA § 4, therefore, would be to often deprive the Court of a detailed basis on which to make an informed decision.

      In addition, interpreting CIPA § 4 so that its protections do not apply to the threshold question of discoverability but do apply to the proposed deletion of discovery would create a situation that Congress did not likely intend. The government would not have Section 4 protections where it was questionable that the information was discoverable at all, and yet could invoke Section 4 when the information was discoverable (that is, relevant and material) but the government sought to delete the information from discovery. This unusual result of precluding threshold discoverability arguments from Section 4 does not comport with the intent of CIPA.

### *The Legislative History Supports that Congress Intended for the Government to Submit Materiality Arguments Ex Parte Under CIPA Section 4*

CIPA establishes a comprehensive roadmap for resolving issues concerning the disclosure of classified information at all stages of litigation. *See United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002) ("CIPA's plain terms evidence Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial. Any other interpretation would be wholly inconsistent with and threaten to undermine CIPA's fundamental purpose"). The purpose of CIPA is to permit the government in advance of trial to assess the costs of going forward with the prosecution as measured by the possible disclosure of classified information. *See United States v. Collins*, 720 F.2d 1195, 1197 (11th Cir. 1983) (CIPA's "purpose appears to be straightforward and clear. It is to provide procedures under which the government may be made aware, prior to trial, of the classified information, if any, which will be compromised by the prosecution.").

It is not surprising, therefore, that the legislative history of CIPA makes clear that Congress did not intend to preclude the government from making *ex parte* materiality arguments during the Section 4 process, and the legislative history does not express any intent to render CIPA less protective than Rule 16. Rather, Section 4 was intended to incorporate, and add to, the widely used procedures of Rule 16(d)(1), which have been interpreted to allow the government to file *ex parte* submissions regarding discoverability. When CIPA was under consideration by Congress in 1980, the Senate and the House of Representatives conferred on the bill and chose to adopt the Senate's version of Section 4. *See* H.R. Conf. Rep. 1436, 96th Cong., 2d Sess., *reprinted in* 1980 U.S. Code & Cong. News 4307, 4308. The legislative history of the Senate version shows that CIPA § 4 was intended to incorporate the procedures of Rule

16(d)(1). As the Senate Judiciary Committee Report on CIPA states: "[w]hen pertaining to discovery materials, this provision [Section 4] should be viewed as clarifying the court's powers under Federal Rule of Criminal Procedure 16(d)(1)." S. Rep. 823, 96th Cong., 2d Sess. 6, *reprinted in* 1980 U.S. Code & Cong. News 4299-4300. Congress adopted Section 4 because it believed that courts had been "reluctant to use their authority" under Rule 16 to deny, restrict, or defer discovery for national security reasons. *Id.* Thus, CIPA Section 4 was intended to "clarify" and confirm the authority of district courts under Rule 16 by creating a procedural mechanism to authorize deletions from classified documents, the substitution of unclassified summaries or the admission of relevant facts – something Rule 16(d)(1) did not explicitly address. Additionally, it is just as important, if not more so, to have the protections of CIPA available to the government when litigating the question of discoverability of classified information in the first instance than it is when litigating subsequent questions such as the adequacy of substitutions. *See* CIPA § 7(a) (providing for government right of interlocutory appeal), § 7(b) (requiring delay in trial until after prompt disposition of interlocutory appeal).

Given that Congress intended CIPA § 4 to incorporate and confirm the authority of Rule 16(d)(1), it is not surprising that, aside from the power to authorize deletions, substitutions and summaries, that section generally tracks the structure of Rule 16(d)(1). Like Rule 16(d)(1)'s requirement of "good cause," CIPA § 4 requires a "sufficient showing" before discovery can be restricted. In addition, both Section 4 and Rule 16(d)(1) allow the court to permit the government to file a "written statement" that the court will review *ex parte*. CIPA § 4 adopted Rule 16(d)(1)'s sufficient showing requirement and written statement because Congress envisioned that materiality determinations would be made under § 4 in the same manner as they had been made under Rule 16(d)(1).

Likewise, the District of Columbia Circuit has explained that CIPA § 4 should be read in conjunction with its legislative history and the Federal Rules of Criminal Procedure. This is because CIPA § 4 "contemplates an application of the general law of discovery in criminal cases to the classified information area." *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989). As a result, "[i]t is against the background of general discovery rules and specific limitations designed to protect classified information that the District Court and now this Court must determine the availability" of classified information to the defendant. *Id.* at 622. It is clear that this Court must interpret CIPA § 4 by looking at both the legislative history and the relevant Rules of Criminal Procedure, namely, Rule 16(d)(1).

Lastly, nothing in CIPA requires that there be a separate, adversarial litigation on materiality outside the protections of CIPA. The absence of such a process – in an otherwise comprehensive piece of legislation that details many specific procedures – strongly suggests that Congress intended no such litigation to exist. In fact, adversarial litigation on materiality would generally defeat the very purpose of CIPA. As explained previously, CIPA does not seek to protect the disclosure of classified information only after materiality is litigated in an adversarial setting between the parties. Rather, CIPA seeks to protect the disclosure of classified information at all stages of litigation. *See O'Hara*, 301 F.3d at 568. Typically a defendant could not make pertinent materiality arguments to the Court without knowing at least some details about the nature of the information at issue. Yet a disclosure of the specific nature or the existence of classified information can be just as profound as a disclosure of the contents of the information itself – which is the precise reason the government seeks to obtain the court's approval to withhold the information in the first instance. *See CIA v. Sims*, 471 U.S. 159, 175 (1985) ("The government has a compelling interest in protecting both the secrecy of information

important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service."); *Yunis*, 867 F.2d at 623 (stating that "much of the government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all"). Congress could not have intended to create such a loophole in this important piece of legislation.

### *Precedent Permits the Government to Address Issues of Materiality Ex Parte under CIPA § 4*

In addition to legislative history, the District of Columbia Circuit has assumed that CIPA § 4 permits the government to present materiality arguments *ex parte* in order to determine whether classified information was discoverable. In *Rezaq*, prior to trial, the government "identified a number of arguably discoverable classified materials, and obtained permission from the district court to file an *ex parte*, *in camera* motion for a protective order." 134 F.3d at 1142. The district court ordered the government to explain, *ex parte*, why the documents were not discoverable: "the district court ordered the United States to prepare an index listing the contents of each document, whether it believed the document to be subject to discovery, and why. This document, too, was submitted *ex parte* and *in camera*; the district court subjected this document to detailed review, and prepared a list of the materials that it considered discoverable." *Id.* All of this occurred under CIPA, and the court of appeals did not question the propriety of proceeding under CIPA to determine discoverability. *Id.*; *see also Yunis*, 867 F.2d at 620-21, 624 (government made several *ex parte* filings under CIPA § 4 and Rule 16(d)(1), which were also reviewed by the court of appeals).

Other courts have similarly held that it is proper for the government to make *ex parte* materiality arguments under CIPA § 4. *See United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003) (affirming district court's *ex parte*, *in camera* review of government's motion under CIPA Section 4 to preclude discovery of classified documents because such documents "were not material, and the government had no obligation to disclose them"); *O'Hara*, 301 F.3d at 567-68 (affirming district court's *ex parte*, *in camera* review of government's motion under CIPA Section 4 in which classified information was deemed not material); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) (holding that *ex parte*, *in camera* filings and hearings under CIPA § 4 are appropriate "if the court has questions about the confidential nature of the information or its relevancy"). For example, in *United States v. Pringle*, 751 F.2d 419 (1st Cir. 1984), the defendants sought discovery of classified information. The government moved for a protective order under CIPA Section 4 to preclude discovery. As part of the motion, the government filed *ex parte*, *in camera* submissions to the district court. The district court reviewed the submissions and held that the classified information was not discoverable because it was not relevant or helpful to the defense. The First Circuit affirmed the district court's decision, and stated that "[w]e have reviewed the classified information and agree with the district court that 'it was not relevant to the determination of the guilt or innocence of the defendants, was not helpful to the defense and was not essential to a fair determination of the cause.' The information was, therefore, properly excluded." 751 F.2d at 427-28 (citing *Brady v. Maryland,* 373 U.S. 83 (1963) and *Roviaro v. United States,* 353 U.S. 53 (1957)).

In the 25 years of CIPA's existence, the government has made, where appropriate, materiality arguments in *ex parte* submissions filed with the court under CIPA § 4 and Rule 16(d). We have found no prior case where a court ruled that it was inappropriate for the

government to make materiality arguments in an *ex parte* CIPA § 4 filing. If the Opinion was intended to preclude any mechanism by which the government could proceed *ex parte* on the issue of discoverability, the government respectfully requests this Court to reconsider the Opinion given CIPA's legislative history, the case law allowing *ex parte* materiality arguments by the government, and the longstanding practice of courts throughout the nation.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court clarify that the April 5, 2006 Opinion does not prohibit the government from making materiality arguments in *ex parte* written submissions pursuant to Rule 16(d), particularly when the act of disclosing the specific nature or existence of the information would risk a harm to national security, a violation of grand jury secrecy, or a breach of some other rule of privilege or secrecy. In the alternative, the government seeks reconsideration of the Opinion and Order.

Respectfully submitted,

PATRICK J. FITZGERALD
Special Counsel

_____/s /_____
Patrick J. Fitzgerald
219 South Dearborn Street
Chicago, Illinios 60604
(312) 353-5300

Date: April 17, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. NO 05-394 (RBW) |
| v. | ) | |
| | ) | UNDER SEAL |
| I. LEWIS LIBBY, | ) | |
|    also known as "Scooter Libby" | ) | |

## ORDER

Upon consideration of the government's Motion for Clarification of the Opinion of April 5, 2006 Concerning Ex Parte Submissions Under CIPA Section 4, or in the Alternative, Motion for Reconsideration, it is hereby ORDERED that:

The government may file *ex parte* submissions in limited circumstances to seek a ruling on discoverability, subject to the Court's review of whether such an ex parte procedure is appropriate on a filing-by-filing basis.

Dated: _____                   _____
                                                                                           HON. REGGIE B. WALTON
                                                                                          UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 17th day of April, 2006, I caused true and correct copies of the foregoing motion and proposed order to be served on the following parties by electronic mail:

> William Jeffress, Esq.
> Baker Botts
> The Warner
> 1299 Pennsylvania Avenue, N.W.
> Washington, DC 20004-2400
> Facsimile: 202-585-1087
>
> Theodore V. Wells, Esq.
> Paul Weiss
> 1285 Avenue of the Americas
> New York, NY 10019-6064
> Facsimile: 212-373-2217
>
> Joseph A. Tate, Esq.
> Dechert LLP
> 4000 Bell Atlantic Tower
> 1717 Arch Street
> Philadelphia, PA 19103-2793
> Facsimile: 215-994-2222
>
> John D. Cline, Esq.
> Jones Day
> 555 California Street
> San Francisco, CA 94104
> Facsimile: 415-875-5700

          Patrick J. Fitzgerald
          Special Counsel
          U.S. Department of Justice
          1400 New York Ave., N.W.
          Washington, D.C.  20530
          202-514-1187

          By: _____/s/_____
           Debra Riggs Bonamici
           Deputy Special Counsel