UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

APR 2 7 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION

Currently before the Court is the Motion of I. Lewis Libby to Dismiss the Indictment ("Def.'s Mot.").[1] The defendant's motion claims that the indictment should be dismissed because it "was obtained, approved and signed by an official—Special Counsel Patrick J. Fitzgerald—who was appointed and exercised his powers in violation of the Appointments Clause of the Constitution and applicable federal statutes." Def.'s Mot. at 1. For the reasons that follow, the defendant's motion is denied.

### I.   Background

In September 2003, the Department of Justice authorized the Federal Bureau of Investigation ("FBI") to commence a criminal investigation into the possible unauthorized disclosure of classified information—Valerie Plame Wilson's affiliation with the Central Intelligence Agency ("CIA")—to several journalists. Indictment at 8, ¶ 25. Initially, the

---

[1] The following papers have been submitted to the Court in connection with this motion: (1) Motion of I. Lewis Libby to Dismiss the Indictment and Memorandum in Support Thereof ("Def.'s Mem."); (2) the Government's Response to Defendant's Motion to Dismiss the Indictment ("Gov't's Opp'n"); and the (3) Reply Memorandum of Law in Support of Motion of I. Lewis Libby to Dismiss the Indictment ("Def.'s Reply").

investigation was conducted by career attorneys within the Department of Justice's Criminal

Division, who reported through the Deputy Attorney General to then-Attorney General John

Ashcroft. Def.'s Mem., Ex. A at 2. On December 30, 2003, Deputy Attorney General James

Comey held a press conference at which he announced that, effective that day, the Attorney

General had recused himself from all matters involving the investigation into the possible

unauthorized disclosure of classified information. Id. at 1. Comey also announced that he would

serve as Acting Attorney General for the purposes of the investigation, pursuant to 28 U.S.C.

§ 508 (2000), and that, prior to Ashcroft's recusal, the two had agreed that a special counsel

should be appointed to oversee the investigation. Id. Comey selected Patrick J. Fitzgerald,

United States Attorney for the Northern District of Illinois, for this role. Id. 1-2. That same day,

Comey delivered the following letter to Fitzgerald:

> By the authority vested in the Attorney General by law, including 28 U.S.C.
> §§ 509, 510, and 515, and in my capacity as Acting Attorney General pursuant to
> 28 U.S.C. § 508, I hereby delegate to you all the authority of the Attorney General
> with respect to the Department's investigation into the alleged unauthorized
> disclosure of a CIA employee's identity, and I direct you to exercise that authority
> as Special Counsel independent of the supervision or control of any officer of the
> Department.

Def.'s Mem., Ex. C. A subsequent letter, dated February 6, 2004, further clarified the

authority given to Fitzgerald.

> At your request, I am writing to clarify that my December 30, 2003, delegation to
> you of "all the authority of the Attorney General with respect to the Department's
> investigation into the alleged unauthorized disclosure of a CIA employee's
> identity" is plenary and includes the authority to investigate and prosecute
> violations of any federal criminal laws related to the underlying alleged
> unauthorized disclosure, as well as federal crimes committed in the course of, and
> with intent to interfere with, your investigation, such as perjury, obstruction of
> justice, destruction of evidence, and intimidation of witnesses; to conduct appeals
> arising out of the matter being investigated and/or prosecuted; and to pursue

administrative remedies and civil sanctions (such as civil contempt) that are
within the Attorney General's authority to impose or pursue. Further, my
conferral on you of the title "Special Counsel" in this matter should not be
misunderstood to suggest that your position and authorities are defined and
limited by 28 C.F.R Part 600.

Def.'s Mem., Ex. D. As a result of this delegation of power, the Special Counsel investigated the

possible unauthorized disclosure of classified information. And, on October 28, 2005, a federal

grand jury returned a five count indictment charging the defendant with obstruction of justice in

violation of 18 U.S.C. § 1503 (2000), two counts of false statements in violation of 18 U.S.C. §

1001(a)(2) (2000), and two counts of perjury in violation of 18 U.S.C. § 1623 (2000). Indictment

at 1.

## II.   Legal Analysis

The defendant's motion to dismiss is premised on two grounds: First, that the Special

Counsel's appointment violates the Attorney General's statutory duty under Title 28 of the

United States Code to direct and supervise all litigation in which the United States is a party, and

second, that his appointment violates the Appointments Clause of the United States Constitution,

Article II, Section 2, clause 2. Def.'s Mem. at 1. It is well-settled that a Court should "avoid

deciding constitutional questions presented unless essential to proper disposition of a case."

Harmon v. Brucker, 355 U.S. 579, 581 (1958). Accordingly, the Court looks first to the

defendant's non-constitutional claim that the power delegated to the Special Counsel violates

Title 28 of the United States Code. Then, the Court will address the defendant's constitutional

challenge.

## (A)   The Defendant's Statutory Claim

The defendant alleges that the authority delegated to the Special Counsel under 28 U.S.C.

3

§§ 509, 510, and 515 to investigate and prosecute alleged violations of federal law relating to the

investigation of the potential unauthorized disclosure of classified information violates the

statutory requirements that the Attorney General supervise and direct all litigation to which the

United States is a party as mandated by 28 U.S.C. §§ 516 and 519. Def.'s Mem. at 16; Def.'s

Reply at 16. Before turning to the parties' arguments, the Court will first review the statutes at

issue.

      (1)     Statutory Background

     The applicable statutory provisions at issue in this case are codified in Chapter 31 of Title

28 of the United States Code, and include Sections 501 through 530D. Among other things,

these provisions establish the Department of Justice, provide for the nomination and appointment

of various Department of Justice officials, and establish a procedure to fill a vacancy in the office

of the Attorney General should one occur due to absence or disability. 28 U.S.C. §§ 503-508.

When a vacancy occurs due to the Attorney General's absence or disability, Section 508 provides

that "the Deputy Attorney General may exercise all the duties of that office." 28 U.S.C. § 508(a).

This Section also establishes an order of succession should the Deputy Attorney General be

unable to fulfill the duties of the Attorney General. Id. § 508(b).

     Title 28 also describes the functions and duties of the Attorney General, 28 U.S.C.

§§ 509, 511-513, and explicitly provides that "[t]he Attorney General may from time to time

make such provisions as he considers appropriate authorizing the performance by any other

officer, employee, or agency of the Department of Justice of any function of the Attorney

General." 28 U.S.C. § 510. The Attorney General may also specially appoint an officer of the

Department of Justice to "conduct any kind of legal proceeding, civil or criminal, including grand

jury proceedings and proceedings before committing magistrate judges, which United States

attorneys are authorized by law to conduct, whether or not he is a resident of the district in which

the proceeding is brought." 28 U.S.C. § 515(a). However, two provisions within Chapter 31

require the Attorney General to direct and supervise all litigation in which the United States is a

party. 28 U.S.C. §§ 516, 519. Specifically, Section 516 provides that "[e]xcept as otherwise

authorized by law, the conduct of litigation in which the United States, an agency, or officer

thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the

Department of Justice, under the direction of the Attorney General." Id. § 516. And Section 519

provides that

> [e]xcept as otherwise authorized by law, the Attorney General shall supervise all
> litigation to which the United States, an agency, or officer thereof is a party, and shall
> direct all United States attorneys, assistant United States attorneys, and special attorneys
> appointed under section 543 of this title in the discharge of their respective duties.

Id. § 519.

(2)     The Parties' Arguments

The defendant contends that the Special Counsel's appointment violates Sections 516 and

519 of Title 28, which mandate that the prosecution of criminal actions be supervised and

directed by the Attorney General. Def.'s Mem. at 26-27. To support this argument, the

defendant directs this Court to the letters from former Deputy Attorney General Comey to

Fitzgerald detailing his authority as Special Counsel. Id. These letters, the defendant opines,

establish that Comey "expressly abdicated the supervision and direction" of both the

investigation and prosecution of the matters in this case. Def.'s Mem. at 26-27. Thus, the

defendant concludes that because the Special Counsel acts without the supervision or control of

any officer of the Department of Justice, his authority is so great that it deprives the Attorney

General of his statutory obligation to direct and supervise all litigation in which the United States

is a party and thus violates Sections 516 and 519.[2]  While the defendant recognizes that Sections

516 and 519 allow for unsupervised litigation, "if otherwise provided by law," he posits that

there is no statutory exception that is applicable in this case. Id. at 28.  Moreover, the defendant

argues that Sections 510 and 515, which permit the delegation of "any function" of the Attorney

General, cannot be interpreted to permit the Attorney General to divest himself of the statutory

duty to supervise and direct all litigation in which the United States is a party.  Rather, the

defendant posits that Sections 510 and 515 should be read to permit the Attorney General to

delegate only, for example, his authority to litigate a case on behalf of the United States. Id. at

29.[3]

The government contends, however, that when Sections 508, 510, and 515 are read

collectively, it is apparent that Special Counsel Fitzgerald was properly delegated the authority

given to him. Gov't's Mem. at 17-18.  First, the government argues that under Section 510, the

Attorney General has the power to delegate "any function" of his office to another officer of the

---

[2]  The defendant's argument relies heavily on legal authority expressing the view that the Attorney General cannot delegate litigation and supervisory authority to other Executive Branch agencies under Sections 516 and 519. Def.'s Mem. at 25-29. These citations are largely inapposite as the delegation here is to another officer in the Department of Justice, not another Executive Branch agency.

[3]  The defendant also notes that 28 U.S.C. § 508 expressly provides for the appointment of an officer of the Department of Justice when the Attorney General is unable to perform his duties, but that this provision was not followed here. Def.'s Mem. at 29-30 & n. 11. Because this Court concludes that the statutory delegation of authority to the Special Counsel was proper, it need not examine this alternative argument. Moreover, the defendant observes that the Department of Justice has issued regulations for the appointment of a Special Counsel, which were also not followed in this case. Def.'s Mem. at 29-30; see 28 C.F.R. Part 600. However, there is no contention that the Deputy Attorney General was required to follow these regulations, and they are therefore of no moment.

6

Department of Justice. Id. Second, the government contends that the phrase "any function" necessarily includes the Attorney General's authority to supervise and direct litigation. Id. at 19. Accordingly, the government construes the statutes as collectively permitting the delegation of authority being challenged by the defendant. Alternatively, the Special Counsel avers that the statutes can be reconciled "by interpreting the Attorney General's delegation of functions to other officers of the Department as one manner of the exercise of his authority [to] supervise and direct litigation." Id. at 19-20.

     (3)   <u>Discussion</u>

Upon the Attorney General's recusal from participation in the investigation of the possible unauthorized disclosure of classified information, the Deputy Attorney General, pursuant to 28 U.S.C. § 508(a), was vested with all the powers of the Attorney General. The delegation of powers to the Deputy Attorney General, however, was necessarily limited to the exercise of those powers as they related to the investigation into the alleged unlawful disclosure of specific classified information, because it was only that specific investigation from which the Attorney General had recused himself. Possessing the authority of the Attorney General in this limited capacity, the Deputy Attorney General delegated to the Special Counsel, pursuant to 28 U.S.C. §§ 510 and 515, "all the Authority of the Attorney General with respect to the Department's investigation into the alleged unauthorized disclosure of a CIA employee's identity." Def.'s Mem., Ex. C. This power was subsequently clarified in another letter to Fitzgerald. Id., Ex. D. This second letter provided that the authority granted to the Special Counsel was limited to "the authority to investigate and prosecute violations of any federal criminal laws related to the underlying alleged unauthorized disclosure, as well as federal crimes

7

committed in the course of, and with the intent to interfere with, [the Special Counsel's] investigation." Id. The question this Court must resolve is whether this delegation of authority to the Special Counsel violated the statutory requirements that the Attorney General supervise and direct all litigation in which the United States is a party. This inquiry necessarily requires the Court to engage in an exercise of statutory interpretation.

"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." United States v. Goldenberg, 168 U.S. 95, 102-03 (1897). Where the statute's language is plain, and clearly evinces the intent of Congress, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie v. United States Tr., 540 U.S. 526, 534 (2004) (citation and internal quotation marks omitted). Thus, where no absurd result attends, "resort to legislative history is not appropriate in construing plain statutory language." United States ex rel. Totten v. Bombardier Corp., 380 F.3d 488, 494 (D.C. Cir. 2004) (applying Lamie, 540 U.S. at 534). Although "literal interpretation [of the statute] need not rise to the level of 'absurdity' before recourse is taken to the legislative history . . .[,] there must be evidence that Congress meant something other than what it literally said before a court can depart from plain meaning." Engine Mfrs. Ass'n v. E.P.A., 88 F.3d 1075, 1088 (D.C. Cir. 1996) (citation omitted).

Taken together, Sections 516 and 519 require that, "except as otherwise authorized by law," the Attorney General shall supervise and direct all litigation in which the United States is a party. 28 U.S.C. §§ 516, 519. Accordingly, assuming without deciding that the Attorney General has abdicated his authority under these provisions with regard to the investigation and prosecution of this case, such abdication would be improper unless authorized by some other

8

provision of law. The Court need not look far to find such a provision.

There can be no question that the plain language of 28 U.S.C. § 510 supplies the Attorney General with the authority to delegate to "any other officer, employee, or agency of the Department of Justice . . . any function of the Attorney General." 28 U.S.C.§ 510 (emphasis added). "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" United States v. Gonzales, 520 U.S. 1, 5 (1997) (citation omitted) (concluding that the phrase "any other term of imprisonment" under 18 U.S.C. § 924(c)(1) cannot be limited to only federal sentences); see Dep't of Housing and Urban Dev. v. Rucker, 535 U.S. 125, 130-31 (2002) (interpreting a statute making "any" drug-related criminal activity cause for termination of a public housing lease to dispense with the need to show that the lessee had knowledge of the activity); Brogan v. United States, 522 U.S. 398, 400-01 (1998) (holding that a statute which criminalized "any" false statement within the jurisdiction of a federal agency does not permit an exception for the mere denial of wrongdoing); United States v. Alvarez-Sanchez, 511 U.S. 350, 356-57 (1994) (concluding that a statute referencing "any" law-enforcement officer includes all federal, state or local officers who are capable of arresting for a federal crime). But see Small v. United States, 544 U.S. 385, ____ , 125 S. Ct. 1752, 1756 (2005) (concluding that a statute which prohibits a person who has been convicted in "any" court of a crime punishable by more than one year from possessing a firearm did not include foreign courts). Based on these authorities, the Court concludes that the plain language of Section 510 permits the Attorney General to delegate, as he determines appropriate, any of his functions. This result is compelled, as there is no language in Section 510 which limits the type of functions which can be delegated. Thus, the plain language of the statute permits the delegation of the

9

Attorney General's power to direct and supervise litigation, one of his statutory functions.

Accordingly, Section 510 provides an exception to Section 516's and 519's requirements that the

Attorney General direct and supervise all litigation to which the United States is a party. The

language of Section 510 is "sufficiently concrete to act as an exception to the Attorney General's

broad authority over" the supervision and direction of litigation. I.C.C. v. Southern Ry. Co., 543

F.2d 534, 539 (5th Cir. 1976). Accordingly, this Court concludes that the Deputy Attorney

General, acting on behalf of the Attorney General, was authorized under Section 510 to delegate

his authority to direct and supervise litigation over which he has responsibility and there was no

statutory violation when he did so in this case.

This conclusion comports with the District of Columbia Circuit's decision in In re Sealed

Case, 829 F.2d 50 (D.C. Cir. 1987), which concluded that the Attorney General had the statutory

authority to create the "Office of Independent Counsel: Iran/Contra," under Sections 509, 510,

and 515. As the Circuit Court observed, "[w]hile these provisions do not explicitly authorize the

Attorney General to create an Office of Independent Counsel virtually free of ongoing

supervision, we read them as accommodating the delegation at issue here." Id. at 55.

Admittedly, In re Sealed Case did not resolve the precise question presented here, which is

whether such a delegation violates Sections 516 and 519. However, as already discussed,

delegation pursuant to Section 510 provides an exception to the requirements of Sections 516

and 519. And while this interpretation gives the Special Counsel broad authority, the result is not

absurd. Rather, Section 510 provides the Attorney General substantial discretion in delegating

his functions. And this case provides the clearest example of why such broad discretion is

necessary. Here, the Attorney General believed there to be a conflict of interest based upon his

10

regular interaction with both the individuals who were being investigated and those who referred the alleged unauthorized disclosure of information for investigation. It was therefore entirely appropriate for the Attorney General to remove himself completely from the investigation, and it is certainly appropriate to give the prosecuting official broad authority to investigate and prosecute possible violations of federal law.

The defendant's concerns about interpreting the statutes in this manner are unfounded. Contrary to the defendant's argument, this Court's interpretation does not render Section 516 and 519 "a nullity." Def.'s Reply at 16. First, the delegation of authority in this case was limited to the discrete purpose of investigating and prosecuting individuals who were involved in the alleged unauthorized disclosure of classified information. There was no wholesale abdication of the Attorney General's duty to direct and supervise litigation. Moreover, there could never be a wholesale abdication of such responsibility. As discussed more fully in the following section, any delegation of authority is subject to the constitutional limits set forth in the Appointments Clause. The Court finds equally unconvincing the defendant's contention that the Court's interpretation undermines what Congress attempted to accomplish when it abolished the Office of the Independent Counsel in 1999. Def.'s Mem. at 29. Congress was well aware, long before the Independent Counsel statute expired, that Sections 510 and 515 could create such an office with substantial authority and limited oversight. In re Sealed Case, 829 F.2d at 50. Congress certainly could have acted to prevent further delegation of such authority if it had wanted to, but it did not. See, e.g., Union Bank v. Wolas, 502 U.S. 151, 158 (1991) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."); Teva Pharm., Industries v. FDA, 355 F. Supp.

11

2d 111, 118 n.7 (D.D.C. 2004) (recognizing that when Congress is aware of circumstances that could alter the interpretation of a statue but does not amend the statute, it is an indication that Congress may agree with the subsequent interpretation).

Based on the foregoing, the delegation of authority to the Special Counsel to investigate and prosecute this action, which includes the authority to direct and supervise this litigation without direction from the Attorney General, does not violate 28 U.S.C. §§ 516 and 519.

**(B)     The Defendant's Appointments Clause Challenge**

(1)     The Appointments Clause

The Court turns now to the defendant's argument that the Special Counsel's appointment violates the Appointments Clause of the Constitution. Article II, Section 2, clause 2 of the Constitution provides:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. The Appointments Clause "is more than a matter of 'etiquette or protocol'; it is among the significant structural safeguards of the constitutional scheme." Edmond v. United States, 520 U.S. 651, 659 (1997). The balance struck by the Appointments Clause "prevents congressional encroachment upon the Executive and Judicial Branches" and is "designed to assure a higher quality of appointments." Id. (citations omitted); see, e.g., 2 M. Farrand, Records of the Federal Convention of 1787, at 41-49, 80-83, 538-543, 627-28 (rev. ed.

12

1937) (describing the proper balance between the Executive and Legislative branches in the

appointment of judges and officers); The Federalist No. 76, at 506-09 (Alexander Hamilton)

(Paul L. Ford Ed., 1898) (describing the benefits of balance in the appointment power: "[Co-

operation of the Senate] would be an excellent check upon a spirit of favoritism in the President,

and would tend greatly to prevent the appointment of unfit characters from State prejudice, from

family connection, from personal attachment, or from a view to popularity."); The Federalist No.

77, at 511-12 (Alexander Hamilton) (Paul L. Ford ed., 1898) ("Those who can best estimate the

value of a steady administration will be most disposed to prize a provision which connects the

official existence of public men with the approbation or disapprobation of that body which, from

the greater permanency of its own composition, will in all probability be less subject to

inconstancy than any other member of the government.").

The Supreme Court has recognized that the final provision in the Appointments Clause

divides all its officers into two classes—principal and inferior.[4] United States v. Germaine, 99

U.S. (9 Otto) 508, 509-10 (1879). "Principal officers" are selected by the President with the

advice and consent of the Senate, while Congress may vest the appointment of "inferior officers"

in "the President alone, by the heads of departments, or by the Judiciary." Buckley v. Valeo, 424

U.S. 1, 132 (1976). There was little discussion of this latter component of the provision during

the Constitutional Convention. In fact, the inferior appointment provision was added on the last

---

[4] "The exercise of significant authority pursuant to the laws of the United States marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather . . . the line between officer and nonofficer." Edmond, 520 U.S. at 662 (internal quotation marks and citation omitted). Accordingly, "'[o]fficers of the United States' does not include all employees of the United States, but there is no claim made that [the Special Counsel] [is an] employee[] of the United States rather than [an] officer[]." Buckley v. Valeo, 424 U.S. 1, 126 n. 162 (1976) (citing Auffmordt v. Hedden, 137 U.S. 310, 327 (1890); United States v. Germaine, 99 U.S. (9 Otto) 508 (1879)).

13

day of the Convention with virtually no discussion. 2 M. Farrand, <u>Records of the Federal Convention of 1787,</u> at 627-28 (rev. ed. 1937); <u>see</u> <u>Edmond</u>, 520 U.S at 660. The Supreme Court has characterized this part of the provision as an "administrative convenience," in that the advice and consent process would not need to be followed for "inferior officers." <u>Germaine</u>, 99 U.S. at 510.

Accordingly, the initial question in any Appointments Clause challenge, and the only question before this Court, is whether the Special Counsel is a principal officer requiring nomination by the President with advice and consent of the Senate or an inferior officer subject to independent appointment by the Attorney General. <u>See, e.g., Morrison v. Olson</u>, 487 U.S. 654, 670-71 (1988). The Supreme Court has been presented with Appointments Clause challenges on numerous occasions and has concluded that inferior offices include a district court clerk, an election supervisor, a vice-consul charged temporarily with the duties of the consul, a "United States commissioner" in district court proceedings, the independent counsel created by provisions of the Ethics in Government Act of 1978, and judges on the Coast Guard Court of Criminal Appeals. <u>Edmonds</u>, 520 U.S. at 661 (citing <u>Morrison</u>, 487 U.S. 654; <u>Go-Bart Importing Co. v. United States</u>, 282 U.S. 344, 352-54 (1931); <u>United States v. Eaton</u>, 169 U.S. 331, 343 (1898); <u>Ex parte Siebold</u>, 100 U.S. 371, 397-98 (1880); <u>Ex parte Hennen</u>, 38 U.S. (13 Pet.) 225, 229 (1839)). The Supreme Court's two most recent opinions on this subject, <u>Morrison</u>, 487 U.S. 654, and <u>Edmond</u>, 520 U.S. 651, provide the most useful guidance for addressing such a challenge.

In <u>Morrison,</u> the Supreme Court rejected an Appointments Clause challenge of an independent counsel appointed under the Ethics in Government Act ("EGA"), 28 U.S.C. §§ 591-

599 (1982 ed., Supp. V). Morrison, 487 U.S. at 672-73. The EGA authorized the appointment

of an independent counsel to investigate and prosecute certain high-ranking government officials

for criminal violations of federal law. Id. at 660. Under the EGA, an independent counsel was

appointed by a special court—the Special Division—which was created by the Act. Id. at 660-

61. Thus, the independent counsel was not nominated by the President, nor did the Senate give

its advice and consent. Id. The Supreme Court concluded that an independent counsel selected

pursuant to the EGA was an inferior officer, and thus need not be nominated by the President

with the advice and consent of the Senate. Id. at 671. In reaching this conclusion, the Court

declined to "decide exactly where the line falls between [principal and inferior] officers, because

in [its] view [the independent counsel] clearly [fell] on the 'inferior officer' side of the line." Id.

The Court relied on several factors in reaching this conclusion. First, the Court noted that the

Attorney General could remove (subject to judicial review) the independent counsel for "good

cause" or physical or mental incapacity. Id. at 663, 671. Second, the independent counsel had

only limited duties, e.g., to investigate and prosecute certain federal crimes. Id. at 671. And

while the Court did note that "the Act delegate[d] to [the independent counsel] 'full power and

independent authority to exercise all investigative and prosecutorial functions and powers of the

Department of Justice,'" it highlighted that the independent counsel's authority did "not include

any authority to formulate policy for the Government or the Executive Branch, nor [did the

statute] give [the independent counsel] any administrate duties outside of those necessary to

operate her office." Id. at 671-72. In addition, the Supreme Court noted that the independent

counsel's jurisdiction and tenure was limited. Id. at 672. The Court observed that an

"independent counsel is appointed essentially to accomplish a single task, and when that task is

15

over the office is terminated, either by the counsel herself or by action of the Special Division."

Id. Based on these four factors, the Supreme Court concluded that the independent counsel was

an inferior officer.

The Supreme Court's most recent discussion of the Appointments Clause came in

Edmond, where the Supreme Court was presented with a challenge to the appointment of judges

on the Coast Guard Court of Criminal Appeals. Edmond, 520 U.S. 651. While recognizing that

Morrison relied on several factors for resolving that Appointments Clause challenge, the Edmond

Court acknowledged that at least two of those factors—limited jurisdiction and limited tenure—

did not apply in Edmond. Id. at 661. The Court found immaterial the inapplicability of those

two factors, since Morrison "did not purport to set forth a definitive test for whether an office is

'inferior' under the Appointments Clause." Id. Accordingly, the Court reasoned that in

determining the status of a government official under "a Clause designed to preserve political

accountability relative to important Government assignments, . . . 'inferior officers' are officers

whose work is directed and supervised at some level by others who were appointed by

Presidential nomination with the advice and consent of the Senate." Id. at 663. The Court also

noted that "[g]enerally speaking, the term 'inferior officer' connotes a relationship with some

higher ranking officer or officers below the President: Whether one is an 'inferior' officer

depends on whether he has a superior. It is not enough that other officers may be identified who

formally maintain a higher rank, or possess responsibilities of a greater magnitude." Id. at 662-

63. Based on this criterion, the Supreme Court held that the judges on the Coast Guard Court of

Criminal Appeals were inferior officers because the Judge Advocate General exercised

"administrative oversight" over their court and prescribed "uniform rules of procedure" that they

16

must follow. Id. at 664-65. Moreover, the Court found "significant" the fact that "the judges of the Court of Criminal Appeals have no power to render a final decision on behalf of the United States unless permitted to do so by other Executive officers," because their decisions are subject to review, albeit limited, by the Court of Appeals for the Armed Forces. Id. at 665.

The defendant relies heavily on Edmond, suggesting that it has "supplanted" the Supreme Court's approach in Morrison. Def.'s Mem. at 19 n.8. This Court cannot agree that Edmond has that consequence. Neither Morrison nor Edmond established a bright-line test under which Appointments Clause challenges are resolved. Rather, the cases simply employed factors that the Supreme Court deemed important when resolving the Appointments Clause challenges that were before it in those particular cases. Neither case states explicitly, nor even suggests, that the factors relied upon are exclusive. In fact, the Court in Morrison stated that it "need not attempt . . . to decide exactly where the line falls between [principal and inferior] officers . . . ." Morrison, 487 U.S. at 671. And while there appears to be some tension between the two decisions because they do not rely on identical factors,[5] Edmond did not reject the validity of the Morrison factors, suggest that the result in Morrison would have been different had the Court employed the Edmond analysis, or indicate that the factors relied on in Edmond would be the governing factors for all future Appointments Clause challenges. These two cases, when read together, stand for the proposition that "supervision by a superior officer is a sufficient but perhaps not a necessary condition to the status of inferior officer." United States v. Gantt, 194

---

[5] Although Edmond and Morrison do not rely on identical factors, both decisions emphasize the fact that both the independent counsel under the EGA and the judges on the Coast Guard Court of Criminal Appeals could be removed from their positions. Specifically, the Morrison Court characterized the removal authority as reflective of Morrison's inferior rank and authority despite her independence. Morrison, 487 U.S. at 671. The Edmond Court, on the other hand, characterized the removal authority as "a powerful tool for control." Edmond, 520 U.S. at 664.

17

F.3d 987, 999 n.6 (9th Cir. 1999) (reconciling the holdings in Edmond and Morrison).

Accordingly, an officer can be considered "inferior" if her "work is directed and supervised at

some level by others who were appointed by Presidential nomination with the advice and consent

of the Senate, and if not, might still be considered inferior officers if the nature of their work

suggests sufficient limitations on responsibility and authority." United States v. Hilario, 218

F.3d 19, 25 (1st Cir. 2000) (internal quotation marks and citations omitted) (reconciling the

holdings in Edmond and Morrison).

   (2)  The Parties' Arguments

   Both parties evaluate the defendant's Appointments Clause challenge under the legal

precedent discussed above with differing results. The defendant, on the one hand, relies more

heavily on Edmond, and the government, on the other hand, relies to a greater degree on

Morrison. The differing conclusions, however, result more from each parties' interpretation of

the scope of the Special Counsel's authority than the cases on which they rely. The defendant

argues that the facts in this case, when considered collectively, indicate that the Special Counsel

is a principal officer. Def.'s Mem. at 10-13. The defendant identifies numerous facts that he

contends support his conclusion. First, the defendant notes that the Special Counsel operates

"independent of the supervision or control of any officer of the Department of Justice," as he is

not required to report on the progress of his investigation, and is not obligated to comply with

Department of Justice Policies. Id. at 10-12. Second, the defendant opines that the Special

Counsel is subject to no meaningful restriction on his jurisdiction or tenure, e.g., he need not seek

approval before expanding his jurisdiction, his tenure has no end date, and he has unlimited

funding. Id. at 12-13. In addition, the defendant posits that the Special Counsel's lack of

supervision allows him to make important policy decisions including how to proceed in the face of First Amendment and national security concerns and whether to comply with the United States Attorney Manual's guidelines. Id. at 13-18. Based on the foregoing, the defendant contends that the Special Counsel lacks any supervision and his powers far exceed the authority that the independent counsel had under the EGA. Id. at 18-21. Accordingly, the defendant argues that under either Edmond or Morrison, the Special Counsel qualifies as a principal officer. Id.

The Special Counsel disagrees. First, the Special Counsel represents that he is removable at will, in that the authority delegated to him can be taken away at any time by the Deputy Attorney General. Gov't's Opp'n at 22-24. Moreover, the Special Counsel emphasizes that he has limited "duties," e.g., his investigation is limited to the investigation and prosecution of specific criminal activities, and he has no policy-making authority. Id. at 25-26. In addition, the Special Counsel notes that he is required to comply with all Department of Justice policies. Id. And finally, the Special Counsel posits that he has both limited jurisdiction and temporary tenure. Specifically, he is limited to investigating and prosecuting possible criminal activity as delineated in the letters he received from the Deputy Attorney General, and his tenure will expire either when his delegated authority is removed or when he has completed the task assigned to him. Id. at 27-29.

(3)     Discussion

The question before the Court is whether the delegation of authority to the Special Counsel violates the Appointments Clause. In earlier cases where independent counsels were appointed to investigate alleged violations of federal law, their authority had been explicitly

19

detailed by statute or regulation and thus the question for courts to resolve in those situations was merely whether that scope of their authority qualified them as principal officers. See, e.g., Morrison, 487 U.S. at 660-61 (discussing the EGA); In re Sealed Case, 829 F.2d at 52-53 (discussing regulations creating Special Counsel). This is not the case here, as there are neither regulations nor statutes detailing this Special Counsel's authority.[6] Actually, the factual record detailing his authority is quite sparse. And after reviewing the exhibits submitted by the parties, it is clear that they cannot be accorded equal weight.[7] In fact, the only concrete evidence submitted to the Court that delineates the Special Counsel's authority are the two letters from the Deputy Attorney General to the Special Counsel. Def.'s Mem., Exs. C and D. And the question of what authority the Special Counsel possesses turns completely on the interpretation of these two letters. Accordingly, this Court must not only determine whether the Special Counsel's authority is so great that he should be deemed a principal officer for Appointments Clause purposes, but must also examine the more basic question of what authority the Special Counsel

---

[6]  The Department of Justice has promulgated regulations that provide a process through which a Special Counsel could be appointed and delineates the Special Counsel's power and authority. See 28 C.F.R. § 600.1 et seq. Had these regulations been followed, this Court's task would have certainly been more straightforward, as it would be clear what authority the Special Counsel had.

[7]  The parties have also provided this Court with a number of other exhibits that the Court concludes should not be accorded much weight at all, and in fact need not even be relied upon in resolving the question before it. First, the defendant relies heavily on statements made by the Deputy Attorney General during the December 30, 2003 press conference announcing the delegation of authority to the Special Counsel. See, e.g., Def.'s Mem. at 10-13. While the statements made at this press conference elucidate, to some degree, the authority that the Deputy Attorney General believed he was delegating to the Special Counsel, this Court must conclude that such statements, made in the course of a press conference with the media, cannot be given nearly as much weight as the express delegation of authority contained in his letters. Moreover, when the statements made at the press conference are viewed in their entirety, they are subject to a variety of interpretations. Thus, they provide little guidance to the Court. In addition, this Court finds that the affidavits submitted by the Special Counsel and former Deputy Attorney General Comey are entitled to even less weight, as the affidavits appear to have been prepared for the sole purpose of responding to the defendant's dismissal motion and provide only the affiants' subjective beliefs concerning the extent of the Special Counsel's authority. Cf. Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962) ("The courts may not accept appellate counsel's post hoc rationalizations for agency action.").

does in fact possess.

The parties' interpretations of the two letters are remarkably different. Thus, the first question this Court must confront is how to interpret the letters that delegate to the Special Counsel his powers. Neither party provides the Court with much guidance on what principles it should employ when interpreting these letters. In fact, the parties' pleadings do not even discuss why the Court should adopt one interpretation of the facts over the other. Nor has this Court's own research revealed any case law that clearly addresses this point. However, just as there are guiding principles for statutory interpretation and interpretation of contracts, there are principles this Court can employ in interpreting the letters to determine the actual authority delegated to the Special Counsel. Because the delegation of authority here most closely resembles a delegation of authority under the law of agency, and because the law of agency has established maxims for interpreting the scope of a delegation of authority,[8] these principles provide guidance here.[9]

It is helpful to again repeat what the text of the two letters at issue indicate. The December 30, 2003 letter stated:

> By the authority vested in the Attorney General by law, including 28 U.S.C. §§ 509, 510, and 515, and in my capacity as Acting Attorney General pursuant to 28 U.S.C. § 508, I hereby delegate to you all the authority of the Attorney General

---

[8] The principles for interpreting the scope of a delegation of authority under agency law are premised on the rules for the interpretation of contracts. See Restatement (Second) of Agency § 32 (1957).

[9] Admittedly, the Restatement of Agency does not address "the special application of the principles of agency to persons or combinations of persons concerning whom special rules exists," including "public officers." Restatement (Second) of Agency, Scope Note, at 2 (1957); see also Holtzman v. Schlesinger, 484 F.2d 1307, 1312 n.2 (2d Cir. 1973) (holding that the President is not an agent of Congress under the Restatement (Second) of Agency). Nonetheless, this Court is not determining whether an agency relationship exists between the Special Counsel and the Deputy Attorney General or resolving questions of when a principal is liable for the acts of an agent. Rather, it is examining what authority the Deputy Attorney General delegated to the Special Counsel. In making that determination, the Court finds the principles setting forth the standards under which an agent's authority is interpreted to be sufficiently analogous to provide useful guidance in this situation as well.

with respect to the Department's investigation into the alleged unauthorized disclosure of a CIA employee's identity, and I direct you to exercise that authority as Special Counsel independent of the supervision or control of any officer of the Department.

Def.'s Mem., Ex. C. And the February 6, 2004 letter provided:

At your request, I am writing to clarify that my December 30, 2003, delegation to you of "all the authority of the Attorney General with respect to the Department's investigation into the alleged unauthorized disclosure of a CIA employee's identity" is plenary and includes the authority to investigate and prosecute violations of any federal criminal laws related to the underlying alleged unauthorized disclosure, as well as federal crimes committed in the course of, and with intent to interfere with, your investigation, such as perjury, obstruction of justice, destruction of evidence, and intimidation of witnesses; to conduct appeals arising out of the matter being investigated and/or prosecuted; and to pursue administrative remedies and civil sanctions (such as civil contempt) that are within the Attorney General's authority to impose or pursue. Further, my conferral on you of the title "Special Counsel" in this matter should not be misunderstood to suggest that your position and authorities are defined and limited by 28 C.F.R Part 600.

Def.'s Mem., Ex. D.

The plain language of the letters, especially when viewed under the backdrop of generally accepted rules for interpreting grants of authority under the law of agency, leads to the conclusion that the Special Counsel's authority is limited. First, the plain text of the letters establish that the Special Counsel has limited jurisdiction. The letters unambiguously state that the Special Counsel's jurisdiction is restricted to the investigation and prosecution of the alleged unauthorized disclosure of a CIA employee's identity and any violations of federal law that arise during the course of that investigation. The Special Counsel's jurisdiction is therefore limited in scope to the exact matter from which the Attorney General had recused himself. Such specific delegation of limited jurisdiction demonstrates that the Special Counsel's authority is constrained

22

by what was actually delegated in the letters. See, e.g., Healthcote v. Priddis, No. 93-2-02331-8,

1997 WL 3203 (Wash. Ct. App. Jan. 3, 1997) ("broad grant of authority is generally limited by a

more specific grant"); Restatement (Second) of Agency § 37(2) (1957) ("[t]he specific

authorization of particular acts tend to show that a more general authority is not intended"). This

Court can therefore not accept the defendant's interpretation that the factual record affords the

Special Counsel the ability to expand his jurisdiction beyond what was specifically described in

the letters from former Deputy Attorney General Comey.[10]

And while the Special Counsel has been delegated "all the authority of the Attorney

General," for several reasons this language does not translate into the Special Counsel being

given the power to make policy decisions or ignore established Department of Justice regulations

and policies. First, this language must be read in context with the other portions of the letters.

As already discussed, the Special Counsel's authority is limited to the investigation and

prosecution of alleged violations of federal law relating to the possible unauthorized disclosure

of specific classified information. Thus, the plain language of the letters indicate that the

authority of the Attorney General given to the Special Counsel is limited by the specific scope of

the investigation he was directed to conduct. Accordingly, the Special Counsel cannot make any

decisions that extend beyond his express jurisdiction. Moreover, even as to this investigation,

the Special Counsel has not been given the authority to disregard established Department of

---

[10] To the extent that comments made during the December 30, 2003 press conference seemingly indicate that the Special Counsel could expand his jurisdiction, Def.'s Mem., Ex. A at 9, this Court construes those statements as merely providing the Special Counsel the authority to investigate and prosecute violations of law that are committed during the course of his investigation, e.g., perjury and obstruction of justice. This reality was in fact clarified in the February 6, 2004 letter, and the earlier oral statement did not amount to a grant of any greater authority than described in the two letters.

Justice policies and regulations as the defendant suggests. Def.'s Mem. at 11-12, 14-17. This

constraint comports with the principle of agency law that requires an agent to comply with the

relevant business practices of the principal if he has knowledge of those practices. See

Restatement (Second) of Agency § 36 (1957) ("[u]nless otherwise agreed, an agent is authorized

to comply with the relevant usages of business if the principal has notice that usages of such a

nature may exist); see, e.g., Columbia Broadcasting Sys., Inc. v. Stokely-Van, 522 F.2d 369, 376

(2d Cir. 1975) (noting that a principal should expect its agent to do business in accordance with

the usage in the community in which he works); Meretta v. Peach, 491 N.W.2d 278, 280 (Mich.

App. 1992) ("An agent has implied authority from his principal to do business in the principal's

behalf in accordance with the general custom, usage and procedures in that business."). Here, at

the time Fitzgerald was designated as Special Counsel, he was the United States Attorney for the

Northern District of Illinois, and he has continued to occupy this position throughout his tenure

as Special Counsel. As a United States Attorney, he is required to comply with all applicable

Department of Justice regulations and policies. His appointment as the Special Counsel, a

permissible expansion of his role as an officer of the Department of Justice, 28 U.S.C. §§ 510,

515, did not relieve Fitzgerald from continued compliance with these regulations and policies,

both as a United States Attorney and as Special Counsel. It would be illogical to conclude that

because of his Special Counsel status, Fitzgerald is permitted to ignore well-established

Department of Justice policies without any clear authorization to otherwise do so. Rather, the

only logical way to interpret the Deputy Attorney General's delegation to the Special Counsel of

"all the authority of the Attorney General," is that the delegation simply permitted the Special

Counsel to bypass certain approval requirements contained in the regulations and policies, not

24

ignore them all together.[11]   Moreover, the Attorney General himself is obligated to comply the

Department of Justice rules and regulations, and it necessarily follows that any authority that the

Special Counsel received from the Attorney General would also be controlled by those rules and

regulations.   Furthermore, and contrary to the defendant's assertions, Def.'s Mem. at 14-17, it

appears to this Court that the Special Counsel has not violated any of those regulations.[12]   The

language in the December 30, 2003 letter, stating that the Special Counsel's authority is

"independent of the supervision or control of any officer of the Department," does not alter the

Court's conclusion.   Given its plain meaning, the statement indicates that the Special Counsel is

not under the supervision of any Department of Justice official.   It does not mean that the Special

Counsel is not obligated to comply with Department of Justice policies and regulations.   To the

contrary, the Special Counsel cannot act outside the bounds of either his limited jurisdiction or

without regard for Department of Justice policies and regulations.   As such, the Special Counsel

does not wield unlimited authority.[13]

    Finally, the Special Counsel's tenure is both limited and temporary.   This is true in two

---

[11]   The Deputy Attorney General's comments at the December 30, 2003 press conference support this interpretation.   Def.'s Mem., Ex. A at 9 (noting that the Special Counsel would not have to seek approval before performing certain actions).

[12]   The defendant asserts that the Special Counsel's press conference on October 28, 2005, did not comply with policies in the United States Attorney's Manual.   Def.'s Mem. at 16-17.   However, after reviewing the transcript of that press conference, it is clear that when the transcript is read in its entirety, as opposed to the excerpts referenced in the defendant's pleading, there were no violations of these regulations.   See In re: Special Counsel Investigation, 338 F. Supp. 2d 16, 17 (D.D.C. 2004) ("Assuming, arguendo, that the DOJ guidelines did vest a right in Ms. Miller, this court holds that the DOJ guidelines are fully satisfied by the facts of this case as presented to the court in the ex parte affidavit of Patrick Fitzgerald.").   But even if violations as alleged occurred, that does not mean they were authorized by the authority given to the Special Counsel.

[13]   In fact, because the Special Counsel must comply with Department of Justice policies, many of which provide direction for how to proceed in prosecuting cases, the Attorney General, at least in an abstract sense, continues to direct and supervise the investigation and prosecution of this matter.

respects. First, because he is given only limited jurisdiction—to investigate and prosecute only certain alleged violations of federal criminal law arising out of the alleged unauthorized disclosure of specific classified information and violations of federal law committed during the course of this investigation—it is implicit that once this assigned mission is complete his tenure as Special Counsel will end. See, e.g., Restatement (Second) of Agency § 38 ("Authority exists only during the period in which, from the manifestations of the principal and the happening of events of which the agent has notice, the agent reasonably believes that the principal desires him to act."); Restatement (Second) of Agency § 106 ("[t]he authority of an agent to perform a specified act or to accomplish a specified result terminates when the act is done or the result is accomplished by the agent"). Moreover, it is axiomatic that, at any time, the Deputy Attorney General who delegated to the Special Counsel his authority can revoke that delegation. In re Sealed Case, 829 F.2d at 56-57; Restatement (Second) of Agency § 118 ("Authority terminates if the principal or the agent manifests to the other dissent to its continuance.").[14]

This conclusion concerning the Special Counsel's tenure limitation is supported by the District of Columbia Circuit's holding in In re Sealed Case. There, the Circuit Court was presented with an Appointments Clause challenge to the independent counsel in the Iran/Contra investigation. In finding no Appointments Clause violation, the Court noted that the independent counsel who was appointed, in part, pursuant to Department of Justice regulations would serve

---

[14] The Court notes that had it concluded that the two letters were ambiguous, it might be appropriate to examine other pieces of extrinsic evidence to determine what authority the Special Counsel possesses. And one important factor that would have been considered when looking beyond the plain text of the letters would be how the parties interpreted the delegation of authority. Restatement (Second) Agency § 42 ("[i]f the authorization is ambiguous, the interpretation acted upon by the parties controls."). Here, based on this Court's review of the other exhibits provided by the parties, the Special Counsel's actions to date, and his interpretation of the authority he was granted, comport with this Court's interpretations. This is, therefore, further support for this Court's ruling.

only while those regulations remain in force. In re Sealed Case, 829 F.2d at 56. Accordingly, the

Court found that

> [s]ubject to generally applicable procedural requirements, the Attorney General may
> rescind this regulation at any time, thereby abolishing the Office of Independent Counsel:
> Iran/Contra. As a result we must conclude that the Independent Counsel: Iran/Contra is
> charged with the performance of the duty of the superior [i.e., the Attorney General] for a
> limited time and under special and temporary conditions.

Id. (interpolation in original) (citation and internal quotation marks omitted). This case is no

different. Just as the regulations that created the Independent Counsel: Iran/Contra could be

rescinded to abolish that office, the delegation of authority here that created the Special Counsel

could, with even less formality, be rescinded to abolish Fitzgerald's appointment as well. Thus,

it is apparent from the letters and the applicable case law that the Special Counsel's tenure is

limited.

Based on the foregoing, the Court concludes that the Special Counsel's delegated

authority is described within the four corners of the December 30, 2003 and February 6, 2004

letters. Moreover, this conclusion comports with the Special Counsel's own actions throughout

the course of both the investigation and the prosecution of this matter. His authority is therefore

confined to the narrow objective of accomplishing the specific mandate he was given. And the

fact that he has exercised his authority to prosecute alleged violations of the law committed while

he was carrying out his mandate does not alter that conclusion.

Having now determined the scope of the Special Counsel's authority, the Court next must

examine whether this authority requires the conclusion, as the defendant argues, that the Special

Counsel is a principal officer whose appointment required nomination by the President, with the

advice and consent of the Senate. For the reasons that follow, the Court concludes that it does not.[15]

This case falls squarely into the mold of Morrison, where the Supreme Court concluded that the independent counsel was an inferior officer. The factors employed in Morrison to reach that conclusion are equally applicable here. First, the independent counsel in Morrison was removable by the Attorney General for "good cause, physical disability, mental incapacity, or any other condition that [would] substantially impair[] the performance of [the] independent counsel's duties." Morrison, 487 U.S. at 663, 671. The Court found that the Attorney General's ability to remove Morrison demonstrated that as independent counsel she was "to some degree 'inferior' in rank and authority." Id. at 671. Here, the Special Counsel is essentially removable at will by the Deputy Attorney General. Just as the Deputy Attorney General delegated his authority to the Special Counsel, he has complete discretion to take that authority away. And as the Court noted in Edmond, "[t]he power to remove officers . . . is a powerful tool for control."[16] Edmond, 520 U.S. at 664.

Second, just as in Morrison, the Special Counsel here is "empowered . . . to perform only

---

[15] The government invites this Court to conclude that the Appointments Clause is not implicated in this case because there was merely a delegation of authority, not an appointment, to an individual who had previously been nominated by the President and confirmed as a United States Attorney. Gov't's Opp'n at 21-22. Admittedly, the Special Counsel has previously been nominated and confirmed as the United States Attorney for the Northern District of Illinois, but as such he is an "inferior officer" under Appointments Clause jurisprudence. See Hilario, 218 F.3d at 26; United States v. Gantt, 194 F.3d 987, 999 (9th Cir. 1999); United States v. Luciano del Rosario, 90 F. Supp. 2d 171, 173 (D. P.R. 2000). And while Fitzgerald could likely be given the additional powers of an "inferior officer," Weiss v. United States, 510 U.S. 163, 174-75 (1994), 28 U.S.C. § 515(a); he cannot be given duties that would elevate him to a "principal officer." E.g., id. at 183 (Souter, J. concurring). Thus, this Court must examine whether the authority given to the Special Counsel elevated him to the level of a principal officer.

[16] The defendant suggests that even if the Special Counsel was, in theory, removable at will, the Deputy Attorney General did not supervise any of the Special Counsel's activities and therefore this removal authority is meaningless. Def.'s Reply at 10-14. This Court simply cannot accept the defendant's argument because such independence does not alter the fact that the Special Counsel can be removed at any time and for any reason.

28

certain, limited duties." Morrison, 487 U.S. at 671. In Morrison, the independent counsel was

limited to investigating and prosecuting certain federal crimes as prescribed in the grant of

authority provided to her. Id. Here, the Special Counsel has the same limitations. His duties are

specifically limited to the investigation and prosecution of certain federal crimes arising out of

the alleged unauthorized disclosure of specific classified information as described in the letters

delegating to him this authority. And the Special Counsel's authority is no more expansive than

the independent counsel's authority in Morrison. In Morrison, while the independent counsel

had "'full power and independent authority to exercise all investigative and prosecutorial

functions and powers of the Department of Justice,'" she had no "authority to formulate policy

for the Government or the Executive Branch," nor "any administrative duties outside of those

necessary to operate her office." Id. at 671-72. The same is true here. Moreover, as already

concluded, the Special Counsel does not have the authority to ignore substantive or procedural

Department of Justice policies and regulations.

Third, the Special Counsel's jurisdiction here, just as the independent counsel's

jurisdiction in Morrison, is limited. Specifically, the Special Counsel "can only act within the

scope of the jurisdiction that has been granted by the [Deputy Attorney General]." Morrison, 487

U.S. at 672. And finally, the Special Counsel's grant of authority has limited tenure. As the

Supreme Court in Morrison recognized, "the office of the independent counsel is 'temporary' in

the sense that an independent counsel is appointed essentially to accomplish a single task, and

when that task is over the office is terminated." Morrison, 487 U.S. at 672. There is no

difference here. As soon as the Special Counsel has completed his assigned task, his delegation

of authority expires. Thus, he "has no ongoing responsibilities that extend beyond the

29

accomplishment of the mission that [he] was appointed for and authorized . . . to undertake." Id.

Accordingly, just as the independent counsel in Morrison was deemed to be an inferior officer, the same is true for Special Counsel Fitzgerald. And while the question of whether the Special Counsel is an inferior officer under Edmond is a much more difficult question because the Special Counsel's work is conducted largely without direction and supervision,[17] the Court need confront that analysis since Morrison remains binding authority. See, e.g., United States v. Gantt, 194 F.3d 987, 999 n.6 (9th Cir. 1999); Hilario, 218 F.3d at 25.

### III. Conclusion

The integrity of the rule of law, which is a core ingredient of the American system of government, is challenged to the greatest degree when high-level government officials come under suspicion for violating the law. And a criminal investigation of any individual, prominent or not, for suspected violations of law must be above reproach to preserve respect for the fairness of our system of justice. There must therefore be a process by which the perception of fairness withstands the scrutiny of the American public when prosecution authority is called upon to investigate public officials. Creating that perception of fairness obviously starts with those who

---

[17] The Court does note, however, that while the Special Counsel's work is not explicitly directed and supervised by someone who was nominated by the President and confirmed by the Senate, his appointment would also likely survive under Edmond. The Court in Edmond simply stated that an inferior officer is someone whose work is "directed and supervised at some level." Edmond, 520 U.S. at 663. This Court would have no basis for adopting the view that an inferior officer must be under active day-to-day direction and supervision. Rather, an inferior officer's work must simply be "directed and supervised at some level." Id. In this case, the Special Counsel's work responsibility has been ordered by the Deputy Attorney General through his two letters delegating the Special Counsel his authority. The Deputy Attorney General, through these letters, set forth explicit parameters in which the Special Counsel could operate. And, the Deputy Attorney General can revoke this authority, which the Edmond Court characterized as "a powerful tool for control." Id. at 664. Moreover, while there is no apparent ongoing supervision of the Special Counsel's work, the Special Counsel must comply with all internal Department of Justice policies and regulations, which prescribe the procedures and process for investigating and prosecuting criminal cases. As such, the Special Counsel is subject to the direction and supervision of the Deputy Attorney General.

are charged with the responsibility of conducting the investigations. For obvious reasons, the Attorney General recused himself in this case and the Deputy Attorney General concluded that someone removed from the hierarchy of the Department of Justice should investigate individuals holding some of the country's highest executive branch offices. Obviously, the process for selecting who would investigate the underling allegations in this case must comport with the law. For all the reasons set forth above, this Court concludes that the delegation of authority to Special Counsel Fitzgerald violated neither 28 U.S.C. §§ 516 and 519 nor the Appointments Clause of the Constitution. Accordingly, the defendant's motion to dismiss is denied.

**SO ORDERED** this 27th day of April, 2006.

Reggie B. Walton
United States District Court

31