UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.              ) | CR. NO. 05-394 (RBW) |
| ) | |
| I. LEWIS LIBBY,      ) | |
| also known as "Scooter Libby," ) | |
| Defendant.     ) | |

**SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THIRD MOTION OF I. LEWIS LIBBY TO COMPEL
<u>DISCOVERY UNDER RULE 16 AND *BRADY*</u>**

Theodore V. Wells, Jr.
James L. Brochin
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Tel.:  (212) 373-3089
Fax:  (212) 492-0089

Joseph A. Tate
Dechert LLP
2929 Arch Street
Cira Centre
Philadelphia, PA  19104
Tel: (215) 994-2350
Fax: (215) 994-2222

William H. Jeffress, Jr.
Alex J. Bourelly
Baker Botts LLP
1299 Pennsylvania Ave., NW
Washington, DC  20004
Tel.:  (202) 639-7751
Fax:  (202) 585-1087

John D. Cline
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax: (415) 875-5700

May 12, 2006

Defendant I. Lewis Libby, through his counsel, submits this Supplemental Memorandum of Law in Further Support of his Third Motion to Compel Discovery Under Rule 16 and *Brady* (the "Motion"). This Supplemental Memorandum responds to the Court's request during oral argument on May 5, 2006 for additional briefing on the government's obligations under Rule 16.

## ARGUMENT

I.  Documents Relating to Defense Witnesses Are Discoverable Under Rule 16

At the May 5 oral argument, the Court inquired whether the government was obligated under Rule 16 to produce documents relating to potential defense witnesses (as opposed to government witnesses). The answer to this question, as demonstrated by the plain text of Rule 16 and case law from the D.C. Circuit that is directly on point, is a resounding yes.

So far, the defense has identified by name the following current and former government officials as potential defense witnesses: (1) Richard Armitage; (2) Colin Powell; (3) Stephen Hadley; (4) Bill Harlow; (5) Karl Rove; (6) Joseph Wilson; and (7) Valerie Wilson. *See* Mot. at 15-16. All of these persons were discussed by Mr. Libby during his grand jury testimony, and the indictment refers to the latter four either by name or by implication.

The defense seeks documents from the files of these witnesses – and others – that relate to former Ambassador Joseph Wilson's trip to Niger and his wife's role in planning it. During oral argument, defense counsel agreed to limit these requests to the category of documents that is most critical to the defense: documents created, sent or received after May 6, 2003, when the controversy relating to the "sixteen words"

erupted, and certain government officials began to discuss Mr. Wilson and his wife with reporters.

The government maintained in its response to Mr. Libby's Motion that "no authority [supports] the proposition that the defendant is entitled to discover all documents related to witnesses whom defendant anticipates calling as witnesses at trial." Gov't Resp. to Third Def. Motion to Compel Disc., dated Apr. 5, 2006, ("Gov't Resp.") at 13. During oral argument, when the Court asked if the government agreed that Rule 16 applies to documents material to the government's case in chief as well as the defense case in response, the Special Counsel stated: "Not at all. I'm responsible for the government's case and *Brady* and turning over my obligations. I am not responsible for preparing the defense case." Tr. May 5, 2006 Hearing at 57. The Special Counsel further argued that only "the indictment and the government's case-in-chief" define which documents are material under Rule 16. *Id.* at 58.

As demonstrated below, the government's position is wrong for three main reasons. First, the government has mischaracterized the documents sought by the defense. Second, no authority supports the government's arguments; in fact, the relevant authorities firmly support the defense position. Third, the cases the government cited in its response brief are inapplicable to the issue before the Court.

To begin with, in its response brief, the government misconstrued our requests. We have not requested "all documents" relating to potential defense witnesses. Instead, we have requested precise categories of documents with respect to such witnesses. Specifically, the defense seeks documents that will illuminate, among other things, how these witnesses learned that Valerie Wilson worked for the CIA, whether

2

they understood her employment status to be covert or classified, and whether they disclosed information about Ms. Wilson to anyone else. The government also mischaracterizes our Motion as requesting the production of statements covered by the Jencks Act. The defense has not sought such materials at this time.

The government's position that Rule 16 distinguishes between government and defense witnesses is belied by the text of the Rule. Rule 16(a)(1)(E)(i) states plainly that the government must produce documents that are "material to preparing the defense." On its face, the rule does not exclude material relating to defense witnesses from its purview. The government has cited no authority to the contrary.

This reading of the language of Rule 16 finds support in the D.C. Circuit's decision in *United States* v. *Marshall*, 132 F.3d 63 (D.C. Cir. 1998), a case the Court mentioned briefly at oral argument. That decision, we submit, unequivocally requires the government to disclose information pertaining to potential defense witnesses under Rule 16. *See id.* at 69.

The facts of *Marshall* are essential to understanding its holding and applicability to this case, so we address them in detail here. In that case, the defendant, Marlon Marshall, was charged with distributing crack cocaine. His defense was based on misidentification – that he was not the person who had sold drugs to a government informant. During voir dire examination, defense counsel identified a woman named Sabrina Shorter as a potential defense witness. Caller identification records produced by the government indicated that the government's informant had been called from a phone in Ms. Shorter's residence. In his opening statement, defense counsel told the jury that no evidence existed to link Marshall to any of the phones that had been used to call the

government informant. He asserted that the "phone calls came in from places not associated with Mr. Marshall, from homes where the people don't know Mr. Marshall, because Mr. Marshall is not the person who made those phone calls." *Id.* at 66.

Unbeknownst to defense counsel, however, the government had obtained documents prior to trial that undercut his statements to the jury. The government had retrieved jail visitation records that "revealed that Ms. Shorter had visited Marshall when he was incarcerated and awaiting trial." *Id.* at 65. The government sought to introduce those records after its first witness finished testifying to show that Marshall knew Ms. Shorter, which in turn would tend to show that Marshall had made the calls from her house to the informant. The defense sought to exclude the jail visitation records "from evidence because they had not been timely disclosed" pursuant to Rule 16. *Id.* at 66. The district court ruled that "the records should have been turned over 'at least after opening statement,'" but declined to exclude them because it concluded that Marshall had not been prejudiced by the late disclosure. *Id.* at 66-67.

On appeal, the D.C. Circuit considered whether Rule 16 obligated the government to disclose the jail visitation records at an earlier point in time than the completion of the testimony of its first witness. The court concluded that it did. *Id.* at 69. First, the court explained that the government arguably should have realized prior to trial that the records were material to the preparation of the defense, and disclosed them at that time, because "[i]t knew then that Sabrina Shorter could play a significant role in its case in chief." *Id.* Next, the court stated:

> From the government's perspective, the materiality picture came into even sharper focus during voir dire examination, *when the defense identified Sabrina Shorter as a potential witness. At that point, the government knew it had records*

4

> *relating to a person the defense had just identified as a potential witness. That fact alone plainly triggered the government's disclosure obligations under Rule 16. . . .* By waiting too long to disclose the jail visitation records, the government violated its disclosure obligations under Rule 16.

*Id.* (emphasis added). The court then proceeded to discuss the appropriate sanction for such a violation in light of the particular circumstances of the case.

Other cases are consistent with the holding in *Marshall* that the government's Rule 16 obligations extend to potential defense witnesses. *See, e.g., United States* v. *Marshak*, 364 F. Supp. 1005, 1007-08 (S.D.N.Y. 1973) (Rule 16 permits discovery of statements made by persons the government did not intend to call at trial who had knowledge of the case and might be able to corroborate certain defense theories); *United States* v. *Zovluck*, 274 F. Supp. 385, 391 (S.D.N.Y. 1967) (documents in the government's possession that would help locate persons who would testify for the defense are material under Rule 16).

In its brief and at oral argument, the government suggested that the Supreme Court's decision in *United States* v. *Armstrong*, 517 U.S. 456 (1996), supports its position that Rule 16 does not require it to turn over documents relating to potential defense witnesses. But *Armstrong* in fact supports Mr. Libby's argument.

In *Armstrong*, the Court considered defendants' efforts to obtain discovery from the government to support a claim of selective prosecution based on race. The defendants sought, among other things, a list of cases brought by the government involving gun and drug offenses, information about the race of the defendants in those cases, and an explanation of the government's criteria for prosecuting those defendants. *See id.* at 459. The Court rejected the argument that Rule 16 authorized such discovery.

5

The Court held that "a selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Id.* at 463; *see also United States* v. *Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000) (refusing to permit discovery under Rule 16 for a double jeopardy claim because the discovery sought by the defendant "relate[d] not to refutation of the government's case in chief but to establishment of an independent constitutional bar to the prosecution") (citing *Armstrong*); *United States* v. *Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989) (Rule 16 is "designed to provide to a criminal defendant, in the interest of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government *as may aid him in presenting his side of the case*") (emphasis added).

These cases support the proposition advanced by Mr. Libby that documents relating to defense witnesses who may be able to help refute the government's case in chief are discoverable under Rule 16. Put another way, the documents Mr. Libby seeks are necessary to prepare for witness examinations that will challenge the merits of the criminal charge itself, and do not relate to an independent constitutional defense, such as a selective prosecution claim or a double jeopardy claim. The documents are necessary to prepare "the defendant's response to the Government's case in chief," *Armstrong*, 517 U.S. at 462, and thus fall within the scope of Rule 16.

In addition to its reliance on *Armstrong*, the government bases its refusal to produce documents related to defense witnesses on three authorities. None of these authorities supports this position and, in fact, none of them is at all relevant to whether Rule 16 applies to defense witnesses.

6

First, the government cites 18 U.S.C. § 3500 – the Jencks Act. But Mr. Libby's Motion expressly stated that his requests "should not be construed as requests for grand jury transcripts or FBI 302 reports that fall under the Jencks Act." Mot. at 18. Further, the Jencks Act excludes "statements" of government witnesses from Rule 16 discovery, but is silent regarding whether Rule 16 applies to other types of discovery relating to defense witnesses. Accordingly, any reliance on the Jencks Act here is misplaced.

Second, the government cites *United States* v. *Presser*, 844 F.2d 1275 (6th Cir. 1988). This case similarly provides no support for the government's position. As a threshold matter, the Sixth Circuit in *Presser* did not consider the question of whether documents relating to defense witnesses fall within the ambit of Rule 16. Instead, the court focused on the government's obligations to produce impeachment material under *Brady* and its progeny.

In *Presser*, the Sixth Circuit reversed a district court order requiring the immediate production of "'any and all impeachment evidence . . . which tends to negate guilt'" on the grounds that neither *Brady* nor the Jencks Act mandated such a result. *Id.* at 1280. The court concentrated on the issue of when the government was obligated to produce impeachment information contained in statements covered by the Jencks Act – an issue that is not relevant to the pending Motion. In dicta, the court alluded to Rule 16 and noted that it did not create an independent basis for the production of the impeachment material ordered by the district court. Without citing any authority or offering any further analysis regarding Rule 16, the court then simply stated that the "government need not disclose impeaching material in its possession relating to any

7

potential defense witness where that impeaching material does not meet the *Brady* test of being material *and* exculpatory." *Id.* at 1285.

But that aspect of *Presser*, in addition to being dicta, is not applicable here because the court in that case equated impeachment material with material covered by the Jencks Act, which the defense does not seek at this time. To the extent that the government is arguing that *Presser* stands for the proposition that Rule 16 does not require it to produce any materials relating to defense witnesses, or that Rule 16 does not apply to documents that may be used for impeachment, that proposition conflicts with the law of this Circuit as expressed in *Marshall*. *See* 132 F.3d at 67-69; *see also* Mar. 10, 2006 Mem. Opinion at 8 (quoting *United States* v. *Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (Rule 16 requires the government to produce documents that "will play an important role in . . . assisting impeachment") (quotation marks omitted)).

Third, *United States* v. *Souffront*, 338 F.3d 809 (7th Cir. 2003), has no relevance to the scope of the government's Rule 16 obligations. In fact, the portion of *Souffront* cited by the government concerns only the *Brady* doctrine, and not Rule 16. In *Souffront*, the Seventh Circuit considered the *post-conviction* motions of criminal defendants who sought a new trial on the grounds that the government had failed to produce various *Giglio* materials. At trial, defendants had called an ATF agent to testify on their behalf. In their post-trial motion, the defendants argued that the government should have provided them with information showing that the ATF agent had been accused in a civil suit of helping to cover up a police officer's theft of jewelry and money. The court denied the motion based on the unremarkable ground that the

8

defendants' ability to impeach their own witness "is not favorable to the defense, and does not raise the probability of a different verdict." *Id.* at 824 (citation omitted).

Mr. Libby's pending document requests are not subject to the more stringent review of a post-conviction motion applied in *Souffront*. In addition, unlike the defendants in *Presser* and *Souffront*, Mr. Libby's requests do not focus exclusively on materials that could be used to impeach potential defense witnesses. Instead, Mr. Libby seeks documents that will counter the charges in the indictment, corroborate testimony, and lead to other admissible evidence – purposes that are entirely within the scope of Rule 16 as it has been interpreted in this Circuit. *See Marshall*, 132 F.3d at 68.

To use one potential defense witness to illustrate the nature of the documents we seek, the defense may call Bill Harlow, the CIA's former spokesperson, as a witness. Mr. Harlow is an important player in the events described in the indictment. We believe that Mr. Harlow is referred to in the indictment as the government official who disclosed Ms. Wilson's employment status to Cathie Martin, former Assistant to the Vice President for Public Affairs. *See* Indictment, Count One, ¶ 18. Mr. Harlow may be called to testify about that conversation and about whether he told her that such information was secret. Such testimony would support the defense's contention that Ms. Martin did not tell Mr. Libby that Ms. Wilson's employment at the CIA was classified, which would help the defense to contest the government's argument that Mr. Libby should have known such information was classified.

Documents that Mr. Harlow wrote or received regarding the issues discussed in the indictment likely contain information that the defense can use to prepare these parts of its case – regardless of whether the documents are actually used at trial.

9

Although the government has produced certain documents from the CIA, the only documents provided to us that appear to come from Mr. Harlow's own files were selected pages from notebooks that he apparently maintained in June and July 2003, which we received three days before oral argument. We need additional documents. Any documents relating to Mr. Harlow that discuss Mr. Wilson's trip to Niger, and that were created, sent, or received by him after May 6, 2003, are well within the scope of Rule 16 as this Circuit has defined it, regardless of whether the government or the defense calls him at trial.

In sum, the law does not support the government's cramped view of the scope of Rule 16. The implication of the government's position is that the "preparing of the defense" that Rule 16 envisions is limited to the cross-examination of the government's witnesses. To state that proposition is to recognize its folly. The "defense" that Rule 16 is designed to help a defendant prepare includes both cross examination of government witnesses and the presentation of his own witnesses on direct examination. Because both are part of a "defense," Rule 16 applies equally to both. A contrary reading would be inconsistent with fundamental notions of fairness in the criminal justice system.

II.  The Defense Needs Additional Documents To Prepare
     To Examine Witnesses at Trial

We urge the Court to reject the notion, advanced by the government, that only documents that Mr. Libby had seen or that mention him are material to his defense. It bears repeating that the issue before the Court is whether Mr. Libby is entitled to discovery of certain documents, not whether those documents are admissible or can even be used for any purpose at all at trial. It is therefore appropriate for the Court to view our requests in light of the materiality threshold for discovery, which is not normally a high

10

burden in this Circuit, instead of the more stringent standard that governs admissibility of evidence at trial.

The government has stated that "[t]he central issue at trial will be whether defendant lied when he testified that he was not aware that Mr. Wilson's wife worked at the CIA prior to his purported conversation with Tim Russert about Mr. Wilson's wife on or about July 10, 2003." Gov't Resp. at 11. The government has made clear that it will rely heavily in its proof at trial on testimony from six witnesses – all current or former government officials – regarding conversations with Mr. Libby in which Ms. Wilson's CIA employment was allegedly mentioned. These witnesses and alleged conversation dates include: (1) Under Secretary of State Marc Grossman (June 11 or 12); (2) CIA official Robert Grenier (June 11); (3) CIA briefer Craig Schmall (June 14); (4) White House Press Secretary Ari Fleischer (July 7); (5) Counsel to the Vice President David Addington (July 8); and (6) Cathie Martin (on or before July 8).

Any defense to the charges in the indictment must take into account what these witnesses said and wrote about the central issues in the case, including Mr. Wilson's trip and his wife's CIA connection. But for most of these witnesses, the government has produced no documents that shed any light on either how they learned about Ms. Wilson's identity or whether they discussed her identity with anyone else, including Mr. Libby or someone who spoke to Mr. Libby. For example, even though Mr. Grossman will be an important witness for the government, the government has produced only 8 documents, totaling 43 pages, from his former employer, the State Department. Similarly, even though the government plans to call two CIA witnesses, it has produced only 50 documents totaling 176 pages from that agency. Although the

11

defense has received a handful of documents (mainly e-mail news "blasts") that were sent to Mr. Fleischer, they do not appear to have been produced from Mr. Fleischer's files. These documents were produced within productions the Office of Special Counsel indicated came from the Office of the Vice President.[1] Even accepting for the sake of argument that the government's narrow view of what is relevant to the charges contained in the indictment is correct, documents relating to the government's six most important witnesses are essential to preparing the defense. Yet, the government has produced very few such documents.

Further, at oral argument, defense counsel brought two classified e-mail messages to the Court's attention to provide illustrations of how certain of the few documents the government has produced so far are highly relevant to our defenses. Because we could not discuss classified information in open court, we have filed a sealed declaration to describe the materiality of these documents to the Court. *See* Sealed Declaration of Theodore V. Wells, Jr., dated May 12, 2006. We believe that the government possesses many other such material documents and that those documents are called for by the requests in our Motion.

---

[1] With respect to certain documents in the government's production, the defense cannot determine in which witness's files the documents originally appeared. Most of the documents in the government's production come from the Office of the Vice President ("OVP"). The OVP portion of the production includes certifications that indicate whose files particular documents were taken from. Other portions of the production, however, do not include certifications or other information that would permit the defense to identify where the documents come from. Further, the "to," "from" and "cc" fields have been redacted in many of the classified e-mail messages from the CIA that have been produced, further hampering our ability to link them to specific witnesses. We have raised this issue with the government and hope to resolve it informally, but may need to seek Court intervention at a later date if our discussions do not bear fruit.

12

Information about how government witnesses learned of Ms. Wilson's identity is material to the defense for another reason. The indictment alleges that Ms. Wilson's employment status was classified, and the government has stated that it plans to argue at trial that Mr. Libby knew or should have known that her status was classified. Consequently, we expect the government to attempt to prove that one or more government witnesses who allegedly discussed Ms. Wilson with Mr. Libby conveyed to him that her affiliation with the CIA was a secret. A key part of the defense will be that these government witnesses either did not know that Ms. Wilson's employment status was classified, or did not communicate such information to Mr. Libby.

The defense needs documents that reflect how the government officials mentioned in the indictment learned about Ms. Wilson's identity to prepare effectively for this line of cross examination. For instance, if documents from Mr. Grossman's files are replete with references to Ms. Wilson as an analyst or manager, the defense may argue that it is likely that any information about her that he shared with Mr. Libby suggested that her employment status was not classified.

Finally, the Court indicated at oral argument that the government could meet its remaining discovery obligations with respect to potential trial witnesses by disclosing to the defense documents that are covered under *Brady* and *Giglio*. These cases require the government to produce exculpatory information and materials that can be used to impeach the testimony of government witnesses. We have two primary concerns about such an approach.

First, even though the government continues to have disclosure responsibilities under *Brady* and *Giglio*, we believe that its obligations under Rule 16 are

significantly different in nature.  For example, under Rule 16, the government must disclose inculpatory materials, not just exculpatory information, so the defense knows which pitfalls to avoid at trial.  *Compare Marshall*, 132 F.3d at 67 (Rule 16 requires production of both inculpatory and exculpatory evidence, if it will "assist in 'the preparation of the defendant's defense'"), *with In re Sealed Case No. 99-3096* (*Brady Obligations*), 185 F.3d 887, 892 (D.C. Cir. 1999) (*Brady* and *Giglio* materials limited to evidence favorable to the accused).

Second, and more importantly, documents that contain neither exculpatory nor impeachment information may nevertheless be extremely helpful to the defense; they may help the defense to identify other witnesses, find additional admissible documents, and learn what testimony to elicit or avoid.  To present just one example, information showing that Mr. Grossman had a close relationship with Mr. Wilson and/or his wife does not necessarily constitute exculpatory or impeachment material, but discovering such information would help the defense develop a potentially fruitful line of cross-examination for Mr. Grossman.

That is precisely the kind of information the D.C. Circuit had in mind when it interpreted Rule 16 broadly – information that will enable the defendant to build his defense, and not simply information that he may use to impeach a government witness at trial.  Accordingly, we request that the Court order the government to produce documents pursuant to Rule 16 that will facilitate the completion of critical trial preparation tasks.

## CONCLUSION

For the reasons stated herein and in our other submissions in support of our Third Motion to Compel Discovery, Mr. Libby's motion should be granted.

May 12, 2006                                                    Respectfully submitted,

/s/ Theodore V. Wells, Jr.                            /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                                William H. Jeffress, Jr.
(DC Bar No. 468934)                                   (DC Bar No. 041152)
James L. Brochin                                      Alex J. Bourelly
(DC Bar No. 455456)                                   (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                         Baker Botts LLP
 & Garrison LLP                                       1299 Pennsylvania Ave., NW
1285 Avenue of the Americas                           Washington, DC  20004
New York, NY  10019-6064                              (202) 639-7751
(212) 373-3089

/s/ Joseph A. Tate                                    /s/ John D. Cline
Joseph A. Tate                                        John D. Cline
Dechert LLP                                           (D.C. Bar No. 403824)
2929 Arch Street                                      Jones Day
Cira Centre                                           555 California Street, 26th Floor
Philadelphia, PA  19104                               San Francisco, CA  94104
                                                      Tel:  (415) 626-3939
                                                      Fax:  (415) 875-5700