UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. NO 05-394 (RBW) |
| v. | ) | |
| | ) | |
| I. LEWIS LIBBY, | ) | |
| also known as "Scooter Libby" | ) | |

## GOVERNMENT'S RESPONSE TO COURT'S INQUIRY REGARDING NEWS ARTICLES THE GOVERNMENT INTENDS TO OFFER AS EVIDENCE AT TRIAL

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, SPECIAL COUNSEL, respectfully submits the following in response to the Court's direction, during the May 5, 2006 oral argument on defendant's Third Motion to Compel Discovery, that the government identify any exhibits consisting of news articles that it anticipates offering in its case in chief at trial.[1]

As set forth more fully below, the Government currently intends to offer in evidence one news article in its entirety (a copy of the July 6, 2003, "Op Ed" article by Joseph Wilson bearing handwritten annotations) subject to a limiting instruction advising the jury that the statements in that article are not offered for the truth of the matter asserted. The government also intends to offer several other news articles in redacted form, similarly subject to a limiting instruction. Finally, the government anticipates that testimony at trial, as well as portions of the defendant's grand jury

---

[1] In preparing this response, the government notes that, because many months remain before trial, many issues, including issues concerning classified discovery, remain to be decided. Moreover, the issues that will be disputed at trial have not been fully framed, and the specific arguments of the defense have not been brought into focus to the extent that they will be following opening statements. In addition, the government has not received any defense discovery to date. As a result, the government's description of its intentions regarding the offering of news articles necessarily is tentative, but the government sets forth its intentions as accurately as it can in good faith at this time.

testimony to be offered in evidence, may refer to certain other news articles; however, the government does not intend to offer those articles in evidence even in redacted form.

*The Wilson "Op Ed" Article*

The Government intends to offer as evidence in its case in chief a copy of the July 6, 2003, *New York Times* "Op Ed" article authored by former Ambassador Joseph Wilson (the "Wilson Op Ed"), and bearing handwritten annotations by the Vice President. A copy of the annotated Wilson Op Ed is annexed to this response as Exhibit A.

The annotated Wilson Op Ed is relevant and admissible for two principal reasons. First, the article itself lies at the center of the sequence of events leading to the defendant's alleged criminal conduct. The article, and the fact that it contained certain criticisms of the administration, including criticisms regarding issues dealt with by the Office of the Vice President ("OVP"), serve both to explain the context of, and provide a motive for, many of the defendant's statements and actions at issue in this case. In particular, admission of the Wilson Op Ed is necessary to assist jurors in understanding how, beginning on July 6, 2003, and continuing through the following week, the attention of the defendant, his colleagues, and the media was heavily focused on responding to the issues raised in that article. Although the substance of the Wilson Op Ed is relevant and admissible to establish the issues to which the defendant and others with whom he worked believed a response was required, and to provide context for the defendant's statements and actions, the government will propose an instruction to the jury that the statements made in the Wilson Op Ed may not be considered as proof of the truth of the matters asserted but, rather, may be considered solely as evidence that the statements in the article were made and published, and may have caused others to take action in response.

The second principal reason for the admissibility of the annotated Wilson Op Ed lies in the annotations placed on a copy of the article by the defendant's immediate superior, the Vice President. Those annotations support the proposition that publication of the Wilson Op Ed acutely focused the attention of the Vice President and the defendant – his chief of staff – on Mr. Wilson, on the assertions made in his article, and on responding to those assertions. The annotated version of the article reflects the contemporaneous reaction of the Vice President to Mr. Wilson's Op Ed article, and thus is relevant to establishing some of the facts that were viewed as important by the defendant's immediate superior, including whether Mr. Wilson's wife had "sen[t] him on a junket."

### News Articles to be Offered in Redacted Form

The Government also intends to adduce proof concerning certain other news articles, which it will seek to offer in redacted form, including the following:

- May 6, 2003, *New York Times* article by Nicholas Kristof;

- June 12, 2003, *Washington Post* article by Walter Pincus;

- June 30, 2003, *New Republic* article by John B. Judis and Spencer Ackerman;

- July 14, 2003, *Chicago Sun Times* column by Robert Novak; and

- July 17, 2003, *Time.com* article by Matthew Cooper and others.

(Copies of these articles are annexed hereto as Exhibits B through F.) The relevance of each of these articles is briefly outlined below. Prior to trial, the government will submit proposed redacted versions of each article.

The May 6, 2003 article by Mr. Kristof is relevant to establish when press reporting relating to Mr. Wilson's trip began, although the article did not refer to Mr. Wilson by name. The Kristof article caused inquiry to be made within the OVP, and eventually by the defendant, about Mr.

3

Wilson's trip, and this led to relevant conversations between the defendant and other witnesses, including Marc Grossman (then Under Secretary of State for Political Affairs), certain CIA officials, and other persons in the OVP, during which the defendant was advised of the CIA employment of Mr. Wilson's wife. The article thus provides context for the evidence of conversations concerning Mr. Wilson's wife about which the defendant is alleged to have made false statements and provided false testimony.

The June 12, 2003, *Washington Post* article by Mr. Pincus (to whom both Mr. Wilson and the defendant spoke prior to publication of the article) is relevant because Mr. Pincus' questions to the OVP sparked discussion within the OVP, including conversations between the defendant and the Vice President regarding how Mr. Pincus' questions should be answered. It was during a conversation concerning Mr. Pincus' inquiries that the Vice President advised the defendant that Mr. Wilson's wife worked at the CIA. (To be clear, the government does *not* contend that the defendant disclosed the employment of Ms. Plame to Mr. Pincus, and Mr. Pincus's article contains no reference to her or her employment.) The article by Mr. Pincus thus explains the context in which the defendant discussed Mr. Wilson's wife's employment with the Vice President. The article also served to increase media attention concerning the then-unnamed ambassador's trip and further motivated the defendant to counter Mr. Wilson's assertions, making it more likely that the defendant's disclosures to the press concerning Mr. Wilson's wife were not casual disclosures that he had forgotten by the time he was asked about them by the Federal Bureau of Investigation and before the grand jury.

The June 2003 *New Republic* article is relevant because it caused the defendant to speak with Ambassador Eric Edelman (who had just left his position as defendant's Principal Deputy) in late

June 2003 and discuss the fact that they could not talk about the former ambassador's trip because of "complications" at the CIA which could not be further discussed on an open telephone line. Additionally, like the June 12, 2003, article by Mr. Pincus, this article increased media attention concerning Mr. Wilson's trip and further motivated the defendant to counter Mr. Wilson's assertions, making it more likely that the defendant's disclosures to the press concerning Mr. Wilson's wife were not casual disclosures that he had forgotten by the time he was asked about them by the Federal Bureau of Investigation and before the grand jury. Only two paragraphs of the lengthy article address Ambassador Wilson's trip, and thus the government anticipates proposing a heavily redacted version of the article, perhaps limited to those two paragraphs.

The July 14 *Chicago Sun Times* column by Mr. Novak is relevant because on the day the article was published, a CIA official was asked in the defendant's presence, by another person in the OVP, whether that CIA official had read that column. (The CIA official had not.) At some time thereafter, as discussed briefly at the March 5 oral argument, the CIA official discussed in the defendant's presence the dangers posed by disclosure of the CIA affiliation of one of its employees as had occurred in the Novak column. This evidence directly contradicts the defense position that the defendant had no motive to lie because at the time of his interview and testimony the defendant thought that neither he nor anyone else had done anything wrong. Moreover, the evidence rebuts the defense assertion that the defendant could have easily forgotten his conversations with reporters Cooper and Miller on July 12 if he learned of the potential consequences of such disclosure as a result of the publication of the Novak column on July 14. Instead, the evidence about the conversation concerning the Novak column provides a strong motive for the defendant to provide false information and testimony about his disclosures to reporters. In addition, there will be evidence that the

defendant discussed aspects of the Novak article at other relevant times after July 14 but prior to his FBI interview and grand jury testimony.

The July 17, 2003, article on *Time.com* by Mr. Cooper and others is relevant because it contains a statement that:

> Some government officials, noting that Wilson's wife, Valerie Plame, is a CIA official who monitors the proliferation of weapons of mass destruction, intimate that she was involved in his being dispatched Niger [*sic*] to investigate reports that Saddam Hussein's government had sought to purchase large quantities of uranium ore, sometimes referred to as yellow cake, for the purposes of building nuclear devices.

The article also reflects an "on the record" quote by the defendant regarding the Vice President's lack of knowledge of Mr. Wilson's trip until "it became public in the last month or so." The evidence will show that an earlier *Time* magazine article published on July 14, 2003, only contained part of defendant's quote. After the OVP contacted *Time* magazine to complain that the defendant's full "on the record" quote was not contained in the article, *Time* published the fuller version of the quote in the July 17, 2003, online column. The statements to Mr. Cooper – an exceedingly rare "on the record" comment by the defendant – as well as OVP's desire to correct the article to include the full quote, are relevant to demonstrating the attention paid to the defendant's statements to Mr. Cooper. The effort to include the defendant's full quote, while at the same time offering no dispute as to the characterization of anonymous government officials concerning Ms. Plame, is important because the Cooper article asserts that government officials had intimated that Ms. Plame was involved in sending Mr. Wilson on the trip. The defendant testified to the contrary – that he did not think that Ms. Plame played any role in sending Mr. Wilson on the trip prior to reading the Novak article. The defendant testified that he thought Mr. Wilson to be fully qualified for what he did. The defendant's grand jury testimony indicates that he did not express any belief to Mr. Cooper on July 12 that Mr. Wilson was

sent on the trip because of his wife and had not thought about that possibility until he read Novak's July 14 column.  Rather, the defendant claims that he told reporters that he was not sure Mr. Wilson even had a wife.  Mr. Cooper, to the contrary, testified that the defendant had advised him on July 12 that the defendant had heard that Mr. Wilson's wife was involved in sending Mr. Wilson on the trip to Niger.  (This conflict in testimony heightens the relevance of the annotations on Exhibit A concerning whether Mr. Wilson's wife had sent him on a "junket.")  Whether the defendant lied about his conversation with Mr. Cooper is a core issue in the case.  As with the *New Republic* article, the government anticipates offering a heavily redacted version of the online article, perhaps limited to the defendant's on-the-record quote and the discussion of Ms. Plame.

### *Articles About Which the Government Expects to Offer Evidence, but Which the Government Does Not Presently Expect to Offer in Evidence Themselves*

In addition to the Wilson Op Ed and the articles described above that the government anticipates offering in redacted form, the government expects its evidence in its case-in-chief to include testimony referring to several additional news articles, as well as passages from the defendant's grand jury testimony that will refer to certain news articles.

Two of these news articles are associated with the Wilson Op Ed.  The government expects that witness testimony and portions of the defendant's grand jury testimony will contain references to the fact that an article concerning Mr. Wilson was published in the *Washington Post* on July 6, 2003 (the same day that the Wilson Op Ed appeared in the *New York Times*), and that Mr. Wilson appeared on *Meet the Press* on that same day and made statements during that appearance consistent with those made in the Wilson Op Ed.  While the government intends to make reference to the *Washington Post* article and the *Meet the Press* appearance as proof of the level of attention being paid to Mr. Wilson, and the level of attention being paid by the defendant and others to responding

to Mr. Wilson at that time, the government does not intend to offer the text of the *Washington Post* article or the transcript of Mr. Wilson's *Meet the Press* appearance, or otherwise to describe any specific statements contained in either of them.

In addition, the government's evidence at trial (including the defendant's grand jury transcript) will refer to a July 17, 2003, *Wall Street Journal* editorial entitled "Yellowcake Remix," which contained quotations from the 2002 National Intelligence Estimate ("NIE"). This editorial resulted from the defendant's transmittal, through another government official, of a copy of portions of the NIE to the *Wall Street Journal* shortly before the editorial was published. This evidence is relevant to establish that during the relevant time frame in July 2003, the defendant, notwithstanding other pressing government business, was heavily focused on shaping media coverage of the controversy concerning Iraqi efforts to obtain uranium from Niger. The government does not intend to offer in evidence a copy of the editorial itself, and will not contend that the defendant's actions in this regard were criminal or otherwise unauthorized.

Finally, the government notes in the interest of completeness that it *may* offer annotated copies of an October 2003 article by Seymour Hersh in *The New Yorker* if it appears that the defendant will pursue the defense that he was too focused on other urgent national security matters to remember accurately what took place during his conversations with reporters. The government received from the OVP multiple copies of the same article bearing handwritten annotations, apparently by the defendant and others in his office. However, it is not the government's present intention to offer those annotated copies.

In conclusion, the government wishes to emphasize that with respect to each of the above articles other than the annotated version of the Wilson Op Ed, the government is willing to consider

offering any appropriate redactions, or alternatively a stipulated summary of the relevant assertions

in the article, and will also agree to an instruction that the articles are not offered to prove the truth

of the matters asserted in the articles, but instead are offered to prove that the statements were made

and published and to explain any actions the defendant took in response.

Respectfully submitted,


_____/s/_____

PATRICK J. FITZGERALD
Special Counsel
Office of the United States Attorney
Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300


Dated:  May 12, 2006

9

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 12th day of May, 2006, I caused true and correct copies of the foregoing to be served on the following parties by electronic mail:

William Jeffress, Esq.
Baker Botts
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Facsimile: 202-585-1087

Theodore V. Wells, Esq.
Paul Weiss
1285 Avenue of the Americas
New York, NY 10019-6064
Facsimile: 212-373-2217

Joseph A. Tate, Esq.
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793
Facsimile: 215-994-2222

John D. Cline, Esq.
Jones Day
555 California Street
San Francisco, CA 94104
Facsimile: 415-875-5700

Respectfully submitted,

_____/s/_____
PATRICK J. FITZGERALD
Special Counsel
Office of the United States Attorney
Northern District of Illinois
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

10