UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | |
|    also known as "Scooter Libby," | ) | |
|    Defendant. | ) | |

**RESPONSE OF I. LEWIS LIBBY TO GOVERNMENT'S RESPONSE
TO COURT'S INQUIRY REGARDING NEWS ARTICLES
THE GOVERNMENT INTENDS TO OFFER AS EVIDENCE AT TRIAL**

Theodore V. Wells, Jr.
James L. Brochin
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Tel.:  (212) 373-3089
Fax:  (212) 492-0089

Joseph A. Tate
Dechert LLP
2929 Arch Street
Cira Centre
Philadelphia, PA  19104
Tel:  (215) 994-2350
Fax: (215) 994-2222

William H. Jeffress, Jr.
Alex J. Bourelly
Baker Botts LLP
1299 Pennsylvania Ave., NW
Washington, DC  20004
Tel.:  (202) 639-7751
Fax:  (202) 585-1087

John D. Cline
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax: (415) 875-5700

May 19, 2006

Defendant I. Lewis Libby, through his counsel, submits this Response to the Government's Response to Court's Inquiry Regarding News Articles the Government Intends to Offer as Evidence at Trial, which was filed on May 12, 2006 (the "Government Response").

## FACTUAL BACKGROUND

At the May 5 hearing on Mr. Libby's Third Motion to Compel Discovery, the Court heard oral argument on Mr. Libby's request for documents generated or received by government officials concerning former Ambassador Joseph Wilson's trip to Niger and/or his wife's role in planning the trip. During the oral argument, the defense urged the Court to grant at least the part of the motion that requested documents generated or received by government officials after the publication of Nicholas Kristof's May 6, 2003 *New York Times* editorial, which was based in part on an interview of Mr. Wilson about his purported findings.[1] Defense counsel explained that these documents were critical to the preparation of the defense because they were necessary to prepare to examine key government and defense witnesses, and because they would help put the facts of the case in proper context for the jury.

Defense counsel argued that much of the case would involve how Mr. Libby and other government officials, including the government's witnesses, responded to the allegations raised in Mr. Kristof's column, Mr. Wilson's July 6 op-ed in the *New York Times*, and other articles. The controversial allegations by Mr. Kristof and Mr. Wilson related to why Mr. Wilson was sent on his trip, what he purportedly learned in Niger, and who received a report of his findings upon his return. As the government now acknowledges in its

---

[1] Specifically, request A(1)(c) in Mr. Libby's motion called for documents reflecting "subsequent discussion, comment or analysis concerning the trip, including government documents concerning the trip and/or Ms. Wilson's role in it that were generated after May 6, 2003, when the controversy surrounding the disputed sixteen words erupted."

Response, how Mr. Libby and other government officials reacted to such articles will be significant issues at trial for both the government and the defense.

The government wants to show that Mr. Libby placed critical importance on responding to Mr. Wilson's allegations about what he learned on his trip and who received his findings. The government further wants to show that the role Valerie Wilson played in planning the trip was of great significance to Mr. Libby. Consequently, the government will argue, Mr. Libby would never have forgotten how and what he learned about Ms. Wilson's identity, and therefore he must have lied to the grand jury about these subjects.

In contrast, the defense wants to show how Mr. Libby and other officials with whom he worked, including officials in the White House, the State Department and the CIA, responded to criticism in the media – particularly the Kristof and Wilson articles. Mr. Libby intends to show that he was involved in responding to the allegations in these articles by addressing the substance of Mr. Wilson's assertions about what he learned on his trip to Niger, and that the role of Mr. Wilson's wife, at least from Mr. Libby's perspective, was a relatively peripheral issue. When Mr. Libby's response to Mr. Wilson's accusations is placed in its full context, it will be both understandable and believable that Mr. Libby may be confused about how and from whom he learned information about Mr. Wilson's wife.

In addition, Mr. Libby wants to show that the government's witnesses were also involved in responding to the allegations in news articles, and that their recollections about their conversations with Mr. Libby and others on this issue may be inaccurate or confused. Moreover, some of those witnesses may be biased against Mr. Libby as a result of the fierce bureaucratic infighting and finger pointing among officials at the White House, the State Department and the CIA that occurred in the spring and summer of 2003. Indeed, in a

2

recent filing, the government conceded that this infighting had occurred, and even stated that such strife is alleged in the indictment. This admission underscores that the defense is entitled to discovery that will shed light on potential witness bias.

It was in the context of discussing the central importance of how witnesses responded to various news articles that defense counsel requested the Court to direct the government to produce the news articles that the government intends to introduce into evidence. In its Response, the government identified six news articles that it intends to offer in its case in chief, two articles and a transcript to which it plans to refer at trial, and one additional article that it may seek to offer as evidence. The government also provided arguments about why it believes those documents are admissible, and about how it plans to use them to bolster certain arguments about Mr. Libby's alleged culpability, motives and state of mind.

## ARGUMENT

The Government's Response proves that the documents the defense has requested are material to the preparation of the defense and should be produced. The government now asserts that it seeks to offer evidence about "the level of attention being paid by the defendant *and others* to responding to Mr. Wilson." Gov't Resp. at 7-8 (emphasis added). We agree with the government that how Mr. Libby and others responded to Mr. Wilson is relevant to this case.

To take one example from the Government's Response, the prosecution wants to introduce a copy of Mr. Wilson's July 6 op-ed that includes notations written by the Vice President, even though it is aware that Mr. Libby testified before the grand jury that he did not see this document until it was shown to him by the FBI in November 2003. On his first day of grand jury testimony, when asked if he recalled discussing this particular document with

3

the Vice President, Mr. Libby testified: "I don't recall that . . . I subsequently learned that he had such an article from the FBI agents who talked to me."  Mar. 5, 2004 Grand Jury Tr. at 82.  During Mr. Libby's second appearance before the grand jury, the Special Counsel asked him: "[W]hy don't I show you the copy of the July 6th column with some handwriting on it.  And I believe we showed this document to you the last time, or at least discussed it, and you indicated that you had not seen this copy of the article with the handwriting until the FBI showed it to you?"  Mar. 24, 2004 Grand Jury Tr. at 86.  Mr. Libby responded: "That's my recollection, sir."  *Id.*

Yet, despite such clear testimony, the government asserts that the Vice President's notations are relevant to the charges against Mr. Libby and that this document is admissible.[2]  The government argues that those notations

> support the proposition that publication of the Wilson Op Ed acutely focused the attention of the Vice President and the defendant – his chief of staff – on Mr. Wilson, on the assertions made in his article, and on responding to those assertions.  The annotated version of the article reflects the contemporaneous reaction of the Vice President to Mr. Wilson's Op Ed article, and thus is relevant to establishing some of the facts that were viewed as important by the defendant's immediate superior, including whether Mr. Wilson's wife had "sent him on a junket."

Gov't Resp. at 3.

The government evidently wants to argue to the jury that "facts that were viewed as important" by the Vice President would have been important to Mr. Libby too, and that the Vice President's notations can be used to show what Mr. Libby focused on during July 2003.  These arguments are tantamount to an acknowledgement that the state of mind of

---

[2]   It is unclear to the defense how the government intends to authenticate this document given that it has previously represented that it does not intend to call the Vice President as a witness.

4

witnesses other than Mr. Libby will be important at trial – precisely what Mr. Libby has been arguing in the pending motion.  Documents reflecting the administration's response to Mr. Wilson's claims about what he learned during his trip and to whom his report was sent are discoverable, whether Mr. Libby has previously seen them or not.

In the same way that the government finds the views of the Vice President regarding Mr. Wilson and his trip relevant to its case, the defense finds the views of other government officials, such as former Under Secretary of State Marc Grossman, regarding Ms. Wilson relevant to its case.  Such information is certainly material to the preparation of the defense, regardless of whether it is ultimately admissible.  Just as Mr. Libby was interacting with the Vice President regarding Mr. Wilson's charges, so was he also interacting with Mr. Grossman and other government officials and their respective agencies.  The defense is entitled, for the purpose of preparing its cross examination of such witnesses, to discover what and when they learned about Mr. Wilson's trip; whether they were involved in the subsequent finger pointing among government agencies that resulted from Mr. Wilson's allegations; how they learned Ms. Wilson worked at the CIA; whether they thought her employment status was classified; and whether they discussed Ms. Wilson's affiliation with the CIA with officials other than Mr. Libby.  The defense needs these documents to prepare to examine witnesses such as Mr. Grossman about such issues.

The government may also wish to argue that because the Vice President wrote down certain information about Mr. Wilson's wife, it is more likely that the Vice President communicated that information to Mr. Libby.  By that logic, however, Mr. Libby is entitled to any documents that mention Ms. Wilson that are contained in the files of other government officials with whom Mr. Libby worked and communicated on this issue.  Again, at this

5

juncture we are asking only for discovery materials to help us prepare for the cross examination of key witnesses; admissibility at trial is not a prerequisite to production for discovery purposes.

The position regarding the relevance of documents the government has belatedly adopted in its Response is the position that the defense has urged all along, and it is certainly the correct one for discovery purposes. The documents we seek will be used to show the context in which Mr. Libby and other witnesses discussed Mr. Wilson's allegations or related claims, to demonstrate the state of mind of Mr. Libby and others, to illuminate possible witness bias, to corroborate Mr. Libby's description of the events, and possibly to impeach witnesses through prior statements they wrote. The universe of documents that are helpful for such purposes is far larger than the small subset of materials that Mr. Libby is entitled to receive under *Brady* and its progeny. Further, production of such documents will not impose any significant burden on the government. At this point, the defense requests only documents in the possession of the Office of Special Counsel, obviating the need for a search through the files of any government agency.

Further, even though the Court has ruled it will not permit the indictment itself to be presented to the jury, unless the Court is prepared to strike portions of the indictment right now, the defense must continue to prepare to rebut all of its allegations. Accordingly, we request that the Court take into account the broad nature of the charges in the indictment (which describes in detail the controversy over the sixteen words and the reactions of government officials) when considering the current motion. *See United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1991) ("When analyzing materiality, a court should focus first on the indictment which sets out the issues to which the defendant's theory of the case must

6

respond."); *see also United States v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005) (analyzing discovery requests pursuant to Rule 16 through the lens of the indictment).  The defense must prepare to confront the charges in the indictment as drafted, and we should not be put in the position of wondering what rulings the Court may make about the indictment on the eve of trial or once trial begins.  Just as important, the government's intended use of news articles demonstrates that even if portions of the indictment are stricken, the fundamental fact remains that a large part of this case involves how Mr. Libby and others responded to Mr. Wilson's allegations concerning his trip to Niger and to whom his report was sent.

   It bears mentioning that the defense does not object to the notion that news articles will constitute admissible evidence in this case.  To the contrary, the defense is convinced that newspaper and magazine articles will be relevant at trial, because the duties of Mr. Libby and other government witnesses during the relevant time period involved responding to media reports.  The items identified by the government are by no means the only relevant articles in this case.  We assume, although we have yet to identify specific articles, that the defense may also offer news articles, both during cross examination of the government's witnesses and in Mr. Libby's defense, should he decide to put one on.

   The government has offered to produce redacted copies of certain articles and to "agree to an instruction that the articles are not offered to prove the truth of the matters asserted in the articles." Resp. at 9.  We believe that although such a jury instruction will undoubtedly be necessary, it is premature for either side to address what redactions of articles may be appropriate at this early stage of the proceedings.  As a general matter, however, the defense is likely to oppose the wholesale redactions apparently contemplated by the government on the grounds that they would distort the true nature of the criticism to which

7

Mr. Libby and others responded.  The jury will not be able to judge the relative importance of Mr. Wilson's allegations and the peripheral nature of information about his wife if it does not understand the full factual context that Mr. Libby and others confronted.

    Finally, our focus on Mr. Wilson's accusations does not signal an intention to use this case to reargue the reasons why the United States invaded Iraq.  Given the jury pool, such an approach would be a foolish and self-destructive trial strategy.  Our only intention is to show the jury what Mr. Libby and other witnesses were doing in June and July of 2003 in response to Mr. Wilson's charges so that it can understand that Mr. Libby may have been confused or may have misrecollected facts in good faith, and did not act with a specific intent to give false testimony.  Only with such context will the jury appreciate that Mr. Libby did not need to attack Mr. Wilson personally to rebut his allegations, because the administration had clear factual support for its position that Mr. Wilson's criticisms were wrong.

## CONCLUSION

For the reasons stated herein and in our other submissions in support of our Third Motion to Compel Discovery, Mr. Libby's pending discovery motion should be granted.

May 19, 2006                                                                 Respectfully submitted,


/s/ Theodore V. Wells, Jr.                              /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                                  William H. Jeffress, Jr.
(DC Bar No. 468934)                                     (DC Bar No. 041152)
James L. Brochin                                        Alex J. Bourelly
(DC Bar No. 455456)                                     (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                           Baker Botts LLP
 & Garrison LLP                                         1299 Pennsylvania Ave., NW
1285 Avenue of the Americas                             Washington, DC  20004
New York, NY  10019-6064                                (202) 639-7751
(212) 373-3089

/s/ Joseph A. Tate                                      /s/ John D. Cline
Joseph A. Tate                                          John D. Cline
Dechert LLP                                             (D.C. Bar No. 403824)
2929 Arch Street                                        Jones Day
Cira Centre                                             555 California Street, 26th Floor
Philadelphia, PA  19104                                 San Francisco, CA  94104
                                                        Tel:  (415) 626-3939
                                                        Fax:  (415) 875-5700