UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                        )
UNITED STATES OF AMERICA,           )
                                                        )
                                                        )
        v.                                              )        Criminal No. 05-394 (RBW)
                                                        )
I. LEWIS LIBBY,                                )
                                                        )
                        Defendant.             )
_____)

**ORDER**

On May 5, 2006, this Court heard argument on the defendant's Third Motion to Compel

Discovery Under Federal Rule of Criminal Procedure 16 and Brady v. Maryland, 373 U.S. 83

(1963).  This Court has previously set forth an extensive discussion of the applicable discovery

standards it must employ in resolving motions to compel filed under Rule 16 and Brady.  United

States v. Libby, ____ F. Supp. 2d ____, ____, 2006 WL 574260, at *2-4 (D.D.C. Mar. 10, 2006).

There is no need to repeat these standards here.  After carefully considering the pleadings

submitted by the parties and the oral arguments they presented in connection with this current

motion, the Court must, as it stated during the May 5, 2006 hearing, conclude that the

defendant's motion to compel is largely without merit.

The motion now before the Court seeks an array of documents through ten separately

numbered requests.  Before addressing the merits of these requests, it is helpful to set forth what

this case is and is not about, as this reality defines the scope of the discovery the defendant is

entitled to receive.

On October 28, 2005, the defendant was charged in a five-count indictment with

1

obstruction of justice in violation of 18 U.S.C. § 1503 (2000), two counts of false statements in violation of 18 U.S.C. § 1001(a)(2) (2000), and two counts of perjury in violation of 18 U.S.C. § 1623 (2000). Indictment at 1. All of these charges arise from a criminal investigation into the possible unauthorized disclosure of classified information about Valerie Plame Wilson's affiliation with the Central Intelligence Agency ("CIA") to several journalists. Indictment at 8, ¶ 25. And specifically, the charges against the defendant are predicated upon statements that he allegedly made to Special Agents of the Federal Bureau of Investigation ("FBI") in October and November, 2003, id. at 9, ¶ 26, and testimony he provided to a grand jury in March 2004, id. at 11, ¶ 30. The allegedly false statements related to conversations the defendant had with news reporters Tim Russert, Judith Miller, and Matthew Cooper in June and July 2003. Id. at 11-22.

While these purportedly false statements were made against the backdrop of Ambassador Joseph Wilson's comments about the validity of President George W. Bush's proclamation in his January 28, 2003 State of the Union address that "[t]he British government has learned that Saddam Hussein recently sought significant quantities of uranium from Africa," Ambassador Wilson's comments have only peripheral pertinence to this case. Moreover, although the Special Counsel's criminal investigation initially focused on whether government officials illegally disclosed Ms. Wilson's employment with the CIA, the defendant has not been charged with any such violation. Rather, the only question the jury will be asked to resolve in this matter will be whether the defendant intentionally lied when he testified before the grand jury and spoke with FBI agents about statements he purportedly made to the three news reporters concerning Ms. Wilson's employment. The prosecution of this action, therefore, involves a discrete cast of characters and events, and this Court will not permit it to become a forum for debating the

2

accuracy of Ambassador Wilson's statements, the propriety of the Iraq war or related matters

leading up to the war, as those events are not the basis for the charged offenses. At best, these

events have merely an abstract relationship to the charged offenses.[1]

      Nonetheless, this Court recognizes that the charged offenses occurred against this

backdrop and appreciates that some reference to Ambassador Wilson, his trip to Niger, and his

wife during the trial is probably inevitable. Any testimony or other evidence relating to these

subjects, however, will be admitted for limited purposes—to establish what the principal players

(the defendant, the three news reporters, and any other key witnesses) knew about Ambassador

Wilson's wife's affiliation with the CIA and when they knew it, and as evidence of the

defendant's purported motive to reveal Ms. Wilson's affiliation with the CIA to reporters. In

fact, as to this first basis of admissibility, as the indictment makes clear, one aspect of the

government's case will be an attempt to establish the defendant's knowledge of Ms. Wilson's

affiliation with the CIA before his conversations with Miller, Russert, and Cooper. See

Indictment at 12-13, ¶ 33(a)(ii). However, whether the information possessed by any of the

principal players was true or not is immaterial to this case; rather, what will be relevant in regards

to either the prosecution or defense is what, if anything, they knew about the subject and when

they acquired that information. And documents reflecting what these principal players may have

---

    [1] This reality is not altered simply because the government intends to introduce into evidence at trial various news articles that discuss Ambassador Wilson's trip to Niger. See Government's Response to Court's Inquiry Regarding News Articles the Government Intends to Offer as Evidence at Trial. The government does not intend to introduce these articles for the truth of the matters asserted, id. at 1, but rather, only for the limited purpose of demonstrating that the defendant had a motive to make the statements to the media representatives that form the basis for the charged offenses. Id. at 2-7. As such, the truth of the articles has no bearing on the prosecution of this case and the jury will be so instructed if requested by either party. Moreover, as the government has noted, it is highly unlikely that it will seek to introduce as evidence the full text of the articles during the trial. And the Court suspects that it would not permit the government to introduce the entire articles if it sought to do so. What will be presented to the jury will be addressed by this Court in response to a properly filed motion in limine.

known (or did not know) could be used to attack the credibility and recollection of these potential witnesses.

In response to the charges filed against him, the defendant relates that one aspect of his defense will be that he was not engaged in a sinister effort to punish Ambassador Wilson or Valerie Plame Wilson; rather, any discussions he had with the reporters concerning Ambassador Wilson, his trip to Niger, or Valerie Plame Wilson were conducted solely for the purpose of refuting the accuracy of Ambassador Wilson's pronouncements. Def.'s Mem. at 3. According to the defendant, his requests for documents relating to discussions he had with other government officials or news reporters that show that he was simply engaged in legitimate efforts to rebut the merits of Ambassador Wilson's findings are material to the preparation of his defense, as their content would arguably support his claim that the government's position that he intended to make false statements, commit perjury, and obstruct justice is incorrect. In limited respect, the Court agrees. See, e.g., United States v. Dunnigan, 507 U.S. 87, 94 (1993) (indicating that intent is an element of a perjury charge); United States v. Montague, 202 F.3d 261, 2000 WL 14169 (4th Cir. 2000) (noting that intent is an element of a false statement charge); United States v. Baker, 626 F.2d 512, 516 (5th Cir. 1980) (same). Therefore, if the government is in possession of documents that show the defendant's intent to participate or his actual participation in such legitimate efforts, those documents must be produced pursuant to Rule 16.

Although the defendant is entitled to the production of the above category of documents, the majority of the defendant's remaining requests must be denied. Seven of the defendant's requests seek documents concerning Ambassador Joseph Wilson and his wife, Valerie Plame Wilson. Specifically, these requests seek documents concerning Ambassador Wilson's trip to

4

Niger, documents relating to any possible attempt by other government officials to punish or seek
revenge against Ambassador Wilson or his wife occasioned by Ambassador Wilson's disclosure
of what he allegedly learned during his trip, and documents reflecting Valerie Plame Wilson's
affiliation with the CIA.[2]  For several reasons, and contrary to the defendant's position otherwise,
the bulk of the documents which may be responsive to these requests are simply not material to
the preparation of the defendant's defense.  First, the requests seek all documents from a variety
of Executive Branch components, without regard for whether the defendant or any likely
witnesses even reviewed or ever knew about these documents.  Such requests seek documents
that are far too attenuated to any issue in this case to fall within the scope of Rule 16(a)(1)(E).

---

[2]  Specifically, the defendant's requests are for:

(1)    All documents and information generated or received by the State Department, the CIA, the
Executive Office of the President and/or the National Security Council ("NSC"), concerning Mr.
Wilson's trip to Niger, including
    (a)    the origins of Mr. Wilson's trip to Niger, including any role played by Ms. Wilson in
connection with the trip;
    (b)    reports about the trip; and
    (c)    subsequent discussion, comment or analysis concerning the trip, including government
documents concerning the trip and/or Ms. Wilson's role in it that were generated after
May 6, 2003, when the controversy surrounding the disputed sixteen words erupted.
(2)    All documents or communications reflecting any possible attempt or plan by any government
official to punish or seek revenge against Mr. Wilson or Ms. Wilson.
(3)    All documents reflecting Mr. Wilson's communications with officials at the State Department or
other government agencies concerning his trip to Niger or the "sixteen words."
(4)    All documents reflecting discussions within the government of whether to release a public
statements during the week of July 7, 2003 regarding the inclusion of the "sixteen words" in the
2003 State of the Union Address, including all drafts of the July 11, 2003 statement issued by
Director of Central Intelligence George Tenet.
(5)    Any notes from the September 2003 meeting in the Situation Room at which Colin Powell is
reported to have said that (a) everyone knows that Mr. Wilson's wife worked at the CIA and that
(b) it was Mr. Wilson's wife who suggested that the CIA send her husband on a mission to Niger.
(6)    All documents or information concerning the identity of any government official outside the CIA
who was aware prior to July 14, 2003 that Ms. Wilson worked for the CIA.

Third Motion of I. Lewis Libby to Compel Discovery under Rule 16 and Brady (Def.'s Mot.) at 13-14.  In addition,
as to the first request, the defendant lists individuals for whom he claims responsive documents are critical to the
preparation of his defense.  Def.'s Mot. at 15-16.

Rather, the only documents that would be material to the preparation of the defense are those that were reviewed by either the defendant or potential witnesses.  See United States v. George, 786 F. Supp. 56, 64 (D.D.C. 1992) ("It is immaterial what Congress knew unless the defendant was aware of their knowledge.").  Thus, for example, the fact that other governmental officials may have known before July 14, 2003, that Ms. Wilson worked for the CIA is completely immaterial unless that information was shared with either the defendant, Miller, Russert, or Cooper. Moreover, the only use that could be made with the vast majority of the requested documents that fall within the seven categories would be to challenge the accuracy of Ambassador Wilson's comments about the validity of President Bush's statement about Saddam Hussein and Niger in his January 28, 2003 State of the Union address.  And, as previously discussed, documents and information which may have bearing on the accuracy or inaccuracy of the President's statement on that topic, why the United States invaded Iraq, and the circumstances surrounding Ambassador Wilson's trip to Niger and his reported findings are wholly immaterial to this case.[3] See George, 786 F. Supp. at 60-64.  Thus, of these seven categories of documents, the only documents that would be material to the preparation of the defense are those which tend to show that the defendant's conversations with government officials did or did not occur as alleged in the indictment.[4]  See, e.g., Indictment at 7-8.

---

[3]  The defendant's request for "[a]ll documents or information concerning the identity of any government official outside the CIA who was aware prior to July 14, 2003 that Ms. Wilson worked for the CIA" must be rejected for the same reason.  Ms. Wilson's documented status as an employee of the CIA, unless viewed by the defendant or the content of the documentation was made known to him or a potential government witness, is simply immaterial to the preparation of the defense and thus not discoverable.

[4]  The government contends that production of documents of this nature may implicate grand jury secrecy rules.  Gov't's Opp'n at 26.  This Court is not in the position at this point to determine what documents, if any, are not subject to production pursuant to Fed. Crim. R. 6(e).  If the government determines that there exist documents

(continued...)

In addition, the defendant seeks a variety of documents relating to the 2002 National Intelligence Estimate (NIE) and its declassification.[5]  However, during the May 5, 2006 hearing, the government noted that there is no allegation in the indictment that findings of the NIE were improperly disclosed by the defendant and that it will make no such argument during the trial.[6]  Accordingly, since the legality of the defendant's disclosures of the NIE will not be at issue in this case, documents relating to it and its declassification need not be produced.

Finally, this Court has examined, in camera, the CIA's referral to the Department of Justice concerning the disclosure of Ms. Wilson's affiliation with the CIA, and concludes that it is simply not material to the preparation of the defendant's defense.  The defendant's request for disclosure of documents related to the referral must therefore be denied.

For the foregoing reasons, the defendant's motion, although largely without merit, is granted in part and denied in part.  Accordingly, it is hereby this 2nd day of June, 2006,

**ORDERED** that the government shall produce, forthwith, to the extent it has not already done so, the following category of documents which are currently in its physical possession or

---

[4](...continued)
that are covered by Rule 6(e), it is welcome to seek a protective order from this Court pursuant to Rule 16(d).

[5]  Specifically, the following requests have been made by the defendant:

(1)    All documents relating to the possible declassification of the 2002 National Intelligence Estimate ("NIE") (in whole or in part).
(2)    All documents relating to or reflecting public comments by government officials about the NIE or its contents prior to July 18, 2003.

Def.'s Mot. at 14.

[6]  The Court also notes that upon request by the defendant, it will instruct the jury that there are no allegations that the disclosure of the NIE was in anyway improper or illegal.

7

which the Special Counsel has knowledge,[7] and which are not documents subject to production

under the Jencks Act, 18 U.S.C. § 3500 (2000) or <u>Giglio v. United States</u>, 405 U.S. 150 (1972):

    (1)    All documents which tend to demonstrate that the <u>defendant</u> was involved in an effort to rebut the accuracy of Ambassador Wilson's findings concerning his trip to Niger, and thus any documentation of discussions the defendant had concerning Ambassador Joseph Wilson, his trip to Niger, or Valerie Plame Wilson with any news reporters or other government officials that were conducted in an attempt to achieve this objective;

    (2)    All documents which tend to show that the defendant's conversations with government officials did or did not occur as alleged in the indictment.

    (3)    All documents, from any individuals, whether or not they will be called as witnesses in the government's case-in-chief, that are discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).[8]

In all other respects the defendant's motion is **DENIED.**

**SO ORDERED.**

                                      _____
                                        REGGIE B. WALTON
                                   United States District Judge

---

[7] In one of this Court's earlier opinions, <u>United States v. Libby</u>, ___ F. Supp. 2d ___, ___, 2006 WL 574260, at *5-6 (D.D.C. Mar. 10, 2006), the Court concluded that the CIA and the Office of the Vice President were closely aligned with the protection and thus documents possessed by those entities were discoverable. <u>Id.</u> The Court will not revisit that ruling here. In response to the current motion, the government contends that the White House, the National Security Council, and the State Department are not closely aligned with the prosecution, and thus production of documents in the possession of those agencies should not be compelled. Gov't's Opp'n at 32. The defendant, however, has limited his requests to documents which are in the Special Counsel's possession or which the Special Counsel has knowledge. Def.'s Reply at 23. This limitation would appear to resolve any issue concerning what documents are covered by this Order. To the extent it does not, the defendant shall advise the Court and it will revisit this issue. Therefore, the government at this time is required to produce only those documents possessed by the Special Counsel or which the Special Counsel has knowledge as limited by this Court's earlier opinion.

[8] Both parties submitted additional pleadings on the issue of whether production of documents should be limited to government witnesses, or should also include defense witnesses. Although helpful, the Court does not need to reach that issue as it is simply requiring the production of documents relating to the allegations in the indictment that are in the physical possession of the government.