# EXHIBIT A

# JONES DAY

555 CALIFORNIA STREET • 26TH FLOOR • SAN FRANCISCO, CALIFORNIA 94104-1500
TELEPHONE: 415-626-3939 • FACSIMILE: 415-875-5700

Direct Number: 415-875-5812
jcline@jonesday.com

July 31, 2006

**VIA EMAIL AND U.S. MAIL**

Patrick J. Fitzgerald, Esquire
Special Counsel
Bond Building
1400 New York Avenue, NW
Ninth Floor
Washington, D.C. 20530

Re:    United States v. I. Lewis Libby, No. CR 05-394 (RBW); Fed. R. Crim. P.
16(b)(1)(C) Disclosure for Dr. Robert A. Bjork

Dear Mr. Fitzgerald:

I am writing to complete the disclosure contemplated under Fed. R. Crim. P. 16(b)(1)(C) for the proposed expert testimony of Dr. Robert A. Bjork.

## I.    SUMMARY OF OPINIONS.

If Dr. Bjork is called as a defense witness at trial, we expect him to testify to the following opinions concerning human memory:

1.    Human memory does not function like a tape recorder, with memories recorded, retained, and played back verbatim. At the encoding phase of memory (i.e., during the event itself and the period immediately following the event), events and information are not stored in a literal way, but rather are interpreted and then stored in memory with respect to existing memories, expectations, schemas, and goals. During the retention interval (the period between encoding and retrieval) stored memories do not tend to remain in the as-encoded state, but rather are malleable. Existing memory representations are influenced and modified by subsequent and prior related events and information. Finally, as discussed in point 2 below, retrieved memories are reconstructions, rather than exact reproductions of past events.

2.    The reconstruction process at the time of retrieval (when a person is called upon to remember the information) may be affected by associations with other events or other information, by inferences, by implicit and explicit cues, by schemas with which the person is familiar, by the person's expectations, and by other factors, some of which are addressed below.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS
PITTSBURGH • SAN DIEGO • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Patrick J. Fitzgerald, Esquire
July 31, 2006
Page 2

Memory errors may arise during this reconstruction process, including both inaccurate memories of real events and seemingly real memories of events that did not occur.

3.      A person's confidence in the accuracy of his memory may correlate weakly, if at all, with the accuracy of the memory. Thus, a person may be very confident that a memory is accurate when in fact it is inaccurate.

4.      Through the process of "content borrowing," persons have been found to construct inaccurate, but seemingly real, memories out of pieces of true memories. Similarly, memory research has shown the existence of "memory conjunction" errors. A memory conjunction error occurs when a person combines memories of two distinct events to form an inaccurate memory.

5.      A person may recall information accurately but attribute the information to an incorrect source. For example, a person may accurately recall the content of a conversation but recall incorrectly the person with whom he had the conversation. This is known as a source misattribution error.

6.      When a person has recalled information once, subsequent recall of the information is more heavily influenced by the content of the first recall than by the initially stored memory of the information itself. If the initial recall is incorrect, subsequent recalls are likely to repeat the error.

7.      A person is more likely to encode accurately and to retrieve accurately information that is important to him than information that is unimportant to him.

8.      Divided attention during encoding has a strong negative effect on later recall of the information.

9.      Divided attention at the time of retrieval has relatively little effect on recall of information obtained earlier, but it does have a negative effect on recall for the source of the information and thus may create source misattribution errors.

10.      Through the process of "retroactive interference," information that a person obtains between encoding and retrieval can impair retrieval of the encoded memories and cause memory errors. Similarly, through "proactive interference," information that a person obtains before encoding can impair retrieval of the memory.

11.      Memory research has shown that people can forget that they once remembered something, much as they forget other experiences. This is known as the "forgot it all along" effect and becomes especially likely when the current situational, semantic, or interpersonal cues and context differ from cues and context at the time of the earlier recall. In general, recall of

JONES DAY

Patrick J. Fitzgerald, Esquire
July 31, 2006
Page 3

events and information is very cue-dependent; whether something that exists in memory can be recalled and how that memory representation is reconstructed depends heavily on the current cues.

12.     Verbatim recall and "gist" recall of conversations have been shown to drop significantly after a delay of even a few days, with the loss of verbatim recall especially significant.  In addition, people who hear a conversation have less verbatim recall and are more prone to innocent fabrication (i.e., to incorrectly recall information that was not part of the conversation) than people who both hear and observe the conversation.  When gist memories remain, but details are lost, errors arising from inferences and reconstruction become more likely.

13.     Forgetting, rather than being simply a weakness of memory, is also an essential component in the efficient use of memory.  To be effective in their lives and jobs, people must constantly update their memories.  Without some means to set aside or suppress (i.e., forget) information that is now out of date and a source of confusion and error, people would become paralyzed by proactive interference.  Memory research has demonstrated that implicit and explicit cues that learned information is out of date and can be forgotten hasten the forgetting of that information and enhance certain errors tied to that information, such as source misattribution.

## II.     BASES AND REASONS FOR THE OPINONS.

Dr. Bjork bases these opinions on his study of human memory over more than forty years and on findings from research on human memory by himself and others.  Among the studies on which Dr. Bjork relies in formulating his opinions are the following representative materials.

1.     Catherine O. Fritz, Peter E. Morris, Robert A. Bjork, Rochel Gelman, and Thomas D. Wickens, When Further Learning Fails:  Stability and Change Following Repeated Presentation of Text, British Journal of Psychology, Vol. 91, at 493 (2000).

2.     Michael C. Anderson, Robert A. Bjork, and Elizabeth L. Bjork, Remembering Can Cause Forgetting:  Retrieval Dynamics in Long-Term Memory, Journal of Experimental Psychology:  Learning, Memory, and Cognition, Vol. 20, No. 5, at 1063 (1994).

3.     Aaron S. Benjamin, Robert A. Bjork, and Bennett L. Schwartz, The Mismeasure of Memory:  When Retrieval Fluency Is Misleading as a Metamnemonic Index, Journal of Experimental Psychology:  General, Vol. 127, No. 1, at 55 (1998).

4.     John S. Shaw III, Robert A. Bjork, and Allison Handal, Retrieval-Induced Forgetting in an Eyewitness-Memory Paradigm, Psychonomic Bulletin & Review, Vol. 2, No. 2, at 249 (1995).

JONES DAY

Patrick J. Fitzgerald, Esquire
July 31, 2006
Page 4


5.    Daniel R. Kimball and Robert A. Bjork, <u>Influences of Intentional and Unintentional Forgetting on False Memories</u>, Journal of Experimental Psychology:  General, Vol. 131, No. 1, at 116 (2002).

6.    Elizabeth L. Bjork and Robert A. Bjork, <u>Continuing Influences of To-Be-Forgotten Information</u>, Consciousness and Cognition, Vol. 5, at 176 (1996).

7.    Asher Koriat, Robert A. Bjork, Limor Sheffer, and Sarah K. Bar, <u>Predicting One's Own Forgetting:  The Role of Experience-Based and Theory-Based Processes</u>, Journal of Experimental Psychology:  General, Vol. 133, No. 4, at 643 (2004).

8.    S.M. Smith, A.M. Glenberg, and Robert A. Bjork, <u>Environmental Context and Human Memory</u>, Memory & Cognition, Vol. 6, at 342 (1978).

9.    Larry L. Jacoby, Vera Woloshyn, and Colleen Kelley, <u>Becoming Famous Without Being Recognized:  Unconscious Influences of Memory Produced By Dividing Attention</u>, J. Experimental Psych., Vol. 118, No. 2, at 115 (1989).

10.    Angela K. Troyer, Gordon Winocur, Fergus I. M. Craik, and Morris Moscovitch, <u>Source Memory and Divided Attention:  Reciprocal Costs to Primary and Secondary Tasks</u>, Neuropsychology, Vol. 13, No. 4, at 467 (1999).

11.    Timothy N. Odegard and James M. Lampinen, <u>Memory Conjunction Errors for Autobiographical Events:  More than Just Familiarity</u>, Memory, Vol. 12, No. 3, at 288 (2004).

12.    Sharon L. Hannigan and Mark Tippens Reinitz, <u>Migration of Objects and Inferences Across Episodes</u>, Memory & Cognition, Vol. 3, No. 3, at 434 (2003).

13.    Ute J. Bayen, Glenn V. Nakamura, Susan E. Dupuis, and Chin-Lung Yang, <u>The Use of Schematic Knowledge About Sources in Source Monitoring</u>, Memory & Cognition, Vol. 28, No. 3, at 480 (2000).

14.    Sharon L. Hannigan & Mark Tippens Reinitz, <u>A Demonstration and Comparison of Two Types of Inference-Based Memory Errors</u>, Journal of Experimental Psychology: Learning, Memory, and Cognition, Vol. 27, No. 4, at 931 (2001).

15.    Laura Campos and Maria L. Alonso-Quecuty, <u>Remembering a Criminal Conversation:  Beyond Eyewitness Testimony</u>, Memory, Vol. 14, No. 1, at 27 (2006).

16.    Michelle M. Arnold and D. Stephen Lindsay, <u>Remembrance of Remembrance Past</u>, Memory, Vol. 13, No. 5, at 533 (2005).

JONES DAY

Patrick J. Fitzgerald, Esquire
July 31, 2006
Page 5


17.    Laura M. Padilla-Walker and Debra A. Poole, <u>Memory for Previous Recall:  A Comparison of Free and Cued Recall</u>, Applied Cognitive Psychology, Vol. 16, at 515 (2002).

18.    Susan Joslyn, Elizabeth Loftus, Amanda McNoughton, and Jayme Powers, <u>Memory for Memory</u>, Memory & Cognition, Vol. 29, at 789 (2002).

19.    Michelle M. Arnold and Stephen Lindsay, <u>Remembering Remembering</u>, Journal of Experimental Psychology:  Learning, Memory, and Cognition, Vol. 28, No. 3, at 521 (2002).

20.    James M. Lampinen, Jeffrey S. Neuschatz, and David G. Payne, <u>Source Attributions and False Memories:  A Test of the Demand Characteristics Account</u>, Psychnomic Bulletin & Review, Vol. 6, No. 1, at 130 (1999).

21.    David G. Payne, Claude J. Elie, Jason M. Blackwell, and Jeffrey S. Neuschatz, <u>Memory Illusions:  Recalling, Recognizing, and Recollecting Events That Never Occurred</u>, Journal of Memory and Language, Vol. 35, at 261 (1996).

22.    James M. Lampinen, Christopher R. Meier, Jack D. Arnal, and Juliana K. Leding, <u>Compelling Untruths:  Content Borrowing and Vivid False Memories</u>, Journal of Experimental Psychology:  Learning, Memory, and Cognition, Vol. 31, No. 5, at 954 (2005).

23.    Jonathon B. Holmes, Harriet S. Waters, and Suparna Rajaram, <u>The Phenomenology of False Memories:  Episodic Content and Confidence</u>, Journal of Experimental Psychology, Vol. 24, No. 4, at 1026 (1998).

24.    Henry L. Roediger III and Kathleen B. McDermott, <u>Creating False Memories: Remembering Words Not Presented in Lists</u>, Journal of Experimental Psychology:  Learning, Memory, and Cognition, Vol. 21, No. 4, at 803 (1995).

25.    Henry L. Roediger III, Kathleen B. McDermott, David B. Pisoni, and David A. Gallo, <u>Illusory Recollection of Voices</u>, Memory, Vol. 12, No. 5, at 586 (2004).

26.    Dennis J. Delprato, <u>Retroactive Interference as a Function of Degree of Interpolated Study Without Overt Retrieval Practice</u>, Psychnomic Bulletin & Review, Vol. 12, No. 2, at 345 (2005).

27.    Kenneth A. Norman and Daniel L. Schacter, <u>False Recognition in Younger and Older Adults:  Exploring the Characteristics of Illusory Memories</u>, Memory & Cognition, Vol. 25, No. 6, at 838 (1997).

JONES DAY

Patrick J. Fitzgerald, Esquire
July 31, 2006
Page 6

28.    David A. Gallo and Henry L. Roediger III, <u>The Effects of Associations and Aging on Illusory Recollection</u>, Memory & Cognition, Vol. 31, No. 7, at 1036 (2003).

29.    Kenneth A. Deffenbacher and Elizabeth F. Loftus, <u>Do Jurors Share a Common Understanding Concerning Eyewitness Behavior</u>, Law and Human Behavior, Vol. 6, No.1, at 15 (1982).

30.    Ulric Neisser, <u>John Dean's Memory:  A Case Study</u>, Cognition, Vol. 9, at 1 (1981).

31.    Daniel L. Greenberg, <u>President Bush's False "Flashbulb" Memory of 9/11/01</u>, Applied Cognitive Psychology, Vol. 18, at 363 (2004).

Very truly yours,

John D. Cline

# EXHIBIT B

# ROBERT A. BJORK

## SHORT CURRICULUM VITAE

University of California, Los Angeles
Department of Psychology
Los Angeles, California 900950-1563, USA

Phone: (310) 825-2288
Fax: (310) 206-5895
E-mail: RABjork@psych.ucla.edu

## EDUCATION

PhD., Psychology, *Stanford University,* 1966;
    Advisors: W.K. Estes, R.C. Atkinson, G.H Bower, J.G. Greeno
BA, Mathematics, *University of Minnesota,* 1961.

## EMPLOYMENT

1974-present  Professor; Distinguished Professor (2005- )
          Department Chair (2003- )
          *University of California, Los Angeles;*
1966-1974    Assistant Professor to Professor
          *University of Michigan, Ann Arbor*

## RESEARCH INTERESTS

Human learning and memory.  Implications of the science of learning for instruction
    and training

## SELECTED HONORS & AWARDS

2005-2006  Distinguished Service to Psychological Science, American Psychological
          Association
2001-2002  Fellow, Center for Advanced Study in the Behavioral Sciences
          Leverhulme Visiting Professor, University of St. Andrews, Scotland
1998        Distinguished Scientist Lecturer Award, American Psychological
          Association
1992        Distinguished Teaching Award, University of California, Los Angeles
1988        Charter Fellow, American Psychological Society
1985        Fellow, Society of Experimental Psychologists
1974        Fellow, American Psychological Association
1965-1966  National Science Foundation Graduate Fellowship: Stanford University
1962-1965  National Defense Education Act Fellowship, Stanford University
1961        Phi Beta Kappa, University of Minnesota

## EDITORIAL RESPONSIBILITIES

1998-2004  Co-editor, *Psychological Science in the Public Interest*
1995-2000  Editor, *Psychological Review*
1982-1985  Editor, *Memory & Cognition*
1972-1981  Action Editor, *Cognitive Psychology*

2

OTHER NATIONAL AND REGIONAL RESPONSIBILITIES
    2006-2007   *Chair-elect,* Council of Graduate Departments of Psychology
    2002-2004   *Chair,* Cognition and Student Learning Panel, Institute of Education
                     Sciences
    2000-2001   *President,* American Psychological Society
    1998-1999   *Chair,* Psychonomic Society
    1998-1999   *President,* Western Psychological Association
    1998-1999   *Chair,* Council of Editors, American Psychological Association
    1990-1991   *Chair,* Society of Experimental Psychologists
    1988-1994   *Chair,* Committee on Techniques for the Enhancement of Human
                     Performance, National Research Council

      2005-2008   *Member,* Executive Board, Council of Graduate Departments of
                      Psychology
      2000-2004   *Member,* Committee on Support for Thinking Spatially: Incorporating
                      Geographic Information Science across the K-12 Curriculum, National
                      Research Council
      2000-2001   *Member,* Executive Board, Council of Scientific Society Presidents
      1999-2004   *Member,* National Advisory Committee on the Decade of Behavior
      1995-2000   *Member,* Board of Governors, Psychonomic Society
      1995-1998   *Member,* Board of Directors, American Psychological Society
      1985-1987   *Member,* Committee on Techniques for the Enhancement of Human
                      Performance, National Research Council
      1984-1985   *Member,* Board of Scientific Affairs, American Psychological
                      Association

RECENT GRANTS AND CURRENT COMMITMENTS
    08/01/03—08//01/08 James S. McDonnell Foundation
        **"Applying Cognitive Psychology to Enhance Educational Practice"**
        Collaborative Activity Grant, Henry L. Roediger, PI.
        Role: Co-Investigator; Commitment: 20%

    01/01/03—01/01/06 Institute of Education Sciences, U. S. Department of Education
        **"Introducing Desirable Difficulties for Educational Application in Science"**
        **(IDDEAS),** Robert Bjork, PI.
        Role: PI; Commitment: Ends January 2006.

    9/01/00—08/31/03 National Science Foundation
        **"Increasing Public Understanding of Behavioral and Social Science Research"**
        Stephen Ceci, PI.
        Role: Co-Investigator; Commitment: Ended

01/01/99—08/31/02

3

United States Israel Binational Science Foundation
**"The Monitoring of One's Knowledge during Study: Illusions of Competence and How they Might be Remedied"** Asher Koriat, PI.
Role: Co-Investigator; Commitment: Ended.

SELECTED PUBLICATIONS (OUT OF 123 ITEMS)

Bjork, R. A., & Allen, T. W. (1970). The spacing effect: Consolidation or differential encoding? *Journal of Verbal Learning and Verbal Behavior, 9,* 567-572.

Bjork, R. A., & Whitten, W. B. (1974). Recency-sensitive retrieval processes in long-term free recall. *Cognitive Psychology, 6,* 173-189.

Smith, S. M, Glenberg, A. M., & Bjork, R. A. (1978). Environmental context and human memory. *Memory & Cognition, 6,* 342-353.

Landauer, T. K., & Bjork, R. A. (1978). Optimal rehearsal patterns and name learning. In M. M. Gruneberg, P. E. Morris, & R. N. Sykes (Eds.), *Practical aspects of memory* (pp. 625-632). London: Academic Press.

Geiselman, R. E., Bjork, R. A., & Fishman, D. (1983). Disrupted retrieval in directed forgetting: A link with posthypnotic amnesia. *Journal of Experimental Psychology: General, 112,* 58-72.

Richardson-Klavehn, A., & Bjork, R. A. (1988). Measures of memory. *Annual Review of Psychology, 39,* 475-543.

Druckman, D., & Bjork, R. A. (Eds.). (1991). *In the mind's eye: Enhancing human performance.* Washington, DC: National Academy Press.

Schmidt, R. A., & Bjork, R. A. (1992). New conceptualizations of practice: Common principles in three paradigms suggest new concepts for training. *Psychological Science, 3,* 207-217.
    Reprinted: 1993, *Effective School Practices, 12,* 36-48.

Bjork, R. A., & Bjork, E. L. (1992). A new theory of disuse and an old theory of stimulus fluctuation. In A. Healy, S. Kosslyn, & R. Shiffrin (Eds.), *From learning processes to cognitive processes: Essays in honor of William K. Estes* (Vol. 2, pp. 35-67). Hillsdale, NJ: Erlbaum.

Jacoby, L. L., Bjork, R. A., & Kelley, C. M. (1994). Illusions of comprehension, competence, and remembering. In D. Druckman and R. A. Bjork (Eds.), *Learning, remembering, believing: Enhancing human performance* (pp.57-80). Washington, DC: National Academy Press.

Druckman, D. & Bjork, R.A. (Eds.) (1994). *Learning, remembering, believing: Enhancing human performance.* Washington, DC: National Academy Press.

Anderson, M.C., Bjork, R.A., & Bjork, E.L. (1994). Remembering can cause forgetting: Retrieval dynamics in long-term memory. *Journal of Experimental Psychology: Learning, Memory, and Cognition, 20,* 1063-1087.

Bjork, E.L., & Bjork, R.A. (Eds.) (1996). *Memory.* Volume 10, E.C. Carterette and M.P. Friedman (Eds.), *Handbook of perception and cognition.* New York: Academic Press.
    (CHOICE Outstanding Academic Book, 1997)

4

Benjamin, A. S., Bjork, R. A., & Schwartz, B. L. (1998). The mismeasure of memory: When retrieval fluency is misleading as a metamnemonic index. *Journal of Experimental Psychology: General, 127*, 55-68.

Bjork, R. A. (1999). Assessing our own competence: Heuristics and illusions. In D. Gopher and A. Koriat (Eds.), *Attention and peformance XVII. Cognitive regulation of performance: Interaction of theory and application* (pp. 435-459). Cambridge, MA: MIT Press.

Simon, D. A., & Bjork, R. A. (2001). Metacognition in motor learning. *Journal of Experimental Psychology: Learning, Memory, and Cognition, 27*, 907-912.

Kimball, D. R., & Bjork, R. A. (2002). The influence of intentional and unintentional forgetting on false memories. *Journal of Experimental Psychology: General, 131*, 116-130.

Bjork, E. L.., & Bjork, R. A. (2003). Intentional forgetting can increase, not decrease, the residual influences of to-be-forgotten information. *Journal of Experimental Psychology: Learning, Memory, and Cognition, 29*, 524-531.

Koriat, A., Bjork, R. A., Sheffer, L., & Bar, S. K. (2004). Predicting one's own forgetting: The role of experience-based and theory-based processes. *Journal of Experimental Psychology: General, 133*, 643-656.

Koriat, A., & Bjork, R. A. (2005). Illusions of competence in monitoring one's knowledge during study. *Journal of Experimental Psychology: Learning, Memory, Cognition, 31*, 187-194.

Storm, B. C., Bjork, E. L., & Bjork, R. A, (2005). Social metacognitive judgments: The role of retrieval-induced forgetting in person memory and impressions. *Journal of Memory and Language, 52*, 535-550.

Appleton-Knapp, S., Bjork, R. A., & Wickens, T. D. (2005). Examining the spacing effect in advertising: Encoding variability, retrieval processes and their interaction. *Journal of Consumer Research, 32*, 266-276.

Bjork, R. A., & Bjork, E. L. (2006). Optimizing treatment and instruction: Implications of a new theory of disuse. In L.-G. Nilsson and N. Ohta (Eds.), *Memory and society: Psychological perspectives* (pp. 109-133). Psychology Press: Hove and New York.

Bjork, E. L., Bjork, R. A., & MacLeod, M. D. (2006). Types and consequences of forgetting: Intended and unintended. In L-G. Nilsson and N. Ohta (Eds.), *Memory and society: Psychological perspectives* (pp. 134-158). Psychology Press: Hove and New York.

Bjork, R. A., & Linn, M. C. (2006, March). The science of learning and the learning of science: Introducing desirable difficulties. *APS Observer, 19*, 29,39.

Koriat, A., Ma'ayan H., Sheffer, L., & Bjork, R. A. (2006). Exploring a mnemonic debiasing account of the underconfidence-with-practice effect. *Journal of Experimental Psychology: Learning, Memory and Cognition, 32*, 595-608.

Koriat, A., & Bjork, R. A. (in press). Illusions of competence during study can be remedied by manipulations that enhance learners' sensitivity to retrieval conditions at test. *Memory & Cognition*.

Storm, B. C., Bjork, E. L., Bjork, R. A. & Nestojko, J. (in press). Is retrieval success necessary for retrieval-induced forgetting? *Psychonomic Bulletin & Review.*

Koriat, A., & Bjork, R. B. (in press). Mending metacognitive illusions: A comparison of mnemonic-based and theory-based procedures. *Journal of Experimental Psychology: Learning, Memory, and Cognition.*

Koriat, A., Fiedler, K., & Bjork, R. A. (in press). Inflation of conditional prediction. *Journal of Experimental Psychology: General.*

Richland, L. E., Linn, M. C., & Bjork, R. A. (in press). Cognition and instruction: Bridging Laboratory and classroom settings. In F. Durso, R. Nickerson, S. Dumais, S. Lewandowsky, & T. Perfect (eds), *Handbook of Applied Cognition, 2nd Edition.*

**Robert A. Bjork**
*Bibliography*
**March, 2006**

1)   Batchelder, W. H., Bjork, R. A., & Yellott, J. I. (1966). *Problems in mathematical learning theory.* New York: Wiley.

2)   Bjork, R. A. (1966). Learning and short-term retention of paired associates in relation to specific sequences of interpresentation intervals (Doctoral Dissertation, Stanford University). *Dissertation Abstracts, 27,* 3684B. (University Microfilms No. 67-4316).

3)   Bjork, R. A., LaBerge, D., & LeGrande, R. (1968). The modification of short-term memory through instructions to forget. *Psychonomic Science, 10,* 55-56.

4)   Bjork, R. A. (1968). All-or-none subprocesses in the learning of complex sequences. *Journal of Mathematical Psychology, 5,* 182-195.

5)   Bjork, R. A. (1970) Repetition and rehearsal mechanisms in models of short-term memory. In D. A. Norman (Ed.), *Models of memory* (pp. 307-330). New York: Academic Press.

6)   Bjork, R. A. (1970). Positive forgetting: the noninterference of items intentionally forgotten. *Journal of Verbal Learning and Verbal Behavior, 9,* 255-268.
     *Reprinted by Bobbs-Merrill*

7)   Bjork, R. A., & Allen, T. W. (1970). The spacing effect: Consolidation or differential encoding? *Journal of Verbal Learning and Verbal Behavior, 9,* 567-572.

8)   Woodward, A. E., & Bjork, R. A. (1971). Forgetting and remembering in free recall: Intentional and unintentional. *Journal of Experimental Psychology, 89,* 109-116.

9)   Bjork, R. A. (1972). Theoretical implications of directed forgetting. In A. W. Melton & E. Martin (Eds.), *Coding processes in human memory* (pp. 217-235). Washington, D.C.: Winston.

10)  Greeno, J. G., & Bjork, R. A. (1973). Mathematical learning theory and the new "mental forestry." In P. H. Mussen & M. R. Rosenzweig (Eds.), *Annual Review of Psychology* (pp. 81-116). Palo Alto, CA: Annual Reviews.

11)  Reitman, W., Malin, J. T., Bjork, R. A., & Higman, B. (1973). Strategy control and directed forgetting. *Journal of Verbal Learning and Verbal Behavior, 12,* 140-149.

12)  Bjork, R. A., & Woodward, A. E. (1973). Directed forgetting of individual words in free recall. *Journal of Experimental Psychology, 99,* 22-27.

13)  Bjork, R. A. (1973). Why mathematical models? *American Psychologist, 28,* 426-433.

Robert A. Bjork
*Bibliography*
March, 2006

14)   Woodward, A. E., Bjork, R. A., & Jongeward, R. H. (1973). Recall and recognition as a
      function of primary rehearsal. *Journal of Verbal Learning and Verbal Behavior, 12,* 608-
      617.

15)   Reder, L., Anderson, J. R., & Bjork, R. A. (1974). A semantic interpretation of encoding
      specificity. *Journal of Experimental Psychology, 102,* 648-656.

16)   Bjork, R. A., & Whitten, W. B. (1974). Recency-sensitive retrieval processes in long-term
      free recall. *Cognitive Psychology, 6,* 173-189.

17)   Jongeward, R. H., Woodward, A. E., & Bjork, R. A. (1975). The relative roles of input
      and output mechanisms in directed forgetting. *Memory & Cognition, 3,* 51-57.

18)   Elmes, D. G., & Bjork, R. A. (1975). The interaction of encoding and rehearsal processes
      in the recall of repeated and nonrepeated items. *Journal of Verbal Learning and Verbal
      Behavior, 14,* 30-42.

19)   Bjork, R. A. (1975). Short-term storage: The ordered output of a central processor. In F.
      Restle, R. M. Shiffrin, N. J. Castellan, H. R. Lindeman, & D. B. Pisoni (Eds.), *Cognitive
      theory* (Vol.1, pp. 151-171). Hillsdale, NJ: Lawrence Erlbaum Associates.

20)   Bjork, R. A. (1975). Retrieval as a memory modifier. In R. Solso (Ed.), *Information
      processing and cognition: The Loyola Symposium* (pp. 123-144). Hillsdale, NJ:
      Lawrence Erlbaum Associates.

21)   Whitten, W. B., & Bjork, R. A. (1977). Learning from tests: The effects of spacing.
      *Journal of Verbal Learning and Verbal Behavior, 16,* 465-478.

22)   Bjork, R. A., & Geiselman, R. E. (1978). Constituent processes in the differentiation of
      items in memory. *Journal of Experimental Psychology: Human Learning and Memory,
      4,* 347-361.

23)   Bjork, R. A. (1978). The updating of human memory. In G. H. Bower (Ed.), *The
      psychology of learning and motivation.* (Vol. 12., pp. 235-259). New York: Academic
      Press.

24)   Smith, S. M, Glenberg, A. M., & Bjork, R. A. (1978). Environmental context and human
      memory. *Memory & Cognition, 6,* 342-353.

25)   Landauer, T. K., & Bjork, R. A. (1978). Optimal rehearsal patterns and name learning. In
      M. M. Gruneberg, P. E. Morris, & R. N. Sykes (Eds.), *Practical aspects of memory* (pp.
      625-632). London: Academic Press.

26)  Bjork, R. A., & Landauer, T. K.  (1978).  On keeping track of the present status of people and things.  In M. M. Gruneberg, P. E. Morris, & R. N. Sykes (Eds.), *Practical aspects of memory.*  London: Academic Press.

27)  Bjork, R. A.  (1979).  An information-processing analysis of college teaching.  *Educational Psychologist, 14,* 15-23.

28)  Geiselman, R. E., & Bjork, R. A.  (1980).  Primary and secondary rehearsal in imagined voices:  Differential effects on recognition. *Cognitive Psychology, 12,* 188-205.

29)  Bjork, R. A.  (1982).  Editorial: Some observations on a year's worth of manuscripts. *Memory & Cognition, 10,* 1.

30)  Geiselman, R. E., Bjork, R. A., & Fishman, D.  (1983).  Disrupted retrieval in directed forgetting:  A link with posthypnotic amnesia. *Journal of Experimental Psychology: General, 112,* 58-72.

31)  Firstenberg, I., & Bjork, R. A.  (1983).  Memory dynamics and marketing.  In J. C. Anderson (Ed.), *Proceedings of the division of consumer psychology.*  Washington, D. C.: American Psychological Association.

32)  Jahnke, J. C., Bower, R. E., & Bjork, R. A.  (1985).  The stimulus prefix is not irrelevant and is redundant in different ways. *Memory & Cognition, 13,* 501-506.

33)  Richardson-Klavehn, A., & Bjork, R. A.  (1988).  Measures of memory. *Annual Review of Psychology, 39,* 475-543.

34)  Bjork, E. L., & Bjork, R. A.  (1988).   On the adaptive aspects of retrieval failure in autobiographical memory.  In M. M. Gruneberg, P. E. Morris, & R. N. Sykes  (Eds.), *Practical Aspects of Memory II*  (pp. 283-288). London:  Wiley.

35)  Bjork, R. A.  (1988).  Retrieval practice and the maintenance of knowledge. In M. M. Gruneberg, P. E. Morris, & R. N. Sykes  (Eds.), *Practical aspects of memory II*  (pp. 396-401).  London: Wiley.

36)  Hirshman, E. L., & Bjork, R. A.  (1988).  The generation effect:  Support  for a two-factor theory. *Journal of Experimental Psychology:  Learning, Memory, & Cognition, 14,* 484-494.

37)  Bjork, R. A., & Schneider, W.  (1988).  Learning during sleep and accelerated learning. In D. Druckman & J. A. Swets  (Eds.), *Enhancing human performance: Issues, theories, and techniques*  (pp. 39-60). Washington, DC: National Academy Press.

4

Robert A. Bjork
*Bibliography*
March, 2006

38) Landers, D. M., & Bjork, R. A. (1988). Improving motor skills. In D. Druckman & J. A. Swets (Eds.), *Enhancing human performance: Issues, theories, and techniques* (pp. 61-102). Washington, DC: National Academy Press.

39) Richardson-Klavehn, A., & Bjork, R. A. (1988). Primary vs. Secondary rehearsal in an imagined voice: Differential effects on recognition memory and perceptual identification. *Bulletin of the Psychonomic Society, 26,* 187-190.

40) Bjork, R. A. (1989). Retrieval inhibition as an adaptive mechanism in human memory. In H. L. Roediger and F. I. M. Craik (Eds.), *Varieties of memory and consciousness: Essays in honour of Endel Tulving* (pp. 309-330). Hillsdale, NJ: Erlbaum.

41) Bjork, R. A., & Richardson-Klavehn, A. (1989). On the puzzling relationship between environmental context and human memory. In C. Izawa (Ed.), *Current issues in cognitive processes: The Tulane Flowerree Symposium on Cognition* (pp. 313-344). Hillsdale, NJ: Erlbaum.

42) Swets, J. A., & Bjork, R. A. (1990). Enhancing human performance: A study of the National Research Council for the Army Research Institute. *Psychological Science, 1,* 85-96.

43) Spellman, B. A., & Bjork, R. A. (1991). *The Cognitive Testing System: A User's Manual.* Los Angeles, CA: Academic Publishing Services (UCLA).

44) Metcalfe, J., & Bjork, R. A. (1991). Composite models never (well, hardly ever) compromise: Reply to Schooler & Tanaka (1991). *Journal of Experimental Psychology: General, 120,* 203-210.

45) Chi, M. T. H., & Bjork, R. A. (1991). Modelling expertise. In D. Druckman & R. A. Bjork (Eds.), *In the mind's eye: Enhancing human performance* (pp. 57-79). Washington, DC: National Academy Press.

46) Christina, R. W., & Bjork, R. A. (1991). Optimizing long-term retention and transfer. In D. Druckman & R. A. Bjork (Eds.), *In the mind's eye: Enhancing human performance* (pp. 23-56). Washington, DC: National Academy Press.

47) Druckman, D., & Bjork, R. A. (Eds.). (1991). *In the mind's eye: Enhancing human performance.* Washington, DC: National Academy Press.

48) Capps, L., & Bjork, R. A. (1991, October 19). Molding memories to fit our life stories. *Santa Barbara News-Press.*

49) Bjork, R. A. (1991, November). On giving psychology away. *APS Observer,* pp. 2, 12.

**Robert A. Bjork**
*Bibliography*
**March, 2006**

50) Bjork, R. A., & Druckman, D. (1991, November). How do you improve human performance? *APS Observer*, pp. 13-25.

51) Bjork, R. A., & Druckman, D. (1991/1992). Fooling ourselves about improving ourselves. National Academy Op-Ed Service. (Published in whole or in part by 80 newspapers; see, e.g., the *San Francisc Chronicle*, November 5, 1991.)
Reprinted, 1993, in D. Jarmul (Ed.), *Headline News, Science Views II.* (pp. 35-37). Washington, DC: National Academy Press.

52) Bjork, R. A., & Vanhuele, M. (1992). Retrieval inhibition and related adaptive peculiarities of human memory. In J. F. Sherry, Jr. & B. Sternthal (Eds.), *Advances in consumer research* (Vol. 19, pp. 155- 60). Provo, UT: Association for Consumer Research.

53) Bjork, R. A., & Bjork, E. L. (1992). A new theory of disuse and an old theory of stimulus fluctuation. In A. Healy, S. Kosslyn, & R. Shiffrin (Eds.), *From learning processes to cognitive processes: Essays in honor of William K. Estes* (Vol. 2, pp. 35-67). Hillsdale, NJ: Erlbaum.

54) Bjork, R. A. (1992). William Kaye Estes as mentor, colleague, and friend. In A. Healy, S. Kosslyn, & R. Shiffrin (Eds.), *From learning theory to connectionist theory* (Vol. 1, pp. vii-x) and *From learning processes to cognitive processes: Essays in honor of William K. Estes.* (Vol. 2, pp. viii-xi). Hillsdale, NJ: Erlbaum.

55) Schmidt, R. A., & Bjork, R. A. (1992). New conceptualizations of practice: Common principles in three paradigms suggest new concepts for training. *Psychological Science, 3,* 207-217.
Reprinted, 1993, *Effective School Practices, 12,* 36-48;
Reprinted, D.A. Robin, K. Yorkston, and D.R. Beukelman [Eds.], *Disorders of motor speech: Recent advances in assessment, treatment, and clinical characterization.*

56) Spellman, B. A., & Bjork, R. A. (1992). Technical commentary: When predictions create reality: Judgments of learning may alter what they are intended to assess. *Psychological Science, 3,* 315-316.

57) Vanhuele, M., & Bjork, R. A. (1992). The dynamics of learning and forgetting: A new model and its application to advertising. In K. G. Grunert & D. Fuglede (Eds.), *Proceedings of the 21st Annual Conference of the European Marketing Academy* (pp. 1411-1413). Denmark: Arhus School of Business.

58) Bjork, R. A. (1992). Interference and memory. In L. R. Squire (Ed.), *Encyclopedia of learning and memory* (pp. 283-288). New York: Macmillan.

6

Robert A. Bjork
*Bibliography*
March, 2006

59)  Capps, L., Bjork, R. A., & Siegel, D. (1993). The meaning of memories: "Untraditional" Vietnam Memorial inspires remembering...and healing. *UCLA Magazine, 4,* 8-9.

60)  Anderson, M. C., & Bjork, R. A. (1994). Mechanisms of inhibition in long-term memory: A new taxonomy. In D. Dagenbach & T. Carr (Eds.), *Inhibitory processes in attention, memory, and language* (pp. 265-325). New York: Academic Press.

61)  Bjork, R.A. (1994). Memory and metamemory considerations in the training of human beings. In J. Metcalfe and A. Shimamura (Eds.), *Metacognition: Knowing about knowing* (pp.185-205). Cambridge, MA: MIT Press.

62)  Druckman, D. & Bjork, R.A. (Eds.) (1994). *Learning, remembering, believing: Enhancing human performance.* Washington, DC: National Academy Press.

63)  Bjork, R.A. Institutional impediments to effective training. (1994). In D. Druckman and R.A.Bjork (Eds.), *Learning, remembering, believing: Enhancing human performance* (pp.295-306). Washington, DC: National Academy Press.

64)  Jacoby, L. L., Bjork, R. A., & Kelley, C. M. (1994). Illusions of comprehension, competence, and remembering. In D. Druckman and R. A. Bjork (Eds.), *Learning, remembering, believing: Enhancing human performance* (pp.57-80). Washington, DC: National Academy Press.

65)  Wegner, D.M., Eich, E., & Bjork, R.A. (1994). Thought suppression. In D. Druckman and R.A.Bjork (Eds.), *Learning, remembering, believing: Enhancing human performance* (pp.277-293). Washington, DC: National Academy Press.

66)  Richardson-Klavehn, A., Lee, M.G., Joubran, R., & Bjork, R. A. (1994). Intention and awareness in the perceptual identification priming. *Memory & Cognition, 22, 293-312.*

67)  Anderson, M.C., Bjork, R.A., & Bjork, E.L. (1994). Remembering can cause forgetting: Retrieval dynamics in long-term memory. *Journal of Experimental Psychology: Learning, Memory, and Cognition, 20,* 1063-1087.

68)  Bjork, R. A., & Druckman, D. (1994). The untapped potential of training. National Academy News Service. (Published in whole or in part by 20 newspapers; see, e.g., the *Oakland Tribune,* October 14, 1994.)

69)  Bjork, R. A. (1995). Editorial. *Psychological Review, 102,* 3.

70)  Shaw, J.S., Bjork, R.A., & Handal, A. (1995). Retrieval-induced forgetting in an eyewitness paradigm. *Psychonomic Bulletin and Review, 2,* 249-253.

**Robert A. Bjork**
*Bibliography*
**March, 2006**

71) deWinstanley, P. A., Bjork, E. L., & Bjork, R. A. (1996). Generation effects and the lack thereof: The role of transfer-appropriate processing. *Memory, 4,* 31-48.

72) Bjork, E.L., & Bjork, R.A. (1996). Continuing influences of to-be-forgotten information. *Consciousness and Cognition, 5,* 176-196.

73) Bjork, E.L., & Bjork, R.A. (Eds.) (1996). *Memory.* Volume 10, E.C. Carterette and M.P. Friedman (Eds.), *Handbook of perception and cognition.* New York: Academic Press.*

   *Selected as a *CHOICE* Outstanding Academic Book for 1997

74) Bjork, R.A., & Wickens, T.D. (1996). Memory, metamemory, and conditional statistics. *Behavioral and Brain Sciences, 19,* 193-194.

75) Benjamin, A. S. & Bjork, R. A. (1996). Retrieval fluency as a metacognitive index. In L. M. Reder (Ed.), *Implicit memory and metacognition: The 27th Carnegie Symposium on Cognition* (pp. 309-338). Hillsdale, NJ: Erlbaum.

76) Ghodsian, D., Bjork, R. A., & Benjamin, A. S. (1997). Evaluating training *during* training: Obstacles and Opportunities. In M. A. Quinones and A. Ehrenstein (Eds.), *Training in a rapidly changing workplace: Applications of psychological research* (pp. 63-88). Washington DC: American Psychological Association.

77) Benjamin, A.S. & Bjork, R.A. (1997). Problematic aspects of embodied memory. *Behavioral and Brain Sciences, 20,* 20.

78) Bjork, E.L., Bjork, R.A., & Anderson, M. C. (1998). Varieties of goal-directed forgetting. In J. M. Golding and C. MacLeod (Eds.), *Intentional forgetting: Interdisciplinary approaches* (pp.103-137). Hillsdale, NJ: Erlbaum.

79) Bjork, R.A. (1998). Intentional forgetting in perspective: Comments, conjectures, and some directed remembering. In J. M. Golding and C. MacLeod (Eds.), *Intentional forgetting: Interdisciplinary approaches* (pp. 453-481). Hillsdale, NJ: Erlbaum.

80) Schwartz, B. L., Benjamin, A. S., & Bjork, R. A. (1997). The inferential and experiential basis of metamemory. *Current Direction in Psychological Science, 6,* 132-137.

81) Benjamin, A. S., Bjork, R. A., & Schwartz, B. L. (1998). The mismeasure of memory: When retrieval fluency is misleading as a metamnemonic index. *Journal of Experimental Psychology: General, 127,* 55-68.

82) Benjamin, A. S., Bjork, R. A., & Hirshman, E. (1998). Predicting the future and reconstructing the past: A bayesian characterization of the utility of subjective fluency. *Acta Psychologica, 98,* 267-290.

8

Robert A. Bjork
*Bibliography*
**March, 2006**

83)  Bjork, R. A.  (1999).  Assessing our own competence: Heuristics and illusions.  In D.
      Gopher and A. Koriat (Eds.*), Attention and peformance XVII. Cognitive regulation of
      performance: Interaction of theory and application* (pp. 435-459). Cambridge, MA: MIT
      Press.

84)  Lang, A. J., Craske, M. G., & Bjork, R. A.  (1999).  Implications of a new theory of disuse
      for the treatment of emotional disorders.  *Clinical Psychology: Science and Practice, 6,*
      80-94.

85)  Bjork, R. A. (2000).  *Psychological Review* across the century. *Psychological Review, 107,*
      3-5.

86)  Anderson, M. C., Bjork, E. L., & Bjork, R. A.  (2000). Retrieval-induced forgetting:
      Evidence for a recall-specific mechanism.  *Psychonomic Bulletin and Review, 7,* 522-530.

87)  Benjamin, A. S., & Bjork, R. A. (2000). On the relationship between recognition speed and
      accuracy for words rehearsed via primary versus secondary rehearsal.  *Journal of
      Experimental Psychology: Learning, Memory, and Cognition, 26,* 638-648.

88)  Ceci, S. J., & Bjork, R. A. (2000).  *Psychological Science in the Public Interest*: The case
      for juried analyses.  *Psychological Science, 11,* 177-178.

89)  Bjork, R. A., & Ceci, S. J. (2000).  The birth of *Psychological Science in the Public
      Interest. American Psychological Society Observer, 13,* 5, 14.

90)  Bjork, R. A.  (2000, July/August).  Toward one world of psychological science. *American
      Psychological Society Observer, 13,* 3.

91)  Bjork, R. A. (2000). Independence of scientific publishing: Reaffirming the principle.
      *American Psychologist, 55,* 981-984.

92)  Fritz, C. O., Morris, P. E., Bjork, R. A., Gelman, R., & Wickens, T. D.  (2000) When
      further learning fails: Stability and change following repeated presentation of text. *British
      Journal of Psychology, 91,* 493-511.

93)  Bjork, R. A. (2000, October).  Human factors 101: Why don't they just try things out?  *American
      Psychological Society Observer, 13,* 3, 14.

94)  Bjork, R. A. (2000, November).  Differing views of individual differences. *American
      Psychological Society Observer, 13,* 3, 26.

95)  Bjork, R. A. (2000, December).  Giving away and selling the behavioral sciences. *Monitor on
      Psychology, 31,* 27.

Robert A. Bjork
*Bibliography*
March, 2006

96) Bjork, R. A. (2001). Recency and recovery in human memory. In H. L. Roediger, J. S. Nairne, I Neath, & A. M. Surprenant (Eds.), *The nature of remembering: Essays in honor of Robert G. Crowder* (pp. 211-232). Washington, DC: American Psychological Association Press.

97) Bjork, R. A. (2001, March). How to succeed in college: Learn how to learn. *American Psychological Society Observer, 14,* 3, 9.

98) Simon, D. A., & Bjork, R. A. (2001). Metacognition in motor learning. *Journal of Experimental Psychology: Learning, Memory, and Cognition, 27,* 907-912.
*Featured, Science Watch, *Monitor on Psychology* (2001, July/August): "A blind spot in motor learning," Siri Carpenter. .

99) Wagner, A. D., Maril, A., Bjork, R. A., & Schacter, D. L. (2001). Prefrontal contributions to executive control: fMRI evidence for functional distinctions within lateral prefrontal cortex. *NeuroImage, 14, 1337-1347.*

100) deWinstanley, P. A., & Bjork, R. A. (2002). Successful lecturing: Presenting. information in ways that engage effective processing. In D. F. Halpern & M. D. Hakel (Eds.), *Applying the Science of Learning to University Teaching and Beyond* (pp. 19-31). San Francisco, CA: Jossey-Bass.

101) Kimball, D. R., & Bjork, R. A. (2002). The influence of intentional and unintentional forgetting on false memories *Journal of Experimental Psychology: General, 131,* 116-130.

102) Richardson-Klavehn, A., & Bjork, R. A. (2002). Memory: Long term. *Encyclopedia of cognitive science.* Vol. 2 (pp. 1096-1105). London: Nature Publishing Group.

103) Simon, D. A., & Bjork, R. A. (2002). Models of performance in learning multi-segment movement tasks: Consequences for acquisition, retention and judgments of learning. *Journal of Experimental Psychology: Applied, 8,* 222-232.

104) Bjork, R. A. (2003). Interference and forgetting. In J. H. Byrne (Ed.), *Encyclopedia of learning and memory,* 2nd ed., (pp. 268-273). New York: Macmillan Reference USA.

105) Bjork, E. L., & Bjork, R. A. (2003). Intentional Forgetting can.increase, not decrease, the residual influences of to-be-forgotten information. *Journal of Experimental Psychology: Learning, Memory,Cognition, 29,* 524-531.
*Featured, Science in Brief, *Monitor on Psychology* (2003, September): "Study finds a dark side to forgetting false information," E. Bensen

106) Ceci, S. J., & Bjork, R. A. (2003). Editorial: Science, Politics, and Violence in the Media. *Psychological Science in the Public Interest, 4,* i-iii.

Robert A. Bjork
*Bibliography*
March, 2006

107) MacLeod, M. D., Bjork, R. A. & Bjork, E. L. (2003). The role of retrieval-induced forgetting in the construction and distortion of memories (pp.55-68). In B. Kokinov & W. Hirst (Eds.), *Constructive Memory: NBU Series in Cognitive Science.* Sophia: New Bulgarian University.

108) Koriat, A., Bjork, R. A., Sheffer, L., & Bar, S. K. (2004).  Predicting one's own forgetting: The role of experience-based and theory-based processes. *Journal of Experimental Psychology: General, 133,* 643-656.

109) Koriat, A., & Bjork, R. A. (2005). Illusions of competence in monitoring one's knowledge during study. *Journal of Experimental Psychology: Learning, Memory, Cognition, 31,* 187-194.

110) Storm, B. C., Bjork, E. L., & Bjork, R. A, (2005). Social metacognitive judgments: The role of retrieval-induced forgetting in person memory and impressions.  *Journal of Memory and Language, 52,* 535-550.

111) Appleton-Knapp, S., Bjork, R. A., & Wickens, T. D. (2005). Examining the spacing effect in advertising: Encoding variability, retrieval processes and their interaction. *Journal of Consumer Research, 32,* 266-276.

112) Bjork, R. A., & Bjork, E. L. (2006). Optimizing treatment and instruction: Implications of a new theory of disuse. In L-G. Nilsson and N. Ohta (Eds.), *Memory and society: Psychological perspectives* (pp. 109-133). Psychology Press: Hove and New York.

113) Bjork, E. L., Bjork, R. A., & MacLeod, M. D. (2006). Types and consequences of forgetting: Intended and unintended.  In L-G. Nilsson and N. Ohta (Eds.), *Memory and society: Psychological perspectives* (pp. 134-158). Psychology Press: Hove and New York.

114) Bjork, R. A., & Linn, M. C. (2006, March).  The science of learning and the learning of science: Introducing desirable difficulties. *APS Observer, 19,* 29,39.

115) Koriat, A., Ma'ayan H., Sheffer, L., & Bjork, R. A. (2006). Exploring a mnemonic debiasing account of the underconfidence-with-practice effect. *Journal of Experimental Psychology: Learning, Memory and Cognition, 32,* 595-608.

116) Koriat, A., & Bjork, R. A. (in press). Illusions of competence during study can be remedied by manipulations that enhance learners' sensitivity to retrieval conditions at test. *Memory & Cognition.*

117) Storm, B. C., Bjork, E. L., Bjork, R. A. & Nestojko, J. (in press). Is retrieval success necessary for retrieval-induced forgetting? *Psychonomic Bulletin & Review.*

**Robert A. Bjork**
*Bibliography*
**March, 2006**

118) Koriat, A., & Bjork, R. B. (in press). Mending metacognitive illusions: A comparison of mnemonic-based and theory-based procedures. *Journal of Experimental Psychology: Learning, Memory, and Cognition.*

119) Koriat, A., Fiedler, K., & Bjork, R. A. (in press). Inflation of conditional prediction. *Journal of Experimental Psychology: General.*

120) Richland, L. E., Linn, M. C., & Bjork, R. A. (in press). Cognition and instruction: Bridging Laboratory and classroom settings. In F. Durso, R. Nickerson, S. Dumais, S. Lewandowsky, & T. Perfect (eds), *Handbook of Applied Cognition, 2nd Edition.*

121) Bjork, R. A., Bjork, E. L., & Caughey, J. B. (in press). Retrieval as a self-limiting process: Part II.

122) Spellman, B. A., DeLoache, J., & Bjork, R. A. (in press). Making claims in papers and talks.

123) Bjork, R. A. (in press). Inhibition as an essential and contentious concept in human memory. In Roediger, H.L., Dudai, Y. & Fitzpatrick, S.M. (Eds), *Science of Memory: Concepts.* Oxford: Oxford University Press.

# EXHIBIT C



198 F.3d 236                                                                                     Page 1

198 F.3d 236, 1999 WL 815067 (C.A.4 (S.C.))
**(Cite as: 198 F.3d 236)**

**c**
Briefs and Other Related Documents
NOTICE: THIS IS AN UNPUBLISHED
OPINION.(The Court's decision is referenced in a "
Table of Decisions Without Reported Opinions"
appearing in the Federal Reporter. Use FI CTA4
Rule 36 for rules regarding the citation of
unpublished opinions.)
     United States Court of Appeals, Fourth Circuit.
     Herman HUMPHRIES; Teresa G. Humphries,
                Plaintiffs-Appellees,
        andAmerican Transportation Services,
        Incorporated, Intervenor-Plaintiff,
                        v.
        MACK TRUCKS, INCORPORATED,
                Defendant-Appellant.
        Bobby COWAN; DeWayne Pitts; Matlack
                Incorporated, Movants.
                  **No. 98-1970.**

             Argued Sept. 23, 1999.
             Decided Oct. 13, 1999.

Appeal from the United States District Court for the
District of South Carolina, at Spartanburg,
CA-97-1945-7-13; G. Ross Anderson, Jr., District
Judge.

William Alexander Coates, David L. Moore, Jr.,
Love, Thornton, Arnold & Thomason, P.A.,
Greenville, South Carolina, for Appellant.
Francis Patrick Hubbard, University of South
Carolina School of Law, Columbia, South Carolina,
for Appellees.
Joseph G. Wright, III, Wright Law Offices,
Anderson, South Carolina; Chad A. McGowan,
Anderson, South Carolina, for Appellees.

Before MURNAGHAN and MOTZ, Circuit Judges,
and GOODWIN, United States District Judge for
the Southern District of West Virginia, sitting by
designation.

                    OPINION
PER CURIAM.
**\*1** In this product liability diversity case, after the
jury awarded the plaintiffs substantial damages, the
district court denied the defendant's motions for
judgment as a matter of law and a new trial. We
affirm.

                       I.

Herman Humphries was employed by American
Transport Systems, a subsidiary employee leasing
company for Matlack, Inc. As a driver for Matlack,
Humphries drove a Mack Series CH long haul truck
that was manufactured by Mack Trucks, Inc. On
February 22, 1995, while Humphries was
connecting the air and electrical lines from the cab
of the truck to the attached trailer, he fell from the
deck plate and sustained serious physical injuries.

Humphries and his wife, Teresa, initiated this action
against Mack Trucks asserting strict liability and
negligence claims and loss of consortium. The
Humphries alleged that the "L" shaped design of
the deck plate was defective and unreasonably
dangerous because the risk of injury posed by the
open corner in the driver's side rear portion of the
deck plate-the point from which Herman Humphries
fell-substantially outweighed the utility of the
configuration and the minimal costs associated with
manufacturing a symmetrical deck plate. The
Humphries also claimed that Mack Trucks
negligently breached its duty to exercise reasonable
care to adopt a safe design for the deck plate.

On a special verdict form, the jury expressly found
Mack Trucks liable under both strict liability and
negligence theories. The jury awarded Herman
Humphries $1,873,539 in compensatory damages
and awarded Teresa Humphries $191,520 for loss
of consortium. Mack Trucks moved for judgment as
a matter of law and a new trial, which the district
court denied.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

198 F.3d 236

Page 2

198 F.3d 236, 1999 WL 815067 (C.A.4 (S.C.))
(Cite as: 198 F.3d 236)

Mack Trucks appeals. We review *de novo* the district court's order denying judgment as a matter of law to determine whether the evidence presented at trial, viewed in the light most favorable to the Humphries, would have allowed a reasonable jury to render a verdict in their favor. *See In re Wildewood Litig.*, 52 F.3d 499, 502 (4th Cir.1995). We review the district court's denial of the motion for a new trial for abuse of discretion. *Id.; United States v. Wilson*, 118 F.3d 228, 237 (4th Cir.1997).

## II.

In denying Mack Trucks' motion for judgment as a matter of law, the district court found sufficient evidence to support the jury's verdict on both the strict liability and negligence claims. Applying South Carolina law, we conclude that there was sufficient evidence to support the jury's finding of negligence. Therefore, we need not reach the question as to the appropriate test under South Carolina law to be applied to strict liability claims involving open and obvious dangers.

Unlike strict liability theory, which focuses on the product itself, negligence theory of products liability focuses on the conduct of the manufacturer, and a plaintiff must prove that the defendant failed to exercise due care in some respect. *See, e.g., Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 462 S.E.2d 321, 326 (Ct.App.1995). A plaintiff can meet this burden by showing that the manufacturer was aware of the danger and failed to take reasonable steps to correct it. *See Madden v. Cox*, 284 S.C. 574, 328 S.E.2d 108, 112 (Ct.App.1985) (citing *Marchant v. Lorain Div. of Koehring*, 272 S.C. 243, 251 S.E.2d 189 (1979)). The Humphries alleged that Mack Trucks breached a duty of due care as to the original design of the deck plate as well as to the timely manufacture and delivery of a retrofit for the deck plate once it received notice of the product's dangerousness.

**\*2** In addressing the alleged negligence as to the original deck plate design, the district court correctly held Mack Trucks to the standard of an expert in the field of heavy truck manufacturing. *See, e.g., Carolina Home Builders, Inc. v.*

*Armstrong Furnace Co.*, 259 S.C. 346, 191 S.E.2d 774, 779 (1972). Thus, Mack Trucks was under a duty to exercise reasonable care to adopt a safe design for the deck plate by balancing the seriousness and likelihood of harm against the burden of feasible precautions to avoid or minimize harm. *See* Restatement (Second) § 398 (1965); *Mickle v. Blackmon*, 252 S.C. 202, 166 S.E.2d 173, 192 (1969). The heart of the Humphries' negligence claim is that a reasonable manufacturer, in seeking ways to minimize the risks associated with the deck plate, would have utilized human factors analysis in testing the "L" shaped design of the deck plate, and that such analysis would have revealed the likelihood of injury associated with the asymmetrical design. The Humphries offered the testimony of several expert witnesses to support this theory.

On appeal, Mack Trucks challenges the admissibility of the testimony from two of those witnesses-Dr. Thomas R. Alley and Dr. S. David Leonard. "[A]buse of discretion is the proper standard of review of a district court's evidentiary rulings," including rulings on the admissibility of expert testimony. *General Elec. Co. v. Joiner*, 522 U.S. 136, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997). "[T]he admissibility of expert testimony in a federal court sitting in the diversity jurisdiction is controlled by federal law." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir.1986).

### A.

At trial, Dr. Alley testified about the "best understood functioning of human perception and memory." Mack Trucks argues that Dr. Alley's opinion that the asymmetrical design of the deck plate was more dangerous than a symmetrical design lacked sufficient scientific support; the company points out that Dr. Alley did not conduct any tests or studies of the deck plate in formulating his opinion. Mack Trucks also contends that Dr. Alley's conclusion that Herman Humphries was "psychologically overloaded" contradicts Humphries' own testimony, and therefore, the district court should have found Dr. Alley's opinions to be unreliable and inadmissible.[FN1] In reconsidering

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

198 F.3d 236

198 F.3d 236, 1999 WL 815067 (C.A.4 (S.C.))
**(Cite as: 198 F.3d 236)**

whether Dr. Alley's testimony was properly admitted into evidence, the district court explained that it was the jury's responsibility to consider the fact that Dr. Alley was not an engineer and that he conducted no studies, tests, or inspections of the deck plate in determining how much weight to give his testimony.

> FN1. Despite the Humphries' assertion to the contrary, the record indicates that Mack Trucks adequately preserved its objection to the admissibility of Dr. Alley's testimony. Under Fed.R.Evid. 103(a)(1), a party must state the specific grounds for its objection only when that ground would not be clear from the context. In the case at hand, the ground for the objection was clear in view of the following context: (1) Mack Trucks' motion in limine, the Humphries' response to the motion, and the pre-trial hearing; (2) the likely topic of the side bar conference immediately preceding Mack Trucks' objection at trial; and (3) the district court's order denying the post-trial motion for a new trial based on this issue. *See Werner v. Upjohn Co.,* 628 F.2d 848, 853 (4th Cir.1980) (finding that the ground for the objection was clear, particularly because the defendant had filed a pre-trial motion with supporting memoranda requesting the suppression of the evidence at issue), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981); *United States v. Cummiskey,* 728 F.2d 200, 205 (3d Cir.1984) (finding the context of the objection sufficient to compensate for the lack of specificity where the district court's rulings on post-trial motions demonstrated that the court was aware of the grounds for the objection), *cert. denied,* 471 U.S. 1005, 105 S.Ct. 1869, 85 L.Ed.2d 162 (1985).

Fed.R.Evid. 702 provides that expert testimony may be admitted if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." It is in the sound discretion of the district court whether the offered testimony provides such

assistance. *See, e.g., Scott,* 789 F.2d at 1055 (upholding the admission of some "human factors" testimony).

**\*3** Recently, in *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 1174-75, 143 L.Ed.2d 238 (1999), the Supreme Court held that a trial court's gatekeeping obligation under *Daubert v. Merrell Dow Pharm. Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), applies not only to scientific testimony but to all expert testimony because Rule 702 does not distinguish between "scientific" knowledge, and "technical" or "other specialized" knowledge. At issue in *Kumho Tire* was the testimony of an engineering expert. The court held that a trial court may consider one or more of the *Daubert* factors-testing, peer review, error rates, and "acceptability" within the relevant professional community-in assessing the admissibility of non-scientific expert testimony. *Kumho Tire,* 119 S.Ct. at 1175-76. In other words, the *Daubert* factors do not constitute a definitive checklist; the factors may be reasonable measures of reliability depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Id.*

Assuming, without deciding, that the *Daubert* factors should be strictly applied to Dr. Alley's human factors testimony, we conclude that the district court did not abuse its discretion in admitting the testimony. Dr. Alley testified as to the relative risks associated with two deck plate designs-a symmetrical one and an asymmetrical one. Dr. Alley did not testify that the asymmetrical design at issue here was unreasonably dangerous, but rather opined that a person was more likely to fall when confronted with an asymmetrical design based on theories concerning short-term memory and perception, visual spatial tasks, and "interference effects." [FN2]

> FN2. Dr. Alley specifically testified on cross-examination that "I don't specifically claim to know exactly what went wrong that caused the fall. However, my claim is, again, that making those connections, whether he did it on all those other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

198 F.3d 236                                                                 Page 4

198 F.3d 236, 1999 WL 815067 (C.A.4 (S.C.))
**(Cite as: 198 F.3d 236)**

occasions, on this particular occasion, would fairly fully occupy his attention and memory so that he may misjudge where his feet are relative to the edges of the platform."

Dr. Alley's testimony did not derive merely from speculation or subjective opinion. Rather, he applied his experience and training in the field of cognitive psychology and relied, in part, on " generally accepted psychological principles of human perception and memory" embodied in various published authorities. *See* J.A. 72-73, 310-13, 319-20. We note that an expert opinion supported by "relevant literature in the field" is more likely to be admissible under Rule 702 than one that is not. *See Oglesby v. General Motors Corp.,* Nos. 98-1716, 98-1818, 1999 WL 674752 (4th Cir. Aug.31, 1999) (quoting *Alevromagiros v. Hechinger Co.,* 993 F.2d 417, 422 (4th Cir.1993)); *see also Maryland Cas. Co. v. Therm-O-Disc, Inc.,* 137 F.3d 780, 785 (4th Cir.1998) (noting that the expert witness had cited numerous works of technical literature which supported his analytical method to support a finding that the admission of the testimony was not an abuse of discretion); *Freeman v. Case Corp.,* 118 F.3d 1011, 1016-17 (4th Cir.1997) (distinguishing *Alevromagiros,* 993 F.2d at 421, and citing with approval the expert's review of industry literature and other published sources to support the holding that the expert's testimony was sufficient to sustain the jury verdict).

**\*4** Mack Trucks emphasizes that Dr. Alley is not an engineer, that he failed to conduct specific tests or studies involving the deck plate, and that he failed to consider various aspects of the trucking industry. This emphasis is misplaced. Unlike other human factors testimony that some courts have deemed problematic, *see, e.g., Jaurequi v. John Deere Co.,* 971 F.Supp. 416 (E.D.Mo.1997), *aff'd,* 173 F.3d 1076 (8th Cir.1999), Dr. Alley's testimony did not require him to develop an alternative design or safety device that would require testing or related studies. Dr. Alley's opinion was appropriately limited to his field of expertise and was offered not only to assist the jury in making its determination as to whether Mack Trucks was negligent in designing the asymmetrical deck plate, but also to oppose

Mack Trucks' contributory negligence defense. The district court did not abuse its discretion in admitting this testimony.

B.

Mack Trucks also challenges the expert testimony of Dr. Leonard.

Unlike its objection to Dr. Alley's testimony, Mack Trucks did not preserve for appellate review its objection to Dr. Leonard's testimony. Fed.R.Evid. 103(a)(1) requires an objection or a motion to strike to be timely. Mack Trucks did not object and move to strike Dr. Leonard's testimony until the conclusion of the Humphries' case. Although Mack Trucks explains that it did not object earlier because the necessary foundation evidence might have been introduced and admitted during the remainder of the Humphries' case, this explanation goes to the heart of what Rule 103(a)(1) was designed to avoid. *See United States v. Parodi,* 703 F.2d 768, 783 (4th Cir.1983) ("[t]imeliness of objection under the Rule requires that it 'be made at the time the evidence is offered ....' ") (quoting *DiPaola v. Riddle,* 581 F.2d 1111, 1113 (4th Cir.1978)), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979)); *McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396, 1408 (8th Cir.1994) ("If the ground for the objection becomes apparent while the witness is testifying, a subsequent motion to strike the testimony after the witness finishes does not preserve the issue for appeal"); *Belmont Indus. v. Bethlehem Steel Corp.,* 512 F.2d 434, 437-38 (3d Cir.1975) (holding that the opponent to certain evidence cannot wait to see if the proponent of such evidence will take steps to obviate the objection). The ground for objection here assertedly became apparent during cross-examination of Dr. Leonard when counsel for Mack Trucks questioned his assumptions regarding the dimensions of the deck plate previously used by Humphries. Mack Trucks did not object to the testimony until the conclusion of the Humphries' case. Thus, it clearly did not timely preserve the objection, and we review only for plain error under Fed.R.Evid. 103(d).

**\*5** Dr. Leonard testified that Herman Humphries'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

198 F.3d 236

198 F.3d 236, 1999 WL 815067 (C.A.4 (S.C.))
(Cite as: 198 F.3d 236)

Page 5

previous use of a symmetrical deck plate may have caused "proactive interference" when Humphries performed the same task of connecting the air and electrical lines on the asymmetrical deck plate from which he fell. In other words, Humphries had developed behavioral habits that might have produced a "transference" problem when he went to make the connections on an asymmetrical deck plate. On cross-examination, defense counsel asked a series of questions intended to reveal that Dr. Leonard's opinion was based on his misunderstanding that the previous symmetrical deck plate extended beyond the frame rails of the truck. In response to these questions, Dr. Leonard modified his testimony and emphasized that as long as the previous deck plate was symmetrical, which it was, "proactive interference" could have an effect irrespective of the precise dimensions and actual placement of the deck plate. It was the province of the jury to evaluate Dr. Leonard's testimony, and, as instructed, they were free to disregard the testimony. *See* J.A. 571; *Madden v. Cox,* 284 S.C. 574, 328 S.E.2d at 114 (finding that the adequacy of an expert's knowledge went to the weight of the testimony, not its admissibility, and thus presented a jury question). Certainly, there was no plain error in admitting this testimony.

C.

In sum, viewing the evidence in the light most favorable to the Humphries, the evidence, particularly the testimony of Dr. Alley and Dr. Tim Arthur Jur, as well as the testimony of Mack Trucks' expert witness, Russell Marhefka, was sufficient to support the jury's determination that Mack Trucks had breached its standard of care and had negligently designed the deck plate. *See id.* at 574, 328 S.E.2d 108, 328 S.E.2d at 112-13.[FN3] Therefore, the district court did not err in denying Mack Trucks' motion for judgment as a matter of law.

FN3. Because we conclude that there was sufficient evidence to support the jury's verdict as to negligent design, we need not reach the question of negligence as to the

retrofit.

III.

Mack Trucks raises a number of issues in support of its contention that the district court abused its discretion in denying Mack Trucks' motion for a new trial.

A.

Although Mack Trucks concedes that the jury instructions as given were not legally inaccurate, it nevertheless contends that the district court erred in refusing to give a jury instruction that would have directed the jury's attention to the lapse of time and lack of other accidents to support a finding that the deck plate was not defective or unreasonably dangerous. "[T]he content of jury instructions in a diversity case is a matter of state law...." *Hardin v. Ski Venture, Inc.,* 50 F.3d 1291, 1293 (4th Cir.1995). In evaluating challenges to the district court's jury instructions, we "must look to the entire charge and affirm the trial court if the instructions, taken as a whole, fairly and adequately state the pertinent legal principles involved." *Spartanburg County Sch. Dist. Seven v. National Gypsum Co.,* 805 F.2d 1148, 1150 (4th Cir.1986). "Even when jury instructions are flawed, there can be no reversal unless the error seriously prejudiced the [appellant]'s case." *Hardin,* 50 F.3d at 1296 (citing *Wellington v. Daniels,* 717 F.2d 932, 938 (4th Cir.1983)).

*6 As the district court appropriately emphasized, evidence related to the lapse of time and absence of prior accidents was admitted at trial and was therefore a factor for the jury to consider. Following the reasoning in *Hardin,* we agree with the district court that an instruction drawing the jury's attention to such evidence was not required. In *Hardin,* the plaintiff argued that the trial court erred by failing to include two proposed instructions addressing his theory of the case-instructions that specifically mentioned his contentions about the slope conditions-and that "the instructions as a whole were weighted in favor of the ski resort, containing extraneous material that could have confused the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

198 F.3d 236

198 F.3d 236, 1999 WL 815067 (C.A.4 (S.C.))
(Cite as: 198 F.3d 236)

Page 6

jury." *Hardin,* 50 F.3d at 1293. In affirming the jury verdict in favor of the defendant resort, we explained:
Where ... the instructions accurately covered all the issues in the case, the failure to reference specific aspects of a party's contentions, such as the direction of the snow gun or the wetness of the snow, cannot serve as a basis for a finding of error.... To the degree that the instructions reflected any lack of balance, that is due to the content of state law, not to the misstatement of relevant legal principles by the court.

*Id.* at 1295.

A review of the jury charges in the instant case indicates that they were adequately balanced and fair with regard to the Humphries' theories of the case and Mack Trucks' affirmative defenses. Any reference to specific proof served only to clarify what evidence did not by itself bar recovery or prove the existence of a defective design. For example, Mack Trucks complains that the district court downgraded its evidence with the instruction that "neither a long or continued lapse of time nor changes in ownership will defeat recovery where there is clear evidence of an original defect in the thing sold." However, the next line of the instruction states: "The mere fact that an injury occurred and the fact that a product could have been more safe is not sufficient to support a finding that the product was unreason-ably dangerous." And four sentences later: "[P]roof that technology existed which if implemented could have feasibly avoided a dangerous condition does not alone establish that the product was defective or unreasonably dangerous." Therefore, the district court did not abuse its discretion in denying the motion for a new trial for failure to include Mack Trucks' proposed jury instruction. [FN4]

FN4. Mack Trucks also argues that the district court erred in refusing to charge the jury that a product cannot be defective and unreasonably dangerous if the danger is open and obvious. For the reasons set forth at the beginning of Part II above, we need not address the merits of this argument.

B.

Mack Trucks also contends that the retrofit was a subsequent remedial measure, and as such, any evidence related to it was inadmissible under Fed.R.Evid. 407.[FN5] Taking a broader view of "remedial measures" than that urged by Mack Trucks, the district court admitted any evidence that preceded actual installation of the retrofit.

FN5. Although, as previously mentioned, we need not address the Humphries' negligence claim as to the retrofit, we address this Rule 407 evidentiary issue because, at least arguably, the Humphries used the evidence of the retrofit to support their negligent design claim.

*7 Mack Trucks relies on *Kaczmarek v. Allied Chem. Corp.,* 836 F.2d 1055 (7th Cir.1987), to argue that the evidence was inadmissible, but the holding in that very case supports the opposite conclusion. In *Kaczmarek,* the plaintiff suffered severe burns when acid leaked from an allegedly defective coupling on a hose. The decision to replace the couplings on hoses connecting the tank trailer to the receiving trailer had been made before the accident but not implemented until after the accident. The Seventh Circuit refused to carve out an exception under Rule 407 for the admissibility of subsequent remedial measures when the decision to adopt such measures was made *prior* to the accident. *Id.* at 1060. However, to clarify its holding, the court stated that "the decision itself will be admissible," *id.,* but the actual fact of implementation will not, partly because of the incremental evidentiary impact of this fact (once the decision itself is put into evidence) and because of concerns related to the administration of Rule 407 once exceptions, even seemingly innocuous ones, are created. *Id.*

Applying the holding in *Kaczmarek* to the case at hand clearly indicates that any evidence related to Matlack's request for a retrofit, the design of the retrofit for trucks yet to be manufactured, the design

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

198 F.3d 236

198 F.3d 236, 1999 WL 815067 (C.A.4 (S.C.))
**(Cite as: 198 F.3d 236)**

of the retrofit kit for trucks previously delivered, and Matlack's order for the retrofit kits was admissible. *See also Chase v. General Motors Corp.,* 856 F.2d 17, 22 (4th Cir.1988); *Traylor v. Husqvarna Motor,* 988 F.2d 729, 733 (7th Cir.1993) ; *Arceneaux v. Texaco, Inc.,* 623 F.2d 924, 928 (5th Cir.1980), *cert. denied,* 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981). Therefore, the district court did not abuse its discretion in admitting evidence related to the retrofit.

### C.

Mack Trucks further contends that the district court erred in striking a defense based on S.C.Code Ann. § 42-1-580 (Law. Co-op. 1985),[FN6] which governs the effect of the rights of a third party against an employer on an employee's recovery. However, Mack Trucks fails to offer any convincing argument as to how this statutory provision entitles it to a set off from Mack Trucks for any worker's compensation benefits Herman Humphries may have received from American Transport Systems. Therefore, remanding the case for a new trial on this ground is not warranted.

> FN6. Section 42-1-580 provides:
> When the facts are such at the time of the injury that a third person would have the right, upon payment of any recovery against him, to enforce contribution or indemnity from the employer, any recovery by the employee against the third person shall be reduced by the amount of such contribution of indemnity and the third persons's right to enforce such contribution against the employer shall thereupon be satisfied.

### D.

Finally, Mack Trucks argues that the jury award of nearly $1.9 million dollars in favor of Herman Humphries is excessive. A district court exercising diversity jurisdiction is obligated to apply state law rules for evaluating an allegedly excessive verdict. *See Gasperini v. Center for Humanities, Inc.,* 518

U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). "A new trial absolute should be granted only if the verdict is so grossly excessive that it shocks the conscience of the court and clearly indicates the amount of the verdict was the result of caprice, passion, prejudice, partiality, corruption, or other improper motive." *Knoke v. South Carolina Dep't of Parks, Recreation, & Tourism,* 324 S.C. 136, 478 S.E.2d 256, 258 (1996).

**\*8** The record supports the district court's analysis of Herman Humphries' damages. He sustained severe physical injuries from his fall that have resulted in permanent disability. The amount of the award does not seem grossly excessive when one considers the medical bills, past and future loss of earnings, and the non-economic damages for the physical and mental pain and suffering caused by the injuries, the resulting disability, and the loss of enjoyment of life.

Mack Trucks argues that *Steinke v. Beach Bungee, Inc.,* 105 F.3d 192 (4th Cir.1997), required the district court to provide a detailed discussion of cases involving similar facts in order to identify the range of damage awards in comparable cases. According to Mack Trucks, because the district court failed to do so, we are unable to conduct a meaningful review. However, Mack Trucks' reading of *Steinke* is overbroad; the holding requires the trial court to provide its reasoning only if there is a departure from a range of damages identified by the court or if no comparable cases are found. There is simply no requirement that the district court provide an exposition of the relevant cases it considers. In the present case, the district court specifically noted that it had evaluated verdicts in comparable cases. Moreover, on appeal, Mack Trucks was free to cite analogous cases in which the damages awards were significantly less; tellingly, it cites none.

### IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

198 F.3d 236                                                                                      Page 8

198 F.3d 236, 1999 WL 815067 (C.A.4 (S.C.))
**(Cite as: 198 F.3d 236)**


C.A.4 (S.C.),1999.
Humphries v. Mack Trucks, Inc.
198 F.3d 236, 1999 WL 815067 (C.A.4 (S.C.))

Briefs and Other Related Documents (Back to top)

• 98-1970 (Docket) (Jul. 09, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.