THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. NO. 05-394 (RBW) |
| v. | ) | |
| | ) | |
| I. LEWIS LIBBY | ) | |
| also known as Scooter Libby | ) | |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO ADMIT EXPERT TESTIMONY

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, Special

Counsel, respectfully submits the following memorandum of law in opposition to the Motion of I.

Lewis Libby to Admit Expert Testimony Under Rule of Evidence 702.

## INTRODUCTION

In the instant motion, defendant seeks leave to introduce the testimony of Dr. Robert A. Bjork

regarding "how memory works and why it fails" at his trial on charges of obstruction of justice,

perjury, and making false statements to federal investigators.  Mem. 2.[1]  The government does not

quibble with Dr. Bjork's expertise concerning research into memory, particularly with respect to the

reliability of eyewitness identification.   Nor does the government quarrel with the abstract

proposition that expert testimony may be limited to presenting general principles of a field of

research without rendering an opinion applying the principles to the facts of the case on trial.  The

basis for the government's objection to Dr. Bjork's proffered testimony is that the defendant cannot

meet his burden as the proponent of the evidence of establishing that the testimony will assist the

jury in understanding or determining any of the facts at issue in this case.

---

[1]  References to defendant's Motion and Memorandum in Support are to "Mem.,"
followed by the relevant page number.

Juries in virtually every criminal case assess the memory and credibility of witnesses without a lengthy explanation of the current state of research into human memory.  As will the jury in this case, juries in many cases are called upon to evaluate differing versions of events and to sort out which version to believe and which version to discount because the witness may be mistaken or may be lying.  Juries are not routinely, or even rarely, presented with extensive testimony on research into memory in cases like this one.  Juries evaluate competing versions of events applying their collective common sense in light of the adversarial presentations of the parties, including arguments of counsel, and the instructions of the trial judge.  The defendant does not come close to establishing that a detailed inquiry into the state of memory research will, on balance, assist the trier of fact.  To the contrary, there are strong reasons to believe that the proffered testimony may confuse, mislead, and unduly influence the jury.

This Court has substantial discretion to decide whether expert testimony is admissible, and whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury or considerations of undue delay and waste of time.  In this case, far from being an abuse of discretion, excluding the proffered testimony is the right call.

## **BACKGROUND**

Defendant is charged in the indictment with obstruction of justice, perjury, and making false statements to investigators, in violation of 18 U.S.C. §§ 1503, 1623 and 1001, in connection with an investigation concerning leaks to reporters of classified information regarding the employment of Valerie Plame Wilson, the wife of former Ambassador Joseph Wilson.  The indictment charges that, in an effort to mislead the investigators and the grand jury as to how and when he acquired and

disclosed to reporters information concerning the employment of Ms. Wilson by the CIA, defendant told federal investigators, and testified before the grand jury that (a) on July 11 or 12, 2003, he was told by Tim Russert of *NBC News* that "all of the reporters" knew that former Ambassador Wilson's wife worked at the CIA; (b) he was surprised by Russert's comments because, even though he had been advised of Ms. Wilson's employment by the Vice President in early June 2003, he had forgotten that fact; (c) on July 12, 2003, he confirmed to both Matthew Cooper of *Time* Magazine and Judith Miller of *The New York Times* that "reporters were saying" that Ms. Wilson worked at the CIA but he did not know whether this information was true; and (d) he did not discuss Ms. Wilson or her employment during a meeting with Miller on July 8, 2003.  The indictment charges that defendant's statements were untrue, as demonstrated by the facts that (a) defendant was advised of Ms. Wilson's employment by the Vice President in early June and, during the following five or six weeks, defendant spoke with at least six government officials concerning the issue, and (b) that defendant informed Miller and Cooper of Ms. Wilson's employment without qualification on or about June 23 and July 12, 2003, respectively, and never spoke with Russert regarding Ms. Wilson or her employment.  In deciding whether the government has met its burden of proving the charges beyond a reasonable doubt, the jury will be required to determine: (a) whether any or all of the charged statements were false; and, with respect to any statements found to be false, (b) whether defendant innocently erred or, instead, deliberately lied when he made the charged statements.

In this context, defendant seeks to introduce expert testimony to establish, in summary, that (a) memories are not recorded, stored, or retrieved in verbatim form, but rather memory function is dynamic and prone to error (Mem. 11); (b) divided attention may cause serious errors in memory, including errors regarding the sources of information (Mem. 13); and (c) a person's confidence in

his own recollections correlates weakly, if at all, with the accuracy of those recollections (Mem. 9).[2]

Defendant's stated purpose in introducing the proposed testimony is to educate the jurors regarding the "inherent unreliability of human perception and memory" (Mem. 8), and to show that "it entirely plausible, given how memory has been found to function, that Mr. Libby or the government witnesses – or both – have innocently confused or misremembered the conversations on which this case turns" (Mem. 2). Put another way, defendant seeks to establish that the government officials and reporters with whom he spoke regarding Ms. Wilson's employment are mistaken regarding the fact and/or the nature of their conversations, and/or that defendant's statements regarding his conversations with the reporters, if inaccurate, were the product of a failure of memory.

## ARGUMENT

### I.    Summary of Applicable Law

The admissibility of expert testimony is governed by Rules 702 of the Federal Rules of Evidence and Supreme Court case law interpreting the rule.[3] To introduce expert testimony, the

---

[2] More specifically, defendant proposes to elicit from Dr. Bjork testimony explaining the current state of research regarding the processes by which memories are stored, reconstructed and lost during encoding, retention, and retrieval phases; the processes underlying various types of memory errors, including content borrowing, memory conjunction, and source misattribution; and variables affecting memory storage, retention and retrieval, including implicit and explicit cues, information, schemas, expectations, proactive and retroactive interference, and delay. See Mem., Ex. A.

[3] Fed. R. Evid. 702 provides: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

4

proponent must first demonstrate that the proffered expert is "qualified as an expert by knowledge, skill, experience, training, or education to render his or her opinions." Fed. R. Evid. 702. Next, the proponent must satisfy the court that the proffered testimony is both relevant and reliable. *Id.*; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The Supreme Court has interpreted Rule 702 as requiring that the district court act as a "gatekeeper," ensuring that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); and *General Electric Co. v. Joiner*, 522 U.S. 136, 142 (1997). Under Fed. R. Evid. 104(a), the proponent of the testimony bears the burden of establishing to the trial judge that "the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 Advisory Committee's Note (2000 amends.)(citing *Bourjaily v. United States*, 483 U.S. 171 (1987)). The decision whether to admit or exclude expert testimony is within the broad discretion of the district court. *General Electric Co. v. Joiner*, 522 U.S. at 136-37; *United States v. Washington*, 106 F.3d 983, 1008 (D.C. Cir. 1997).

In evaluating whether expert testimony is reliable, the court considers the following non-exhaustive list of factors: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the method's known or potential rate of error; (4) the existence of standards controlling the technique's operation; and (5) whether the theory or technique finds general acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 592-94; *Ambrosini v. Labarraque*, 101 F.3d 129, 134 (D.C. Cir. 1996)(approving admission of expert testimony linking Depo-Provera with plaintiff's birth defects based on *Daubert* analysis). *See also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)(approving district court's exclusion of expert testimony as unreliable based on flexible

5

application of *Daubert* factors); Fed. R. Evid. 702 Advisory Committee's Note (2000 amends.). There also must be "a sufficiently rigorous analytical connection between the expert's methodology and the conclusions to which the proponent seeks to elicit from the expert." *Nimely v. City of New York*, 14 F.3d 381, 396 (2d Cir. 2005). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)(approving exclusion of expert testimony as unreliable where studies offered in support of expert's conclusion dissimilar to facts of case). Thus, an expert opinion that is based on data, methodology or studies that are inadequate to support the conclusions reached must be excluded as unreliable. *Nimely*, 14 F.3d at 396-97 (holding that admission of expert testimony that officer could have innocently misremembered suspect's turning and facing him as happening before or simultaneously with, rather than after, his firing of shot was abuse of discretion requiring reversal).

Even if the court finds that a proffered expert is qualified and his testimony is reliable, the testimony may not be admitted unless the court also finds that the testimony will assist the trier of fact. Expert testimony assists the trier of fact if: (1) the testimony is relevant; (2) the testimony is not within the jurors' common knowledge and experience; and (3) the testimony will not usurp the jurors' role of evaluating a witness's credibility. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006). Expert testimony is relevant if the "'reasoning or methodology properly can be applied to the facts in issue.'" *Daubert*, 509 U.S. at 593; *Ambrosini*, 101 F.3d at 134. As the Court in *Daubert* cautioned, "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes.'" *Id.* at 591.

6

Even if the proposed expert testimony is admissible under Rule 702, it may be excluded under Fed. R. Evid. 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *E.g.*, *United States v. Stokes,* 388 F.3d 21, 26 (1st Cir. 2004)(instructing trial courts to consider threat of confusion, misleading of the jury, or unnecessary delay posed by eyewitness expert testimony)(*reversed on other grounds*).  The Supreme Court has recognized, "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it," and therefore, "the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)).  Therefore, as the Second Circuit recently commented, "the very breadth of the discretion accorded trial judges in admitting [expert testimony] under Rules 702 and 403 should cause them to give the matter more, rather than less, scrutiny." *Nimely*, 414 F.3d at 397 (quoting *United States v. Young*, 745 F.2d 733, 766 (2d Cir. 1984)(Newman, J., concurring)).

## II.    No Special Circumstances Warrant the Admission of Expert Testimony On Memory in this Case.

Defendant cites, and research reveals, no case from the District of Columbia or any other jurisdiction that approves, much less requires, the admission of the testimony of a memory expert in a case such as this one.[4]  To the contrary, the admission of expert psychological testimony on

---

[4] Nor is there any basis for defendant's suggestion (Mem. 3) that the exclusion of the proposed evidence would violate defendant's rights under the Fifth or Sixth Amendments.  As this Court is well aware, criminal defendants do not have a right to present evidence that the district court, in its discretion, deems irrelevant or immaterial.  *See Scheffer v. United States*, 523 U.S. 303, 307 (1998)(approving exclusion of polygraph evidence); *United States v. Blackwell*, – F.3d – 2006 WL 2471965 (6th Cir. August 29, 2006)(citing *Taylor v. Illinois*, 484 U.S. 400, 410

memory has been approved only in limited circumstances, such as in cases involving eyewitness identifications, repressed memory, and cases involving medical conditions affecting memory. *See*, *e.g.*, *United States v. Brownlee*, 454 F.3d 131 (3d Cir. 2006)(eyewitness identification); *Rock v. Arkansas*, 483 U.S. 44 (1987)(approving expert testimony regarding hypnotically enhanced memory of child abuse); *United States v. Shay*, 57 F.3d 126 (1st Cir. 1995)(holding criminal defendant entitled to present expert testimony that he suffered from a mental disease that led him to tell grandiose, self-incriminating lies); *United States v. Sasso*, 59 F.3d 341 (2d Cir.1995)(evidence of witness's psychological condition admissible where relevant to witness's ability to perceive or recall events or testify accurately), *People v. Peake* 788 N.Y.S.2d 501 (N.Y. App. Div. 2005)(testimony of treating psychiatrist offered to establish, in perjury prosecution, that defendant suffered from memory loss as a result of psychiatric disorder and medications).[5]

Even in such cases, the courts have limited expert testimony to particular issues. *See*, *e.g.*, *United States v. Harris*, 995 F.2d 532, 534 (4th Cir. 1993)(noting that expert testimony regarding eyewitness identification allowed only in "narrow circumstances"); *United States v. Stevens*, 935 F.2d 1380, 1400 (3d Cir. 1991); *United States v. Smith*, 122 F.3d 1355, 1359 (11th Cir. 1997)(noting that none of the decisions relied upon by the proponent of the expert testimony "embraced the position that expert testimony regarding eyewitness reliability ought to be admitted wholesale in

---

(1988)("The accused does not have an unfettered [Sixth Amendment] right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."); *Montana v. Egelhoff,* 518 U.S. 37, 42 (1996)(applying rule in Due Process context)).

[5] The issue in *Peake* was whether defense counsel was ineffective in declining to call the government's psychiatric expert or seek missing witness instruction after the government announced that it did not intend to call the expert in its rebuttal case.

every case").[6]  Courts determine admissibility on a case-by-case basis, and admit only testimony

relevant to particular issues raised by the facts of the case.  *E.g.*, *United States v. Mathis,* 264 F.3d

321, 335 (3d Cir. 2001)(distinguishing between certain memory expert assertions that were properly

excluded and others that would be of assistance to the trier of fact).  *But see Smith*, 122 F.3d at

1357-59 (reaffirming *per se* rule of inadmissibility).

Absent special circumstances raising factual issues beyond the common knowledge and

experience of jurors, expert testimony on memory consistently has been rejected, with the courts

holding that issues related to faulty memory are adequately addressed through cross-examination of

witnesses and jury instructions.  *See*, *e.g.*, *United States v. Carter*, 410 F.3d 942, 950-51 (7th Cir.

2005)(holding that cross-examination and jury instructions eliminated the need for expert testimony).

Research reveals only one federal case from the District of Columbia in which the court

addressed the question of the admissibility of expert testimony regarding memory.  That case,

*Robertson v. McCloskey*, 676 F. Supp. 351 (D.D.C. 1988)(Green, J.), involved a libel suit related to

events that occurred 38 years earlier, during the Korean War.  The plaintiff sought to present expert

testimony regarding "the psychodynamics of memory and perception" and  "the factors that bear on

the reliability of recollections."  *Id.* at 352.  In particular, the plaintiff sought to have the expert

testify that the accuracy of memories diminishes over time, and that a person can reconstruct or even

fabricate details of complex events that took place long ago. *Id*.

The court in *Robertson* excluded the proposed expert testimony on the ground that the

testimony involved matters of common sense and was not sufficiently tied to the facts of the case

---

[6]  Needless to say, appellate decisions affirming the admission of expert testimony do not
stand for the proposition that excluding the evidence would have been an abuse of discretion.

to be relevant, and therefore would not assist the trier of fact, and because its admission would likely

cause unnecessary confusion and delay. *Id.* at 355. In its opinion, the court explained:

> The bulk of [the expert's] proposed testimony concerns matters that are squarely
> within the comprehension of the average juror. It is no secret that memory decreases
> over time, that individuals can selectively remember or even fabricate events, or that
> stress can have an impact on memory or perception.

*Id.* at 354. Therefore, the court concluded, the expert's testimony would merely prolong the trial and

could potentially confuse the jury. *Id.* at 354-55.[7]

In reaching its conclusion, the court in *Robertson* specifically held that cases involving expert

testimony regarding the reliability of eyewitness identifications, which were cited by plaintiff in

support of the admissibility of the proposed testimony were "readily distinguishable," given that the

proposed testimony before it involved the "memory and perception of participants in complex events

and conversations," as opposed to the memory of eyewitnesses who made incriminating

identifications. *Id.* at 353.

This case involves no eyewitness identifications, no witnesses with mental conditions

affecting memory, no repressed memories, and no other circumstance in which the admission of

expert testimony on memory has been approved in past cases. To the contrary, the jury in this case

will be asked to make the same credibility determinations required in every case in which witnesses

recount historical events and conversations -- nothing more or less. Thus, this case falls well within

the mainstream of cases in which expert testimony regarding memory has been rejected. Indeed, a

---

[7]  The court further found that the testimony was not sufficiently "reliable" under the
traditional (pre-*Daubert*) *Frye* test, because the psychodynamics of memory had not achieved
"general acceptance" in the scientific community. *Id.* at 355. Under *Daubert*, as opposed to
*Frye*, "general acceptance in the scientific community" is only one of several considerations in
determining whether proffered expert testimony is reliable.

finding that expert testimony is relevant and admissible in this case would not only be unprecedented, it would also supply authority for the admission of such testimony in virtually all cases – criminal and civil – as it is the rare case in which the perceptions and memories of witnesses are not challenged. This is not, and cannot be, the law. *See Krist v. Eli Lilly and Co.*, 897 F.2d 293, 298 (7th Cir. 1991)(stating, "Certainly in routine cases the trial judge is not required to allow wide-ranging inquiry into the mysteries of human perception and recollection.")

There is every reason to believe that skillful cross-examination by defense counsel will serve as an equally, if not more, effective tool in for testing the reliability of the witnesses at trial in this case. *Rodriguez-Felix*, 450 F.3d at 1125 ("Jurors, assisted by skillful cross-examination, are quite capable of using their common-sense and faculties of observation" to determine the reliability of a witness's identification)(citing *Smith*, 156 F.3d at 1053 and *Hall*, 165 F.3d at 1107). *See also United States v. Affleck*, 776 F.2d 1451, 1458 (10th Cir. 1985)(affirming the exclusion of testimony offered by defendant in securities fraud case to explain "how well or how poorly people are able to remember things the way that they do" on the ground that "[t]he average person is able to understand that people forget; thus, a faulty memory is a matter for cross-examination."). In addition, if necessary, jury instructions may be provided to the jury. See, e.g., *United States v. Thoma*, 713 F.2d 604, 607-08 (10th Cir.1983); *United States v. Rincon*, 28 F.3d 921 (9th Cir. 1994)(holding that even informative expert testimony that is counter-intuitive may not "assist the trier of fact" if the court conveys the same information by means of jury instructions).

Therefore, because there exist no special circumstances warranting expert testimony related to the credibility of the witnesses in this case, the proposed testimony should be excluded.

**III.    The Proposed Testimony is Inadmissible Because It Is
        Limited to Matters of Common Knowledge and Experience.**

Expert testimony that is limited to matters of general knowledge is not admissible because it is not useful to the trier of fact. *United States v. Mitchell*, 49 F.3d 769, (D.C. Cir. 1995)(upholding exclusion of expert linguistics testimony where recorded conversation in evidence and contents within common understanding of jury); *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir.1991) (noting that "Rule 702 . . . dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject"); *United States v. Welch*, 368 F.3d 970, 974 (7th Cir. 2004) (noting that "[w]here expert testimony addresses an issue of which the jury is already generally aware, such testimony does not assist the jury") (internal quotation marks omitted)(overruled on other grounds); *United States v. Affleck*, 776 F.2d 1451, 1458 (10th Cir. 1985) (excluding expert testimony because "the average person is able to understand that people forget").

As stated in the Advisory Committee's Note to Fed. R. Evid. 702:

> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

Fed. R. Evid. 702, Advisory Comm. Notes.  Similarly, expert testimony that duplicates arguments available to counsel for the parties is not helpful to the trier of fact.  *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004)("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.")(citing 4 Weinstein's Federal Evidence § 702.03[2] [a]).

12

Many courts have noted that jurors are generally aware of most issues related to faulty memory. *See Robertson*, 676 F. Supp. at 352; *United States v. Stokes*, 388 F.3d 32 (2004)(affirming exclusion of expert testimony given that psychological factors that affect memory are generally known to jurors); *United States v. Welch*, 368 F.3d 970 (2004)(*reversed on other grounds*)(same); *United States v. Hall*, 165 F.3d 1095 (8th Cir. 1999)(noting that general reliability of eyewitness identification is matter of common understanding).

As indicated by these decisions, jurors are generally familiar with the information needed to assess the reliability of witness testimony. Jurors understand that people sometimes forget, that memory is imperfect, and that memories fade with the passage of time. *See*, *e.g.*, *United States v. Labansat*, 94 F.3d 527, 530 (9th Cir. 1996)(affirming exclusion of expert testimony regarding eyewitness identification on ground that "[i]t is common knowledge that memory fades with time"); *United States v. Rosenberg*, 297 F.2d 760, 763 (3d Cir. 1958)(holding that failure to disclose pretrial statement of witness admitting that her recollection had faded over time did not violate *Brady* where that fact was one of "universal experience and common knowledge, of which the jury must have been aware in any event"). It is common knowledge that people can forget things and confuse details, especially when they are focused on other matters. *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 497 (10th Cir. 2000)(noting in context of wrongful termination suit that "[f]orgetfulness is an exceedingly common human frailty. Many of us tend to forget names. This is particularly so where we briefly meet a lot of different people . . . . "). Jurors are well aware that people sometimes make mistakes about things they were told and/or who told them, that they sometimes selectively remember or even fabricate events, or that stress can have an impact on memory or perception. *Robertson*, 676 F. Supp. at 354. It is also common knowledge, even cliche, that people sometimes

13

hear what they want to hear. Therefore, based on their own common sense, knowledge and experiences, jurors can understand that any witness, including defendant, might be mistaken when he or she tries in good faith to remember and testify about details of past events and conversations, and are unlikely to place undue reliance on a witness's confidence where other evidence indicates that witness's confidence in his or her own recollection is misplaced. None of these matters require explanation by an expert and, thus, the proposed testimony should be excluded. *See generally United States v. Cruz*, 981 F.2d 659 (2d Cir. 1992)(holding that the admission of expert testimony on the role of a "broker" in a drug deal was reversible error because it was limited to common knowledge, and was used essentially to bolster the credibility of the prosecution's central fact witness).

Defendant argues that studies indicate, and courts have held, that people in general and jurors in particular harbor misconceptions regarding memory and, in particular, that many believe that confidence and accuracy are correlated. Mem. at 9-11. The cases[8] and studies[9] cited by defendant,

---

[8] *See United States v. Smithers*, 212 F.3d 306 (6th Cir. 2000)(holding that district court should not have excluded expert testimony on eyewitness identification without *Daubert* analysis where robbery case rested on eyewitness identifications); *United States v. Sullivan*, 246 F. Supp. 696 (E.D. Ky. 2003)(same); *United States v. Moore*, 786 F.2d 1308, 1312-13 (5th Cir. 1986) (holding no abuse of discretion in excluding expert eyewitness identification testimony, but noting that such testimony may be admissible, and even critical, where case rests solely on casual identification); *United States v. Downing*, 753 F.2d 1224 (3d 1985)(reversing district court's holding that expert testimony regarding eyewitness identification is never admissible in federal court, and directing court to exercise discretion); *United States v. Brownlee*, 454 F.3d 131 (3d Cir. 2006)(holding abuse of discretion in excluding expert testimony regarding eyewitness identification issues such as cross-racial identification); *United States v. Norwood*, 939 F. Supp. 1132, 1137-41 (D. N.J. 1996)(admitting expert eyewitness identification testimony on particular relevant issues, including cross-racial identification, weapon-focus, stress, effect of exposure to pretrial identification proceedures).

[9] Deborah Davis & William C. Follette, *Foibles of Witness Memory for Traumatic /High Profile Events*, 66 J. Air L. & Com. 1421, 1430 (2001); Richard A. Wise & Martin A. Safer, *A*

however, focus primarily on the reliability of eyewitness identification, a context that is legally as well as factually distinct from that presented by this case. *See Robertson v. McCloskey*, 676 F. Supp. at 353. These authorities do not address the admission of expert testimony in contexts remotely analogous to that presented by this case, much less advocate the use of expert testimony regarding memory in routine cases involving alleged lapses of memory or conflicting versions of events. *See Humphries v. Mack Trucks*, 1999 WL 815067 (4th Cir. 1999)(an unpublished opinion[10] in which the court approved the admission of expert testimony regarding the effect of memory on perception in a personal injury case which established, in light of theories concerning short-term memory and perception, visual spatial tasks, and past experience with symmetrical deck plates, and "interference effect," victim was more likely to fall from deck plate having alternative (asymmetrical) design); *United States v. Weiss*, 579 F. Supp. 1224, 1236 (S.D.N.Y. 1983)(perjury case in which court mentions in a footnote that expert testimony regarding memory was admitted, without addressing the issue in any way).

In most cases involving eyewitness identification, the accuracy of the identification is the central issue, and the jury's determination of guilt or innocence rests heavily on the jury's assessment of the identification's accuracy. Whereas jurors likely have had no personal experience with eyewitness identifications and may have misconceptions based in part on a lack of experience, it is

---

*Survey of Judges' Knowledge and Beliefs About Eyewitness Testimony*, Court Review, Spring 2003; Richard S. Schmechel, Timothy P. O'Toole, Catharine Easterly & Elizabeth F. Loftus, *Beyond the Ken? Testing Jurors' Understanding of Eyewitness Reliability Evidence*, 46 Jurimetrics J. 177-244 (2006); Kenneth A. Deffenbacher & Elizabeth Loftus, *Do Jurors Share a Common Understanding Concerning Eyewitness Behavior?* 6 L. & Human Behavior 15 (1982).

[10]     Rule 36(c) of the Fourth Circuit Local Rules notes that citation of unpublished opinions is "disfavored" in that Circuit.

likely that they have had occasion to learn that something they clearly recalled was inaccurate, or to see another person recount inaccurate facts with total confidence in their accuracy.

Outside the unique context of eyewitness identification, jurors are far less likely to be confused regarding the probative value of confidence. In assessing the accuracy of witness testimony in cases in which witnesses recount past events and conversations, jurors naturally consider a broader set of factors, including the degree to which witness testimony is corroborated by other evidence, indicia of bias, prior consistent and inconsistent statements, and aspects of the witnesses' demeanor other than apparent confidence. Contrary to defendant's suggestion, there are few aspects of this case that will turn on witness testimony regarding the specific content of conversations that are wholly uncorroborated by documents or other evidence, and none in which the jury's assessment of demeanor naturally will be limited to or focused heavily on a witness's confidence.

The fact that jurors may be unaware of technical terms or scientific jargon, or of details regarding how memory processes function, does not mean they will be unable to understand the evidence or assess the reliability of the witnesses' testimony. To the contrary, scientific details regarding the function of memory are neither necessary nor helpful to the jury's task. As recently noted by the Seventh Circuit, jurors need not master scientific jargon to have an awareness of the relevant concepts sufficient to allow them evaluate the accuracy and credibility of witness testimony. *United States v. Welch*, 368 F.3d 970, 974 (7th Cir. 2004)("Although the average person may not know what the term 'clothing bias' means, it is common knowledge that one may mistake a person for someone else who is similarly dressed. . . . [and] it does not require an expert witness to point out that memory decreases over time"). Indeed, in the context of this case, the jury does not need expert testimony on the "psychodynamics of memory" to determine whether defendant forgot or

became confused any more than it needs expert testimony on "prevarication" to determine whether defendant lied.

In fact, the general knowledge jurors possess regarding memory equips them well to assess reliability and credibility, especially if aided by cross-examination and accurate instructions from the Court. As the Supreme Court has stated, "[d]etermining the weight and credibility of witness testimony 'has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men,'" *United States v. Scheffer*, 523 U.S. 303, 313 (1998)(holding that per se rule prohibiting use of polygraph evidence in military courts did not violate defendant's rights under the Fifth and Sixth Amendments)(quoting *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88 (1891)). Because the jury needs no expert testimony to understand that the memory of witnesses, including that of defendant,[11] may be flawed, the proposed testimony is not, contrary to defendant's contention, necessary – much less "vitally necessary" (Mem. 2) – to their understanding of the issues in the case.

## IV.    The Proposed Testimony is Inadmissible Because It Cannot Reliably Be Applied to the Facts of The Case.

Defendant proposes to elicit from Dr. Bjork general scientific principles regarding the way memory functions and fails, but does not seek to have him apply the principles to the facts of this case. While such testimony is permissible in some circumstances, that is not the case if the jury cannot reliably make use of the information, or if the admission of the testimony may confuse, mislead, or unduly prejudice its consideration of the relevant issues.

---

[11] Notably, defendant has not committed to testifying on his own behalf, and declines to identify which events or conversations he will claim he got right and which he innocently got wrong.

Contrary to defendant's contention, the proposed testimony would not assist the jury in understanding or determining the facts in issue in this case. As set forth above, the jury in this case will be charged with determining whether the information defendant provided to the investigators and the grand jury was accurate and, if not, whether defendant's inaccurate statements and testimony were the product of innocent mistakes or deliberate lies. Neither the proposed testimony regarding the workings of memory, nor the proposed testimony regarding the absence of a correlation between confidence and accuracy, will assist the jury in distinguishing between accurate and inaccurate memories, or assessing the competing recollections of defendant and the government's witnesses (*see* Mem.10).

More importantly, the proposed testimony will provide the jury with no assistance in distinguishing between inaccurate memories and deliberate lies. The proposed testimony merely provides a scientific explanation for the processes by which defendant misremembered – if he misremembered. However, details regarding *how* defendant *may* have misremembered do not make it "more plausible" that defendant innocently relayed incorrect information, rather than deliberately lied.

Accordingly, the proposed testimony does not "fit" the issues of the case, and would not be helpful to the trier of fact.

## V.     The Proposed Testimony is Likely to Confuse, Mislead, or Unduly Influence the Jury.

Not only would the admission of the proposed testimony not be helpful to the jury, it would also be confusing, misleading and prejudicial, and would unnecessarily delay the proceedings. As discussed above, the jurors do not need expert testimony regarding the mechanics of forgetting to

18

understand that defendant or the other witness may have forgotten details of the relevant events and conversations. Thus, the admission of expert testimony by the defendant (and the resulting possibility that the government would need to present expert testimony on memory to rebut it) will protract the proceedings while offering nothing to the jury's fulfillment of its responsibility.

Admission of the proposed testimony would also give undue weight to defendant's innocent mistake theory by cloaking it in an unwarranted "aura of special reliability and trustworthiness" *United States v. Cruz*, 363 F.3d 187, 194 (2d Cir. 2004)(citation and quotation marks omitted). *See also United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004)(*en banc*), *cert. denied*, 125 S. Ct. 2516 (2005)("Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse."); *Daubert*, 509 U.S. at 595; *United States v. Rodriguez-Berrios*, 2006 WL 2336884 at (D. Puerto Rico, August 3, 2006)(noting that memory expert's testimony carries "a great deal of inherent reliability, which jurors can often confuse for infallibility").

Moreover, the admission of the proposed testimony would tend to make the jury unduly skeptical of the testimony of all witnesses, and could encourage jurors to surrender their own common sense in weighing testimony. *See United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973)(affirming exclusion of psychological evaluation of government witness proffered by defendant, expressing "grave doubt" that the testimony would have helped the jury, and noting that under the Constitution, "trial of criminal cases in Federal courts is by jury, not by experts."). Taken to its logical conclusion, Dr. Bjork's testimony could lead the jury to conclude that the "inherent fallibility" of memory is so great, that witness testimony regarding past events and conversations

19

could never support a finding beyond a reasonable doubt and, to the contrary, would have to be disregarded.

Accordingly, even if this Court were to find that the proposed testimony were relevant and helpful, it should be excluded because its probative value is far outweighed by the potential for confusing an misleading the jury, and unnecessarily protracting the trial.

## **CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to admit the testimony of Robert A. Bjork.

Respectfully submitted,

_____/s/_____
PATRICK J. FITZGERALD
Special Counsel

JAMES P. FLEISSNER
DEBRA RIGGS BONAMICI
Deputy Special Counsels

Office of the United States Attorney
Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

Dated:  September 7, 2006

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 7th day of September, 2006, I caused true and correct copies of the foregoing to be served on the following parties by electronic mail:

William Jeffress, Esq.
Baker Botts
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Facsimile: 202-585-1087

Theodore V. Wells, Esq.
Paul Weiss
1285 Avenue of the Americas
New York, NY 10019-6064
Facsimile: 212-373-2217

Joseph A. Tate, Esq.
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793
Facsimile: 215-994-2222

John D. Cline, Esq.
Jones Day
555 California Street
San Francisco, CA 94104
Facsimile: 415-875-5700

Patrick J. Fitzgerald
Special Counsel
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C.  20530
202-514-1187

By: _____/s/_____
Debra Riggs Bonamici
Deputy Special Counsel