# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 05-394 (RBW) |
| | ) | |
| | ) | |
| I. LEWIS LIBBY, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MEMORANDUM OPINION AND ORDER

On September 27, 2006, this Court will commence hearings pursuant to Section 6(a) of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III, § 6(a) (2000), to address the "use, relevance, and admissibility" at trial of certain classified documents, information, and testimony.[1]  After reviewing the papers submitted by the parties, it is apparent that they not only disagree on the evidentiary value of the information at issue, but also have divergent views on the standard the Court should employ in determining whether use of the information should be precluded during the trial.[2]  Thus, before these hearings commence, the Court must address the standard it will employ during those hearings in addressing the

---

[1] In connection with these hearings, the following papers have been submitted to the Court: (1) the Defendant's Consolidated CIPA § 5 Notice ("Def.'s Notice"); (2) the defendant's Memorandum Concerning Use, Relevance, and Admissibility of Classified Documents and Information Listed in Defendant's Consolidated CIPA § 5 Notice ("Def.'s Mem."); (3) the Government's CIPA § 6(b) Notice ("Gov't's Notice"); (4) the Government's Memorandum in Opposition to Defendant's Arguments Regarding the Use, Relevance, and Admissibility of Classified Documents ("Gov't's Opp'n"); and (5) the defendant's Reply Memorandum Concerning Use, Relevance, and Admissibility of Classified Documents and Information Listed in Defendant's Consolidated CIPA § 5 Notice ("Def.'s Reply").

[2] The Court uses the term "information" throughout this opinion to encompass all categories of classified evidence, including documents and testimony, that the defendant seeks to introduce as evidence during the trial and which is identified in his Section 5 notice.

admissibility question.  As discussed in greater detail below, it is the Court's conclusion that the

Federal Rules of Evidence and the restrictions they impose control whether information subject

to CIPA proceedings is admissible during a trial.

## I.    The CIPA

The CIPA establishes the procedures for pretrial determinations of the disclosure and the

admissibility at trial of classified information in federal criminal proceedings.[3]  See United States

v. Fernandez, 913 F.2d 148, 151 (4th Cir. 1999).  The statute was designed to reconcile, on the

one hand, a criminal defendant's right to obtain prior to trial classified information and introduce

such material at trial, with, on the other hand, the government's duty to protect from disclosure

sensitive information that could compromise national security.  United States v. Rezaq, 134 F.3d

1121, 1142 (D.C. Cir. 1998).  As such, the CIPA creates pretrial, trial, and appellate procedures

for federal criminal cases where there is a possibility that classified information will be disclosed

through a defendant's defense.  These pretrial procedures cover the manner in which pretrial

conferences are to be conducted, the issuance of protective orders, and the regulation of the

discovery of classified information sought by criminal defendants.  18 U.S.C. App. III, §§ 2-4.  In

addition, the CIPA sets forth a structure for determining the admissibility of classified

information at trial, which involves a four step process.  18 U.S.C App. III, §§ 5-6.

First, Section 5(a) of the CIPA requires a defendant to file a notice describing the

classified information he "reasonably expects to disclose or cause the disclosures of" at trial.  18

U.S.C. App. III, § 5(a) ("Section 5 notice").  If the defendant fails to comply with this

---

[3]  It is clear to the Court, and the defendant does not contend otherwise, that the government's assertion that the documents identified in the defendant's Section 5 notice are classified is justified.  Accordingly, it is proper to employ the CIPA procedures.

requirement, the Court, in its discretion, may preclude the use of any classified information not part of the defendant's Section 5 notice.  Id. at § 5(b).  Second, at the government's request, the Court must hold a pretrial hearing to address the "use, relevance, or admissibility" of the classified information identified in the defendant's Section 5 notice.  Id. at § 6(a).[4]  Following this hearing, the Court is required to "set forth in writing the basis for its determination" as to each piece of classified information that was at issue during the hearing.  Id.  Third, if the Court determines that certain classified information can be used during trial, the government may move (1) to replace the classified portions of the information at issue with a statement admitting the relevant facts that the information would tend to prove, or (2) to substitute a summary of the information.  Id. at § 6(c)(1)(A) - (B).  "The court shall grant such a motion . . . if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."  Id. at § 6(c)(1).  And finally, if the Court denies the government's proposed admission or substitution, the government has two options.  The government can file an "affidavit of the Attorney General objecting to [the] disclosure of the classified information at issue," which will then require the dismissal of the indictment except in cases where "the [C]ourt determines that the interests of justice would not be served by dismissal of the indictment."  Id. at § 6(e).  Alternatively, the government can file an immediate interlocutory appeal.  Id. at § 7.

Here, the defendant has filed his final Section 5 notice.  In response, the government has moved for a hearing pursuant to Section 6(a) and it has filed its Section 6(b) notice identifying

---

[4]  This hearing is preceded by the government's notice to both the Court and the defense of which documents in the defendant's Section 5 notice are classified and at issue.  18 U.S.C. App. III, § 6(b) ("Section 6(b) notice").

those items of classified information that are at issue. Accordingly, the Court, in the upcoming

hearings, must now make pretrial "determinations concerning the use, relevance, or admissibility

of [the] classified information" identified by the government. 18 U.S.C. App. III, § 6(a). Only

after these determinations are made does the Court need to address the question of redactions and

substitutions.

## II.      Section 6(a) of the CIPA

As noted above, the parties disagree sharply on the standard the Court should employ in

the Section 6(a) proceeding. The defendant argues that the Court must simply apply the Federal

Rules of Evidence, Def.'s Mem. at 5-6, while the government contends that the Court should

engage in a three-step inquiry, Gov't's Opp'n at 5-15. Specifically, the government opines that

when it asserts a classified information privilege,[5] a classified document (or testimony based on a

classified document) should be precluded from use at trial unless the Court determines (1) that

the document is relevant; (2) that the document is "helpful to the defense," and (3) that the

defendant's interest in disclosure of the document outweighs the government's need to protect

the classified information. Id. The Court cannot accept the government's position for the

following reasons.

"The CIPA's fundamental purpose is to protect and restrict the discovery of classified

information in a way that does not impair the defendant's right to a fair trial. It is essentially a

procedural tool that requires a court to rule on the relevance of classified information before it

may be introduced." United States v. Dumeisi, 424 F.3d 566, 578 (7th Cir. 2005) (emphasis

---

[5] The papers submitted by government refer to this privilege as both the classified information privilege and the national security privilege. See, e.g., Gov't's Opp'n at 12-14.

4

added) (internal quotation marks, brackets, and citations omitted); see also Fernandez, 913 F.2d
at 154; United States v. Smith, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc). When the CIPA
was enacted, Congress made clear that the statute did not alter the rules governing the
admissibility of evidence during a trial. Senate Rep. No. 96-823, 96th Cong., 2d Sess. (1980), p.
8; House Conf. R. No. 96-1436, 96th Cong. 2d. Sess., (1980), p. 12 ("As noted in the reports to
accompany[,] . . . [n]othing in the conference substitute is intended to change the existing
standards for determining relevance and admissibility."); see Smith, 780 F.2d at 1106; United
States v. Johnson, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the
admissibility or relevance of probative evidence."); United States v. Wilson, 732 F.2d 404, 412
(5th Cir. 1984) ("CIPA does not undertake to create new law governing admissibility.") (internal
quotation marks and citation omitted). However, "[w]hile [the] CIPA creates no new rule of
evidence regarding admissibility, the procedures it mandates protect a government privilege in
classified information." Yunis v. United States, 867 F.2d 617, 623 (D.C. Cir. 1989).

    Under Section 6(a), the Court is charged with making a pretrial "determination
concerning the use, relevance, or admissibility" of the classified information identified in the
defendant's Section 5 notice. 18 U.S.C. App. III, § 6(a). It is an unremarkable proposition of
statutory interpretation that it is a court's "duty to give effect, if possible, to every clause and
word of a statute." Duncan v. Walker, 533 U.S. 167, 174 (2001) (internal quotation marks and
citation omitted). Thus, during a Section 6(a) proceeding, the Court must make determinations
not only as to the relevance of classified information, but also as to its use and admissibility at
trial. 18 U.S.C. App. III, § 6(a). The fact that these are separate inquiries cannot be surprising
since, for example, it is well settled that not all relevant evidence is admissible during a trial. See

Fed. R. Evid. 403 ("[A]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."); Fed. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court.").

Applying the framework enunciated in Section 6(a), the Court must first determine whether the information identified by the defendant is relevant. Specifically, the Court must assess whether the information "[has] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401 (defining "relevant evidence"). Following the relevance determination, the Court must then examine whether the information is admissible at trial, and if so, whether its use should be limited.[6] This inquiry is also governed by the Federal Rules of Evidence, which imposes restrictions on the use of relevant evidence. See, e.g., Fed. R. Evid. 403, 404(b), 501.

Here, the government not only challenges the relevance of the information proffered by the defendant, but also asserts that its introduction should be excluded at trial because the government has a classified information privilege. Gov't Opp'n at 7. The government contends that when such a privilege is raised, the Court's inquiry must go beyond examining the relevance of the information. Specifically, the government argues that after a national security privilege has been invoked, the Court must look further than relevance and determine whether introduction of the information would be at least "helpful to the defense." Id. at 8 (citing Yunis,

---

[6] For example, courts often admit evidence of other crimes, but limit their use to show, inter alia, motive, identity, or a common scheme or plan. See, e.g., Fed. R. Evid. 404(b); Instructions 2.51(A), 2.51(B), Criminal Jury Instructions, Young Lawyers Section, The Bar Association of the District of Columbia (2005).

867 F.2d at 622). If this hurdle is satisfied, the government posits that the Court must then balance the need to protect the government's information against the defendant's interests in disclosure. Id. (citing Smith, 780 F.2d at 1110). According to the government, this further inquiry is used to determine the "use" and "admissibility" at trial of the information in question. Id. at 14. While recognizing that the District of Columbia Circuit has not mandated such a balancing test, the government notes that other courts have. Id. at 9 n. 5.

Before addressing the legal arguments raised by the government in support of its three-step inquiry, which in practice sets a standard higher than mere relevance and admissibility assessments, it is important to discuss briefly the history of the CIPA. During the congressional hearings which preceded the enactment of the CIPA, the Department of Justice ("DOJ") requested that the CIPA include a heightened standard for the admissibility of classified information. Specifically, the DOJ sought language that would make evidence admissible only if it was "relevant and material." Graymail S. 182, Hearing Before Subcommittee on Criminal Justice of Senate Judiciary Committee, 96th Cong., 2d Sess. (1980), pp. 3, 18. Under this standard, the Court would be required to balance the probative worth of the evidence against the potential harms to national security. Id. at pp. 9, 22. This standard was rejected by Congress, which stated unambiguously that "nothing in the [CIPA] is intended to change the existing standards for determining relevance and admissibility." Smith, 780 F.2d at 1106 (citing House Conference Report No. 96-1436, 96th Cong., (1980), p. 12.).

Here, the government is advocating a standard similar to the one rejected by Congress. Not only does the government's argument lack support in the legislative history, but with one exception, see Smith, 780 F.2d at1106-1110, its position is not supported by the existing case

7

law.  While there can be no question that the government has a legitimate privilege in protecting

documents and information concerning national security, see, e.g., C. & S. Air Lines v.

Waterman S.S. Corp., 333 U.S. 103, 111 (1948); Totten v. United States, 92 U.S. 105, 106-07

(1875), the extent of that protection in the context of a criminal prosecution is embodied in the

procedures set forth in the CIPA,  Yunis, 867 F.2d at 623 ("the procedures [the CIPA] mandates

protect [the] government['s] privilege in classified information."); see United States v. Mejia,

448 F.3d 436, 455 (D.C. Cir. 2006) (quoting Yunis, 867 F.2d at 623).  And the cases in this

Circuit that have applied the CIPA have recognized only that it allows for the Court to balance

the assertion of a classified information privilege against a criminal defendant's interests during

the discovery process.  See Mejia, 448 F.3d at 455; Yunis, 867 F.2d at 623.

        In Yunis, and later in Mejia which reaffirmed Yunis, the District of Columbia Circuit

addressed the question of what standard to employ in a CIPA proceeding when the Court is asked

to determine whether classified information should be produced in discovery.   Recognizing that

the government has a substantial interest in protecting classified information, the Yunis Court

reasoned that something more than simple "materiality" must be shown.  Yunis, 867 F.2d at 622.

Thus, the  Court required a further inquiry, one consistent with what the Supreme Court found

necessary in Roviario v. United States, 353 U.S. 53 (1957).  Id.  In Rovario, the Supreme Court

was presented with the question of whether an informant's identity had to be disclosed during

discovery.  Roviaro, 353 U.S. at 59.  The Supreme Court held that while a common law

"informant's privilege" exists, the privilege must give way when disclosure of the information

"is relevant and helpful to the defense of an accused."  Yunis, 867 F.2d at 622 (citing Roviaro,

353 U.S. at 60-61) (internal quotation marks omitted).  Finding the disclosure of classified

information analogous to the disclosure of an informant's identity, the Circuit Court in Yunis

required an identical inquiry for determining whether classified information should be produced

during discovery.  Id. at 622-23.  Thus, the Circuit Court concluded that something more than "a

mere showing of theoretical relevance" was required for the Court to order the production of

classified documents.  Id. at 623; Mejia, 448 F.3d at 455.  And this Court employed this test

when presented with motions to compel the production of classified documents at an earlier stage

of this litigation.  See United States v. Libby, 429 F. Supp. 2d 1, 7 (D.D.C. 2006); see

also United States v. Sarkissian, 841 F.2d 959, 965 (9th Cir. 1988) (applying a balancing test to a

CIPA § 4 proceeding); United States v. Pringle, 751 F.2d 419, 427 (1st Cir. 1984) (same).

        The government now asks this Court to import this test, used at the discovery stage, into

the CIPA "use, relevance, and admissibility" decision.  Gov't's Opp'n at 5-15.  As support for

this applicability leap, the government relies on cases from the Fourth Circuit, including one

from a splintered en banc court.  Id. (citing Smith, 780 F.2d at 1107-11).  These cases, however,

ignore the clear language of the statute and the unambiguous mandate from Congress that the

standard evidentiary rules applicable in federal courts apply with equal force in Section 6(a)

hearings.

        In Smith, the Fourth Circuit, sitting en banc, recognized that "the legislative history is

clear that Congress did not intend to alter the existing law governing the admissibility of

evidence" in Section 6 proceedings.  Smith, 780 F.2d at 1106 (noting further that "[t]he circuits

that have considered the matter agree with the legislative history cited that ordinary rules of

evidence determine the admissibility under [the] CIPA").  Despite acknowledging this clear

mandate from Congress, a seven to five majority of the Fourth Circuit concluded that there

existed, under Federal Rule of Evidence 501, a common law privilege for classified information, and that a court must "balance the public interest in nondisclosure against the defendant's right to prepare a defense" before the evidence may be admitted at trial. Id. at 1107. The Fourth Circuit's reasoning was based entirely on the Supreme Court's decision in Roviaro and its progeny. Id. (citations omitted). While noting that "[t]he privilege must give way to the 'fundamental requirements of fairness,'" the Fourth Circuit reasoned that "[t]he defendant must come forward with something more than speculation as to the usefulness of such disclosures." Id. at 1107-08 (citations omitted). Thus, the Fourth Circuit held that "[a] district court may order disclosure only when the information is at least essential to [the] defense, necessary to the defense, and neither merely cumulative nor corroborative," and the defendant's interest in disclosure outweighs the government's classified information privilege. Id. at 1109-10 (internal citations and quotation marks omitted); see also United States v. Zettl, 835 F.2d 1059 (4th Cir. 1987) (applying Smith). It is Smith's balancing mandate which this Court cannot accept.

As recognized by the dissenting judges in Smith, the majority adopted an admissibility standard that was explicitly rejected by Congress when considering the enactment of the CIPA. Smith, 780 F.2d at 1111 (Butzner, J. dissenting) (noting that Congress explicitly refused to incorporate language into the CIPA adopting the Roviaro balancing test for the admissibility of classified information). Moreover, the majority's reliance on Roviaro and its progeny was misplaced, as those cases stand solely for the proposition that a balancing must be employed before the discovery of classified information may be required. Id. at 1112. In addition, Roviaro, was not intended to "exclude the introduction of relevant evidence known to the defendant." Id. (citing Rovario, 353 U.S. at 60 n.8; United States v. Godkins, 527 F.2d 1321, 1325-27 (5th Cir.

10

1976)).  Thus, by employing "Roviaro to exclude relevant evidence known to the defendant,

instead of confining its principles to discovery requests, [the Fourth Circuit] significantly

alter[ed] the existing standard for determining the admissibility of evidence in contravention of

express congressional intent."  Id.  Similarly, the reasoning of the Smith majority is flawed

because it fails to recognize that there is an important difference between the discovery of

information and its ultimate use during trial.   While,"[t]here is no general constitutional right to

discovery in a criminal case," Weatherford v. Bursey, 429 U.S. 545, 559 (1977) (citation

omitted), the Constitution mandates that a defendant be accorded the opportunity to present a

defense, see, e.g., Chambers v. Mississippi, 410 U.S. 284, 302 (1973) ("[f]ew rights are more

fundamental than that of an accused to present witnesses in his own defense." ).  Indeed, the

Fourth Circuit failed to recognize that the CIPA itself has separate provisions that govern

discovery and admissibility.  Compare 18 U.S.C. App. III, §§ 3, 4, with id. at § 6.[7]

    Based on the foregoing, there is simply no basis for importing the Roviaro standard into

the CIPA's use, relevance and admissibility determination, especially against the backdrop of

Congress' clear declaration that the standard rules of evidence should apply.  In fact, the Fourth

Circuit appears to be moving away from the en banc court's ruling in Smith.  Most recently, the

Fourth Circuit in United States v. Moussaoui, observed, albeit in the discovery context, that even

---

[7]  While this Court's opinion appears to be the first published opinion that takes exception with the Fourth
Circuit's admissibility standard adopted in Smith, commentators have suggested that the Fourth Circuit's opinion is
contrary to the Congress' intent and the applicable evidentiary standards. See Richard Salgado, Comment,
Government Secrets, Fair Trials, and the Classified Information Procedures Act, 98 YALE L.J. 427 (1988)
("[a]ssuming Congress understood the current state of evidence law, the Smith and Zettl court probably violated the
intent of Congress when they allowed trial courts to balance the defendant's need for disclosure against the interests
of national security in section 6(a) relevancy hearings"); see also Charles Wright & Kenneth Graham, Federal
Practice and Procedure § 5672 (3d ed. 1998) (observing that the Fourth Circuit in Smith adopted "a more strict rule
of admissibility" for Section 6(a) proceedings, despite Congress' rejection of such a standard).

when the balancing test is applied to assess whether documents should be produced to the

defendant, "the 'balancing' [it] must conduct is primarily, if not solely, an examination of

whether the district court correctly determined that the information the Government seeks to

withhold is material to the defense." Moussaoui, 382 F.3d 453, 476 (4th Cir. 2004) (discussing

the required balancing at the discovery phase). Thus, while the Fourth Circuit in Moussaoui was

presented with a discovery dispute as opposed to a question of admissibility under the CIPA,

since the Fourth Circuit in Smith required courts in that Circuit to conduct the identical balancing

test when determining whether classified information would be admissible under the CIPA, the

Fourth Circuit's apparent minimization of that test in the discovery context likely applies with

equal force to admissibility determinations.

And just as this Court believes it was improper for the Fourth Circuit to employ the

Roviaro standard at the admissibility phase, it would be improper for this Court to employ the

District of Columbia Circuit's discovery stage pronouncements from Yunis and Mejia during the

Section 6(a) proceedings the Court will conduct. While there is no doubt a governmental interest

in protecting national security and classified information under the CIPA, the Court's balancing

of the government's interests against the defendant's interest was properly employed during the

discovery process, not now, when examining whether the disclosed information must be

excluded at trial. This is not to say, however, that the government's interests in protecting

classified information are diminished at the admissibility stage. Indeed, the CIPA continues to

provide the government substantial safeguards to protect classified information at this stage in

the proceeding. Thus, if this Court concludes that identified documents are relevant and

otherwise admissible at trial, the government can seek to substitute or redact those documents to

protect the classified information from disclosure. 18 U.S.C. App. § 6(c). If the government is still not satisfied that the classified information is adequately protected at the conclusion of these hearings, the government has the power to preclude entirely the introduction at trial of the classified information. 18 U.S.C. App., § 6(c)(2). While invocation of this option may require dismissal of this case, now, just as during the discovery process, "[t]he burden is the Government's, not to be shifted to the trial judge, to decide whether the public prejudice of allowing the crime to go unpunished is greater than that attendant upon the possible disclosure of state secrets and other confidential information in the Government's possession." Moussaoui, 382 F.3d at 475 (quoting Jencks v. United States, 353 U.S. 657, 672 (1957)) (internal quotation marks and emphasis omitted). Thus, the government is not without recourse to protect national security interests if the Court concludes that the defendant must be permitted to reveal classified information as part of his defense.

It is the hallmark of the criminal justice system in this country that every defendant has "a right to his day in court," to "examine the witnesses against him, to offer testimony [and other admissible evidence], and to be represented by counsel." In re Oliver, 333 U.S. 257, 273 (1948) (footnote omitted). In fact, the Supreme Court has observed that "[f]ew rights are more fundamental than that of an accused to present . . . [a] defense." Chambers, 410 U.S. at 302. And it is the duty of this Court to ensure that the defendant receives his constitutionally protected right to a fair trial. See, e.g., Sheppard v. Maxwell, 384 U.S. 333, 362 (1966) (noting that a district court has a duty to ensure that a criminal defendant has a fair trial). Adopting the balancing test advanced by the government is not only contrary to Congress' clear mandate and the proper application of the relevant case law in this Circuit, but could infringe on the

13

defendant's constitutional right to put on a defense by preventing him from introducing relevant and otherwise admissible evidence at his trial because the government's interest in non-disclosure was considered of greater significance.  This is a balance that is simply not appropriate under either the CIPA or the Constitution.  As the Supreme Court recognized almost fifty years ago,

> the Government can invoke its evidentiary privileges only at the price of letting the defendant go free . . . .[S]ince the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense.

Jencks, 353 U.S. at 670-71 (internal quotation marks and citation omitted).  Accordingly, this Court is compelled to employ the standard rules of evidence in assessing admissibility of the classified information throughout the Section 6(a) proceedings it will conduct.  To conclude otherwise would be contrary to Congress' clear mandate and potentially compromise the defendant's right to a fair trial.[8]

    **SO ORDERED** this 21st day of September, 2006.

_____
REGGIE B. WALTON
United States District Judge

---

[8] It is also important to briefly discuss Federal Rule of Evidence 403, as the parties have diverging views on its application.  There is no question that Rule 403, as a standard rule of evidence, impacts the admissibility of the classified information referenced in the defendant's CIPA § 5 notice.   Rule 403 provides that relevant evidence can be excluded at trial "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  According to the notes accompanying Rule 403, "'[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Id., notes.  Thus, the import of Rule 403 is that evidence will be excluded if its viewing by the fact finder will improperly impact its decision.  Accordingly, the fact that evidence may be classified and thus impact important national security interests is not, by itself, sufficient to exclude the evidence.  Rather, there must be some indication that the evidence will improperly impact the jury's decision making process.  Thus, for example, if the evidence is of a nature as to divert the jury's attention to unimportant peripheral issues, it might be proper to exclude it. United States v. Miller, 874 F.2d 1255, 1277 (9th Cir. 1989).  And this may not necessarily be the case merely because the evidence is classified.