UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                                             )<br>)<br>I. LEWIS LIBBY                                                            )<br>    also known as "Scooter Libby,"            )<br>    Defendant.                                                        ) | Cr. No. 05-394 (RBW) |

**MEMORANDUM OF I. LEWIS LIBBY CONCERNING ADMISSIBILITY OF
DOCUMENTS ON CONSOLIDATED CIPA § 5 NOTICE**

The Court has asked the parties to address two questions that concern the documents listed on Mr. Libby's Consolidated CIPA § 5 Notice:  (1) the extent to which the defense intends to introduce the documents themselves into evidence, as opposed to presenting testimony concerning the classified information that the documents contain; and (2) how the defense expects to overcome hearsay objections to the documents.  We address these questions in turn.

I.   **CLASSIFIED TESTIMONY AND CLASSIFIED DOCUMENTS.**

As the Court's first question recognizes, the defense may seek to present the classified information on the Consolidated CIPA Notice (including the classified information in the listed documents) through testimony, by offering the documents themselves, or both.  The hearsay issues that we address below in Part II arise only to the extent we offer the documents themselves into evidence.

The defense intends to present much of the classified information on the Consolidated CIPA Notice in the form of testimony.  We expect to offer testimony about the classified information principally (but not exclusively) through Mr. Libby.  For reasons we have explained in our classified pleadings and will set forth in more detail at

the CIPA § 6(a) hearing, Mr. Libby must be able to discuss the classified information to give the jury an accurate picture of his state of mind during the relevant time period and to show the jury that any errors he made in his statements and testimony were the product of confusion, mistake, and faulty memory rather than deliberate misrepresentations. Apart from Mr. Libby's testimony, we may introduce some aspects of the classified information on cross-examination of government witnesses or through the testimony of other defense witnesses.

We also intend to introduce a substantial number of the classified documents themselves. We expect to offer the documents for several purposes: to corroborate the testimony of Mr. Libby and other witnesses, to provide the evidentiary basis for the PowerPoint presentation that we intend to offer under Fed. R. Evid. 611(a) and/or 1006 in connection with Mr. Libby's direct testimony, to provide necessary context, to impeach government witnesses, and to establish a prior recollection in any instance where a witness testifies to a lack of recollection.

At this stage, we cannot foresee all the ways that we may seek to use the listed classified information at trial. We do not know with certainty what witnesses the government will call, and the government has declined our request for disclosure of the Jencks/Rule 26.2 material for intelligence community witnesses before the § 6(a) hearing. Thus, we cannot be certain what classified information will be necessary in the defense case to counter unexpected prosecution testimony. Nor can we predict with certainty what classified information we may use in questions on cross-examination of prosecution witnesses or seek to elicit through their testimony. And we do not know what questions the government will ask Mr. Libby or other defense witnesses on cross-examination.

Particular lines of cross-examination by the government--especially of Mr. Libby--may require disclosure of classified information in response to the question, or on redirect examination.

The Consolidated CIPA Notice includes all of the classified information that we reasonably expect to disclose at this point under any of these circumstances. As explained above, we cannot predict with certainty exactly which aspects of the listed classified information we will actually disclose or cause the disclosure of at trial; that depends to a significant extent on how the government's case unfolds and on how the government elects to cross-examine Mr. Libby and other defense witnesses. At the CIPA § 6(a) hearing, however, we will review for the Court the classified information that we currently expect to disclose through the direct testimony of Mr. Libby and other defense witnesses. In addition, we will address, in connection with the PowerPoint presentation, (a) the classified documents that we reasonably expect to introduce in connection with Mr. Libby's testimony concerning two weeks on which the indictment particularly focuses (June 9 through 14, 2003 and July 5 through 12, 2003), and (b) a representative sample of the classified documents outside of this two week period that we reasonably expect to introduce in connection with Mr. Libby's testimony to corroborate his memory defense. We will also discuss at the § 6(a) hearing the classified documents that we may seek to introduce at trial concerning Joseph or Valerie Wilson or the uranium from Niger controversy (the "Wilson/Niger" documents).

II.     **HEARSAY ISSUES CONCERNING THE NOTICED DOCUMENTS.**

We address the hearsay issues by category of documents. We first discuss the documents that relate to the memory defense, consisting of Mr. Libby's notes and the

morning intelligence briefing materials (PDB topic overviews and Terrorist Threat Matrix ("TTM") items). We then consider the Wilson/Niger documents. Although we address the Court's question concerning the admissibility of the documents, it is important to note that at the CIPA stage, the Court is not called upon to make final rulings on the admissibility of documents. Rather, the Court need only determine the admissibility of the classified information contained in the documents. Because of the uncertainties concerning the possible uses of the listed documents at trial--especially the Wilson/Niger documents--we submit that it is premature for the Court to make final, definitive rulings at this point on their admissibility.

    A.    **Documents Relating to the Memory Defense.**

    1.    **Mr. Libby's Notes.**--Mr. Libby's notes frequently report statements made by others. Thus, the Libby notes present a potential multiple hearsay issue: the notes themselves, and the statements reported in the notes.

We will establish at trial that the notes themselves fall within one or more of four hearsay exceptions: present sense impression (Fed. R. Evid. 803(1)), recorded recollection (Fed. R. Evid. 803(5)), records of regularly conducted activity (Fed. R. Evid. 803(6)), and public records and reports (Fed. R. Evid. 803(8)). We will establish the foundation for these hearsay exceptions through Mr. Libby's testimony or through the testimony of others with knowledge of his note-taking practices.

Many of Mr. Libby's listed notes fall within Rule 803(1), because they "describ[e] or explain[] an event [typically a meeting or a conversation] made while the declarant [Mr. Libby] was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). *See, e.g., Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487,

4

501-02 (D. Del. 2005) (finding notes taken during meetings admissible under Rule 803(1)); *United States v. Ferber*, 966 F. Supp. 90, 95-99 (D. Mass. 1997) (finding notes and an email message admissible under Rule 803(1)).

In some instances, Mr. Libby's notes fall within Rule 803(5), because they "concern[] a matter about which [Mr. Libby] once had knowledge but now has insufficient recollection to enable [him] to testify fully and accurately," and were made by Mr. Libby "when the matter was fresh in [his] memory" and "reflect that knowledge correctly." Fed. R. Evid. 803(5).

Mr. Libby's notes also constitute records of regularly conducted activity and thus fall within Rule 803(6). The notes reflect "acts" and "events"; Mr. Libby made them "at or near the time" of those acts and events; he was a "person with knowledge" of those acts or events and, in some instances, based the notes on "information transmitted by" other "person[s] with knowledge" of those acts or events; Mr. Libby kept the notes "in the course of a regularly conducted business activity" (the work of the OVP); and it was the regular practice of Mr. Libby, in his official capacity at the OVP, to make the notes to assist him in the performance of his duties. Fed. R. Evid. 803(6); *see, e.g., United States v. Kingston*, 971 F.2d 481, 486 (10th Cir. 1992) (notes admissible as business records with proper foundation).

Finally, Mr. Libby's notes "set[] forth . . . the activities of" the OVP, which constitutes a "public office[] or agenc[y]" for purposes of Rule 803(8)(A). Thus, the notes fall within that hearsay exception as well.

The statements by others reflected in Mr. Libby's notes will not be offered for the truth of the matters asserted and thus constitute nonhearsay under Rule 801(c). To offer

5

an entirely hypothetical example, if a Libby note reflects a CIA official describing intelligence about a terrorist threat against the United States, it is irrelevant whether the official's statement is true or false, accurate or inaccurate. The relevance of the statement lies solely in the fact that it was made and its resulting effect on Mr. Libby's state of mind. *See, e.g., United States v. Safavian*, 435 F. Supp. 2d 36, 45-46 (D.D.C. 2006). Because the statements of others reflected in Mr. Libby's notes are not offered for their truth, no hearsay exception is necessary for those statements. *See, e.g., Hoselton v. Metz Baking Co.*, 48 F.3d 1056, 1061-62 (8th Cir. 1995) (notes admissible where notes were business records and statements reflected in notes were not offered for their truth); *Kruse v. Hawaii*, 857 F. Supp. 741, 745 n.5 (D. Haw. 1994) (case log admissible where log was business record and statements in log were nonhearsay), *aff'd*, 68 F.3d 331 (9th Cir. 1995); *Cooper Sportswear Mfg. Co. v. Hartford Cas. Ins. Co.*, 818 F. Supp. 721, 724 (D.N.J.) (memorandum admissible where memorandum was business record and statements contained in memorandum were nonhearsay), *aff'd mem.*, 16 F.3d 403 (3d Cir. 1993).[1]

**2.    Morning Intelligence Briefing Materials.**--We do not offer the PDB topic overviews and TTM entries for their truth, but solely for their effect on Mr. Libby's state of mind. The morning intelligence briefing materials thus constitute nonhearsay under Rule 801(c). *See, e.g., Safavian*, 435 F. Supp. 2d at 45-46; *Kruse*, 857 F. Supp. at 745 n.5. Any statements by others reflected in the PDB topic overviews or TTM entries similarly constitute nonhearsay.

---

[1] We note that even if these statements were offered for the truth, they would likely fall within the scope of Rule 803(6), because the persons making the statements were in most instances government officials acting in the regular course of government business. *See, e.g., United States v. Baker*, 693 F.2d 183, 188 (D.C. Cir. 1982).

If we were to offer the morning intelligence briefing materials for their truth, we would establish the foundation for the hearsay exceptions for records of regularly conducted activity (Rule 803(6)) and public records and reports (Rule 803(8)). We would establish this foundation, if necessary, through Mr. Libby's testimony or through the testimony of CIA employees, including Marilyn Dorn, who has submitted several declarations in this matter concerning the morning intelligence briefing materials.

**B.     The Wilson/Niger Documents.**

The Wilson/Niger documents can be divided into two broad categories: (1) documents that Mr. Libby created or reviewed, and (2) documents that were created or reviewed by other potential witnesses. All of these documents are relevant to show the nature of the controversy that Mr. Libby was addressing in June and July 2003. In particular, these documents show the response that Mr. Libby, together with others in the administration, was making to that controversy, and the insignificance of, and lack of attention to, Mr. Wilson's wife in that response. These documents also bear directly on the credibility of Mr. Libby's defense that he innocently forgot, confused, or misremembered snippets of conversation mentioning Ms. Wilson when asked about them months later.

As a general rule, the defense does not seek to introduce these documents for the truth of the matter asserted, and they are therefore nonhearsay under Rule 801(c). Rather, the documents will be offered to show state of mind and explain the conduct of Mr. Libby and other key witnesses. These documents will be also used to show that Mr. Libby lacked the intent or motive to mislead the FBI or the grand jury, and to establish the likelihood that he made innocent mistakes when he testified. *See Safavian*, 435

F.Supp. 2d at 44 (documents that show the defendant's "state of mind at the time he received them or at some later time," or that "provide context for the defendant's statements and are not introduced for their truth" are admissible under Rule 803(3)).

The first category of documents, those that Mr. Libby created or reviewed, includes reports generated by the CIA relating to Niger and to Mr. Wilson's trip there. Many of these documents were faxed to Mr. Libby's attention in the OVP on June 9, 2003, as alleged in the indictment. Mr. Libby testified that he frequently referred back to these reports if he "was going to talk to a reporter . . . about the Wilson trip." Libby Grand Jury Tr. 25, Mar. 25, 2004. This category of documents also includes OVP memoranda analyzing the CIA reports and drafts of a public statement by Director of Central Intelligence George Tenet regarding the "sixteen words" controversy. Finally, the category contains certain of Mr. Libby's notes reflecting his conversations with other government officials about how to respond to Mr. Wilson's criticism.

The second category, documents created or reviewed by other witnesses, includes notes and e-mails by or to CIA employees including government witnesses Robert Grenier and Craig Schmall, a memorandum prepared by the State Department's Bureau of Intelligence and Research that was reviewed by government witnesses Marc Grossman and (we believe) Ari Fleischer, notes of former CIA spokesperson Bill Harlow, notes of former Deputy National Security Advisor Stephen Hadley, and certain other documents.

Because the information contained in these documents will, in almost all cases, be offered to prove the state of mind of Mr. Libby and other witnesses, *not* the truth of matters asserted in the documents, there is no hearsay issue regarding testimony about the information itself. To the extent a document is offered to prove the truth of a witness's

assertion that a conversation did take place, or that the witness received information reflected in the document, we expect to establish that the document falls within an applicable hearsay exception, such as recorded recollection, records of regularly conducted activity, or public records and reports.

September 22, 2006                                        Respectfully submitted,

|  /s/                                      |  /s/                                      |
| ----------------------------------------- | ----------------------------------------- |
| Theodore V. Wells, Jr.                    | William H. Jeffress, Jr.                  |
| (D.C. Bar No. 468934)                     | (D.C. Bar No. 041152)                     |
| James L. Brochin                          | Alex Bourelly                             |
| (D.C. Bar No. 455456)                     | (D.C. Bar No. 441422)                     |
| Paul, Weiss, Rifkind, Wharton             | Baker Botts LLP                           |
|   & Garrison LLP                          | Alexandra M. Walsh                        |
| 1285 Avenue of the Americas               | (D.C. Bar. No. 490484)                    |
| New York, NY  10019-6064                  | 1299 Pennsylvania Ave., NW                |
| (212) 373-3089                            | Washington, DC  20004                     |
|                                           | (202) 639-7751                            |

|  /s/                                      |  /s/                                      |
| ----------------------------------------- | ----------------------------------------- |
| Joseph A. Tate                            | John D. Cline                             |
| Dechert LLP                               | (D.C. Bar No. 403824)                     |
| 2929 Arch Street                          | Jones Day                                 |
| Cira Centre                               | 555 California Street, 26th Floor         |
| Philadelphia, PA  19104                   | San Francisco, CA  94104                  |
| (215) 994-2350                            |  (415) 626-3939                           |