## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | <u>Oral Argument Requested</u> |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## I. LEWIS LIBBY'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT CONCERNING VALERIE WILSON'S EMPLOYMENT STATUS AND <u>ACTUAL OR POTENTIAL DAMAGE CAUSED BY DISCLOSURE OF THAT STATUS</u>

I. Lewis Libby, through his counsel, hereby moves *in limine* to preclude the government from offering any evidence or argument:

1. that Valerie Wilson's employment status with the Central Intelligence Agency (the "CIA") was, in fact, classified or covert; and

2. that any damage to the national security, the CIA, or Ms. Wilson herself was, or could have been, caused by the disclosure of that status.

This Court's prior rulings make abundantly clear that the only evidence concerning Ms. Wilson's CIA employment that has any relevance in this case is evidence of what Mr. Libby, or others he spoke with about Ms. Wilson, knew—or did not know—about that topic prior to July 14, 2003. The same is true of evidence regarding the damage (if any) attributable to the disclosure of Ms. Wilson's affiliation with the CIA. Indeed, based on that view of relevance, Mr. Libby has been denied meaningful discovery regarding whether Ms. Wilson's employment was, in fact, classified or covert and whether disclosure of her employment did, in fact, cause any damage to anyone.

Notwithstanding the clarity of the Court's prior rulings (and the government's own narrow view of relevance during discovery), Mr. Libby is concerned that the government intends

to raise at trial both Ms. Wilson's actual employment status and "evidence" regarding "potential" damage that Mr. Libby knew nothing about at the relevant time. *See, e.g.*, Tr. of Mot. Hearing at 40 (May 5, 2006) (Dkt. 106) ("May 5, 2006 Tr.") (noting that the government plans to offer evidence that Ms. Wilson's "actual status" was classified); *id.* at 42-43 (indicating that the government intends to offer "evidence" regarding "potential damage" attributable to the disclosure of Ms. Wilson's status).  This motion is necessary to preclude any such effort.

Having steadfastly refused to provide discovery relating to these issues (other than conclusory assertions contained in two brief "summaries" prepared by the CIA), the government cannot now be permitted to inflame the jury—and encourage it to punish uncharged and unfounded national security violations—by offering irrelevant and largely speculative evidence that sheds no light on Mr. Libby's guilt or innocence of the charges that were brought. Specifically, the government should be prohibited from referring to Ms. Wilson's employment status as classified or covert, or to any actual or potential damage caused by disclosure of that status, except for evidence and argument of what Mr. Libby, or others he spoke with, knew about those matters at the relevant time.

## MEMORANDUM OF LAW

### BACKGROUND

As the Court knows, the indictment in this case charges Mr. Libby with lying to the FBI and the grand jury about certain aspects of conversations he had with three news reporters (Tim Russert, Matthew Cooper, and Judith Miller) in the summer of 2003.  Mr. Libby is *not* charged with unlawfully revealing a CIA employee's identity, or with any other crime involving the disclosure of classified information.

Notwithstanding the limited nature of the charges, the indictment alleges that (1) "from January 1, 2002 through July 2003, Valerie Wilson was employed by the CIA, and her employment status was classified," Indictment, Count 1, ¶ 1(f), and that (2) disclosing the classified fact that a person works for the CIA has "the potential to damage the national security," *id.* at ¶ 1(d). Accordingly, to ensure he was prepared to address any issues that the government might attempt to raise at trial, Mr. Libby sought discovery of (1) "[a]ll documents, regardless of when created, relating to whether Valerie Wilson's status as a CIA employee, or any aspect of that status, was classified at any time between May 6, 2003 and July 14, 2003"; and (2) "any assessment done of the damage (if any) caused by the disclosure of [Ms.] Wilson's status as a CIA employee." *See* Mot. of I. Lewis Libby to Compel Disc. of Rule 16 and *Brady* Material in the Possession of Other Agencies at 2 (Jan. 31, 2006) (Dkt. 32).

The government refused to provide the requested discovery on the ground that it was irrelevant. It noted (correctly) that Ms. Wilson's CIA status "is not an element of any of the three statutory violations charged." Government's Consolidated Resp. to Defense Mots. to Compel Disc. at 28 n.11 (Feb. 16, 2006) (Dkt. 36) ("Government's Feb. 16 Resp."). And it maintained that, given the nature of the charges that *were* brought, "defendant's legitimate defense necessarily must focus on the defendant's state of mind." *Id.* at 12. In fact, according to the government, "it is irrelevant whether Mr. Wilson's wife actually did work at the CIA" at all. Government's Resp. to Def.'s Third Motion to Compel at 11 (April 5, 2006) (Dkt. 80) ("Government's April 5 Resp."). The government explained that, absent evidence Mr. Libby ever saw or was aware of their contents, "documents reflecting the classified status of Ms. Wilson's employment" are irrelevant and immune from discovery. Government's Feb. 16 Resp. at 28-29.

With respect to Mr. Libby's request for an assessment of damage caused by the disclosure of Ms. Wilson's CIA employment, the government asserted that "actual damage resulting from uncharged conduct is irrelevant to whether the defendant lied about his conversations with reporters." *Id.* at 26. Moreover, under the government's stated view of relevance, any evidence about potential damage would be relevant only if Mr. Libby had seen or was aware of it. *See id.* at 12-13 (arguing that "information of which defendant had no knowledge" is immaterial); *see also id.* at 27.

On June 2, 2006, the Court issued a discovery order "set[ting] forth what this case is and is not about." *See* Order at 1 (June 2, 2006) (Dkt. 112) ("June 2 Order"). The Court explained that "although the Special Counsel's criminal investigation initially focused on whether government officials illegally disclosed Ms. Wilson's employment with the CIA, the defendant has not been charged with any such violation. Rather, the only question the jury will be asked to resolve in this matter will be whether the defendant intentionally lied" to the grand jury and the FBI about his conversations with three news reporters. *See id.* at 2. The Court made clear that the *actual* status of Ms. Wilson's CIA employment had nothing to do with answering that question. *See id.* at 3. It explained that "whether the information possessed by any of the principal players was true or not is immaterial to this case; rather, what *will* be relevant in regards to either the prosecution or defense is what, if anything, they knew about [Ms. Wilson's affiliation with the CIA] and when they acquired that information." *Id.* (emphasis added).

On the same day, the Court granted an *ex parte* motion filed under Section 4 of the Classified Information Procedures Act ("CIPA") allowing the government to withhold from Mr. Libby all information related to Ms. Wilson's employment status and any damage that may have been caused by disclosure of that status, save for two cursory "summaries" addressing each of

those topics. *See* Protective Order (June 2, 2006) (Dkt. 113) ("June 2 Protective Order"). As one of its reasons for doing so, the Court held that the materials being withheld were not material to the preparation of the defense. *Id.* at 1.[1]

Subsequently, in a letter dated July 27, 2006, Mr. Libby sought additional, limited discovery necessary to understand and provide context for the assertions included in the "summaries" produced by the government. He posed specific questions raised by the summary, and also asked for "[a]ll documents or information (excluding media reports) indicating that Mr. Libby, any government witness, or any official of the Office of the Vice President, the Executive Office of the President (including the NSC), or the State Department knew, believed, or had reason to believe that Valerie Wilson was a covert CIA official or that her CIA employment was classified." Similarly, Mr. Libby requested all documents or information "prepared, reviewed or received by, or pertaining to any communication involving" various key players in this case "regarding whether Valerie Wilson was a covert CIA official or whether her CIA employment status was classified."

In a letter dated August 25, 2006, the government refused each of Mr. Libby's requests. It asserted that the documents sought were "irrelevant and immaterial to the preparation of the defense in light of the offenses charged in the indictment, and thus they will not be produced." The government further stated that:

> [I]n light of the Court's previous order that the knowledge of other government officials regarding Ms. Wilson's employment is material to the preparation of the

---

[1] The government has asserted that specific information concerning Ms. Wilson's CIA employment contained in the summaries is protected under the Privacy Act, 5 U.S.C. §552a. Therefore, in accordance with the protective order governing this case, specific information from the summaries is excluded from this public filing, and the summaries are not attached. *See* Order (Nov. 23, 2005) (Dkt. 21). It is Mr. Libby's understanding that the government has already provided the Court with these summaries in its prior CIPA § 4 filing made *ex parte* and under seal. *See* June 2 Protective Order.

defense only if such knowledge was shared with your client, or with Miller, Russert or Cooper (see June 2, 2006 Order at 6), we will neither produce nor seek documents related solely to the knowledge of other government officials.

As a result of the foregoing, Mr. Libby has received almost no evidence or information pertaining to Ms. Wilson, her employment with the CIA, or the damage (if any) caused by the disclosure of that employment. In fact, only a handful of documents provided in discovery refer to Ms. Wilson's role at the CIA, and were seen by either Mr. Libby or any witness with whom he spoke during the relevant period, including a State Department memorandum of June 10, 2003; a State Department employee's notes from a meeting in February 2002; Mr. Libby's notes of a conversation with the Vice President prior to June 12, 2003; and Judith Miller's notes taken during a meeting with Mr. Libby on July 8, 2003. Those documents refer to Ms. Wilson as "a CIA WMD manager"; as a "CIA WMD managerial type"; as working in a "functional office[,] CP"; and as working in "WINPAC." All of these documented references to Ms. Wilson's role at the CIA would have suggested that she was an intelligence analyst, a position that is neither classified nor covert.[2]

## ARGUMENT

## I.    EVIDENCE OR ARGUMENT THAT VALERIE WILSON'S CIA EMPLOYMENT STATUS WAS, IN FACT, CLASSIFIED OR COVERT SHOULD BE EXCLUDED.

As noted above, Mr. Libby is concerned that at trial the government plans to stray beyond what Mr. Libby and other key witnesses knew about Ms. Wilson's CIA employment at the relevant time, and attempt to offer evidence or argument that her status was, in fact, classified or covert. In response to an inquiry from the Court, the Special Counsel stated that "[p]utting aside

---

[2] Other evidence in this case indicates that potential witnesses, who presumably knew more about Ms. Wilson than Mr. Libby did, did not themselves believe she had covert status. For example, notes from a July 2003 internal CIA interview of William Harlow, then spokesperson for the agency, indicate that, at the same time as he was confirming to Mr. Novak that Ms. Wilson worked at the CIA, Mr. Harlow "found out" that Ms. Wilson was "not under cover."

covert status, which I won't discuss, the only thing we would seek to offer about [Ms. Wilson's] actual status was that it was classified as of the time of 2003 prior to her [identity] being [made] public." May 5, 2006 Tr. at 40.[3]

Allowing any such "offer" would contravene this Court's prior rulings on "what this case is and is not about" and disregard the strict requirement in the Federal Rules that only relevant evidence can be admitted. *See* Fed. R. Evid. 401, 402. Furthermore, it would be manifestly unfair to allow the government to put into issue a matter that Mr. Libby has been denied any real opportunity to investigate and contest, particularly since doing so presents a significant risk of substantial and unfair prejudice to Mr. Libby's defense. *See* Fed. R. Evid. 403.

**A.    Under This Court's Prior Rulings, Information Regarding Whether Ms. Wilson's Status As A CIA Employee Was, In Fact, Classified Or Covert Is Irrelevant To The Charges Brought.**

The Court has previously held that evidence regarding the actual nature of Ms. Wilson's CIA employment status—as opposed to evidence of what Mr. Libby may or may not have known about that status at the time he spoke to reporters—is irrelevant to the charges in this case. In its June 2 Order, the Court made clear that this trial will focus on what Mr. Libby knew or believed about "Ambassador Wilson, his trip to Niger, and his wife" at the relevant time—*not* what may (or may not) have been true about those matters. *See* June 2 Order at 3. Specifically, the Court explained that "Ms. Wilson's documented status as an employee of the CIA, unless viewed by the defendant or the content of the documentation was made known to him or a

---

[3] The government's representation to the Court suggests that it does *not* plan to assert at trial that Ms. Wilson's status was covert. It has, however, also made statements that unmistakably imply that Ms. Plame *was* covert. *See* Tr. of Press Conference of Special Counsel Patrick Fitzgerald at 1 (Oct. 28, 2005) (Ex. A) ("Fitzgerald Press Conf. Tr.") (stating that "Valerie Wilson's *cover was blown* in July 2003") (emphasis added). Therefore, Mr. Libby asks the Court to prohibit any evidence or argument that Ms. Wilson's status was classified *or* that it was covert (including, but not limited to, loaded statements such as "her cover was blown").

potential government witness, is simply immaterial to the preparation of the defense and thus not discoverable." *Id.* at 6 n.3.

Application of that principle at the discovery stage requires that it apply equally to the determination of what evidence and argument should and should not be permitted at trial. As the government has acknowledged, Ms. Wilson's employment status is not an element of any of the crimes charged. *See* Government's Feb. 16, 2006 Resp. at 28 n.11. Nor, under this Court's rulings, does evidence that Ms. Wilson's "actual status" was classified or covert (even if true) tend to make the existence of any fact the government does have to prove more or less probable. *See* Fed. R. Evid. 401. Evidence of Ms. Wilson's actual status does not, for example, have any tendency to show that Mr. Libby had a motive to lie to the FBI or the grand jury (unless perhaps Mr. Libby or other key witnesses were aware of it). *See United States v. Secord*, 726 F. Supp. 845, 848-49 (D.D.C. 1989) (information of which defendant had no knowledge is necessarily immaterial to the defendant's state of mind, intent, or motive in an obstruction case).

As noted above, the government itself has stated that, given the nature of the charges against Mr. Libby, "it is irrelevant whether Mr. Wilson's wife actually did work at the CIA" at all. Government's April 5 Resp. at 11; *see* Tr. of Status Conference at 86-87 (Feb. 24, 2006) (Dkt. 60) ("Feb. 24, 2006 Tr.") (government noting that it would make no difference in the case "if [Ms. Wilson] turned out to be a postal driver mistaken for a CIA employee").

**B.      Given Its Refusal To Provide Mr. Libby Meaningful Discovery Relating To The Actual Status Of Ms. Wilson's Employment, The Government Should Not Be Permitted To Introduce Evidence Or Make Any Argument Regarding That Issue At Trial.**

Strict adherence to Rules 401 and 402 is particularly important because Mr. Libby has been deprived of any meaningful discovery regarding Ms. Wilson's actual employment status. Given that prior position (and its ramifications for the defense), the government cannot now

reverse course and offer evidence or argument that Ms. Wilson's actual status was, in fact, classified or covert.

The carefully crafted "summary" of Ms. Wilson's employment history, provided by the government to the defense, does not solve the problem. The government's provision of this summary can hardly change the fact that Ms. Wilson's actual status is irrelevant to the charges and therefore inadmissible. Notably, the summary does not assert that Mr. Libby, or any of the witnesses who allegedly discussed Ms. Wilson with him prior to his conversations with reporters, knew or suspected any of the information the summary contains. Nor is the defense aware of any evidence to that effect. In fact, the Special Counsel himself has conceded that his lengthy investigation unearthed "no direct evidence that Libby knew or believed that Wilson's wife was engaged in covert work." Aff. of Patrick J. Fitzgerald at 28 n.15 (Aug. 27, 2004) (Ex. B). That concession makes any desire by the government to introduce assertions contained in its summary all the more peculiar.

Moreover, the government's summary does not come close to providing the information the defense would need to challenge or explain (through investigation, argument, or cross-examination) evidence offered by the government that Ms. Wilson served as a classified or covert CIA employee. As the Court is aware, the summary comprises just over two double-spaced pages. It presents general assertions, without providing any explanatory or corroborating detail. In the end, it raises many more questions than it answers. As noted above, Mr. Libby's attempts to obtain answers to those questions have been summarily denied.[4]

---

[4] The defense has filed separately and under seal a declaration by Mr. Jeffress explaining why the summary does not provide information sufficient to respond to, or provide context for, any assertion by the government that Ms. Wilson's employment status was classified or covert. This declaration is being filed under seal because it discusses specific information contained in the

The government cannot have it both ways. Having deprived Mr. Libby of any meaningful discovery on this issue, it cannot be permitted to present evidence or argument—no matter the form and no matter how limited—concerning the actual nature of Ms. Wilson's employment status.[5] *See United States v. Lewis*, 511 F.2d 798, 800-803 (D.C. Cir. 1975) (where the prosecution had not disclosed the defendant's statements to the police in discovery, it was error to permit any reference to those statements at trial). To allow the government to tell the jury that Ms. Wilson's employment status was, in fact, classified or covert, without providing Mr. Libby any recourse to challenge that assertion, is tantamount to a forced stipulation, something this Court should not condone.

What's more, particularly if left unchallenged, assertions regarding Ms. Wilson's actual employment status could confuse and mislead the jurors. Such assertions would, for example, suggest that the charges against Mr. Libby concern the outing of a covert agent or other breaches of classified information laws, when they plainly do not. *See* Fed. R. Evid. 403; *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (unfair prejudice occurs where the jury is "lure[d] . . . into declaring guilt on a ground different from proof specific to the offense charged"). Accordingly, even if Ms. Wilson's status were in any way relevant to this case (and it is not), it would be properly excluded under Rule 403.

---

summary regarding Ms. Wilson's role at the CIA, which according to the government is protected by the Privacy Act. *See supra* at 5 n.1.

[5] This includes any information regarding her employment contained in the CIA's criminal referral to the Justice Department, which Mr. Libby has never seen but which presumably includes information about Ms. Wilson's employment status. Again, Mr. Libby's discovery request for that referral and related documents has been denied. *See* June 2 Order at 7; *see also* Government's April 5 Resp. at 31 (the CIA's criminal and related documents "simply bear no relationship to the perjury and false statement offenses charged in the indictment").

II.    **EVIDENCE OR ARGUMENT CONCERNING DAMAGE THAT WAS, OR MAY HAVE BEEN, CAUSED BY DISCLOSURE OF VALERIE WILSON'S CIA EMPLOYMENT SHOULD BE EXCLUDED.**

During discovery proceedings, the government assured the Court that it does not plan to "offer any proof of actual damage" attributable to the disclosure of Ms. Wilson's CIA employment.  May 5, 2006 Tr. at 42-43; *see also* Government's Feb. 16, 2006 Resp. at 26-27.  In fact, the government acknowledged that whether the disclosure actually caused any damage to anyone was never even "a focus of the grand jury investigation."  *See* Government's Feb. 16, 2006 Resp. at 26; *but see* Fitzgerald Press Conf. Tr. at 6 (asserting that when Ms. Wilson's affiliation with the CIA was revealed "the damage wasn't to one person.  It wasn't just to Valerie Wilson, it was done to us all").  The government has, however, represented that it intends to offer "evidence" regarding the "potential damage" that could possibly have been caused by the disclosure.  *See* May 5, 2006 Tr. at 42-43.[6]

The Court should prohibit the government from offering any evidence or argument regarding damage, actual or potential, unless perhaps it is evidence that Mr. Libby knew of the likelihood of such damage prior to his conversations with reporters regarding Ms. Wilson.  The government has successfully denied Mr. Libby the opportunity to show the jury what damage did (or did not) *actually* occur in Ms. Wilson's case.  It cannot now be permitted to inflame the jury by offering irrelevant, conclusory speculation about damage that may *potentially* occur when a person's CIA affiliation is disclosed.  Such "evidence" would unfairly prejudice Mr. Libby without shedding any light on whether he is guilty of the crimes charged.

---

[6] Because the government has been somewhat inconsistent in its representations, Mr. Libby seeks an order precluding evidence or argument relating to both potential *and* actual damage, including any evidence or assertion contained in the CIA referral to the Justice Department, which Mr. Libby never saw and has been denied access to in discovery.

**A.**    **Unless Known To Mr. Libby At The Relevant Time, Evidence That The Disclosure of Ms. Wilson's CIA Employment Could Potentially Cause Damage To The National Security Is Irrelevant In This Case.**

Like evidence regarding Ms. Wilson's employment, evidence regarding damage attributable to the disclosure of that employment is not an element of any of the crimes charged in the indictment. *See* Government's Feb. 16 Resp. at 26. Nor does such evidence make it more likely that Mr. Libby may have committed those crimes. Indeed, "evidence" limited solely to hypothetical harms, envisaged by the government and entirely unknown to Mr. Libby when he spoke to reporters about Ms. Wilson, has no bearing on motive or any other question the jury must answer in this case. *See* Government's April 5 Resp. at 19 ("The thoughts and impressions of CIA . . . employees, absent any evidence that these thoughts and impressions were conveyed to the defendant, simply cannot shed light on defendant's state of mind at the time of the alleged criminal conduct."). Accordingly, it should be excluded. *See* Fed. R. Evid. 401, 402.

This Court has previously indicated that it anticipates excluding arguments concerning potential damage. *See* Feb. 24, 2006 Tr. at 81-84. It should now follow up on its initial skepticism and make clear that such argument will be prohibited at trial.

**B.**    **The Summary Of Potential Damage Provided By The Government Contains Irrelevant Assertions That May Not Be Presented To The Jury.**

The government has provided Mr. Libby with a summary describing damage that *could* be expected to occur when a CIA official's identity is revealed, and actions taken to mitigate such damage. It is unclear whether the government intends to offer assertions similar or identical to those contained in the summary as "evidence" in this case, but if it does, the Court should exclude them.

For one thing, the summary contains no indication that Mr. Libby knew at the relevant time of the potential damage or mitigation measures it describes. Moreover, even if the

"evidence" the summary contains were somehow relevant, neither it (nor any other discovery provided) gives the defense the information or detail needed to challenge or explain the assertions it presents. That alone is reason to preclude the government from presenting any of this conclusory material to the jury. *See supra* at 8-9.

Finally, as the Court knows, the summary contains a vague, but dramatic, description of the damage that *could* transpire when the identity of a covert CIA employee is revealed. It states that the employee *could* be at risk of physical harm—including death; that future intelligence activities *could* be disrupted; and that the United States *could* be deprived of valuable foreign intelligence. *See also* Indictment, Count 1, ¶ 1(d) (alleging that the disclosure of a CIA employee's identity has the "potential" to "endanger[] the safety of CIA employees and those who dealt with them"). Yet, Mr. Libby has been deprived of information about whether that parade of potential horribles did—or did not—occur in Ms. Wilson's case. It would be manifestly unfair to allow the government to present hypothetical allegations about harm that *could* occur, without providing Mr. Libby information necessary to show that no such harm *did* occur in this case.

Indeed, dramatic assertions of the sort contained in the summary (*e.g.*, that CIA officials could potentially be killed as a result of an unauthorized disclosure) might well trigger an emotional reaction among the jurors, causing them to decide the case on an improper and entirely irrelevant basis—the misguided belief that this case implicates breaches of national security— rather than a fair consideration of the charges and evidence that are properly at issue.

For that reason, even if "evidence" of the kind contained in the summary did have any probative value in this perjury and obstruction case (and it does not), that value would be overwhelmed by the substantial and unfair prejudice that its presentation would cause. *See* Fed.

R. Evid. 403; *United States v. Duran*, 884 F. Supp. 534, 536-37 (D.D.C. 1995) (evidence should not be admitted if there is a "danger that [it] will inflame the jury into reaching an impassioned and irrational verdict"). "It is well-established that a prosecutor may not make statements calculated to arouse the passions or prejudices of the jury" and thereby manufacture a wrongful conviction. *United States v. Monaghan*, 741 F.2d 1434, 1440-41 (D.C. Cir. 1984) (citation and quotation marks omitted).

Accordingly, this Court should prohibit the government from making any argument regarding potential damage that would distort the nature of the charges against Mr. Libby and incite the jury to punish him for a crime that has not been charged, and which he did not commit.

## CONCLUSION

For the foregoing reasons, Mr. Libby respectfully requests that the Court grant the relief requested.

Dated: October 30, 2006                    Respectfully submitted,

/s/ Theodore V. Wells, Jr.                    /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                         William H. Jeffress, Jr.
(D.C. Bar No. 468934)                          (D.C. Bar No. 041152)
James L. Brochin                               Alex J. Bourelly
(D.C. Bar No. 455456)                          (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                  Baker Botts LLP
  & Garrison LLP                               Alexandra M. Walsh
1285 Avenue of the Americas                    (D.C. Bar. No. 490484)
New York, NY  10019-6064                       1299 Pennsylvania Ave., NW
(212) 373-3089                                 Washington, DC  20004
                                               (202) 639-7751

/s/ John D. Cline
John D. Cline
(D.C. Bar No. 403824)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
(415) 626-3939