UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) |  |
| v. | ) ) ) | Criminal No. 05-394 (RBW) |
| I. LEWIS LIBBY, | ) ) |  |
| Defendant. | ) ) |  |

**MEMORANDUM OPINION**

As the trial in this matter rapidly approaches, the Court has been engaged in on-going hearings called for by the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III (2000).  Initially, the Court conducted a series of hearings over seven days to address the "use, relevance, and admissibility" of classified information pursuant to Section 6(a) of the CIPA. During these hearings, the Court employed the Federal Rules of Evidence without regard for the classified nature of the documents and information in ruling on the relevance, use, and admissibility of the classified information the defendant seeks to introduce in support of his defense.  United States v. Libby, ___ F. Supp. 2d ___, ___, 2006 WL 2692749, at *1 (D.D.C. Sept. 21, 2006).  Having concluded the hearings conducted pursuant to Section 6(a), and in response to the government's motion pursuant to Section 6(c) of the CIPA,[1] the Court has now

---

[1] The following papers have been filed in connection with this motion: (1) the Government's Motion Pursuant to CIPA Section 6(c) for Substitutions in Lieu of the Disclosure of Classified Information ("Gov't's Mot.") and (2) the Response of Defendant I. Lewis Libby to Government's First Set of Proposed Substitutions ("Def.'s Response").

1

proceeded with hearings to determine whether non-classified information and documents can be substituted for the classified information that this Court deemed relevant and admissible during the Section 6(a) proceedings. The Section 6(c) hearings commenced on November 7, 2006. During this initial day of the hearings, the parties presented the Court with arguments concerning the standard the Court should employ when determining whether the substitutions proposed by the government fulfill the government's statutory obligation. For the reasons that follow, the Court concluded, in large part, that the substitutions proposed by the Government do not satisfy Section 6(c) of the CIPA.[2]

### I.   Discussion

The CIPA establishes the procedures for providing pretrial notification of a defendant's intent to use classified information at his trial and the process for determining exactly what information the defendant will be permitted to introduce. United States v. Fernandez, 913 F.2d 148, 151 (4th Cir. 1990). Its purpose is to "permit the government to ascertain the potential damage to national security of proceeding with a given prosecution before trial." S. Rep. No. 96-823, at 1 (1980), reprinted in 1980 U.S.C.C.A.N. 4294, 4294. This Court has devoted substantial time and paper discussing the various statutory provisions of the CIPA and the standards that this Court will employ when presented with motions covered by these provisions. See, e.g., United States v. Libby, 429 F. Supp. 2d 18 (D.D.C. 2006), amended by, 429 F. Supp. 2d 46 (D.D.C. 2006) (discussing Section 4 of the CIPA); United States v. Libby, __ F. Supp. 2d __, 2006 WL 2692749 (D.D.C. 2006) (discussing Section 6(a) of the CIPA). And now, the Court turns to

---

[2] In light of this ruling, the government has gone back to the drawing board to assess whether new substitutions can be devised that comply with the requirements of Section 6(c). Hopefully, this opinion will provide further guidance as to what the Court will sanction.

Section 6(c) of the CIPA.

    Section 6(c) of the CIPA provides:

> (1) Upon any determination by the court authorizing the disclosure of specific classified information under the procedures established by this section, the United States may move that, in lieu of the disclosure of such specific classified information, the court order —
> > (A) the substitution for such classified information of a statement admitting relevant facts that the specific classified information would tend to prove; or
> > (B) the substitution for such classified information of a summary of the specific classified information.
>
> The court shall grant such a motion of the United States if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information. The court shall hold a hearing on any motion under this section. Any such hearing shall be held in camera at the request of the Attorney General.

18 U.S.C. App. III, § 6(c). Although this provision, on its face, allows this Court to replace otherwise relevant classified information with either "a statement admitting relevant facts that the specific classified information would tend to prove" or "a summary of the specific classified information," so long as the substitute "will provide the defendant with substantially the same ability to make his defense," id., Congress made clear that this provision "rests on the presumption that the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without this act." S. Rep. No. 96-823, at 9 (1980), reprinted in 1980 U.S.C.C.A.N. 4294, 4302; see United States v. Moussaoui, 382 F.3d 453, 477 (4th Cir. 2004); Fernandez, 913 F.2d at 154. However, while the Court must ensure that any substitution will provide the defendant the ability to make his defense, Congress did not intend to require that the evidence the Court permits a defendant to present in support of his defense be the "precise, concrete equival[ent]." H.R. Conf. Rep. No. 96-1436, at 12 (1980),

reprinted in 1980 U.S.C.C.A.N. 4397, 4310. In fact, as just noted, the plain language of the statute provides two methods through which substitutions can be made—a statement admitting relevant facts or a summary of the classified information. Thus, the Court is not limited in the manner in which it permits substitutions, so long as the approved substitutions "provide the defendant with substantially the same ability to make his defense." 18 U.S.C. App. III, § 6(c); see, e.g., United States v. Collins, 603 F. Supp. 301, 304 (S.D. Fla. 1985) ("It does not follow, however, that because the evidence is relevant that it is necessarily admissible in the form offered."); see also United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984). Moreover, "[t]he fact that insignificant tactical advantages could accrue to the defendant by the use of the specific classified information should not preclude the court from ordering alternative disclosure." H.R. Conf. Rep. No. 96-1436, at 12-13 (1980), reprinted in 1980 U.S.C.C.A.N. 4307, 4310-11; see United States v. Juan, 776 F.2d 256, 259 (11th Cir. 1985) ("The court may find that a 6(c) alternative proposed by the government will provide the defendant with his defense, even though the defendant might rather threaten his prosecutor with the disclosure of more detail."). Thus, the statute contemplates that the Court will permit a substitution even if it is not the exact means through which the defendant prefers to introduce the evidence.

Based upon the plain language of the text, the government can seek to substitute unclassified information for classified information. And that substitution can be in one of two forms. Here, the government has proposed substitutions for the classified information this Court concluded was relevant and admissible during the Section 6(a) hearings in both forms. First, the government's proposed substitutions include a lengthy statement admitting, in essence, that the defendant worked long hours, attended many significant meetings, and dealt with a wide variety

of extremely important matters of national security. Gov't's Mot. at 10-11. In addition, the government proposed substitutions for various topic narratives and classified documents. The substitutions provided by the government address each of the general topic areas that the defendant anticipates using to show that these matters were consuming his time and attention when the events critical to this prosecution occurred, and that these events would have impacted the accuracy of his memory when he was later called upon to remember other events that would have occurred at those times. However, the substitutions proposed by the government do not provide substitutions for each matter within the topic summaries that the defendant contends consumed his time and attention. For example, during the November 7, 2006 hearing, the defendant identified no less than eleven events for which there were no proposed substitutions.

      The government contends that its proposed substitutions are adequate because the statute merely requires that the defendant have the same "ability" to make his defense, Gov't's Mot. at 3, and that the Court's inquiry need not focus on "how close the substitution is to the classified information itself." Id. Rather, the government posits that this Court should examine the defendant's aggregate defense, gleaned from the perspective of both the classified and unclassified evidence, in comparison to the defendant's aggregate defense when considered with the proposed substitutions for the evidence. Id. at 3-4. According to the government, if the aggregate defense with the proposed substitutions permits the defendant to put on a defense that is substantially the same as it would have been with the classified information, the substitutions are proper and the Court's inquiry can end. And under this approach, the government opines that it is entirely appropriate for the substitutions to exclude certain pieces of classified information in whole, so long as the defendant is still able to put on a substantially similar defense. Id. at 10-11.

The defendant objects to the substitutions proposed by the government, arguing that the substitutions (1) entirely omit a number of critical issues without proposing substitutions; (2) the substitutions remove key information that the jury must be presented with to understand the importance of these matters to the defendant; and (3) the substitutions often times rewrite and change the meaning of the defendant's proposed testimony. Def.'s Response at 1. As a result of these alleged errors and omissions, the defendant claims that the government has failed to establish that the substitutions "provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." Id.

The question this Court must resolve is whether the substitutions currently proposed by the government "will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." 18 U.S.C. App. III, § 6(c). For the reasons that follow, they will not.

There is no existing written case authority describing the lens though which a Court should look to determine whether a proposed substitution "will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." 18 U.S.C. App. III, § 6(c). Despite this absence of authority, the Court is not completely without guidance. It is axiomatic that a Court should interpret a statute in a manner so as to avoid constitutional questions. See Fed. Election Comm'n v. Akins, 524 U.S. 11, 32 (1998) ("[t]he doctrine of constitutional doubt . . . counsels us to interpret statutes, if possible, in such fashion as to avoid grave constitutional questions."); see also United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408 (1909). Accordingly, when construing Section 6(c) of the CIPA, the Court must try, if possible, to interpret the provision it in a manner

6

that does not infringe on the constitutional rights of a criminal defendant embodied in the Sixth Amendment. In fact, the legislative history of this statute makes clear that the drafters of this statutory provision were careful to ensure that a defendant's rights were not substantially altered. See H. Rep. No. 96-831, pt. 1, at 20 (1980) (Congress adopted the "substantially the same ability to make his defense" standard "to make it clear that alternate disclosure was to be allowed only if the court found that it was, in effect, equivalent disclosures."); H. Rep. No. 96-831, pt. 2, at 6 (1980) (noting that this provision "does not mean to suggest that any hardship to the defense should be permitted . . . . It is the Committee's intent that there be no impairment of either the defendant's ability to present his case or his right to a fair trial as a result of the operation of this section"). Therefore, the standard Congress codified must be construed in a manner that is consistent with the protections provided in the Sixth Amendment. Thus, examining a criminal defendant's right to present a defense generally will help place into context whether a proposed substitution affords him "substantially the same ability to make his defense." 18 U.S.C. App., § 6(c). If the substitution infringes on the defendant's Sixth Amendment rights, the substitution is insufficient.

It is a fundamental guarantee of the Sixth Amendment to the Constitution that a criminal defendant has the right to present a defense to the charges he is facing. Taylor v. Illinois, 484 U.S. 400, 409 (1988) (citing Washington v. Texas, 388 U.S. 14, 19 (1967)). This fundamental right includes "the right to present the defendant's version of the facts . . . to the jury so it may decide where the truth lies." Washington, 388 U.S. at 19. However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A defendant's interest in presenting such evidence may thus 'bow to accommodate other legitimate

interests in the criminal trial process.'" United States v. Scheffer, 523 U.S. 303, 308 (1998) (internal citations omitted). "But restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." Rock v. Arkansas, 483 U.S. 44, 55-56 (1987). In fact, procedural and evidentiary rules that control the presentation of evidence may not compromise a defendant's Sixth Amendment rights. Chambers v. Mississippi, 410 U.S. 284, 295 (1973). Nonetheless, "[i]n these circumstances, where constitutional rights directly affecting the ascertainment of guilt are implicated, [evidentiary rules] may not be applied mechanistically to defeat the ends of justice." Id. at 302. Thus, the Supreme Court has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." Scheffer, 523 U.S. at 308. Accordingly, a court "may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily excludes material portions of his testimony." Rock, 483 U.S. at 55.

The protections embodied in the Sixth Amendment are guaranteed to a defendant regardless of whether classified information is implicated in criminal proceedings. And the foregoing discussion makes clear that while a defendant's right to present a defense is guaranteed under the Constitution, that right is not absolute. In this regard, courts frequently limit the presentation of a defendant's defense based on the Federal Rules of Evidence. See Fed. R. Evid. 403 ("Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time"); see also United States v. Dunn, 846 F.2d 761, 763 (D.C. Cir. 1988) (noting that a trial court has broad discretion to exclude cumulative evidence). In fact, in connection with the Section 6(a) hearings, this Court has excluded otherwise relevant evidence from the trial that will occur in this prosecution under Federal Rule of Evidence 403, concluding that although the evidence is

relevant, "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. The test under Rule 403 balances "[t]he exclusion of otherwise admissible evidence or testimony sought to be presented by a criminal defendant . . . [with the defendant's] sixth amendment right" to present a defense. United States v. Davis, 639 F.2d 239, 244 (5th Cir. 1981). This same balancing must be applied in any situation where otherwise relevant evidence is subject to exclusion.

Under Section 6(c) of the CIPA, the Court can substitute otherwise relevant classified evidence for nonclassified evidence if that nonclassified evidence "will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." 18 U.S.C. App. III, § 6(c). And just as with Rule 403, when determining whether a substitute satisfies this standard, the Court must balance the substitution for otherwise relevant classified evidence against the defendant's Sixth Amendment right to put on a defense. See, e.g., Fernandez, 913 F.2d at 161 (noting that the district court, when examining whether substitutions were appropriate under Section 6(c) of the CIPA, "weigh[ed] the interests of national security against the need to provide Fernandez with a fair trial."). Under Rule 403, the Rule itself codifies the factors a Court should examine when determine whether relevant evidence should be excluded. Fed. R. Evid. 403 (requiring the court to balance, for example, the probative value of the evidence with the danger of unfair prejudice). Although Section 6(c) of the CIPA does not list specific factors to be considered when determining whether a substitution is acceptable, a court must at bottom balance the government's national security interests in protecting classified information against the defendant's ability to put on his

9

defense. And to assess the defendant's ability to put on his defense, the Court should first examine the nature of the defendant's defense and then analyze whether the defendant will have the same ability to put on that defense with the substitutions and other evidence he has available to him.

Although not explicitly stating that it was employing such a balancing, the Fourth Circuit in United States v. Fernandez, conducted such an analysis. There, the defendant, the former Central Intelligence Agency station chief in Costa Rica, was charged with making false statements and obstructing justice after he had allegedly given false information to investigators concerning the construction of an air strip in Costa Rica. 913 F.2d at 150-51. Specifically, he was charged for having stated that the air strip was initiated by the Costa Rican government; that it was being used for training activities in preparation for a feared invasion by Nicaragua; and that he did not know that it was being used to resupply the Contras with weapons and ammunition. Id. To defend himself against the charges, Fernandez intended to show, in part, that the statements he would acknowledge he made were true. Id. at 151. To present this component of his defense (the truthfulness of his statements), the defendant sought to introduce classified information concerning several other intelligence projects undertaken jointly by the United States and Costa Rican governments, as well as classified evidence of the CIA's involvement in the operation to resupply the Contras with weapons and ammunition. Id. at 152. Both the district court and the Fourth Circuit concluded that such evidence was relevant and admissible under Section 6(a) of the CIPA. Id. at 155-56. And in agreeing with the district court's conclusion that the government's proposed substitutions for this classified evidence were inadequate, the Fourth Circuit first considered the nature of the defendant's defense, id. at 158

10

(noting that the trial judge had concluded that an essential component of Fernandez's defense was the presentation of classified evidence about "the origin, purpose, and scope" of the other intelligence projects), and then assessed the impact of not being able to present this classified evidence would have on his defense, id.  This Court concludes that it must engage in a similar analysis here.

In examining the substitutions provided by the government with this framework in mind, this Court must conclude that as currently proposed, the substitutions do not provide the defendant with substantially the same ability to make his defense.  That having been said, there can be no argument that the government has an important interest in protecting the classified information at issue from disclosure.  And as set forth in the affidavit provided to this Court for its ex parte, in camera review on November 7, 2006, this interest is substantial.  But that alone does not mandate that this Court accept any substitutions proposed by the government.  Rather, the Court must examine the nature of the defendant's defense and any other evidence proffered in furtherance of this defense to assess whether the government's proposed substitutions are constitutionally adequate.

The defendant's faulty memory defense has both quantitative and qualitative components.  In other words, he is alleging both that the volume of his work would have impacted his memory and that some of the information presented to him as the Vice President's National Security Advisor was so potentially catastrophic to the well being of the country that the focus he had to devote to this information also impacted his memory.  If the defendant's defense was focused solely on the quantity of information that came to his attention and the volume of his work, the substitutions provided by the government would no doubt suffice.  This is especially true because

the defendant could introduce as evidence, in addition to the proposed substitutions, among other things, his daily calendars, the number of days per week he worked, the hours he worked, and the number of meetings he attended. However, volume is not the extent of the defendant's defense. Rather, he contends that at the time of various critical dates and thereafter during the time before he spoke to the FBI agents and testified before the grand jury, he was consumed with matters of such importance to the security of this nation that any mistakes he may have made in remembering his earlier conversations with the various news reporters were inadvertent and not the product of wilful disinformation. As to this aspect of the defense, other than the classified information the defendant seeks to introduce, he has no other evidence in his arsenal to present this proposition to the jury. Thus, to determine whether the government's proposed substitutions are appropriate, the Court must examine whether those substitutions strike the right balance between the government's national security interest and the defendant's Sixth Amendment right to present his defense.

     Balancing these factors, this Court concludes that the government's proposed substitutions, as currently proposed, will not provide the defendant with substantially the same ability to make his defense. The substitutions exclude in their entirety at least eleven events which collectively added significantly to the qualitative component of his defense. To credibly present his defense, the defendant must be provided the opportunity to bring to the jury's attention, though testimony or otherwise, the magnitude of his mental occupation with pressing matters involving national security. And this can only be accomplished if he can describe to the jury the activities that consumed his time and attention, and why those activities were of such importance to him. The proposed substitutions, which would exclude extremely significant

items of classified information, goes too far and their collective omission would prevent the defendant from being able to show the jury the true nature of his defense. Thus, to approve the substitutions now proposed by the government would amount to a grave error of constitutional proportion.

This ruling does not give the defendant "free reign" over his testimony, Collins, 603 F. Supp. at 304; rather, it merely allows the defendant to testify and present evidence on those matters that this Court has deemed relevant, admissible, and whose omission would impair the defendant's ability to present a meaningful defense. Nor should this ruling be interpreted as a proscription against the exclusion of any item of classified information deemed relevant and admissible in its entirety. This is not a numbers game where there must be a one-for-one substitution; rather, as discussed above, a balancing must be conducted.

Obviously some of the information the defendant desires to present will potentially lend greater credibility to his memory defense than others. Undoubtedly, he would have been distracted and therefore consumed to varying degrees based on the immediacy and importance of the national security information he received. And some of the information the government seeks to suppress would fall on the high end of this equation, while other information would not. On the other end of the scale is the government's interest in protecting national security information from public disclosure. And just like the defendant cannot credibly contend that all of the information he seeks to introduce would have impacted his memory equally, the government cannot seriously assert that disclosure of all the information it desires to suppress would equally pose the same level of potential harm to national security. This is a difficult balance to make, but having taken into account the above considerations, the record currently

before the Court requires it to reject the proposed substitutions because the collective exclusion of the information at issue would unduly handicap the defendant's ability to show the jury the full contours of his memory defense.

Putting aside the omission discussion above, the Court recognizes that the government has provided a substantial number of actual substitutions for other items of classified information and documents that this Court has ruled are admissible and relevant. At this time, the Court passes no judgment on the adequacy of these proposed substitutions. The Court notes, however, that it firmly believes that what the government has provided by and large demonstrates that with further effort it can develop substitutions that will overall protect the government's national security interest and still afford the defendant with substantially the same ability to present his defense. Unlike United States v. Fernandez, where the Fourth Circuit affirmed the district court's rejection of the government's substitutions because the classified information there would "directly substantiate[] the truth of his alleged false statements," 913 F.3d at 156, the classified information at issue here does not directly substantiate that the defendant did not make false statements to the Special Agents or that he did not commit perjury before the grand jury. Rather, the classified information the defendant seeks to introduce is being offered to show the other activities the defendant was involved in commanded his time and attention such that any misstatements he purportedly made that form the basis for the charges he faces were inadvertent. This distinction is important because while the classified information is relevant to show what these activities were that consumed his time and attention, this Court has difficulty seeing why properly unclassified substitutions cannot be developed that accomplish this objective. All this Court believes is needed is a more thoughtful effort to strike the proper balance between the

government's legitimate need to avoid the disclosure of classified information that could jeopardize national security against the defendant's constitutionally embedded right to receive a fair trial, which necessarily encompasses the right to comprehensively defend himself against the crimes he is charged with committing.

## II.  Conclusion

This Court fully appreciates in this post-9/11 era that there are forces in this world that aspire to destroy America and all of Western society.  So this Court understands the nation's need to vigorously identify those forces and aggressively ensure that they are unable to bring about the destruction they desire to inflict on America and its allies.  But despite the daunting potential that future attacks of 9/11 proportion (or even greater) will be inflicted on this nation and its friends, when the threat is someday hopefully abated, the core values that underlie what is embodied in our Constitution must survive the war being waged against terrorism.  And this uncompromising need to preserve the rights and privileges that make America what it is as a nation has been a compass for the balancing this Court has conducted and leads it to conclude that the substitutions currently proposed by the government will not provide the defendant with substantially the same ability to make his defense.  Accordingly, the government must go back to the drawing board and come forth with a more balanced proposal.

**SO ORDERED** this 13th day of November, 2006.[3]

_____
REGGIE B. WALTON
United States District Judge

---

[3] An Order consistent with this Court's ruling accompanies this Memorandum Opinion.