UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | Oral Argument Requested |
|    also known as "Scooter Libby," | ) | |
|    Defendant. | ) | |

### I. LEWIS LIBBY'S RESPONSE TO THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE, COMMENT, AND ARGUMENT REGARDING THE GOVERNMENT'S CHARGING DECISIONS

I. Lewis Libby, through his counsel, respectfully submits this response to the government's Motion *in Limine* To Preclude Evidence, Comment, and Argument Regarding the Government's Charging Decisions ("Mot.").

### INTRODUCTION

The government argues that Mr. Libby should not be allowed to urge the jury to acquit him because the Special Counsel did not charge anyone else, or because Mr. Libby has not been charged with any crimes beyond those in the indictment. To the extent that is all the relief the government actually seeks here, its motion is not controversial. But the government does not stop there and, instead, seeks extraordinary relief that, if granted, will deprive Mr. Libby of his right to a fair trial.

*First*, the defense has the fundamental right to make clear to the jury that Mr. Libby has not been charged with leaking classified information, or with any other offenses beyond those in the indictment. Indeed, such a statement is consistent with model federal jury instructions. Regardless of whether the Court gives the jury a similar admonition here, defense counsel are

- 2 -

entitled to remind the jury that Mr. Libby is not on trial for any crimes other than those in the indictment and that they are to return a verdict only as to those charges.

*Second*, information about the lack of charges against other witnesses may be relevant for limited purposes, wholly apart from the government's concern about jurors evaluating "the relative merits" of the government's charging decisions that seems to animate this motion. *See* Mot. at 3, 11. Inquiring into the circumstances surrounding a witness's disclosure of information to the government is relevant to the potential bias of that witness. Evidence of bias is always permissible. Here, certain trial witnesses who provided testimony or statements to the government may have feared and may continue to fear criminal prosecution. It would be entirely appropriate for the defense to introduce evidence of the government's decisions not to charge such witnesses to support arguments about the witnesses' motives and the biases lurking in their testimony.

*Third*, the government apparently wants to suggest to the jury that Mr. Libby's conduct prevented it from "discovering whether the underlying crime was in fact illegal." *Id*. at 12. Such an argument would be disingenuous. The government has known for years that Mr. Libby had no involvement whatsoever in the act it set out to investigate – the disclosure of Valerie Wilson's affiliation with the CIA by Robert Novak. And the Special Counsel has previously admitted to the District Court that no direct evidence exists to suggest that Mr. Libby violated the Intelligence Identities Protection Act ("IIPA"), 50 U.S.C. § 421. The prosecution should not be permitted to suggest otherwise to the jury.

Finally, the government's motion should be denied because it is impossible to determine if the government's charging decisions may be relevant for limited purposes at trial before the defense has received any Jencks material or heard the trial testimony of any witnesses. In the

event that the Court concludes that any evidence or argument by defense counsel at trial is likely to lead the jury to draw unwarranted inferences about the government's charging decisions, the Court can easily address that concern through jury instructions.

ARGUMENT

I.  EVIDENCE AND ARGUMENT RELATING TO MR. LIBBY'S STATE OF MIND ARE PERMISSIBLE.

The government's motion is peppered with unobjectionable truisms. For example, the government is correct that "the purpose of a criminal trial is to determine whether the government has met its burden of proof as to the charged crimes." Mot. at 1. We also agree that the jury should not be invited to speculate about theoretical charges against Mr. Libby or other persons, unless the possibility of future charges is relevant to a witness's state of mind. *See id.* at 1-2. Indeed, the motions *in limine* the defense filed reflect our desire to focus the jury's attention on Mr. Libby's state of mind, rather than "extraneous matters." *Id.* at 8.

The defense has no intention of encouraging the jury to compare "the relative merits" of the charges against Mr. Libby to hypothetical charges against other individuals. *Id.* at 3. Nor will we urge the jury to draw "inferences regarding the government's view of [Mr. Libby's] conduct." *Id.* Similarly, the defense does not intend to argue that the jury should engage in nullification by acquitting Mr. Libby because the government did not "charge additional crimes or defendants." *Id.* at 8.

Because so many of the government's arguments in support of its motion are difficult to quarrel with, it is important to clarify which evidence and arguments are *not* at issue here, even under an expansive reading of the motion. This Court has made clear that the touchstone for determining relevance in this case is Mr. Libby's state of mind. *See* June 2, 2006 Order at 6

(Dkt. 112). Nothing in the motion should fairly be interpreted to exclude evidence or argument that is probative of Mr. Libby's state of mind.

For example, even if granted, the motion would not preclude the defense from introducing evidence or argument that Mr. Libby did not fear criminal liability for "leaking" classified information about Valerie Wilson, for at least two primary reasons. First, Mr. Libby was not a source for Mr. Novak's July 14, 2003 column disclosing Ms. Wilson's affiliation with the CIA. Second, at the time when Mr. Libby had fleeting, inconsequential conversations with reporters regarding Ms. Wilson, he did not know or have any reason to believe that her employment status was classified or covert – if indeed it actually was at the time. (Notably, the government has never claimed that Mr. Libby knew or believed Ms. Wilson was a covert employee.) The defense is also entitled to demonstrate to the jury that Mr. Libby believed he had not done anything wrong when he spoke to reporters, and that Mr. Libby was not aware of wrongdoing by anyone else in the administration with respect to the disclosure of Ms. Wilson's CIA employment. Such evidence will support the argument that Mr. Libby had no motive to lie, either to cover up his own conduct or the actions of someone else. This argument is central to Mr. Libby's defense. We do not read the government's motion to preclude such evidence or argument. If it does, however, the motion should be denied on this basis alone.

II.   EVIDENCE AND ARGUMENT ABOUT THE GOVERNMENT'S CHARGING DECISIONS ARE APPROPRIATE FOR LIMITED PURPOSES.

The jury is entitled to know what the case is and is not about. The defense has the right to explain to the jury which charges have been brought against Mr. Libby and which charges *have not* been brought against him. Members of the jury will have heard for years that Mr. Libby leaked classified information about Valerie Wilson's affiliation with the CIA, due to inaccurate reports in the press. Indeed, the government has contributed to the likely

misimpressions that potential jurors will have about this case. At his October 28, 2005 press conference announcing the indictment against Mr. Libby, the Special Counsel stated that "[i]n July 2003, the fact that Valerie Wilson was a CIA officer was classified." Special Counsel Patrick J. Fitzgerald's Press Conference, Oct. 28, 2005 Tr. at 1. He then stated – incorrectly – that Mr. Libby was the first government official to leak classified information about Ms. Wilson to the press and suggested that Mr. Libby was at least partly responsible for blowing her cover. *See id.* In light of the Special Counsel's own public statements, and many others like them, any effort to prevent the defense from describing the charges the government has actually brought against Mr. Libby would be grossly unfair.

The government has also signaled a desire to argue, in an effort to establish motive for the crimes charged, that Mr. Libby feared criminal prosecution for leaking Ms. Wilson's identity. For this reason as well, defense counsel must be allowed to correct any misimpressions – including those created by the Special Counsel himself – about the nature of the charges, and state plainly to the jury that Mr. Libby has not been charged with illegally disclosing classified information. If defense counsel are forbidden from doing so, Mr. Libby will not receive a fair trial.

We plan to use these basic facts about the nature of the charges to support the critical, but narrow, argument that the jury should decide only whether Mr. Libby has committed the crimes charged in the indictment, and should not seek to punish him for uncharged conduct. Again, we do not read the government's motion to preclude such argument. But if it does, the motion should be denied.

This narrow argument is consistent with common pattern jury instructions. For example, the Fifth Circuit pattern instructions include the following charge: "You are here to decide

whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crime charged. The defendant is not on trial for any act, conduct, or offense not alleged in the indictment." Pattern Jury Instructions of the District Judges Ass'n of the Fifth Circuit, Criminal Cases, Instruction No. 1.19 (2001). Similarly, the Sixth Circuit pattern instructions state (in pertinent part): "I want to emphasize that the defendant is only on trial for the particular crime charged in the indictment . . . . Your job is limited to deciding whether the government has proved the crime charged . . . ." Pattern Criminal Jury Instructions of the District Judges Ass'n of the Sixth Circuit, Instruction No. 2.01 (2005); *see also* Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, Instruction No. 3.11 (2000) ("The defendant is on trial only for the crime[s] charged in the indictment, not for any other activities."); 1 Sand et al., *Modern Federal Jury Instructions: Criminal,* Instruction § 3-3 (2006) ("The defendant is not charged with committing any crime other than the offenses contained in the indictment.").

      The Court may very well provide the jurors with a similar instruction. But on this crucial point, Mr. Libby is entitled to both the Court's dispassionate admonition *and* his counsel's emphatic advocacy.

      The government concedes that evidence concerning its charging decisions is relevant in certain circumstances. Specifically, the government admits that "information relating to its discussions with prospective witnesses, for example, an agreement to provide immunity, is relevant on the issue of the witnesses' motivation[s]." Mot. at 6 n.1. The government is absolutely correct. But the relevance of that information is not limited to situations involving an immunity agreement. In situations where a witness faced potential criminal liability, the government's decision not to charge that witness may be just as relevant as the government's

discussions with that witness. In the same manner, the fact that a witness has not been charged, but has reason to fear he or she could be charged, is also relevant. The defense should be permitted to cross-examine witnesses at trial about whether, for example, they testified in the grand jury or gave other information to the government in a manner calculated to curry favor with prosecutors and avoid prosecution. In such circumstances, it is undoubtedly pertinent that the witness in question was never charged by the government. Such information goes to the potential bias of a witness, which is always relevant. *See United States* v. *Leonard*, 494 F.2d 955, 963 (D.C. Cir. 1974) ("The permissible scope of exploration on cross-examination is not curtailed by the absence of explicit government promises of leniency, for the defense may attempt to show government conduct which might have led a witness to believe that his prospects for lenient treatment by the government depended on the degree of his cooperation.") (citations and quotations omitted).

Further, even though the defense has not yet received any Jencks material, we are aware that certain potential witnesses have admitted they gave inaccurate information to the grand jury. We are also aware, based on information provided by the government in discovery, that potential witnesses gave testimony that directly conflicts with the testimony of other potential witnesses. The fact that these witnesses have not been charged, but have reason to fear charges, is undoubtedly admissible evidence because it bears on their motives to please the prosecution, which in turn reflects possible bias.

At this point in the case, before the government has provided Jencks material to the defense, and before the government's witnesses have testified, it is premature to conclude that any reference at trial to the government's decisions not to charge other individuals would be irrelevant or unduly prejudicial. It is hard to see how introducing this kind of basic evidence and

argument will unfairly prejudice the government. But if it threatens to do so during the trial, appropriate jury instructions offer a suitable cure.

### III. THE GOVERNMENT'S ARGUMENTS CONCERNING RELEVANCE AND UNFAIR PREJUDICE MISS THE MARK.

The government's purported justifications for excluding information about its charging decisions lack merit. The government first argues that information regarding its charging decisions simply cannot be relevant to this case. *See* Mot. at 4-6. This argument goes too far. Neither of the cases on which it relies is applicable, because neither of them involves requests by the defense to refer to a charging decision by the government for the limited, appropriate purposes outlined above. Further, neither case suggests that there is a blanket prohibition against any and all references to the government's charging decisions.

In *United States* v. *Young*, 20 F.3d 758, 765 (7th Cir. 1994), the defendant (Young) sought to introduce evidence that the government had not charged another individual (Russell), who was not even a witness at trial, apparently to compare the relative impropriety of Russell's conduct to his own. As stated above, Mr. Libby will not make such comparisons at trial. The second case the government cites, *United States* v. *Mosky*, No. 89 Cr. 669, 1990 WL 70832, *1 (N.D. Ill. May 7, 1990), stands for the unremarkable proposition that "commenting on the government's decisions about who to prosecute" is improper, particularly when it threatens to "interfere with the government's wide discretion in this area." The cursory memorandum opinion in *Mosky* suggests that the defendants, like the defendant in *Young*, were interested in comparing the relative merits of the charges they faced to potential charges that could have been brought against unindicted co-conspirators for the purpose of criticizing the prosecutor's exercise of his discretion. We reiterate that Mr. Libby has no intention of relying on such a defense.

The government also seeks to preclude any references to its charging decisions on the ground that it is "obvious[]" that "the jury will know that defendant Libby is not charged with any other crime in the pending indictment." Mot. at 6. To the contrary, we cannot assume that the jury will understand how the criminal justice system works, no matter how obvious it may seem to the government. Further, this argument proves too much. It suggests that the defense cannot offer evidence about or comment on basic facts that the jury is assumed to know on its own.

The government next illogically equates providing jurors with facts about its charging decisions with inciting jury nullification. *See id.* at 8-10. As should be clear by now, our proposed references to charges that have and have not been brought, especially when coupled with limiting instructions, bear absolutely no relationship to a jury nullification defense.

In an effort to support its position under Rule 403, the government exaggerates the risk that jurors may draw "improper inferences" from information about its charging decisions. *Id.* at 10. First, according to the government, the jury may render a verdict based on "the relative merits of potential charges against other individuals that were not lodged." *Id.* at 11. That speculative concern, which the Court can easily and effectively address through jury instructions, cannot negate Mr. Libby's right to bring out evidence that witnesses against him may be biased in favor of the government. The defense will not argue that because other individuals have not been charged, Mr. Libby should be acquitted.

Second, the government asserts that if Mr. Libby is permitted to clarify what crimes he has not been charged with, the jury may wrongly conclude that the prosecutors did not bring those charges because they concluded that Mr. Libby's disclosures to reporters were proper. As stated above, the defense *will* contend that nothing about Mr. Libby's conversations with

reporters was improper (not least because at the time of those conversations he had no idea, and no reason to believe, that Ms. Wilson's status was classified). We will not, however, argue that the prosecutors agree. The chance that the jury will, without any prompting, leap to such a conclusion is remote. To the extent the government has identified anything more than phantom concerns, its worries can easily be addressed through appropriate jury instructions.

Finally, the government – and not just the defense – should be bound by the principle that "the beliefs of government officers supporting charging decisions are not properly considered by a jury." *Id.* at 12. That is, the jury should not base its decision on the consideration of whether prosecutors personally believe any of Mr. Libby's conduct was or was not proper.

IV.  THE GOVERNMENT'S ARGUMENTS BELIE AN INTENT TO INVITE THE JURY TO SPECULATE IMPROPERLY.

It is ironic that the government begins its motion by correctly stating that the jury should not be urged to speculate improperly, but concludes by signaling its intent to do just that. The government apparently plans to argue that Mr. Libby's conduct somehow "frustrate[d]" it from "discovering whether the underlying crime was in fact illegal." *Id.* at 12. The government knows this is not true. And such arguments would be doubly improper at trial because they would distract the jury into wondering about the propriety of uncharged conduct instead of focusing on the offenses alleged in the indictment.

It is doubtful that anyone committed an "underlying crime" here. The government's investigation began as an effort to discover which government officials had "leaked" Ms. Wilson's affiliation with the CIA to Mr. Novak. After years of overheated media speculation that Ms. Wilson's identity had been publicly revealed as part of a White House plot to wreak revenge on her husband, Mr. Armitage (who was no White House ally) finally confirmed in August 2006 that he was Mr. Novak's primary source. *See* Neil A. Lewis, *First Source of CIA*

*Leak Admits Role, Lawyer Says*, N.Y. TIMES, Aug. 30, 2006, at A12.  It turns out, according to Mr. Armitage's public statements, that the government learned of his role at the very beginning of its investigation, and before Mr. Libby was interviewed for the first time.  Michael Isikoff, *The Man Who Said Too Much*, NEWSWEEK, Sept. 4, 2006, at 40.  Thus, there is no basis for the government to argue that Mr. Libby "frustrated" its attempt to find out whether the "leak" to Mr. Novak was a crime.  The government knows full well that Mr. Libby had nothing to do with the disclosures to Mr. Novak about Ms. Wilson.

In addition, the government has told the District Court that it has not adduced any direct evidence that Mr. Libby knew of Ms. Wilson's alleged covert status.  Aug. 27, 2004 Aff. of Patrick J. Fitzgerald (Placed in Public File Pursuant to Opinion Released Feb. 3, 2006 in *In re Grand Jury Subpoena, Judith Miller,* 438 F.3d 1138 (D.C. Cir. 2006)) at 28 n.15.  In light of this admission, it would be manifestly improper for the prosecution to suggest to the jury that Mr. Libby may have violated the IIPA or any other federal statute, but that his conduct prevented the government from knowing for sure.

To conclude, the evidence and arguments regarding the government's charging decisions that the defense may seek to introduce will be offered only for narrow, appropriate purposes.  The likelihood that the jury will draw improper inferences from this evidence or argument is small.  If such an issue actually threatens to materialize at trial, the Court should address it by giving appropriate jury instructions at that time, not by preemptively muzzling the defense.

## CONCLUSION

For the foregoing reasons, I. Lewis Libby respectfully requests that the Court deny the government's motion *in limine*.

Dated:  November 13, 2006                     Respectfully submitted,

/s/ Theodore V. Wells, Jr.                    /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                        William H. Jeffress, Jr.
(DC Bar No. 468934)                           (DC Bar No. 041152)
James L. Brochin                              Alex J. Bourelly
(DC Bar No. 455456)                           (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                 Baker Botts LLP
 & Garrison LLP                               1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas                   Washington, DC  20004
New York, NY  10019-6064                      Tel:  (202) 639-7751
Tel:  (212) 373-3089                          Fax: (202) 585-1087
Fax: (212) 373-2217

/s/ John D. Cline
John D. Cline
(D.C. Bar No. 403824)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax: (415) 875-5700