# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY | ) | |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## I. LEWIS LIBBY'S PROPOSED JURY INSTRUCTIONS

I. Lewis Libby submits the following proposed jury instructions for the Court's consideration.[1] Mr. Libby reserves the right to supplement, withdraw, or modify these proposed instructions, particularly in response to proposed instructions submitted by the government, evidence adduced at trial, or other developments before or during trial. In addition, Mr. Libby reserves the right to submit an appropriate theory of defense instruction, depending on the evidence at trial.

The instructions for each count contain a brief description of the charge in that count. We include this description because the Court has indicated that it does not intend to provide the indictment to the jury. If the Court determines that the jury should receive the indictment, we will modify these proposed instructions accordingly.

First, Mr. Libby requests that the Court give the following pattern instructions from the *Criminal Jury Instructions for the District of Columbia* (4th ed. rev. 2005) ["*Criminal Instructions*"]:

---

[1] These proposed instructions are not intended to waive any matter raised in any pretrial motion or any other objection or matter raised by Mr. Libby before or during trial. If the Court grants any part of the motion for judgment of acquittal that Mr. Libby expects to make at the close of the prosecution's case, then he respectfully reserves the right to modify these instructions accordingly.

Instruction 1.02:  Notetaking by jurors (both 1.02(A) and 1.02(B))

Instruction 1.05:  Cautionary instruction prior to first recess

Instruction 1.10:  Evaluation of prior inconsistent statement of a witness (if warranted)

Instruction 1.11:  Evaluation of prior consistent statement of a witness (if warranted)

Instruction 1.16:  Cautionary instruction on publicity

Instruction 1.20:  Questions by jurors

Instruction 2.01:  Function of the court

Instruction 2.02:  Function of the jury

Instruction 2.03:  Jury's recollection controls

Instruction 2.04:  Evidence in the case

Instruction 2.05:  Statements of counsel

Instruction 2.06:  Indictment not evidence

Instruction 2.07:  Inadmissible and stricken evidence

Instruction 2.08:  Burden of proof—presumption of innocence

Instruction 2.09:  Reasonable doubt

Instruction 2.11:  Credibility of witnesses (with bracketed language)

Instruction 2.13:  Number of witnesses

Instruction 2.27:  Right of defendant not to testify (if warranted)

Instruction 2.42:  Character and reputation of defendant (if warranted)

Instruction 2.52:  Multiple counts—one defendant

Instruction 2.71:  Selection of foreperson

Instruction 2.73:  Exhibits during deliberations (first bracketed paragraph only)

Instruction 2.75:  Communications between court and jury during jury's deliberations

Instruction 2.76:  Furnishing the jury with a copy of the instructions


In addition to these pattern instructions, Mr. Libby requests that the Court give the instructions set forth on the following pages.


November 13, 2006                      Respectfully submitted,

/s/ Theodore V. Wells, Jr._____          /s/ William H. Jeffress, Jr._____
Theodore V. Wells, Jr.                 William H. Jeffress, Jr.
(D.C. Bar No. 468934)                  (D.C. Bar No. 041152)
James L. Brochin                       Alex J. Bourelly
(D.C. Bar No. 455456)                  (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton          Baker Botts LLP
 & Garrison LLP                        1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas            Washington, DC  20004
New York, NY  10019-6064               Tel:  (202) 639-7751
Tel:  (212) 373-3089                   Fax: (202) 585-1087
Fax: (212) 373-2217

/s/ John D. Cline_____
John D. Cline
(D.C. Bar No. 403824)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax: (415) 875-5700

## MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 1[2]

(Preliminary Instruction Before Trial)

Before we begin the trial, I want to explain some of the legal rules that will be important in this trial. I want to emphasize that these remarks are not meant to be a substitute for the detailed instructions that I will give at the end of the trial just before you start your deliberations. These preliminary instructions are intended to give you a sense of what will be going on in the courtroom and what your responsibilities as jurors will be.

[Insert at this point relevant instructions concerning:

1. Notetaking by Jurors (*See* Instruction 1.02); and

2. Questions by Jurors (*See* Instruction 1.20)]

You have probably noticed that there are sixteen of you sitting in the jury box. Only twelve of you will retire to deliberate in this matter. In some courtrooms, jurors in seats 13 through 16 are automatically the alternates, but that is not how it works in this courtroom. Instead, we randomly select the alternates' seats at the beginning of each trial from among all the jury seats so that any four seats—such as 1, 8, 10 and 5; or 2, 13, 16 and 4; or any other combination—might turn out to be the seats of the alternates.

I will not disclose who the alternate jurors are until the end of my final instructions just before you begin your deliberations. Therefore, it is important that all of you think of yourselves as regular jurors during the trial, and that all of you give this case your fullest and most serious attention.[3]

---

[2]    Adapted from *Criminal Instructions*, Instruction 1.03. The phrase "[a]dapted from," as used in these proposed instructions, indicates that matters of substance have been added to and/or deleted from the cited model instruction. Mr. Libby has modified this particular instruction to add a summary of the indictment and the elements of the charges against Mr. Libby. He has also removed language concerning publicity of this case—this issue will be addressed in separate instructions.

[3]    *Criminal Instructions*, Instruction 1.21.

During the jury selection process, you were introduced to some witnesses in person. Most were identified to you only by name.  If, at any time during this trial, you suddenly realize that you recognize or might know any witness, lawyer, someone referred to in the testimony or evidence, or anyone else connected with this case in any way, you should tell the court immediately.  You should not tell any other member of the jury about your discovery.  If you realize you are acquainted with someone connected with this case while a witness is testifying, you should raise your hand immediately and ask to speak privately to the marshal or with me at the bench.

Now let me explain briefly some of the procedures we will follow and some of the rules of law that will be important in this case.  This is a criminal case which began when the grand jury returned an indictment.

According to the indictment, the Department of Justice launched an investigation in September 2003 into whether any laws were violated by the disclosure earlier that year to reporters of Ms. Valerie Wilson's affiliation with the Central Intelligence Agency ("CIA").  During the course of that investigation, agents with the Federal Bureau of Investigation ("FBI") interviewed the defendant, Mr. Lewis Libby, also known as Scooter Libby, who was the Chief of Staff and National Security Advisor to the Vice President of the United States.  The indictment alleges that Mr. Libby knowingly and willfully made false material statements during the course of two interviews with FBI agents in the fall of 2003.  The indictment further alleges that Mr. Libby provided false testimony during two appearances before a federal grand jury in March 2004.  By allegedly providing deliberately false statements to the grand jury, the indictment also alleges that Mr. Libby corruptly endeavored to obstruct the due administration of justice.

You should understand clearly that the indictment that I just summarized is not evidence. The indictment is just a formal way of charging a person with a crime in order to bring him to trial. You must not think of the indictment as any evidence of the guilt of Mr. Libby, or draw any conclusion about the guilt of Mr. Libby just because he has been indicted.

At the end of the trial, you will have to decide whether or not the evidence presented has convinced you beyond a reasonable doubt that Mr. Libby committed the offenses with which he has been charged. Mr. Libby has been charged with obstruction of justice, two counts of making false statements to the FBI, and two counts of perjury.

To prove Mr. Libby corruptly endeavored to obstruct justice, the government must prove beyond a reasonable doubt each of the following elements of this offense:

1.    That there was a proceeding pending before a federal grand jury;

2.    That Mr. Libby knew of the pending grand jury proceeding;

3.    That Mr. Libby endeavored to influence, obstruct, and impede the due administration of justice in that proceeding; and

4.    That Mr. Libby 's act was done "corruptly," that is, that he acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice and with consciousness of wrongdoing.

To prove Mr. Libby made false statements to the FBI, the government must prove beyond a reasonable doubt each of the following elements of this offense:

1.    That Mr. Libby made a false, fictitious, or fraudulent statement to the FBI;

2.    That the statement was made in a matter within the FBI's jurisdiction;

3.    That Mr. Libby made the statement intentionally, knowing that it was false;

4.    That the statement was material; and;

5.      That Mr. Libby made the false statement for the purpose of misleading the FBI.

To prove Mr. Libby committed perjury, the government must prove beyond a reasonable doubt each of the following elements of this offense:

1.      That Mr. Libby made a statement before the grand jury while he was under oath;

2.      That such statement was false in one or more of the respects charged;

3.      That Mr. Libby knew such statement was false when he made it; and

4.      That the false statement was material to the grand jury's inquiry.

Every defendant in a criminal case is presumed to be innocent.  This presumption of innocence remains with Mr. Libby throughout the trial unless and until he is proven guilty beyond a reasonable doubt.  The burden is on the government to prove Mr. Libby guilty beyond a reasonable doubt, and that burden of proof never shifts throughout the trial.  The law does not require Mr. Libby to prove his innocence or to produce any evidence.  If you find that the government has proven beyond a reasonable doubt every element of the offense with which Mr. Libby is charged, it is your duty to find him guilty.  On the other hand, if you find that the government has failed to prove any element of the offense beyond a reasonable doubt, you must find Mr. Libby not guilty.

As I explain how the trial will proceed, I will refer to the "government" and to the "defendant."  When I mention the "government," I am referring to the prosecutors who are presenting the evidence in support of the charges contained in the indictment.  In this case, they are Mr. Patrick Fitzgerald and the other attorneys at his table.  When I mention the defendant, I

am referring either to Mr. Libby or to his attorneys, Mr. Theodore Wells, Mr. William Jeffress, and the other attorneys at his table.

As the first step in this trial, the government and Mr. Libby will have an opportunity to make opening statements.  If the government makes an opening statement it must do so at the beginning of its case.  Mr. Libby may make an opening statement immediately after the government's opening statement, or may wait until the beginning of his case.  Mr. Libby does not have to make any opening statement.  The opening statements are only intended to help you understand the evidence that the lawyers expect will be introduced.  The opening statements are not evidence.

After the opening statement or statements, the government will introduce evidence to support the charges in the indictment.  After the government presents its evidence, Mr. Libby may present evidence, but he is not required to do so.  The law does not require Mr. Libby to prove his innocence or to produce any evidence.

At the end of all of the evidence, each side will have an opportunity to make a closing argument in support of its case.  The lawyers' closing arguments, just like their opening statements, are not evidence in this case.  They are only intended to help you understand the evidence.

Finally, at the end of the evidence and after both sides have finished closing arguments, I will tell you in detail about the rules of law that you must follow when you consider what your verdicts shall be.  Your verdict on each count must be unanimous; that is, for each of the five counts in the indictment, all twelve jurors must agree on the verdict.

I want to briefly describe my responsibilities as the judge and your responsibilities as the jury.  My responsibility is to conduct this trial in an orderly, fair and efficient manner, to rule on

legal questions that come up in the course of the trial, and to instruct you about the law which applies to this case. It is your sworn duty as jurors to accept and apply the law as I state it to you.

Your responsibility as jurors is to determine the facts in the case. You—and only you—are the judges of the facts. You alone determine the weight, the effect, and the value of the evidence, as well as the credibility or believability of the witnesses. You must consider and weigh the testimony of all witnesses who appear before you. You alone must decide whether to believe any witness, and if you do, to what extent to believe that witness's testimony.

And remember, you must pay very careful attention to the testimony of all of the witnesses because you will not have any transcripts or summaries of the testimony available to you during your deliberations. You will have to rely entirely on your memory and your notes if you choose to take any.

During this trial, I may rule on motions and objections by the lawyers, make comments to lawyers, question the witnesses, and instruct you on the law. You should not take any of my statements or actions as any indication of my opinion about how you should decide the facts. If you think that somehow I have expressed or even hinted at any opinion as to the facts in this case, you should disregard it. The verdict in this case is your sole and exclusive responsibility.

You may consider only the evidence properly admitted in this case. That evidence includes the sworn testimony of witnesses and exhibits. If the evidence includes anything other than testimony and exhibits, I will instruct you about these other types of evidence when they are admitted during the trial.

During the trial, if the court or a lawyer makes a statement or asks a question that refers to evidence that you remember differently, you should rely on your memory of the evidence during your deliberations.

The lawyers in the case may object when the other side asks a question, makes an argument, or offers evidence which that lawyer believes is not properly admissible. You must not be prejudiced against the lawyer who makes the objection or the party he represents. Indeed, it is the lawyer's responsibility to object to evidence that he believes is not properly admissible.

If I sustain an objection to a question asked by a lawyer, you should forget the question because the question is not evidence. You must not guess or speculate what the answer to the question would have been. If a question is asked and answered, and I then rule that the answer should be stricken from the record, you must forget that both the question and the answer that were stricken. You should follow this same rule if any of the exhibits are stricken.

You must not be influenced by the nature of the charges in arriving at your verdicts. Your responsibility is to decide this case solely on the evidence presented in the courtroom. As a result, you must not conduct any independent investigation of your own of the case. Additionally, under no circumstances should any of you use the internet for any purpose related to the case. Do not use it to access any potential media coverage, to research any legal or factual issues, or for any other purpose.

In addition, you should disregard any statements made about the case by anyone outside the courtroom. You must not talk about the case with the lawyers, the defendant, witnesses, or anyone else connected with the case. If you see someone involved in this case outside the courtroom, other than a fellow juror, you should not speak with that person about anything. If, at any time during the trial, anyone tries to discuss the case with you or if you hear anyone talking

about the case, you should refuse to participate in or listen to the discussion.  If you speak with someone involved in the case outside the courtroom while the trial is still going on, we may have to stop the trial, pick a new jury and start all over again.

Until the case is submitted to you, you must not talk about it with your fellow jurors. You must not talk about the case to your friends or relatives, or even your husband or wife, until it is over and you have completed your deliberations.

After I submit the case to you, you may discuss it only when I instruct you to do so, and only in the jury room and only in the presence of all your fellow jurors.  It is important that you keep an open mind and not decide any issue in the case until after I submit the entire case to you with my final instructions.

**MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 2**

(Pretrial Publicity)

There has been publicity about this case prior to the beginning of this trial. The statements contained in some of these accounts may not be accurate. They may have come from individuals who will neither be present in court to be seen and evaluated by the jury nor examined or cross-examined under oath by either of the parties like the witnesses in this case will be. These statements may be one's person opinion or speculation, or even unfounded rumor, dressed up as fact. You, of course, must lay aside and completely disregard anything you may have read or heard about the case outside of this courtroom because your verdicts must be based solely and exclusively on the evidence presented here in court.[4]

---

[4]     Adapted from 1A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 10.02 (5th ed. 2000) [hereinafter "O'Malley"].

## MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 3

### (The Government as a Party)

You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality.

The fact that the prosecution is brought in the name of the United States of America entitles the prosecution to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration. All parties, whether government or individuals, stand as equals at the bar of justice.[5]

---

[5]     Adapted from 1 Leonard Sand et al., *Modern Federal Jury Instructions–Criminal* Instruction 2-5 (2005) ["Sand"].

**MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 4**

(Credibility of Witnesses—Law Enforcement Witnesses)

You have heard the testimony of witnesses employed by law enforcement agencies. The fact that a witness may be employed by a law enforcement agency does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of the law enforcement witnesses on the ground that their testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witnesses and to give to that testimony whatever weight, if any, you find it deserves.[6]

---

[6]    Adapted from 1 Sand, Instruction 7-16.

## MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 5

(Charts and Summaries—Admitted Into Evidence)

Charts and summaries prepared by the government and Mr. Libby have been admitted into evidence and shown to you during the trial for the purpose of explaining facts that are contained in books, records, or other documents. You may consider the charts and summaries as you would any other evidence admitted during the trial and give them such weight or importance, if any, as you feel they deserve.[7]

---

[7]    Adapted from O'Malley, § 14.02.

**MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 6**

(Charts and Summaries—Not Admitted Into Evidence)

During the trial you have seen counsel use summaries and charts which were not

admitted as evidence, but were used to assist in the presentation and understanding of the

evidence.  This material is not itself evidence and must not be considered as proof of any facts.[8]

---

[8]    *Sixth Circuit Criminal Pattern Jury Instructions*, Instruction 7.12 (2005) ["*Sixth Circuit Criminal Instructions*"].

**MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 7**

(Discussion of the October 2002 National Intelligence Estimate)


You have heard testimony that Mr. Libby discussed with reporters information from the

October 2002 National Intelligence Estimate regarding Iraqi weapons of mass destruction

programs.  There are no allegations that these discussions were in any way improper or illegal.[9]

---

[9]    *United States v. Libby*, 432 F. Supp. 2d 81, 86 n.6 (D.D.C. 2006) ("the Court also notes that upon request by the defendant, it will instruct the jury that there are no allegations that the disclosure of the NIE was in any way improper or illegal").

## MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 8

(Findings from the Science of Memory)

As you have heard, the defense contends that Mr. Libby confused, forgot, or misremembered all or parts of some of the conversations that you have heard about during the trial. In considering this argument, it is appropriate for you to take into account the following:

1.     Human memory does not function like a tape recorder, with memories recorded, retained and played back verbatim. Stored memories may not remain in the same form over time and can be altered by memories of events and information already stored in a person's brain or by the person's later experiences.

2.     People can create inaccurate memories of real events or even seemingly real memories of events that did not occur. A person may unintentionally combine memories of two distinct events to form a composite memory that seems real but is not. To give a simple example, a person who has read the sentences "I went to the dance with Susan" and "I went skating with Alice" might incorrectly recall seeing the sentence "I went to the dance with Alice" or "I went skating with Susan."

3.     People sometimes recall accurately the substance of information but attribute the information to an incorrect source. Thus, a person may recall correctly what was said during a conversation but misidentify the individual with whom he had that conversation. A person might also misidentify the source of information if he is paying attention to several things at once when he attempts to retrieve the memory.

4.     A person is less likely to remember information accurately if he is paying attention to several things at once at the time he receives the information.

5.    A person is more likely to remember accurately information that is important to him than information that is unimportant to him.

6.    If a person remembers an event incorrectly the first time he tries to recall it, his later recollections of the event are likely to repeat that error.

7.    A person's confidence in the accuracy of his recollection of an event has little, if any, relation to the accuracy of the person's recollection.  In other words, a person may be very confident that his memory of an event is accurate when in fact it is inaccurate.

8.    Also, just as people can forget events, people can forget that they once recalled an event.   This is especially likely to occur when a person attempts to recall an event that he has previously been able to recall, but under different conditions or in a different context.

9.    Further, a person's ability to recall precisely what was said during a conversation, as well as the gist of the conversation, may drop significantly after a period of even a few days. The decline in one's ability to remember the details of a conversation occurs faster than the drop in one's ability to recall the gist of a conversation.  Moreover, a person who only hears a conversation is less likely to recall the substance of the conversation accurately, and is more likely to recall information that was not part of the conversation, than a person who both hears and observes the conversation.

10.    Finally, providing a person with clues that certain information is out of date or otherwise not important hastens the forgetting of that information and increases the possibility that any later attempt to recall that information will be faulty.[10]

---

[10]    *United States v. Libby*, — F. Supp. 2d —, 2006 WL 3095680, at *9 (D.D.C. Nov. 2, 2006) ("the Court . . . is prepared to provide the jury with an instruction that will remind them of the factors they may consider in [assessing] the accuracy of memory"); *see* Disclosure of Proposed Expert Testimony of Dr. Robert A. Bjork, attached as Exhibit A to Motion of Mr. I. Lewis Libby to Admit Expert Testimony Under Federal Rule of Evidence 702 (Dkt. 125-2) (July 31, 2006).

**MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 9**

(Newspaper Articles [and Transcripts of News Programs] Introduced at Trial)

Several newspaper articles [and transcripts of news programs] have been received in evidence. As I instructed you before, these articles [and transcripts] are not evidence of the truth of any statements made in them. You may consider these articles [and transcripts] not for the truth of anything they say, but solely to assist you in assessing the state of mind of Mr. Libby and other witnesses, that is, the knowledge and intent with which they acted.[11]

---

[11]    *United States v. Libby*, 432 F. Supp. 2d 81, 83 n.1 (D.D.C. 2006) ("the truth of the articles has no bearing on the prosecution of this case and the jury will be so instructed if requested by either party").

**MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 10**

(Consider Only the Crimes Charged)


You are here to decide whether the government has proved beyond a reasonable doubt that Mr. Libby is guilty of the crimes charged.   Mr. Libby is not on trial for any act, conduct, or offense not alleged in the indictment.   Neither are you to be concerned with the guilt of any other person or persons not on trial as a defendant in this case.   The possible guilt of others is no defense to a criminal charge.   Your job, simply put, is to decide if the government has proved Mr. Libby guilty beyond a reasonable doubt of the charges in the indictment.[12]

---

[12]    Adapted from Fifth Circuit District Judges Association, *Pattern Jury Instructions (Criminal Cases)*, Instruction 1.19 (2001) ["*Fifth Circuit Criminal Instructions*"]; *Sixth Circuit Criminal Instructions*, Instruction 2.01; *see also* O'Malley, § 12.09.

**MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 11**

(Count One—18 U.S.C. § 1503—Obstruction of Justice)

Count One charges Mr. Libby with obstruction of justice.  The essential elements of obstruction of justice, each of which the government must prove beyond a reasonable doubt, are:

1.    That there was a proceeding pending before a federal grand jury;

2.    That Mr. Libby knew of the pending grand jury proceeding;

3.    That Mr. Libby endeavored to influence, obstruct, and impede the due administration of justice in that proceeding; and

4.    That Mr. Libby's act was done "corruptly," that is, that he acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice and with consciousness of wrongdoing.  An act that is done "corruptly" is one that is wrongful, immoral, depraved, or evil.

It is not necessary to show that Mr. Libby was successful in achieving the forbidden objective, only that he corruptly tried to achieve it in a manner which he knew was likely to influence, obstruct, or impede the due administration of justice as the natural and probable effect of his actions.

Count One charges that in March 2004, Mr. Libby endeavored corruptly to influence, obstruct, and impede proceedings before Grand Jury 03-3 in the District of Columbia by making materially false and intentionally misleading statements and representations under oath.  A statement is false if untrue when made, and then known to be untrue by the person making it.  A statement is material if it has a natural tendency to influence, or is capable of influencing, a decision of the grand jury.  In other words, a statement is material if it relates to an important fact as distinguished from some unimportant or trivial detail.

Count One alleges that Mr. Libby made the following statements to the grand jury:

1.     That when Mr. Libby spoke with Tim Russert of *NBC News*, on or about July 10, 2003, Mr. Russert asked Mr. Libby if Mr. Libby knew that Joseph Wilson's wife worked for the CIA and told Mr. Libby that all the reporters knew it; and that at the time of this conversation, Mr. Libby was surprised to hear that Mr. Wilson's wife worked for the CIA;

2.     That Mr. Libby advised Matthew Cooper of *Time* magazine on or about July 12, 2003, that he had heard that other reporters were saying that Mr. Wilson's wife worked for the CIA, and further advised him that Mr. Libby did not know whether this assertion was true; and

3.     That Mr. Libby advised Judith Miller of the *New York Times* on or about July 12, 2003 that he had heard that other reporters were saying that Mr. Wilson's wife worked for the CIA but that Mr. Libby did not know whether that assertion was true.

Count One further alleges that at the time he made each of the foregoing statements to the grand jury, Mr. Libby was aware that they were false.[13]

---

[13]     Adapted from *Fifth Circuit Criminal Instructions*, Instruction 2.65; *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit*, Instruction 6.18.1001B (2000) ["*Eighth Circuit Criminal Instructions*"] (definition of "false"); *Eleventh Circuit Pattern Jury Instructions (Criminal Cases)*, Instruction 60 (2003) ["*Eleventh Circuit Criminal Instructions*"] (definition of "material"); *see also Criminal Instructions*, Instruction 4.81(F) (elements of obstruction of justice under District of Columbia law); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005) ("corruptly" requires consciousness of wrongdoing).

## MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 12

(Counts Two and Three—18 U.S.C. § 1001—False Statements to a Federal Agency)

Counts Two and Three charge Mr. Libby with making false, fictitious, and fraudulent statements to the FBI in October and November 2003.

The essential elements of the offense of false statements, each of which the government must prove beyond a reasonable doubt, are:

1.    That Mr. Libby made a false, fictitious, or fraudulent statement to the FBI;

2.    That the statement was made in a matter within the FBI's jurisdiction;

3.    That Mr. Libby made the statement intentionally, knowing that it was false;

4.    That the statement was material; and;

5.    That Mr. Libby made the false statement for the purpose of misleading the FBI.

A statement is false or fictitious if untrue when made, and then known to be untrue by the person making it.  A statement is fraudulent if known to be untrue and made with the intent to deceive.

A statement is material if it has a natural tendency to influence, or is capable of influencing, a decision of the FBI.  The test is whether the false statement has the capacity to impair or pervert the functioning of the FBI.  In other words, a statement is material if it relates to an important fact as distinguished from some unimportant or trivial detail.

Count Two alleges that Mr. Libby falsely told the FBI that during a conversation with Tim Russert of *NBC News* on July 10 or 11, 2003, Mr. Russert asked Mr. Libby if Mr. Libby was aware that Joseph Wilson's wife worked for the CIA; that Mr. Libby responded to Mr. Russert that he did not know that and Mr. Russert replied that all the reporters knew it; and that Mr. Libby was surprised by this statement because, while speaking with Mr. Russert, Mr. Libby did

not recall that he previously had learned about Mr. Wilson's wife's employment from the Vice President.

Count Three alleges that Mr. Libby falsely told the FBI that during a conversation with Matthew Cooper of *Time* magazine on July 12, 2003, Mr. Libby told Mr. Cooper that reporters were telling the administration that Mr. Wilson's wife worked for the CIA, but that Mr. Libby did not know if this was true.[14]

---

[14]     Adapted from *Fifth Circuit Criminal Instructions*, Instruction 2.49; *see also Criminal Instructions*, Instruction 4.86 (elements of false statement offense under District of Columbia law); *Eighth Circuit Criminal Instructions*, Instruction 6.18.1001B (definitions of "false," "fictitious," and "fraudulent"); *Eleventh Circuit Criminal Instructions*, Instruction 36 (2003) (definition of "material").

**MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 13**

(Counts Two and Three—18 U.S.C. § 1001—False Statements to a Federal Agency)


Counts Two and Three of the indictment allege that Mr. Libby's statements were in response to questions posed by FBI agents. If you should find that a particular question asked of Mr. Libby was ambiguous and that Mr. Libby truthfully answered one reasonable interpretation of the question under the circumstances presented, then his answer would not be false. Similarly, if you should find that the question was clear but his answer was ambiguous, and one reasonable interpretation of his answer would be truthful, then his answer would not be false.[15]

---

[15]    Adapted from *Fifth Circuit Criminal Instructions*, Instruction 2.49; *see United States v. Milton*, 8 F.3d 39, 45 (D.C. Cir. 1993) (truth is a defense to the charge of making false statements); *id.* at 45-46 (false statement cases are "analogous" to perjury cases); *see also United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994) (in false statement cases, "the government bears the burden to negate any reasonable interpretations that would make a defendant's statement factually correct" where the government's action triggering the defendant's response is ambiguous); *see generally Bronston v. United States*, 409 U.S. 352 (1973).

## MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 14

(Counts Four and Five—18 U.S.C. § 1623—Perjury)

Counts Four and Five charge that Mr. Libby committed perjury by providing false material testimony before Grand Jury 03-3 in March 2004.

The essential elements of perjury, each of which the government must prove beyond a reasonable doubt, are:

1.    That Mr. Libby made a statement before the grand jury while he was under oath;

2.    That such statement was false in one or more of the respects charged;

3.    That Mr. Libby knew such statement was false when he made it; and

4.    That the false statement was material to the grand jury's inquiry.

A statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the grand jury.  In other words, a statement is material if it relates to an important fact as distinguished from some unimportant or trivial detail.  It is not necessary for the government to prove, however, that the grand jury was, in fact, misled or influenced in any way by the false statement.

In reviewing the statement which is alleged to have been false, you should consider such statement in the context of the sequence of questions asked and answers given, and the words used should be given their common and ordinary meaning unless the context clearly shows that a different meaning was mutually understood by the questioner and the witness.

If you should find that a particular question was ambiguous and that Mr. Libby truthfully answered one reasonable interpretation of the question under the circumstances presented, then his answer would not be false.  Similarly, if you should find that the question was clear but his

answer was ambiguous, and one reasonable interpretation of his answer would be truthful, then his answer would not be false.

Count Four of the indictment alleges that Mr. Libby testified falsely in that he gave the following testimony regarding a conversation with Tim Russert of *NBC News*, on or about July 10, 2003 (italicized portions alleged as false):

> *. . . . And then he said, you know, did you know that this—excuse me, did you know that Ambassador Wilson's wife works at the CIA? And I was a little taken aback by that. I remember being taken aback by it. And I said—he may have said a little more but that was—he said that. And I said, no, I don't know that. And I said, no, I don't know that intentionally because I didn't want him to take anything I was saying as in any way confirming what he said, because at that point in time I did not recall that I had ever known, and I thought this is something that he was telling me that I was first learning. And so I said, no, I don't know that because I want to be very careful not to confirm it for him, so that he didn't take my statement as confirmation for him.*

> Now, I had said earlier in the conversation, which I omitted to tell you, that this—you know, as always, Tim, our discussion is off-the-record if that's okay with you, and he said, that's fine.

> *So then he said—I said—he said, sorry—he, Mr. Russert said to me, did you know that Ambassador Wilson's wife, or his wife, works at the CIA? And I said, no, I don't know that. And then he said, yeah—yes, all the reporters know it. And I said, again, I don't know that. I just wanted to be clear that I wasn't confirming anything for him on this. And you know, I was struck by what he was saying in that he thought it was an important fact, but I didn't ask him anymore about it because I didn't want to be digging in on him*, and he then moved on and finished the conversation, something like that.

Count Five alleges that Mr. Libby testified falsely in that he gave the following testimony regarding his conversations with reporters concerning the employment of Joseph Wilson's wife by the CIA (italicized portions alleged as false):

1.    Testimony given on or about March 5, 2004 regarding a conversation with Matthew Cooper on or about July 12, 2003:

Q.      And it's your specific recollection that when you told Cooper about Wilson's wife working at the CIA, you attributed that fact to what reporters—

A.      Yes.

Q.      —plural, were saying.  Correct?

A.      *I was very clear to say reporters are telling us that because in my mind I still didn't know it as a fact.  I thought I was—all I had was this information that was coming in from the reporters.*

. . . .

Q.      And at the same time you have a specific recollection of telling him, you don't know whether it's true or not, you're just telling him what reporters are saying?

A.      *Yes, that's correct, sir.  And I said, reporters are telling us that, I don't know if it's true.  I was careful about that because among other things, I wanted to be clear I didn't know Mr. Wilson.  I don't know—I think I said, I don't know if he has a wife, but this is what we're hearing.*

2.      Testimony given on or about March 24, 2004 regarding conversations with

reporters:

Q.      And let me ask you this directly.  Did the fact that you knew that the law could turn, the law as to whether a crime was committed, could turn on where you learned the information from, affect your account for the FBI when you told them that you were telling reporters Wilson's wife worked at the CIA but your source was a reporter rather than the Vice-President?

A.      *No, it's a fact.  It was a fact, that's what I told the reporters.*

Q.      And you're, you're certain as you sit here today that every reporter you told that Wilson's wife worked at the CIA, you sourced it back to other reporters?

A.      *Yes, sir*, because it was important for what I was saying and because it was—that's what—*that's how I did it.*

. . . .

Q.      The next set of questions from the Grand Jury are—concern this fact.  If you did not understand the information about Wilson's wife to have been classified and didn't understand it when you heard it from Mr. Russert, why was it

that you were so deliberate to make sure that you told other reporters that reporters were saying it and not assert it as something you knew?

A.       I want—I didn't want to—I didn't know if it was true and I didn't want people—I didn't want the reporters to think it was true because I said it.  I—*all I had was that reporters are telling us that, and by that I wanted them to understand it wasn't coming from me and that it might not be true*.  Reporters write things that aren't true sometimes, or get things that aren't true.  *So I wanted to be clear they didn't, they didn't think it was me saying it.  I didn't know it was true and I wanted them to understand that*.  Also, it was important to me to let them know that because what I was telling them was that I don't know Mr. Wilson.  We didn't ask for his mission.  That I didn't see his report.  Basically, we didn't know anything about him until this stuff came out in June.  And among the other things, I didn't know he had a wife.  That was one of the things I said to Mr. Cooper.  I don't know if he's married.  And so I wanted to be very clear about all this stuff that I didn't, I didn't know about him.  And the only thing I had, I thought at the time, was what reporters are telling us.

.   .   .   .

          Well, talking to the other reporters about it, I don't see as a crime.  What I said to the other reporters is what, you know—*I told a couple reporters what other reporters had told us*, and I don't see that as a crime.


          As I stated before, the indictment is merely a formal way of accusing a person of

a crime, and what I have just recited from the indictment are merely accusations.  The

indictment is not evidence of any kind.  The only evidence you may consider is the

testimony and exhibits admitted in court during trial.[16]

---

[16]          Adapted from *Fifth Circuit Criminal Instructions*, Instruction 2.69; *see also Criminal Instructions*, Instruction 4.87(A) (elements of perjury under District of Columbia law); *id.*, Instruction 2.06 (indictment is not evidence); *Eleventh Circuit Criminal Instructions*, Instruction 60 (definition of "material").

## MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 15

### (Unanimity)

The verdict must represent the considered judgment of each juror.  In order to return verdicts on the five counts in the indictment, each juror must agree to the verdict for each count of the indictment.  Your verdicts, therefore, must be unanimous.[17]

---

[17]    Adapted from *Criminal Instructions*, Instruction 2.72.

## MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 16

(Duty to Deliberate)

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict. Remember at all times that you are not partisans. You are judges—judges of the facts of this case. Your sole interest is to seek the truth from the evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case. Nothing you have seen or read outside of court may be considered. Nothing that I have said or done during the course of the trial is intended in any way, to somehow suggest to you what I think your verdict should be. Nothing said in these instructions and nothing in any form of verdict, which has been prepared for your convenience, is to suggest or convey to you in any way or manner any intimation as to what verdicts I think you should return. What the verdicts shall be is the exclusive duty and responsibility of the jury. As I have told you many times, you are the sole judges of the facts.[18]

---

[18]    Adapted from O'Malley, § 20.01.

## MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 17

(Good Faith Defense)

The good faith of Mr. Libby is a complete defense to each of the charges in the indictment because good faith on the part of the defendant is inconsistent with a finding that he knowingly and intentionally committed any of the alleged offenses.

A person who makes a statement based on a belief or opinion honestly held is not punishable under these statutes merely because the statement turns out to be inaccurate, incorrect, or wrong. Making an honest statement that turns out to be inaccurate, incorrect or wrong because of mistake, confusion, or faulty memory, or even carelessness in one's recollection, does not rise to the level of criminal conduct. An honest belief or "good faith" belief is a complete defense to the charges because such an honest or "good faith" belief is inconsistent with the intent to commit the alleged offenses.

In determining whether or not the government has proven that Mr. Libby acted with an intent to commit the offenses alleged in the indictment or whether Mr. Libby acted in good faith, you must consider all of the evidence received in this case bearing on his state of mind.

The burden of proving good faith does not rest with Mr. Libby, because he does not have any obligation to prove anything in this case. It is the government's burden to prove beyond a reasonable doubt that Mr. Libby acted with the intent to commit the offenses charged. If the evidence in this case leaves you with a reasonable doubt as to whether Mr. Libby acted with criminal intent or in good faith, you must find Mr. Libby not guilty.[19]

---

[19]    Adapted from O'Malley, § 19.06.