THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>  )<br>v. )<br>  )<br>I. LEWIS LIBBY, )<br>    also known as Scooter Libby )  | CR. NO. 05-394 (RBW) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO PRECLUDE EVIDENCE OR ARGUMENT THAT HIS
DISCLOSURE OF THE OCTOBER 2002 NIE WAS ILLEGAL OR IMPROPER**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, Special Counsel, respectfully submits this Response to Defendant's Motion to Preclude Evidence or Argument That His Disclosure of the October 2002 National Intelligence Estimate (NIE) Was Illegal or Improper.

As discussed below, the government has no intention, and has never expressed an intention, of arguing that defendant's disclosure of the previously-classified October 2002 NIE was illegal or improper. What the government does intend to establish is that the circumstances surrounding the disclosure – including the fact that the information disclosed was specially de-classified by the President, through the Vice President, and the fact that the Vice President specifically authorized disclosure of the information to a reporter – made the conversation in which the disclosure was made unique and memorable to defendant. That conversation was a meeting with New York Times reporter Judith Miller at St. Regis Hotel on July 8, 2003, in which defendant and Ms. Miller also discussed the fact that Valerie Wilson worked at the CIA as part of his response to criticisms of the White House's assertions regarding purported Iraqi efforts to acquire uranium from Niger. Thus,

rather than "fleeting" and "inconsequential,"[1] the conversation between defendant and Miller was unique and memorable – but not illegal.

However, as discussed below, the government's agreement not to argue that defendant's disclosure of the NIE was illegal should not be understood as an agreement to remain mute if the defense seeks to affirmatively represent as fact to the jury statements that may not be true or accurate.

**I.   Background**

As defendant acknowledges in his motion, Def. Mot. at 1, defendant disclosed to reporters certain portions of an October 2002 NIE that set forth the intelligence community's assessment of Iraq's potential possession of weapons of mass destruction.  One of those disclosures occurred on July 8, 2003, when defendant met with Ms. Miller.  In that meeting with Ms. Miller, defendant discussed, among other things, Mr. Wilson's Op-Ed, Mr. Wilson's trip to Niger, portions of the October 2002 NIE – and the CIA employment of Ms. Wilson.  When the topic of the meeting specifically turned to Mr. Wilson, defendant asked that Ms. Miller characterize defendant, for purposes of attribution, as a "former Hill staffer" rather than as an administration official.

Defendant described to the grand jury that he was authorized by the Vice President to disclose the October 2002 NIE to the press some time before the July 8th meeting with Ms. Miller. When the Vice President initially directed defendant to disclose the NIE's contents to the press, defendant expressed concern regarding disclosure of the NIE because it was classified.  The Vice

---

[1] *See* Def. Resp. to Govt. Motion in Limine at 4 (contending that defendant "had fleeting, inconsequential conversations with reporters regarding Ms. Wilson") (Docket No. 179).

President advised that he would obtain authority to disclose from the President. Later, the Vice President informed defendant that the President had authorized disclosure of the NIE.

After speaking with the Vice President, defendant asked David Addington, then-Counsel to the Vice President, whether the President had the authority to de-classify classified information. Mr. Addington confirmed that the President had such authority, a proposition that the government does not dispute.

## II.     Analysis

The government has never charged, argued, nor intended to argue that the disclosure of the information contained in the NIE by defendant to reporters was illegal. Nor have we argued or intended to argue that such disclosure was otherwise wrongful. Indeed, the government has never disputed, nor intended to dispute, that Executive Order 12958 allows the President to declassify information for public dissemination. *See also Department of Navy v. Egan*, 484 U.S. 518, 527 (1988).

Rather, the government will argue that the circumstances surrounding defendant's disclosure of the 2002 NIE tend to show, *see* Fed. R. Evid. 401, that responding to Mr. Wilson's allegations and the criticism of the White House's statements about Iraq and uranium was a sufficiently high priority in defendant's mind to warrant declassification and dissemination of classified information to rebut that criticism, and that these events were sufficiently distinct to be memorable. As this Court is well aware, defendant's primary defense is that he was so preoccupied with other matters that he misremembered how he learned of Ms. Wilson's CIA employment (to the point of creating a conversation that did not occur) and misremembered to whom he disclosed that information. This evidence shows that the conversations between defendant and Ms. Miller were important and

memorable, and not so drowned out by the other matters that he misremembered how he learned of Ms. Wilson's employment and to whom he disclosed that information.

### III. Timing of the De-Classification

The timing of the de-classification relative to defendant's disclosure of the NIE to reporters is unclear. Initially, defendant testified in the grand jury that he was authorized to disclose the information to Ms. Miller shortly before their July 8, 2003 meeting. Defendant's discussion with Mr. Addington concerning presidential authority to de-classify occurred sometime after July 6, 2003, according to Mr. Addington. However, the defendant also disclosed the NIE to Washington Post associate editor Bob Woodward on June 27, 2003, and to New York Times reporter David Sanger on July 2, 2003. In both conversations, defendant disclosed information from the NIE – specifically, the NIE's conclusion that Iraq was vigorously trying to procure uranium – which was substantially less information than disclosed to Ms. Miller on July 8. Defendant later testified in the grand jury that he was unsure whether, by the time of the July 2 conversation with Mr. Sanger, defendant had (a) received authorization from the Vice President to disclose the NIE; (b) relied on publicly-made statements by the then-National Security Advisor; or (c) just "slipped."[2] Defendant testified that he recalled a "go-stop-go" sequence in discussions concerning authorization to disclose the NIE, that is, he was authorized to disclose, then he was instructed to hold off, and then later told again to disclose.

Thus, there is ambiguity concerning when the de-classification of the NIE actually occurred. At the May 5, 2006 motions hearing before this Court, the government agreed that it would not make

---

[2] Defendant was not asked in the grand jury about the disclosure to Bob Woodward because that information arose after defendant's grand jury appearances.

an issue of the fact that any disclosure prior to the authorization violated the law, but noted that as a result of the ambiguity regarding timing, the government could not be forced to stipulate that defendant was authorized as of particular dates in June or early July. 5/5/06 Tr. at 68 ("I don't know what happened before so I am not going to stipulate that he was authorized on June 23 or July 2."). Government counsel also expressed concern that defendant not be allowed to make, unrebutted, an affirmative argument that defendant never disclosed classified information without authorization, and the Court recognized that the door to contrary evidence could be opened depending on the defense argument.[3] 5/5/06 Tr. at 73-74. Nevertheless, the government will not argue that the defendant's disclosures of the 2002 NIE were illegal or improper.

The government does not know what position the defense will advance at trial as to the timing of the relevant discussions authorizing the NIE's disclosure, and the timing issue may be important because defendant did ask the Counsel to the Vice President, some time after July 6, questions about what paperwork would be involved when the spouse of a CIA employee traveled abroad (a reference to Ms. Wilson and to Mr. Wilson's trip to Niger), together with a question about the President's de-classification authority. Any questions about when the authorization was given in relation to the various discussions with journalists Woodward, Sanger, and Miller would be

---

[3] Defendant complains in his motion that this Court denied his discovery request for documents relating to the de-classification, Def. Mot. at 2, but he had already received all such documents in the government's possession (*e.g.*, defendant's own notes), *see* 5/5/06 Tr. at 63-64, 68 ("There's no other discovery we have on it [the de-classification] so it's not like we're sitting on documents or exhibits"). In order to allow defendant to assess the risks of arguing that he had clear authority to disclose, the Court directed that the government disclose to the defense all the information in its possession concerning the timing of the de-classification and the relevant conversations, *see* 5/5/06 Tr. at 71. Consistent with this Court's oral ruling, *id.* at 71, the government provided, on September 7, 2006, a letter to defense counsel setting forth the information from the witnesses's interviews concerning the de-classification.

pertinent to establishing when conversations regarding Ms. Wilson occurred. However, if any evidence is adduced at trial concerning the possibility that defendant engaged in a limited but premature disclosure of the NIE, the government will refrain from arguing that defendant's conduct was illegal, and will consent to an appropriate instruction. But what defendant cannot do is to take the government's agreement not to make an issue of the possible premature disclosure of the NIE and use that agreement to insulate from all challenge the potential defense argument that defendant was clearly authorized to disclose the NIE each time defendant did so – the facts simply do not bear that out. After all, defendant himself has already indicated, in his grand jury testimony, that he thought the de-classification might have happened later. We should not be foreclosed from asking questions if he or his counsel change his account. Yet Mr. Wells indicated at the May 5, 2006 hearing that "when [defendant] talked to Mr. Woodward [on June 27] he did it with the understanding that he had been authorized." 5/5/06 Tr. at 73. The government should not be muzzled from raising any questions about the de-classification's timing.[4] We will not, however, argue from the inconsistency that defendant committed a crime when he discussed the NIE. At

---

[4] The government has consistently stated that the government would not make the de-classification an issue, so long as defendant does not make it an issue or open the door. 5/5/06 Tr. at 68-69, 74. Putting the same point another way, the government's consistent concern has been that the defense will take the government's agreement *not to argue* a certain factual issue as an open invitation for the defense to argue for the very different proposition that the government has *conceded* the fact and will not attempt to rebut the issue raised by the defense. 5/5/06 Tr. at 74 (government express concern that "I say, well, we're not going there [the de-classification timing] and then people stand up and say the government agrees X, Y, and Z, and start tying our hands."). For example, the defense claims the ability to make "strong representations to the jury that he was authorized by the Vice President with the understanding that the President also had declassified the document," 5/5/06 Tr. at 65-66, and yet presumably would prevent the government from arguing that the timing was not clear, even after the defense – not the government – injects what would otherwise be a dormant issue.

bottom, the government simply wishes to make clear that it cannot affirmatively agree that each time defendant disclosed the NIE, he was authorized to do so.

## CONCLUSION

For the reasons discussed above, the government respectfully requests that this Court deny defendant's motion as moot.

Respectfully submitted,

/s/
PATRICK J. FITZGERALD
Special Counsel
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

Dated: November 14, 2006

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 14th day of November, 2006, I caused true and correct copies of the foregoing to be served on the following parties by electronic mail:

>William Jeffress, Esq.
>Baker Botts
>The Warner
>1299 Pennsylvania Avenue, N.W.
>Washington, DC 20004-2400
>Facsimile: 202-585-1087
>
>Theodore V. Wells, Esq.
>Paul Weiss
>1285 Avenue of the Americas
>New York, NY 10019-6064
>Facsimile: 212-373-2217
>
>Joseph A. Tate, Esq.
>Dechert LLP
>4000 Bell Atlantic Tower
>1717 Arch Street
>Philadelphia, PA 19103-2793
>Facsimile: 215-994-2222
>
>John D. Cline, Esq.
>Jones Day
>555 California Street
>San Francisco, CA 94104
>Facsimile: 415-875-5700

>>Patrick J. Fitzgerald
>>Special Counsel
>>U.S. Department of Justice
>>1400 New York Ave., N.W.
>>Washington, D.C.  20530
>>202-514-1187
>>
>>By: _____/s/_____
>> Debra Riggs Bonamici
>> Deputy Special Counsel