UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>                                                    )<br>      v.                                                   )<br>                                                    )<br>I. LEWIS LIBBY,                   )<br>    also known as "Scooter Libby"  ) | CR. NO 05-394 (RBW) |

**RESPONSE TO MEMORANDUM OF DEFENDANT ON LEGISLATIVE
HISTORY OF CIPA SUBSTITUTION PROVISION**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, Special Counsel, respectfully submits this response to the "Memorandum of Defendant I. Lewis Libby on Legislative History of CIPA Substitution Provision" (Defendant's CIPA Memorandum) filed on November 14, 2006. Defendant's CIPA Memorandum provided selective quotes from the legislative history of the Classified Information Procedures Act regarding the substitution standard in CIPA § 6(c)(1) and the purpose of the government's ex parte affidavit under CIPA § 6(c)(2). The government submits this response to reiterate that under CIPA, (1) the standard for assessing substitutions under § 6(c)(1) is that the defendant has "substantially the same ability to make his defense," and the government has met that standard; and (2) CIPA permits the Court to use the ex part affidavit under § 6(c)(2) in balancing national security interests at the § 6(c) stage.[1]

---

[1] Defendant's CIPA Memorandum states that Congress enacted CIPA to address the problem of "graymail," and further states that "graymail" includes "'wholly proper defense attempts to obtain or disclose classified information.'" Def. CIPA Memo. 1-2 (quoting Graymail Legislation: Hearings

**ARGUMENT**

I.      **The Standard Under CIPA § 6(c)(1)**

CIPA provides that a "court shall grant [the government's motion for substitutions pursuant to § 6(c)] if it finds that the statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information."  CIPA § 6(c)(1).  The legislative history of CIPA makes clear that there is no requirement that the substitution be substantially similar to the classified information itself:

> For example, where the defendant wished to show that he had access to a particular type of classified data, it should be sufficient for the government to admit that the defendant has had such access rather than forcing the introduction of the classified data in question.

S. Rep. 96-823, 1980 USCCAN 4294, 4302. The legislative history also makes clear that the substitution standard is concerned solely with satisfying the right to a fair trial, not with satisfying the defendant's desire to gain tactical advantages:

> [A]lthough the standard . . . for alternative disclosure, "substantially the same ability to make his defense," is intended to convey a standard of substantially equivalent disclosure, *precise, concrete equivalence is not intended*.  The fact that insignificant tactical advantages could accrue to the

---

Before the Subcommittee on Legislation of the Permanent Select Committee on Intelligence of the House of Representatives, 96th Cong., 1st Sess., at 4 (Aug. 7, 1979) ["HPSCI Hearings"].  Of course, it is important to note that Congress also recognized that "graymail" includes the tactic of defendants and their counsel to "press for the release of sensitive classified information the threatened disclosure of which might force the government to drop the prosecution." Id.  See also id. at 1 (noting that graymail is when "an unscrupulous defendant [ ] threatens to publicly reveal all kinds of sensitive information, even if it has no possible bearing on the issues of the case," so that the government will be forced to dismiss the case).

>   defendant by the use of the specific classified information should not
>   preclude the court from ordering alternative disclosure.

H. Rep. 96-1436, 1980 USCCAN 4307, 4310-11 (emphasis added)[2].

The "substantially the same ability" standard in CIPA is just that: the substitutions do not need to be precisely equivalent to the classified information; they merely need to give the defendant substantially the same ability to put on his defense, which in this case is to offer the evidence from which defendant can argue that he was so preoccupied with other matters that he forgot or misremembered the conversations about which he is charged with lying.

In the guise of a discussion regarding the legislative history on the development of the substitution standard under CIPA, Defendant's CIPA Memorandum falsely suggests that the government's substitutions "completely eliminate whole areas of testimony that the district court had found relevant and admissible," and "completely scripts the heart of the defendant's own testimony in the guise of substitutions." Def. Memo. 6-7. The government's substitutions do neither of these; in fact, the government's proposed statement admitting relevant facts and proposed substitutions are above and beyond what the framers of CIPA would have expected the government to propose for such sensitive national security details, particularly since those details are not even being offered to

---

[2] In fact, in United States v. Moussaoui, 382 F.3d 453, 477 (4th Cir. 2004), the Fourth Circuit stated that substitutions offered by the government should be accepted by the court "when it will not materially disadvantage the defendant," providing further support for the notion that CIPA is not intended to be used to give defendants any kind of tactical advantage.

prove the truth of the charged false statements in the case; rather, they are only being offered to show the defendant's general "preoccupation" with other matters.

An even more alarming assertion in Defendant's CIPA Memorandum – one that completely controverts the purpose of CIPA and reveals defendant's true graymail motivation – is the assertion that Congress' contemplation of an acceptable statement admitting relevant facts would only be satisfied in this case if the government admitted that "the national security matters were vastly more important to Mr. Libby than the snippets of conversation concerning Valerie Wilson and thus caused him to confuse or misremember those snippets when asked about them months later." Def. Memo. at 7. The drafters of CIPA contemplated that the "statement admitting relevant facts" would be a statement admitting relevant "facts," not a statement of conclusions the defense wants the jury to draw. The government has offered a statement admitting relevant facts that serves the purposes contemplated by CIPA,[3] in addition to proposing detailed substitutions for all of the relevant classified exhibits, and with those, the defendant has "substantially the same ability to make his defense," just as the legislative history indicates the drafters of CIPA would have intended.

### III. The CIPA § 6(c)(2) Affidavit

As this Court has recognized, when considering substitutions during Section 6(c), "a court must at bottom balance the government's national security interests in protecting

---

[3] See Government's Motion Pursuant to CIPA Section 6(c) For Substitutions In Lieu of the Disclosure of Classified Information at 10.

classified information against the defendant's ability to put on his defense." United States v. Libby, 2006 WL 3262446, *5 (D.D.C. November 13, 2006); see also United States v. Zettl, 835 F.2d 1059, 1067 (4th Cir. 1987) ("that such is clearly the case is shown by § 6(c)(2) providing for the filing of an affidavit of the Attorney General in §6(c) proceedings, which affidavit explains the basis for the classification of the information sought to be disclosed and that the disclosure would cause identifiable damage to the national security of the United States."); United States v. Juan, 776 F.2d 256, 258 (11th Cir. 1985) ("in passing upon a motion under Section 6(c) the trial judge should bear in mind that the proffered defense evidence does involve national security").

The legislative history supports this need for balancing: in a joint report to Congress regarding the final version of the bill, members of the House and Senate explained that otherwise relevant evidence can be excluded at the Section 6(c) stage. H.R. Conf. Rep. No. 96-831, at 9 (1980).  If the court were not permitted to balance national security interests against a defendant's right to make his defense, there would be no basis for the court to exclude relevant evidence at the Section 6(c) stage, as contemplated by the joint report.  That does not mean that the defendant is to be deprived of a fair trial or "substantially the same ability" to make his defense.

In fact, during the Section 6(a) hearings, even defendant admitted that balancing of the government's right to hold people accountable for criminal activity and not subvert the process through graymail is proper at the Section 6(c) stage: [by Mr. Cline:] "And I

5

think when we get to the substitution phase, that is where Congress sought to find a way of balancing these needs.'" 9/27/06 Tr. 31.  Now that the Court is at the 6(c) stage, defendant conveniently seeks to avoid such balancing.

The CIPA §6(c)(2) affidavit provides the Court with information it needs to conduct the necessary balancing.  As the Eleventh Circuit has noted, "[w]hat may appear to the court to be innocuous may be dangerously revealing to those more informed. . . . The court may find that a 6(c) alternative proposed by the government will provide the defendant with his defense, even though the defendant might rather threaten his prosecutor with the disclosure of more detail." Id. at 258-59.  The § 6(c)(2) affidavit enables the government to set forth in detail the ramifications that could result from disclosure of the information the defendant is seeking to disclose, and it is entirely appropriate under CIPA for the Court to use that information to conduct the balancing necessary to determine the adequacy of the government's proposed substitutions.

                Respectfully submitted,

                  /s/
                PATRICK J. FITZGERALD
                Special Counsel
                1400 New York Ave., N.W.
                Washington, D.C. 20005
                (202) 514-1187

Dated:  November 16, 2006.

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 16th day of November, 2006, I caused true and correct copies of the foregoing to be served on the following parties:

William Jeffress, Esq.
Baker Botts
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Facsimile: 202-585-1087

Theodore V. Wells, Esq.
Paul Weiss
1285 Avenue of the Americas
New York, NY 10019-6064
Facsimile: 212-373-2217

Joseph A. Tate, Esq.
Dechert LLP
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793
Facsimile: 215-994-2222

John D. Cline, Esq.
Jones Day
555 California Street
San Francisco, CA 94104
Facsimile: 415-875-5700

        Patrick J. Fitzgerald
        Special Counsel
        U.S. Department of Justice
        10th & Constitution Ave., NW
        Washington, D.C. 20530
        202-514-1187

By:   /s/ Kathleen M. Kedian
        Deputy Special Counsel