**EXHIBIT 2**

CAHILL GORDON & REINDEL LLP
EIGHTY PINE STREET
NEW YORK, N.Y. 10005-1702

LOYD ABRAMS
HOWARD ADAMS
ROBERT A. ALESSI
ROGER ANDRUS
CLENE R. BANKS
MICHAEL A. BECKER
LANDIS C. BEST
GARY A. BROOKS
SUSAN BUCKLEY
KEVIN J. BURKE
JAMES J. CLARK
BENJAMIN J. COHEN
CHRISTOPHER T. COX
W. LESLIE DUFFY
ADAM M. DWORKIN
RICHARD E. FARLEY
PATRICIA FARREN
JOAN MURTAGH FRANKEL
BART FRIEDMAN
CIRO A. GAMBON
WILLIAM B. GANNETT
CHARLES A. GILMAN

STEPHEN A. GREENE
ROBERT M. HALLMAN
WILLIAM M. HARTNETT
CRAIG M. HOROWITZ
DAVID G. JANUSZEWSKI
ELAI KATZ
THOMAS J. KAVALER
DAVID N. KELLEY
LAWRENCE A. KOBRIN
IMMANUEL KOHN
EDWARD P. KRUGMAN
JOEL KURTZBERG
GEOFFREY E. LIEBMANN
MICHAEL MACRIS
ANN S. MAKICH
JONATHAN I. MARK
GERARD M. MEISTRELL
ROGER MELTZER
MICHAEL E. MICHETTI
ATHY A. MOBILIA
DONALD W. MULLIMHILL
NOAH B. NEWITZ

KENNETH W. ORCE
JOHN PAPACHRISTOS
LUIS R. PENALVER
ROY L. REGOZIN
DEAN RINGEL
JAMES ROBINSON
THORN ROSENTHAL
JONATHAN A. SCHAFFZIN
JOHN SCHUSTER
HOWARD G. SLOANE
LAURENCE T. SORKIN
LEONARD A. SPIVAK
SUSANNA M. SUH
GERALD S. TANENBAUM
JONATHAN D. THIER
JOHN A. TRIPODORO
ROBERT USADI
GEORGE WAILAND
GLENN J. WALDRIP, JR.
MICHAEL B. WEISS
DANIEL J. ZUBKOFF

SENIOR COUNSEL
WALTER C. CLIFF
DAVID R. HYDE
WILLIAM T. LIFLAND
JOHN SCHMIDENMAN
JOHN R. VAUGHAN
GARY W. WOLF

COUNSEL
GORDON B. DUNHAM
JASON W. HARLAN
RAND MEDWINN

*ADMITTED IN
D.C. & VA. ONLY

1990 K STREET, N.W.
WASHINGTON, D.C. 20006-1180

AUGUSTINE HOUSE
6A AUSTIN FRIARS
LONDON, ENGLAND EC2N 2HA

WRITER'S DIRECT NUMBER

September 29, 2005

Dear Joe:

I have read your letter to Patrick J. Fitzgerald dated September 16, 2005 and Lewis Libby's letter to Judith Miller dated September 15, 2005. Because those letters contain certain mis-characterizations of certain discussions you and I had over a year ago concerning the positions of our respective clients, I feel compelled to set the record straight.

It is true that in discussions with me late last summer you told me that Mr. Libby had no objection to Ms. Miller testifying before the grand jury about her meeting with him in early July of 2003. In our conversations, however, you did *not* say that Mr. Libby's written waiver was uncoerced. In fact, you said quite the opposite. You told me that the signed waiver *was* by its nature, coerced and had been required as a condition for Mr. Libby's continued employment at the White House. You compared the coercion to that inherent in the effective bar imposed upon White House employees asserting the Fifth Amendment. A failure by your client to sign the written waiver, you explained, like any assertion by your client of the Fifth Amendment, would result in his dismissal. You persuasively mocked the notion that any waiver signed under such circumstances could be deemed voluntary.

You also state in your letter that I "assured" you during our conversations of last summer "that there was nothing [Mr. Libby or you] could do" that would change Ms. Miller's position. That is simply inaccurate. Not only have I never said that, but I have never said anything even resembling that to you. I did say — more than once, and quite accurately — that Ms. Miller was acting out of principle and that I fully expected her to continue to refuse to reveal the identity of any confidential source; but you neither asked for, nor received any "assurances" about any steps Mr. Libby might take in the future or their consequences. Your similar assertions in your letter of September 16, 2005 that you told me that you and your client "encouraged" Ms. Miller to testify "over a year ago" are similarly inaccurate.

-2-

It is certainly true, as your letter suggests, that there were several factors that led Ms. Miller to conclude that she could not testify before the grand jury consistent with her journalistic principles. However, as to the issue of Mr. Libby's waiver, the message you sent to me was viewed by Ms. Miller as inherently "mixed" (i.e., saying that Mr. Libby's written waiver had been coerced on the one hand but that he had no objection to her testifying on the other). The context in which you relayed that message made it even less clear precisely what Mr. Libby wanted of Ms. Miller. And, notwithstanding that Ms. Miller had known Mr. Libby for some time, the fact that he made no effort to contact Ms. Miller directly about this matter (even, as it turned out, when he was specifically and publicly requested by a member of Congress to provide a personalized waiver to her), led her to conclude that Mr. Libby's waiver was not voluntary. Nor, in fact was there any public or private response by him or you in the face of repeated public statements by Ms. Miller and myself to the effect that no satisfactory personal waiver had been obtained. Although, as you have indicated in your letter to Mr. Fitzgerald, other reporters may have been satisfied with representations from you about the voluntary nature of Mr. Libby's "waiver," Ms. Miller was not. Her public statements on the matter could not have been clearer. In the absence of what she could confidently treat as a truly uncoerced personal waiver from her source, when she heard nothing but silence from Mr. Libby for the many months and days leading up to (and then long after) her incarceration, she concluded that she could not fully rely and act upon the information you provided.

Mr. Libby's September 15, 2005 letter to Ms. Miller adopts the same erroneous characterizations of our conversations as those in your September 16, 2005 letter to Mr. Fitzgerald. For example, Mr. Libby states in that letter that you affirmatively requested of me, on his behalf, that Ms. Miller testify; no such request was ever made to me. He also repeats your assertion that I "assured" you that that Ms. Miller's stand was "unrelated to" Mr. Libby and that there was "nothing more" you or Mr. Libby could do. That statement is also incorrect. I assured you of no such thing.

I offer a final thought. In both your letter and that of Mr. Libby, statements are made to the effect that Mr. Libby now desires Ms. Miller to testify because he believes her testimony would "benefit" him. I can neither confirm nor deny that. But so that there is no possible misunderstanding, Ms. Miller's decision about whether to testify has been and will be wholly unaffected by whether it assists your client or not and will be based on, among other things, whether she concludes that your client's waiver is truly voluntary. His recent personal call and his personal letter to her are certainly helpful in that regard.

Sincerely,

Floyd Abrams