# REDACTED

FILED WITH THE
COURT SECURITY OFFICER
CSO: __Macisso__
DATE: __11/16/06__

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

# FILED

DEC 0 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
|  | ) |
|  | ) |
| v. | )   Criminal No. 05-394 (RBW) |
|  | ) |
| I. LEWIS LIBBY, | ) |
|  | ) |
| Defendant. | ) |

### MEMORANDUM OPINION[1]

On September 27, 2006, this Court commenced a series of hearings pursuant to Section

6(a) of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III, § 6(a) (2000),[2]

to address the "use, relevance, and admissibility" during the trial of this matter of certain

classified documents and information the defendant desires to use as part of his defense.[3]  In

---

[1]   Due to the nature of the information contained in this Memorandum Opinion, it must be filed with the Court Security Officer before it can be made available for public dissemination. In addition, because this opinion contains classified information, it must be handled by the parties in accordance with the protective orders issued in this case. It is this Court's belief, however, that a substantial portion of this Opinion contains unclassified information. Therefore, the government shall forward this opinion, along with all transcripts from the closed hearings in this matter, to the proper officials for classification determinations and thereafter provide this Court with a redacted version of this opinion so it can be placed on the public docket and the transcripts can be made available for public viewing. The same holds true for all papers that have been filed through the Court Security Officer in connection with these CIPA proceedings. It is this Court's desire to have as much of the proceedings in this case open to the public as soon as practical. See November 14, 2006 Order.

[2]   This Court held hearings pursuant to Section 6(a) of the CIPA on September 27 and 28, 2006; October 3, 4, 26 and 30, 2006; and November 1, 2006.

[3]   In connection with these hearings, the following papers have been submitted to the Court: (1) the Defendant's Consolidated CIPA § 5 Notice ("Def.'s Notice"); (2) the defendant's Memorandum Concerning Use, Relevance, and Admissibility of Classified Documents and Information Listed in Defendant's Consolidated CIPA § 5 Notice ("Def.'s Mem."); (3) the Government's CIPA § 6(b) Notice ("Gov't's Notice"); (4) the Government's

(continued...)

PENDING CLASSIFICATION REVIEW

advance of those hearings, the Court detailed in a September 21, 2006, Memorandum Opinion

and Order, the standard the Court must employ in resolving whether certain classified

information should be precluded from trial pursuant to Section 6(a) of the CIPA. United States

v. Libby, ___ F. Supp. 2d ___, ___, 2006 WL 2692740, at *1 (D.D.C. Sept. 21, 2006)

(concluding that under Section 6(a) only "the Federal Rules of Evidence and the restrictions they

impose control whether information subject to CIPA proceedings is admissible during a trial.").[4]

Consistent with the standard enunciated in the September 21, 2006 Opinion, the Court issued a

number of rulings from the bench during the Section 6(a) CIPA hearings resolving contested

issues concerning the "use, relevance, and admissibility" of the classified documents and

information the defendant desires to use. This opinion memorializes those rulings as required by

Section 6(a) of the CIPA. 18 U.S.C. App. III, § 6(a) ("the court shall set forth in writing the basis

---

[3](...continued)
Memorandum in Opposition to Defendant's Arguments Regarding the Use, Relevance, and Admissibility of
Classified Documents ("Gov't's Opp'n"); (5) the Defendant's Reply Memorandum Concerning Use, Relevance, and
Admissibility of Classified Documents and Information Listed in Defendant's Consolidated CIPA § 5 Notice
("Def.'s Reply"); (6) the Government's Specific Objections to Classified Information Defendant Seeks to Admit at
Trial ("Gov't's Obj."); and (7) Defendant's Response to Government's Specific Objections to Classified Information
Defendant Seeks to Admit at Trial ("Def.'s Response"). In addition, the parties filed the following additional
memoranda: (1) Memorandum of I. Lewis Libby Concerning the Admissibility of Documents on Consolidated CIPA
§ 5 Notice; (2) Government's Response to Defendant's Memorandum Concerning Admissibility of Documents on
Defendant's Consolidated § 5 Notice; (3) Memorandum of I. Lewis Libby Concerning Admissibility of Documents
to Corroborate his Potential Trial Testimony; and (4) Government's Memorandum of Law in Response to Court's
Inquiries Regarding Legal Authorities in Connection with CIPA § 6(a) Hearing.

[4] Even if this Court had applied the heighten standard for use, relevance, and admissibility that the
government encouraged it to adopt, Government's Memorandum in Opposition to Defendant's Arguments Regarding
the Use, Relevance, and Admissibility of Classified Documents at 5-15, the rulings set forth in this opinion would
not differ. The classified information that this Court concludes is relevant is undoubtedly "helpful to the defense"
and the defendant's interest in putting on a complete defense to the charges against him outweighs the need to protect
the classified information from disclosure.

PENDING ADDITIONAL REVIEW    REDACTED

2

for its [use, relevance, and admissibility] determination.").[5]

## I.    Background

This Court has, on several occasions, set forth the facts of this case in published opinions.

See, e.g., United States v. Libby, 432 F. Supp. 2d 81, 82-83 (D.D.C. 2006); United States v.

Libby, 432 F. Supp. 2d 26, 28-29 (D.D.C. 2006); United States v. Libby, 429 F. Supp. 2d 27, 28-

29 (D.D.C. 2006); United States v. Libby, 429 F. Supp. 2d 1, 4 (D.D.C. 2006). Accordingly, the

Court need not do so again in this opinion. However, it is necessary to discuss the classified

information the defendant desires to disclose or will cause to be disclosed during his trial. As

discussed more fully below, over the course of the Section 6(a) proceedings, the classified

information subject to the Section 6(a) proceedings has evolved from a mountainous volume of

documents and other classified information to a much more modest quantity.

The Defendant's Consolidated CIPA § 5 Notice, 18 U.S.C. App. III, § 5, was filed on

August 15, 2006. This notice identified 412 documents and nine narrative summaries which

contain classified information that the defendant reasonably expects to disclose or cause the

---

[5]  During the course of the Section 6(a) proceedings, the Court was provided a number of binders created by the parties to assist in the review of the classified information at issue. These binders included: (1) a four volume set of binders provided by the defendant with copies of each of the 412 documents identified in his Section 5 CIPA notice ▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪ (2) a binder provided by the government containing ▪▪▪▪▪▪▪▪▪▪▪▪▪▪ material referenced in the defendant's Section 5 CIPA notice; (3) a binder from the government containing defense exhibits to which the government is not objecting in whole or in part; (4) a binder from the government containing proposed classified government exhibits, which had not otherwise been designated by the defense; (5) a binder provided by the defendant containing all of the documents identified in his Section 5 CIPA notice that relate to Ambassador Joseph Wilson and his mission to Niger; (6) a binder provided by the government containing the defendant's unclassified daily schedules; (7) a binder provided by the defendant containing copies of the 100 documents the defendant desires to disclose at trial, in whole or in part, through testimony, the introduction of the document, or both; and (8) a binder from the government containing additional proposed classified government exhibits, which had not otherwise been designated by the defendant as information he desires to use.

disclosure of during the trial.[6]  Def.'s Notice at 1.  As indicated by the defendant, he "may

introduce the listed document itself into evidence, or present testimony concerning the classified

information contained in the document, or both."  Id.  According to the defendant, these

documents and the narrative summaries are relevant to two aspects of his defense.  First, the vast

majority of the documents would be used to establish the foundation for the defendant's

anticipated defense that any misstatements he made when speaking with the Special Agents of

the Federal Bureau of Investigation ("FBI") or testifying before the grand jury were the result of

confusion or faulty memory, not an intent to willfully misrepresent the truth.  Def.'s Mem. at 8-

14.  In support of this theory of his defense, the defendant anticipates introducing classified

information related to nine topic areas, which detail the work he will posit commanded his time

and attention during the time period he purports is relevant to this case.  Id. at 8-10.  And the

defendant will contend that these topics consumed the focus of his attention and had significantly

greater importance to him than the conversations he allegedly had with various news reporters

that form the bases for the offenses he is charged with committing.  Id. at 10.  Accordingly, the

defendant will assert that to the extent he made inaccurate statements to the FBI agents or to the

grand jury concerning the substance of conversations he had with various news reporters, such

inaccuracies were inadvertent, as they concerned conversations that were "relatively unimportant

to him."  Id.  And second, the defendant anticipates introducing classified information, primarily

through his notes, in an attempt to demonstrate that to the extent he was involved in an attempt to

---

[6]  To the extent that the Court refers to specific document/exhibit numbers in this opinion, those references are to the numbers assigned to documents by the defendant in his Section 5 CIPA notice, as amended by the table provided to the Court on September 27, 2006.  Def.'s Notice at 3-14; Corrected Consolidated CIPA § 5 Exhibits,

respond to Ambassador Joseph Wilson's findings regarding Iraq's relationship with Niger, such efforts were for the legitimate purpose of addressing the merits of those findings, and had nothing to do with disclosing Ambassador Wilson's wife's—Valerie Plame Wilson's—affiliation with the Central Intelligence Agency ("CIA"). Id. at 14-15.

The initial Section 6(a) hearings, while not resolving at that time every dispute on the admissibility of the subject classified information, was extraordinarily helpful in framing what use, relevance, and admissibility determinations needed to be resolved by the Court. The benefit that resulted from the initial hearings was the defendant's modification of his CIPA Section 5 notice clarifying what classified information was in fact at issue.[7] Moreover, before the Section 6(a) hearings commenced, and during the hearings themselves, the amount of classified information at issue was reduced substantially. Specifically, on September 6, 2006, and again on September 26, 2006, the government filed a notice pursuant to Section 6(b) of the CIPA identifying various documents listed in the defendant's Section 5 notice that are not classified. In addition, over the course of the hearings, it became apparent, as to the documents related to the memory aspect of the defense, that the defendant is not seeking to introduce the actual classified information contained in each and every document identified in his Section 5 notice. Rather, the defendant identified a substantial number of documents only for the purpose of establishing that an event occurred or that classified information was provided to him, without any intention of revealing during the trial the actual substance of the events or the information contained in the

---

[7] The defendant's Section 5 notice now consists of (1) the classified information set forth in narrative form in the Defendant's Consolidated CIPA § 5 Notice, as amended orally in court on October 4, 2006; (2) the classified information in defense counsel's oral discussion of the use, relevance, and admissibility of the listed documents at the CIPA § 6(a) hearings; and (3) the classified information in the highlighted portions of the exhibits provided to the Court and the government on October 5, 2006.

PENDING CLASSIFICATION REVIEW

REDACTED

documents.[8]  And, as to those documents or the information therein he anticipates seeking to actually introduce, it became apparent that in many instances the defendant does not desire to introduce all of the information contained in every document. Thus, as a result of these developments, the amount of classified information the defendant seeks to disclose has been reduced substantially.

In addition to the topic summaries in the defendant's Section 5 CIPA notice, there are 100 documents containing classified information,[9] which the defendant seeks to introduce to establish the foundation for his memory defense. And there are twenty-nine documents containing classified information,[10] which the defendant seeks to introduce to establish that he was not engaged in an effort to reveal the identity of Ambassador Joseph Wilson's wife as a CIA employee, but rather he was merely attempting to legitimately rebut the merits of Ambassador Wilson's assertions. As these documents (along with the narrative summaries contained in the Section 5 notice) contain all of the classified information that remains at issue, this Court's ruling

[8]  The defendant will present this information to the jury through the use of "dots" depicted on a Power Point presentations for the purpose of showing how busy he was.

[9]  The following documents, in addition to the narrative summary contained in the Section 5 notices, contain classified information, which the defendant anticipates disclosing at trial in support of this defense: 2, 3, 9, 13, 15, 37, 40, 41, 49, 54, 55, 56, 61, 62, 70, 75, 76, 78, 79, 81, 82, 83, 85, 87, 89, 90, 93, 94, 95, 96, 100, 103, 106, 109, 113, 115, 116, 119, 120, 122, 124, 125, 130, 137, 138, 140, 143, 151, 155, 159, 160, 161, 162, 166, 167, 171, 172, 176, 177, 178, 179, 181, 182, 183, 186, 189, 190, 202, 203, 217, 218, 222, 229, 235, 254, 256, 268, 281, 282, 290, 296, 300, 305, 308, 315, 316, 320, 322, 336, 338, 341, 357, 359, 360, 361, 362, 376, 401, 409 and 411.

[10]  The following documents, in addition to the narrative summary contained in the Section 5 notices, contain classified information, which the defendant anticipates disclosing at trial in support of this defense: 18, 56, 57, 58, 71, 72, 73, 74, 75, 76, 80, 100, 105, 152, 170, 173, 174, 178, 198, 199, 209, 210, 211, 212, 213, 216, 225C, 242, 299. As discussed later in this opinion, the parties have advised this Court that they have reached an accord on many of these documents and the Court need only make definitive rulings on a small number.

PENDING CLASSIFICATION REVIEW
REDACTED

is thus limited to this information.[11]  The Court will discuss each group of documents in turn.

## II.    Discussion

As already noted, this Court previously concluded that when ruling on the "use, relevance, and admissibility" of classified information pursuant to Section 6(a) of the CIPA, the Court must solely employ the standard rules of evidence that govern any other type of evidence in federal court. Libby, ___ F. Supp. 2d at ___, 2006 WL 2692740, at *1.  In opposition to the defendant's arguments regarding the use, relevance, and admissibility of the classified information identified in his Section 5 CIPA notice, the government advances three arguments, which were also recurring themes during the Section 6(a) hearings.  First, the government contends that the documents relate to time periods not relevant to the defendant's memory defense. Gov't's Opp'n at 23-26.  Second, the government argues that the classified information contained in the topic summaries and the documents themselves contain a level of detail that is not relevant.  Id. at 26-28.  And finally, the defendant maintains that much of the classified information should be excluded under Federal Rules of Evidence 401 ("Definition of Relevant Evidence") and 403 ("Exclusion of Relevant Evidence on the Grounds of Prejudice, Confusion, or Waste of Time").  Id. at 32-34.  The government's most recent filing details, document-by-document, the government's specific objections.  See generally Gov't's Obj.  The Court will

_____

[11]  Although this Court is ruling only on this limited set of documents, the Court appreciates that the defendant's Section 5 notice contains a plethora of other documents, which at this time he intends to introduce for an extremely limited purpose to show when the defendant was working on issues relating to the various topic areas, without revealing the actual classified information itself.  And this Court recognizes that depending upon further pretrial developments and events as they unfold during the trial, the defendant may feel it necessary to introduce the actual substance of this classified information.  Should this occur, the defendant must immediately notify the Court and the government before such information is elicited at trial.  The Court will then, as necessary, make proper CIPA rulings.

PENDING CLASSIFICATION REVIEW

REDACTED

address each of these arguments in turn. However, before turning to the documents themselves, it is helpful to first set forth a few general principles in response to the objections raised by the government and the defendant during the Section 6(a) proceedings.

First, it is important to briefly discuss one recurring debate that occurred throughout the Section 6(a) proceedings—the line between Federal Rules of Evidence 401 and 403 on the one hand, and substitutions under Section 6(c) of the CIPA on the other hand. During the Section 6(a) proceedings, the government objected to much of the information identified by the defendant in his Section 5 notice because it claimed that such evidence was too detailed and that such levels of detail made much of the evidence irrelevant under Rule 401. In addition, the government opined that any probative value such details have is far outweighed by the unfair prejudice and confusion that would result from the evidence being presented to the jury, thus making it inadmissible under Rule 403. In response, the defendant argued that the government's concern about the level of detail was more properly addressed in the later substitution proceedings under Section 6(c) of the CIPA.

It is undisputed that this Court has a duty to engage in a Rule 403 balancing to determine whether otherwise relevant evidence should be excluded at trial. Courts therefore frequently employ Rule 403 to exclude irrelevant, confusing, and misleading evidence. See United States v. Anderson, 872 F.2d 1508, 1518 (11th Cir. 1989); see also United States v. Wilson, 586 F. Supp. 1011 (S.D.N.Y. 1983), aff'd, 750 F.2d 7 (2d Cir. 1984). And although Section 6(c) provides the procedures through which the Court (and the parties) will engage in the process of substitutions and redactions of classified information that is deemed relevant and admissible, Courts have

PENDING CLASSIFICATION REVIEW
REDACTED

8

recognized that the balancing under Rule 403 can include a "balanc[ing] between relevance and prejudice and the alternatives available for the substitution of less prejudicial proof." United States v. Long, 574 F.2d 761, 770 (3d Cir. 1978) (Adams, J., concurring); see United States v. Lobovitz, 669 F.2d 894, 902 (3d Cir. 1982) (Adams, J., concurring). As the Eighth Circuit recognized in United States v. Sewell, 457 F.3d 841, 844 (8th Cir. 2006), "[i]n weighing [the Rule 403] elements, the district court should discount the probative value of the disputed evidence if an evidentiary alternative has equal or greater probative value and poses a lower risk of unfair prejudice." Id. (citing United States v. Becht, 267 F.3d 767, 773 (8th Cir. 2001)). Thus, a Court making a Rule 403 determination can examine whether "less prejudicial proof" with equal probative value can be substituted to eradicate any unfair prejudice or confusion. Cf. Long, 574 F.2d at 770. Accordingly, where this Court has concluded that the introduction of certain terms that are part of the classified proof would create unfair prejudice or confusion, it has required redactions or substitutions of less prejudicial terms. However, in making these redactions or substitutions under Rule 403, the Court was not concerned with whether they altered the classification status of the document or information. Rather, the Court was only concerned with removing the confusing or prejudicial language. Only after the Section 6(a) hearings were completed, has the Court concerned itself with substitutions and redactions designed to address the government's concerns about disclosing the classified nature of a document or information.[12]

---

[12] Admittedly, it is quite difficult to make definitive rulings on Rule 403 grounds as this Court does not yet know how the trial will unfold and what facts and evidence will actually be presented by the parties. As such, it is virtually impossible to conclude at this stage of the litigation that certain pieces of evidence would be cumulative or

(continued...)

Second, before engaging in an extensive document-by-document analysis, it was important to assess the time periods that are critically relevant to this prosecution. This assessment weighed heavily on what classified information contained in the documents should be excluded or to what degree the extent of the classified information the defendant seeks to admit should be limited. As discussed more fully below, the Court employed, what is in effect, a "sliding scale." On one end of the scale is the classified information that relates to events that allegedly consumed the defendant's time and attention during critical dates as alleged in the indictment. On the other end of the scale is the classified information that relates to events that allegedly consumed the defendant's time and attention at other times not specifically referenced in the indictment. The classified information that reflects what the defendant was confronting during those critical dates was deemed far more probative than the information confronting the defendant during those other times. This demarcation caused the Court to conclude that the level of detail the defendant would be permitted to introduce at trial would be generally controlled by whether the classified documents or information related to one of those critical dates. If so, for the jury to get an appreciation of what exactly was purportedly consuming the defendant's time and attention during these specific periods, it is the Court's view that the defendant must be permitted to testify with some level of detail about those events or introduce documents with the same level of detail. On the other hand, except for several other specific instances, documents

---

[12](...continued)

their admission would result in undue waste of time. Because this Court wants to provide the defendant every possible accommodation to put on his defense, the Court has been extremely reluctant to exclude evidence on these grounds. Accordingly, while this Memorandum Opinion does set forth substantive rulings on a number of issues, the Court reserves the right to alter these rulings as the trial unfolds.

relating to events not occurring on or within close proximity of these key dates are much less probative, and thus, there is simply no need for the jury to know with the same degree of detail about those events. In other words, while the defendant will be permitted to provide detailed testimony about information relating to events that fall on or within close proximity of critical dates in the indictment, he will be precluded from testifying altogether or his testimony will be limited as to classified information relating to events falling outside these critical dates.

Admittedly, some of the information contained in the documents and narrative summaries related to these critical dates is highly sensitive. Nonetheless, these are the activities and events that the defendant will contend were consuming his time and attention during the dates that are identified in the indictment. Thus, in order to put on this defense, the defendant must be afforded the opportunity to show the jury that his focus was consumed by this information is credible. And it is of no moment that the government does not anticipate challenging the defendant's assertions that he was consumed with important matters because the government will no doubt challenge the relative weight the jury should accord to this information as compared to the focus he gave to Ambassador Wilson and the information he had provided about his trip to Niger.[13]

To determine which dates are significant to the offenses charged in the indictment, the Court must look to the indictment itself. The first date of any significance in the indictment is May 6, 2003, the date on which New York Times columnist Nichols Kristof published his column in The New York Times challenging the accuracy of the President's State of the Union

---

[13] With the exception of the instances described in this opinion where the Court does conclude that certain pieces of classified information should be excluded, the Court finds no need to discuss the government's objection on a document-by-document basis where its objection cannot be sustained.

PENDING CLASSIFICATION REVIEW
REDACTED

address, during which the President stated that "[t]he British government has learned that Saddam Hussein recently sought significant quantities of uranium from Africa." Indictment at 3, ¶ 3. And the last date in the indictment of significance is March 24, 2004, the date of the defendant's last grand jury appearance. Id. at 11, ¶ 30. The period of time falling within these dates largely set the parameters for the period relevant both to the prosecution and the defense of this case, as it is the events falling within these dates that form the predicate for the charges that have been lodged against the defendant. However, this Court cannot conclude that the detail in every document, the detail of every conversation, and the detail of every task the defendant performed during this entire eleven month period is relevant or relevant to the same degree to his memory defense. Rather, there are several discrete points in time during this eleven month period when significant conversations occurred, such as the dates the defendant spoke with the various news reporters, had conversations with various administration officials, spoke with the FBI agents, and testified before the grand jury, that are of critical importance to this prosecution. It is the information and work that consumed the defendant during these key dates, and the days immediately surrounding these key dates, that are most relevant and probative. In other words, the items that allegedly consumed his time and attention during these key periods are the tasks that most likely would have caused the defendant to allegedly misremember the conversations at issue. Moreover, several other distinct events, due to the immediacy or gravity of the information, could also be construed by the jury to have impacted the accuracy of the defendant's memory. Therefore, the defendant will be permitted to disclose the details of this information and these events as well.

The indictment alleges that the defendant participated in conversations beginning on or around June 9, 2003, with administration officials concerning Ambassador Joseph Wilson and his trip to Niger, Indictment at 4, ¶ 5, and that these conversations continued throughout that week, id. at 4-5, ¶¶ 6 - 11. It is clear that the government will use these conversations to establish that the defendant had knowledge of Valerie Plame Wilson, and knew of her affiliation with the CIA. Accordingly, there can be no question that what otherwise allegedly consumed the defendant's time and attention during this week—June 9 through 14, 2003—is relevant and extremely probative to the prosecution and defense of this action. In addition, the defendant had various conversations pertinent to this prosecution during the week of July 6 through 12, 2003, including the conversations with the various news reporters, which form the predicate for the charges that have been filed against the defendant. Again, this week is critical to the case, and the events occurring during this week are relevant and highly probative. Finally, there are other significant dates discussed in the indictment that are also relevant, including the date of the defendant's conversation with Judith Miller (June 23, 2003), his conversations with the FBI agents (October 14, 2003 and November 26, 2003) and the dates he testified before the grand jury (March 5, 2004 and March 24, 2004). Indictment at 6, ¶ 14, id. at 9, ¶ 26, id. at 11, ¶ 30. What the defendant was doing and the information provided to him on these dates, in addition to the day before and the day after, are also relevant and highly probative of whether he is culpable for committing the charged offenses. Accordingly, documents and information that fall within all of the dates discussed above are clearly relevant to establish what matters the defendant was allegedly focusing on at those times. And the defendant will therefore be permitted to introduce

PENDING CLASSIFICATION REVIEW

13

documentary proof or testify with some degree of detail, if he so chooses to testify, about the events and activities he was engaged in during these relevant time periods.

On the other side of the scale, however, are those documents and information which relate to the defendant's activities occurring outside these clearly critical time periods. Although this Court cannot say with absolute certainty that no other documents or information related to events falling outside these time periods are totally irrelevant, their probative value is diminished in assessing whether the defendant innocently misremembered the conversations that form the basis for the charged offenses. In fact, there is a "danger of unfair prejudice, confusion of the issues, or misleading the jury," in providing the jury details of the defendant's activities falling outside the critical time periods. Specifically, permitting the defendant to testify as to the details of what consumed his time outside the critical time periods discussed above would likely confuse the jury concerning what events actually allegedly consumed the defendant's attention at the times that he had the conversations that form the basis for this prosecution. Accordingly, while the defendant will be permitted to testify generally about the matters that consumed his time and attention during those periods outside of the dates identified in the indictment, permitting detailed descriptions of events occurring during such periods will be excluded pursuant to Federal Rule of Evidence 403.

While the vast majority of classified documents and information will fall squarely into one of the two categories described above, the Court acknowledges that there are events occurring outside of the critical time periods that may have impacted the defendant's memory and perception of the events at issue in the case. For example, this Court recognizes that simply

PENDING CLASSIFICATION REVIEW

REDACTED

14

because the defendant received an intelligence briefing on a given day, does not mean that he was only consumed with the information contained in that briefing on that day. Thus, for example, the Court will permit the defendant to testify in detail about events that occurred on the day before and the day after the critical day itself. Moreover, the Court recognizes that particularly significant events occurring during the period of time between the defendant's conversations with the various news reporters and his conversations with the FBI agents and his testimony before the grand jury could impact his memory and perception of those conversations. Accordingly, the defendant has proffered a limited number of events, supported by information contained in classified documents, which he believes fall into this category. Specifically, during the Section 6(a) proceedings, the defendant proffered four dates on which events occurred that were of such significance that he believes could have caused him to misremember his conversations with various news reporters and administration officials. According to the defendant, such events occurred on or around July 29, 2003; August, 20, 2003; November 21, 2003; and late-December, 2003.[14] In addition to these dates, the defendant opines that there were a few other discrete pieces of classified information that he was exposed to outside of the time frame encompassing the critical dates that likely impacted his memory.[15] Considering the significance of these events and the plausibility that they would have had overwhelming impact on the focus of his attention and therefore impacted his memory of earlier events even though they occurred a considerable time after the events he was being asked to remember, the Court

---

[14]  This classified information is contained in documents: 254, 256, 268, 336, 357, 359, 360, and 362.

[15]  This classified information is contained in documents: 2, 3, 54, 61, 109, 113, 115, 116, 229, 235, and 409.

will permit the defendant to testify about these limited number of events. Moreover, the defendant will be permitted to testify at the level of detail proffered by his attorney during the Section 6(a) proceedings, which is equivalent to the level of detail he is permitted to provide regarding those events that occurred during the critical times designated in the indictment.[16]

Finally, before turning to the classified documents and information itself, it is helpful to discuss whether the actual documents will be admissible, as opposed to simply testimony concerning the information contained in the documents. As indicated during the Section 6(a) proceedings, many, if not most, of the documents themselves are unlikely to be admitted as evidence during the trial for several reasons. First, the documents would be cumulative of the testimony provided by the defendant. And second, it would appear at this time that the information contained in many of the documents will pose substantial hearsay problems. However, the Court will have to defer issuing definitive rulings in this regard until an issue of admissibility arises. At that time, the Court will be able to consider the question in context and assess whether there may be some basis for the actual admission of the documents, e.g., past recollection recorded. The Court will now turn to the classified documents and information itself.

---

[16] This ruling is limited to those documents and information that the defendant seeks to introduce in whole or in part to support his memory defense. Based upon the foregoing analysis, the defendant may use at trial, subject to any other limitations set forth in this opinion and substitutions or redactions required during the Section 6(c) proceedings, classified information contained in the following documents: 2, 3, 9, 49, 54, 61, 70, 75, 76, 78, 79, 81, 82, 83, 85, 87, 89, 90, 93, 94, 95, 96, 109, 113, 115, 116, 122, 124, 125, 166, 167, 171, 172, 176, 177, 178, 179, 181, 182, 183, 186, 189, 190, 202, 203, 217, 218, 222, 229, 235, 254, 256, 268, 305, 308, 336, 338, 357, 359, 360, 361, 362, 409, and 411.

A.     Documents and Information Related to the "Memory Defense"

As noted earlier, the defendant seeks to introduce documents and the information contained therein relating to nine different subject areas, which he contends occupied his time and focus of attention during the relevant time periods. These nine topic areas are: (1) threatened attacks on American and American interests by Al Qaeda, Hezbollah, and other terrorist groups; (2) enhancing the United States defenses for Homeland Security; (3) nuclear proliferation by Pakistani scientist A.Q. Khan and efforts by the United States to stop his activities; (4) the development of nuclear weapons by North Korea; (5) Iran's development of nuclear weapons, its arrest and potential harboring of Al Qaeda members, and its involvement in Iraq; (6) the proper size and role of the Iraqi military and security forces in the months following the fall of Saddam Hussein's regime and the proper composition of the governing entity in Iraq; (7) the Israel-Palestine relationship, including the emergence of Mahmoud Abbas (Abu Mazen) as an alternative to Yasser Arafat and the threat that Hamas posed to peace and security; (8) a tense diplomatic crisis that arose during the first half of July 2003 resulting from the arrest of Turkish soldiers in Iraq by the United States military; and (9) the unrest in Liberia in June and July 2003, culminating in the ousting of President Charles Taylor from office in early July 2003, the danger to the United States Embassy and its occupants in Monrovia, Liberia, and the United States' role in protecting civilians caught in the middle of the conflict in Liberia. See Def's Notice at 15-45.

The classified documents and information identified by the defendant as relevant to his memory defense that fall within these nine categories can be divided into three groups. The first group includes the ███████████████ material provided to the defendant, ████

PENDING DECLASSIFICATION REVIEW

17

████████████████████████████████

The second group contains the classified information in the nine topic narratives contained in the

defendant's Section 5 CIPA notice. And finally, the documents themselves, which comprise

primarily the defendant's notes. The Court will address each set of documents separately.[18]

    **1.** ██████████████████████████[19]

The defendant seeks to introduce portions of information ██████████████████

████████████████ The information he seeks to introduce references those activities that the

defendant contends were consuming his time and attention. As this Court has discussed in earlier

opinions, this case is about whether the <u>defendant</u> provided <u>false statements</u> to Special Agents of

---



[18] The record in this case details, often times at great length, the various government objections to the defendant's request to use the classified documents and information. The Court has largely addressed all of the objections raised by the government. Accordingly, the Court finds no need to repeatedly set forth the government's document-by-document objection unless the objection has merit.

[19] It is important to note at the outset that this Court's rulings regarding ███████████ material is limited first by its earlier ruling concerning the relevant dates, and second, by the fact that the defense, during the Section 6(a) hearings, made oral proffers concerning the level of detail the defendant's anticipated testimony would entail concerning the information contained in these documents. While this Court, of course, cannot mandate that the defendant's testimony follow the oral proffer verbatim, defense counsel's proffer, based on his representation that it essentially constituted the level of detail the defendant himself would present through his testimony, provides a guide for both parties as to the level of detail this Court will deem permissible under Rules 401 and 403, as the Court has found what counsel indicated reasonable.



the FBI and false testimony to the grand jury. See Libby, 429 F. Supp. 2d at 15. Thus, it is the

state of mind of the defendant that is at issue (and, to a lesser extent, the state of mind of the

media witnesses and various other government witnesses). However, ▮▮▮▮▮▮▮▮▮▮▮▮

themselves are not relevant, as they do not show what the defendant believed was important or

what matter the defendant devoted his efforts to on a given day. ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The exception, of course, are those inquiries made by the defendant,

in response to reviewing these documents, ▮▮▮▮▮

▮▮▮▮▮ However, the defense has affirmatively stated

that the defendant intends to testify on his own behalf. It will therefore be the defendant's

testimony about what he was focused on and that his workday was consumed by the information

▮▮▮▮▮▮▮▮▮▮ that makes the classified information contained in these

documents relevant under Rule 401.

While the classified information ▮▮▮▮▮▮▮▮▮▮ along with the

defendant's testimony that will be based on the content of these documents is relevant, this

conclusion does not end the Court's inquiry. The Court must further determine whether there are

any other evidentiary grounds that merit the exclusion of otherwise relevant classified evidence

the defendant desires to present at trial, either in whole or in part. Rule 403 provides such a

predicate. For instance, the defendant anticipates testifying that the intelligence information

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Moreover, he asserts that he focused to a greater extent on

PENDING CLASSIFIED REVIEW

REDACTED

intelligence that ████████████████████████████ than he did on information that ████████████████████████ Accordingly, the defendant posits that it was entirely reasonable that his time and attention was consumed by the information contained in these documents. The Court agrees.

While the substance of the information ████████████████ is relevant, the Court must conclude that testimony or documents linking the information to the fact that it is contained in such highly classified documents is inadmissible because the probative value of the source of this information is far outweighed by the danger that the linkage will potentially cause unfair prejudice and distract the jury from focusing on the issues it is being asked to decide. Permitting the defendant to testify that he received specific intelligence information ████ ████████████ standing alone, has no probative value.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████ Not only would such disclosures be irrelevant, but it would cause the jury to give undue consideration to a matter that has no bearing on the issues that are germane to this case. Accordingly, while the defendant can testify about the information ████████ ████████████ subject to the other limitations set forth in this opinion, he may not testify that the information originated ████████████████ Moreover, although the defendant is precluded from stating that the intelligence information he received originated ████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

███████ he is welcome to state that as the National Security Advisor for the Vice President, he

believed that the intelligence information he was provided ████████████████ was the best

available information on the subject. Accordingly, he can testify that he took such information

very seriously. The restriction imposed by this opinion excludes ████████████████████

but still provides the defendant a full opportunity to testify about the substance of the

information.

In addition ████████████████████████ there are portions of these

documents themselves that must be excluded because their probative value is substantially

outweighed by both (1) the confusion introduction of the information would create for the jury

and (2) the undue waste of time that would result from the introduction of the evidence.

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ While these documents at times do discuss

groups and individuals that are well-known, such as Hezbollah or al Qaeda, often these

documents discuss individuals and groups whose names are not commonly known by the general

public (and therefore the individuals who will comprise the jury), ████████████████████

████████████████████████████ References to this latter category of names will be excluded under Rule 403 for

a variety of reasons. First, the probative value of identifying these groups is minimal, at best,

since their names will in all likelihood not be known by the jurors. Moreover, introducing the

names of multiple terrorist groups, terrorist, and sources of information will undoubtedly

confound the jury, as it is likely that its members will focus on trying to assess where these

PENDING CLASSIFICATION REVIEW

REDACTED

21

groups and individuals fit into the various threats that were being made against the United States and our allies, rather than simply focusing on the fact that the defendant was exposed to what the government will acknowledge was information of significant importance to the defendant. Furthermore, introducing the names of these various terrorist groups, terrorists, and sources and methods of intelligence gathering will unduly waste time. For the jurors to appreciate why the defendant would be concerned about these unfamiliar names, he would have to explain who these groups and individuals are and why the United States, and the defendant in particular, had interests in their activities. And this is unnecessary in light of the government's decision not to challenge their importance. Accordingly, the Court concludes pursuant to Rule 403 that references to the organizations and individuals listed in the appendix of this opinion must be redacted ███████████████████████ and no references can be made to them during the trial.[23] However, the defendant is welcome to suggest generic substitutes for the names of these groups and individuals if doing so will aid his defense. On the other hand, because the same problems do not arise in connection with names that are well known,[24] the defendant will be permitted to use them as part of his defense.

In addition to the redactions discussed above, any testimony concerning classified

---

[23]  The parties should note that when making its initial rulings in this matter, this Court may have overlooked some references to these individuals in various documents. It is the Court's intention that reference to these groups or individuals in any document must be avoided. In addition to such names, this Court has also excluded references to certain locations and other phrases in various documents under Rule 403; ████████████

███████████████████████████████████████████████████████████

[24]  These names include, for example, Hezbollah, al Qaeda, and Saddam Hussein.

PENDING CLASSIFICATION REVIEW

REDACTED

22

information█████████████████████ shall also be limited by the date restrictions

discussed earlier. Unless████████████ falls within the time frames identified above as

relevant, the defendant (or any other witness) may not testify to the details contained within the

documents. Rather, references to this classified information must be identified as nothing more

than "dots" on the defendant's Power Point presentation, or in some similar non-descriptive

manner. Accordingly, for the forgoing reasons, the defendant will be permitted to introduce the

substance of the classified information██████████████████████ as limited above.

   2.    **The Topic Summaries Contained in the Defendant's Consolidated Section 5
Notice**

The second category of classified information at issue is the information contained in the

nine narrative topic summaries submitted by the defendant. These topic summaries, as amended

during the Section 6(a) proceedings, provide a substantial amount of detail as to what the

defendant alleges was consuming his time and attention from May 6, 2003 to May 24, 2004. It is

important to note at the outset that the government does not object to the defendant discussing, in

general terms, the nine topic areas. However, the government has set forth in detail its objections

to the narrative summaries, which largely challenge the detail contained in the narrative

summaries and the amount of classified information the defendant seeks to introduce. See

generally Gov't's Obj.███████████████████ this Court must conclude, subject to the

date restrictions identified earlier, that the following information must be redacted from the

narrative summaries under Rule 403 because the information is irrelevant or its introduction

would create "unfair prejudice, confus[e] . . . the issues, or mislead[] the jury, or

[cause] . . . undue delay, waste of time, or [result in the] needless presentation of cumulative

evidence." Fed. R. Evid. 403. The Court will discuss each topic area in turn and discuss whether

any portion of the narrative summaries should be excluded.[25]

      (a)    *Topic 1: Threatened Attacks on America and American Interests by Al*
           *Qaeda, Hezbollah, and Other Terrorist Groups.*

Within this topic, this Court must conclude, ███████████████████████ that

references to certain terrorist groups, individuals, and locations should be excluded under Rule

403, as this information is likely to confuse the jury and waste time. Specifically, the following

information will be excluded from this narrative under Rule 403: ██████████████

████████████████████ are names not commonly known, and thus testimony

identifying them by name has no probative value. In fact, for the jury to understand why the

defendant's attention would have been focused on ████████████ he would have to

testify in some detail about who this terrorist group and individual are and why they were of

interest to him. And this is unnecessary because the government will not suggest that these

names would not have been of interest to the defendant. Thus, any possible minimal probative

value that would be derived from having these names presented to the jury is far outweighed by

the waste of time and diversion of the jury's attention away from the actual issues in this case.

Thus, use of these names will be excluded under Rule 403.

The narrative also discusses information concerning the belief that ██████████

██████████████████████████████████████████ Def.'s Notice at

---

    [25] In this section, the Court will set forth those portions of the narrative summaries that it will exclude. In the section that immediately follows, the Court will address the classified information contained in the documents. These two sections must be read together, as both the narrative and the documents provide the basis for the defendant's testimony. Thus, this Court's exclusion of any piece of classified information in one section applies with equal force to the identical classified information in the other section (unless otherwise indicated).

16. Identifying ████████ in this sentence and throughout this narrative summary must be excluded because this Court believes that such testimony will likely cause confusion of the issues and needlessly draw the jury's attention away from the actual controversies in this case—whether the defendant made false statements to the FBI agents and committed perjury when he testified before the grand jury. Namely, such testimony would likely lead the jury to unduly focus on the foreign affairs of the country, which is totally irrelevant to this case. Moreover, to the extent the defendant desires to elicit as part of this topic what others were told, i.e., "the President and his advisers," this information will be excluded because it is simply irrelevant to the defendant's state of mind.[26] Other than these few instances where the Court concludes that classified information must be excluded, the remainder of this narrative summary is both relevant and admissible, subject to any limitations imposed pursuant to Section 6(c) of the CIPA.[27]

> (b)    Topic 2:  Enhancing the United States Defenses for Homeland Security

Approximately half of the defendant's narrative on this topic is unclassified; therefore, this Court need not address the use, relevance, and admissibility of the unclassified portions at this time. As to the remaining portion of the narrative, the only section that this Court must conclude should be excluded is on page twenty-three. There, the defendant seeks to testify that

---

[26] The Court had initially removed all such references throughout the narrative portion of the defendant's Section 5 notice. However, after further discussions with the parties, the Court concluded that such language should only be removed when it refers to information being provided to others in the Administration, and should remain in tact to the extent that the language shows what the defendant and others were actually working on. Removing the language in the second instance would make it appear that only the defendant was tasked to do certain projects, thus providing a false picture to the jury of exactly what was consuming the defendant's time and attention.

[27] During this Court's initial review of the defendant's narrative summaries, it was inclined to exclude certain portions of the narrative summaries because it appeared that, as drafted, the defendant had not been involved in the activity related to these items of classified information. After further discussions with the parties, it was proffered by defense counsel that the defendant was actually involved in these activities. Accordingly, these portions of the narrative will not be excluded.



While the gist of this narrative is largely relevant and admissible, the Court concludes that the statement, ▮▮▮▮▮▮▮▮▮▮▮▮ must be excluded from trial. This result is called for because the Court concludes that revealing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will be a distraction about a matter that the jury simply need not concern itself with. The defendant will be adequately served by the jury being made aware that he was concerned about the shortage. Anything more is irrelevant. Accordingly, that part of the sentence will be excluded.[29]

       (c)    *Topic 3: Nuclear Proliferation by Pakistani Scientist A.Q. Kahn and Efforts by the United States to Stop his Activities*

The narrative portion of this topic is also largely relevant. However, there are two small portions of this narrative that must be excluded. First, ▮▮▮▮▮▮▮▮ the defendant notes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While the fact that ▮▮▮▮▮▮▮▮▮▮ is relevant, the rest of the statement, ▮▮▮▮▮▮▮▮▮▮▮▮ adds nothing to the defendant's defense and is therefore not relevant. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[29] This Court also noted during the hearing that the discussion on page 26 of the defendant's Section 5 notes, which reads, "such as advanced elements of Biowatch (city-wide, near real-time agent detection) or Bioshield (advanced development of potential new medicines or vaccines)," was not relevant and should be excluded. It is this Court's understanding, however, that this statement is not classified. Accordingly, even though the Court continues to question the relevance of this information, it need not make a definitive ruling on the admissibility of the statement at this time.

 however, is simply

irrelevant to the defendant's memory defense.  In addition, just as this Court has excluded ▮▮▮

▮▮▮▮▮▮▮▮▮▮ it will also

exclude ▮▮▮▮▮▮ included in this topic summary as well.  Accordingly, references to

▮▮▮ will be excluded.

    (d)    *Topic 4: The Development of Nuclear Weapons by North Korea*

    With the modification to this narrative agreed to by the defendant, ▮▮▮

▮▮▮▮▮▮▮▮▮

▮▮▮ this Court cannot conclude any other portion of this narrative should be excluded

under either Rules 401 or 403.

    (e)    *Topic 5: Iran's Development of Nuclear Weapons, its Arrest and Potential*
                *Harboring of Al Qaeda Members, and its Involvement in Iraq*

    For the reasons discussed earlier, other than removing the names of the terrorist

organization ▮▮▮▮▮ the Court cannot conclude that any other portion of this narrative

should be excluded under either Rule 401 or 403.

    (f)    *Topic 6:  The Proper Size and Roles of the Iraqi Military and Security*
                *Forces in the Months Following the Fall of Saddam Hussein and the*
                *Proper Composition of the Governing Entity in Iraq*

    As to this topic, there are several statements in the narrative that will be excluded

pursuant to Rules 401 and 403.  In addition to removing ▮▮▮▮▮▮

▮▮▮▮▮▮ this Court must conclude

that any reference to activities (with the exception of those discussed earlier) that occurred

outside of the critical dates of this prosecution must be excluded from the trial.  See supra at 9-

PENDING CLASSIFIED REVIEW
REDACTED
27

15. Accordingly, ████████████████████████████ the defendant can testify

generally, for example, that █████████

but ████████████████████████ are irrelevant. The same is true for the following

sentence, to the extent that the defendant seeks to relay to the jury information occurring outside

the dates identified earlier regarding ████████████████████████

████████████████████ Def.'s Notice at 36.

> (g)     Topic 7: *The Israel-Palestine Relationship, Including the Emergency of Mahmoud Abbas (Abu Mazen) as an Alternative to Yasser Arafat and the Threat that Hamas Posed to Peace and Security*

After reviewing the narrative in connection with this topic, the Court must conclude that

the classified information contained in the narrative is relevant and should not be excluded under

either Rules 401 or 403.

> (h)     Topic 8: *A Tense Diplomatic Crisis Arising During the First Half of July 2003 From the Arrest of Turkish Soldiers by U.S. Forces*

After reviewing the narrative in connection with this topic, the Court must conclude that

the classified information contained in this narrative is relevant and should not be excluded under

either Rules 401 or 403.

> (i)     Topic 9: *The Unrest in Liberia in June and July 2003, Culminating in the Fall of Charles Taylor in Early 2003; the Danger to the U.S. Embassy and its Occupants in Monrovia; and the United States' Role in Protecting Civilians Caught in the Strife*

After reviewing the narrative in connection with this topic, the Court must conclude that

the classified information contained in this narrative is relevant and should not be excluded under

either Rules 401 or 403.

**3.**    **The Classified Information Contained in the Documents**[30]

Based upon the rulings set forth in this opinion, there are thirty-five documents ▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ containing classified information which

the defendant seeks to introduce at trial in whole or in part. After reviewing these documents, the

Court must exclude certain portions of the documents under either Rule 401, 403, or both. The

Court will begin with the information contained in these documents that apply to multiple

documents.

Many of the documents proffered by the defendant are notes that he took at various

meetings. Almost without fail, at the top of each set of his notes, the defendant has written the

date and time of the meeting, the location, who was present (and whether those present

constituted, for example, the National Security Counsel, the War Council, the Principal's

Committee, or the Deputy's Committee), and how the individuals participated in the meetings

(live or via secure video teleconferencing). See, e.g., Doc. 49, 54, 81, & 85. Other than the date

and time of the meeting, and the fact that the defendant was a participant, the additional

information in his notes referenced above is simply not relevant. As this Court has repeated time

and again, it is what the defendant contends was dominating his attention that is critical in this

---

[30] It is important to note that the Court greatly appreciates the parties' diligent efforts to resolve their disputes amicably. And, the parties' collaborative efforts have resolved a number of disputes. ▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

case. Whether or not another administration official was present at these meetings is simply irrelevant. Even if this Court could conclude that such information was relevant, it would nonetheless be excluded under Rule 403 because such information would mislead and confuse the jury for the following reasons. First, if the jury were exposed to the entire cast of characters at each of these meetings, they would undoubtedly lose site of what is important to this case—the activities on which the defendant was purportedly focusing his time and attention. Rather, the jury would likely also focus on the matters these other administration officials were exposed to and that assessment would have nothing to do with the issues the jury will be asked to resolve in this case. Thus, the names of these participants will be excluded. The same is true for entries in documents that list what administration officials the defendant anticipated would be present at future meetings. See Doc. 115.

The defendant's meeting notes also often contain statements made by the various meeting participants. For the same reason expressed alone, the defendant may not, under Rules 401 and 403, generally attribute to his own state of mind statements made by other meeting participants. That cannot be said, however, for statements attributed to the Vice President of the United States. There can be little argument that the Vice President's state of mind and actions would have significant impact on the state of mind and actions of the defendant, who served as his Chief of Staff and National Security Advisor. Accordingly, since the Vice President is the defendant's direct supervisor, the jury could reasonably infer that statements made by the Vice President in the defendant's presence impacted the defendant's state of mind.[31] Therefore, the defendant will

---

[31] While the same can be said for other high-level administration officials such as CIA Director George

(continued...)

be permitted to reveal statements made by the Vice President as memorialized in documents 2, 3, 9, 75, 76, 166, 178, 179, 181, and 268.[32]

Other than the limitations set forth in this section, the Court must also conclude that certain portions of these documents must be excluded under Rules 401 and 403. First, for the same reasons discussed in the context of ███████████████████ there are certain names that must be excluded as they are not relevant and their introduction would violate Rule 403's prohibition on introducing testimony that would confuse the issues the jury has to address and waste time. Those names appear in the appendix to this opinion.[33] And there are two documents that require more substantive redactions under Rules 401 and 403. One is document ██████

███████████████████████████████████████████████████

████████████████████████ While the fact that the defendant received this information is relevant, the details outlined in this document is not necessary and is therefore irrelevant. Accordingly, the following information must be redacted—████████████████████

███████████████████████████████████████████████████

_____

[31] (...continued)
Tenet or then National Security Advisor Condoleezza Rice, any impact statements made by these officials had on the defendant's state of mind would undoubtedly pale in comparison to the impact statements made by the Vice President would have, as the defendant's immediate supervisor. While this Court will not categorically exclude statements made in the defendant's presence by other administration officials, the defendant will have to make an adequate showing that such statements impacted his state of mind.

[32] The Court does note, however, that at least as to document 179, it is the Court's understanding, that the defendant does not intend to introduce the actual back-and-forth of that conversation.

[33] For these same reasons, the Court also finds it appropriate to redact certain other terms contained in particular documents under Rules 401 and 403: ███████████████████████████████

███████████████████████████████████████████████████



In addition to being irrelevant, this level of detail concerning ███████████████████████████ would likely confuse the jury and cause them to focus on matters that are not at issue in this trial. Similarly, ████████████ contains a significant amount of information concerning ████████████ details that are simply irrelevant and which will likely also confuse the jury. This information will therefore be excluded under Rules 401 and 403. █

B.    Documents and Information Related to Ambassador Joseph Wilson and Niger

The final group of documents that this Court must examine are those relating to Ambassador Joseph Wilson and Niger. As to these documents, the parties have been able to resolve virtually all of their disputes. In fact, of the twenty-nine documents that remained at issue as of September 27, 2006, the parties have now informed the Court that they need a



definitive ruling on only one document.[25]

Document 75 is the defendant's task list for June 10, 2003.[26] In this document, the defendant lists the many action items he was to address.



However, the fact that

is all irrelevant and must be excluded for the following reasons. First, the average person will not know ████████████ and thus introduction ████████████ would waste time as the background of this ████████████ would have to be explained to the jury, without there being any benefit derived from the explanation. Moreover, introducing ████████████ would confuse and mislead the jury by diverting their attention from the task actually before them. Accordingly, the

---

[25] As of the writing of this opinion, document 178 was still at issue as well. The dispute as to this document appears to be extremely minor and the parties believe that they may be able to resolve their differences amicably. Accordingly, the Court need not address it at this time. In addition, it is important to note that while the parties have reached agreements as to the use, relevance, and admissibility of these documents, they have not reached agreements on possible substitutions or redactions under Section 6(c).

statement in this document that ███████████████████████████████████
███████████████████████████ will be excluded under Rule 403. However, the defendant may state
generally ████████████████████████████████████████████████████

## III.    Conclusion

The CIPA is an extraordinarily valuable procedural tool, which is designed to ensure that all who have allegedly committed criminal violations can have their fate decided at a trial. In some cases, the CIPA can be undoubtedly applied without much fan-fare and with little difficulty. This, however, is not one of those cases. And the process as played out in this case has demonstrated that the CIPA has its imperfections. For example, requiring a court to make definitive pretrial determinations on the admissibility of classified documents and other classified information is an arduous task at best, as the court is forced to look into the future and attempt to divine what evidence each party will present to the jury. Although both parties have attempted to elucidate how they believe the trial will unfold, no party can say with absolute certainty what a witness will say, or what questions will be asked, and this Court would not dare limit the witnesses' testimony to verbatim recitations of the attorneys' pretrial proffers. In essence, the CIPA requires a court to play the role of Johnny Carson's character, Carnac the Magnificent, by requiring that it render rulings before knowing the exact context of how those rulings will coincide with other evidence that has actually been developed at trial. Nonetheless, as this Court has demonstrated herein, it has made those calls and excluded what appeared to be clearly irrelevant and prejudicial evidence. However, because the CIPA requires the Court to, in effect, look into a crystal ball to assess use and admissibility, the Court has made its Section 6(a) determinations with a slant towards admissibility, to ensure that the defendant has every

PENDING CLASSIFICATION REVIEW
**REDACTED**

opportunity to present his chosen defense. This is especially true regarding its Rule 403 determinations, as Rule 403 "is an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995) (citation omitted); see United States v. Mares, 441 F.3d 1152, 1159 (10th Cir. 2006). Thus, this Court reserves, as it must, the right to alter the rulings set forth herein, and declare otherwise relevant evidence inadmissible under either Rule 401 or 403, depending upon how the facts are actually developed during the trial.

    SO ORDERED this 15th day of November, 2006.[37]


                                            REGGIE B. WALTON
                                            United States District Judge

---

[37] An Order consistent with this Court's ruling accompanies this Memorandum Opinion.

# APPENDIX





PENDING CLASSIFICATION REVIEW
**REDACTED**



PENDING CLASSIFICATION REVIEW
REDACTED