UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v.        ) | CR. NO. 05-394 (RBW) |
| ) | |
| ) | |
| I. LEWIS LIBBY, ) | |
|     also known as "Scooter Libby."   ) | |
| ) | |

**REPLY OF I. LEWIS LIBBY IN SUPPORT OF MOTION FOR RECIPROCAL DISCLOSURE UNDER CIPA § 6(f) AND THE FIFTH AMENDMENT DUE PROCESS CLAUSE**

Despite the extensive disclosures Mr. Libby has made under CIPA §§ 5 and 6, on pain of preclusion of the classified evidence supporting his defense, the government contends that it has no reciprocal disclosure obligation under CIPA § 6(f) and the Fifth Amendment Due Process Clause.[1] The government's interpretation of CIPA § 6(f) disregards both the plain language and the legislative history of the statute. That interpretation, if adopted by the Court, would violate Mr. Libby's right to due process under Wardius v. Oregon, 412 U.S. 470 (1973), and its progeny. The Court should (1) require the government to provide to the defense all information it expects to use to rebut the classified information that the Court has determined to be relevant and admissible under CIPA § 6(a), and (2) place the government under a continuing duty to provide such information.

_____

[1] Government's Response to Defendant's Motion for Reciprocal Disclosure Under CIPA § 6(f) (filed Nov. 28, 2006) ["G. Opp."].

ARGUMENT

I.  THE GOVERNMENT IMPROPERLY MINIMIZES THE SCOPE OF
    THE CLASSIFIED INFORMATION THE COURT HAS FOUND RELEVANT
    AND ADMISSIBLE AND MISINTERPRETS THE TERM "REBUT."

CIPA § 6(f) requires the government to disclose the information it "expects to use to rebut the classified information" that the Court finds relevant and admissible under CIPA § 6(a). Because the government disclaims any intent to "challenge the veracity and accuracy of" the historical facts reflected in the classified information the Court has found relevant and admissible, it contends that it has nothing to disclose under § 6(f). E.g., G. Opp. 3.

The government is wrong in two respects. First, the classified information that the Court has found relevant and admissible includes not only the historical facts reflected in Mr. Libby's notice, but also his proffered explanation of the effect of information about those facts on his state of mind at the relevant times. Mr. Libby's CIPA § 5 Notice includes counsel's proffers at the CIPA § 6(a) hearing concerning the use, relevance, and admissibility of the information contained in Mr. Libby's narrative notice and the noticed documents, as modified in the course of the hearing. See, e.g., Memorandum Opinion at 5 n.7 (Nov. 15, 2006). Under § 6(f), the government must provide the information it will use to rebut that classified information, as well as the classified historical facts.

Second, the government interprets the term "rebut" in § 6(f) too narrowly. Evidence that "challenges the veracity and accuracy of" information undoubtedly tends to rebut that information. But "rebut" has a broader meaning than the government acknowledges. Rebuttal evidence is "'evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party.'" United States v. Stitt, 250 F.3d 878, 897 (4th Cir. 2001) (quoting Black's Law Dictionary 1267 (6th ed. 1990)); see, e.g., United States v. Catalan Roman, 376 F. Supp. 2d

2

108, 115-16 (D.P.R. 2005) (same). The government seeks to limit this definition to "disprove," and exclude from its reciprocal disclosure obligation evidence that tends to "explain," "repel," or "counteract" the classified information that the Court has found relevant and admissible. In this case, such rebuttal evidence would include, for example, testimony or documents (if any) tending to show that Mr. Libby did not consider the national security matters reflected in his CIPA § 5 Notice of greater significance than the snippets of conversation concerning Valerie Wilson, or that those national security matters did not command Mr. Libby's attention to such an extent that he confused, forgot, or misremembered the bits of conversation concerning Ms. Wilson.

The government's narrow interpretation of its disclosure obligation ignores the legislative history of CIPA § 6(f). The Department of Justice bill (H.R. 4745)--one of three bills offered to address the "graymail" problem--contained no reciprocal disclosure provision. See Graymail Legislation: Hearings Before the Subcommittee on Legislation of the Permanent Select Committee on Intelligence of the House of Representatives, 96th Cong., 1st Sess., at 12-13, 24-27, 30-31, 181-94 (Aug. 7, 1979) ["HPSCI Hearings"]. Witness after witness objected to the DOJ approach and argued that Wardius requires reciprocity.[2] Congress ultimately included § 6(f) based on considerations of due process and simple fairness.[3]

Witnesses before Congress recognized that reciprocal disclosure is particularly important when--as under CIPA §§ 5 and 6--the defendant must reveal not only evidence he intends to use,

---

[2] E.g., HPSCI Hearings at 76-77 (attorney Michael G. Scheininger), 98 (former Deputy Solicitor General Philip Lacovara), 124, 126 (professor William Greenhalgh), 139 (attorney Otto Obermaier); Graymail, S. 1482: Hearing Before the Subcommittee on Criminal Justice of the Committee on the Judiciary, United States Senate, 96th Cong., 2d Sess., Serial No. 96-57, at 51 (Feb. 7, 1980) (Morton H. Halperin on behalf of the ACLU) ["Senate Hearing"]; id. at 60 (Scheininger), 66 (former United States Attorney Earl Silbert), 122-23 (Lacovara).

[3] See H. Rep. No. 96-831, pt. 1, 96th Cong., 2d Sess., at 23 (1980) (HPSCI) (reciprocity provision "is based on the beliefs that the principles of Wardius and Williams are applicable to the kind of notice required by H.R. 4736 and that, regardless of the constitutional issue, simple fairness mandates that the government not be given an undue advantage because the defense must disclose a portion of its case before trial"); S. Rep. No. 96-823, 96th Cong. 2d Sess. 10 ("Without reaching the question of whether such reciprocity is required [citing Wardius], the committee believes that placing such a reciprocal duty on the Government is a matter of fairness."), reprinted in 1980 U.S. Code Cong. & Ad. News 4294, 4303.

but his trial strategy, including the relation between the noticed evidence and his theory of defense.  Attorney Michael G. Scheininger, for example, noted the unfairness of requiring the defense to "detail its use of the [noticed classified] information, and to reveal and justify its legal theory in order to demonstrate the relationship between the classified information and the defense case," without requiring reciprocal disclosure from the government.  HPSCI Hearings at 76; see id. at 88 (Scheininger notes that reciprocity "is to compensate for the fact that the defendant has had to identify not only the specific classified information upon which he will rely, but beyond that, explain the whole theory of his defense as to how it relates to that information").  Former Deputy Solicitor General Philip Lacovara observed that the proposed graymail bills "require[] the defendant to provide the government with substantial information about his trial strategy.  If the court upholds the legal soundness of that strategy, it is only fair to insist that the government disclose prior to trial its proposed rebuttal evidence."  Id. at 98.  Even Assistant Attorney General Phillip Heymann, the sole DOJ witness, conceded that if the defendant "really did reveal his case . . . really told us where he is going, what he is going to do, how he is going to try to prove it.  If he told us all of that, it would certainly seem fair to me that the Government provide some responsive discovery of what its case will be."  Id. at 31.

In light of this legislative history, there is little doubt that Congress intended the government's reciprocal disclosure obligation under CIPA § 6(f) to include more than merely information that disproves the historical facts reflected in the defendant's classified information.  When the defendant must identify the classified information he reasonably expects to disclose and explain how that information relates to his theory of defense, the government must (unless "the interests of fairness do not so require," an issue we address below) provide the information it intends to use to rebut the defense that the classified information tends to establish.  See United

4

States v. North, 910 F.2d 843, 902 (appellant did not show prejudice from nondisclosure of the evidence the government used to "'refute' his defenses"), modified on other grounds, 920 F.2d 940 (D.C. Cir. 1990).[4]

The government's narrow interpretation of § 6(f) also ignores the doctrine of constitutional avoidance. "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." Weaver v. USIA, 87 F.3d 1429, 1436 (D.C. Cir. 1996) (quotation omitted); see, e.g., Zadvydas v. Davis, 533 U.S. 678, 689 (2001) (same). In Wardius, the Supreme Court held that "[i]t is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." 412 U.S. at 476. The Ninth Circuit recently found unconstitutional under Wardius a "regulation requiring a criminal defendant to state how he plans to use material evidence when the government is under no reciprocal discovery obligation." United States v. Bahamonde, 445 F.3d 1225, 1229-30 & n.6 (9th Cir. 2006).

If the government's interpretation of § 6(f) were to prevail--if Mr. Libby could be required to identify the classified evidence supporting his memory defense and explain how each piece of evidence was relevant to that defense, with no reciprocal obligation on the government to disclose evidence it will use to rebut the memory defense--then CIPA would

---

[4] The government (G. Opp. 5) cites a footnote in North, in which the majority observed, over dissent from Judge Silberman, that "[d]iscovery proceedings under CIPA . . . entail the kind of strong state interest that may justify an exchange of information between the prosecution and the defense that is not entirely reciprocal." 910 F.2d at 902 n.41; see id. at 936 n.6 (Silberman, J., dissenting) ("The overall importance of CIPA is irrelevant. The Majority surely cannot claim that there is any state interest, let alone a strong one, in the government's refusal to turn over the evidence it uses to refute a defendant's compelled disclosure. There is also no basis whatsoever for the Majority's claim that CIPA allows defendants to 'greymail' the government out of pursuing legitimate prosecutions. If the defendant cannot make use of classified but exculpatory evidence at a public trial, then the prosecution is not legitimate.") (emphasis in original). But the government omits that North concluded that "the District Court erred in its handling of North's section 6(f) motion." Id. at 901-02. The majority found the error harmless, however (again over strong dissent), because "North fail[ed] to demonstrate how he was surprised or prejudiced by prior unawareness of any of the evidence presented by the [government] at trial to 'refute' his defenses." Id. at 902; see id. at 936-37 (Silberman, J., dissenting). Thus, North cuts squarely against the government's position here.

violate Mr. Libby's right to due process under <u>Wardius</u> and its progeny, including <u>Bahamonde</u>. In accordance with <u>Weaver</u> and <u>Zadvydas</u>, the Court should not interpret the statute in a way that subjects it (at a minimum) to "grave doubts" about its constitutionality.

## II.   RECIPROCAL DISCLOSURE SERVES THE INTERESTS OF FAIRNESS.

The government seeks to bring itself within the "interests of fairness" exception to the CIPA § 6(f) reciprocal disclosure requirement on the premise that Mr. Libby "obtained almost all of the classified information in question from the government in discovery." G. Opp. 8.

The government's premise is wrong. Through the narratives in his Consolidated CIPA § 5 Notice, Mr. Libby provided the government with the overwhelming majority of the classified information in Topics 2 and 3 (enhancing the United States defenses for homeland security and nuclear proliferation by Pakistani scientist A.Q. Khan and efforts by the United States to stop his activities) and with much of the classified information in Topic 1 (threatened attacks on America and American interests by Al Qaeda, Hezbollah, and other terrorist groups). The bulk of the classified information that the Court has found relevant and admissible on the other topics appears either in the narratives or in Mr. Libby's notes, which he created and which the government could not even interpret without the defense transliterations. And the defense provided the government with the classified information in defense counsel's proffers, which link the classified information in Mr. Libby's CIPA § 5 narratives and documents to his theory of defense. The government can fairly be said to have provided only the classified information in the morning intelligence briefing materials, and even that information had previously been disclosed to Mr. Libby and was produced in response to a defense discovery motion.

Thus, Mr. Libby has not merely repeated back to the government classified information that the government itself provided. He has, in the words of then-Assistant Attorney General Heymann, "really . . . reveal[ed] his case . . . really told [the government] where he is going, what he is going to do, how he is going to try to prove it." HPSCI Hearings at 31. Under these circumstances, as even Mr. Heymann acknowledged on behalf of the DOJ, reciprocal disclosure serves the interests of fairness. Invocation of the "interests of fairness" exception to the reciprocal disclosure requirement of CIPA § 6(f), under the circumstances of this case, would violate both Congress' intent and Mr. Libby's right to due process under <u>Wardius</u> and its progeny.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Mr. Libby's initial memorandum, the Court should enter an Order (1) requiring the government to provide to the defense all information it expects to use to rebut the classified information that the Court has determined to be relevant and admissible under CIPA § 6(a), and (2) placing the government under a continuing duty to provide such information.

Date: December 4, 2006                              Respectfully submitted,

/s/ Theodore V. Wells, Jr._____              /s/ William H. Jeffress, Jr._____
Theodore V. Wells, Jr.                              William H. Jeffress, Jr.
(D.C. Bar No. 468934)                               (D.C. Bar No. 041152)
James L. Brochin                                    Alex J. Bourelly
(D.C. Bar No. 455456)                               (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                       Baker Botts LLP
  & Garrison LLP                                    1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas                         Washington, DC  20004
New York, NY  10019-6064                            (202) 639-7751
(212) 373-3089

7

/s/ John D. Cline
John D. Cline
(D.C. Bar No. 403824)
K.C. Maxwell
(*pro hac vice*)
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 626-3939