## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

DEC 2 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|                              |     |                              |
|------------------------------|-----|------------------------------|
| UNITED STATES OF AMERICA,    | )   |                              |
|                              | )   |                              |
|                              | )   |                              |
| v.                           | )   | Criminal No. 05-394 (RBW)    |
|                              | )   |                              |
|                              | )   |                              |
| I. LEWIS LIBBY,              | )   |                              |
|                              | )   |                              |
| Defendant.                   | )   |                              |

### MEMORANDUM OPINION[1]

Currently before the Court is the Government's Supplemental Motion Pursuant to CIPA Section 6(c) for Substitutions in Lieu of Disclosure of Classified Information. On November 7, 2006, the Court commenced hearings pursuant to Section 6(c) of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III (2000), to assess whether the substitutions proposed by the government for the documents and information this Court had ruled are relevant and admissible during the CIPA Section 6(a) proceedings "provide the defendant substantially the same ability to make his defense as would disclosure of the specific classified information."[2]

---

[1] Due to the nature of the information contained in this Memorandum Opinion, it must be filed with the Court Security Officer before it can be made available for public dissemination. In addition, because this opinion contains classified information, it must be handled by the parties in accordance with the protective orders issued in this case. It is this Court's belief, however, that a substantial portion of this Opinion contains unclassified information. Therefore, the government shall forward this opinion to the proper officials for classification determinations and thereafter provide this Court with a redacted version of this opinion so it can be placed on the public docket. Such a review should be completed by December 22, 2006.

[2] The following papers have been filed in connection with this motion: (1) the Government's Motion Pursuant to CIPA Section 6(c) for Substitutions in Lieu of the Disclosure of Classified Information ("Gov't's Mot.");
(continued...)

18 U.S.C. App. III, § 6(c). For the reasons that follow, the government's motion is granted.

## I.   Background

For several months, the Court has been engaged in on-going hearings called for by the

CIPA. Earlier, the Court conducted a series of hearings over seven days to address the "use,

relevance, and admissibility" of classified information pursuant to Section 6(a) of the CIPA.

During those hearings, the Court solely relied upon the Federal Rules of Evidence in ruling on

the relevance, use, and admissibility of the classified information the defendant seeks to

introduce in support of his defense. United States v. Libby, ___ F. Supp. 2d ___, ___, 2006 WL

2692749, at *1 (D.D.C. Sept. 21, 2006). Then, on November 15, 2006, this Court issued a

Memorandum Opinion memorializing its Section 6(a) rulings. United States v. Libby, ___ F.

Supp. 2d ___, 2006 WL 3461482 (D.D.C. Nov. 15, 2006) (redacted version). Having concluded

---

²(...continued)

(2) the Response of Defendant I. Lewis Libby to Government's First Set of Proposed Substitutions; (3) Government's Supplemental Motion Pursuant to CIPA Section 6(c) For Substitutions In Lieu of Disclosure of Classified Information; (4) Response of Defendant I. Lewis Libby to Government's Proposed Substitutions as Revised; (5) Memorandum of I. Lewis Libby Regarding CIPA Exhibits 100, 178, and 71; (6) Government's [Second] Supplemental Motion Pursuant to CIPA Section 6(c) For Substitutions in Lieu of Disclosure of Classified Information ("Gov't's Supp. Mot."); (7) Response of Defendant I. Lewis Libby to Government's December 4 Revised Substitutions ("Def.'s Response"); and (8) Response of Defendant I. Lewis Libby to Government's In Camera Declaration Dated December 7, 2006. This Court will primarily reference these last three documents in this opinion. In addition to those papers, the government has submitted to the Court on for its in camera and ex parte review several affidavits pursuant to CIPA Section 6(c)(2).

In addition, the parties have filed the following legal memoranda: (1) Memorandum of Defendant I. Lewis Libby on Legislative History of CIPA Substitution Provision and (2) Response to Memorandum of Defendant on Legislative History of CIPA Substitution Provision. Moreover, the Court has been provided with a number of binders during the Section 6(c) proceedings, including: (1) a binder containing all of the government's proposed substitutions for the topic narratives and memory defense documents, with the exception ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (2) a binder containing all of the government's proposed substitutions ▮▮▮▮▮ (3) a binder containing all of the government's proposed substitutions for the case-related documents; and (4) a binder containing all of the government's proposed substitutions for the memory defense documents as of December 4, 2006. The Court's citation to these documents will primarily be confined to the documents contained in this last binder because it contains the most recent versions of the proposed substitutions.

PENDING CLASSIFICATION REVIEW

the hearings conducted pursuant to Section 6(a), and in response to the government's motion

pursuant to Section 6(c) of the CIPA, the Court then commenced a series of hearings to

determine whether non-classified information and documents can be properly substituted for the

classified information this Court deemed relevant and admissible during the Section 6(a)

proceedings. The Section 6(c) hearings commenced on November 7, 2006, and concluded on

November 29, 2006. Throughout the course of these proceedings, and in response to this Court's

preliminary rulings, the government provided revised versions of proposed substitutions. The

government's final submission of proposed substitutions was provided to the Court on December

4, 2006.[3] It is these final substitutions, some of which have been revised at various times

throughout the CIPA Section 6(c) proceedings, that are the subject of this opinion.

## II.    Discussion

### A.    The Section 6(c) Standard

The CIPA establishes the procedures for providing pretrial notification of a defendant's

intent to use classified information at his trial and the process for determining exactly what

information the defendant will be permitted to introduce as evidence. United States v.

Fernandez, 913 F.2d 148, 151 (4th Cir. 1990). It was enacted to "permit the government to

ascertain the potential damage to national security of proceeding with a given prosecution before

trial." S. Rep. No. 96-823, at 1 (1980), reprinted in 1980 U.S.C.C.A.N. 4294, 4294. This Court

has devoted substantial time and paper discussing the various statutory provisions of the CIPA

and the standards that this Court will employ when presented with motions covered by these

---

[3] In response to further inquiry by this Court, additional substitutions were provided to the Court and the
defendant on December 7 and December 8, 2006.

provisions.  See, e.g., United States v. Libby, 429 F. Supp. 2d 18 (D.D.C. 2006), amended by 429

F. Supp. 2d 46 (D.D.C. 2006) (discussing Section 4 of the CIPA); United States v. Libby, ___ F.

Supp. 2d ___, 2006 WL 2692749 (D.D.C. 2006) (discussing Section 6(a) of the CIPA).  And

now the Court turns to Section 6(c) of the CIPA.

      Section 6(c) of the CIPA provides:

> (1) Upon any determination by the court authorizing the disclosure of specific
> classified information under the procedures established by this section, the United
> States may move that, in lieu of the disclosure of such specific classified
> information, the court order —
>
>     (A) the substitution for such classified information of a statement
> admitting relevant facts that the specific classified information would tend
> to prove; or
>     (B) the substitution for such classified information of a summary of the
> specific classified information.
>
> The court shall grant such a motion of the United States if it finds that the
> statement or summary will provide the defendant with substantially the same
> ability to make his defense as would disclosure of the specific classified
> information.  The court shall hold a hearing on any motion under this section.
> Any such hearing shall be held in camera at the request of the Attorney General.

18 U.S.C. App. III, § 6(c) (emphasis added).  Although this provision, on its face, allows this

Court to replace relevant classified information with either "a statement admitting relevant facts

that the specific classified information would tend to prove" or "a summary of the specific

classified information," so long as the substitute "will provide the defendant with substantially

the same ability to make his defense," id., Congress made clear that this provision "rests on the

presumption that the defendant should not stand in a worse position, because of the fact that

classified information is involved, than he would without this act."  S. Rep. No. 96-823, at 9

(1980), reprinted in 1980 U.S.C.C.A.N. 4294, 4302; see United States v. Moussaoui, 382 F.3d

453, 477 (4th Cir. 2004); Fernandez, 913 F.2d at 154. However, Congress' intention was not to require that the evidence the Court permits a defendant to present in support of his defense be the "precise, concrete equival[ent]." H.R. Conf. Rep. No. 96-1436, at 12 (1980), reprinted in 1980 U.S.C.C.A.N. 4397, 4310. In fact, as just noted, the plain language of the statute provides two methods through which substitutions can be made—a statement admitting relevant facts or a summary of the classified information. 18 U.S.C. App. III, § 6(c). Thus, the Court is not limited in the manner in which it permits substitutions, so long as the approved substitutions "provide the defendant with substantially the same ability to make his defense." 18 U.S.C. App. III, § 6(c); see, e.g., United States v. Collins, 603 F. Supp. 301, 304 (S.D. Fla. 1985) ("It does not follow, however, that because the evidence is relevant that it is necessarily admissible in the form offered."); see also United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984). Moreover, "[t]he fact that insignificant tactical advantages could accrue to the defendant by the use of the specific classified information should not preclude the court from ordering alternative disclosure." H.R. Conf. Rep. No. 96-1436, at 12-13 (1980), reprinted in 1980 U.S.C.C.A.N. 4307, 4310-11; see United States v. Juan, 776 F.2d 256, 259 (11th Cir. 1985) ("The court may find that a 6(c) alternative proposed by the government will provide the defendant with his defense, even though the defendant might rather threaten his prosecutor with the disclosure of more detail."). Thus, the statute contemplates that the Court will permit a substitution even if it is not the exact means through which the defendant prefers to introduce the evidence. However, the statutory language makes explicitly clear that to be adequate, the government's proposed substitutions must "provide the defendant with substantially the same ability to make his defense as would

disclosure of the specific classified information." 18 U.S.C. App. III, § 6(c).

While the government must, of course, assert a national security interest to employ the protections of the CIPA, under Section 6(c) the assertion affords it only the opportunity to propose redactions or substitutions for the classified information the defendant desires to use. 18 U.S.C. App. III, § 6(c)(2) ("[t]he United States may . . . submit to the court an affidavit . . . certifying that disclosure of classified information would cause identifiable damage to the national security of the United States"). After that, the assertion of a national security interest drops out of the Section 6(c) picture and the Court must focus exclusively on whether the redacted or substituted version of the classified information the government proposes the defendant use provides the defendant with substantially the same defense that he desires to present. Accordingly, when making an assessment under CIPA Section 6(c), the Court should not take into account or balance the government's national security interest in protecting the classified information from disclosure. Rather, the statute makes clear that the Court's only inquiry is whether the proposed substitutions provide the defendant substantially the same ability to present his defense. 18 U.S.C. App. III, § 6(c).[4]

There is no existing written case authority describing the lens though which a Court

---

[4] For the Court to engage in a balancing of the government's national security interest against the defendant's right to present his defense, as the government posits, would take the Court into an extremely dangerous legal landscape. Employing such an analysis would necessarily require the Court to assess the importance of the government's national security determination. Such an inquiry would be equivalent to the Court weighing the significance of the classified information, which would in effect call into question whether the government's classification decisions are proper. The District of Columbia Circuit has instructed that such decisions are entitled to substantial deference by a court as long as they are supported by proper affidavits. Cf. Halperin v. CIA, 629 F.2d 144, 147-48 (D.C. Cir. 1980) (concluding a Court should not "conduct a detailed inquiry to decide whether it agrees" with an agency's classification decision in a Freedom of Information Act action if that decision is supported by proper affidavits). Such affidavits have been submitted to the Court in this case.

should look to determine whether a proposed substitution "will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." 18 U.S.C. App. III, § 6(c). Despite this absence of authority, the Court is not completely without guidance. It is axiomatic that a court should interpret a statute in a manner so "as to avoid constitutional questions." See Fed. Election Comm'n v. Akins, 524 U.S. 11, 32 (1998) ("[t]he doctrine of constitutional doubt . . . counsels us to interpret statutes, if possible, in such fashion as to avoid grave constitutional questions."); see also United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408 (1909). Accordingly, when construing Section 6(c) of the CIPA, the Court must try, if possible, to interpret the provision in a manner that does not infringe on the constitutional rights of a criminal defendant embodied in the Sixth Amendment. In fact, the legislative history of the CIPA makes clear that the drafters of this subsection were careful to ensure that a defendant's rights were not substantially altered. See H. Rep. No. 96-831, pt. 1, at 20 (1980) (Congress adopted the "substantially the same ability to make his defense" standard "to make it clear that alternate disclosure was to be allowed only if the court found that it was, in effect, equivalent disclosures."); H. Rep. No. 96-831, pt. 2, at 6 (1980) (noting that this provision "does not mean to suggest that any hardship to the defense should be permitted . . . . It is the Committee's intent that there be no impairment of either the defendant's ability to present his case or his right to a fair trial as a result of the operation of this section"). Therefore, the standard Congress codified must be construed in a manner that is consistent with the protections provided in the Sixth Amendment. Thus, examining a criminal defendant's right to present a defense generally will help place into context whether a proposed

PENDING CLASSIFICATION REVIEW

7

substitution affords him "substantially the same ability to make his defense." 18 U.S.C. App.,

§ 6(c). If the substitution infringes on the defendant's Sixth Amendment rights, the substitution

is inadequate.

It is a fundamental guarantee of the Sixth Amendment to the Constitution that a criminal

defendant has the right to present a defense to the charges he is facing. Taylor v. Illinois, 484

U.S. 400, 409 (1988) (citing Washington v. Texas, 388 U.S. 14, 19 (1967)). This fundamental

right includes "the right to present the defendant's version of the facts . . . to the jury so it may

decide where the truth lies." Washington, 388 U.S. at 19. However, "[a] defendant's right to

present relevant evidence is not unlimited, but rather is subject to reasonable restrictions. A

defendant's interest in presenting such evidence may thus 'bow to accommodate other legitimate

interests in the criminal trial process.'" United States v. Scheffer, 523 U.S. 303, 308 (1998)

(internal citations omitted). "But restrictions of a defendant's right to testify may not be arbitrary

or disproportionate to the purposes they are designed to serve." Rock v. Arkansas, 483 U.S. 44,

55-56 (1987). In fact, procedural and evidentiary rules that control the presentation of evidence

may not compromise a defendant's Sixth Amendment rights. Chambers v. Mississippi, 410 U.S.

284, 295 (1973). Therefore, "[i]n these circumstances, where constitutional rights directly

affecting the ascertainment of guilt are implicated, [evidentiary rules] may not be applied

mechanistically to defeat the ends of justice." Id. at 302. Thus, the Supreme Court has "found

the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has

infringed upon a weighty interest of the accused." Scheffer, 523 U.S. at 308. Accordingly, a

court "may not apply a rule of evidence that permits a witness to take the stand, but arbitrarily

excludes material portions of his testimony." Rock, 483 U.S. at 55.

The protections embodied in the Sixth Amendment are guaranteed to a defendant regardless of whether classified information is implicated in criminal proceedings. Cf. S. Rep. No. 96-823, at 9 (noting that a "defendant should not stand in a worse position, because of the fact that classified information is involved"). But, the foregoing discussion makes clear that while a defendant's right to present a defense is guaranteed under the Constitution, that right is not absolute. In this regard, courts frequently limit the presentation of a defendant's defense based on the Federal Rules of Evidence. See, e.g., Fed. R. Evid. 403 ("Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time"); see also United States v. Dunn, 846 F.2d 761, 763 (D.C. Cir. 1988) (noting that a trial court has broad discretion to exclude cumulative evidence). For example, the test under Rule 403 allows a court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice [or] confusion of the issues." Fed. R. Evid. 403. And the Ninth Circuit has developed a balancing test to assess whether the exclusion of otherwise relevant evidence violates a defendant's Sixth Amendment right to present a defense. Under that test, a court should balance the following five factors to assess whether a Sixth Amendment violation has occurred: "(1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense." Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004) (citing Miler v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985).

From the foregoing discussion, it is clear that the Court may in some circumstances limit a defendant's ability to present his defense in the precise manner that he wishes, even if the evidence he seeks to introduce is relevant to his defense. And just as otherwise relevant evidence can be excluded under, for example, Rule 403, otherwise relevant evidence may also be excluded from substitutions under CIPA Section 6(c), so long as the exclusion of such evidence still permits the defendant to present a defense that is substantially the same as he would have been able to present with the classified information. Accordingly, the CIPA Section 6(c) standard should not be interpreted as a proscription against the exclusion of any item of classified information deemed relevant and admissible in its entirety. In other words, the Section 6(c) analysis does not require the Court to engage in a numbers game; a one-for-one substitution for every item of classified information the defendant desires to disclose is therefore not required. Such a result is consistent with the dictionary definition of "substantial" as meaning "of or pertaining to the essence of a thing; essential, material, or important." Webster's Encyclopedic Unabridged Dictionary 1897 (1st ed. 2001). And, it is consistent with how other courts have interpreted the word "substantial" in other contexts. See, e.g., Deering Precision Instruments v. Vector Distribution Sys., 347 F.3d 1314, 1322 (Fed. Cir. 2003) (recognizing that the term "substantially" is a "term of approximation or a term of magnitude"); Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 565 (4th Cir. 1994) (stating that "substantial compliance is less than actual compliance"); State v. Trust the People, 113 P.3d 613, 620 (Alaska 2005) (concluding "that a legislative act is 'substantially the same' as the initiative it seeks to supersede if 'in the main the legislative achieves the same general purpose as the initiative and accomplishes that

purpose by means or systems which are fairly comparable'") (citation omitted). Thus, to assess

whether the government's proposed substitutions provide the defendant with substantially the

same ability to present his defense, the Court must first examine the nature of the defendant's

defense and then analyze whether the defendant will have the same ability to present that defense

to the jury with the substitutions and any other evidence he has available to him.

**B.**   **Legal Analysis**

In examining the substitutions provided by the government with this framework in mind,

this Court must conclude that the substitutions now proposed by the government, coupled with

the other evidence available to him, will provide the defendant with substantially the same

arsenal to present his defense and therefore do not infringe on his Sixth Amendment rights.

The government has proposed substitutions for the classified information utilizing both

CIPA Section 6(c)(1)(A) and (B). First, the government's proposed substitutions include a

lengthy statement admitting, in essence, that the defendant worked long hours, attended many

significant meetings, and dealt with a wide variety of extremely important matters of national

security. Gov't's Supp. Mot., Attach. C.[5] Moreover, this statement specifies that some of those

extremely sensitive matters included (1) "monitoring information concerning terrorist threats to

the United States, both at home and abroad, including but not limited to, threats from the groups

al Qaeda and Hezbollah"; (2) "monitoring homeland security preparedness"; and (3) "monitoring

information concerning foreign countries seeking to develop nuclear weapons, particularly, bot

---

[5]   The initial statement has since been expanded during the course of the Section 6(c) proceedings to provide the defendant with significantly more than originally proposed. And the government has notified the Court that it has no objection to the defendant's testifying about the information contained in this proposed statement.

PENDING CLASSIFICATION REVIEW

11

not exclusively, North Korea and Iran." Id. In addition, the government proposed substitutions for all of the topic narratives and classified documents this Court concluded were relevant and admissible during the CIPA Section 6(a) proceedings.[6] As noted, in assessing whether these substitutions are adequate, the Court must examine the nature of the defendant's defense and any other evidence proffered in furtherance of this defense to determine whether the government's proposed substitutions provide the defendant substantially the same ability to present his defense as would the actual classified information.

The defendant's faulty memory defense has both quantitative and qualitative components. In other words, he is alleging both that the volume of his work would have impacted his memory and that some of the information presented to him as the Vice President's National Security Advisor was so potentially catastrophic to the well being of the country that the focus he had to devote to this information also impacted his memory. If the defendant's defense was focused solely on the quantity of information that came to his attention and the volume of his work, the substitutions provided by the government would undoubtedly suffice. This is especially true because the defendant can introduce as evidence, in addition to the proposed substitutions, among other things, his daily calendars, the number of days per week he worked, the hours he worked, and the number of meetings he attended. However, volume is not the extent of the defendant's defense. Rather, he contends that at the time of various critical dates alleged in the indictment and thereafter during the time before he spoke to the FBI agents and testified before

---

[6] The government has also proposed an instruction to be read to the jury should the defendant decide to testify. Gov't's Mot. at 11. Moreover, the government proposed substitutions for all of the documents relating to Joseph Wilson's trip to Niger, and the parties were able to resolve all of the outstanding issues as to those documents. Accordingly, the Court need not address them in this opinion.

PENDING CLASSIFICATION REVIEW

the grand jury, he was consumed with matters of such importance to the security of this nation that any mistakes he may have made in remembering his earlier conversations with the various news reporters were inadvertent and not the product of wilful disinformation. Specifically, the defendant anticipates that this portion of his testimony will include a discussion of nine different topic areas including: (1) threatened attacks on America and American interests by Al Qaeda, Hezbollah, and other terrorist groups; (2) enhancement of the United States' defenses for Homeland Security; (3) nuclear proliferation by Pakistani scientist A.Q. Khan and efforts by the United States to stop his activities; (4) the development of nuclear weapons by North Korea; (5) Iran's development of nuclear weapons, its arrest and potential harboring of Al Qaeda members, and its involvement in Iraq; (6) the proper size and role of the Iraqi military and security forces in the months following the fall of Saddam Hussein's regime and the proper composition of the governing entity in Iraq; (7) the Israel-Palestine relationship, including the emergence of Mahmoud Abbas (Abu Mazen) as an alternative to Yasser Arafat and the threat that Hamas posed to peace and security; (8) a tense diplomatic crisis that arose during the first half of July 2003 resulting from the arrest of Turkish soldiers in Iraq by the United States military; and (9) the unrest in Liberia in June and July 2003, culminating in the ousting of President Charles Taylor from office in early July 2003, the danger to the United States Embassy and its occupants in Monrovia, Liberia, and the United States' role in protecting civilians caught in the middle of the Liberian conflict. Thus, to determine whether the government's proposed substitutions are appropriate, the Court had to examine whether those substitutions will qualitatively provide the defendant with substantially the same ability to present his defense as would disclosure of the

classified information itself.

In making this determination, it is also helpful to set forth the scope of the defendant's testimony with the government's proposed substitutions. Within each of these nine topics areas, the defendant would seek to testify to a dizzying panoply of classified information which shows, often in great detail, what, within each of these subject areas, allegedly consumed his time and attention. And as to each date that is critical to both the prosecution and the defense of this action, the defendant seeks to saturate the jury with the various things that consumed his attention on a given day. This information is contained in eighteen pages of topic summaries and sixty-six documents. This documentary evidence includes not only the defendant's own notes and task lists, but also ███████████████████████████████████████████████

███████ Moreover, the defendant anticipates using demonstrative evidence—"dots" on a PowerPoint presentation—to show that during the time periods critical to the indictment he was presented with several hundred other pieces of classified information. And in addition to the classified information, the defendant will undoubtedly have unclassified information as well, such as his daily calendars, to show what events demanded his time. According to the defendant, all of the classified information he desires to present will be used to support his memory defense.

Despite this Court's belief that a one-for-one substitution is not required under the CIPA, in order to ensure the defendant had substantially the same ability to present his defense, the Court and the parties engaged in a document-by-document dialogue during the course of the CIPA Section 6(c) proceedings. Through this dialogue, the parties worked with the Court to alter the language in certain documents to create adequate substitutions. The overwhelming majority

of disputes were resolved amicably in this manner. And while both parties continue to maintain

objections to some substitutions accepted by the Court during these proceedings, the record as to

those matters has been made and rulings have been rendered. Accordingly, the Court need not

engage in further discussion of those classified documents and the information contained

therein.[7] Rather, the remainder of this opinion will focus on the topics addressed in the revised

substitutions that were submitted to the Court after the conclusion of the CIPA Section 6(c)

hearings. These substitutions concern five issues related to: (1) ██████ (2) ██████

(3) ████ (4) ██████ and (5) ████ The Court will discuss each topic in seriatim.

A. ██████

The defendant continues to object in two respects to the government's proposed

substitutions as they relate to classified information concerning ██████ These objections

relate to two documents—documents ████ Def.'s Response ████ The Court will

address each document in turn. As to document ██ the defendant contends that the government's

proposed substitution produced on December 4, 2006 was inadequate because it did not reflect

the Vice President's statement ████████████████████████

████████████████████████████████

In response to this objection, the government has now added the following language to

document ████████████████████████████

████████████████████████████████

████████████████████ (Fifth Revised

---

[7] Unlike the Section 6(a) proceedings, this Court is not required by statute to memorialize its findings in writing. Compare 18 U.S.C. App. III, § 6(e).

PENDING CLASSIFICATION REVIEW

Substitution).  In light of this newly revised substitution, this Court must conclude that the government's proposed substitution for document ███ provides the defendant substantially the same ability to present his defense as would the original document.  Specifically, it provides the defendant the ability to testify about ████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

The defendant also continues to object to document ███ The proposed substitution for this document reads: ████████████████████████████████████████

████████████████████████████ As to this document, the defendant contends that the proposed substitution is insufficient because, as drafted, it does not permit the defendant to link the information contained in document ███ to document ███ Specifically, the defendant desires to testify that ██████████████████ referenced in document ███ caused him to focus on the information to even a greater degree because he had previously learned that

███████████████████████████████████████████████
███████████████████████

███████████ Def.'s Response ███ The Court agrees that the defendant cannot make the link he wants with the substitutions as proposed by the government.  However, for the

---

[1] As of December 7, 2006, the defendant continued to object to the substitution for this document, claiming that it is "inaccurate and inadequate" as the substitution makes it appear that the Vice President expressed concern ███████████████████████████████████████████████ Response of Defendant I. Lewis Libby to Government's In Camera Declaration Dated December 7, 2006 at ███ In light of the government's fifth revision of this document delivered to the Court on December 8, 2006, this position no longer has merit.

reasons that follow, the Court concludes that the substitution proposed by the government will nonetheless provide the defendant substantially the same ability to present his defense.

First, it is important to recognize that the government's proposed substitution for document ███ provides the defendant the ability to testify concerning the substance of what the document originally states. The pertinent portion of document ████████████ ████████ reads in its original form:

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

The clear import of this information is ████████████████████████ ███████████████████ This is exactly the information that is conveyed in the government's proposed substitution. See Doc. ████████████ Admittedly, the government's proposed substitution does not provide ████████████████ As such, the defendant, during his testimony, would not be able to link this threat to the other information he had received about ████████████ However, the defendant's inability to ████████ will not materially impact his defense.

As noted, the threat information contained in document ████████████████ ████ According to the defendant, ████████████ and in fact that entire week, is critical to this case. In this Court's November 15, 2006 opinion, the Court recognized as much. Libby, ___ F. Supp. 2d at ___, 2006 WL 3461482, at *5 (concluding that the week of July 6-12, 2003 "is

critical to the case, and the events occurring during this week are relevant and highly probative"). However, as this Court repeatedly stressed throughout the CIPA proceedings, the events of some dates are more probative than the events of other dates. For example, the dates on which the defendant spoke with the FBI Special Agents and testified before the grand jury are critical, as the statements made by the defendant on those occasions form the basis for the charges in the indictment. Equally important are the events which occurred on the dates when the defendant spoke with Matthew Cooper, Judith Miller, and Tim Russert. It is the substance of these conversations that form the predicate for the defendant's alleged misstatements to both the FBI Special Agents and the grand jury. And finally, while the dates immediately surrounding these key events and the dates on which other conversations occurred that would support either the prosecution or defense of this action are important, they are not as significant as the other two categories. The events on these dates, however, do have an enhanced level of importance compared to events that fall outside of any of these three categories.

On July 11, 2003, the defendant allegedly spoke with Karl Rove, "who advised LIBBY of a conversation [he] had earlier that week with columnist Robert Novak in which Wilson's wife was discussed as a CIA employee involved in Wilson's trip." Indictment at 8, ¶ 21. This is the only conversation cited in the indictment that occurred on this date.[9] While this conversation is no doubt important to the prosecution and defense of this action, the conversation that occurred

---

[9]  Admittedly, the defendant informed the FBI Special Agents investigating the disclosure of Valerie Wilson's affiliation with the CIA that he spoke with Tim Russert on either July 10 or 11. Indictment at 9, ¶ 26.a. The indictment, however, alleges that this conversation took place on July 10, 2003. Id. at 7, ¶ 20. Since the events that occurred on July 10 (and not July 11) form the basis for some of the charged offenses, those events have greater relevance to the defendant's defense.

at that time is not one of the conversations during which the defendant allegedly made false statements to the FBI Special Agents or the grand jury. Nor is July 11 a date on which the defendant had the conversations with the news reporters that form the predicate for the allegedly false statements made to the FBI Special Agents and the grand jury. While what happened on July 11 is important—as it demonstrates that the defendant had been provided information concerning Valerie Wilson on that date—it is not, by any stretch, one of the most critical dates in the indictment. Moreover, according to the indictment, the defendant had a number of conversations concerning Ambassador Joseph Wilson and his wife with executive branch officials. See Indictment at 4-5, ¶¶ 4-7, 9, 11. Accordingly, the information the defendant was exposed to on July 11 is even less significant, since the government will present evidence of similar conversations that occurred at other times, which purportedly demonstrate his knowledge of Valerie Wilson when he spoke to the reporters. And while the defendant must be able to testify as to what information would have purportedly consumed his time and attention on this date, especially since this date falls between two critical dates—the days he spoke with Russert, and then Cooper and Miller, Indictment at 7-8, ¶¶ 20, 23-24—the level of detail he will be permitted to present to the jury as proposed by the government will be sufficient to demonstrate why his memory might have been impaired.

Moreover, based upon the substantial amount of information noticed by the defendant in his Section 5 CIPA filing, and the vast quantity of information this Court has concluded is relevant and admissible during the Section 6(a) proceedings, the defendant will undoubtedly be able to put before the jury a substantially identical version of what information he was consumed

with ███████████████████████████████████████

████████████  The defendant can testify that the intelligence he received, as

National Security Advisor to the Vice President, ████████████████ and that he

took the information provided to him very seriously. Libby, ___ F. Supp. 2d at ___, 2006 WL

3461482, at *8. Thus, when he received intelligence information during his intelligence

briefings, he paid close attention to it. ████████████████████████████

████████████████████████████████████████████

And, the defendant can state that he was briefed

████████████████████████████████████████████

████████████  In addition to this classified information, the defendant will be able

to testify that on July 11, he was scheduled to attend a Senior Staff meeting, meet with the Vice

President, attend a meeting with the Vice President and Josh Bolten, and attend a meeting with

the Vice President and then-Secretary of Defense Donald Rumsfeld. Moreover, his calendar

appears to reflect a notation that he worked on a statement for George Tenenet regarding uranium

and had meetings with the Vice President and Stephen Hadley. This is in addition to any other

unclassified evidence that the defendant may present to show what consumed him on this day,

such as the volume of his work. ████████████████████████████

████████████████  will simply not diminish his ability to present his defense to

the jury.

        The Court's conclusion is further bolstered when one examines all of the information that

the defendant alleges consumed his attention during that critical week of July 6-12, 2003. Within

PENDING CLASSIFICATION REVIEW

20

this week the defendant will testify to fifteen different terrorist threats he reviewed. See, e.g.,



In addition to this information, the defendant will also testify

about the information                            on which he was briefed

(July 7, 2003)

(July 8, 2003)

(July 9, 2003

(July 10, 2003)

All this is in addition to the defendant's notes and task lists from that

week, the topic narratives discussing his activities during that week, including the diplomatic

PENDING CLASSIFICATION REVIEW

"crisis" with Turkey that occurred during this period, Gov't's Supp. Mot., Attach. C, Topic 8, his personal calendars, and other unclassified evidence. With all of this, the government's proposed substitution ███████████████████████████ provides the defendant substantially the same ability to present his defense as would the information contained in the original version of document ███ [10]

B.  ███████████████

The defendant seeks to testify that on June 14, July 7, and July 8, 2003, he received intelligence briefings that included information concerning (1) ███████████████████ ███████████ (2) ████████████████████ Specifically, the classified information that the defendant wishes to include would allow him to show that on these specific dates he was provided with detailed intelligence information concerning the ███████████████████ ████████████████████████████████████████████ According to the defendant, this information, along with other matters of national security, was the focus of his attention on the specific dates referenced in the indictment, including the dates on which he had conversations with Craig Schmall, a CIA briefer; Ari Fleischer, the former White House Press Secretary; David Addidington, then-Counsel to the Vice President; and Judith Miller, a New York Times reporter. Indictment at 5-7, ¶¶ 11, 16-18A. As such, the defendant suggests that he must be able to show the jury why such information was important to him and why he would have focused on this information to the exclusion of other matters he may have discussed on

---

[10] As an aside, while the defendant seeks to ████████████████████████████████ the Court notes that there is no reference in document ████████ that ████████ Accordingly, the fact that ████████ does not necessarily lead to the inevitable conclusion that ████████

those dates. As support for this proposition, the defendant seeks to testify about the content of

information ███████████████████████████████████████████████ [11]

The government has proposed the following substitutions for these documents and

substantive testimony. First, the government has included the following in its statement

admitting relevant facts:



Gov't's Supp. Mot., Attach. A. In addition, under the government's proposed substitutions, the

defendant would be able to testify that on July 7, 2003, he received information in his

intelligence briefing ████████████████████████████ Gov's Supp. Doc.

███ and on July 8, 2004 was informed, also during his ████ intelligence briefing, about

████████████████ Doc. ████ As to documents ████ and ████ this Court has no

difficulty concluding that the proposed substitutions, when read together with the statement

admitting relevant facts, provides the defendant substantially the same ability to present his

defense. Mr. Libby will be able to testify that

and that on July 7 and July 8 he received specific intelligence

██████████████████████████ " Doc. ████

Whether this substitution is adequate for document ████ however, is a closer question.

_____

[11] This Court's citation to documents is to the binder of revised substitutions provided to the Court on December 4, 2006. Unless otherwise indicated, the Court is referencing the proposed substitution, not the original document.

Document ■ is a June 14, 2003, ■ and the government's proposed substitution reads:

The proposed substitution therefore excludes any reference ████████

████████ For the reasons that follow, however, the Court must conclude that this omission does not prevent the defendant from putting on substantially the same defense as he otherwise would were the classified information available to him.

First, document ■ is dated June 14, 2003. According to the indictment,

On or about June 14, 2004, LIBBY met with a CIA briefer. During their conversation he expressed displeasure that CIA officials were making comments to reporters critical of the Vice President's office, and discussed with the briefer, among other things, 'Joe Wilson' and his wife 'Valerie Wilson,' in the context of Wilson's trip to Niger.

Indictment at 5, ¶ 11. While this conversation is no doubt important to the prosecution and defense of this action, the conversation that occurred on this date is not one of the conversations during which the defendant allegedly made false statements to the FBI Special Agents or the grand jury. Nor is this one of the dates on which he had the conversations with news reporters that form the predicate for the allegedly false statements made to the FBI Special Agents and the grand jury. Rather, on this date, the defendant allegedly discussed "Valerie Wilson" and "Joe Wilson" with a CIA briefer. Indictment at 5, ¶ 11. While what happened on this date is important because it demonstrates that the defendant had been provided information concerning Valerie Wilson before he spoke to the reporters, it is not, by any stretch, one of the most critical dates in the indictment. Moreover, according to the indictment, in the days leading up to June 14, 2003, the defendant had a number of conversations concerning Ambassador Joseph Wilson and his wife with officials in the Bush Administration. See Indictment at 4-5, ¶¶ 4-7, 9.

Accordingly, the information the defendant was exposed to on this particular date is even less significant since similar conversations demonstrating his knowledge of Valerie Wilson also occurred on other occasions.

Admittedly, the government's proposed substitution does not permit the defendant to testify that document ▓ contained intelligence concerning ▓▓▓▓▓▓▓▓▓▓▓ as it merely refers to ▓▓▓▓▓▓▓▓▓

▓▓▓ However, the defendant is permitted to testify that on June 14, when he received his intelligence briefing, he ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Gov.'t's Supp. Mot., Attach. A. This is more than sufficient to show the jury what was consuming his time and attention both during that day, and more particularly during his intelligence briefing. And as long as the government's substitution make clear, as it does, that the defendant was concerned about this information while receiving his intelligence briefing, the defendant need not communicate to the jury that ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

It is also important to note that this substitution must be considered in conjunction with everything else the defendant will assert consumed his time and attention on June 14, 2003. Specifically, he will assert that during his intelligence briefing on that day, he was given threat information ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

PENDING CLASSIFICATION REVIEW

In addition, his June 14 intelligence briefing included information

regarding a ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████ Moreover, as discussed in more detail in later sections of this opinion, the days

surrounding June 14, 2003, were filled with similar briefings containing even more highly

sensitive information that the defendant alleges were also the focus of his attention. And, it

cannot be overlooked that the defendant will also be able to present his daily calendar for June 14

and the surrounding days, along with other unclassified evidence such as the Power Point

presentation indicating the volume of classified and highly sensitive information the defendant

had presented to him on a daily basis.

Thus, even if the government's proposed substitution does not provide the defendant the

ability to present the exact testimony he seeks with regard to what he learned on June 14, 2003,

this Court must conclude that this will not meaningfully impact his ability to present his defense

because a jury will no doubt understand the full extent of how busy he was and the importance of

the information he was consuming.

C.    ███████████

The government has eventually proposed, in lieu of documentary support for the

proposition that the defendant received information that ███████████████████████████

███████████████████████████████████ the following statement, which would be added to the

statement admitting relevant facts:

███████████████████████████████████████████████████████████████████

PENDING CLASSIFICATION REVIEW

The defendant continues to object to this substitution. Def.'s Response at ███ Specifically, the defendant opines that this substitution would only be adequate if the defendant can testify that the ████████████████████████████████████[12] Id. Without the ability to present this fact, the defendant posits that he will not be able to explain the "urgency of the threat posed by ████████ situation. Def.'s Response at ███ This Court cannot agree.

The subtle difference between the government's proposed substitution and the defendant's language is inappreciable. There is no doubt that a jury will comprehend the urgency the defendant would have experienced upon the receipt of credible information that ████████████████████████████████████████████ Moreover, although the language of the substitution does not track exactly the language requested by the defendant, the clear import of what was communicated to the defendant is apparent. There can be no doubt that the only rational inference that can be derived from the revelation that ████████████████████████████████████████ Moreover, this statement must be examined through the lens of everything else the defendant will testify about regarding ████████████ See Gov't's Supp. Mot, Attach. C, ████████████████████████████████████ Doc. ████████████████████████████████████

---
[12] The defendant also objected to the statement when it did not indicate that ████████████ ███ The government's December 7, 2006 proposed substitution has resolved that omission.

PENDING CLASSIFICATION REVIEW

27



And, it must be viewed from the perspective of why such an attack was a concern to the defendant. See Doc

While the defendant might prefer his words of choice over those of the government, that is not the standard under Section 6(c) of the CIPA, and this Court must conclude that the substitution proposed here provides the defendant substantially the same ability to present his defense. See supra at pages 4-6.

D.

The government has devoted considerable effort to devising acceptable substitutions concerning                                   During the earlier Section 6(c) hearings, the Court approved the government's proposed substitution relating to the

The Court concluded that the government's proposed substitution, which reads that

Gov't's Supp. Mot., Attach. C                     provided the defendant with substantially the same ability to present his defense as would his ability to testify that

█████████ However, the Court noted that the government's proposed substitution did not

adequately address the defendant's concern regarding █████████████████████████

████████████████████████████████████████████████████████

█████████████████ To address this concern, the government has now added the following

language to its proposed substitution for the narrative summary of topic area █████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

The defense maintains its objection to even this language, asserting that it "underestimates the

extent of Mr. Libby's concerns about █████████████████████████████████

██████████████████████████████

█████████ Def.'s Response at █████ This Court rejects the defendant's position.

First, this Court has already concluded that the defendant does not need to testify about

████████████████████████████████████████ adequately present his defense. By

demanding language that states that the defendant was concerned with ████████████████

█████████████████████ the defendant seeks to circumvent this Court's earlier ruling. In

addition, the language proposed by the government provides the defendant the ability to testify to

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████ Such testimony will place before the jury

exactly what the defendant wants them to understand— ████████████████████████



While the jury will not be presented with one subtle nuance ███ it will undoubtedly understand why these considerations allegedly consumed the defendant's time and attention, especially when coupled with the other ███ pages of narrative text contained in the narrative summary of topic area ███ which includes a lengthy discussion of ███

Gov't's Supp. Mot, Attach. C., ███ In addition to the narrative summary of topic ███ the defendant will be able to provide further support concerning the focus he devoted to ███ situation through the use of the information contained in documents ███ Taken together, the defendant is well positioned to present this aspect of his memory defense to the jury. Accordingly, the government's substitution on this matter provides the defendant substantially the same ability to present his defense.

The defense also continues to object to document ███ This document, a July 10, 2003 ███ concerned the ███ For this entry, the government has proposed the following substitution: ███ In response, the Court indicated that it had difficulty accepting this proposed substitution because it did not provide the defendant the ability to testify

PENDING CLASSIFICATION REVIEW

30

that before July 10, 2003, he had received information indicating a concern that ███████████ ████████████████████████████████████████ and that during the July 10 intelligence briefing he received further information that caused him concern ████████████████ The government has not proposed additional substitutions for this document. Nonetheless, the Court has ultimately concluded for the following reasons that the substitution as provided by the government provides the defendant substantially the same ability to present his defense.

First, the defendant is able to testify that on July 10, 2003, he was briefed on, among other things, the ████████████████████████████████████████████ In addition, he can state ████████████████████ that, among other things,:

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Gov't's Supp. Mot., Attch. C, ████████ Thus, although the defendant cannot state that ███████████████ he received information that ████████████████████████████ he is nonetheless permitted to testify that on July 10, 2003, he received information in an intelligence briefing concerning ████████████████████ and then tell the story outlined above. Thus, he is able to essentially present the entire story to the jury and show why this information was of significant concern to him.

Admittedly, July 10, 2003, is a critical date in the indictment, as it is on this date that the

PENDING CLASSIFICATION REVIEW

defendant allegedly spoke with NBC Washington Bureau Chief Tim Russert, and possibly Karl Rove. Indictment at 7-8, ¶¶ 20-21. However, it is important to note that this is not the only classified information that the defendant received on July 10, 2003, and that he plans to use to show the jury that his time and attention were consumed by important matters of national security. Namely, in addition to the intelligence briefing raising a concern about ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the defendant will also testify that his briefing that day included information about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Moreover, he was informed about the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In addition to this information, the defendant is able to provide testimony based on the contents of the narrative statements to further develop these stories. See Topic Summary ▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ In addition, there is undoubtedly unclassified evidence, such as the defendant's daily schedule and the Power Point presentation, that will show the number and the nature of some matters that allegedly consumed his time and attention on that day. For example, the defendant's July 10, 2003 daily calendar shows him attending a Senior Staff Meeting, receiving an intelligence briefing with the Vice President, meeting with the Vice President, receiving a CIA briefing, meeting again with the Vice President and then-Secretary Ridge, and having lunch with the Vice President and Speaker of the House Dennis Hastert. Moreover, a number of other critical events occurred during the week of July 6-12, 2003,

PENDING CLASSIFICATION REVIEW

including discussions the defendant allegedly had about Valerie Wilson Plame with various

administration officials and news reporters. See Indictment at 7-8, ¶¶16-24. Thus, all of the

events during this week potentially impacted the defendant's time and attention and would have

potentially affected the accuracy of his memory. Within this period, the defendant will be able to

introduce evidence of information he received during five intelligence briefings, which included

a discussion of no less than nineteen different topics. See Doc.          (July 7, 2003

(July 8, 2003          (July 9, 2003          (July 10, 2003          and          (July 11, 2003

          Moreover, the defendant will be able to testify about fifteen separate terrorist threats he

was briefed on. See Doc          (discussing one terrorist threat from the July 7, 2003

(discussing five threats from the July 8, 2003          (discussing three terrorist threats from

the July 9, 2003          (discussing two terrorist threats from the July 10, 2003

(discussing two terrorist threats from the July 11, 2003          and          (discussing two terrorist

threats from the July 12, 2003          The defendant will also be able to testify about

information contained in his personal notes from this time period. See Doc.

                              Most of these notes record

                                                  Id. In addition to the information in

these documents, the government's proposed substitutions provide the defendant the opportunity

to testify at length about this situation, which allegedly dominated his time during this week. See

Gov't's Supp. Mot, Attach. C, Topic 8.

          There can be no credible argument that the defendant does not have a vast quantity of

information at his disposal to present to the jury concerning what matters he was involved in

during this critical time period. Thus, the inability to

██████████ is inconsequential. The jury will no doubt sufficiently comprehend the extent of

the defendant's work demands that allegedly called for the focus of his attention. Thus, the

Court must conclude that the substitution provided by the government, coupled with the other

evidence available to the defendant, provides the defendant with substantially the same ability to

present his defense as would being able to present the classified information contained in

document ██ in its original state.

E.    ██████

On June 11, 2003, the defendant participated in a meeting which addressed, among other

things, ███████████████████████████████████ During this

meeting, the defendant's notes reflect the following entry: .



Doc ██ (original). As a proposed substitution for this entry, the government has proffered the

following:

████████████████████████████████ (second revised substitution). The

defendant maintains his objection to this proposed substitution, claiming that it does not provide

him with substantially the same ability to present his defense, in that it excludes any discussion

that ██████████████████████████████████████████

████████████████████████████████ According to the defendant's attorney's

proffer, as of the date of the entry in document ██ it was not clear ███████████

████████████████████████████████████

PENDING CLASSIFICATION REVIEW

34

██████

This Court agrees with the defendant that the proposed substitution omits a fact from what is stated in the original version of the document. And, if this Court sanctions the government's proposed substitution, the defendant will be precluded from testifying about one aspect ████████████████████ which is part of the █████ topic area on which he intends to testify— █████████████████ For the reasons that follow, however, this Court must conclude that the substitution proposed by the government will have no materially negative impact on the defendant's defense.

First, the substitution as proposed leaves the defendant with essentially what he desires to present to the jury—the ability to testify that he was engaged in discussions about █████ ████████████████████████ Moreover, the government's proposed substitution allows the defendant to testify about ███████████ ██████████████████ Because this is the activity that the defendant was advocating ████████ it seems only logical that this would take precedence over ████████████████████ While █████████ was a component of the defendant's plan, █████ was necessarily a secondary concern, since ███████████████ This conclusion is further buttressed by the fact that based upon the defense counsel's proffer, ███████ ████████████████ Thus, this Court must conclude that the proposed substitution provides the defendant with substantially the same ability to present his defense, in that it permits him to tell the jury that on June 11, 2003, he was concerned about █████████

PENDING CLASSIFICATION REVIEW

In any event, even if this Court could conclude that the possibility of

is important to his defense (which it cannot), its exclusion from the substitution

still would not materially impact the defendant's memory defense. As previously noted,

according to the indictment, on and around June 11, 2003, the defendant received information

from various government officials concerning Joseph Wilson, his trip to Niger, and his wife's

possible involvement in planning the trip. Indictment at 4, ¶ 6 ("On or about June 11, or 12,

2003, the Under Secretary of State orally advised LIBBY in the White House that in sum and

substance, Wilson's wife worked at the CIA and that State Department personnel were saying

that Wilson's wife was involved in the planning of his trip."), ¶ 7 ("On or about June 11, 2003,

LIBBY spoke with a senior officer of the CIA to ask about the origin and circumstances of

Wilson's trip, and was advised by the CIA officer that Wilson's wife worked at the CIA and was

believed to be responsible for sending Wilson on the trip."), ¶ 9 ("On or about June 12, 2003,

LIBBY was advised by the Vice President of the United States that Wilson's wife worked at the

[CIA] in the Counterproliferation Division. LIBBY understood that the Vice President had

learned this information from the CIA."). As discussed earlier, while these conversations are no

doubt important to both the prosecution and defense of this action, the conversations that

occurred on these dates are not the conversations during which the defendant allegedly made

false statements to the FBI Special Agents or the grand jury. Nor are these the dates on which

the defendant had the conversations with news reporters which form the basis for the allegedly

false statements made thereafter to the FBI Special Agents and the grand jury. Rather, on this

PENDING CLASSIFICATION REVIEW

date the defendant allegedly learned about Valerie Wilson's affiliation with the CIA. Indictment at 4-5, ¶¶ 6-9. While what happened on this date is important, it is not, by any reach, one of the most critical dates in the indictment. Moreover, the information provided to the defendant on this particular date is even less significant because similar conversations, which occurred at other times, also demonstrate his knowledge of Valerie Wilson prior to his conversations with the reporters. Indictment at 4-5, ¶¶ 6-9, 11. Thus, even though the government's proposed substitutions do not provide the defendant the ability to present every minute nuance of all the matters he considered on June 11, 2003, the restriction here will have no significant impact on his defense, especially since he received the same information on multiple other occasions.

Finally, it is important to also note that the defendant retains the ability to saturate the jury with classified information he received on June 11 and the dates immediately surrounding this date to show what was the focus of his attention at that time. Specifically, the defendant will be able to testify that on June 11, 2003, he received an intelligence briefing that discussed

He will also be able to testify that in his intelligence briefing he received information concerning "

And, he will be able to testify that he was involved in a meeting discussing Israel-Palestine relations and specifically addressing, among other things, the

PENDING CLASSIFICATION REVIEW

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████ This represents the classified information the defendant will be
able to testify allegedly consumed his attention on June 11, 2003. The defendant will also be
able to testify to similar volumes of classified information presented to him on the days
immediately before and after June 11, 2003. See Doc. ████ (June 10, 2003 task list), ████ (June 10,
2003 ████ with two terrorist threats); ████ (June 10, 2003 ████████████ with six items); ████
(June 12, 2003 meeting notes), ████ (June 12, 2003 meeting notes); ████ (action list entries for June
10-12, 2003); and ████ (June 12, 2003 ████████ with three items).[13] In addition to these
substitutions for the classified information, the defendant's narrative summaries will further
permit him to develop the "stories" and background of these various exhibits. Moreover, the
defendant will also undoubtedly present evidence of his other, non-classified activities on June
11, including the Power Point presentation showing the volume of classified information he
received on this day. And his daily calendar for the day, which is pages in length and shows that
he was scheduled to participate in fifteen separate meetings, including meetings with the
President, the Vice President, Dr. Condoleezza Rice, the Senior Staff, the National Security
Counsel Deputies Committee, Ambassador Robert D. Blackwill, Ambassador Saknab Shoval,
former Israeli Ambassador to the United States; Mr. Alexander Vondra, Deputy Minster of
Foreign Affairs for the Czech Republic, Ahmed Chalabi, Radi Naidenov, Chief of Staff to Prime
Minster of Bulgaria; Stephanie Lundberg, and Zal Khalilzad, will further support his memory
defense.

---

[13] In fact, the defendant will be able to present similar information concerning the entire week.

PENDING CLASSIFICATION REVIEW

38

There can be no serious contention that based upon this overwhelming amount of information, the defendant will be able to argue to the jury that the volume and magnitude of the important national security information presented to him on June 11, 2003, and the days immediately before and after that date, was so formidable that it is inconceivable that the accuracy of his memory would not have been impaired. And the omission of one component of one subject will simply have no bearing on the defendant's ability to substantially present this defense. Accordingly, this Court must conclude that the substitution proposed by the government on this matter comports with the demands of the Sixth Amendment.

### III.    Conclusion

When this Court began its foray into the CIPA morass in September, it could not have imagined the course of the journey it was about to traverse. During this tedious and complex expedition, this Court has strived to ensure that the defendant's right to a fair trial would be preserved. And this Court believes that due in large part to the tireless work of the parties (and this Court), the defendant's constitutionally protected right to present his defense will not be infringed by the rulings it has made. Thus, while the path this Court has followed is largely uncharted by written precedent, the Court truly believes that the balance struck by Congress when it adopted the CIPA has been achieved in this case. Accordingly, for the reasons set forth in this Memorandum Opinion, and in the oral rulings rendered during the CIPA Section 6(c) proceedings, this Court must conclude that the substitutions proposed by the government, as revised in numerous instances during the course of the CIPA Section 6(c) proceedings, will indeed provide the defendant substantially the same ability to present his defense as would the classified version of the substituted information. Accordingly, the Court will now grant the

PENDING CLASSIFICATION REVIEW

government's Supplemental Motion Pursuant to CIPA Section 6(c) for Substitutions in Lieu of

Disclosure of Classified Information.

**SO ORDERED** this 8th day of December, 2006.[14]


REGGIE B. WALTON
United States District Judge


---

[14] An Order consistent with this Court's ruling accompanies this Memorandum Opinion.

~~PENDING CLASSIFICATION REVIEW~~