UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 05-394 (RBW) |
| ) | |
| I. LEWIS LIBBY, ) | |
|     also known as "Scooter Libby," ) | |
|     Defendant. ) | |

**I. LEWIS LIBBY'S RESPONSE TO THE GOVERNMENT'S
PROPOSED JURY INSTRUCTIONS**

I. Lewis Libby, through his counsel, respectfully submits this response to the Government's Proposed Jury Instructions. "It is difficult to conceive of a more critical stage of a jury trial than the preparation and delivery of the charge." *United States v. Sloan*, 811 F.2d 1359, 1362 (10th Cir. 1987). Jury instructions frame the case for the jury, inform jurors how to deliberate, and, most importantly, ensure that the government is held to its burden. Here, the government's proposed instructions fail in all of those regards.

**ARGUMENT**

**I.     The Government's Instructions Fail To Address Certain Crucial Matters**

As an initial matter, the defense objects to the government's proposed instructions insofar as they fail to address critical issues covered by the defense's jury instructions. Those instructions should be adopted as proposed by Mr. Libby in his initial filing.

**II.    The Government's Instruction for Obstruction of Justice Understates the Required *Mens Rea* and is Overinclusive in the Conduct Reached by the Indictment.**

The instruction provided by the government for obstruction of justice suffers two deficiencies: It misstates the *mens rea* the government must prove, and it permits the jury to convict Mr. Libby based on conduct outside the scope of the indictment.

- 2 -

### A. *Mens Rea*

Section 1503 of Title 18 criminalizes "corruptly . . . endeavoring to influence, obstruct, or impede the due administration of justice." To act "corruptly" requires that one act with consciousness of one's wrongdoing. *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005). Corrupt actions are those that are "wrongful, immoral, depraved or evil." *Id.* (citing Black's Law Dictionary, Webster's Third New International Dictionary, and American Heritage Dictionary of the English Language); *United States v. Ryan*, 455 F.2d 728, 734 (9th Cir. 1972) ("[t]he word 'corrupt' in the statute means for an evil or wicked purpose"). As *Arthur Andersen* makes clear, to act "corruptly" requires a showing of some form of dishonesty. 544 U.S. at 706-07. The government must further show that the defendant acted with the specific intent to obstruct justice. *United States v. Jackson*, 607 F.2d 1219, 1221 (8th Cir. 1979) ("the word 'corruptly' means willfully, knowingly, and with . . . specific intent"); *United States v. Jackson*, 513 F.2d 456, 461 (D.C. Cir. 1975) ("an essential element of the offense [is] the intent" to bring about the obstruction); *see also Criminal Jury Instructions for the District of Columbia*, Instruction 4.81(F) (4th ed. rev. 2005) (government must show that defendant "acted with specific intent"); Fifth Circuit District Judges Association, *Pattern Jury Instructions (Criminal Cases)*, Instruction 2.65 (2001).

The government's proposed obstruction, by contrast, defines "corruptly" as "to act voluntarily and deliberately and for the purpose of improperly influencing, or obstructing, or interfering with the administration of justice." *See* Government's Proposed Jury Instructions ("Gov't Prop. Instructions") at 7. That definition severely understates the *mens rea* the government is required to prove. It would allow the jury to convict Mr. Libby for innocuous efforts to influence the grand jury's investigation, rather than only for "wrongful, immoral,

depraved or evil" efforts to do so. To ensure the government is held to its proper burden, Mr. Libby's proposed definition should be used.

Furthermore, the government's definition of "corruptly" fails to explain, as it must, that the crime of obstruction requires that one act dishonestly with the specific intent to subvert or undermine the administration of justice. *Arthur Andersen*, which involved the related crime of witness tampering, is instructive on this point. There, the district court altered the Fifth Circuit's pattern instruction for obstruction (the basis for Mr. Libby's definition of "corruptly") by removing "dishonestly" and adding language making it sufficient for the defendant to have acted for the purpose merely of "imped[ing]" the government function. 544 U.S. at 706. Because "many of the connotations [of impede] do not incorporate any 'corrupt[ness]' at all," but rather cover innocent conduct, "the 'corruptly' instructions did no limiting work whatsoever." 544 U.S. at 707. The same impermissible result is present here. The government's definition defines "corruptly" as acting to "influenc[e], or obstruct[], or interfer[e]." Gov't Prop. Instruction at 7. Both "obstruct" and "interfere" are synonymous with "impede," while "influence" merely means "to have an effect on," and does not necessarily connote causing a corrupt effect. *See Webster's Ninth New Collegiate Dictionary* 631, 816 (1989).

The government's dilution of the required *mens rea* should not be tolerated. "The court must . . . accurately define the essential elements of the offense charged." *United States v. Durades*, 929 F.2d 1160, 1167 (7th Cir. 1991). In this case, the *mens rea* is crucial. There is no doubt regarding what Mr. Libby told the grand jury; rather, what matters is why he said what he said. The jurors will have to decide whether any errors in his testimony were simply innocent failures of recollection or a conscious, criminal effort to obstruct justice. It must be made clear to the jury that to find the latter requires proof beyond a reasonable doubt that Mr. Libby

dishonestly committed a "wrongful, immoral, depraved, or evil" act with consciousness of his wrongdoing, and with the specific intent to subvert or obstruct justice. Because the government's instruction does not accomplish this, the Court should adopt Mr. Libby's proposal instead.

### B. Conduct

The government's proposed instruction also impermissibly fails to limit the actions for which Mr. Libby may be convicted to those described in the indictment. The government's instruction simply states that it must prove that Mr. Libby "misled or deceived the Grand Jury as to when or how he acquired or subsequently disclosed to the media information concerning the employment of Valerie Wilson by the CIA." Gov't Prop. Instructions at 6 (tracking Paragraph 31 of Count One of the indictment); *see id.* at 4. The indictment, however, is not nearly so broad. A more complete reading of Count One shows that it narrowly defines Mr. Libby's allegedly obstructive behavior as "materially false and intentionally misleading statements and representations," specifically regarding Mr. Libby's conversations with Mr. Russert, Mr. Cooper, and Ms. Miller. Indictment, Count I, at ¶ 32. None of this limiting detail is communicated in the government's proposed instruction.

The government should not be permitted constructively to amend the indictment by offering this broadly defined charge. *United States v. Mangieri*, 694 F.2d 1270, 1277 (D.C. Cir. 1982). The risk that the jury will venture beyond the terms of the indictment in assessing Mr. Libby's behavior is exacerbated by the fact that the jury will not receive a copy of the indictment during its deliberations. To ensure that constructive amendment does not occur, the Court should adopt Mr. Libby's instruction, which hews closely to the language that the grand jury approved.

### III. The Materiality Standard in the False Statements Instructions Should be Clarified to Prevent Consideration of Immaterial Statements.

The government's proposed instruction for false statements rests upon an improper definition of materiality. The government defines materiality as having "a natural tendency to influence, or be capable of affecting or influencing, a government function." Gov't Prop. Instruction at 12. This limited definition, however, permits jurors to nit-pick Mr. Libby's statements and convict him based on a finding that he lied about unimportant facts. That is exactly what the materiality standard is meant to prevent. *See United States v. Gafyczk*, 847 F.2d 685, 691 (11th Cir. 1988) (the materiality requirement "insure[s] that the reach of § 1001 is confined to reasonable bounds and not allowed to embrace trivial falsehoods").

To guard against such an improper result here, the instructions should make clear that a statement is material only if it had real importance or consequence to the government's investigation. *See United States v. Winstead*, 74 F.3d 1313, 1320 (D.C. Cir. 1996) (equating a material fact with an "important" fact); *see also S.E.C. v. Steadman*, 967 F.2d 636, 643 (D.C. Cir. 1992) ("'an omitted fact is material [in federal securities law] if there is a substantial likelihood that a reasonable shareholder would consider it important'") (quoting *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Mr. Libby's instruction accomplishes this; the government's does not.

### IV. The Materiality Element in the Perjury Instruction Risks Criminalizing Innocent, Immaterial Statements Only Tangentially Related to Material Issues.

The government's proffered instruction suggests that perjury is established so long as "false testimony *concerned* a matter that was material to the grand jury investigation." Gov't Prop. Instructions at 18 (emphasis added). That is incorrect.

The perjury statute could not be more clear. It criminalizes "false *material* declarations" made under oath to a grand jury. 18 U.S.C. § 1623(a) (emphasis added). No provision is made for immaterial statements. *See, e.g., Johnson v. United States*, 520 U.S. 461, 465 (1997) ("[t]he statutory text expressly requires that the false declaration be 'material'"); *United States v. Keys*, 133 F.3d 1282, 1286 (9th Cir. 1998) ("[t]he text of the statute renders criminal only false declarations that are material"); *United States v. Kiszewski*, 877 F.2d 210, 218 (2d Cir. 1989) ("[t]o violate § 1623, the false declaration must be material"); *United States v. Nixon*, 816 F.2d 1022, 1029 (5th Cir. 1987). Likewise, the alleged false statement cannot merely concern or be connected to a material issue. Yet, under the government's proposed instruction Mr. Libby could be convicted based on that finding.[1]

## V. The Government's Instructions Are Further Deficient For Failing to Educate Jurors How to Weigh Ambiguities Under *Bronston*.

Finally, the government's instructions for both the false statements and perjury charges impermissibly fail to inform the jurors how their deliberations should be affected by ambiguity in the questions asked of Mr. Libby or the answers he gave. *Bronston v. United States*, 409 U.S. 352, 362 (1973); *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994) (in false statements cases, "the government bears the burden to negate any reasonable interpretations that would make a defendant's statement factually correct" where the government's action triggering the defendant's response is ambiguous); *United States v. Milton*, 8 F.3d 39, 45 (D.C. Cir. 1993). The undisputed rule is that no crime exists if Mr. Libby truthfully answered one reasonable

---

[1] *United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980), relied on by the government, is not to the contrary. That case did not decide the propriety of using the word "concern" in describing the materiality element as opposed to using the standard definition enunciated in, *inter alia*, *Johnson*, *Keys*, and *Kiszewski*. *Id.* at 652. It therefore has no bearing on the issue presented here.

interpretation of an ambiguous question. Likewise, no crime exists if an answer by Mr. Libby was ambiguous, but one reasonable interpretation of the answer would be truthful.

"Precise questioning is imperative as a predicate for the offense of perjury." *Bronston*, 409 U.S. at 362. And the burden falls on the examiner to ensure precision, both in his questioning and in the answers obtained. *See id.* at 358. The government's instruction, however, would shift this burden to the jury and allow it to hold against Mr. Libby any ambiguity in his grand jury testimony or statements to the FBI. To prevent that from occurring, Mr. Libby's proposed instruction should be adopted.

## CONCLUSION

For the foregoing reasons, the defense respectfully requests that the Court accept Mr. Libby's Proposed Jury Instructions as written.

Dated: December 22, 2006                              Respectfully submitted,


_____/s/_____                                  _____/s/_____
Theodore V. Wells, Jr.                                William H. Jeffress, Jr.
(D.C. Bar No. 468934)                                 (D.C. Bar No. 041152)
James L. Brochin                                      Alex J. Bourelly
(D.C. Bar No. 455456)                                 (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                         Baker Botts LLP
  & Garrison LLP                                      1299 Pennsylvania Ave., NW
1285 Avenue of the Americas                           Washington, DC  20004
New York, NY  10019-6064                              (202) 639-7751
(212) 373-3089


_____/s/_____
John D. Cline
(D.C. Bar No. 403824)
K.C. Maxwell
(*pro hac vice*)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
 (415) 626-3939