UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. NO 05-394 (RBW) |
| v. | ) | |
| | ) | |
| I. LEWIS LIBBY, | ) | |
| also known as "Scooter Libby" | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
PROPOSED JURY INSTRUCTIONS**

The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, SPECIAL

COUNSEL, respectfully submits the following response to defendant's proposed jury instructions.

**INTRODUCTION**

On November 13, 2006, both parties submitted proposed jury instructions to the Court. In

their submissions, both parties proposed that the Court give the following instructions from the Bar

Association of the District of Columbia's *Criminal Jury Instructions* (4th ed. Revised 2005)(The

Red Book)("D.C. Form Instructions"):

| | | | | | |
|---|---|---|---|---|---|
| 1.02 | 2.02 | 2.06 | 2.11 | 2.52 | 2.75 |
| 1.10 | 2.03 | 2.07 | 2.13 | 2.71 | 2.76 |
| 1.16 | 2.04 | 2.08 | 2.27 | 2.73 | |
| 2.01 | 2.05 | 2.09 | 2.42 | | |

Defendant proposed that the Court give two additional D.C. Form Instructions: 1.05 (Cautionary

Instruction Prior to First Recess); and 1.11 (Evidence of Prior Consistent Statement of a Witness)

(if warranted). The government proposed that the Court give 15 additional D.C. Form Instructions:

1.07 (Questions Not Evidence); 1.08 (Expert Testimony) (if applicable); 2.10 (Direct and

Circumstantial Evidence); 2.14 (Nature of Charges Not to Be Considered); 2.23 (Testimony of

Immunized Witness) (if applicable); 2.26 (Law Enforcement Officer's Testimony); 2.28 (Defendant

as Witness) (if applicable); 2.29 (False or Inconsistent Statement by Defendant) (if applicable); 2.43

(Cross-examination of Character Witnesses) (if applicable); 2.48 (Statements of the Defendant - Substantive Evidence); 2.70 (Redacted Documents); 2.72 (Unanimity); 2.74 (Possible Punishment Not Relevant); 3.02 (Proof of State of Mind); and 3.07 ("On or about" – Proof of).

In connection with proceedings under the Classified Information Procedures Act, and the parties' motions in limine, both parties proposed additional instructions, including instructions relating to: (a) admonition regarding classified details; (b) the employment status of Valerie Plame Wilson; (c) the propriety of defendant's disclosures of portions of the October 2002 National Intelligence Estimate; and (d) the absence of charges related to defendant's disclosure of information regarding Valerie Plame Wilson.

The government has no objection to the giving of Defense Proposed Jury Instructions numbered 3, 5, 6, 9, 10 and 16. The government sets forth herein its (a) objections to certain of defendant's proposed instructions, and (b) proposed alternative instructions.

**<u>OBJECTIONS AND PROPOSED ALTERNATIVES</u>**

**I. Defense Proposed Instruction No. 1 (Pretrial Instructions)**

The defendant has proposed a modified version of D.C. Form Instruction No. 103, which the government proposed using. The government agrees to the use of defendant's modified version with four exceptions.

First, based on the procedure agreed upon in court on December 19, 2005, the reference to the jury's being introduced to witnesses should be deleted. See Def. Prop. Instr. at 5.

Second, the government objects to the proposed description of the nature of the case because it is incomplete. The government offers the following proposed description of the case:

According to the indictment, the government began an investigation in September 2003 into possible unauthorized disclosures to various reporters of classified information regarding the CIA employment of Valerie Wilson, the wife of Ambassador Joseph Wilson, in the spring of 2003. The indictment charges that, during the course of this investigation, defendant I. Lewis Libby, then Chief of Staff and National Security Advisor to the Vice President of the United States knowingly and willfully made false and material statements during two interviews with FBI agents in the fall of 2003, and that Mr. Libby knowingly and willfully provided false testimony under oath during two appearances before a federal grand jury in March 2004. The indictment further alleges that, by deliberately providing false testimony to the grand jury, Mr. Libby corruptly endeavored to obstruct the due administration of justice.

The defendant denies that he is guilty of any of the offenses charged in the indictment.

The government also objects to certain aspects of all three sets of elements instructions included in Proposed Instruction No. 1. With respect to the proposed formulation of the elements of Obstruction of Justice (§ 1503), the definition of "corruptly" is inappropriate and confusing in the context of this case. Defendant's formulation,

That Mr. Libby's act was done "corruptly," that is, that he acted knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice and with consciousness of wrongdoing.

Def. Prop. Instr. at 6, is drawn from *United States v. Arthur Andersen*, 544 U.S. 696 (2005), a case in which the Supreme Court held that the requisite mental state under 18 U.S.C. § 1512(b)(2)(A) and (B) included "consciousness of wrongdoing." The Court in *Arthur Andersen* specifically distinguished the language of § 1512(b)(2)(A) and (B) from that of § 1503, however, observing that, whereas the relevant provision of § 1512 requires that a defendant have acted both "knowingly" and "corruptly," § 1503 (and § 1505) require that a defendant merely have acted "corruptly." 544 U.S. at 706, n. 9. Thus, the Court found, analogy between § 1512 and §1503 was "inexact." *Id.* The Court emphasized that where the conduct at issue is not inherently malign, the requisite intent must

3

be clearly and separately stated in order to avoid convicting a person based on entirely innocent conduct. *Id.* at 703-707. Thus, in the context of the statute at issue in *Arthur Andersen*, in the absence of a separate requirement of "corrupt" intent, both a defendant who suggested that a witness go into hiding to avoid being subpoenaed to testify against him and an attorney who advised his client to assert his rights under the Fifth Amendment could be convicted of "persuad[ing] another person 'with intent to . . . cause' that person to 'withhold' testimony from a government proceeding." *See id.* at 703-707. In contrast, the alleged conduct involved in this case is inherently "dishonest" and improper. Knowingly making a material false statement in a matter within the jurisdiction of the executive branch cannot be innocuous, and thus it is unnecessary to add the requirement that the defendant have acted "dishonestly."

Thus, neither the holding nor the analysis of the Court in *Arthur Andersen* requires that this Court define "corruptly" using the words "dishonestly" or "with intent to subvert or undermine the due administration of justice" or "consciousness of guilt" in the context of this case. Rather, the Court should use the simpler and clearer definition of "corruptly" drawn from O'Malley et al., *Federal Jury Practice and Instructions* § 48.04 (5th ed. 2000) (hereinafter, "O'Malley") ("voluntarily and deliberately and for the purpose of improperly influencing, or obstructing, or interfering with the administration of justice") proposed by the government and the defendant's proposed formulation of the elements of § 1503 should be modified as follows (changes in italics):

1.    That there was a proceeding pending before a federal grand jury;

2.    That Mr. Libby knew of the pending grand jury proceeding;

3.    That Mr. Libby endeavored to influence, obstruct, *or* impede the due administration of justice in that proceeding; and

    4.     That Mr. Libby acted corruptly, that is, *voluntarily and deliberately and for the purpose of improperly influencing, or obstructing, or interfering with the administration of justice.*

The government also objects to defendant's formulation of the elements of § 1001. Apart from the fact that it omits a definition of the term "material" which should be included for the sake of clarity, defendant's formulation includes a superfluous fifth element, "intent to deceive the FBI," which is *not* an essential element of § 1001 under D.C. Circuit law. See *United States v. Yermian*, 468 U.S. 63, 69-75 (1984)(no requirement that defendant be proved to have intended to deceive the federal agency in question); *United States v. Hsia*, 176 F.3d 517, 522 (D.C. Cir. 1999); *United States v. Pickett*, 209 F. Supp. 2d 84 (D. D.C. 2002) (Jackson, J.). Rather, the government need only prove beyond a reasonable doubt that defendant acted willfully and knowingly which means, in the context of this provision, that the defendant made one of the charged statements intentionally, knowing that it was false. *Hsia*, 176 F.3d at 522 ("[t]he natural reading of . . . 1001 is this: the government may show *mens rea* simply by proof . . . that the defendant knew that the statements to be made were false.") All that is required to establish a violation of § 1001 is that the defendant made at least one of the charged statements intentionally and deliberately, knowing that it was false. Thus, defendant's formulation of the elements of § 1001 should be changed to track O'Malley § 40.07, as proposed by the government:

    1.     That Mr. Libby knowingly made a false, fictitious or fraudulent statement;

    2.     That Mr. Libby made the statement willfully, that is, intentionally, knowing that it was false;

    3.     That the statement was made in a matter within the jurisdiction of the FBI; and

4.    That the statement was material, that is, that it had the effect of influencing the decision or actions of the FBI, or was capable of or had the potential to do so.

The government objects to the defendant's proposed formulation of the elements of perjury (§ 1623) in that it omits a definition for the term "materiality," which should be included for the sake of clarity. Accordingly, the government suggests that the elements be revised as follows (changes in italics):

1.    That Mr. Libby made a statement before the grand jury while he was under oath;

2.    That such statement was false in one or more of the respects charged;

3.    That Mr. Libby knew such statement was false when he made it; and

4.    That the false statement was material to the grand jury's inquiry, that is, that it had the effect of influencing the decision or actions of the grand jury, or was capable of or had the potential to do so.

The government's final issue with respect to defendant's modified version of D.C. Form Instruction No. 103 is that certain material has been removed from the end of the instruction which the government believes would be helpful. Thus, the government proposes that defendant's proposed instruction be modified to add back the following language:

> You must also completely disregard any press coverage, including newspaper, television, or radio reports that you may read, see or hear. If you are exposed to any news reports inadvertently, you should immediately disregard them and direct your attention elsewhere.
>
>        *    *    *
>
> You must not discuss this case with anyone until this case is submitted to you for decision at the end of my final instructions.

6

II.     **Defense Proposed Instruction No. 2 (Pretrial Publicity)**

Defendant has proposed the use of a modified version of O'Malley § 10.02 regarding pretrial publicity. The government agrees to the giving of this instruction[1] but objects to the modification defendant has made. Defendant has added the following sentence to the form instruction:

> These statements may be one person's opinion or speculation, or even unfounded rumor, dressed up as fact.

This sentence encourages the jurors to speculate about pretrial publicity to which they may not even have been exposed, and detracts from the essential message that jurors must disregard *all* pretrial publicity, regardless of whether it is reliable or unreliable. It should be excluded.

III.     **Defense Proposed Instruction No. 4 (Credibility of Law Enforcement Witnesses)**

The government proposed the use of D.C. Form Instruction No. 2.26 with the modification that the term "police officer" be changed to "law enforcement agent." The government's proposed instruction reads,

> A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because he or she is a law enforcement officer.

The government strongly objects to the giving of the alternative formulation proposed by defendant, which is drawn from 1 Sand Instruction 7-16, in that it is does not plainly state the legal requirement that a law enforcement officer's testimony should be treated the same as that of any other witness in a fair and neutral fashion, and in that it interjects the issue of bias, improperly suggesting to the jury that a law enforcement agent's testimony may be, or likely is, "colored by a personal or

---

[1] The use of this instruction would obviate the need to give D.C. Form Instruction No. 1.16, which was proposed by both parties.

7

professional interest in the outcome of the case." The defense is free to use cross-examination and argument to make this point if it chooses, but it should not be made in the form of a legal instruction from the Court before the trial even begins.

## IV.    Defense Proposed Instruction No. 7 (Propriety of Defendant's Disclosures of the NIE)

In his proposed jury instructions, defendant proposed the following:

You have heard testimony that Mr. Libby discussed with reporters information from the October 2002 National Intelligence Estimate regarding Iraqi weapons of mass destruction programs. There are no allegations that these discussions were in any way improper or illegal.

Subsequently, as part of the briefing on defendant's Motion to Preclude Government from Offering Any Evidence or Argument that his Disclosure of Information from the October 2002 National Intelligence Estimate Was Illegal or Improper, defendant proposed the following instruction:

You have heard [testimony/evidence] that Mr. Libby discussed with reporters information from the October 2002 National Intelligence Estimate. None of this [testimony/evidence] is being offered to show, or should be taken as establishing, that Mr. Libby's discussions of the NIE were improper or illegal. The government is not alleging that Mr. Libby's discussions with reporters were in any way wrongful, and you should not consider that issue in your deliberations.

As this Court is aware, the timing of the de-classification of portions of the October 2002 NIE relative to defendant's disclosures to reporters is uncertain and therefore it is unclear whether defendant's earliest disclosures may have been premature and therefore improper. Under these circumstances, it is inappropriate to instruct the jury, or to suggest that they draw the inference, that each one of defendant's disclosures of the NIE was authorized and proper.

The instructions proposed by the defendant are susceptible to being understood as a stipulation that all of defendant's disclosures were proper. Moreover, the proposed instructions

8

suggest that the *government* is of the view that all of the defendant's disclosures were authorized and proper.  This is not only incorrect, but improper.   The legitimate purpose of directing the jury that the propriety of defendant's disclosures of portions of the NIE is not at issue in this case, and that they should not consider the issue in their deliberations, easily can be accomplished without misleading or confusing the jury.  All that is necessary is to frame the instruction so that it focuses directly on the point that both parties have agreed should be made:

> The propriety of Mr. Libby's discussions with reporters regarding from the October 2002 National Intelligence Estimate is not an issue in this case.  You should not speculate regarding whether these discussions were proper or improper, or consider that issue in your deliberations.

The government proposes that the above instruction be given in lieu of either of defendant's proposals.

## V.    Defendant Proposed Instruction No. 8 ("Findings from the Science of Memory")

Having unsuccessfully moved for permission to call an expert witness to testify about the vagaries of human memory, defendant now seeks to introduce the previously proffered expert testimony in the form of a jury instruction.  The instruction defendant seeks would improperly put before the jury various claims and conclusions that this Court has previously found to be either supported only by studies involving substantially different factual situations, or well within the ken of the average juror.   Moreover, giving the requested instruction would not only deprive the government of an opportunity to refute through cross-examination the reliability and applicability of the claims and conclusions included therein in the context of this case, but would give them undue weight.  Defendant's proposed Instruction No. 8 should not be given, in whole or in part.

Defendant's proposed Instruction No. 8 includes ten of the thirteen assertions identified as the topics concerning which defendant sought to introduce expert testimony. The Court ruled that every one of these topics was well within the knowledge and experience of the average juror:

> "[T]his Court has no doubt that the average juror understands that if, for example, A learns from B that B had been on vacation in Hawaii and then later learns from C that she spent her vacation in Jamaica, that A could later misremember where each spent their vacations because he was consumed with pressing matters when he acquired this information, when he was asked to recall it, and possibly at any time in between. Accordingly, the jury does not need a tutorial on the science of 'content borrowing,' 'memory conjunction,' or 'source misattribution' errors to appreciate that people sometimes experience mistaken memories. *The same applies for each of the thirteen areas upon which Dr. Bjork would testify, as the defendant has not established that the principles are either so complex or counter-intuitive that jurors do not understand them."* 11/2/06 Memo. Op. 16 (emphasis supplied).

Addressing common sense matters in instructions of law is unnecessary, and poses the danger of unduly highlighting some common sense considerations over others that are equally relevant in assessing the credibility of witnesses. The government has not asked the Court to instruct the jury as a matter of law that they should consider the fact that sometimes people lie to avoid negative consequences; the Court likewise should resist defendant's request to instruct the jury as a matter of law that people sometimes forget.

Defendant's proposed Instruction No. 8 includes generalizations that are misleading as stated. For example, paragraph 7 of the defendant's proposed instruction no. 8 provides that:

> A person's confidence in the accuracy of his recollection of an event has little, if any, relation to the accuracy of the person's recollection. In other words, a person may be very confident that his memory of an event is accurate when in fact it is inaccurate.

Def. Prop. Instr. at 19. Yet defendant's expert, Dr. Loftus, admitted that while studies across subjects reflected little correlation between confidence and accuracy, studies within subjects showed

stronger correlation. 10/26/06 Tr. 85. Instructing the jury on such matters clearly would be improper.

Finally, it would be fundamentally unfair to give the proposed instruction. Doing so would eliminate any opportunity to challenge the bases, accuracy and applicability of the instruction's blanket assertions, and would give those assertions more weight than even a stipulation of fact – given that they would be presented by the Court as "law" the jury was required to apply. Indeed, giving defendant's proposed Instruction No. 8 would pose a risk that "jur[ors would] surrender their own common sense in weighing [the] testimony" (see 11/2/06 Memo. Op. 26)(citation omitted), that would be similar, but worse, than the risk posed by the introduction of Dr. Bjork's expert testimony. Substituting the Court's imprimatur for Dr. Bjork's expert testimony only exacerbates the problem..

In its Memorandum Opinion denying the defendant's motion to admit expert testimony, the Court indicated that it would "advise the jury of the factors that may impact on the accuracy of memory." 11/2/06 Memo. Op. 18. The government has no objection to this proposal in principle. Indeed, both the government and the defense have requested the Redbook instruction 2.11 (Credibility of Witnesses) which includes the following language:

> In reaching a conclusion as to the credibility of any witness, you may consider any matter that may have a bearing on the subject. You may consider the demeanor and behavior of the witness on the witness stand; the witness' manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, or friendship or hostility toward other people concerned with this case.
>
> Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently; an innocent mis-recollection, like a failure of recollection, is not an uncommon experience. In weighing the effect of the inconsistency or discrepancy,

always consider whether it pertains to a matter of important or unimportant detail, and whether the inconsistency or discrepancy results from innocent error or intentional falsehood.

This is the instruction that should be given. This instruction adequately and properly advises the jury what factors it should consider when weighing the testimony of witnesses, and includes without unduly highlighting, factors related to memory. It specifically notes that mis-recollections are common experiences and can be innocent. It also reminds jurors that discrepancies between different versions of events need not be sinister; that innocent explanations may account for the inconsistencies, as well as the fact that the jury should be mindful that some matters may be more important than others.

It is one thing to "provide the jury with an instruction that will remind them of the factors they may consider in assessing the accuracy of memory" (11/2/06 Memo. Op. 21) and quite another to provide the jury with "conclusions" and "facts" of dubious merit and applicability and then direct the jury to consider these factors in weighing the testimony at trial. These jury instructions, when coupled with cross-examination and argument by counsel, will be more than adequate to make clear to the jury the various factors that the defense believes should be considered by the jury in determining whether defendant – or, indeed, any other witness – was simply the victim of a faulty memory.[2]

---

[2] The government objects to interjecting the claims and assertions of defendant's proposed expert into voir dire as well. For example, the suggested voir dire question that asks the jurors whether human memory "is like a tape recorder and therefore people are able to remember exactly what they were said or told in the past" poses the risk of injecting confusion into the jury selection process as well as in the trial. It is unclear what "like a tape recorder" means and, to the extent that Dr. Loftus assumed that a juror agreeing that memory was "like a tape recorder" was the "wrong answer," other questions in that same survey showed that many of the people giving that "wrong" answer correctly answered other questions that established that people can innocently remember things incorrectly. If anything, that study shows that the "tape recorder" question is a bad question,

**VI.  Defendant's Proposed Instruction No. 11 (Obstruction of Justice, § 1503)**

The government objects to defendant's formulation of the elements of § 1503, Obstruction of Justice, on three grounds:  (a) the definition of "corruptly" included in the instruction misstates the law in the context of this case; (b) the instruction interjects definitions of "false statement" and "materiality" which are not elements of § 1503; and (c) the description of the term "endeavors" and the nature of the charged offense are presented in a manner that is vague and confusing.

As discussed above, the term "corruptly" in the context of § 1503, as set forth in O'Malley § 48.04, means: "voluntarily and deliberately and for the purpose of improperly influencing, or obstructing, or interfering with the administration of justice."  Defendant repeats the definition of "corruptly" used in his modified version of Instruction 103 which, as the government discussed above, is not appropriate to the conduct or statute at issue in this case.  In his proposed Instruction 12, however, defendant goes even further, defining "corrupt" to include acting in a manner that is "wrongful, immoral, depraved, or evil," terms taken from the dictionary definition of the term "corrupt."  This language is not helpful; it is misleading.  Section 1503 does not require that the jury find that the defendant's conduct was "depraved" or "evil."

While defendant's formulation of what it means to "endeavor" is generally accurate, it is more complicated and less clear than the formulation suggested by the government, O'Malley § 48.05:

---

not that most jurors have a poor understanding of memory problems.

Moreover, the other two subparts come dangerously close to asking about the defense theories in this this case -- we wouldn't ordinarily ask people: "Do you think it is possible that a person could be asked to deliver a package to an unknown person on a street corner by another person who offers $100 for doing this, and the person requested not believe he was being asked to participate in a narcotics transaction?"  We should not ask a similar question here.

The term "endeavors" as used in these instructions means to knowingly and deliberately act or to knowingly and deliberately make any effort which has a reasonable tendency to bring about the desired result.

It is not necessary for the government to prove that the "endeavor" was successful, or, in fact, achieved the desired result.

The government requests O'Malley § 48.05 be used.

Defendant's description of the charged offense is also objectionable. First, it improperly interjects elements of § 1001 and § 1623, creating the false impression that the government must prove these additional elements in order to sustain the charge in Count One. Second, the definition of "materiality" that is interjected includes language that, as discussed in reference to defendant's proposed Instructions Nos. 12 and 14, is incorrect and confusing. Finally, the nature of the charged offense as described by defendant is unnecessarily confusing. To remedy these problems, the government suggests the following language:

Count One charges that, in March 2004, Mr. Libby corruptly endeavored to influence, obstruct or impede proceedings before Grand Jury 03-3 in the federal district court of the District of Columbia by knowingly making the following materially false and misleading statements and representations under oath: [Continue with paragraphs numbered 1 through 3 as set forth on page 23 of the defendant's proposed instructions, and omit the language that follows.]

## VII. Defendant's Proposed Instruction No. 12 (False Statements, § 1001(a)(2))

The government objects to defendant's Proposed Instruction No. 12 on three grounds. First, the defendant's proposed instruction misstates the law by including as an element "intent to deceive the FBI." As discussed above, this is *not* an essential element of § 1001 under D.C. Circuit law. *United States v. Hsia*, 176 F.3d 517, 522 (D.C. Cir. 1999)("[t]he natural reading of . . . 1001 is this: the government may show *mens rea* simply by proof . . . that the defendant knew that the statements to be made were false.") Accordingly, the government requests that the Court give O'Malley form

instructions numbered 40.05, 40.06 and 40.07, as proposed by the government, in lieu of defendant's

Proposed Instruction No. 12.

Second, the defendant's proposed instruction misstates the law by adding the following

language to the definition of "materiality" approved by the Supreme Court ("a statement is material

if it has a natural tendency to influence, or is capable of influencing")(see *United States v. Gaudin,*

515 U.S. 506, 509 (1995)(quoting *Kungys v. United States,* 485 U.S. 759, 770 (1988)):

> The test is whether the false statement has the capacity to impair or pervert the
> functioning of the FBI. In other words, a statement is material if it relates to an
> important fact as distinguished from some unimportant or trivial detail.

The source of the additional language is Instruction 36 of the Eleventh Circuit Criminal

Instructions (2003) and research reveals no pattern instruction from any other source that contains

it. The language is vague, confusing, and misleading. As stated in *Gaudin*, the questions the jury

must answer are simple and straightforward: (a) "[W]hat statement was made?" (b) "[W]hat decision

was the agency trying to make?" and (c) "[W]hether the statement was material to the decision." 515

U.S. at 512. Thus, the jury must determine whether the statement could influence a decision or

action of the FBI, not whether it could "impair or pervert the functioning of the FBI."

Nor should the jury be instructed that it must determine whether the fact or facts to which the

statement relates are "important" or "trivial," in a general sense. The use of the undefined terms

"important" and "trivial" is particularly confusing and potentially misleading in the context of the

arguments that are expected to be made in this case. Defendant will argue that information regarding

Ms. Wilson and his conversations regarding this information were not sufficiently important for him

to remember it. It is important that the jury not be led to confuse that issue with the question of

15

whether the defendant's statements could have influenced the FBI in its investigation. The government objects to this additional language, and requests that the Court instruct the jury regarding the term "materiality" using O'Malley § 40.07.

Finally, defendant's description of the charged false statement offenses does not incorporate the requisite mental state. Accordingly, the defendant's proposed description of the offense charged in Count Two be modified to state: "Count Two alleges that Mr. Libby knowingly and willfully made the following false statements to the FBI: [continue with description of false statement]." Likewise, the government proposes that the defendant's proposed description of the offense charged in Count Three be modified to state: "Count Three alleges that Mr. Libby knowingly and willfully made the following false statements to the FBI [continue with description of false statements].

## VIII.  Defendant's Proposed Instruction No. 13 (Ambiguity)

The government objects to the giving of the defendant's Proposed Jury Instruction No. 13, as there is no factual basis for giving the instruction. A defendant is entitled to an instruction on a defense theory only if that theory is supported by an adequate factual basis. *See, e.g., Mathews v. United States,* 485 U.S. 58, 63 (1988)(stating that defendant is "entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor"). Here, there is no evidence that any of the charged false statements were made in response to questions that were ambiguous, or that any of Mr. Libby's answers to questions put to him were "literally true." Defendant's Proposed Instruction No. 13 should not be given.

## IX.  Defendant's Proposed Instruction No. 14 (Perjury)

16

The government objects to the defendant's proposed Instruction No. 14 on the grounds previously stated in connection with defendant's proposed Instruction No. 1, as well as the following additional grounds.

First, as discussed above, the jury should not be instructed to determine whether the charged declarations are "important" or "trivial" in a general sense, particularly given the arguments to be made by both parties in this case.

Second, because none of the charged declarations were made in response to questions that could even remotely be characterized as ambiguous, there is no factual basis for including any instruction regarding ambiguity.

Finally, the concluding paragraph appears to have been inadvertently copied from another instruction, and should not be included in an elements instruction.

## X.  Unanimity

The government is of the view that a separate unanimity instruction is required for Counts Two, Three, Four and Five, and proposes the following language:

> Counts Two, Three, Four and Five each contain multiple alleged false statements or declarations under oath made by Mr. Libby.  To find Mr. Libby guilty of these counts, the government must prove beyond a reasonable doubt that at least one of the alleged statements or declarations contained in each count was false, fictitious, or fraudulent.  However, as to each count, you must unanimously agree on which statement was false.

## XI.  Employment Status of Valerie Wilson

As the Court is aware, the parties have agreed that no evidence will be presented with respect to whether Valerie Wilson's CIA employment actually was classified, or whether the disclosure of her employment actually caused, or had the potential to cause, damage.  In connection with briefing

and argument related to his motion in limine with respect to this issue, defendant proposed the following instruction:

> No evidence has been presented that Valerie Wilson's CIA employment status was, or was not , classified or covert, or that disclosure of that status did, or did not, pose a risk of damage to the national security, the CIA, or Ms. Wilson herself. You may consider what, if anything, Mr. Libby knew or believed about her status or damage in determining his state of mind when he spoke to the FBI and testified before the grand jury. But you may not speculate as to whether Ms. Wilson's employment was actually classified or covert, or whether disclosure of that employment did in fact cause a risk of damage to anyone.

The government objects to the defendant's proposed instruction in that it does not present the issue in a neutral manner, and in that it falsely suggests that the government was unable to present evidence regarding the classified status of Ms. Wilson's employment on and after January 1, 2002, and that it fails to note that Ms. Wilson's employment status was material to the grand jury's investigation. The legitimate purpose of removing from the jury's consideration the issues of whether Ms. Wilson's employment status was in fact classified and whether disclosure of that status could cause damage can be accomplished without misleading or confusing the jury. Thus, the government proposes the following alternative:

> The questions of whether Valerie Wilson's CIA employment status was, or was not, classified or covert, and whether the disclosure of that status did, or did not, pose a risk of damage to the national security, the CIA, or Ms. Wilson herself, are not issues in this trial, and you must not speculate as to whether Ms. Wilson's employment was actually classified or covert, or whether disclosure of that employment did in fact cause a risk of damage. You may, however, consider the nature of the FBI's and grand jury's investigations, including the possible crimes that were being investigated, in determining whether the charged false statements and declarations were material to those investigations. You also may consider what, if anything, Mr. Libby knew or believed about her status or about potential damage that could be caused by disclosure in determining his state of mind when he spoke to the FBI and testified before the grand jury.

## XII.  Testimony Regarding Classified Information

18

In connection with proceedings under the Classified Information Procedures Act ("CIPA"), the government proposed the following instruction:

> The Court advises the jury as follows: Much of the information Mr. Libby received in the course of his duties was classified, indeed highly classified. I have previously read you a stipulation by the government in which the government agreed that Mr. Libby worked on these various matters and that the information Mr. Libby received was highly classified and much of it remains classified. Accordingly, in order to protect national security, the Court has directed that Mr. Libby and his counsel not describe certain classified details of which Mr. Libby was made aware. In light of the Court's directions to Mr. Libby and his counsel, you should of course not hold against Mr. Libby the fact that he has not provided further details regarding those matters.

## XIII. Documents Related to National Security Matters

During the CIPA proceedings, the Court ruled that defendant could testify regarding a number of matters with which he allegedly was consumed during relevant periods. The Court indicated that these matters would be admissible solely with respect to defendant's state of mind. Accordingly, the government proposes that the following limiting instruction be given with respect to such matters:

> During the trial, certain documents and evidence were offered in evidence for the limited purpose of establishing the effect on defendant's state of mind. You should not consider such documents and evidence for any other purpose.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the United States respectfully requests that this Court sustain the government's objections to defendant's proposed jury instructions.

Respectfully submitted,


_____/s/_____
PATRICK J. FITZGERALD
Special Counsel
Office of the United States Attorney
Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300


Dated:   December 22, 2006.

20

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 22nd day of December, 2006, I caused true and correct copies of the foregoing to be served on the following parties by electronic mail:

William Jeffress, Esq.
Baker Botts
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Facsimile: 202-585-1087

Theodore V. Wells, Esq.
Paul Weiss
1285 Avenue of the Americas
New York, NY 10019-6064
Facsimile: 212-373-2217

John D. Cline, Esq.
Jones Day
555 California Street
San Francisco, CA 94104
Facsimile: 415-875-5700

Patrick J. Fitzgerald
Special Counsel
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C.  20530
202-514-1187

By: _____/s/_____
Debra Riggs Bonamici
Deputy Special Counsel