**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY | ) | |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

**REPLY OF I. LEWIS LIBBY IN SUPPORT OF HIS PROPOSED JURY
INSTRUCTIONS**

The government asserts numerous grounds for rejecting or modifying the jury

instructions proposed by Mr. Libby.  Two of its main arguments are that Mr. Libby's definition

of "corruptly" rests upon inapposite precedent and that Mr. Libby incorrectly defines "material."

As shown below, the definitions proposed by Mr. Libby are applicable and appropriate in the

context of this case and therefore should be incorporated into the instructions provided to the

jury.  The reply then addresses other points and objections raised by the government *in seratim*.

**ARGUMENT**

**I.      Mr. Libby's Definition of "Corruptly" Adheres to the Definition Set Forth in *Arthur
Andersen* and Should Be Used.**

Count One of the Indictment charges Mr. Libby with "corruptly endeavoring" to obstruct

justice.  Consistent with the Supreme Court's recent decision in *Arthur Andersen LLP v. United

States*, 544 U.S. 696, 708 (2005), the term "corruptly" should be defined as follows:

> That Mr. Libby's act was done "corruptly," that is, that he acted knowingly and
> dishonestly, with the specific intent to subvert or undermine the due administration of
> justice and with consciousness of wrongdoing.  An act that is done "corruptly" is one that
> is wrongful, immoral, depraved, or evil.

I. Lewis Libby's Proposed Jury Instructions at 6, 22 (Dkt. 180) [hereinafter "Def. Prop. Instr."]. The Government argues that Mr. Libby's reliance upon *Arthur Andersen* is misplaced because the witness tampering statute at issue there—18 U.S.C. § 1512(b)—proscribes "knowingly . . . corruptly persuading" another, whereas 18 U.S.C. § 1503 lacks the "knowingly" modifier. *See* Govt.'s Resp. to Def.'s Proposed Jury Instructions at 3 (Dkt. 227) [hereinafter "Govt. Resp."].[1] The government's objection, however, is unfounded.

*Arthur Andersen* is apposite and clearly permits, and indeed requires, use of Mr. Libby's definition of "corruptly."[2] The district court there defined "corruptly" by modifying the *same* Fifth Circuit pattern instruction for obstruction of justice as Mr. Libby uses here. It removed the word "dishonestly" from that definition and added "impede" to the end of the phrase "with the specific intent to subvert or undermine." The Supreme Court rejected those alterations as flawed because they did not limit the charge to "corrupt" conduct, but rather diluted the meaning of "corruptly" to the point that it risked punishing innocent actions. *See* 544 U.S. at 706-07.

Mr. Libby's instruction is necessary to prevent a similar risk here, by requiring a showing of dishonesty and of a specific intent to subvert or undermine the proceeding. The government's proposed instruction, by contrast, demands no showing of dishonesty; it merely requires that Mr. Libby act "improperly" and for purposes synonymous with impeding government proceedings. *See* I. Lewis Libby's Response to the Govt.'s Proposed Jury Instructions at 3 (Dkt. 226) [hereinafter "Def. Resp."].

---

[1]  The Government offers a far less demanding definition of "corruptly": "to act voluntarily and deliberately and for the purpose of improperly influencing, or obstructing, or interfering with the administration of justice." Govt.'s Proposed Jury Instructions at 7.

[2]  Additional reasons supporting *Arthur Andersen*'s applicability to this case are set forth in I. Lewis Libby's Response to the Government's Proposed Jury Instructions at 2-3.

Likewise, the "consciousness of wrongdoing" component of Mr. Libby's instruction is proper and should be provided. Both parties' proposed instructions recognize that, for one to "corruptly endeavor," one must act "knowingly." *See* Government's Prop. Jury Instructions at 7 (Dkt. 181) (defining "endeavors" as acting "knowingly and deliberately") [hereinafter "Govt. Prop. Instr."]; Def. Prop. Instr. at 22 (defining "corruptly" as acting "knowingly and dishonestly"); *see also* Govt. Resp. at 4 (characterizing the alleged obstructive behavior as "[k]nowingly making a material false statement"). Because acting knowingly is the same as acting with consciousness, for one to act knowingly and dishonestly is the same as acting with consciousness of one's wrongdoing. *See* 544 U.S. at 705 ("'[K]nowledge' and 'knowingly' are normally associated with awareness, understanding, or consciousness."); *see also United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("[I]f the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct.").

By the same token, explaining that a corrupt act is one that is "wrongful, immoral, depraved, or evil," as Mr. Libby's instruction does, is not "misleading" as the government contends. Govt. Resp. at 13. Rather, it applies the very definition cited by *Arthur Andersen*. 544 U.S. at 705. That these words are drawn from dictionary definitions militates for their use— and not against as the government argues—for they give this term its "natural meaning" and, dictionaries are a proper source of definitions of key terms. *Id.* at 705-06.

The fact that the *Andersen* Court found the analogy between 18 U.S.C. §§ 1512 and 1503 "inexact" is irrelevant. 544 U.S. at 705 n.9. The Court reached this conclusion because the plain language of the obstruction statute does not include the *exact* same statutory language as § 1512—"knowingly . . . corruptly"—and *not* because it held that § 1503 lacked a consciousness of guilt requirement or was otherwise distinguishable. *Id.*; *id.* at 705-06.

II.    **Mr. Libby's Definition of "Materiality" Is More Accurate Than The Government's Definition and Therefore Should Be Used.**

Mr. Libby defines materiality as follows:

A statement is material if it has a natural tendency to influence, or is capable of influencing, a decision of the grand jury or FBI. In other words, a statement is material if it relates to an important fact as distinguished from some unimportant or trivial detail.

Def. Prop. Instr. at 22, 27; *see also id.* at 24 (including additional sentence regarding appropriate test for materiality with respect to false statements). The government accepts the first sentence as the proper definition, but argues that Mr. Libby's definition "misstates the law" by including the second sentence. Govt. Resp. at 15 (citing *United States v. Gaudin*, 515 U.S. 506, 509 (1995)). That argument is unpersuasive. In *Gaudin*, the question of what constitutes material information was not even before the Court because the parties had "agree[d] on the definition of 'materiality.'" 515 U.S. at 509. If anything, *Gaudin* favors Mr. Libby's definition because the government there proved materiality by showing "why the requested information was *important*." *Id.* at 508 (emphasis added). Indeed, as Mr. Libby showed in his opposition to the government's proposed jury instructions, for a statement to be material, it must possess real importance or consequence. *See* Def. Resp. at 5; *see also United States v. White*, 765 F.2d 1469, 1472 (11th Cir. 1985) (materiality standard ensures that "trivial falsifications" are not prosecuted); *Weinstock v. United States*, 231 F.2d 699, 701 (D.C. Cir. 1956) ("[t]o be 'material' means to have probative weight"); *see generally* Restatement (Second) of Torts § 538 (1977) (defining a matter as "material" if "a reasonable man would attach importance to its existence of non-existence in determining his choice of action") (cited in *United States v. Neder*, 527 U.S. 1, 20-23 & n.5 (looking to the common law to determine whether materiality is an element of the federal mail, wire, and bank fraud statutes)).

Neither is the second sentence vague, misleading, or confusing as the government alleges. Govt. Resp. at 15. Highlighting the important verses trivial distinction sharpens the definition with easily comprehensible terms. Informing jurors that a material statement relates to an important fact can hardly be considered misleading—not only does this track its literal definition but the government does not argue that unimportant facts may be material. *See, e.g., Webster's Ninth New Collegiate Dictionary* 733 (1989) (defining "material" as "having real importance or great consequence"). Moreover, the government can assuage its fears of confusion by reminding jurors during closing that what Mr. Libby considered important or unimportant in his daily activities is a different consideration from what was important or unimportant to investigators and the grand jury. Because this remedy is easily available, and requires the expenditure of little effort or time, there is no reason not to give "materiality" its natural meaning as Mr. Libby's instruction does.

The definition of "material" in Mr. Libby's proposed false statements instructions includes an additional sentence: "The test is whether the false statement has the capacity to impair or pervert the functioning of the FBI." Def. Prop. Instr. at 24. Mr. Libby does not object to removing this sentence.

### III.    Mr. Libby's Proposed Jury Instruction No. 1: Pretrial Instructions

Mr. Libby objects to the description of the case proposed by the government. It states without qualification that the information regarding the CIA employment of Valerie Wilson was classified. Govt. Resp. at 3. That suggestion would undermine the instruction *both* parties have proposed that jurors "must not speculate as to whether Ms. Wilson's employment was actually classified or covert." *See* Govt. Resp. at 18; Mr. Libby's Reply in Support of His Motion *In Limine* to Exclude Evidence and Argument Concerning Valerie Wilson's Employment Status and Actual or Potential Damage Caused by Disclosure of That Status at 2-3 (Dkt. 220).

Furthermore, it does not track the description of the investigation alleged in Paragraph 25 of the Indictment. Because the focus of the investigation at the time Mr. Libby was interviewed by the FBI will apparently be a disputed issue at trial, the Court should not instruct the jury in accordance with the government's view of the investigation alone.

Instead of the government's flawed proposal, the Court should use the language proposed by Mr. Libby with this additional statement at the end: "Mr. Libby denies these allegations and contends that he is not guilty of any of the offenses charged in the indictment." This statement more accurately reflects Mr. Libby's position. If the Court does use the government's proposal, the first sentence should be modified as follows:

> According to the indictment, on or around September 26, 2003, the Department of Justice authorized the Federal Bureau of Investigation ("FBI") to commence a criminal investigation into the possible unauthorized disclosure of allegedly classified information regarding the disclosure of Valerie Wilson's affiliation with the CIA to various reporters in the spring of 2003.

This language tracks the actual language of the indictment and reflects the fact that the indictment merely alleges that information about Ms. Wilson's status was classified and that no evidence supporting this claim will be adduced at trial.

The government asserts that this instruction's summary of the elements of the charges listed in the indictment should include a definition of "material." *See* Govt. Resp. at 5, 6. Mr. Libby objects as this instruction does not define other key terms. Further, such a definition is unnecessary for the purpose of this preliminary instruction—presenting jurors with a summary of the elements of the counts.

Except where Mr. Libby explicitly has accepted changes proposed by the government, Mr. Libby objects to the government's proposed statement of elements for obstruction, false statements, and perjury for the reasons stated elsewhere in this reply.

Mr. Libby does not object to adding the language regarding publicity during trial and instructing jurors not to discuss the case with anyone. *See* Govt. Resp. at 6.

**IV.    Mr. Libby's Proposed Jury Instruction No. 2: Pretrial Publicity**

The government agrees to Mr. Libby's proposed instruction with the exception of the sentence: "These statements may be one person's opinion or speculation, or even unfounded rumor, dressed up as fact." Govt. Resp. at 7. As the Court is well aware, this case has been the subject of extraordinary media attention which not infrequently has misstated key facts. Indeed, Mr. Fitzgerald himself has made this an issue with his press conference on the day of Mr. Libby's indictment. During this wide-ranging exchange with reporters, Mr. Fitzgerald stated that Mr. Libby was the first government official to have talked about Ms. Wilson with reporters. *See* Tr. of 10/28/05 Press Conference at 4 ("[Mr. Libby was] the first official to disclose this information [about Ms. Wilson's CIA employment] outside the government to a reporter") [attached as Exhibit A]. Not true. In addition to being Novak's primary source, Richard Armitage mentioned Ms. Wilson's employment to Bob Woodward on June 13, 2003.

The inclusion of this instruction does not obviate the need to give Redbook Instruction 1.16. That instruction warns jurors not to listen to media reports about the trial while it is in progress. This instruction, however, focuses upon pre-trial media publicity.

**V.    Mr. Libby's Proposed Instruction No. 4: Credibility of Law Enforcement Witnesses**

The government objects to this instruction on three grounds. First, the government argues that the instruction fails to state that a law enforcement officer's testimony should be treated like any other witness's testimony, as the government alleges is legally required. *See* Govt. Resp. at 7. Not only does the government cite no legal authority, but Mr. Libby's proposed instruction makes clear that a law enforcement witness's testimony does not necessarily deserve more or less consideration than that of an ordinary witness.

The government next charges that the second paragraph of Mr. Libby's proposed instruction improperly interjects the issue of bias. As it is unclear at this juncture whether we will challenge the credibility of the government's law enforcement witness, it is premature for the Court to rule on this issue. If the defense does challenge the witness's credibility, this paragraph would then be appropriate.

Finally, the government apparently is under the misapprehension that this instruction would be given before trial. As the first sentence makes clear, it is meant to be provided after trial.

## VI.    Mr. Libby's Proposed Jury Instruction No. 7: National Intelligence Estimate

The government objects to Mr. Libby's proposed instruction regarding the propriety of his disclosure of material from the NIE to reporters. Mr. Libby maintains that any discussions he had with reporters at any time regarding the NIE were entirely proper. The government, however, asserts that the timing of the declassification of portions of the NIE relative to Mr. Libby's earliest discussions with reporters is uncertain and that those discussions may have been premature. *See* Govt. Resp. at 8.

As explained at the December 19th hearing, Mr. Libby will not offer any evidence that he discussed the contents of the NIE with reporters prior to his July 8, 2003 discussion with Judith Miller. 12/19/06 Tr. at 40-41. The government has indicated that it is very unlikely to raise pre-July 8 discussions either. *Id.* As both sides agree that pre-July 8 disclosures have no real relevance in this case, and to avoid any further confusion or conflict on this issue, Mr. Libby requests that the Court issue a pre-trial ruling that evidence regarding pre-July 8 disclosures is inadmissible at trial under Fed. R. Evid. 403.

As for discussions Mr. Libby had with reporters regarding the NIE *on or after* July 8, the government has never disputed that the President had the authority to declassify material in the

NIE by authorizing its disclosure to the press. Nor has it ever disputed that that process of declassification was complete as of July 8, such that Mr. Libby's subsequent discussions with reporters were entirely proper. Nor could it given the state of the evidence. Accordingly, the government's suggestion that the jury be directed not to "speculate regarding whether [Mr. Libby's discussion with reports regarding material from the NIE] were proper *or improper*" is unfounded. Govt. Resp. at 9 (emphasis added).

With the 403 ruling Mr. Libby requests in place, it is his position that no pre-trial jury instruction on the NIE is necessary. Mr. Libby does, however, reserve the right to request that the following instruction given during or after trial, as appropriate:

> You have heard evidence regarding discussions Mr. Libby had with reporters about material contained in the October 2002 National Intelligence Estimate. There is no dispute that the President has the power to declassify previously classified material and to authorize its disclosure to the press. Nor is there any dispute that the President had exercised that power with respect to the NIE at the time Mr. Libby had those discussions. In other words, there is no question that Mr. Libby acted properly in having those discussions and you are hereby instructed not to speculate otherwise.

## VII. Mr. Libby's Proposed Jury Instruction No. 8: Relevant Principles of Memory

The government objects to Mr. Libby's proposed Instruction No. 8, which is designed to remind and inform the jury of aspects of memory—and its fallibility—that are directly pertinent to its deliberations in this case. *See* Def. Prop. Instr. at 18-19. In lieu of that instruction, the government proposes that the Court rely solely on the standard instruction regarding the credibility of witnesses, which barely addresses issues of memory at all. *See* Redbook Instruction 2.11 (Credibility of Witnesses). The government's objection, and its alternative proposal, cannot be reconciled with this Court's November 2 opinion excluding Dr. Bjork's expert testimony on memory, or with the positions the government itself took in opposing Mr. Libby's request to admit that testimony. *See* Memorandum Opinion (filed Nov. 2, 2006) (Dkt.

169) [hereinafter "Mem. Op."]; Government's Memorandum in Opp'n to Defendant's Mot. to Admit Expert Testimony (filed Sept. 7, 2006) (Dkt. 139) [hereinafter "Resp. to Mot. to Admit"].

The government raises three principal objections to Mr. Libby's proposed instruction on memory. Each is without merit.

First, the government insists that Mr. Libby's proposed instruction is not needed because the principles it reflects are "well within the knowledge and experience of the average juror." Resp. to Mot. to Admit at 10. Even if that were true, that fact does not render the instruction unnecessary or superfluous.[3] To the contrary, various commonly given jury instructions reflect "common sense matters," which may already be within the ken of the jurors, but nonetheless merit emphasis given the nature of the case. Redbook Instruction 2.11, for example, reminds jurors that, among other things, the "demeanor and behavior of the witness on the witness stand," his "manner of testifying," and his "friendship or hostility toward other people concerned with th[e] case" should be considered in assessing the witness's credibility. All of that is a matter of common sense, but as the government no doubt agrees it nonetheless warrants a reminder before the jury begins its deliberations, particularly in a case of competing testimony regarding the same events. The same is true of Redbook Instruction 1.10 (Evaluation of Prior Inconsistent Statement of a Witness), which the government has proposed and which instructs that the jury may consider a witness's prior inconsistent statements in assessing the credibility of the witness's in-court testimony.

---

[3] Mr. Libby maintains, as argued in his Motion to Admit Expert Testimony, that most of the findings of memory research Dr. Bjork would have explained are not within the ken of the average juror, and that while properly formulated jury instructions are helpful, they are not a true substitute for expert testimony on the subject. *See* Reply of I. Lewis Libby in Support of his Motion to Admit Expert Testimony Under Federal Rule of Evidence 702 at 12-13 (Dkt. 142).

The government does not, because it cannot, dispute that in Mr. Libby's case issues of memory are highly relevant. Nor does it deny that a central and possibly outcome determinative question for the jury will be whether Mr. Libby innocently misremembered or deliberately lied about certain aspects of conversations he had with reporters. *See* Mem. Op. at 3. Under these circumstances, Mr. Libby's proposed instruction is far from "unnecessary," and any "weight" or emphasis it leads the jury to place on principles of memory is entirely appropriate. Govt. Resp. at 9-10.

In fact, this Court based its decision to exclude Dr. Bjork's proposed testimony in part on its offer "to provide the jury with an instruction that will remind them of the factors they may consider in assessing the accuracy of memory." Mem. Op. at 21. Likewise, the government argued that jury instructions could serve as an adequate substitute for expert testimony on memory. *See* Resp. to Mot. to Admit at 11, 17. Yet, the skeletal instruction the government proposes hardly mentions memory issues at all and does not identify a single "factor" that may have impaired the ability of Mr. Libby, or the government's witnesses, to remember accurately the conversations in question.[4]

---

[4] In the area of eyewitness identification, courts have emphasized the need for specific jury instructions—including instructions regarding factors affecting memory—to help to ensure the jury has in mind the information necessary to gauge the accuracy of an eyewitness's testimony. *See United States v. Telfaire*, 469 F.2d 552, 557, 558-59 (D.C. Cir. 1972); *United States v. Holley*, 502 F.2d 273, 277-78 (4th Cir. 1974) (reversing conviction for failure to give instruction on factors that may affect reliability of eyewitness identification); *United States v. Hodges*, 515 F. 2d 650, 653 (7th Cir. 1975) (holding that a trial court is required to instruct the jury on factors affecting eyewitness identification and that neither cross-examination nor a general credibility instruction may substitute for specific instructions). Similarly, the Court noted in its November 2 opinion that any lack of understanding jurors may suffer regarding memory can be addressed through the "lens of the actual trial process," including "instructions that advise the jury of the factors that may impact on the accuracy of memory." Mem. Op. at 17-18. That is exactly what Mr. Libby's proposed instruction is designed to achieve.

Having relied on the availability of jury instructions in convincing the Court to exclude Mr. Libby's proposed expert testimony, the government cannot now foist upon Mr. Libby a bare bones jury instruction that does not come close to reflecting the factors affecting memory about which Dr. Bjork would have testified. While Mr. Libby does not insist upon the particular language in the instruction he has proposed, the instruction given must reflect the specific principles that Dr. Bjork's testimony would have explained.

Second, the government argues that it would be "fundamentally unfair" to give the proposed instruction since the government will have no opportunity to refute the reliability of the "blanket assertions" the instruction contains. Govt. Resp. at 9, 11. That argument contradicts the government's insistence, on the prior page of its opposition, that Mr. Libby's instruction simply reflects "common sense matters." Govt. Resp. at 10 (noting that the Court found "every one of the[] topics" reflected in Mr. Libby's proposed instructions to be "within the knowledge and experience of the average juror"). And it is wholly at odds with the government's failure to challenge the reliability of the principles about which Dr. Bjork would have testified in opposing Mr. Libby's motion to admit. *See* Resp. to Mot. to Admit at 1; Mem. Op. at 9. Notably, this Court concluded that any such objection would have been overruled. Mem. Op. at 9 n.6.

Notwithstanding its prior position regarding the principles about which Dr. Bjork would have testified, the government now complains about its lack of opportunity to attack their legitimacy. Having successfully excluded Dr. Bjork's testimony on the ground that it reflected common sense matters known to all, the government cannot suddenly change its position in

order to deprive Mr. Libby of the jury instruction he seeks. It is the government's attempt to reverse course, not Mr. Libby's proposed instruction, that is fundamentally unfair.[5]

Finally, the government argues that Mr. Libby's proposed instruction must be rejected because it "includes generalizations that are misleading as stated." Govt. Resp. at 10. The government identifies just one example: the instruction regarding the relationship between confidence and accuracy in memory. *Id.* The government's contention that this instruction is misleading is curious in that the government itself previously insisted that it is common sense that people can "recount inaccurate facts with total confidence in their accuracy." Resp. to Mot. to Admit at 16. In any event, the government is free to detail any problems it has with the specific wording of this or other aspects of Mr. Libby's proposed instruction, and to offer alternative language. It cannot, however, seize on minor objections regarding the wording of Mr. Libby's proposal as a reason to reject it wholesale.

## VIII.  Mr. Libby's Proposed Jury Instruction No. 11: Obstruction of Justice

The government asserts three objections to this proposed instruction, none of which have any merit. *See* Govt. Resp. at 13-14. The first, which alleges that Mr. Libby's definition of "corruptly" is improper, has already been debunked. *See supra* at 1-3. The second alleges that the definition of "endeavor" proposed by Mr. Libby is "more complicated and less clear" than the government's proposal. *See* Govt. Resp. at 13-14. Mr. Libby's language, however, tracks the Supreme Court's definition of "endeavor." *See United States v. Aguilar*, 515 U.S. 593, 599 (1995) ("the endeavor must have the natural and probable effect of interfering with the due administration of justice") (quotation marks omitted).

---

[5] For the same reasons, the government's objection to the questions regarding memory in Mr. Libby's proposed voir dire, Govt. Resp. at 12 n.2, should also be rejected.

The third objection is that Mr. Libby's proposal improperly interjects elements of false statements and perjury into the obstruction charge by including definitions of "material" and "false." The indictment, however, explicitly charges Mr. Libby with obstructing justice by providing "materially false" statements and these definitions do nothing more than define these key terms. *See* Indictment, Ct. I, ¶ 32. Indeed, the government's proposed revision concedes that it *must* prove that Mr. Libby made materially false statements. *See* Govt. Resp. at 14 (proposing an instruction which includes the "materially false" language). If it did not, the instruction would risk constructively, and impermissibly, amending the indictment. *See* Def. Resp. at 4. Further, it would also be fundamentally unfair to Mr. Libby if jurors applied varying definitions of these terms across the indictment's five counts. The government also alleges that the nature of the charge is "unnecessarily confusing," without citing how it is so and just before proposing language remarkably similar to that proposed by Mr. Libby which it criticizes. *See* Govt. Resp. at 14.

Mr. Libby notes that the government's proposed language incorporates paragraphs numbered 1 through 3 from pages 23 of Mr. Libby's Proposed Jury Instructions. *See* Govt. Resp. at 14. These three paragraphs properly define the scope of the obstructive conduct alleged in Count One and should be used in this instruction. By contrast, use of the open-ended accusations referenced in the government's statement about the nature of Count One would permit Mr. Libby's conviction for unindicted and even innocent conduct beyond the metes and bounds set forth by the grand jury in Count One of the Indictment. *See* Govt. Prop. Instr. at 4.

The government also requests that the final paragraph of this instruction, which states that Mr. Libby knew the statements were false when he made them, be omitted. *See* Govt. Resp. at 14 ("omit the language that follows"). Mr. Libby does not object to this request.

Separately, Mr. Libby objects to using the following language proposed by the government: "making the following materially false and misleading statements." Govt. Resp. at 14. This language can easily be misinterpreted as implying that the materiality and falsity of the statements that follow have already been established. This is obviously incorrect and clearly prejudicial to Mr. Libby.

**IX.    Mr. Libby's Proposed Jury Instruction No. 12: False Statements**

The government asserts that Mr. Libby's fifth element—that he made the allegedly false statements for the purpose of misleading the FBI—is not a proper element of this crime. *See* Govt. Resp. at 5, 14. We acknowledge that caselaw in this circuit indicates that an intent to deceive somebody need not be shown for one to be guilty of false statements. We believe, however, that decisions from other circuit requiring proof of an intent to deceive correctly interpret 18 U.S.C. § 1001. *See, e.g., United States v. Shah*, 44 F.3d 285, 289 (5th Cir. 1995); *United States v. White*, 765 F.2d 1469, 1472 (11th Cir. 1985). We wish to preserve this issue for future review if necessary.

The government also states that Mr. Libby's proposed instruction fails to incorporate the requisite mental state. *See* Govt. Resp. at 16 (adding "knowingly and willingly" to Mr. Libby's proposed instruction). Mr. Libby agrees to a slightly modified version of the government's proposal: "Count Two alleges that Mr. Libby willfully made this statement to the FBI, knowing that it was false: [continue with description of the allegedly false statement]." Mr. Libby proposes the same slightly modified instruction with respect to Count Three: "Count Three alleges that Mr. Libby willfully made this statement to the FBI, knowing that it was false: [continue with description of the allegedly false statement]."

To keep the *mens rea* consistent, Mr. Libby amends the third element in the false statements list of elements in his proposed Instruction No. 1 (Preliminary Instruction Before Trial) and in Instruction No. 12 (False Statements) to read as follows: "That Mr. Libby made the statement *willfully*, knowing that it was false." (Change in italics.) Mr. Libby also requests that Instruction No. 12 include the government's definition of "willfully": "A person acts 'willfully,' as that term is used in these instructions, when that person acts deliberately, voluntarily, and intentionally." Govt. Prop. Instr. at 12.

The government's objection to Mr. Libby's definition of "material" was addressed above. *See supra* at 4-5.

## X.    Mr. Libby's Proposed Jury Instruction No. 13: Ambiguity

The government objects to this instruction on the ground that there is no factual basis for the instruction. *See* Govt. Resp. at 16. This objection is premature. No evidence has been adduced concerning the wording of the questions FBI investigators posed to Mr. Libby, nor are his answers squarely before the Court. Moreover, it is not clear which portions of Mr. Libby's grand jury testimony the parties will attempt to publish in their case-in-chief or in the government's rebuttal case. The Court should wait until the evidentiary record has been established before deciding whether this instruction is proper.

## XI.    Mr. Libby's Proposed Jury Instruction No. 14: Perjury

Two of the three bases for the government's objection to this proposed instruction—the definition of material and the inclusion of language regarding ambiguity—have already been addressed. The third objection—that the instruction's concluding paragraph, which states that the indictment is not evidence, must have been "inadvertently copied from another instruction" and should not be given—is incorrect. Govt. Resp. at 17. This paragraph is adapted from Redbook Instruction 2.06 and is included at the end of the charging instructions to remind jurors

that what they just heard were merely allegations and not evidence.  It therefore is appropriate

and should be provided.

## XII.    Instruction on Unanimity

Mr. Libby does not object to the government's proposal to include an additional

unanimity instruction stating that, for Mr. Libby to be found guilty, jurors must agree on which

statement was materially false.  *See* Govt. Resp. at 17.  However, if the Court does decide to

provide this instruction, then it must *also* be given as part of the instruction for Count One.  The

Indictment plainly alleges that Mr. Libby obstructed justice by providing materially false

statements and it would be patently unfair to allow jurors to find Mr. Libby guilty of this count if

they cannot agree on what conduct was obstructive.

Furthermore, the instruction should reflect the language and law of each count that the

false statements be material.  Mr. Libby therefore proposes the following language if the Court

does use this instruction:

> The indictment alleges that Mr. Libby made certain materially false statements to
> the FBI and to the grand jury.  Each count of the indictment alleges that Mr.
> Libby made more than one materially false statement.  You may find Mr. Libby
> guilty on a particular count if the government proves beyond a reasonable doubt
> that Mr. Libby made any one of the materially false statements alleged in that
> count and if the government proves the other elements of the offense.  In order to
> return a guilty verdict on a particular count, however, all jurors must unanimously
> agree on at least one false statement as alleged in the count you are considering.
> It is not enough, for example, that six of you agree that one false statement has
> been proved and six of you agree that a different false statement has been proved.
> You must all agree unanimously that the government has proved a particular false
> statement beyond a reasonable doubt.

*See* D.C. Form Instruction 2.72 (Unanimity); *United States v. Klat*, 156 F.3d 1258, 1266 (D.C.

Cir. 1998); *United States v. Hubbard*, 889 F.2d 277, 279 (D.C. Cir. 1989); *United States v.*

*Mangieri*, 694 F.2d 1270, 1281 (D.C. Cir. 1982).  *See also* Fifth Circuit District Judges

Association, *Pattern Jury Instructions (Criminal Cases)*, Instruction 1.25 (2001)*; Manual of*

*Model Criminal Jury Instructions for the District Courts of the Eighth Circuit*, Instruction 6.18.1623, Use Note 1 (2000) (citing cases); *Ninth Circuit Manual of Model Criminal Jury Instructions*, Instruction 8.112 (2003); *id.,* Instruction 8.66, Comment.

      If the Court decides to give the instruction proposed by the government, it should amend it to reflect the law, namely that the government must show that the false statements were material. As currently written, this key element is missing from the government's proposal.

## XIII.  Employment Status of Valerie Wilson

      The government objects to Mr. Libby's proposed instruction on the issue of Ms. Wilson's employment status on the grounds that the proposal is not "neutral"; that it "falsely suggests" the government does not have evidence that Ms. Wilson's employment status was classified during the relevant period; and that it "fails to note that Ms. Wilson's employment status was material to the grand jury's investigation." Govt. Resp. at 18. All three bases for the government's objection are without merit.

      First, the government's insistence on "neutral[ity]" ignores the fact that the parties will not be on equal footing with respect to this issue. To the contrary, absent a sufficiently stringent instruction, the jury is bound to speculate, or even assume, that Ms. Wilson's employment status was classified or covert; otherwise, why would this case have been brought? Any such assumption would clearly cause unfair prejudice to Mr. Libby, not least because he has been deprived of any ability to counter it. The government itself acknowledged at the December 19 hearing that it would be problematic to "create an atmosphere in which the jury just assumed that [Ms. Wilson] was classified or covert." 12/19/06 Tr. at 38. If that unfair assumption is to be avoided, it is imperative that the instruction on this issue make clear that Ms. Wilson's employment status is not an established fact, agreed to by the parties.

Second, whatever evidence the government may have regarding Ms. Wilson's actual employment status—and as the Court knows Mr. Libby has never been permitted to see that evidence—it will not be presented at trial. The government can, however, present evidence relevant to what Mr. Libby may have known or believed about Ms. Wilson's employment status, including possibly newspaper articles and commentary regarding that issue, which may be entirely inaccurate. The purpose of informing the jury that "no evidence" regarding Ms. Wilson's actual employment status has been presented is to guard against any misperceptions that state-of-mind evidence may create. The jurors cannot be mislead to believe that evidence the government offers as purportedly bearing on Mr. Libby's state of mind accurately reflects the actual status of Ms. Wilson's CIA employment.

Finally, questions of materiality do need to be addressed in the jury instructions. But doing so as the government proposes exacerbates the risk that the jury will draw unfounded conclusions regarding Ms. Wilson's actual employment status. Rather, the scope of the investigation should be addressed in this instruction in accordance with the guidance that was given by the Court at the December 19 hearing. *See* 12/19/06 Tr. at 39. That guidance, and the other considerations discussed above, are reflected in the following revised proposal:

> The government's investigation in this case related to the possible unauthorized disclosure of allegedly classified information. However, whether any such disclosure occurred, and whether the information at issue was in fact classified, is irrelevant to the charges that were eventually brought against Mr. Libby. Specifically, the questions of whether Valerie Wilson's CIA employment was, or was not, classified or covert, and whether disclosure of that status did, nor did not, pose a risk of damage to the national security, the CIA, or Ms. Wilson herself are irrelevant to your deliberations, and you should not consider them. Further, you should bear in mind that none of the evidence presented by either party on any issue establishes, or should be considered as establishing, whether Ms. Wilson's employment status was, or was not, classified or covert, or whether the disclosure of that status did, or did not, cause any actual damage to anyone.

**XIV.    Instruction on Testimony Regarding Classified Information**

In his December 15 filing, Mr. Libby proposed the following instruction pertinent to his

testimony concerning classified information:

> Mr. Libby will testify [has testified] about national security matters that
> commanded his attention during the period May 2003 through March 2004.
> Some aspects of those matters are classified. Thus, although Mr. Libby will be
> [has been] able to describe those national security matters and their effect on his
> state of mind in general terms, he is not [has not been] allowed to testify fully
> about information that he received and acted upon at the time, or about the
> importance of that information to him. You should bear this in mind when
> considering whether other events during the relevant time may have affected Mr.
> Libby's ability to remember accurately conversations concerning Ms. Wilson
> when he was asked about them in October and November 2003 and March 2004.
> Mr. Libby's counsel are also limited by the classification rules in what they can
> say in their opening statement and closing argument about the national security
> matters on which Mr. Libby was focused during the relevant period.
>
> In addition, you may notice [have noticed] that Mr. Libby seems [seemed]
> hesitant or uncomfortable when he describes [described] the national security
> matters he was dealing with during the time relevant to this case. For example, he
> might seem [have seemed] to be choosing his words unusually carefully, or to
> sound as if he is reading from a script. You must not hold this against Mr. Libby
> in any way.  In order to protect classified information, Mr. Libby has been
> required to use certain words and not use others, and avoid mentioning certain
> matters, according to very strict guidelines proposed by the government and
> approved by the Court.  As a result, Mr. Libby must [was required to] describe the
> national security matters differently than he would describe them if he were not
> required by the Court to follow certain rules regarding the disclosure of classified
> information.

I. Lewis Libby's Proposed Jury Instruction Concerning Classified Information at 5 (Dkt. 221).

Mr. Libby's instruction partially avoids two of the risks posed by the substitutions the

Court approved in the CIPA process:  (1) the risk that the jury will think that Mr. Libby's

testimony fully describes the national security matters that commanded his attention, and

therefore underestimate the urgency of those matters and the time and attention he devoted to

them; and (2) the risk that the jury will view Mr. Libby's strain and discomfort in testifying in

language other than his own as an indication that he is not credible.

The government proposes a far more limited classified information instruction:

> The Court advises the jury as follows: Much of the information Mr. Libby
> received in the course of his duties was classified, indeed highly classified.  I have
> previously read you a stipulation by the government in which the government
> agreed that Mr. Libby worked on these various matters and that the information
> Mr. Libby received was highly classified and much of it remains classified.
> Accordingly, in order to protect national security, the Court has directed that Mr.
> Libby and his counsel not describe certain classified details of which Mr. Libby
> was made aware.  In light of the Court's directions to Mr. Libby and his counsel,
> you should of course not hold against Mr. Libby the fact that he has not provided
> further details regarding those matters.

Govt. Resp. at 19.

The government's proposed instruction inadequately addresses the first danger that the
substitutions present and fails entirely to address the second.  On the first danger, Mr. Libby's
proposed instruction reduces (though it cannot completely eliminate) the risk that the jury will
underestimate the impact on Mr. Libby's memory of the matters he dealt with by specifically
instructing it to "bear . . . in mind [Mr. Libby's inability to testify fully about the matters that
commanded his attention] when considering whether other events during the relevant time may
have affected Mr. Libby's ability to remember accurately conversations concerning Ms. Wilson
when he was asked about them in October and November 2003 and March 2004."  The
government's instruction omits any such language and is thus deficient.

If the Court were (over our objection) to accept the government's language in lieu of the
first paragraph of Mr. Libby's proposed instruction, it should at a minimum replace the
misleading word "details."  The substitutions approved by the Court eliminate entire events and
concerns, not mere "details."  Thus, if the Court adopts the government's proposed instruction, it
should change the word "details" in the government's instruction to "matters" the first time it
appears and to "information" the second time it appears.  The last two sentences would read
(with changes noted in italics):

Accordingly, in order to protect national security, the Court has directed that Mr. Libby and his counsel not describe certain classified *matters* of which Mr. Libby was made aware. In light of the Court's directions to Mr. Libby and his counsel, you should of course not hold against Mr. Libby the fact that he has not provided further *information* regarding those matters.

As noted above, the government's proposed instruction fails entirely to address the second danger that the substitutions present—namely, the "scripting" problem. Mr. Libby's credibility is of central importance in the case, particularly because he is accused of lying and obstructing justice. There is a substantial risk that the jury will view his discomfort when testifying in words that are not his own as an indication that he is not credible. Given the nature of the government's substitutions, that risk cannot be entirely removed. However, the second paragraph of Mr. Libby's instruction is essential to at least reduce this danger.

For similar reasons, Mr. Libby objects to the government's proposal to use Redbook Instruction 2.28 (Defendant as Witness). This instruction states, in pertinent part, "As with the testimony of any other witness, you should give the defendant's testimony such weight as in your judgment it is fairly entitled to receive." As noted above, Mr. Libby is not able to testify in the same manner as other witnesses, including the government's witnesses against him. His words about certain subjects have been closely scripted, and he must remain cognizant of the boundaries imposed by the CIPA process. Therefore, this instruction, if it is given, should be modified to read (addition noted in italics):

> *Mr. Libby* has a right to become a witness in his own behalf. His testimony should not be disbelieved merely because he is the defendant. In weighing Mr. Libby's testimony, however, you may consider the fact that he has *an* interest in the outcome of this trial. As with the testimony of any other witness, you should give *Mr. Libby*'s testimony such weight as in your judgment it is fairly entitled to receive. *However, your assessment should also take into consideration the fact that Mr. Libby's has at times had to use certain words, not use other words, and avoid mentioning certain topics due to national security concerns. Unlike other witnesses, his testimony has been restricted, and you should not hold this fact against him in any way.*

**XV.    Documents Related to National Security Matters**

Mr. Libby does not object to the instruction proposed by the government.  *See* Govt.

Resp. at 19.  The defense notes, however, that certain classified documents and evidence may be

offered in this case for purposes other than establishing the effect on Mr. Libby's state of mind,

including possibly to impeach government witnesses.  Obviously, the government's proposed

instruction would not apply to that evidence.

**XVI.    Miscellaneous Points**

The government asserts that on November 13, 2006, it provided 15 additional Redbook

Instructions that the defendant did not.  Mr. Libby notes that the government did not provide

three of the instructions it lists as having provided: (1) 1.08 (Expert Testimony) (if applicable);

(2) 2.23 (Testimony of Immunized Witnesses) (if applicable); (3) 2.29 (False or Inconsistent

Statement by Defendant) (if applicable).  Mr. Libby does not believe that Instruction 1.08 will be

necessary as no expert testimony has been permitted by the Court and the government has not

noticed any intent to proffer expert testimony.  Mr. Libby does not object to Instruction 2.23 as

the Jencks material shows that at least one immunized witness will likely testify.

Mr. Libby does object to Redbook Instruction 2.29, which states:

> False or inconsistent statements that a defendant makes in explanation or defense, after a
> crime has been committed, do not create a presumption of guilt.  You may consider
> evidence of such false or inconsistent statements, however, as tending to prove the
> defendant's consciousness of guilt.  You are not required to do so.  You should consider
> and weigh evidence of the defendant's false or inconsistent statements with all the other
> evidence in the case and give it the weight that you believe it is fairly entitled to receive.
> It is up to you to decide whether the defendant made the statements, and whether they
> were, in fact, false or inconsistent.

Given that Mr. Libby is charged with making false statements and perjury, and the chronology of

events of this case, this instruction unnecessarily risks confusing the jury.  Mr. Libby told

investigators and the grand jury more than once that Mr. Russert mentioned Mr. Wilson's wife.

To the extent Mr. Libby's recollection of this point is incorrect, he argues that it is due to a perfectly innocuous reason—a natural failure of memory.  This instruction would mislead jurors into thinking that Mr. Libby's subsequent misrecollections to investigators and the grand jury may be considered as evidence of consciousness of guilt.  As the essence of Mr. Libby's defense is that any inaccurate statements were not deliberate, this instruction should not be given.

Finally, Mr. Libby reserves the right to request the Court give the following instruction at the appropriate time during trial:

> You have heard testimony that Mr. Libby and other witnesses spoke to reporters under various conditions, such as "off the record," "on background," and where one's comments are to be attributed to a particular job title.   There is nothing improper with a person being interviewed to request, or a reporter agreeing to grant, these interview conditions in order to maintain the confidentiality of the person speaking with the reporter.

## CONCLUSION

For the foregoing reasons, Mr. Libby's proposed jury instructions should be given, except where, as indicated above, he agrees to the government's proposed modifications or deletions.

Dated:  January 3, 2007                    Respectfully submitted,

/s/ Theodore V. Wells, Jr._____     /s/ William H. Jeffress, Jr._____
Theodore V. Wells, Jr.                       William H. Jeffress, Jr.
(D.C. Bar No. 468934)                       (D.C. Bar No. 041152)
James L. Brochin                               Alex J. Bourelly
(D.C. Bar No. 455456)                       (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton            Baker Botts LLP
  & Garrison LLP                              1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas             Washington, DC  20004
New York, NY  10019-6064               Tel:  (202) 639-7751
Tel:  (212) 373-3089                          Fax: (202) 585-1087
Fax: (212) 373-2217

/s/ John D. Cline
John D. Cline
(D.C. Bar No. 403824)
K.C. Maxwell
(*pro hac vice*)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax: (415) 875-5700