UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. NO. 05-394 (RBW) |
| ) | |
| I. LEWIS LIBBY ) | |
|     also known as "Scooter Libby," ) | |
|     Defendant. ) | |

**MEMORANDUM OF I. LEWIS LIBBY REGARDING THE JURY INSTRUCTIONS
CURRENTLY UNDER CONSIDERATION BY THE COURT**

On January 13, the Court provided to the parties certain jury instructions in the form it currently is considering providing them. These include the instructions for the substantive offenses, the instruction concerning Valerie Plame Wilson's status with the CIA, and an instruction regarding memory. Mr. Libby respectfully submits this filing in advance of tomorrow's hearing to propose certain modifications and additions to the instructions as currently written.

**I.      Obstruction of Justice Count**

As currently written, the instruction for Count One (Obstruction of Justice), explains:

> Count One of the indictment charges that on or about March 5 and March 24, 2004, in the District of Columbia, the defendant corruptly endeavored to influence, obstruct, or impede the due administration of justice in a federal judicial proceeding, specifically, proceedings before a grand jury, by knowingly and deliberately misleading and deceiving the grand jury as to when and how he acquired and thereafter disclosed to the media information concerning the employment of Valerie Wilson by the Central Intelligence Agency.

That language essentially tracks paragraph 31 of the indictment. Paragraph 32 of the indictment, however, goes on to define the scope of the allegedly obstructive conduct as the making of false and misleading statements and representations about the conversations Mr. Libby had with Tim Russert on or about July 10, 2003, the conversation Mr. Libby had with Matthew Cooper on or

about July 12, 2003, and the conversation Mr. Libby had with Judith Miller on or about July 12, 2003. The instruction currently under consideration does not similarly describe the allegedly obstructive conduct that the jury should consider in its deliberations. It omits the description provided in paragraph 32 of the indictment entirely.

Mr. Libby's concern is that untethered from the indictment, this instruction would allow or even encourage the jury to stray beyond the four-corners of the obstruction charge in assessing whether materially false or misleading statements were made. That concern is particularly acute given that the government intends to provide the jury large portions of the grand jury transcript to peruse freely as it conducts its deliberations. To ensure that the jury's deliberations remain appropriately focused and that the charges within the indictment are not constructively amended by virtue of the Court's instructions, Mr. Libby proposes that the following language be added to the instruction, immediately after the paragraph quoted above:

> According to Count One Mr. Libby carried out this corrupt endeavor by making the following allegedly false statements to the grand jury:
>
> 1. That when Mr. Libby spoke with Tim Russert of *NBC News*, on or about July 10, 2003, Mr. Russert asked Mr. Libby if Mr. Libby knew that Joseph Wilson's wife worked for the CIA and told Mr. Libby that all the reporters knew it; and that at the time of this conversation, Mr. Libby was surprised to hear that Mr. Wilson's wife worked for the CIA;
>
> 2. That Mr. Libby advised Matthew Cooper of *Time* magazine on or about July 12, 2003, that he had heard that other reporters were saying that Mr. Wilson's wife worked for the CIA, and further advised him that Mr. Libby did not know whether this assertion was true; and
>
> 3. That Mr. Libby advised Judith Miller of the *New York Times* on or about July 12, 2003 that he had heard that other reporters were saying that Mr. Wilson's wife worked for the CIA but that Mr. Libby did not know whether that assertion was true.

Notably, the government itself has previously proposed that the substance of paragraph 32 be incorporated into the instruction for Count One. *See* Government's Response to Defendant's Proposed Jury Instructions at 14 (Dkt. 227).

In addition, to ensure consistency with the scope of the indictment as written, Mr. Libby proposes that the description of the third element of the obstruction charge be modified as follows (modification denoted through underlining).

> (3.)  That, <u>through his testimony regarding his conversation with Tim Russert on or about July 10, 2003 and his conversations with Matthew Cooper and Judith Miller on or about July 12, 2003,</u> the defendant misled or deceived the grand jury as to when or how he acquired or thereafter disclosed to the media information concerning the employment of Valerie Wilson by the Central Intelligence Agency.  <u>Note that you must find that Mr. Libby's testimony regarding these particular conversations was intentionally false in order to return a conviction on this count.</u>

## II.  False Statements and Perjury Counts

Mr. Libby proposes three changes to the instructions currently under consideration for the False Statements and Perjury Counts.

First, similar to the Count One obstruction charge, Counts Two through Five of the indictment specifically identify which of Mr. Libby's statements to the FBI and the grand jury were allegedly false.  The instructions proposed by *both* parties track the language of the indictment and describe the specific statements at issue in these counts.  The Court's proposed false statements and perjury instructions, however, omit this language.

Just as the jury's deliberations regarding the obstruction count must be kept within the four corners of the indictment, it is equally important that jurors' deliberations on the false statements and perjury counts be focused on the indicted conduct—and not stray beyond that conduct to consider everything Mr. Libby said during two days of grand jury testimony and hours of FBI interviews.  That danger is easily prevented by incorporating into both the false

statement and perjury instructions a precise description of the statement or statements at issue, as is done in the final passages of Mr. Libby's proposed instructions 12 and 14. *See* I. Lewis Libby's Proposed Jury Instructions at 24-25, 28-30 (Dkt. 180) [hereinafter "Libby's Proposed Jury Instructions"].

Second, as written, the instruction for the perjury counts provides the following, proper definition of "material":

> A misrepresentation is "material" if it has a natural tendency to affect or influence, or is capable of affecting or influencing, the exercise of the Grand Jury's decision making process. The test is whether the false statement has the capacity to impair or pervert the functioning of the Grand Jury. In other words, a misrepresentation is material if it relates to an important fact as distinguished from some unimportant or trivial detail. It is not necessary for the government to prove, however, that the Grand Jury was, in fact, misled or influenced in any way by the false statement.

The instruction for the false statements, however, defines "material" as:

> A statement or representation is material if it had the natural tendency to influence, or be capable of affecting or influencing a governmental function. As related to this case, the question for you to answer in determining whether the statement or representation is material is whether it had the capacity to affect or influence the actions of the Federal Bureau of Investigation. However, the false statement or representation need not have actually influenced the actions of the Federal Bureau of Investigation, and the agents need not have been actually deceived.

While the definition used for the perjury counts properly instructs the jury that to be material a statement must be important, the definition used for the false statements counts allows the jury to convict based on a statement about an unimportant fact or trivial detail. *See* Mr. Libby's Response to the Government's Proposed Jury Instructions at 5 (Dkt. 226); Mr. Libby's Reply in Support of His Proposed Jury Instructions at 4-5 (Dkt. 229). To ensure the jurors apply the same and proper definition of material for both the perjury and the false statements counts, the Court should correct the definition in the false statements instruction by adding the following as the penultimate sentence of the definition:

> In other words, a statement or representation is material if it relates to an important fact as distinguished from some unimportant or trivial detail.

Finally, Mr. Libby proposes that the words "and willfully" be added after "knowingly" in the first sentence of the Court's proposed False Statements instruction. He further proposes that the description of the third element be modified as follows:

> That in making the false, fictitious, or fraudulent statement or representation, the defendant acted willfully, <u>knowing that it was false</u>.

Also, to reflect the statutory language, the defense proposes that "knowingly and willfully" be added to the excerpt of 18 U.S.C. § 1001 after "government of the United States."[1]

### III.  Valerie Plame Wilson's Status with the CIA

As explained in previous briefing, there is a substantial danger in this case that the jury will automatically assume Ms. Wilson was in fact a covert agent and that disclosure of her status did in fact cause or pose a risk of harm to the national security—even though both sides, and the Court, agree that those are entirely irrelevant issues in this case. The instruction under consideration by the Court partially addresses that concern. But to further reduce the risk of unfair prejudice, Mr. Libby proposes two changes. The defense does not, through this proposal, waive the right to propose further modifications, as necessary, at the time of trial.

First, in the second paragraph regarding state of mind evidence, Mr. Libby proposes that the instruction reiterate that evidence offered to show Mr. Libby's state of mind must not be taken as proof of the truth of the matters reflected in that evidence. The defense notes, in that regard, that the government's recently provided exhibit list includes newspaper articles flatly stating that Ms. Wilson *was* a covert agent, and presumes that disclosure of her status *did* cause

---

[1] The defense notes that in the Perjury instruction some language appears to be missing from the end of the sentence beginning, "In reviewing the testimony . . . ," and suggests that the following language be added: "mutually understood the words to have a different meaning."

harm to the national security. *See, e.g.*, Government Exhibit 423 (LL011-11052) (Pincus & Allen, *Leak of Agent's Name Causes Exposure of CIA Front Firm*, Wash. Post., Oct. 4, 2003 A03).

To ensure Mr. Libby does not suffer unfair prejudice as a result of such evidence, the defense proposes adding the following after the first sentence of the second paragraph of this instruction:

> You must, however, keep in mind that none of the evidence offered to show Mr. Libby's state of mind establishes anything about what Ms. Wilson's status actually was or what damage, if any, was or could have been caused by the disclosure of that status.

Second, the instruction as currently written tells the jury that it "may consider the nature of the FBI's and the grand jury's investigations, including the possible crimes that were being investigated, in determining whether the charged false statements and declarations were material to those investigations." The defense agrees that that is a proper statement of the law, but submits that it has no place in this particular instruction. That sentence implicitly refers to the criminal act of disclosing, without authorization, classified information regarding an individual's affiliation with the CIA. Placed here, the sentence exacerbates the already substantial risk that the jury will conclude, without any foundation, that Ms. Wilson's employment with the CIA was covert or classified. The sentence, if included, should be placed in the portion of the Court's instructions addressing the definition of materiality.

## IV.   Memory Instruction

In its November 2 order denying Mr. Libby's motion to admit expert testimony, the Court concluded that the purpose to be served by Dr. Bjork's testimony could be accomplished through jury instructions. *See* Memorandum Opinion at 21 (Dkt. 169). The Court has now given an indication of the type of instruction on memory that it would consider providing. The defense respectfully submits that the instruction currently under consideration is not an adequate

substitute for expert testimony on the findings of memory research that are acutely, and perhaps uniquely, relevant in this case. *See* Reply of I. Lewis Libby In Support Of His Proposed Jury Instructions at 10 n.3 (Dkt. 229). Accordingly, Mr. Libby hereby renews his request to admit Dr. Bjork's testimony in his defense. Alternately, Mr. Libby urges the Court to reconsider providing the memory instruction in the form proposed by the defense, which comes much closer to remedying the absence of expert testimony. Libby's Proposed Jury Instructions at 18-19.

In the event the Court denies both of those requests, Mr. Libby proposes that, at the least, the Court make the changes described below to the memory instruction currently under consideration. Mr. Libby does not, through this proposal, waive the right to object to the exclusion of expert testimony on memory or to the Court's decision not to give the memory instruction in the form he originally proposed.[2]

First, there are likely to be instances in this case where the difference between two witnesses' recollections of exactly what was said in a particular conversation will be slight. Accordingly, Mr. Libby requests that the Court remind the jurors that it is appropriate to take into account that one's ability to recall the precise words used in a conversation, as opposed to the general gist of a conversation, drops off quite rapidly after the conversation occurs, indeed within a matter of days.

Second, given that the three conversations fundamentally at issue in this case took place over the telephone, Mr. Libby requests that the jury be instructed that a person who hears a conversation is less likely to recall the substance of the conversation accurately than a person

---

[2] As previously noted, it remains Mr. Libby's position that while properly formulated jury instructions are helpful, they cannot effectively replace the need for expert testimony on the findings of memory research relevant to this case. *See* Reply of I. Lewis Libby in Support of his Proposed Jury Instructions 10 n. 3 (filed Jan. 3, 2007) (Dkt. 229).

who both hears and observes that conversation. Both of these purposes can be accomplished by including part 9 of Mr. Libby's original proposal in the memory instruction. *Id.* at 19.

Third, the defense may well argue that Mr. Libby or government witnesses have mistakenly combined accurate memories of different conversations or events to form one *in*accurate composite memory of an event or conversation. Likewise, the defense may argue that Mr. Libby, or government witnesses, have remembered the content of a conversation more or less accurately, but have misremembered with whom he or she had that conversation. Because the possibility of those specific types of memory error is highly relevant in this case, Mr. Libby requests that the Court's instruction on memory include (in some form) parts 2 and 3 of Mr. Libby's originally proposed instruction. *Id.* at 18.

In addition to adding this new language, Mr. Libby proposes that the Court make the following changes to the language of the memory instruction currently under consideration. As written, part 3 reads:

> The circumstances that existed when the person was exposed to the events he or she is asked to recall.

To ensure adequate understanding of the principle described in this statement, Mr. Libby proposes that the language be modified to read:

> The circumstances that existed when the person was exposed to the events he or she is asked to recall <u>may affect his or her ability to recall those events accurately</u>.

Similarly, part 4 of the current instruction reads:

> The circumstances that existed when the person was asked to recall the earlier event.

Mr. Libby proposes that this language be changed to read:

> The circumstances that existed when the person was asked to recall the earlier event <u>may affect his or her ability to recall the event accurately</u>.

V.  **Additional Proposed Instructions**

In addition to the modifications to the instructions currently under consideration, Mr. Libby also proposes that two additional instructions, not previously submitted, be given to the jury. Both were provided in the case of *United States v. Deaver*, Cr. No. 87-00096 (TPJ), which involved similar circumstances and charges.

First, in light of Mr. Libby's former employment and the current and former employment of certain witnesses, the defense submits that the following instruction is appropriate:

> During the trial you heard the testimony of several high-ranking present and former government officials. The testimony of such witnesses should be considered by you the same way you consider other evidence in the case. You should evaluate their credibility by using the same common sense and experience you apply to all other witnesses. You should not give either greater or lesser credence to the testimony of a witness merely because he or she is or was a high-ranking government official.
>
> I remind you that everyone is equal before the law. That means that former high-government officials, like Mr. Libby, are not to be held to any different standard of conduct than any other citizen. You are to treat Mr. Libby in this case just like you would treat a defendant in any other case in determining the question of his innocence or guilt.

Second, Mr. Libby proposes adding the following language at the end of both the false statements and perjury instructions:

> The defendant may have given incorrect [statements to investigators/testimony to the grand jury] because of an honest mistake of fact, confusion, haste, oversight or carelessness. If the defendant made an erroneous and incorrect statement because he honestly could not remember, through misunderstanding, or due to a slip of the tongue the defendant would not be guilty of making the false statement [knowingly and willfully/knowingly].

## CONCLUSION

For the foregoing reasons, Mr. Libby's respectfully submits that these modifications and additions be made to the jury instructions currently under consideration..

Dated: January 17, 2007 Respectfully submitted,

/s/ Theodore V. Wells, Jr.
Theodore V. Wells, Jr.
(D.C. Bar No. 468934)
James L. Brochin
(D.C. Bar No. 455456)
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3089
Fax: (212) 373-2217

/s/ William H. Jeffress, Jr.
William H. Jeffress, Jr.
(D.C. Bar No. 041152)
Alex J. Bourelly
(D.C. Bar No. 441422)
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 639-7751
Fax: (202) 585-1087

/s/ John D. Cline
John D. Cline
(D.C. Bar No. 403824)
K.C. Maxwell
(*pro hac vice*)
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
Tel: (415) 626-3939
Fax: (415) 875-5700