THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CR. NO. 05-394 (RBW) |
| v. ) | |
| ) | |
| I. LEWIS LIBBY, ) | |
|     also known as Scooter Libby ) | |

**GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT
NONDISCLOSURE AGREEMENTS EXECUTED BY DEFENDANT**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, Special Counsel, respectfully submits this motion *in limine* to admit nondisclosure agreements executed by the defendant. As discussed below, these agreements are highly relevant to defendant's state of mind and motive to lie at the time of the charged offenses, and should be admitted.

### INTRODUCTION

As this Court is aware, defendant is charged with obstruction of justice, perjury, and making false statements to investigators, in violation of 18 U.S.C. §§ 1503, 1623 and 1001 in connection with an investigation concerning leaks to reporters of previously-classified information regarding the employment of Valerie Plame Wilson, the wife of former Ambassador Joseph Wilson. While the government has agreed not to present evidence at trial to establish that Ms. Wilson's employment status was *in fact* classified in June and July 2003, the government intends to offer proof to establish that: (a) the FBI and grand jury investigations defendant sought to obstruct concerned the *possible* unauthorized disclosure of classified information and the *possible* unlawful disclosure of a covert agent; (b) the false information defendant is charged with providing to investigators and the grand jury was material to both the FBI and the grand jury investigations; (c) defendant knowingly made

false statements to the FBI and the grand jury; and (d) defendant had a motive to lie in that, at the time he made the charged false statements, he had reason to fear that the information regarding Ms. Wilson that he disclosed to reporters may have been classified, and that Ms. Wilson may have been a covert CIA officer, and was well aware of the potential consequences of his having disclosed classified information. Specifically, the government intends to prove that, at the time he made the charged false statements, defendant was aware that, if Ms. Wilson's employment status was in fact classified, or that Ms. Wilson was in fact a covert CIA officer, in addition to potential criminal prosecution under a number of statutes, defendant faced the possible loss of his security clearances, removal from office, and termination from employment as a result of his disclosures to *New York Times* reporter Judith Miller and *Time* magazine reporter Matthew Cooper.

      As part of its proof on this issue, the government seeks to introduce in evidence at trial five non-disclosure agreements executed by defendant during the course of his employment as the Vice President's Chief of Staff and National Security Advisor, and as the President's National Security Advisor. See GX5A-GX5F, copies of which have been provided to the Court and defense counsel. These agreements are signed instruments having independent legal significance, and thus are non-hearsay, and also are admissible as admissions of a party-opponent. Because these agreements are probative of defendant's state of mind at the time of the charged offenses, they should be admitted.

## ARGUMENT

      In this case, the defendant is charged with obstruction, perjury, and false statements with respect to FBI and grand jury investigations into whether crimes were committed by the public disclosure of the CIA employment of Valerie Plame Wilson. Evidence of defendant's knowledge of the possibility that this information was classified, or that Ms. Wilson was a covert officer of the

2

CIA, and defendant's knowledge of all the potential adverse consequences of disclosure of classified information, or information concerning the identity of a covert officer, is obviously highly probative of defendant's motive to lie to the FBI and the grand jury in this case and highly probative of the facts, which the government is obligated to prove beyond a reasonable doubt, that defendant acted knowingly and intentionally in making false statements to both the FBI and the grand jury and, with respect to Count 1, that he acted with the intent to obstruct the grand jury's investigation. Defense counsel argued repeatedly in his opening statement that defendant had no motive to lie. See Tr. 54 ("He's innocent and no motive to lie."); Tr. 88-89 ("Now, Mr. Fitzgerald suggested that Mr. Libby might have a motive to lie because Mr. McClellan, the President's Press Secretary, went on T.V. and said, anybody involved in leaking classified information, you are going to lose your job. You won't be part of this administration. Well, you will find that Mr. Libby was not concerned about losing his job in the Bush administration."); Tr. 104 ("He is innocent and no motive to lie.") Thus, a fundamental question the jury will be asked to decide in this case is whether defendant lied intentionally in order to avoid the potential consequences of having disclosed information concerning Ms. Wilson's employment to reporters.

The government seeks to offer evidence demonstrating that one of the grounds for defendant's motive to lie was his awareness of his duty to safeguard classified information, and of the potential consequences of breaching that duty, an awareness defendant obtained in part through one or more "security indoctrination[s]" concerning the nature and protection of classified information. On January 23, 2001, January 25, 2001, February 7, 2001, May 11, 2001, and March 6, 2003, respectively, during the course of defendant's employment in the Office of the Vice President, defendant executed five separate non-disclosure agreements acknowledging that he

received such indoctrination, and that he was specifically warned of the consequences of improperly disclosing classified information. By executing these agreements, defendant acknowledged that he was advised of his obligations with respect to classified information, including marked and unmarked written communications and oral communications, to which he had access in the scope of his employment as the Vice President's Chief of Staff and National Security Advisor, including his obligations not to disclose such information to unauthorized persons and, in the event of uncertainty, to confirm with an authorized official prior to disclosure that the information at issue is unclassified. Defendant also acknowledged that he had been advised that his "unauthorized disclosure, unauthorized retention, or negligent handling of classified information . . . could cause damage or irreparable injury to the United States or could be used to the advantage of a foreign nation." Finally, defendant acknowledged that he had been advised of the potential penalties for unauthorized disclosure of classified information, including "termination of any security clearances I hold, removal from any position of special confidence and trust requiring such clearances, or the termination of my employment . . . ," and potential prosecution under various criminal statutes.

      Rules 401 and 402 of the Federal Rules of Evidence generally require the admission of "relevant" evidence, which is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than would be without the evidence." The nondisclosure agreements executed by defendant tend to establish that defendant undoubtedly fully understood the serious obligations imposed by the nondisclosure agreements – and the severe potential consequences of violating them. Given other evidence that will establish that defendant was also aware at the time he made the charged false statements that Ms. Wilson's employment may have been classified, and that the FBI and grand jury were

4

investigating possible crimes arising from the disclosure of Ms. Wilson's CIA employment to reporters, the nondisclosure agreements are directly relevant to the issue of whether defendant lied intentionally about his role in receiving and disseminating information concerning Ms. Wilson's employment. Thus, the agreements should be admitted.

The relevance of the nondisclosure agreements is not undermined by the fact that defendant has not been charged with disclosing classified information or violating the agreements. At the time defendant made the charged false statements, he knew that he had disclosed to reporter Miller, and confirmed to reporter Cooper, that Ms. Wilson worked for the CIA. Defendant's awareness that these disclosures could constitute violations of the nondisclosure agreements he had executed, and the potential consequences of violating those agreements, is directly relevant to the most important issue before the jury in this case – defendant's state of mind at the time of the charged false statements. See generally, *United States v. Safavian*, 435 F.Supp.2d 36, 46 (D.D.C. 2006)(district court allowed the government to introduce e-mails related to public official's efforts on behalf of private parties, not to prove the official's actual abuse of his government employment or acceptance of bribes but, rather, to prove his motive to lie when speaking to investigating agents). Consistent with the position the government has taken prior to, and during trial, the government has no objection to a limiting instruction stating that the nondisclosure agreements are to be considered only with respect to defendant's state of mind, and not as an allegation that the defendant in fact disclosed classified information in violation of the agreements.

## **CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that it be permitted to introduce Government Exhibits 5A through 5F into evidence for the limited purpose of establishing defendant's state of mind at the time of the charged offenses.

          Respectfully submitted,

          _/s/_
          PATRICK J. FITZGERALD
          Special Counsel

          Debra Riggs Bonamici
          Kathleen M. Kedian
          Peter R. Zeidenberg
          *Deputy Special Counsels*

          Office of the Special Counsel
          U.S. Department of Justice
          1400 New York Ave., N.W.
          Washington, D.C.  20530
          202-514-1187

Dated:   January 25, 2007

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 25th day of January 2007, I caused true and correct copies of the foregoing to be served on the following parties by electronic mail:

      William Jeffress, Esq.
      Baker Botts
      The Warner
      1299 Pennsylvania Avenue, N.W.
      Washington, DC 20004-2400
      Facsimile: 202-585-1087

      Theodore V. Wells, Esq.
      Paul Weiss
      1285 Avenue of the Americas
      New York, NY 10019-6064
      Facsimile: 212-373-2217

      John D. Cline, Esq.
      Jones Day
      555 California Street
      San Francisco, CA 94104
      Facsimile: 415-875-5700

                                                      Patrick J. Fitzgerald
                                                      Special Counsel
                                                      U.S. Department of Justice
                                                      1400 New York Ave., N.W.
                                                      Washington, D.C.  20530
                                                      202-514-1187

                                                      By: _____/s/_____
                                                      Debra Riggs Bonamici
                                                      Deputy Special Counsel

Dated: January 25, 2007