# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## MOTION *IN LIMINE* OF I. LEWIS LIBBY

Mr. Libby respectfully submits this motion *in limine* to preclude the government from (1) eliciting testimony from Ari Fleischer concerning the reasons why he sought a grant of immunity before speaking with investigators and testifying before the grand jury, and (2) introducing through Mr. Fleischer a September 28, 2003 *Washington Post* article that supposedly spurred his decision to seek immunity.

## I.    BACKGROUND

Mr. Fleischer is expected to testify for the government beginning on Monday, January 29, 2007.  The government has informed the Court that it intends to elicit testimony from Mr. Fleischer on direct examination about why he sought immunity. According to the government, on September 27 or 28, 2003, Mr. Fleischer:

> [R]ead a newspaper article, which indicated that there was a criminal investigation into the possible unauthorized disclosure of a covert agent.  And he read that, and he knew that he had conveyed information about that woman, Valerie Wilson, to reporters.  That was information that had been previously conveyed to him by Mr. Libby.
>
> And he realized, when there was an ongoing criminal investigation, I don't want to put words in his mouth, but basically it was one of those

> moments when your heart goes in your throat, and
> you think, I could be in very big trouble here. And
> the following day he obtained legal counsel and
> began discussing with his attorney what kind of
> predicament he was in.

Jan. 25, 2007 P.M. Trial Tr. at 109.

The newspaper article in question, *Bush Administration Is Focus of Inquiry*, appeared in the *Washington Post*, and it announced the start of the Justice Department's investigation into the leak to Robert Novak of Valerie Plame's name and occupation. In addition to reporting that "a senior administration official said that . . . two top White House officials called at least six Washington journalists and disclosed the identity and occupation of Wilson's wife," which disclosure was "meant purely and simply for revenge," the article contained several misleading statements concerning the laws applicable to the disclosure of a covert CIA employee's identity. *Id.* at 108; Mike Allen & Dana Priest, *Bush Administration Is Focus of Inquiry*, WASH. POST, Sept. 28, 2003 (attached as Exhibit A).

## II.    ARGUMENT

A.    The Defense Has Not – and Will Not – Put At Issue The Reasons Behind
Mr. Fleischer's Decision To Seek Immunity

On Thursday, the Court indicated that the government's ability to offer the article and testimony from Mr. Fleischer might depend on the extent to which the defense attacked Mr. Fleischer's credibility based on his immunity agreement. The defense has not opened the door, and does not plan to open the door, to testimony about the reasons that contributed to Mr. Fleischer's decision to seek immunity. The defense merely plans to bring out the basic fact that Mr. Fleischer has an immunity agreement with the government. The defense is also likely argue to the jury that it should consider whether

this agreement gives Mr. Fleischer a reason to provide testimony in a manner that will curry favor with the government. But the defense will not elicit testimony or make arguments about why Mr. Fleischer chose to seek immunity.

Contrary to what the government has suggested, the defense did not go beyond this position in opening statement. In that statement, defense counsel merely made the unremarkable observation that, because of his immunity deal, "Mr. Fleischer is in a different position than any other witness in this case." Jan. 23, 2007 P.M. Trial Tr. at 36. Defense counsel also commented that Mr. Fleischer "may have issues where [his] credibility should be questioned because [he has] an arrangement." *Id.* at 38. These statements cannot fairly be interpreted to suggest that the defense has put at issue the reasons why Mr. Fleischer sought immunity.

B.     The Government's Proposed Evidence Is Not Relevant, Is Highly Prejudicial, and Should Be Excluded

The government's attempt to introduce two inflammatory pieces of evidence should fail for a basic reason: the government offered no rationale for why Mr. Fleischer's testimony concerning his state of mind after reading the *Washington Post* article is relevant to any matter at issue in this case. Instead, it appears that the government is attempting to persuade the jury through Mr. Fleischer's testimony that Mr. Libby had a motive to lie because he was in a similar position to Mr. Fleischer. Because Mr. Fleischer feared criminal prosecution in light of the article in question, this argument goes, Mr. Libby must have had a similar fear, and therefore motive to lie. This Court should not allow the government to prejudice Mr. Libby by using testimony concerning *Mr. Fleischer's* state of mind for this impermissible purpose. Accordingly, the

government should be precluded from eliciting such testimony from Mr. Fleischer under Rule 403.

The evidence the government seeks to admit through Mr. Fleischer is prejudicial to Mr. Libby for another reason as well. If Mr. Fleischer testifies—as the government has represented he will—that reading the article caused him to fear that he may have committed a crime by disclosing to reporters that Joseph Wilson's wife worked for the CIA, the jury may reach two mistaken and highly prejudicial conclusions. *First*, the jury may erroneously conclude that Mr. Fleischer in fact committed a crime (disclosing the identity of a covert CIA employee) that he was never charged with. *Second*, and even more perverse, the jury may be misled into believing that Mr. Libby, who allegedly told Mr. Fleischer information about Mrs. Wilson, also committed the same hypothetical crime. That would be improper. In an analogous situation, where a government witness has pled guilty, that plea "obviously may not be used as substantive evidence of the guilt" of a defendant. *See, e.g., United States* v. *Tarantino*, 846 F.2d 1384, 1404-05 (D.C. Cir. 1988). This reasoning applies with equal or greater force here. The jury should not consider Mr. Fleischer's fear of prosecution as having any bearing on Mr. Libby's guilt or innocence. This is particularly true because Mr. Fleischer's state of mind relates to a offense that neither he nor Mr. Libby was ever charged with.

The Court has explicitly held that this trial will focus on Mr. Libby's state of mind with respect to the charged offenses, and that "the only question the jury will be asked to resolve in this matter will be whether the defendant intentionally lied . . . ." June 2, 2006 Order at 2. The government's proposed testimony threatens to distract the jury

by encouraging them to focus instead on Mr. Fleischer's state of mind concerning

uncharged conduct, and to impute that state of mind to Mr. Libby.

       The Court and the parties have discussed at some length whether evidence

of the underlying investigation by the government would be admissible in this case.  The

government has stated that evidence concerning the underlying investigation "lack[s]

relevance to the issues on trial."  Gov't Motion *in Limine* at 6 (Oct. 30, 2006).  Indeed,

when asked by the Court what relevance evidence concerning Mr. Fleischer's

motivations for seeking immunity would have, the government failed to provide any

direct answer.  Because whatever (as yet unarticulated) probative value Mr. Fleischer's

testimony would have is outweighed by the risk of unfair prejudice and confusion of the

issues, this evidence should be excluded under Rule 403.  *See* Fed. R. Evid. 403 advisory

committee's note (defining "unfair prejudice" as "an undue tendency to suggest decision

on an improper basis").[1]

       In addition, there is a fundamental disconnect between the evidence the

government seeks to offer and Mr. Fleischer's decision to seek immunity.  The

government seeks to offer evidence that Mr. Fleischer read a *Washington Post* article that

made him think he "could be in very big trouble," and the next day "obtained legal

counsel and began discussing with his attorney what kind of a predicament he was in."

---

[1]   The government's argument that the September 28 article may be admissible in other circumstances is no reason to allow Mr. Fleischer to testify about the effect the article had on his state of mind at the risk of substantial prejudice to Mr. Libby.  The Court therefore should reject the government's argument that the prejudice to Mr. Libby as a result of Mr. Fleischer's testimony will be negligible because the government intends to introduce (i) a similar October 12, 2003 article that Mr. Libby may have reviewed; and (ii) testimony that the F.B.I. was investigating the allegations in the September 28 article.  *See* Jan. 25, 2005 P.M. Trial Tr. at 111-12.

Jan. 25, 2007 P.M. Trial Tr. at 109. Mr. Fleischer was not granted immunity until February 13, 2004. The government's own version of events indicates that Mr. Fleischer's decision to request immunity was based on discussions with his attorney, not on a newspaper article.

Under these circumstances, it would be misleading to suggest to the jury that an incorrect statement of the law in a *Washington Post* story, rather than legal advice, led Mr. Fleischer to seek immunity. If the government makes such a suggestion at trial, the defense should have the right to inquire about the other factors that contributed to Mr. Fleischer's decision-making—including what advice, if any, his attorney provided about immunity.

Finally, the testimony the government seeks to elicit will not rehabilitate Mr. Fleischer's credibility in the event that the defense urges jurors to consider his immunity agreement when they evaluate his testimony. That is, evidence that Mr. Fleischer was afraid of prosecution based on a *Washington Post* article will not rebut the defense's argument that the immunity deal gives Mr. Fleischer a reason to shade his testimony in a way that will please the government.

In sum, the government has articulated no legitimate purpose for the testimony it would like to elicit from Mr. Fleischer.

## CONCLUSION

For the foregoing reasons, I. Lewis Libby respectfully requests that the Court grant this motion *in limine* and preclude the government from eliciting testimony from Ari Fleischer regarding his reasons for seeking immunity as well as the September 28, 2003 article on which he purportedly based that decision.

Dated:  January 26, 2007                              Respectfully submitted,


_____/s/_____                   _____/s/_____
Theodore V. Wells, Jr.                          William H. Jeffress, Jr.
(DC Bar No. 468934)                             (DC Bar No. 041152)
James L. Brochin                                Alex J. Bourelly
(DC Bar No. 455456)                             (DC Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                   Baker Botts LLP
  & Garrison LLP                                1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas                     Washington, DC  20004
New York, NY  10019-6064                        Tel:  (202) 639-7751
Tel:  (212) 373-3089                            Fax: (202) 585-1087
Fax: (212) 373-2217


                                                _____/s/_____
                                                John D. Cline
                                                (D.C. Bar No. 403824)
                                                Jones Day
                                                555 California Street, 26th Floor
                                                San Francisco, CA  94104
                                                Tel:  (415) 626-3939
                                                Fax: (415) 875-5700