UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    v.                                                         )<br>)<br>I. LEWIS LIBBY                                           )<br>    also known as "Scooter Libby,"       )<br>    Defendant.                                          ) | CR. NO. 05-394 (RBW) |

**MEMORANDUM OF I. LEWIS LIBBY REGARDING THE GOVERNMENT'S
OBLIGATION TO PRODUCE DOCUMENTS AND INFORMATION RELEVANT
TO MR. FLEISCHER'S GRANT OF IMMUNITY**

On January 25, the Court requested that the defense provide legal authority in support of its request that the government produce any and all documents or information concerning communications between the government and Ari Fleischer (directly or through counsel) regarding the expected testimony Mr. Fleischer would provide if granted immunity. Mr. Libby submits this memorandum in response to that request.

### BACKGROUND

In a letter dated December 29, 2006, counsel for Mr. Libby requested that the government, in accordance with the requirements set forth in *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), produce potentially exculpatory evidence relating to the government's grant of immunity to Ari Fleischer, a key witness for the prosecution. In particular, defense counsel requested "[a]ny proffer that Ari Fleischer made to the government, either in person or through counsel, before receiving immunity." Counsel for the government responded, in a letter dated January 10, 2007, that "Mr. Fleischer made no proffers to the government before he received immunity."

To ensure the government understood the exact nature of Mr. Libby's request, defense counsel sent a follow-up letter, dated January 11, 2007, explaining that:

> At bottom, what we want to know is whether Mr. Fleischer was given "blind immunity," in that the government had no idea from discussions with his counsel as to what he would say once immunized, or instead did his counsel communicate in some fashion to the government about the expected nature of Mr. Fleischer's testimony, orally or in writing, prior to the grant of the immunity order. If Mr. Fleischer's attorneys did make an oral proffer of any nature, please provide us with either the notes taken during that proffer or a description of its contents.

In other words, defense counsel asked the government to confirm that neither Mr. Fleischer nor Mr. Fleischer's counsel "on Mr. Fleischer's behalf" offered any descriptions, of any nature, regarding Mr. Fleischer's expected testimony should the government decide to grant him immunity.

Counsel for the government, in a letter dated January 12, 2007, responded that "Mr. Fleischer made no proffers to the government prior to his being given a grant of immunity." Counsel for the government concluded that it possessed "no other properly discoverable information regarding the circumstances surrounding [Mr. Fleischer's] grant of immunity to which [defense counsel] is entitled."

On January 26, counsel for Mr. Libby summarized for the Court the government's response to the foregoing requests and noted that, based on this response, the defense concluded that Mr. Fleischer had been granted "blind immunity." Jan. 25, 2007 Afternoon Trial Tr. at 119. Counsel for the government thereafter indicated that Mr. Fleischer had not, in fact, been granted blind immunity but maintained that it nonetheless did not have "any proffers that would qualify in our view" as discoverable. *Id.* It stated that "[t]here were no factual proffers made by Mr. Fleischer" to the government. *Id.* Subsequently, in response to questions from the Court, the government's counsel stated that he "got no *specifics* as to what [Mr. Fleischer's] proffer would

be about," and then made what appear to be inconsistent statements about whether he had learned that Mr. Fleischer could provide information about Mr. Libby in particular. *Id.* at 120.

Finally, the government's counsel made clear that it *did* know, prior to granting Mr. Fleischer immunity, that Mr. Fleischer *did* have "some relevant knowledge" about the case. *Id.* at 122. And it made clear that it gave Mr. Fleischer immunity for the purpose of obtaining that information:

> I didn't want to give immunity. *And I did it reluctantly because I didn't have information and I wanted [it]* . . . . I'm not going to represent conversations from two years ago, other than that I did not know what we were going to get when he went into the Grand Jury, other than *I knew it was going to be relevant to the case.* [Defense counsel is] not entitled to discovery on it.

*Id.* at 123-24 (emphasis added).

The government counsel's statements at trial thus indicate the following: (1) Mr. Fleischer, himself or through counsel, communicated to the government that he had information relevant to the government's case, and about which he would not testify unless the government granted him immunity from prosecution; (2) Mr. Fleischer, himself or through counsel, gave the government at least some indication of the nature of the information about which he could testify, *see id.* at 122 ("We understood [before giving immunity] that Mr. Fleischer had some relevant knowledge, and he had information. He spoke to people. He did something with information."); and (3) the government determined that the testimony Mr. Fleischer would provide would be relevant to its case and for that reason granted Mr. Fleischer immunity.

Notwithstanding the foregoing, the government maintains that *Brady* and *Giglio* do not require disclosure of information or documents concerning communications between Mr. Fleischer (or his counsel) and the government relating to the government's grant of immunity to

Mr. Fleischer. It insists that because such communications did not result in formal factual proffers, they are not discoverable. The government is incorrect.

As explained below, *Brady* and *Giglio* require disclosure of *any* information or evidence tending to show that the testimony Mr. Fleischer is expected to provide against Mr. Libby is bargained-for testimony. That is true regardless of the nature of the bargain (express or tacit), the form of the communications that resulted in the bargain (oral or written), or the person who engaged in the communications (Mr. Fleischer himself or his counsel on his behalf).

## ARGUMENT

*Brady v. Maryland* makes clear that the government must disclose all "evidence favorable to the accused." 373 U.S. 83, 87 (1963). In *Giglio v. United States*, 405 U.S. 150 (1972), the Court faced the question whether *Brady* required the government to disclose an agreement with a witness under which the government granted the witness immunity in exchange for the witness's testimony. The Court held that *Brady* required such disclosure because "evidence of *any* understanding would be relevant to [the witness's] credibility," and is therefore evidence "the jury is entitled to know." *Giglio*, 405 U.S. at 154-55 (emphasis added). As one court has explained in a related context, "*any* information that reveals the nature of the negotiation process that led to the leniency agreement is relevant to the witness's motives to testify and must be disclosed under *Giglio*." *United States v. Sudikoff*, 36 F.Supp.2d 1196 (C.D. Calif. 1999).

*Giglio* does not, contrary to the government's suggestion, excuse the government from disclosing evidence relating to an immunity deal simply because the witness's expected testimony has not been memorialized in the form of a fact-specific, written proffer. As the D.C. Circuit has explained, the "point" of *Giglio* is that an immunity agreement "may give a person a

motive that the jury must be permitted to evaluate." *In re Sealed Case No. 99-3096 (Brady Obligations)*, 185 F.3d 887, 894 & n.6; *see also Brown v. Wainwright*, 785 F.2d 1457, 1465 (11th Cir. 1986) ("The constitutional concerns address the realities of what might induce a witness to testify falsely, and the jury is entitled to consider those realities in assessing credibility."). The mere fact that an immunity agreement is not accompanied by a written proffer cannot deprive evidence of that agreement of its impeachment value or exculpatory nature. To the contrary, the basic, unassailable principles of *Brady* and *Giglio* make clear that *any* statements made by a witness or his counsel to the effect that the witness would, in return for immunity, provide testimony relevant to the government's prosecution are discoverable by the defense.

Likewise, the fact that the bargain between the government and the witness may have been tacit rather than express is immaterial. *See, e.g., United States v. Shaffer*, 789 F.2d 682, 690 (9th Cir. 1986) ("While it is clear that an explicit agreement would have to be disclosed because of its effect on [the witness's] credibility, it is equally clear that facts which imply an agreement would also bear on [the witness's] credibility and would have to be disclosed"). And it also does not matter whether the relevant communications are made by the witness himself or by counsel on the witness's behalf. *See Campbell v. Reed*, 594 F.2d 4, 6 (4th Cir. 1979) (finding a *Brady/Giglio* violation where the government failed to disclose an immunity agreement communicated by the government to the witness's attorney but not the witness).

Instead, the only question that must be asked under *Brady* and *Giglio* is whether the communications in question reveal that the testimony being provided is the result of negotiations between the witness and the government. For the reasons described above, it appears that that is

exactly what occurred in Mr. Fleischer's case. Accordingly, the information and evidence Mr. Libby seeks are plainly discoverable.

Should the Court harbor any doubt on this point, Mr. Libby submits that the proper course is for the Court to review the materials *in camera* review before making any determination, and (depending on the Court's determination) to preserve the material under seal for appellate review. *See, e.g., United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) ("Not infrequently, what constitutes *Brady* material is fairly debatable. In such instances, the prosecutor should mark the material as a court exhibit and submit it to the court for in camera inspection."); *United States v. Murgas*, (N.D.N.Y. 1997) (concluding that, where the government's obligation's under *Brady* is unclear, "the prudent course" is for the government to either turn the relevant information over to the defense, or if there exists a doubt, to the court for in camera inspection).[1]

## CONCLUSION

For the foregoing reasons, Mr. Libby respectfully requests that the Court order the government to comply with his discovery request under *Brady* and *Giglio*.

---

[1] Mr. Libby reserves the right, following the examination of Mr. Fleischer, to subpoena Mr. Fleischer's counsel and submit to the jury any communications between Mr. Fleischer's counsel and the government — such communications being clearly non-privileged.

Dated:  January 26, 2007                    Respectfully submitted,


/s/ Theodore V. Wells, Jr.                  /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                      William H. Jeffress, Jr.
(D.C. Bar No. 468934)                       (D.C. Bar No. 041152)
James L. Brochin                            Alex J. Bourelly
(D.C. Bar No. 455456)                       (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton               Baker Botts LLP
 & Garrison LLP                             1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas                 Washington, DC  20004
New York, NY  10019-6064                    Tel:  (202) 639-7751
Tel:  (212) 373-3089                        Fax: (202) 585-1087
Fax: (212) 373-2217


                                            /s/ John D. Cline
                                            John D. Cline
                                            (D.C. Bar No. 403824)
                                            Jones Day
                                            555 California Street, 26th Floor
                                            San Francisco, CA  94104
                                            Tel:  (415) 626-3939
                                            Fax: (415) 875-5700