## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Cr. No 05-394 (RBW)** |
| | : | |
| **I. LEWIS LIBBY,** | : | |
| **a/k/a "Scooter Libby"** | : | |

### GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S DUAL REQUESTS CONCERNING THE TESTIMONY OF WITNESS ARI FLEISCHER

The United States of America, by and through Patrick J. Fitzgerald, Special Counsel, hereby respectfully submits this memorandum in opposition to (a) defendant's motion to exclude evidence regarding the circumstances surrounding witness Ari Fleischer's decision to seek immunity; and (b) defendant's request for the production of documents and information concerning communications between the government and Mr. Fleischer's counsel prior to the grant of immunity to Mr. Fleischer. As demonstrated below, the defendant is not entitled to challenge Mr. Fleischer's credibility based on an immunity order while precluding the government from introducing evidence concerning facts and circumstances that surrounded the grant of immunity, and is not entitled, at the same time, to demand irrelevant details concerning the discussions that preceded the entry of the immunity order.

### BACKGROUND

*Anticipated Testimony of Government Witness Ari Fleischer*

The government anticipates that Ari Fleischer, the former White House press secretary, will testify that while having lunch with defendant Libby on July 7, 2003, defendant Libby told him that Ambassador Joseph Wilson's wife worked in the Counterproliferation Division of the CIA. Defendant described this news to Mr. Fleischer as "hush-hush" or on the "Q.T." Mr. Fleischer, who was leaving that evening for a week-long Presidential trip to Africa, subsequently discussed this

information with members of the press while on the trip to Africa.

*Immunity Order*

On September 28, 2003, nearly three months after leaving government service, Mr. Fleischer read a Washington Post article by Mike Allen and Dana Priest which stated that the Department of Justice had initiated a criminal investigation regarding an "allegation that administration officials leaked the name of an undercover CIA officer to a journalist." The "undercover" officer was identified as being the wife of former ambassador Joseph Wilson. The article stated that the "intentional disclosure of a covert operative's identity is a violation of federal law." The article went on to say that the "officer's name was disclosed on July 14 in a syndicated column by Robert D. Novak, who said his sources where two senior administration officials."

Upon reading this article, Mr. Fleischer feared that, although he had made no disclosures to Robert Novak, and although he had had no knowledge concerning whether Ambassador Wilson's wife was a covert agent, or whether information concerning her employment was classified when he spoke to reporters in Africa, he might nevertheless be in legal jeopardy. Therefore, Mr. Fleischer sought legal counsel. Subsequently, on advice of counsel, Mr. Fleischer refused to provide information, or answer any questions put to him by the government, unless and until he was provided with statutory immunity. After being granted immunity, Mr. Fleischer provided investigating agents and the grand jury the above information, together with other information relevant to the investigation.

*Pretrial Discovery*

Prior to trial, the government provided to the defense a copies of the Use Immunity Order entered by Acting Chief Judge Fried on February 13, 2004, FBI reports summarizing information

provided to the government by Mr. Fleischer, and transcripts of Mr. Fleischer's grand jury testimony.

On December 29, 2006, defense counsel requested that the government produce "[a]ny proffer that

Ari Fleischer made to the government, either in person or through counsel, before receiving

immunity." On January 10, 2007, the government informed defense counsel that, "Mr. Fleischer

made no proffers to the government before he received immunity."

In a letter dated January 11, 2007, defense counsel then made the following additional

request:

> Paragraph 9 of your letter states that "Mr. Fleischer made no proffers to the
> government before he received immunity." Please confirm that that statement
> encompasses any proffers made on Mr. Fleischer's behalf by his attorneys, whether
> orally or in writing. At bottom, what we want to know is whether Mr. Fleischer was
> given "blind immunity," in that the government had no idea from discussions with
> his counsel as to what he would say once immunized, or instead did his counsel
> communicate in some fashion to the government about the expected nature of Mr.
> Fleischer's testimony, orally or in writing, prior to the grant of the immunity order.
> If Mr. Fleischer's attorneys did make an oral proffer of any nature, please provide us
> with either the notes taken during that proffer or a description of its contents. If they
> made no proffer, please confirm that fact as well.

The government responded the following day:

> We have already indicated that Mr. Fleischer made no proffers to the government
> prior to his being given a grant of immunity. There is no other properly discoverable
> information regarding the circumstances surrounding his grant of immunity to which
> you are entitled.

### Defense Opening Statement

Not surprisingly, defense counsel pointed out to the jury during opening statement that Mr.

Fleischer would be testifying pursuant to an immunity order:

> But in terms of evaluating Mr. Fleischer's testimony, Mr. Fleischer is in a different
> position than any other witness in this case. Mr. Fleischer was the Press Secretary
> to President Bush. And when the FBI asks to speak to Mr. Fleischer, Mr. Fleischer
> asserted the Fifth Amendment. Mr. Fleischer refused to testify. He said I plead the

Fifth.  I will not testify about anything unless I am immunized.  I want complete protection from anything.

And the Government immunizes the former Press Secretary to the President of the United States.  And after being immunized, Mr. Fleischer then testifies and says he has this recollection of this conversation with Mr. Libby.

*    *    *    *

So what you'll see, in terms of the evidence concerning these six witnesses, that all of these witnesses have their own personal recollection problems, *or, like Mr. Fleischer, may have issues where their credibility should be questioned because they have an arrangement.  They have a deal whereby they have been given immunity.*

1/23/07 Tr. 36-38 (emphasis supplied).

Accordingly, before Mr. Fleischer had even taken the stand, the defense has argued that he should not be believed because he is an immunized witness.  Defense counsel acknowledges that the defense plans to argue to the jury that it should "consider whether his immunity agreement gives Mr. Fleischer a reason to provide testimony in a manner that will curry favor with the government."  Motion in Limine at 2-3.

### January 25, 2007 Proceedings

On January 25, 2007, defense counsel objected to the admission in evidence of any information regarding Mr. Fleischer's reasons for seeking immunity and, in particular, to the admission of a copy of the September 28, 2003 article which led Mr. Fleischer to seek counsel and begin the process of obtaining an immunity agreement.  In sum, government counsel explained that it sought to introduce the proffered testimony, and the September 28, 2003 article, for the limited purpose of mitigating the effect of the immunity agreement, and of rebutting the defense argument that, in light of that agreement, Mr. Fleischer's testimony is not worthy of belief.  The Court offered the parties an opportunity to present applicable legal authorities, and stated its preliminary view that:

4

if he's going to be placed under attack and it's suggested that because he sought immunity, and it seems to me that's the only reason the defense would want that information before the jury, that the government's got to have some opportunity to explain why he thought it was appropriate to seek it. So they can at least put it into context.

1/25/07 Tr. 118.

During the same proceeding, defense counsel sought to "make a record" (*id.*) regarding its requests for information related to any oral or written "attorney proffer" of Mr. Fleischer's testimony prior to the grant of immunity. Defense counsel stated that government counsel had represented that Mr. Fleischer had been given, "in Mr. Zeidenberg's words, blind immunity, that is without any knowledge of what he would say about Mr. Libby." *Id.* at 119.[1] Government counsel clarified that what actually had been represented to the defense was that there had been no factual proffers made by Mr. Fleischer, and that the government had received nothing from counsel for Mr. Fleischer to which the defense was entitled. *Id.* at 120. More specifically, government counsel represented to the Court that the government received no factual proffer from Mr. Fleischer or his counsel as to what Mr. Fleischer would say about Mr. Libby's conduct. *Id.*

---

[1] Defense counsel's in-court description of the exchange of correspondence related to this issue was inaccurate, as is the description of the court proceedings contained in defense counsel's brief. Defense counsel did not as represented in its brief at page 2 "summarize[] for the Court the government's response" to its requests and describe the defense "conclusion" that the government had provided Mr. Fleischer with "blind immunity." Instead, defense counsel represented that, "in Mr. Zeidenberg's words," Mr. Fleischer had been given "blind immunity." 1/25/07 Tr. 119. As indicated above, the term "blind immunity" was defense counsel's, not government's counsel's. See 1/25/07 Tr. 132.

## ARGUMENT

### I.     Admissibility of Evidence Related to Circumstances Leading to Grant of Immunity

The defense has already cited Mr. Fleischer's receipt of immunity as a reason for the jury to believe that Mr. Fleischer will testify as the prosecution wants him to testify, regardless of the truth. As this Court recognized, evidence that a witness entered into an immunity agreement serves no purpose other than to attack the witness's credibility.

In this case, the government is entitled to "draw the sting" of the immunity agreement and also to put that agreement in context by presenting the testimony of Mr. Fleischer regarding his reasons for seeking immunity.  While the government believes that the September 28, 2003 article that led Mr. Fleischer to fear that he was in legal jeopardy is admissible for the limited purpose of establishing Mr. Fleischer's state of mind, given the particular concerns expressed by the Court regarding the possibility that the jury might rely improperly on some of the contents of the article, the government has decided not to seek to admit a copy of the article through Mr. Fleischer. However, given that Mr. Fleischer's credibility has already been attacked and will continue to be attacked on cross-examination, it would be inappropriate to bar the government from permitting Mr. Fleischer to explain to the jury the reasons and motives for his seeking immunity.  He should be permitted to explain his own state of mind, why he felt he might get caught up in the investigation, and why he refused to speak with the government unless and until he had been given a grant of immunity, so that the jury can evaluate all of the evidence relevant to Mr. Fleischer's credibility.

It is entirely appropriate for the government to "draw the sting" of prospective impeachment by bringing out the relevant evidence on direct examination.  *See, e.g., United States v. Spriggs*, 996 F.2d 320 (D.C. Cir. 1993); *United States v. Montani*, 204 F.3d 761 (7th Cir. 2000)(permitting the

admission of a co-defendant's plea agreement in government's case in chief; "A party may not 'bolster the credibility' of a witness on direct examination, but we have held repeatedly that introducing evidence of a witness's guilty plea or immunity deal serves the 'truth-seeking' function of the trial by presenting all relevant aspects of a witness's testimony at one time.")(citing *United States v. LeFevour*, 798 F.2d 977, 983-84 (7th Cir. 1986)).

Moreover, contrary to defendant's contention (Mtn at 4), the proffered evidence is not being offered as "substantive evidence of the guilt" of the defendant. Mtn. at 4 (citing *United States v. Tarantino*, 846 F.2d 1384, 1404-05 (D.C. Cir. 1988)). Quite the opposite. The proffered testimony is being offered for the purpose of *rebutting* the inference that Mr. Fleischer must have actually committed a crime or he would not have required, or obtained, immunity. Mr. Fleischer will testify, if permitted, that while in his view he did not knowingly or intentionally do anything illegal or improper, he was not sure others would view his conduct as benign. Mr. Fleischer's testimony will make clear that he does not believe that he committed *any* criminal offense. Thus, Mr. Fleischer's testimony regarding the circumstances that led him to seek immunity will not cause the jury to reach the conclusion that Mr. Fleischer in fact committed the crime of disclosing the identity of a covert CIA employee, much less that Mr. Libby committed that crime. In any event, any such risk can be cured "through the usual method of instructing the jury to consider the evidence only for credibility." *Montani,* 204 F.3d at 767.

Defendant purports to quote the government as arguing that evidence concerning the underlying investigation "lack[s] relevance to the issues at trial." Mtn. 5 (citing Gov't Motion in Limine to Preclude Evidence, Comment and Argument Regarding Charging Decisions ("Gov't Mtn") at 6). However, defense counsel's quotation omits the government's footnote which expressly

acknowledged that "information relating to its discussions with prospective witnesses, for example, an agreement to provide immunity, is relevant on the issue of the witnesses' motivation." Gov't Mtn at 6, n 1.  It is entirely appropriate for the defense to vigorously cross-examine Mr. Fleischer on the impact of the immunity agreement; at the same time, the government is entitled to put the agreement in context, and to present for the jury's consideration all of the facts and circumstances relevant to the agreement, and to Mr. Fleischer's credibility.

II.    **The Defendant Has Received All Information Regarding the Immunity Order to Which He Is Entitled.**

The government has provided the defense with a copy of Mr. Fleischer's immunity order. There is nothing in any statement made by Mr. Fleischer's counsel to which the defense is entitled under the Jencks Act, *Brady* or *Giglio*.  Mr. Fleischer was given immunity based on general information regarding the nature of his prospective testimony that added little or nothing to what the government had already determined in the course of its investigation.  Neither Mr. Fleischer nor his counsel proffered that he would provide specific information incriminating Mr. Libby.  Nothing that the government received prior to Mr. Fleischer being granted immunity is in any way inconsistent with the prior testimony and statements of Mr. Fleischer that have been provided to the defense, or in any way reflects the existence of any tacit agreements, incentives or benefits beyond the immunity order itself.  There are none.

The defense relies on a single district court case from the Central District of California in support of its argument that the defense is entitled to receive under *Giglio* any information revealing the "nature of the negotiation process that led to the leniency agreement."  *United States v. Sudikoff*, 36 F. Supp. 2d 1196 (C.D. Cal. 1999).  Apart from the fact that *Sudikoff* does not reflect the law of this Circuit, the decision in that case does not support the notion that the defense is entitled to receive

8

a description of every statement made by a witness's lawyer prior to a grant of immunity, irrespective of its impeachment value. Instead, the Court in *Sudikoff* held that the defendant was entitled to obtain proffers and notes from multiple proffer sessions with a witness because such materials may reveal prior inconsistent statements and indicators of motivation to lie. *Id.* at 1198.

While the government strongly objects to the notion that the defense is entitled to anything beyond what has already been provided, it has provided the Court, in a separate pleading, filed *ex parte* and under seal, an Affidavit of Patrick J. Fitzgerald which sets forth the collective recollections of the prosecution team concerning any relevant conversations with Mr. Fleischer's counsel prior to the grant of immunity.

## CONCLUSION

For all of the foregoing reasons, the government respectfully requests that this Court deny the Motion in Limine of I. Lewis Libby and reject the defendant's suggestion that the government has failed to provide all information regarding the immunity order provided to witness Ari Fleischer to which the defendant is entitled.

Respectfully submitted,

_____/s/_____

PATRICK J. FITZGERALD
Special Counsel
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

Dated: January 28, 2007

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 28th day of January, 2007, I caused true and correct copies of the foregoing to be served on the following parties by electronic mail:

> William Jeffress, Esq.
> Baker Botts
> The Warner
> 1299 Pennsylvania Avenue, N.W.
> Washington, DC 20004-2400
> Facsimile: 202-585-1087
>
> Theodore V. Wells, Esq.
> Paul Weiss
> 1285 Avenue of the Americas
> New York, NY 10019-6064
> Facsimile: 212-373-2217
>
> John D. Cline, Esq.
> Jones Day
> 555 California Street
> San Francisco, CA 94104
> Facsimile: 415-875-5700

Patrick J. Fitzgerald
Special Counsel
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C.  20530
202-514-1187

By: _____/s/_____
 Debra Riggs Bonamici
 Deputy Special Counsel