## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## I. LEWIS LIBBY'S RESPONSE TO THE GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT NONDISCLOSURE AGREEMENTS EXECUTED BY DEFENDANT

As the Court knows, Mr. Libby has not been charged with divulging classified information in violation of federal law. Nor has he been accused of breaching the six nondisclosure agreements he signed while serving as Chief of Staff and National Security Advisor to the Vice President. Nevertheless, the government has asked this Court to admit the executed nondisclosure agreements, arguing that these documents indicate Mr. Libby's awareness of the consequences of disclosing classified information without authorization and thus are relevant to whether Mr. Libby had a motive to lie to the FBI and the grand jury. *See* Government's Mot. *in Limine* to Admit Nondisclosure Agreements Executed By Def. at 3-5 (Jan. 25, 2007) (Dkt. 253) ("Mot.").

The proffered evidence should be excluded under Fed. R. Evid. 401 and, in the alternative, Fed. R. Evid. 403. As shown below, the documents are irrelevant because, as the evidence in this case has shown and will continue to show, Mr. Libby has never had any reason to believe that his conduct constituted a breach of the nondisclosure agreements. Even if the documents did have some slight probative value (which they do not), that value would be completely outweighed by the unfair prejudice their admission would cause to Mr. Libby. The

documents will inevitably encourage the jury to (1) speculate as to whether Mr. Libby did

divulge classified information without authorization and (2) punish him on that basis.

## ARGUMENT

In its motion, the government argues that "one of the grounds for defendant's motive to

lie was his awareness of his duty to safeguard classified information, and of the potential

consequences of breaching that duty, an awareness defendant obtained in part through one or

more 'security indoctrination[s]' concerning the nature and protection of classified information."

Mot. at 3.  Asserting that the nondisclosure agreements signed by Mr. Libby during the course of

his employment constitute evidence that he received such "indoctrinations," the government

contends that the agreements are relevant to Mr. Libby's motive and are therefore admissible

under Rule 401.  *See id.* at 3-4.  In support, the government states that "other evidence . . . will

establish that defendant was . . . aware *at the time he made the charged false statements* that Ms.

Wilson's employment may have been classified."  Mot. at 4 (emphasis added).

At bottom, the government's relevance argument is that press coverage of Ms. Wilson's

status that appeared *after* Mr. Libby's alleged conversations with reporters caused Mr. Libby to

fear, retroactively, that those conversations had somehow violated the nondisclosure agreements

he had signed and therefore motivated him to perjure himself to cover up what he had done.  But,

even had Mr. Libby given any credence to after-the-fact press accounts regarding Ms. Wilson's

status, there is — as the government conceded before the trial even began — no direct evidence

that Mr. Libby had any idea *at the time* those conversations occurred that Ms. Wilson's status

might be somehow protected.  *See* Aff. of Patrick J. Fitzgerald, Aug. 27, 2004.  And Mr. Libby

certainly had no reason to think that the nondisclosure agreements erected some sort of strict

liability for inadvertent disclosures of classified information.  To the contrary, the wording of the

agreements and the federal regulations cited therein make clear that a person can be held liable for a disclosure *only if* there is a *mens rea* present at the time the disclosure occurs.

For example, "[a] party to the SF 312," one of the standard nondisclosure agreements signed by Mr. Libby, "may be liable for disclosing 'classified information' only if he or she *knows or reasonably should know* that . . . the marked or unmarked information is classified, or meets the standards for classification and is in the process of a classification determination . . . ." 32 C.F.R. § 2003.20(h)(3) (emphasis added). Similarly, each of the Sensitive Compartmented Information ("SCI") Nondisclosure Agreements signed by Mr. Libby forbade him from divulging material "marked" or "know[n] to be" classified, or "that [he would] have reason to believe" might contain classified information. GX5B at 1; *see also* GX5C at 1; GX5E at 1; GX5F at 1.[1]

The federal regulation governing the nondisclosure agreements does not make one liable for revealing information one *subsequently learns* may *be classified*. Rather, it is only one's knowledge at the time of disclosure that matters. Consequently, the nondisclosure agreements would be relevant only if the government could show that Mr. Libby knew, or had reason to know, or should have known, *at the time of his conversations with reporters* that information about Ms. Wilson's employment at the CIA was classified. But as the evidence presented by the government has borne out, it simply cannot make this showing. Accordingly, the agreements should be excluded as irrelevant.

Even if the nondisclosure agreements could be considered in any way relevant (and they cannot), their probative value is substantially outweighed by the danger of unfair prejudice and a confusion of the issues. As all parties are well aware, Mr. Libby is not on trial for disclosing

---

[1] The Special Access Program Nondisclosure Agreement executed by Mr. Libby contains nearly identical language. *See* GX5D at 1.

classified information (nor is any other person who discussed Ms. Wilson with reporters). In

fact, this Court has denied Mr. Libby discovery regarding Ms. Wilson's status because "Ms.

Wilson's documented status as an employee of the CIA . . . is simply immaterial." Mem.

Opinion at 6 n.3 (June 2, 2006) (Dkt.112).

Yet, introduction of the nondisclosure agreements would inevitably cause the jury to

speculate whether Mr. Libby did in fact violate those agreements through conversations in which

he allegedly discussed Ms. Wilson's CIA employment. That inevitable effect would be

fundamentally unfair to Mr. Libby's defense. *Cf. United States v. Christo*, 614 F.2d 486, 492

(5th Cir. 1980) (remanding for retrial on the relevant counts after holding that the government's

introduction of evidence concerning defendant's violation of a regulatory statute in an effort to

prove violation of a criminal statute "impermissibly infected the very purpose for which the trial

was being conducted"). The government itself has acknowledged that it would be problematic to

"create an atmosphere in which the jury just assumed that [Ms. Wilson] was classified or

covert." 12/19/06 Tr. at 38. That is exactly what the offered evidence threatens to do and that is

exactly why it should not be admitted.

The danger of unfair prejudice is particularly high with respect to GX5B, GX5C, GX5D,

GX5E, and GX5F. Those nondisclosure agreements relate to discrete compartments of top

secret information to which Mr. Libby was given access. But there is no evidence that any

information related to Ms. Wilson's employment at the CIA fell within one of those discrete

categories. Even the cursory summary of Ms. Wilson's employment history provided by the

CIA does not make such an assertion. The fact that these agreements address in particular the

disclosure of top secret information renders them both *less* relevant (to the extent that any of the

agreements are relevant) and *more* prejudicial than the standard nondisclosure agreement (SF

312) executed by Mr. Libby — less relevant because there has been no indication that Ms. Wilson's status was top secret, and more prejudicial because top secret information is of the utmost importance to our national security. Any invitation to the jury to consider whether Mr. Libby divulged top secret information would necessarily be inflammatory and unfairly prejudicial to his defense.

As noted above, the defense has been denied any meaningful discovery on the actual nature of Ms. Wilson's status and thus any opportunity to rebut the implication that the introduction of the nondisclosure agreements would inevitably create. Because such ungrounded speculation is unfairly prejudicial to Mr. Libby, all of the nondisclosure agreements should be excluded.

That the government is attempting to prejudice Mr. Libby unfairly by introducing these agreements is evident by their number. Putting aside the issue of whether any of the agreements are relevant and admissible (and none are), no reason exists to flood the jury with a half dozen single-spaced forms except the hope that their cumulative effect will signal that Mr. Libby violated his obligation not to disclose classified information. Not only is it unnecessary to introduce six nondisclosure agreements to demonstrate motive, the defense is willing to resolve this issue by stipulating that, in the course of his job, Mr. Libby was under an obligation not to disclose classified information knowingly and intentionally.

The defense also notes that the motive theory laid out in the government's motion *in limine* is only now, in the midst of trial, being sprung on the defense. Previously, the government stated that Mr. Libby lied about his conversations with reporters out of concern that he would be fired because "the White House had publicly staked its credibility on there being no White House involvement [in the public disclosure of information about Ms. Wilson]."

Government's Resp. to Def.'s Third Mot. to Compel Discovery at 26-28 (April 5, 2006) (Dkt. 80). Perhaps realizing the weakness of that argument, the government now asserts that Mr. Libby lied not to protect the White House from embarrassment, but to elude regulatory and contractual liability. The lack of notice provided to the defense and its inability to explore and seek discovery of information necessary to refute the government's newfound motive theory is yet another reason that the Court should exclude the offered evidence.

## CONCLUSION

For the foregoing reasons, Mr. Libby respectfully requests that the Court deny the government's Motion.

Dated: January 29, 2007                    Respectfully Submitted,

/s/ Theodore V. Wells, Jr.                 /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                     William H. Jeffress, Jr.
(D.C. Bar No. 468934)                      (D.C. Bar No. 041152)
James L. Brochin                           Alex J. Bourelly
(D.C. Bar No. 455456)                      (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton              Baker Botts LLP
  & Garrison LLP                           1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas                Washington, DC 20004
New York, NY 10019-6064                    Tel: (202) 639-7551
Tel: (212) 373-3089

/s/ John D. Cline
John D. Cline
(D.C. Bar No. 403824)
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
Tel: (415) 626-3939