UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. NO. 05-394 (RBW) |
| ) | |
| I. LEWIS LIBBY, ) | |
| also known as "Scooter Libby," ) | |
| Defendant. ) | |

**MOTION *IN LIMINE* OF I. LEWIS LIBBY
TO EXCLUDE GOVERNMENT EXHIBITS 422 AND 423**

Mr. Libby respectfully submits this motion *in limine* to preclude the government from introducing into evidence two newspaper articles that contain highly prejudicial information (GX 422 and GX 423).

BACKGROUND

GX 423 is an October 4, 2003 *Washington Post* article by Walter Pincus and Mike Allen; it is titled *Leak of Agent's Name Causes Exposure of CIA Front Firm*. This article focuses on potential damage caused by the disclosure of Valerie Plame Wilson's identity, including the exposure of a "CIA front company," Brewster-Jennings & Associates. The article repeatedly maintains that Ms. Wilson was a covert CIA employee, and even describes a Federal Election Commission record that the article claims "establishes that [she] has worked undercover within the past five years." It also includes the incendiary charge that the disclosure of Ms. Wilson's affiliation with the CIA might have put lives in danger. For example, it states:

> The inadvertent disclosure of the name of a business
> affiliated with the CIA underscores the potential damage to
> the agency and its operatives caused by the leak of Plame's
> identity. Intelligence officials have said that once Plame's

job as an undercover operative was revealed, *other agency secrets could be unraveled and her sources might be compromised or endangered.* (emphasis added)

GX 422 is an October 12, 2003 *Washington Post* article titled *FBI Agents Tracing Linkage of Envoy to CIA Operative*, also by Pincus and Allen. The article begins by describing Valerie Wilson as "a clandestine case officer." It contains sensational and inaccurate assertions that have nothing to do with the charges against Mr. Libby. For example, the article repeats the allegation, first published in a September 28, 2003 *Washington Post* story, that "two top White House officials disclosed Plame's identity to at least six Washington journalists . . . as part of their broader case against Wilson." According to an unnamed administration official, this disclosure "'was unsolicited . . . . They were pushing back. They used everything they had.'"

## ARGUMENT

### A. The Two Articles Should Be Excluded Because They Are Unfairly Prejudicial

Admitting the two articles described above would prejudice the jury against Mr. Libby. The articles focus on issues such as Ms. Wilson's actual employment status and damage to national security – issues that the Court has squarely held are irrelevant to this case. Putting such articles in evidence would cause jurors to speculate about these issues, and threatens to undo the Court's efforts to date to prevent the jury from trying to punish Mr. Libby for the unauthorized disclosure of classified information – a crime that he is not charged with and that he did not commit. This is precisely the type of prejudice Rule 403 aims to prevent.

The D.C. Circuit has held in analogous circumstances that the introduction of highly prejudicial news articles constitutes reversible error. *See Carter v. District of*

*Columbia*, 795 F.2d 116, 132-33 (D.C. Cir. 1986). In *Carter*, the plaintiffs brought claims against police officers, a police chief, and the District of Columbia for alleged failure to prevent police misconduct. Over defendants' objection, the district court admitted into evidence newspaper articles alleging misconduct by police officers to support the allegation that the police chief had failed to discipline the police force. The district court permitted plaintiffs' counsel to read inflammatory accounts of police misconduct into the record during the examination of the police chief.

The appeals court held that the district court had abused its discretion and committed reversible error by admitting the articles. The Circuit ruled that "the evidence relevant to establish the [city's] liability was not the details of allegations contained in the newspaper articles, but was whether or not [the police chief] w[as] familiar with the fact of such allegations, and if so, had conducted investigations with regard to them." *Id*. at 128. Further, the court stated that "only brief factual summaries of the allegations" should have been admitted to avoid the risk of unfair prejudice. *Id*.

Just as in *Carter*, the evidence relevant to the government's motive theory here is not the specific descriptions of Ms. Wilson's employment status and potential harm to national security that are the focus of the *Washington Post* articles, but whether Mr. Libby was "familiar with the fact of such allegations." Admitting these entire articles, as the government has requested, would cause exactly the type of unfair prejudice that the *Carter* decision cautions against. *Cf. United States v. John*, 508 F.2d 1134, 1142 (8th Cir. 1975) (finding it error for district court to admit contents of a newspaper article that defendants had read as evidence of defendant's knowledge).

3

In *Carter*, the D.C. Circuit held that a limiting instruction would not be enough to guard against the danger of unfair prejudice that would result from the admission of inflammatory news articles. *Carter*, 795 F.2d at 126. The court found that "there were certainly other ways the evidence could have been admitted so that the relevant aspects were retained and the prejudicial aspects minimized." *Id*. Accordingly, the district court should have minimized the "risk of unfair prejudice by permitting only brief factual summaries of the allegations." *Id*. at 128. The court held that this "would not have impaired plaintiffs' ability to develop evidence." *Id*. The same result is compelled here, particularly because the government, in a previous submission, represented that it would accept heavy redactions or summaries of all but one of the news articles that it sought to introduce at trial. *See* Government's Response to Court's Inquiry Regarding News Articles the Government Intends To Offer as Evidence at Trial, dated May 12, 2006, at 9 (Dkt. No. 105-1) ("Govt. Resp.").

      B.     <u>*United States v. Yousef* Does Not Apply Here</u>

During argument on this issue on February 1st, the Court called counsel's attention to *United States v. Yousef*, 327 F.3d 56, 121 (2d Cir. 2003). That case is readily distinguishable from the facts at hand.

In *Yousef*, the defendant appealed his conviction for conspiracy to bomb American commercial airliners. The defendant contended that the district court had erred in admitting into evidence two letters found on his computer. The letters contained additional threats against America and against other countries (France, Britain, and Sweden). The appeals court upheld the district court's decision to admit the letters for reasons that are inapplicable here. First, the letters were almost certainly written by the defendant – they were strong evidence of his state of mind because they were his *own*

4

statements, not the statements of others. *Id.* Second, the letters described the defendant's own intended actions, rather than unrelated charges. *Id.* at 122. And finally, the defendant did not object to admission of the letters at trial (nor did he suggest redactions), which led the appeals court to review for plain error. *Id.* at 121. *Yousef* is neither dispositive nor instructive here.

      C.      The Government Has Alternative Means of Proof

The government claims it needs to introduce the articles in question to support its theory of motive. As the D.C. Circuit indicated in *Carter*, the trial court should consider whether alternative means of proof exist to allow relevant evidence to be admitted without undue prejudice. *See* 795 F.2d at 126. Here, the evidence at issue can be introduced through Mr. Libby's grand jury testimony, through heavily redacted versions of the articles, or through summaries of the articles (as the Court itself has suggested). The government can not have any objection to the latter two alternatives in light of the position it set forth in its prior submission regarding news articles.

In that submission, the government informed the Court and the defense that it planned to introduce at trial only one news article in its entirety (Joseph Wilson's July 6, 2003 Op Ed) and five other articles in redacted or heavily redacted form (none of which was GX 422 or GX 423). The government also noted that it intended to "refer to certain other articles," including articles mentioned in Mr. Libby's grand jury transcript, but did not "intend to offer those articles in evidence even in redacted form." Govt. Resp. at 2. GX 422 falls into this latter category of articles (*i.e.*, articles that were shown to Mr. Libby in the grand jury, but which the government did not plan to introduce at the time of its submission). The government further stated that for any article it sought to introduce "other than the annotated version of the Wilson Op Ed, the government [would]

5

consider offering any appropriate redactions, or alternatively a stipulated summary of the relevant assertions in the article . . . ." *Id.* at 9.

Presumably, the government made that statement because it recognized that news articles relating to this case may be highly prejudicial to Mr. Libby. Nothing has changed since that time to diminish the prejudicial effect of these articles. The government's current insistence on introducing these articles in their entirety belies its true intent – to put explosive allegations about Ms. Wilson's employment status and harm to national security before the jury under the guise of providing evidence concerning Mr. Libby's state of mind.

The current record, when combined with Mr. Libby's grand jury testimony, provides ample evidence to support the government's motive theory, without the inflammatory references to "CIA front companies," "potential damage to the Agency," and "breach of national security." For example, Mr. Libby acknowledged in the grand jury that he was aware of "the allegations that were whipping around in the press [that] somebody had leaked classified information," and that he was specifically aware of the October 12 article (GX 422) and similar news accounts. March 24, 2004 Tr. at 153. Accordingly, Mr. Libby's grand jury testimony provides the functional equivalent of the "brief factual summaries" that *Carter* suggests should be given to the jury in place of highly prejudicial news articles.

Finally, none of the articles that have been introduced into evidence to date in this case are nearly as prejudicial as the two stories at issue in this motion.[1] In

---

[1] Those articles are: GX 401 (Nicholas D. Kristof, *Missing In Action: Truth*, N.Y. TIMES, May 6, 2003); GX 414 (Robert D. Novak, *Mission To Niger*, WASH. POST, July 14, 2003); DX 703B (Matthew Cooper, Massimo Calabresi and John F.

6

particular, none of the articles currently in evidence claim that Ms. Wilson was working in a covert capacity for a "front company," and none of them describe potential damage to national security that could be caused by the disclosure of her identity.

The government has what it needs to make its motive argument. Whatever marginal additional probative value the two articles add is substantially outweighed by their substantial prejudicial effect. Placing the two articles before the jury, regardless of any limiting instruction the Court might give, threatens to rob Mr. Libby of his right to a fair trial.

---

Dickerson, *A War on Wilson?*, TIME.com, July 17, 2003); DX 705 (Walter Pincus, *CIA Did Not Share Doubt on Iraq Data*, WASH. POST, June 12, 2003); DX 707B (Joseph C. Wilson 4th, *What I Didn't Find in Africa*, N.Y. TIMES, July 6, 2003); DX 715 (Nicholas D. Kristof, *White House in Denial*, N.Y. TIMES, June 13, 2003); and DX 1645 (Michael Duffy and James Carney, *A Question of Trust*, TIME, July 13, 2003).

**CONCLUSION**

For the foregoing reasons, I. Lewis Libby respectfully requests that the Court grant this motion *in limine* and preclude the government from introducing GX 422 and GX 423.

Dated: February 2, 2007                           Respectfully submitted,

|  |  |
|---|---|
| /s/ | /s/ |
| Theodore V. Wells, Jr. | William H. Jeffress, Jr. |
| (DC Bar No. 468934) | (DC Bar No. 041152) |
| James L. Brochin | Alex J. Bourelly |
| (DC Bar No. 455456) | (DC Bar No. 441422) |
| Paul, Weiss, Rifkind, Wharton | Baker Botts LLP |
|  & Garrison LLP | 1299 Pennsylvania Avenue, NW |
| 1285 Avenue of the Americas | Washington, DC 20004 |
| New York, NY 10019-6064 | Tel: (202) 639-7751 |
| Tel: (212) 373-3089 | Fax: (202) 585-1087 |
| Fax: (212) 373-2217 |  |

   /s/
John D. Cline
(D.C. Bar No. 403824)
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104
Tel: (415) 626-3939
Fax: (415) 875-5700