UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR. NO. 05-394 (RBW) |
| ) | |
| I. LEWIS LIBBY, ) | |
| also known as "Scooter Libby." ) | |

**BRIEF OF DEFENDANT I. LEWIS LIBBY ON ADMISSIBILITY OF STATE OF MIND EVIDENCE WITHOUT DEFENDANT'S TESTIMONY**

The government has argued that, unless Mr. Libby testifies, the Court should exclude evidence tending to show that any misstatements he made were the result of confusion, mistake, or faulty memory, rather than deliberate lies. The Court should reject this position. The evidence Mr. Libby seeks to present--which concerns the urgent national security matters he confronted during the period at issue--is clearly relevant, with or without his testimony. Excluding the evidence would violate Mr. Libby's Fifth and Sixth Amendment right to present a defense. And conditioning admission of the evidence on Mr. Libby's testimony would place an impermissible burden on his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel. *See, e.g., Brooks v. Tennessee*, 406 U.S. 605 (1972).

We emphasize that at this point Mr. Libby has not decided whether he will testify. He will make that decision, as defendants customarily do, on the advice of counsel after having the opportunity to assess the full prosecution case and other evidence presented during the defense case. *See, e.g., id.* at 613 (declaring that "the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the

stand"). In keeping with the pretrial notice requirement of CIPA § 5, the Court and the parties assumed during the CIPA proceedings that Mr. Libby would testify. But as we demonstrate below, that assumption does not mean that evidence of the matters commanding his attention will be irrelevant if he ultimately exercises his right to remain silent.[1]

## ARGUMENT

I. **EXCLUSION OF EVIDENCE OF THE URGENT NATIONAL SECURITY MATTERS THAT MR. LIBBY CONFRONTED DURING THE RELEVANT PERIOD WOULD VIOLATE HIS FIFTH AND SIXTH AMENDMENT RIGHT TO PRESENT A DEFENSE.**

The Constitution guarantees Mr. Libby a "meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 126 S. Ct. 1727, 1731 (2006) (quotation omitted); *see, e.g.*, *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (same). The Supreme Court has long recognized that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *see Washington v. Texas*, 388 U.S. 14, 19 (1967) ("[T]he right to present a defense . . . is a fundamental element of due process of law."). In its CIPA § 6(c) ruling, this Court declared, in keeping with these decisions, that "[i]t is a fundamental guarantee of the Sixth Amendment to the Constitution that a criminal defendant has the right to present a defense to the charges he is facing." *United States v. Libby*, 2006 U.S. Dist. LEXIS 93232, at *12-*13 (D.D.C. Dec. 8, 2006).

A defendant has no constitutional right, of course, to present irrelevant evidence. But evidence of the critical national security matters that Mr. Libby faced during the period at issue

---

[1] At the outset of the CIPA proceedings, defense counsel observed that it was "very likely" Mr. Libby would testify but did not commit to such testimony and noted that aspects of the memory defense might be presented through cross-examination of government witnesses and through other defense witnesses. T. 9/27/06 at 7. The Court as well has recognized the possibility that Mr. Libby might not testify. In its CIPA § 6(a) order, for example, the Court declared that "the defendant will therefore be permitted to *introduce documentary proof or testify* with some degree of detail, *if he so chooses to testify*, about the events and activities he was engaged in during these relevant time periods." *United States v. Libby*, 2006 U.S. Dist. LEXIS 87130, at *23 (D.D.C. Nov. 15, 2006) (emphasis added).

2

is unquestionably relevant to his defense that any errors in his statements and testimony resulted from confusion, mistake, or faulty memory rather than deliberate lies.  Evidence is relevant if it "ha[s] *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable  or less probable than it would be without the evidence."  Fed. R. Evid. 401 (emphasis added).  Rule 401 is a "liberal standard" that "establishes only a minimal level of probability."  *United States v. Leonard*, 439 F.3d 648, 651 (10th Cir.), *cert. denied*, 126 S. Ct. 2948 (2006).  Relevance is a particularly low hurdle when the defendant seeks to negate evidence of mens rea.  "[T]he accused as part of his defense is entitled to wide latitude in the introduction of evidence which tends to show lack of specific intent."  *United States v. Brown*, 411 F.2d 1134, 1137 (10th Cir. 1969); *see, e.g., United States v. Thomas*, 32 F.3d 418, 421 (9th Cir. 1994) (in mail fraud case, court "should not exclude any evidence offered by accused which tends to refute the fruadulent intent charged"; reversing conviction where district court excluded circumstantial evidence tending to negate intent).

The evidence Mr. Libby intends to offer easily satisfies the "liberal standard" of Rule 401, regardless of whether he testifies.  The government has the burden of proving beyond a reasonable doubt that Mr. Libby deliberately lied to the FBI and the grand jury about the conversations with Ms. Miller, Mr. Cooper, and Mr. Russert.  Each of the offenses charged in the indictment requires such proof.  The perjury statute requires proof that the defendant "g[ave] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).[2]   Section 1001 requires proof that the defendant knew the statement at issue

---

[2] *See, e.g., United States v. Dean*, 55 F.3d 640, 659 (D.C. Cir. 1995) ("Testimony resulting from confusion, mistake or faulty memory cannot support a perjury conviction."); *United States v. Libby*, 429 F. Supp. 2d 1, 12 (D.D.C. 2006) (same); T. 1/23/07 at 27 (perjury requires proof that Mr. Libby "knew when he made the statement that it was false").

3

was false, *see, e.g.*, *United States v. Pickett*, 353 F.3d 62, 66 (D.C. Cir. 2004), and thus that he did not make the statement by "inadvertance, mistake, carelessness or for any other innocent reason," *United States v. Baker*, 626 F.2d 512, 516 (5th Cir. 1980).[3]  And the obstruction statute requires proof that the defendant acted "corruptly"--that is, "voluntarily and deliberately, and with an evil motive or improper purpose or intent, to influence or obstruct or interfere with the administration of justice." T. 1/23/07 at 23.[4]

The evidence Mr. Libby seeks to introduce bears directly on whether any errors in his statements and testimony resulted from confusion, mistake, or faulty memory rather than deliberate deception.  This Court has declared that "there can be no question that what otherwise allegedly consumed the defendant's time and attention during [the week of June 9 through 14, 2003] is relevant and extremely probative to the prosecution and defense of this action." *United States v. Libby*, 2006 U.S. Dist. LEXIS 87130, at *22 (D.D.C. Nov. 15, 2006).  The Court concluded that the week of July 6 through 12, 2003 is "critical to the case, and the events occurring during this week are relevant and highly probative." *Id.*  It found that "[w]hat the defendant was doing and the information provided to him on [other key indictment dates] are also relevant and highly probative of whether he is culpable for committing the charged offenses." *Id.* at 23.  And in denying Mr. Libby's motion to admit expert testimony, the Court declared that Mr. Libby "will be able to present to the jury the high pressured and sensitive nature of his work and the volume of information he received daily, to demonstrate that any error

---

[3] *See, e.g.*, T. 1/23/07 at 25 (government must prove that Mr. Libby "acted willfully, knowing that the statement or representation was false").

[4] *See, e.g., Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005) (to act "corruptly" means to act "knowingly and dishonestly, with the specific intent to subvert or undermine the integrity" of the grand jury proceeding) (quoting pattern instruction).

he may have made was the product of confusion, mistake or a faulty memory." *United States v. Libby*, 2006 U.S. Dist. LEXIS 79828, at *29 (D.D.C. Nov. 2, 2006).[5]

Evidence of other matters that commanded Mr. Libby's attention is relevant regardless of whether he testifies. Courts have repeatedly recognized that both the prosecution and the defense may present circumstantial evidence of the defendant's state of mind. As this Court observed in considering circumstantial evidence offered by the government, jurors lack "the ability to look into someone's head and see what they're thinking." T. 2/1/07 p.m. at 13-14. Because a defendant's state of mind can rarely be established through direct evidence, "as a general rule most evidence of intent is circumstantial." *United States v. Salameh*, 152 F.3d 88, 143 (2d Cir. 1998); *see, e.g., United States v. Macpherson*, 424 F.3d 183, 189 (2d Cir. 2005) ("The law . . . recognizes that the mens rea elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom."); *Redbook*, Instruction 3.02 ("[Y]ou may infer the defendant's knowledge from the surrounding circumstances."); *Modern Federal Jury Instructions*, Instruction 6.06 (2006) ("[K]nowledge [is] usually established by surrounding facts and circumstances as of the time the acts in question occurred, or the events took place, and the reasonable inferences to be drawn from them.").

In this case, the Court has admitted, at the prosecution's request, a substantial amount of circumstantial evidence concerning Mr. Libby's state of mind. The prosecution evidence includes (for example) testimony from Craig Schmall about a conversation in which Mr. Schmall allegedly warned Mr. Libby and the Vice President about the dangers of revealing a covert agent,

---

[5] In a similar vein, the government acknowledged in its opposition to Mr. Libby's motion to admit expert testimony that "[i]t is common knowledge that people can forget things and confuse details, especially when they are focused on other matters," and that "[j]urors are well aware . . . that stress can have an impact on memory or perception." Government's Memorandum in Opposition to Defendant's Motion to Admit Expert Testimony at 13 (filed Sept. 7, 2006).

T. 1/24/07 p.m. at 87,[6] various newspaper articles, some of Mr. Libby's calendars, portions of press briefings by White House spokesman Scott McClellan (GX 418, 420, 421), and Mr. Libby's classified information nondisclosure agreement (GX 5-A). The Court has found, often over defense objection, that this evidence bears on Mr. Libby's state of mind. The prosecution will ask the jury to infer from this and other circumstantial evidence that Mr. Libby had a motive to lie.

Similarly, the Court has recognized that Mr. Libby may present circumstantial evidence supporting his defense that any errors in his statements and testimony resulted from confusion or mistake, including "among other things, his daily calendars, the number of days per week he worked, the hours he worked, and the number of meetings he attended." *Libby*, 2006 U.S. Dist. LEXIS 93232, at *21. The Court did not condition the admission of any of this evidence on testimony from Mr. Libby. There is no rational basis for treating the evidence Mr. Libby seeks to offer concerning the urgent national security issues he confronted differently than the other circumstantial state of mind evidence the Court has found admissible.[7]

## II. EACH OF THE THREE CATEGORIES OF NATIONAL SECURITY EVIDENCE MR. LIBBY SEEKS TO INTRODUCE IS RELEVANT AND ADMISSIBLE REGARDLESS OF WHETHER HE TESTIFIES.

Mr. Libby intends to present three categories of national security evidence: the government's statement admitting relevant facts, testimony by persons with whom Mr. Libby

---

[6] After Mr. Schmall testified about this conversation, the Court instructed the jury in part that it could "consider . . . what if anything Mr. Libby knew or believed about [Ms. Wilson's] status and any damage disclosure of her status could cause in assessing what his state of mind was when he spoke to the FBI agents and testified before the Grand Jury." T. 1/24/07 p.m. at 89; *see also, e.g.*, T. 1/23/07 at 20 (same). The Court has given similar limiting instructions in connection with the other circumstantial evidence the government has offered.

[7] Nor may the evidence concerning the pressing national security matters that Mr. Libby faced be excluded under Rule 403. As the Court has previously recognized, Rule 403 "'is an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *Libby*, 2006 U.S. Dist. LEXIS 87130, at *55 (quoting *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995)); *see, e.g., Henderson v. George Washington University*, 449 F.3d 127, 133 (D.C. Cir. 2006). None of the Rule 403 dangers "substantially outweigh[s]" the probative value of the evidence Mr. Libby seeks to present.

worked at the OVP about the crush of his duties, and the morning intelligence briefings that he received six days each week. Each category of evidence is relevant and admissible, regardless of whether Mr. Libby testifies.

### A.    The Statement Admitting Relevant Facts.

The government's "statement admitting relevant facts" must be admitted. By its terms, the facts the statement admits are "relevant." Under CIPA § 6(c)(1)(A), the admission serves as a *substitute* for other defense evidence, including Mr. Libby's potential testimony.[8] It would be totally illogical to require Mr. Libby to furnish the evidence the admission replaces as a predicate for admitting the admission itself. Such a requirement would be arbitrary and unfair and a violation of Mr. Libby's right to due process. Neither the government nor the Court has ever as much as hinted that the statement admitting relevant facts would be admissible only if Mr. Libby testifies. *See, e.g., Libby*, 2006 U.S. Dist. LEXIS 93232, at *18-*19 (discussing government's admission); T. 11/7/06 at 10 (government states: "Before we ever get to any of the narrative summary and the other things that are in the various binders in the summaries, the Government is agreeing to a statement that can be read to the jury in the Government's voice."); T. 1/10/07 at 29-30 (government has no objection to defense reading admission in opening). Mr. Libby's counsel read the admission to the jury in his opening statement on the entirely reasonable belief that the statement was unconditionally admissible, regardless of developments at trial. To exclude the statement now if Mr. Libby declines to waive his right not to testify would cause him enormous prejudice with the jury.

---

[8] The government has acknowledged that Mr. Libby may testify about the matters contained in the admission. *See Libby*, 2006 U.S. Dist. LEXIS 93232, at *19 n.5. But the fact that Mr. Libby *may* testify about those matters does not mean that he *must* testify as a condition for admitting the admission.

### B.     Testimony By Persons With Whom Mr. Libby Worked.

Mr. Libby also proposes to present testimony from persons with whom he worked closely at the OVP. Those witnesses--potentially including Vice President Cheney and one or more of Mr. Libby's then-deputies--will testify, based on personal knowledge, that certain national security matters consumed Mr. Libby's attention during the period at issue. Having laid that foundation, the witnesses will then testify--within the limits established by the Court during the CIPA process--about the nature and urgency of those matters. Such testimony is unquestionably relevant to Mr. Libby's state of mind.

To the extent some further foundation must be laid by Mr. Libby himself before evidence concerning the matters that commanded his attention may be admitted--which we dispute--it already exists. The government is now placing Mr. Libby's sworn testimony before the jury in the form of his grand jury tapes and transcripts. That testimony establishes the relevance of the urgent national security matters he faced. Although the government studiously avoided asking Mr. Libby about those matters and their possible effect on his memory, at the end of his March 5, 2004 grand jury testimony Mr. Libby declared:

> Can I just make one other comment about this stuff? I get a lot of information during the course of a day. I probably get--you know, after all this came up I sort of for a few days tried to take a census of how many pages of stuff I get in a day, and I tend to get between 100 and 200 pages of material a day that I'm supposed to read and understand and I--you know, I start at 6:00 in the morning and I go to 8:00 or 8:30 at night, and most of that is meetings. So a lot of information comes through to me, *and I can't possibly recall all the stuff I think is important, let alone other stuff that I don't think is as important.* And so when a lot of this--a lot of this stuff that comes to me, what I will normally do is I'll gather my staff together and say, hey, what happened here? You know, there was some meeting we had on, let's say, Iraq. What did people say, or what happened last week when we had that meeting? Did State need to do something, or was the Defense Department supposed to do something? And we'll sort of pool our recollections of it and that almost always bring[s] me a fuller recollection of what's happened. I haven't done that here because as I understand it, you don't want me to do that here. I'm happy to do it at some point, but I haven't. . . . I

apologize if there's some stuff I remember and some I don't, but it's--I'm just trying to tell you what I do in fact remember.

March 5, 2004 Grand Jury T. at 193-94 (emphasis added). This testimony establishes a predicate, if one is needed, for admission of evidence concerning the volume and nature of the national security information Mr. Libby received during the relevant period.

### C.     The Morning Intelligence Briefing Materials.

Unlike the other memory defense evidence, the Court has previously tied the relevance of the information contained in the morning intelligence briefing materials to Mr. Libby's potential testimony about the importance of those materials. The Court noted in its CIPA § 6(a) opinion that the morning intelligence briefing materials "themselves are not relevant, as they do not show what the defendant believed was important or what matters the defendant devoted his efforts to on a given day." According to the Court, "It will therefore be the defendant's testimony about what he was focused on and that his workday was consumed by the information [in the morning intelligence briefing materials] that makes the classified information contained in these documents relevant under Rule 401." *Libby*, 2006 U.S. Dist. LEXIS 87130, at *32-*33.[9]

For the reasons outlined above, we respectfully suggest that evidence of the pressing national security issues on which Mr. Libby was briefed during the relevant periods tends to negate the government's proof of a knowing falsehood regardless of whether he testifies. The jury can infer from the urgent nature of the intelligence provided--together with the testimony of other defense witnesses, outlined above, and the government's statement admitting relevant facts--that Mr. Libby considered that information important.

---

[9] The Court excluded from the requirement that Mr. Libby testify "those inquiries made by the defendant, [TEXT REDACTED BY THE COURT,] in response to reviewing these documents, [TEXT REDACTED BY THE COURT]." *Libby*, 2006 U.S. Dist. LEXIS 87130, at *32-*33. In keeping with this ruling, Mr. Libby will present evidence concerning his inquiries even if he elects not to testify and the Court excludes the other morning intelligence briefing materials.

9

The testimony of Craig Schmall--one of Mr. Libby's CIA briefers during the relevant period--provides a further foundation for introduction of the information contained in the morning intelligence briefing materials. Mr. Schmall testified that the morning intelligence briefing book presented to Mr. Libby six days per week included the "most significant current intelligence available"; that Mr. Schmall developed an understanding of what Mr. Libby found particularly important and sought to include items in Mr. Libby's book reflecting his interests; that Mr. Libby read the book for forty minutes on weekdays and an hour or more on Saturdays and sometimes asked to have portions returned for further review;[10] and that the information presented in the morning intelligence briefings allowed the Vice President and Mr. Libby to address "very significant national security issues," including terrorism, homeland security, nuclear proliferation around the world, North Korea and its nuclear ambitions, Iraq, the Middle East, and other urgent matters that came up day after day. T. 1/24/07 p.m. at 90-101. Mr. Schmall agreed that the morning intelligence briefings concerned "very important stuff." *Id.* at 103. This testimony, coupled with the nature of the morning intelligence briefing materials and the other evidence the defense will introduce, provides an ample basis for the jury to infer that those materials commanded Mr. Libby's attention during the relevant period.

### III. CONDITIONING ADMISSION OF THE NATIONAL SECURITY EVIDENCE ON MR. LIBBY TESTIFYING WOULD VIOLATE HIS FIFTH AMENDMENT RIGHT TO REMAIN SILENT AND HIS SIXTH AMENDMENT RIGHT TO COUNSEL.

Conditioning the admission of the national security evidence on Mr. Libby's testimony (or commitment to testify) would place an impermissible burden on his Fifth Amendment right

---

[10] As Mr. Schmall's testimony demonstrates, there is no dispute that Mr. Libby *actually read* the morning intelligence briefing materials. By contrast, the Court admitted at the prosecution's request newspaper articles that were merely found in Mr. Libby's files, without any evidence that he had actually read them. If the newspaper articles are admissible as circumstantial evidence of Mr. Libby's motive, the morning intelligence briefing materials are surely admissible as circumstantial evidence that any inaccuracies in Mr. Libby's statements and testimony were the result of confusion, mistake, or faulty memory.

to remain silent and his Sixth Amendment right to have the benefit of counsel in determining whether and when to testify. Such a ruling would violate the fundamental rule that "the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand." *Brooks*, 406 U.S. at 613.

In *Brooks*, the Court struck down a Tennessee statute that required the defendant to testify first or not at all. The Court observed that at the close of the prosecution case the defendant "may not know . . . whether his own testimony will be necessary or even helpful to his cause. Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed." *Id.* at 610. Under the Tennessee statute, however, the defendant could not "make that choice in the unfettered exercise of his own will." *Id.* (quotation omitted). The statute "exacts a price for [the defendant's] silence by keeping him off the stand entirely unless he chooses to testify first. This, we think, casts a heavy burden on a defendant's otherwise unconditional right not to take the stand. The rule, in other words, cuts down on the privilege (to remain silent) by making its assertion costly." *Id.* at 610-11 (footnotes and quotation omitted); *see, e.g.*, *Griffin v. California*, 380 U.S. 609, 614 (1965) (prosecutor's comment on defendant's failure to testify violates Fifth Amendment privilege "by making its assertion costly") .

For similar reasons, the Court found that the Tennessee statute deprived the defendant of "the guiding hand of counsel," because, by forcing the defendant and his lawyer to decide whether to testify "without an opportunity to evaluate the actual worth of their evidence, the statute restricts the defense--particularly counsel--in the planning of its case." *Brooks*, 406 U.S. at 612. Moreover, "the penalty for not testifying first is to keep the defendant off the stand entirely, even though as a matter of professional judgment his lawyer might want to call him

11

later in the trial. The accused is thereby deprived of the 'guiding hand of counsel' in the timing of this critical element of his defense." *Id.* at 612-13. Although the Court acknowledged "the ordinary power of a trial judge to set the order of proof," it declared that "the accused and his counsel may not be restricted in deciding whether, and when in the course of presenting his defense, the accused should take the stand." *Id.* at 613.

This Court's exclusion of Mr. Libby's proffered evidence would suffer the same constitutional defects as the Tennessee statute. By forcing Mr. Libby to surrender his right to silence as the price of admitting evidence of his pressing national security duties during the relevant period, the Court would "cut[] down on the privilege (to remain silent) by making its assertion costly." *Id.* at 610-11 (footnotes and quotation omitted); *see, e.g., Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977) (government may not impose penalty on assertion of Fifth Amendment).

In other settings as well, courts have found that placing limits on the defense unless the defendant testifies may violate the Fifth Amendment right to remain silent. For example, requiring the defendant to testify as a condition for receiving a reliance on advice of counsel or accountant instruction "would burden the [defendant's] own Fifth Amendment right against self-incrimination." *United States v. Duncan*, 850 F.2d 1104, 1115 n.9 (6th Cir. 1988); *see, e.g., United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994) (same). Similarly here, requiring Mr. Libby to testify as a condition to admitting evidence that bears directly on the central question in the case--whether he deliberately lied or innocently erred as the result of confusion, mistake, or faulty memory--would violate his Fifth Amendment right to remain silent.

## CONCLUSION

For the foregoing reasons, the Court should admit the proffered evidence of the national security issues Mr. Libby confronted during the relevant period, regardless of whether he testifies.

Date: February 5, 2007                                     Respectfully submitted,


/s/ Theodore V. Wells, Jr.                                 /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                                     William H. Jeffress, Jr.
DC Bar No. 468934                                          DC Bar No. 041152
James L. Brochin                                           Alex Bourelly
DC Bar No. 455456                                          DC Bar No. 441422
Paul, Weiss, Rifkind, Wharton                              Baker Botts LLP
  & Garrison LLP                                           1299 Pennsylvania Ave., NW
1285 Avenue of the Americas                                Washington, DC  20004
New York, NY  10019-6064                                   (202) 639-7751
(212) 373-3089


/s/ John D. Cline
John D. Cline
DC Bar No. 403824
K.C. Maxwell
(*pro hac vice*)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94101