UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CR. NO 05-394 (RBW) |
| v. | ) | |
| | ) | |
| I.  LEWIS LIBBY, | ) | |
| also known as "Scooter Libby" | ) | |

**GOVERNMENT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO
PRECLUDE TESTIMONY OF ANDREA MITCHELL**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, Special

Counsel, respectfully submits the following reply in support if its motion *in limine* to preclude the

defendant from eliciting from defense witness Andrea Mitchell testimony regarding her knowledge,

prior to July 14, 2003, that Valerie Plame Wilson worked for the CIA, for the improper purpose of

attempting to impeach her with a prior statement that would otherwise be inadmissible.

**INTRODUCTION**

The government's motion in limine asks this Court to preclude the defendant from attempting

to use Ms. Mitchell's testimony to put before the jury information that is otherwise inadmissible,

relies on pure speculation, and significantly, is not true but is being offered by the defendant for its

truth.  Defendant's response contends that what the government is seeking to  preclude is "relevant

and powerful evidence." Def. Resp. at 1.  Although the defendant's response asks this Court to deny

the government's motion, the response actually further elucidates the many bases for *granting* the

motion.

**ARGUMENT**

I.     **DEFENDANT IS WELL AWARE THAT MS. MITCHELL WILL TESTIFY THAT SHE DID NOT KNOW OF MS. WILSON'S EMPLOYMENT UNTIL AFTER MR. NOVAK'S COLUMN, THEREFORE THE ONLY PURPOSE FOR ASKING HER ABOUT THIS ISSUE IS TO IMPEACH HER WITH HER OCTOBER 3, 2003 STATEMENT.**

Ms. Mitchell has repeatedly said that the October 3, 2003 statement, which suggested she may have known of Ms. Wilson's employment before Mr. Novak's column, was not accurate, and she has repeatedly disavowed any knowledge of Ms. Wilson's employment prior to Mr. Novak's column. Despite this, the defendant inexplicably maintains in his response brief that he "believes" the statement was accurate when Ms. Mitchell said it and that "it is fair to interpret that now-retracted statement to mean that she and others knew, prior to July 14, that Ms. Wilson worked at the CIA." Def. Resp. at 3, 5. The defendant's mere belief or hope that the statement in question was accurate and that Ms. Mitchell knew of Ms. Wilson's CIA employment prior to July 14, 2003 does not make it so. The statement was inaccurate, and the defendant's attempts to portray it to the contrary have absolutely no basis in fact.

The defendant also states his desire to explore the likelihood that Ms. Mitchell may have "heard a rumor" about Ms. Wilson working for the CIA prior to July 14, 2003. That, too, has absolutely no basis in fact. Ms. Mitchell's counsel stated the following in this Court last week: "Number one, I am representing to you as an officer of the Court that Ms. Mitchell, if called to testify on these matters, would testify that she heard no rumor, that she had no information and no knowledge about the wife of Ambassador Wilson prior to the [July 14, 2003] Novak column." 2/8/07 p.m. Tr. at 101-102. It is quite apparent that there is simply no good faith basis for the defendant to assume that Ms. Mitchell will testify otherwise.

II.    **DEFENDANT SEEKS TO INTRODUCE MS. MITCHELL'S PRIOR STATEMENT AS SUBSTANTIVE EVIDENCE FOR THE TRUTH OF THE MATTER ASSERTED**.

The only purpose for which the defendant is seeking to elicit testimony about Ms. Mitchell's knowledge of Ms. Wilson's employment prior to July 14, 2003 is to attempt to impeach her with the prior inadmissible statement, a statement which is not actually inconsistent. Ms. Mitchell has said that she mis-spoke or misunderstood the question being asked on the *Capital Report* program, and since that broadcast, she has consistently has maintained that her comment on that show should not be understood as an indication that she knew of Ms. Wilson's employment prior to Mr. Novak's July 14, 2003 column. The October 3, 2003 statement can in fact be read consistent with her not having had such knowledge prior to Mr. Novak's column. In addition, as noted in the government's opening brief on this issue, a newspaper article four days prior to the October 3, 2003 statement reported that Ms. Mitchell was one of the journalists who was directed toward information about Ms. Wilson *after* Mr. Novak's column. *See* Mike Allen, "Bush Aides Say They'll Cooperate With Probe Into Intelligence Leak," *Washington Post*, Sept. 29, 2003, at A1.

Defendant acknowledges that "[w]hen a party impeaches a witness by prior inconsistent statement, the statement is presented only for impeachment purposes and not as substantive evidence for the truth of the matter asserted," and then claims that if he has to impeach Ms. Mitchell, he understands that her prior statement would come in for impeachment purposes only. Def. Resp. at 7. This belies reality. It is quite plain that defendant's motives for exploring this area of questioning with Ms. Mitchell are only to have the jury consider the truth of Ms. Mitchell's prior statement. First, as discussed above, the defendant has no good faith basis for raising with Ms. Mitchell the possibility that she learned of Ms. Wilson's employment prior to July 14, 2003, when

defendant is well aware based on numerous prior statements of Ms. Mitchell, as well as her

attorney's proffer in Court last week, setting forth that Ms. Mitchell did not learn that information

prior to July 14, 2003.  Thus, as this Court has recognized, the only reason for raising the issue at

all is so that defendant can attempt to introduce the prior statement.  Second, defendant admits

readily in his response that he wants to use the prior statement to argue to the jury that since Ms.

Mitchell may have heard a rumor about  Ms. Wilson's employment, she may have told Mr. Russert,

and Mr. Russert may have asked the defendant about it, and therefore Mr. Russert should not be

believed when he says that he did not discuss Ms. Wilson with the defendant.  Putting aside the fact

that it requires a great degree of unfounded speculation to ask the jury to make the requisite

inferences, the defendant's own arguments for why he wants to elicit testimony in this area reveal

that he wants the information to be considered for its truth.  He wants the jury to believe that Ms.

Mitchell's October 3, 2003 statement was true, and that from the truth of that statement, they can

reach the conclusion that Mr. Russert was lying or mistaken when he testified that he did not hear

the information about Ms. Wilson until he read Mr. Novak's column.   The defense acknowledged

to the Court that this was the case:

> THE COURT:  But do you intend to only argue it, assuming I let it in, for the purpose
> of impeaching her credibility or would you also seek to try and suggest that, because
> she purportedly said it, that they should believe that it's true, and therefore conclude
> from its truth that she would have told it to Russert, and therefore, Russert's basis of
> knowledge would have come from her and not from your client.  Is that what you
> would be suggesting is that somehow Russert would have heard this, and therefore
> he would have had a basis for having asked your client?
>
> MR. WELLS:  Correct, Your Honor.

2/8/07 p.m. Tr. at 90-91.  Finally, any doubt as to defendant's true motive of seeking to have the jury

consider the information in Ms. Mitchell's prior disavowed statement as substantive evidence is

extinguished by the fact that the defendant *actually asks the Court to admit the statement for its truth* under the residual hearsay exception of Fed. R. Evid. 807.[1]

Because it is plain that defendant seeks to admit the prior statement for its truth, defendant's attempt to distinguish *United States v. Sebetich*, 776 F.2d 412 (3d Cir. 1985), in which the court held that the defendant was improperly seeking to admit prior statements for substantive purposes fails. Rather, *Sebetich*, is on point. As explained in *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 655, 666-67 (3d Cir. 2002), (cited in footnote 3 of defendant's response), "Sebetich and his codefendants were trying to admit Sala's statements for substantive purposes under a hearsay exception at the same time that they were ostensibly proposing to admit it for 'impeachment' purposes under Rule 607. It was obvious that their intent was to place the substance of the statement before the jury."

## III.    THIS CIRCUIT'S RULE FROM *JOHNSON* IS DIRECTLY ON POINT.

*United States v. Johnson*, 802 F.2d 1459, 1466 (D.C. Cir. 1986), which remains the authority in this Circuit on the issue, clearly states, "Impeachment evidence is to be used solely for the purpose of impeachment, and it may not be 'employed as a mere subterfuge' to get before the jury evidence

---

[1]This argument has no merit. Defendant concedes that the residual hearsay exception "is, undoubtedly, a narrow one." Def. Resp. at 18. *See United States v. Washington,* 106 F.3d 983, 1001-02 (D.C.Cir.1997) (residual exception "extremely narrow" and requires testimony to be "very important and very reliable"; proponent of statement bears "heavy burden to come forward with indicia of both trustworthiness and probative force"). Here, the information in Ms. Mitchell's prior statement is neither very important nor very reliable. The importance which defendant attaches to it depends on numerous speculative inferences, none of which have any basis in fact. Its reliability is nonexistent since Ms. Mitchell has repeatedly noted its inaccuracy. As the Court stated when discussing this issue last week, "I think if we let this in, this statement in under the residual rule, we've basically gutted the hearsay rule." 2/8/07 p.m. Tr. at 87. In fact, Ms. Mitchell's out of court statement could not possibly qualify under any exception to the hearsay rule, as it has no indicia of reliability.

not otherwise admissible." Defendant's attempts to paint *Johnson* as a "limited pronouncement"

which does not apply to the testimony being sought from Ms. Mitchell are simply incorrect. First,

defendant states that "nobody knows how Ms. Mitchell will testify at trial." Def. Resp. at 9. As

discussed above, this is not true. In addition to the numerous public statements indicating what Ms.

Mitchell will say about her knowledge of Ms. Wilson's employment prior to July 14, 2003, her

attorney proffered, as an officer of the Court, that Ms. Mitchell will state that "she heard no rumor,

that she had no information and no knowledge about the wife of Ambassador Wilson prior to the

[July 14, 2003] Novak column." 2/8/07 p.m. Tr. at 101-102.

Despite this, defendant states that he is "hopeful that Ms. Mitchell will testify truthfully at

trial by stating that, given her intense focus on the Wilson story, it is possible that she learned about

Ms. Wilson's employment at the CIA prior to July 14, 2003, perhaps because she heard a rumor or

learned of a 'buzz' about why Mr. Wilson was selected for his trip to Niger." Def. Resp. at 11.

Defendant's unfounded "hope" is insufficient to establish a good faith basis to call Ms. Mitchell.

Defendant knows that Ms. Mitchell's testimony on this issue will be adverse to him[2] based on the

representations of counsel, and all of the information available about Ms. Mitchell's lack of

knowledge regarding Ms. Wilson's employment prior to July 14, 2003, including the fact that *NBC*

and Ms. Mitchell's counsel have specifically stated in court filings that they have no documents (1)

prepared or received by them prior to July 14, 2003, that refer to the wife of former Ambassador

Joseph Wilson (by name or otherwise), or (2) that indicate or suggest that any employee of *NBC*

---

[2]In an apparent reference to Ms. Mitchell's statement on October 3, 2003, defendant says that Ms. Mitchell has made "crucial exculpatory statements." Def. Resp. at 11. This is pure hyperbole. The single statement on October 3, 2003 has been completely disavowed by Ms. Mitchell and could not be viewed as in any way exculpatory to Mr. Libby without extreme speculation that has no basis in fact.

*News* was aware, prior to July 14, 2003, that former Ambassador Wilson's wife was employed by the CIA. There is no "uncertainty surrounding Ms. Mitchell's potential testimony." Again, defendant's attempts to distinguish cases cited by the government in its motion reveal how truly on point those cases are. Defendant states that *Sebitch*, 776 F.2d at 428, *United States v. Morlang*, 531 F.2d 183 (4th Cir. 1975), and *United States v. Fay*, 668 F.2d 375 (8th Cir. 1981), are distinguishable because in those cases, the party calling the witness was fully aware that the witnesses' testimony would be harmful to the party and that the real purpose was to elicit the prior inconsistent statement Def. Resp. at 11-12. That is exactly the situation with Ms. Mitchell's testimony.

Defendant's stated intent of calling Ms. Mitchell for other purposes does not give him carte blanche to put before the jury an inadmissible hearsay statement under the guise of attempted impeachment. Ostensibly, the defendant could call Ms. Mitchell for the same purpose for which he is apparently calling numerous other reporter witnesses, to establish that the defendant spoke with her prior to Mr. Novak's column, and that the defendant did not reveal to her information about Ms. Wilson's employment.[3] If that testimony is permitted, it does not mean that the Court should simply allow the defendant to disregard the rules of evidence and elicit testimony it knows to be unfavorable for the sole purpose of impeaching Ms. Mitchell with the prior otherwise inadmissible statement. The government does not intend to elicit testimony from Ms. Mitchell regarding her knowledge of Ms. Wilson's employment prior to July 14, 2003 unless defendant is permitted to do so, and thus, the defendant has no need to impeach. The exclusion of Ms. Mitchell's prior hearsay statement thus will cause the defendant no prejudice.

---

[3]At some point, the cumulative nature of such testimony from multiple reporters would substantially outweigh its probative value and could be excluded by the Court under Fed. R. Evid. 403.

Regarding the defendant's attempted distinction of the application of the rule in *Johnson* to criminal defendants, defendant cites no case law indicating that the rule only applies to the government.  The only case citing any distinction in how the rule on impeaching one's own witnesses with prior inconsistent statements should be applied to the government versus a criminal defendant is *United States v. Buffalo*, 358 F.3d 519, 525 (8th Cir. 2004), a case readily distinguishable from this one. In *Buffalo*, the defendant was charged with assaulting an individual on an Indian reservation. While the defendant was detained and awaiting trial, two of the his cell mates independently told him that Hayes had confessed to the crime with which the defendant was charged. *Buffalo*, 358 F.3d at 521.  The defendant sought to call the cell mates to testify about Hayes' confession under Fed. R. Evid. 804(b)(3), which requires that the out-of-court declarant be unavailable. *Id.*  As it turned out, Hayes, who apparently had striking physical similarities to the defendant, was not unavailable, and the defendant called him to testify even though the court had made a peremptory ruling that if defendant called Hayes, he would not be permitted to call the cell mates to impeach Hayes. *Id.* Hayes testified that he wished he had committed the assault, but denied having actually committed it. *Id.*  The district court did not permit the cell mates to testify, commenting that permitting such testimony "would be nothing more than an attempt to set up a strawman to circumvent the rule against hearsay under the guise of impeachment." *Id*.  The Eighth Circuit found that "[u]nder the unique circumstances of this case," in which there was value to defendant's alibi defense in calling Hayes because of the physical similarities between Hayes and the defendant, a limiting instruction could have minimized the risk of the jury misusing testimony regarding Hayes' confession. *Id. at 525.*  The court also noted, that "although not directly pertinent to the conventional Rule 403 balancing test," there was significant corroboration of the truth of the

8

prior inconsistent statements sought to be admitted, including blood on Hayes' shoes after the assault. *Id.* at 526. This is clearly an entirely different situation than the issue presented with respect to Ms. Mitchell's testimony. Given the significant degree of speculation required to infer any probative value to Ms. Mitchell's prior statement, and the complete lack of corroboration for the truth of that prior statement, any attempt of the defendant to rely on *Buffalo* is inherently misguided.

## IV.   DEFENDANT HAS NO BASIS TO USE MS. MITCHELL'S PRIOR STATEMENT TO CONTRADICT MR. RUSSERT

In his response, the defendant asserts that the issue of "whether Ms. Mitchell had heard a rumor that Ms. Wilson worked for the CIA prior to July 14, 2003 is *directly relevant* to Mr. Russert's credibility," and that it is "unfair for the government to make the issue of when Mr. Russert learned of Ms. Wilson's identity of critical importance in this case, and then hide behind a cramped view of evidentiary rules to bar the defense from introducing a contradictory statement by Ms. Mitchell." Def. Resp. at 17-18 (emphasis added). Any suggestion that testimony regarding a rumor Ms. Mitchell may have heard (which stems only from an inference suggested by a purportedly prior inconsistent statement that has been repeatedly disavowed) is somehow *directly relevant* to Mr. Russert's credibility is absurd. Since there is no good faith basis for believing Ms. Mitchell would testify that she knew or even had heard a rumor that Ms. Wilson worked for the CIA prior to Mr. Novak's column, and no basis for believing she would have passed such a rumor on to Mr. Russert,[4]

---

[4]Mr. Russert in fact has already testified that his news organization tries "to stay away from rumors," and that "[y]ou can get tips and things you want to pursue but rumors don't make it on the air." 2/7/07 p.m. Tr. at 37. Moreover, although defense counsel repeatedly stated "all I have to show is that they heard some kind of buzz or enough to ask a question" or "could have heard a rumor," 2/8/07 p.m. Tr. at 76, 80, 81, that is not sufficient; if it were, the Government would have the right in rebuttal to call everyone at NBC News who Ms. Mitchell or Mr. Russert had contact with for all of them to say the same thing that Mr. Russert said in his testimony and that Ms. Mitchell would say in her testimony if asked, that they did not know the information and did not tell anyone else.

and no basis for believing that even if Ms. Mitchell had heard such a rumor and had passed it on to

Mr. Russert, and that Mr. Russert would have asked the defendant about it, which is the inference

the defendant wants to make, this is pure unfounded speculation.[5]   The Court noted on Thursday,

"[t]hat's a whole lot of inference to draw," 2/8/07 p.m. Tr. at 91, and asked the defendant to provide

cases that show that that type of speculative analysis is appropriate to put before a jury.  2/8/07 p.m.

Tr. at 92.  Defendant's response provided no case law on that issue.

Finally, prohibiting the defendant from eliciting from Ms. Mitchell a prior statement lacking

any indicia of reliability does not come close to raising constitutional concerns.  The Supreme Court

has made crystal clear that "state and federal rulemakers have broad latitude under the Constitution

to establish rules excluding evidence from criminal trials." *E.g.*, *United States v. Scheffer*, 523 U.S.

303, 308 (1998). *See also Montana v. Egelhoff,* 518 U.S. 37, 42 (1996) (plurality opinion) (terming

such rules "familiar and unquestionably constitutional").  "While the Constitution . . . prohibits the

exclusion of defense evidence under rules that serve no legitimate purpose or that are

disproportionate to the ends that they are asserted to promote, well-established rules of evidence

permit trial judges to exclude evidence if its probative value is outweighed by certain other factors

such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South*

*Carolina*, 126 S.Ct. 1727 (2006)(holding that rule excluding reliable evidence of third-party guilt

violated defendant's rights).  *See also Washington v. Renico*, 455 F.3d 722, 734 -736 (6th Cir.

2006)(enforcement of legitimate rules is no violation).  Neither *Chambers v. Mississippi,* 410 U.S.

---

[5]Defendant seemingly ignored the fact that defendant testified in the grand jury that Mr. Russert told the defendant information about Ms. Wilson's employment as a fact, not as a rumor, and added that "all the reporters know it" thereby negating any possible suggestion that this would have been an idle rumor being passed from Ms. Mitchell to Mr. Russert to the defendant.

284 (1973)(holding that prohibiting the defendant from impeaching his own witness and from presenting trustworthy out-of-court statements that his witness had admitted to the murder with which he stood charged rendered defendant's trial fundamentally unfair), nor any other precedent, requires this Court to depart from generally applicable evidentiary principles to allow a criminal defendant to present to the jury inadmissible hearsay that is untrustworthy and marginally relevant, at best.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court preclude the defendant from eliciting testimony from Ms. Mitchell regarding her knowledge concerning the employment of Valerie Plame Wilson prior to July 14, 2003.

Respectfully submitted,

/s/
PATRICK J. FITZGERALD
Special Counsel
Kathleen M. Kedian
Debra Riggs Bonamici
Peter R. Zeidenberg
*Deputy Special Counsels*

Office of the Special Counsel
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C.  20530
202-514-1187

Dated:  February 9, 2007

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 9th day of February, 2007, I caused true and correct copies of the foregoing to be served on the following parties by electronic mail:

William Jeffress, Esq.
Baker Botts
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Facsimile: 202-585-1087

Theodore V. Wells, Esq.
Paul Weiss
1285 Avenue of the Americas
New York, NY 10019-6064
Facsimile: 212-373-2217

John D. Cline, Esq.
Jones Day
555 California Street
San Francisco, CA 94104
Facsimile: 415-875-5700

Patrick J. Fitzgerald
Special Counsel
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C.  20530
202-514-1187

By: _____/s/_____
Kathleen M. Kedian
Deputy Special Counsel