UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.           )<br>)<br>)<br>I. LEWIS LIBBY,      )<br>   also known as "Scooter Libby."  )<br>) | CR. NO. 05-394 (RBW) |

**REPLY BRIEF OF DEFENDANT I. LEWIS LIBBY ON ADMISSIBILITY OF STATE OF MIND EVIDENCE WITHOUT DEFENDANT'S TESTIMONY**

The government concedes that the Court cannot require Mr. Libby to testify as a condition for admitting evidence bearing on his state of mind.[1] It concedes as well that Mr. Libby has a right to present at least some of his proffered evidence regardless of whether he testifies, including portions of the statement admitting relevant facts, testimony from OVP witnesses about the national security meetings he attended and the work he was assigned to perform, and the inquiries he made during the morning intelligence briefings.[2] Thus, the Court must determine whether the remainder of the proffered evidence, concerning the specific matters that commanded Mr. Libby's attention, may be admitted if he elects not to testify.

As we demonstrate in our opening brief and again below, the evidence Mr. Libby offers is unquestionably relevant, regardless of whether he testifies, to negate the knowledge and intent elements of the charged offenses by showing that any inaccuracies in Mr. Libby's statements and testimony resulted from confusion, mistake, or faulty memory rather than deliberate deception.

---

[1] Government's Response to Defendant's Brief Concerning Admissibility of Evidence of State of Mind at 11 (filed Feb. 12, 2007) ["G. Resp."].

[2] *See, e.g.,* G. Resp. 5 n.2, 13 n.7, 15, 17, 18 n.10.

Excluding the evidence would violate Mr. Libby's Fifth and Sixth Amendment right to present his defense.

Barring the defense evidence would be particularly unfair because the Court has admitted a wide range of circumstantial state of mind evidence offered by the government. The prosecution evidence includes (for example) highly prejudicial newspaper articles from July 2003 that were found in Mr. Libby's files.[3] The Court admitted this evidence (GX 412 and 413), over objection, based on what we contend is a chain of attenuated inferences. The Court will permit the jury to infer that Mr. Libby read the articles from the fact that the articles were in his files. It will permit the jury to infer that he was focused on the matters addressed in the articles from the inferred fact that he read them. And it will permit the jury to infer from Mr. Libby's (inferred) focus on the matters addressed in the articles (Ambassador Wilson's trip and the sixteen words controversy) that he was focused on matters *not* addressed in the articles (Ms. Wilson's employment at the CIA and her role in sending Ambassador Wilson to Niger).[4] If the Court will admit prejudicial newspaper articles on such a lengthy chain of inferences to show Mr. Libby's purported focus on Ms. Wilson, it should admit defense evidence concerning the matters that (the evidence shows) *actually* commanded Mr. Libby's attention at the relevant times.

---

[3] Other such evidence includes Mr. Libby's classified information nondisclosure agreement (GX 5-A), admitted without any evidence that he even considered it at the relevant time (September and October 2003); video clips of portions of Scott McClellan's press briefings, admitted without any evidence that Mr. Libby actually watched them; newspaper articles from September and October 2003, admitted without any evidence that Mr. Libby actually read then; and testimony from Craig Schmall about a statement he allegedly made to Mr. Libby and the Vice President about the dangers of disclosing a covert agent's identity, admitted without any evidence that Mr. Libby believed that Ms. Wilson was a covert agent.

[4] *E.g.*, T. 2/7/07 a.m. at 8-11; *see* T. 2/6/07 p.m. at 34-37 (government offers GX 412 and 413 to "show[] that [Mr. Libby] is heavily focused on the press response at this time . . . [T]his is not something that [was] drowned out by other duties because he spent time himself preparing it.").

**ARGUMENT**

We address in turn the three categories of relevant evidence. The Court should admit the proffered evidence in its entirety, regardless of whether Mr. Libby testifies. The government's attempt to deny Mr. Libby the "persuasive power of the concrete and particular," *Old Chief v. United States*, 519 U.S. 172, 187 (1997), if sanctioned by the Court, would violate his Fifth and Sixth Amendment right to present his defense.

**I.     THE STATEMENT ADMITTING RELEVANT FACTS.**

The Court should admit every word of the statement admitting relevant facts. Neither the government nor the Court ever conditioned its use on testimony from Mr. Libby or on any other foundational evidence. The statement is a *substitute* for evidence of the matters it admits, including Mr. Libby's testimony about those matters. And the statement itself--which is, after all, an *admission by the government*--establishes the relevance to Mr. Libby's state of mind of the portions the government seeks to exclude.

To begin with, each of the final three paragraphs of the statement admits that Mr. Libby was "concerned" or "very concerned" about the particular matter that the paragraph addresses. As to the matters in those paragraphs, therefore, the government's *own admission* establishes any necessary foundation. The Court cannot require Mr. Libby to testify that during the relevant period he was "concerned" or "very concerned" about the matters described in the three paragraphs as a condition for placing in evidence a government admission of that very fact.

Similarly, the statement itself establishes the foundation for the other portions the government now seeks to remove, all of which appear in the second paragraph. That paragraph begins, "In addition, the Government agrees that Mr. Libby's duties included but were not limited to," and it then lists a series of matters. By the government's admission, therefore, the

listed matters fell within the scope of Mr. Libby's duties during the relevant period. There is no basis for removing references to aspects of those duties that will permit the jury to grasp their urgency, including in clause (i) (relating to terrorist threats) the reference to al Qaeda and Hezbollah, in clause (iii) (relating to countries seeking to acquire nuclear weapons) the references to North Korea and Iran, and in clause (iv) (relating to nuclear proliferation) the reference to A.Q. Khan. The Court found those matters relevant and admissible in its CIPA § 6(a) ruling without conditioning admissibility on testimony from Mr. Libby. It would be unfair to change that ruling now.[5]

The government's attempt to remove references to the July 2003 Turkey and Liberia crises is especially baseless. The statement admits that these were "urgent national security issues"; it admits that the matter involving Turkey was a "tense disagreement"; and it admits that dealing with both matters fell within Mr. Libby's duties during a critical period in the case (early July 2003). Given these admissions, the government cannot plausibly argue that an insufficient basis exists from which the jury could infer that these matters commanded Mr. Libby's attention during the relevant period.

The government was on notice from the beginning of the CIPA proceedings that Mr. Libby might not testify. T. 9/27/06 at 7. It nonetheless contends that it should not be held to its "statement admitting relevant facts" because it meant to condition the statement on testimony from Mr. Libby. G. Resp. 15-16. But the government never hinted at such a condition during the CIPA proceedings. *E.g.*, T. 11/7/06 at 10. It never hinted at such a condition when, at the

---

[5] The government suggests that, because the parties and the Court assumed that Mr. Libby would testify for purposes of the CIPA proceedings, the Court's rulings were all implicitly conditioned on such testimony. G. Resp. 4. That is nonsense. When the Court meant to condition admissibility on Mr. Libby's testimony, it said so explicitly--as it did concerning the morning intelligence briefing materials. *United States v. Libby*, 2006 U.S. Dist. LEXIS 87130, at *32-*33 (D.D.C. Nov. 15, 2006). Even though the CIPA § 6(a) opinion recognized the possibility that Mr. Libby might not testify, *see id.* at *23, the Court did not otherwise hold that the admissibility of the national security evidence was conditioned on his testimony.

January 10 hearing, the defense announced its intention to read the statement in opening. T. 1/10/07 at 29-30. It never hinted at such a condition when the Court and the defense asked potential jurors during voir dire how they would react if Mr. Libby did not testify. *E.g.*, T. 1/16/07 a.m. at 23, 108, 111; T. 1/17/07 a.m. at 123; T. 1/17/07 p.m. at 31, 44. And it never hinted at such a condition when defense counsel opened with the statement.

Having made an unconditional admission, the government cannot now--after defense counsel read the admission in opening and relied upon it in structuring the defense--attempt to condition its use on testimony from Mr. Libby. Even in the civil context, parties cannot withdraw or modify admissions when the opposing party would suffer prejudice. *See, e.g., Rainbolt v. Johnson*, 669 F.2d 767, 768-69 (D.C. Cir. 1981). Indeed, in civil cases a court may grant a motion to withdraw an admission after trial has begun only to prevent a "manifest injustice." *Baker v. Potter*, 212 F.R.D. 8, 13 n.5 (D.D.C. 2002); *see, e.g., American Automobile Association v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991). The government has not even met the civil "manifest injustice" standard for withdrawing or modifying its admission, much less the higher standard that should apply when (as here) the defense in a criminal case relies on an unconditional government admission in opening and throughout the prosecution case.

A midtrial ruling barring Mr. Libby's use of key portions of the previously unconditional admission unless he testifies would impermissibly burden his Fifth Amendment right to remain silent. It would also violate Mr. Libby's Fifth Amendment right to Due Process and his Sixth Amendment right to counsel and to compulsory process. The Court should reject the government's attempt to disavow its own unequivocal and unconditional admission.

II.     **TESTIMONY BY PERSONS WITH WHOM MR. LIBBY WORKED.**

The government concedes that OVP witnesses can "testify generally regarding the national security meetings [Mr. Libby] attended and the work he was assigned to perform." G. Resp. 17. It insists, however, that only Mr. Libby's testimony can establish the relevance of evidence concerning the specific matters that consumed his attention.

The government is wrong. This Court has already ruled that "there can be no question that what otherwise allegedly consumed the defendant's time and attention during [the week of June 9 through 14, 2003] is relevant and extremely probative to the prosecution and defense of this action," *United States v. Libby*, 2006 U.S. Dist. LEXIS 87130, at *22 (D.D.C. Nov. 15, 2006); that the week of July 6 through 12, 2003 is "critical to the case, and the events occurring during this week are relevant and highly probative," *id.*; and that "[w]hat the defendant was doing and the information provided to him on [other key indictment dates] are also relevant and highly probative of whether he is culpable for committing the charged offenses," *id.* at 23.

In accordance with these rulings, Mr. Libby's former OVP colleagues, who worked with him day in and day out, can testify to the specific national security matters on which he focused during the relevant period. The colleagues briefed and were briefed by Mr. Libby, attended meetings with him, gave him information and direction and received information and direction from him, and observed what he did and read. It is entirely permissible for the OVP witnesses, based on their personal knowledge and daily observation, to describe the national security matters (all of which fall within the nine topics that the Court has ruled relevant and admissible) to which Mr. Libby devoted his time and effort.[6] And it is entirely permissible for the jury to

---

[6] The government complains that it cannot adequately cross-examine the OVP witnesses about Mr. Libby's national security duties. G. Resp. 18-19. To some extent, circumstantial evidence always presents this difficulty. The defense, for example, cannot cross-examine the newspaper articles, video clips, classified information nodisclosure agreement, and other circumstantial state of mind evidence that the Court admitted at the government's request. But the government will remain free to cross-examine the OVP witnesses about their observations

infer from this testimony that those national security matters commanded Mr. Libby's attention and caused him to confuse, forget, or misremember the snippets of conversation about Ms. Wilson. To the extent Fed. R. Evid. 104(b) governs the admissibility of the OVP evidence (G. Resp. 7 n.4), the standard is easily met; the OVP witnesses will present ample evidence from which a jury could reasonably find, by a preponderance of all the evidence, that the specific matters those witnesses will describe commanded Mr. Libby's attention at the relevant times. *See, e.g., Huddleston v. United States*, 485 U.S. 681, 689 (1988).[7]

If some foundation were needed for the OVP testimony beyond the witnesses' own testimony, the statement admitting relevant facts suffices. The statement admits that Mr. Libby's duties included the nine topics found relevant during the CIPA process, which encompass all of the specific matters about which the OVP witnesses will testify. And beyond the witnesses' testimony and the government's admission, the Court can consider the following testimony from Mr. Libby's March 5, 2004 grand jury appearance, now in evidence as GX 1: "I tend to get between 100 and 200 pages of material a day that I'm supposed to read and understand and I-- you know, I start at 6:00 in the morning and I go to 8:00 or 8:30 at night, and most of that is meetings. So a lot of information comes through to me, and I can't possibly recall all the stuff I think is important, let alone other stuff that I don't think is as important." March 5, 2004 Grand Jury T. at 193.

---

concerning Mr. Libby's focus, and it can offer rebuttal evidence within the constraints of CIPA § 6(f) and the other rules that govern such evidence.

[7] In assessing the sufficiency of the foundational evidence, the Court "neither weighs credibility nor makes a finding that [the proponent] has proved the conditional fact by a preponderance of the evidence." *Huddleston*, 485 U.S. at 689. The foundational evidence from the OVP witnesses distinguishes this case from the cases the government discusses at G. Resp. 7-11. The cases on which the government relies found no abuse of discretion where the proponent of the evidence entirely failed to establish some essential foundational fact. Here, by contrast, there is ample evidence from which the jury can conclude that Mr. Libby focused on the national security matters within the nine topics.

Faced with Mr. Libby's grand jury testimony, now in evidence, the government again tries to change the rules retroactively. Just as the government now wants to condition its previously unconditional admission on Mr. Libby surrendering his right to remain silent, it claims that the Court and the jury cannot consider his grand jury testimony for its truth because the government did not offer it as a party admission under Fed. R. Evid. 801(d)(2). G. Resp. 19. The government misstates the record. In arguing that the grand jury transcripts should be admitted in their entirety, the government asserted that "a large portion of the transcript is admissible as admissions" by Mr. Libby. T. 12/19/06 at 15. The government had to take this position, because it sought to admit and publish to the jury not just the charged statements, the surrounding passages, and the questions asked, but the entirety of Mr. Libby's nearly eight-hour grand jury appearance (save for some minor redactions).

Until now, the government has not in any filing, correspondence, or appearance before the Court retreated from its position that the transcripts are admissions of a party opponent. *See, e.g.*, T. 1/10/07 at 12-14; Government's Response to Defendant's Motion in Limine to Redact Portions of Defendant's Grand Jury Testimony (filed under seal Jan. 13, 2007). Nor did it, upon admission of Mr. Libby's grand jury testimony, request or obtain any limiting instruction under Fed. R. Evid. 105. *See* T. 2/5/07 p.m. at 57; T. 2/6/07 p.m. at 27-28. Contrary to its current position, the government previously *acknowledged* that, with the near entirety of transcripts in evidence, Mr. Libby has every right to rely on statements he made to the grand jury to support his defense. *See* T. 12/19/06 at 16 ("We can point to particular sections, as can the defense"). Only now, in an effort to preclude Mr. Libby from offering relevant evidence in his defense unless he testifies, does the government disavow reliance on Rule 801(d)(2).

The government's attempt to change its theory of admissibility, *after its case has been closed*, is patently unfair. The defense relied on the government's characterization of statements in Mr. Libby's testimony as party admissions, which could be considered for their truth, when it decided to withdraw its objection to introduction of the near entirety of the grand jury transcripts. It relied on that characterization in structuring its opening statement. And it relied on that characterization in conducting its cross-examination of government witnesses. If, despite the government's representations, the defense reliance on those representations, and the admission of the grand jury testimony with no limiting instruction, the Court were now to hold that statements Mr. Libby made to the grand jury could not be considered for their truth, Mr. Libby would be entitled to a mistrial with prejudice.

The decision in *United States v. Trujillo*, 578 F. 2d 285 (10th Cir. 1978), is on point. In *Trujillo*, the defendant was charged with making false statements in the acquisition of a firearm, and he asserted the insanity defense. *See id.* at 286. The defendant moved to admit his hospital records "for the limited purpose of authenticated records." *Id.* at 287. The trial court admitted the records, noting a "stipulation" that "the exhibits can be received in evidence and considered by any expert who may wish to rely on them in the course of his or her testimony." *Id.* Both defense and prosecution experts ultimately used the records in testifying as to the defendant's sanity at the time of the commission of the offense. *See id.* at 288. No limiting instruction was requested or provided. *See id.* On appeal, the Tenth Circuit Circuit rejected the defendant's claim that the records were erroneously used as evidence of the defendant's sanity at the time of the offense rather than for the limited purpose of "authenticated records." The court declared: "The defense claim of a limited offer does not impress us. . . . The defense seeks to take all advantage of the exhibits and avoid all disadvantage. The defense made no request for the

excision of the portions of the exhibits which it deems prejudicial to the defendant and for any instruction limited the use of them. In the absence of such requests, defendant has no ground for complaint against the submission of the exhibits to the jury." *Id.*

Similarly here, after obtaining admission of the transcripts in their entirety with no limiting instruction, the government now seeks, by changing the rules after the fact, "to take all advantage of [the transcripts] and avoid all disadvantage." Indeed, unlike the defendant in *Trujillo*, the government never suggested that it wanted a limiting instruction and affirmatively argued for the transcripts to be allowed into evidence as Mr. Libby's admissions. The Court should reject the government's position and consider Mr. Libby's grand jury testimony for its truth in determining the admissibility of the national security evidence.

### III. THE MORNING INTELLIGENCE BRIEFING MATERIALS.

The government concedes--and the Court has found--that Mr. Libby may present evidence of the inquiries he made during his morning intelligence briefings, regardless of whether he testifies. *See Libby*, 2006 U.S. Dist. LEXIS 87130, at *32-*33; G. Resp. at 5 n.2, 13 n.7, 18 n.10. The government insists, however, that no additional evidence may be presented concerning the morning briefings unless Mr. Libby testifies.[8]

The government ignores the foundation supplied by the statement admitting relevant facts, the anticipated testimony of the OVP witnesses, and the inferences drawn from the urgent nature of the morning intelligence briefing information. That foundation--which is far more substantial than the foundation that the Court found sufficient for the July 2003 newspaper

---

[8] If the Court excludes the morning intelligence briefing materials without Mr. Libby's testimony, over our objection, we will seek to present additional details concerning Mr. Libby's inquiries, which the Court has found (and the government concedes) are admissible regardless of whether he testifies. In addition, we will seek to present evidence of all of the morning intelligence briefing items presented to Mr. Libby during the June 14, 2003 briefing about which Mr. Schmall testified to establish the full context of the alleged mention of "Joe Wilson" and "Valerie Wilson" during that briefing.

articles found in Mr. Libby's files--more than suffices for admission of the morning intelligence briefing material. The foundational evidence establishes that the morning intelligence briefing materials, all of which involve one or more of the nine topics the Court has found relevant, fell within Mr. Libby's duties and that those topics commanded Mr. Libby's attention during the relevant period. Nothing more is required to permit the jury to infer that Mr. Libby's focus on those matters caused him to confuse, forget, or misremember the relatively less important snippets of conversation concerning Ms. Wilson.

Beyond this foundational evidence, however, the government largely ignores the critical testimony of CIA briefer Craig Schmall. In a brief footnote, it asserts that "Mr. Schmall's feelings about the importance of the matters cannot be attributed to the defendant." G. Resp. 18 n.10. But Mr. Schmall did not merely testify to his "feelings." He testified that the morning intelligence briefing book presented to Mr. Libby six days per week included the "most significant current intelligence available"; that Mr. Schmall developed an understanding of what Mr. Libby found particularly important and sought to include items in Mr. Libby's book reflecting his interests; that Mr. Libby read the book for forty minutes on weekdays and an hour or more on Saturdays and sometimes asked to have portions returned for further review; and that the information presented in the morning intelligence briefings allowed the Vice President and Mr. Libby to address "very significant national security issues," including terrorism, homeland security, nuclear proliferation around the world, North Korea and its nuclear ambitions, Iraq, the Middle East, and other urgent matters. T. 1/24/07 p.m. at 90-101. It is inconceivable that this evidence, coupled with the additional foundation outlined above, does not suffice for admission of the morning intelligence briefing materials for the critical weeks in June and July 2003.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Mr. Libby's opening brief, the Court should admit the proffered evidence of the national security issues Mr. Libby confronted during the relevant period, regardless of whether he testifies.

Dated: February 11, 2007                                          Respectfully submitted,


          /s/                                                                          /s/
Theodore V. Wells, Jr.                                          William H. Jeffress, Jr.
DC Bar No. 468934                                               DC Bar No. 041152
James L. Brochin                                                Alex Bourelly
DC Bar No. 455456                                               DC Bar No. 441422
Paul, Weiss, Rifkind, Wharton                                   Baker Botts LLP
  & Garrison LLP                                                1299 Pennsylvania Ave., NW
1285 Avenue of the Americas                                     Washington, DC  20004
New York, NY  10019-6064                                        (202) 639-7751
(212) 373-3089


          /s/
John D. Cline
DC Bar No. 403824
K.C. Maxwell
(pro hac vice)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94101