THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    )
                                   )    CR. NO. 05-394 (RBW)
              v.               )
                                   )
I. LEWIS LIBBY,            )
       also known as Scooter Libby    )

## GOVERNMENT'S RESPONSE TO DEFENDANT'S BRIEF
## CONCERNING ADMISSIBILITY OF EVIDENCE OF STATE OF MIND

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, Special

Counsel, respectfully submits this Response to Defendant's Brief Concerning Admissibility of

Evidence of State of Mind.  As discussed below, defendant should be precluded from introducing

evidence in the absence of evidence establishing its relevancy.

## BACKGROUND

During proceedings conducted pursuant to the Classified Information Protection Act

("CIPA"), the defense represented that it planned to present the defense that defendant was so

"obsessed" and "consumed" with specific national security matters that his memory was affected,

and that faulty memory was the cause of any inaccuracies in the information he provided to the FBI

and the grand jury.  The defense argued that its plan was to show that certain urgent and complex

matters "commanded [defendant's] attention", and were "of far greater significance to Mr. Libby"

than Ms. Wilson's employment at the CIA.  Def. § 6(a) Memo. at 1-2, 8-9.[1]

---

[1] Memorandum Concerning Use, Relevance, and Admissibility of Classified Documents and
Information Listed in Defendant's Consolidated CIPA § 5 Notice, filed on August 15, 2006.

*Proceedings Under CIPA § 6(a)*

From the inception of the CIPA proceedings, the defense represented to the Court that the Court and the government should *assume* that the defendant will testify "for purposes of those proceedings. " 9/27/06 Tr. at 7 (emphasis added).  Indeed, the defense represented to the Court that it planned to present the memory defense "*primarily* through Mr. Libby's direct testimony." *Id.* at 7 (emphasis added).  Defense counsel made the following additional representations and arguments:

- "What I'm going to do now is describe for Your Honor what we contemplate Mr. Libby's direct testimony to be." 9/27/06 Tr. 12.

- "Mr. Libby will testify just along the lines that I've just described about this item and about  the [briefing material] generally."9/27/06 Tr. 67.

- "But what I want to assure the Court of is that for our part, in our direct examination of Mr. Libby and our presentation of this evidence, the focus will be directly on the impact of the evidence on Mr. Libby's state of mind at the time." 9/28/06 Tr. 7.

- "What I anticipate he'll do in his testimony at trial is begin with sort of an overview of the nine topics for the jury to just orient them."  10/30/06 Tr. 17.

- "[S]uppose the evidence would show, if it were admitted, that the defendant in that case was just consumed with that decision, that he lived it and breathed it, and that the tactical choice was the most important thing to him in the world at the moment.  Suppose further that he could offer that evidence through his own testimony on the witness stand quickly and without implicating any significant Rule 403 concern." 9/27/06 Tr. 41.

Throughout the proceedings under CIPA § 6(a), the defense repeatedly predicated the relevance of specific classified information upon the foundation defendant was expected to lay with his own testimony.  Defense counsel argued that the defendant was entitled to incorporate into his testimony specific classified details in order to "paint a concrete and detailed picture of his working environment *as he saw it*"and to "explain *his understanding* of the world in which he worked." Def. § 6a  Memo. at 13 (quoting *United States v. Fernandez*, 913 F.2d 148, 158, 164 (4th Cir. 1990),

modified on other grounds, 920 F.2d 940 (D.C. Cir. 1990)(emphasis added). *See also* 10/6/06 Tr. 10:

- "[W]e want to be able to put Mr. Libby on the stand and have him testify in his own words about what was on his mind at the relevant times. I think it would be very damaging to his defense and to his – the ability of the jury to assess his credibility if we try to script it and make it bland . . . ." 10/6/06 Tr. 10.

The defense specifically argued that defendant's testimony would lay a foundation of relevance for certain documents:

- "Again, this [a proposed exhibit] will be presented during Mr. Libby's testimony. He will have already talked to the jury, given them an overview of these issues." 9/28/06 Tr. 78.

- "To go back for one second to the documents, again, Mr. Libby will testify about these things, and he'll describe the effect that they had on his focus and his mind and his memory." 10/3/06 Tr. 69.

The defense also argued that specific details and documents were relevant to corroborate defendant's testimony, and to explain how defendant is able to recall specific details of the matters concerning which he will testify:

- "There are some key documents at key points that we will want to present to corroborate his testimony . . . ." 9/28/06 Tr. 66.

- "Because the government may not explicitly contest, or it may, Mr. Libby's testimony about the importance of these matters had and the command they had on his attention, but what it will do is attack Mr. Libby's credibility generally." 9/28/06 Tr. 105.

- "The [proposed exhibits] also, of course, explain how it is that he's [defendant's] able to testify in some detail about these matters."10/3/06 Tr. 33.

- "To go back for one second to the documents, again, Mr. Libby will testify about these things, and he'll describe the effect that they had on his focus and his mind and his memory." 10/3/06 Tr. 69.

Given the nature of the defense's arguments, it is not surprising that, as the defendant acknowledges (Def. Br. at 2), this Court's reasoning and rulings under CIPA § 6(a) were based on the assumption that assumed that the defendant would testify on his own behalf at trial. The Court specifically predicated numerous relevance determinations on the fact that defendant would establish a foundation for their relevance by saying that he was "consumed" with particular issues on particular relevant dates including, for example:

- "[M]y thinking on this one [a proposed exhibit] is that I understand the government's position, but it seems to me that *to the extent Mr. Libby is saying that he was consumed* by this information because of the nature of it, that he has a right to testify about that." 9/28/06 Tr. 107 (emphasis added).

- "Regarding the issue we were discussing, it is my view that at least as far as testimony is concerned, that *so long as Mr. Libby is saying that on these relevant dates he was consumed, based upon information that he had available to him, and therefore was focusing on that information*, and as a result of that not what is the topic of this lawsuit, that it's appropriate for him to do that." 9/28/06 Tr. 112 (emphasis added).

- "And while I understand what you [the government] say about the level of detail, again it seems to me that *if he's saying that on these dates, because of how detailed the information was, this is what I had on my mind and that's what was consuming me*, it seems to me the jury has a right to understand that . . . ." 9/28/06 Tr. 142 (emphasis added).

- "[H]ow can I look into his mind and make a determination as to whether or not what he's saying [defendant's claim that he was consumed by many facts] is credible or not, and try and cut him off based upon my perception that what he's saying isn't credible?" 9/28/06 Tr. 144.

- "And like I say, I do have concerns about the actual documents themselves, but as far as his testimony is concerned, it seems to me *if he's saying that these are the things I had on my mind, this is what was consuming me, this is why I was so overwhelmed by the circumstances*, that he says that and then the jury has got to make their assessment as to whether what he's saying is credible." 9/28/06 Tr. 148 (emphasis added).

- "And on the one hand I think he's got to be given some level of leeway to testify about that so that the jury will understand why he would have been overwhelmed . . . ." 10/3/06 Tr. 24.

- "[B]ut if he is able to say I was involved in . . . [a] matter that involved these various issues and because of the complexity of it, it was consuming my mental faculties and therefore this insignificant thing from my perspective . . . was not something that I intentionally made a misstatement about, it seems to me that [in that] context he would be able to go into that level of detail." 10/6/06 Tr. at 29.

- "What I am going to do is I can't wholeheartedly agree with the government's position because . . . I do think I have to permit Mr. Libby to provide a level of detail regarding what was on his mind in order for the jury to fully understand why he ways he would have been consumed by these events . . . ." 10/6/06 Tr. 65 .

- "[I]t would be my view that in reference to those things I ruled were relevant that he should have the ability to testify at least to some degree about those matters . . . ." 11/7/06 Tr. 73.

In its Memorandum Opinion issued on November 11, 2006, the Court specifically conditioned the introduction of morning intelligence briefing materials on defendant's testimony that the information contained therein consumed his workdays.[2] 11/15/06 Mem. Op. at 19, 2006 WL 346182, at *8 (D.D.C. released Dec. 1, 2006).

### *Proceedings Under CIPA § 6(c)*

In the proceedings under CIPA 6(c), the defense argued that the defendant could not be afforded substantially the same ability to present his defense without being permitted to present specific details, because the absence such details would affect the jury's assessment of the credibility of defendant's in-court testimony. Since all information deemed relevant by the Court based on the assumption that defendant would testify, the assumption carried over into the substitution phase of the proceedings. During the § 6(c) hearings, defense counsel continued to focus on the defendant's prospective testimony:

---

[2] The Court indicated that evidence showing that defendant asked questions or requested information concerning a particular item would provide an alternative foundation establishing relevance.

- "And so when he gets on the witness stand, his testimony will have to essentially recite what the government has written for him. . . . They [the jury] are going to be looking to see if he is credible. They are going to want to see if his eyes dart around and if he licks his lips and if he swivels in his chair and if he seems candid and forthright." 11/7/06 Tr. 41-42.

Defense counsel argued that it was necessary to present extensive classified details because the defense "rested "on the defendant's own testimony." 11/16/06 Tr. 61.

In ruling on the government's proposed substitutions under CIPA § 6(c), the Court determined that it could not balance the relevance of the information it had previously considered under § 6(a) but, rather, was required to limit its consideration to whether the government's proposed substitutions provided defendant with substantially the same ability to present his defense. Thus, the relevance determinations that the Court made based on the defense representation that the Court should assume that the defendant would testify were incorporated into the Court's rulings under CIPA § 6(c).[3]

## ARGUMENT

### I.    Applicable Law

It is axiomatic that a criminal defendant, like any other party, has no right to introduce irrelevant evidence. Precedent clearly establishes that district courts are entrusted to make relevancy determinations, including whether to exclude evidence that purportedly bears on a defendant's state

---

[3] Defendant complains that he never promised that he would testify. This argument misses the point. The critical issue is that many of the Court's relevancy and substitution determinations, particularly with respect to specific details, were premised on the defendant supplying the foundational fact that he was "consumed" with those details.

of mind, and to exclude evidence the trial court deems – based on the facts of the particular case – as lacking sufficient foundation for its relevancy.[4]

*United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994), a case actually relied upon by the defendant, is illustrative. In *Lindo*, the district court precluded the defendant from arguing that he had relied on the advice of counsel in defending against a charge of selling unregistered securities because there was insufficient evidence that the defendant had fully disclosed, as required by the advice of counsel defense, the circumstances of the stock sales. The defendant argued that he could show that he had commonly relied on the advice of counsel in prior stock sales, and that was sufficient to allow him to argue the advice of counsel defense as to the charged sales. *Id.* at 355-56. The defendant specifically complained that his Fifth Amendment right not to testify was improperly

---

[4]  This case presents a classic example of what the Federal Rules of Evidence refer to as "relevancy conditioned on fact." See Fed. R. Evid. 104(b). In this case, the evidence concerning specific national security issues defendant proposes to introduce is not relevant unless defendant can establish that these issues "consumed him" and therefore may have affected his memory. Fed. R. Evid. 104(b) states, "When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." The United States Supreme Court has said that, when confronted with questions of conditional relevancy, the trial judge should examine all the evidence in the case and determine whether the jury could reasonably find, by a preponderance of the evidence, that the condition was met. *Huddleston v. United States*, 485 U.S. 681, 689 (1988). Under Rule 104(b), the trial judge does not make a factual finding under the preponderance standard but, rather, admits the evidence upon a determination that the jury could make the required finding by that standard. Thus, the Rules of Evidence clearly define the quantum of evidence needed to lay a foundation for the admission of evidence the relevancy of which is conditioned upon the fulfillment of a condition of fact. In this case, much of the evidence defendant proposes to admit is only relevant if the defendant makes a showing sufficient for the jury to find by a preponderance of the evidence that the evidence concerning specific national security issues actually "consumed" the defendant at relevant times. In the absence of the fulfillment of that condition, the proposed evidence fails the test of relevancy because it has no tendency to make a fact of consequence more or less likely.

burdened by the ruling. *Id.* at 356. The Sixth Circuit affirmed the district court's refusal to give a

jury instruction on the defense:

> Because Lindo failed to provide any evidence of full disclosure, he cannot claim good faith
> reliance. In denying Lindo's request for a reliance instruction, the district court did not rule
> that a defendant must always testify in order to advance a reliance on counsel defense, but
> rather correctly found that, absent Lindo's testimony, he could not point to other evidence
> adduced in the case indicating that he relied in good faith on his counsel's advice.
> Accordingly, the district court did not err in refusing to instruct the jury on a good faith
> reliance on counsel theory.

18 F.3d at 357. Thus, the Sixth Circuit rejected the defendant's attempt to turn his Fifth Amendment

right not to testify – a shield – into a sword that required consideration of the advice of counsel

defense simply because his testimony *could* establish the requisite foundation. In other words, a

defendant's election not to testify does not then insulate his proposed state of mind evidence from

foundational requirements,[5] and as with all evidence, the proponent of the evidence bears the burden

to show its relevance. *See id.* at 356 (defendant had duty to demonstrate admissibility).

Other cases have likewise upheld exclusion of defense evidence as to state of mind where

the requisite foundation was not laid, and where the defendant could have, but did not, supply the

foundation through his own testimony. For example, in *United States v. Scott*, 660 F.2d 1145, 1165-

67 (7th Cir. 1981), the Seventh Circuit affirmed the district court's exercise of discretion to preclude

evidence of statements made to a defendant, offered to show the defendant's mental state, because

there was an insufficient foundation that the statements, which reflected the speaker's state of mind,

---

[5]This Court applied *Lindo*, as well as other cases precluding particular defense arguments,
to find no error in refraining from giving an advice of counsel instruction in *United States v.
Howard*, 235 F. Supp.2d 24, 39-40 (D.D.C. 2003). In that case, defendant failed to establish the
foundational requirements of the defense because, although he testified, he did not testify that he had
disclosed all material facts to his lawyer. *Id.* at 39-40. This Court held that, without "evidence to
reasonably support" the defense theory, the defendant was not entitled to an instruction for the jury
to consider. *Id.* at 39, 40 (quotations and citations omitted).

actually had an effect on defendant's state of mind.  In that case, the former Attorney General of Illinois was charged with wilfully understating his gross income in tax filings.  The government's theory was that the defendant had converted campaign contributions to his personal use, and thus they were attributable to him as income.  *Id.* at 1151.  One of the defendant's arguments was that certain checks that various individuals wrote to him were in fact intended to be nontaxable gifts to him personally, which he then devoted to campaign expenses; such use of funds arguably would then allow the defendant to reimburse himself, without tax consequences, from other campaign funds. *Id.* at 1166 & n.38.  To prove this theory, the defendant proposed to put on numerous witnesses who would testify that the checks, which were deposited into the campaign's accounts, were intended to be nontaxable gifts.  *Id.* at 1166.  The district court excluded the testimony of the witnesses, including witnesses who would have testified that they told the defendant that there was no limitation on the use of the checks.  *Id.*  Under a discretionary standard of review, the Seventh Circuit affirmed, approving of the district court's ruling that the evidence was not relevant unless the defendant could show that he relied on a belief that the checks were nontaxable gifts.  *Id.*  As in *Lindo*, *see supra*, neither the district court nor the Seventh Circuit relied on a *per se* rule that the defendant must testify before allowing testimony concerning his state of mind;[6] rather, the foundation was insufficient to establish relevance because it was the *defendant's*, not the donors, intent that was critical.

-------

[6]The Seventh Circuit explained that the district "court nevertheless indicated it would admit this testimony if defense counsel represented that evidence would later be introduced to show that defendant relied on a belief that these transactions entitled him to divert a like amount of other campaign funds to his own use," and the district "court made it clear that Scott's attorneys could introduce other evidence that Scott acted in reliance on the witnesses' statements, other than Scott's own testimony."  *Id.* at 1166 & n.38.

Similarly, in *United States v. Stanfa*, 685 F.2d 85, 89 (3d Cir. 1982), the court excluded state of mind evidence based on a lack of foundation for its relevancy. The defendant in *Stanfa* was charged with testifying falsely before a grand jury that was investigating a murder. *Id.* at 86. The defendant sought to introduce evidence that associates of his were killed in "gangland-style slayings" two of which occurred after his grand jury testimony, and one before (though the body was not identified until afterwards), and thus he was testifying under duress. *Id.* at 89. However, the district court excluded the evidence, and the Third Circuit affirmed:

> As the district court indicated, . . . that evidence would not be probative of whether he feared for his life at the time of his testimony. Since Stanfa proffered no evidence that would show any reason for such a fear at that time, we believe the district court did not abuse its discretion in refusing to admit evidence of the slayings.

*Id.* Of course, the defendant could have provided the requisite foundation with his own testimony, but he did not, and absent that testimony, the fact of the killings were themselves insufficient to lay a foundation for relevancy. To allow the evidence would be to allow the jury to speculate that the defendant had known about the danger to his and his associates' lives and, in the case of the one killing that occurred before the grand jury testimony, that he had known of that murder before testifying.

The foregoing cases are consistent with the settled principle that precluding a criminal defendant from presenting evidence in violation of the Federal Rules of Evidence is not improper, much less a violation of the defendant's constitutional rights. As this Court previously observed, "[C]ourts frequently limit the presentation of a defendant's defense based on the Federal Rules of Evidence." 12/8/06 Mem. Op. at 9 (citing *United States v. Dunn*, 846 F.2d 761, 763 (D.C. Cir. 1988)), 2006 WL 3759450, at *4. Even relevant evidence may be excluded if, despite having some

probative value, its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or waste of time. Fed. R. Evid. 403 (cited and quoted by 12/8/06 Mem. Op. at 9, 2006 WL 3759450, at *4). Thus, even if some of defendant's proposed evidence has some probative value, the right to introduce it is not absolute, and Rule 403 authorizes this court to exclude the evidence if other dangers substantially outweigh the evidence's probative force.

To be clear, the government is not advocating a *per se* rule that, in every case, a defendant must testify in order to establish the foundation for introducing evidence of his state of mind. *See* Def. Br. at 10-12. Nor is the government arguing that the defendant in this case must testify in order to present *any* evidence concerning his work responsibilities, and in order to argue that inaccuracies in the information he provided to the FBI and grand jury were the product of faulty memory. Those constructions of the government's position are red herrings.

## II.     Specific Categories of Proposed Evidence

Before applying the controlling legal principles to defendant's proposed evidence in this case, it is essential to understand the nature of defendant's "memory defense," and to determine what defendant must show, as the proponent of the evidence, in order to establish the relevancy of the various types of evidence defendant proposes to introduce in support of that defense. At trial, defendant's opening and questioning of government witnesses has suggested two alternate defense theories -- first, that defendant accurately reported to the FBI and the grand jury about how he learned of Ms. Wilson and her CIA employment, and whether, and how and when, he disseminated information concerning Ms. Wilson to reporters; and second, taking as given that the charged statements were not true, that the inaccuracies were the product of deliberate lying or faulty memory rather than deliberate lying.

11

The defendant has indicated that, if he decides not to testify on his own behalf, he will nevertheless seek to introduce classified information addressed in the CIPA hearings in three forms: (a) items briefed to defendant on various days as part of his morning intelligence briefings; (b) the Statement Admitting Relevant Facts proposed by the government as a substitute for classified information; and (c) testimony by the Vice President and other employees of the Office of the Vice President concerning the issues defendant was required to address in the course of his work at times relevant to the charges. The question presented to the Court is whether some or all of the proposed evidence fails to satisfy Rule 401 or 403 in the absence of testimony from the defendant that he was "consumed by" the issues addressed in the narratives and documents listed in defendant's Consolidated CIPA § 5 Notice, which the defense previously asked the Court to assume would be presented in making its determinations under CIPA.

### A. Morning Intelligence Briefings

As defendant concedes (Def. Br. at 9), this Court already has held that the morning intelligence briefings are not relevant absent testimony from the defendant regarding particular items that "consumed" him or, at a minimum, evidence that the defendant followed up on them with requests for more information. The Court should decline defendant's request to revisit this issue.

In ruling on the relevancy of these briefings, this Court noted that "the defendant has affirmatively stated that the defendant intends to testify on his own behalf." 11/15/06 Mem. Op. at 19, 2006 WL 346182, at *8. The Court reasoned that the briefings "themselves are not relevant, as they do not show what the defendant believed was important or what matter the defendant devoted his efforts to on a given day. Rather, the [briefings] merely represent what the intelligence community thought was important to include in these [briefings] on a given day." 11/15/06 Mem.

12

Op. at 19, 2006 WL 346182, at *8.[7]  The Court ruled that, "It will therefore be the defendant's testimony about what he was focused on and that his workday was consumed by the information [in the briefing materials] that makes the classified information contained in these documents relevant under Rule 401."  *Id.*[8]

The Court's analysis and holding were, and are, correct.  As the Court explained, defendant's state of mind, not that of the intelligence community or other governmental officials, that is at issue, and it would be misleading to equate what the intelligence community decided to include in the briefings to what was important to defendant.  Although state of mind may of course be proven circumstantially, it is not enough to conclusorily label the briefings "urgent," as defendant argues, Def. Br. at 9, and then ask the jury to speculate that defendant then became consumed with the information to the point of forgetting details of his conversations about Ms. Wilson.  In light of the fact that the reliability of the intelligence contained in the morning intelligence briefings varied (and of defendant's awareness of that fact), and in light of the defendant's vast knowledge and experience in the field of national security, it would be misleading to equate the impact of each piece of information relayed to the defendant, or to assume that any such information would have an impact on the defendant comparable to the impact it might have on a jurors.  Thus, it would be entirely inappropriate for the jury to be asked to infer from the mere nature of the subject matter covered by

---

[7]The Court explained that there was an exception where there were "inquiries made by the defendant [redacted] in response to reviewing those documents. [Redacted citations to specific documents]."  11/15/06 Mem. Op. at 19, 2006 WL 346182, at *8.

[8]*See supra* for additional references in which the Court commented that defendant had to show that he was "focused" and "consumed" with other matters.

the morning intelligence briefing materials that the defendant was so consumed by particular information that his memory of relevant events was clouded.

Not only do the intelligence briefing materials lack relevance in the absence of the defendant's testimony -- the probative value of such materials is substantially outweighed by the risk of prejudice, confusion of the issues, and waste of time. As discussed during the CIPA proceedings, in the absence of testimony from the defendant, the jury would have no benchmark by which to assess its impact on the defendant, and might assume (falsely) that the information had the same impact on defendant as it might be having on the jurors as they listen to the evidence at trial. Thus, as the Court has correctly determined, evidence concerning the morning intelligence briefings should not be admitted in the absence of testimony from the defendant.

### B.  Statement Admitting Relevant Facts

The defendant argues that the CIPA § 6(c) substitution captioned, "Statement Admitting Relevant Facts," must be admitted because "[b]y its terms" the facts in the statement are "relevant," and the statement itself is a substitute for "other defense evidence, including Mr. Libby's potential testimony." Def. Br. at 7. This argument relies on the *title* of the Statement and misapprehends the nature of the substitution. First, the title of the Statement (if this is what defendant means when he says, "by its terms") cannot possibly control the relevancy determination when it was fashioned on the premise that defendant would testify, as the extensive discussion above demonstrates. The government agreed to the statement as a substitute for evidence which the Court had determined to be relevant – based in part on defendant's testimony that the nine topics and other matters consumed him -- and had ruled admissible, over the government's objection, that during the CIPA proceedings. The government never stipulated, and to the contrary objected, to the relevancy and admissibility of

14

the information contained in the Statement, whether or not the defendant elected to testify. The title

of the document, which was based on the Court's prior ruling, does not constitute a stipulation from

the government that the facts contained therein are relevant as a matter of law. Defendant also

mistakenly characterizes the substitution as a "substitute" for defendant's testimony. Rather than

a substitute for defendant's *testimony* – pursuant to CIPA § 6(c), it was a substitute for *classified*

*information* ruled admissible by the Court under CIPA § 6(a). Given that the Court's ruling was

based on an assumption that may no longer be accurate, the basis for the government's offer of the

Statement as a substitution rests on the same shaky foundation.

In the absence of testimony from the defendant concerning specific details that "weighed on

defendant's mind," such details lack evidentiary foundation and should not be admitted -- whether

in the Statement Admitting Relevant Facts, or otherwise. In this case, without testimony from the

defendant, the jury could not reasonably infer that the defendant's state of mind at the time of the

charged offenses was affected by details reflected by the Statement, and evidence concerning those

details fails the test of relevancy because it has no tendency to make a fact of consequence more or

less likely. The introduction of such details without any opportunity for cross-examination would

also violate Fed. R. Evid. 403, because any probative value of the details is substantially outweighed

by the risk of prejudice, confusion of the issues and waste of time. Accordingly, in the absence of

testimony from the defendant, the Statement Admitting Relevant Facts must be limited to a

discussion of general topics.

There can be no doubt that the government agreed to the statement of facts based on the

Court's relevancy rulings which, in turn, were based on defendant's assumed testimony establishing

the necessary foundation. This Court should reject defendant's attempt to bootstrap the

15

government's offer at the substitution phase into a back-stop for defendant's relevancy victories won with the representation that the defendant would testify. Whereas the government would be seriously prejudiced by the admission of the Statement in the absence of sufficient foundation or opportunity for cross-examination, in contrast, the defendant would unfairly gain regardless of whether or not the Statement is admitted in evidence. At this moment, defendant has already had an opportunity to put before the jury favorable information without having to meet the condition of fact upon which the Court deemed the information relevant.

Defendant argues that, during the CIPA proceedings, neither the Court nor the government "hinted" that the Statement's admissibility was dependent on the defendant's testimony (Def. Br. at 7), but no such "hint" was required. The Statement was expressly offered as a substitution for classified information under CIPA § 6(c), following the Court's rulings under CIPA § 6(a). Defendant's reliance on the government's comment, taken out of context, that the government would agree to the Court's reading of the Statement, Def. Br. at 7, is misplaced; the Statement was made *after* the Court had made its determinations regarding relevance and admissibility CIPA § 6(a). in offering the Statement, the government expressly noted that there were "two ways for the government to satisfy its burden with a substitution": (a) summaries; and (b) a Statement Admitting Relevant Facts, and that "[i]n this case, we [were] providing both," 11/7/06 Tr. at 9, and mentioned nothing about stipulating to the defendant's testimony.

The defense argues that it relied on the government's lack of objection to the use of the Statement Admitting Relevant Facts in opening and, in turn, argues that this is as a basis for admitting the statement in evidence regardless of whether the defendant testifies. If anything the government, rather than the defense, has been harmed as a result of the mention of the Statement

16

during openings; evidence lacking in proper foundations has been shown to the jurors. As discussed above, the Court's §§ 6(a) and 6(c) rulings were arrived at by assuming that the defendant would in fact testify that he was consumed by the classified information he sought to disclose under CIPA and, without that testimony, and the government fashioned its opening statement accordingly.

In light of the mention made of the Statement Admitting Relevant Facts during the parties' opening statements,[9] the government does not object to the introduction of the Statement in a form redacted to remove specific details for which there will be no evidentiary foundation, *i.e.*, detailed information regarding specific threats and other issues that purportedly "concerned" defendant. A version of the Statement from which such details have been redacted is attached.

### C. Testimony of OVP Witnesses

Finally, defendant proposes to offer testimony from former colleagues in the Office of the Vice President who would testify, according to defendant, that "based on personal knowledge, that certain national security matters consumed Mr. Libby's attention." Def. Br. at 8 (The witnesses would then testify, it is argued, "about the nature and urgency of those matters.") The government agrees that certain employees of the OVP are in a position to testify generally regarding the national security meetings he attended, and the work he was assigned to perform. The government disputes, however, the notion that any of OVP witnesses would be competent to provide the type of testimony upon which the Court conditioned numerous of its relevance determinations, that is, testimony that specific details were particularly important to the defendant, or that particular matters were on his mind, and consumed his thoughts, at relevant times. A former colleague simply cannot opine, "based on personal knowledge," regarding particular details that "consumed" the defendant. Thus,

---

[9] Whereas the government mentioned the Statement, defense counsel read it in its entirety.

while the government does not advocate an inflexible rule prohibiting the introduction of evidence to support a defense in the absence of the evidence from the defendant, the government does seek to preclude specific details. Indeed, this Court drew a similar distinction between matters on which defendant's staff was working and the particular aspects of those matters that impacted the defendant's "thought process." 10/30/06 Tr. 60-61. In that setting, the Court ruled that specific details were relevant and admissible only so long as the defendant testified that such details "weighed on his mind." *Id.* The same type of distinction must be made with respect to defendant's own testimony and that of his former colleagues.[10] Relatedly, documents reviewed during the CIPA proceedings for which only defendant's testimony could supply the necessary evidentiary foundation are not admissible through the testimony of OVP employees.

The introduction of evidence of details concerning which defendant was briefed through means other than the defendant's own testimony would seriously prejudice the government. The presentation of specific details briefed to the defendant on relevant dates through other employees would insulate such evidence from effective cross-examination. It would prevent the government from establishing which details were, and were not, new or important to the defendant in light of his extensive previous knowledge and experience. It would prevent the government from putting in context the specific information concerning which defendant was briefed. Trying to account for what was new and important to the defendant, a person with years of experience studying Iraq, al Qaeda and the Middle East, as opposed to a person with no such baseline knowledge and experience,

---

[10] The analysis also provides the basis for rejecting defendant's argument that somehow the testimony of CIA briefer Craig Schmall is sufficient to show the necessary link. Def. Br. at 10. Aside from the specific inquiries made by defendant concerning certain briefing items, Mr. Schmall's feelings about the importance of the matters cannot be attributed to defendant.

would be difficult but necessary on cross-examination in order to present the jury with an accurate picture of the likely impact the receipt of information would have on the defendant. The Court was particularly cautious about restricting the details concerning which the defendant was planning to testify. Allowing such details to come in through the testimony of other witnesses, none of whom could testify or be cross-examined regarding the impact learning such details likely would have had on the defendant, would allow the defendant to use the right not to testify as a sword instead of a shield.

Defendant suggests that his own grand jury testimony lays a foundation for the admission of evidence relating to national security issues that were addressed at times relevant to the charges. This does not suffice. Defendant cannot offer, consistent with the hearsay rule, his own statements for the truth of the matter; a party's statements come in for the truth of the statement only when offered against the party by his opponent. Fed. R. Evid. 801(c), (d)(2); Fed. R. Evid. 802. Obviously, the government offered the defendant's testimony to prove that he made the charged false statements, to provide context for the charged statements, and to show materiality (which showing is necessarily limited to the questions asked, rather than the answers given). The government did *not* offer the defendant's grand jury testimony as admission under Fed. R. Evid. 801(d)(2). It would be particularly nonsensical to construe the government's introduction of defendant's grand jury testimony as admissions offered for their truth given the nature of the charges -- perjury and obstruction of justice. Moreover, even the statements regarding the purported effect of defendant's job duties on his memory were considered for their truth, upon which defendant relies are too general to lay a sufficient foundation to introduce in evidence specific details concerning matters upon which defendant worked.

19

Accordingly, this Court should limit the testimony of OVP employees regarding defendant's memory offense to evidence to general descriptions of issues, and prohibit the introduction of specific details that the Court previously held were relevant and admissible based on the defendant's testimony that such details "consumed" him.

## <u>CONCLUSION</u>

For the reasons discussed above, should the defendant elect not to testify and otherwise fail to lay a sufficient foundation, the government respectfully requests that this Court exclude:  (a) morning intelligence briefing materials; (b) portions of the Government's Statement Admitting Relevant Facts; and (c) testimony of employees of the Office of the Vice President regarding specific details concerning national security issues upon which the defendant worked as the Vice President's Chief of Staff.

Respectfully submitted,

_____
/s/

PATRICK J. FITZGERALD
Special Counsel
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5300

Dated: February 9, 2007

21

## Statement Admitting Relevant Facts

The Government agrees with the defense that at all relevant times Mr. Libby was employed as both the Chief of Staff and National Security Adviser to the Vice President.  The Government agrees that Mr. Libby worked long hours, received daily intelligence briefings and attended many meetings concerning important matters of national security, including participating in many meetings of the National Security Council, as reflected on Mr. Libby's calendars.

In addition, the Government agrees that Mr. Libby's duties included but were not limited to: (i) monitoring information concerning terrorist threats to the United States, both at home and abroad, including, but not limited to, threats from the groups al Qaeda and Hezbollah; (ii) monitoring homeland security preparedness; (iii) monitoring information concerning foreign countries seeking to develop nuclear weapons, particularly, but not exclusively, North Korea and Iran; (iv) monitoring the efforts of individuals, specifically including a person named AQ Khan, involved in efforts to sell the technology needed to develop nuclear weapons; (v) monitoring the progress of the war in Iraq, specifically including American troop strength, as well as the development of a new government in Iraq; (vi) monitoring the volatile situation in the Middle East; (vii) dealing with urgent national security issues as they arose, including a tense disagreement between the government of Turkey and the United States in early July 2003 when Turkish soldiers were taken prisoner by American military forces in Iraq, and when the United States had to formulate an approach to addressing the security issues in Liberia (including the evacuation of the American embassy in Liberia) when the President of Liberia was deposed in early July 2003. During all relevant times, Mr. Libby was responsible for providing advice to the Vice President on how the United States should respond to the various threats or respond to various problems or crises.  Much of the information Mr. Libby received regarding the above topics was highly classified and a substantial amount of the information remains classified even today.

In June, July, and August 2003, including when he received intelligence briefings on June 14, July 7, July 8, and August 20, 2003, Mr. Libby was concerned that Ansar al-Islam had established a link with al-Qaeda, and was developing a presence in the United States.

There was information that al-Qaeda had made inquiries about nuclear weapons, and Mr. Libby was concerned that al-Qaeda may have acquired them.

In the Summer of 2003, Mr. Libby was very concerned, based on information he found credible, that al-Qaeda had developed anthrax, and that the anthrax was already in the United States — and it was unaccounted for — in preparation for a possible attack by unaccounted for al-Qaeda operatives.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 9th day of February, 2006, I caused true and correct copies of the foregoing to be served on the following parties by electronic mail:

William Jeffress, Esq.
Baker Botts
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Facsimile: 202-585-1087

Theodore V. Wells, Esq.
Paul Weiss
1285 Avenue of the Americas
New York, NY 10019-6064
Facsimile: 212-373-2217

John D. Cline, Esq.
Jones Day
555 California Street
San Francisco, CA 94104
Facsimile: 415-875-5700

Patrick J. Fitzgerald
Special Counsel
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C.  20530
202-514-1187

By: _____/s/_____
Debra Riggs Bonamici
Deputy Special Counsel