# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF INTRODUCING ADDITIONAL EVIDENCE TO IMPEACH GOVERNMENT WITNESS TIM RUSSERT

Mr. Libby respectfully submits this memorandum of law in support of his pending request to introduce into evidence three video clips and a transcript of television news programs to impeach government witness Tim Russert.

## BACKGROUND

During cross-examination on February 8, 2007, defense counsel sought to elicit testimony from Mr. Russert to establish that Mr. Russert was aware that the government had offered him certain benefits in exchange for his testimony against Mr. Libby. The defense plans to argue in closing that the special treatment Mr. Russert received from the Office of Special Counsel should be considered by jurors when they evaluate whether he is a credible witness or whether he is biased toward the government.

In particular, on February 8, the defense asked Mr. Russert about the special arrangements for his deposition, including the government's offer to question him with his counsel present, outside the grand jury room. *See* June 27, 2004 Ltr. from Special Counsel Fitzgerald to Lee Levine (attached as Exhibit A; DX 1697). In an apparent effort to suggest to the jury that he was not aware that having his lawyer present

during his deposition was indeed a benefit, Mr. Russert gave the following unexpected

testimony:

> Q.      . . . So you understand that the normal procedure
> when someone goes into the grand jury, they are not
> permitted to have their lawyer in the room, correct?
>
> A.      I don't know that, but I accept your description.
>
> Q.      You have never in the course of your years of
> reporting, come to know that lawyers are not permitted to
> be in the grand jury room?
>
> A.      No.
>
> Q.      You are an attorney, correct?
>
> A.      Non-practicing.
>
> Q.      But there was a period in your life when you served
> as counsel to – was it the Senate?
>
> A       Yes, but not involving criminal matters whatsoever.
> . . .

Feb. 8, 2007 AM Tr. at 27:25 to 28:12.

Mr. Libby would like to impeach Mr. Russert by entering into evidence

prior inconsistent statements he made in three video recordings (clips from (1) the August

6, 1998 broadcast of Larry King Live; (2) the July 26, 1998 broadcast of the Today show;

and (3) the May 12, 1997 broadcast of the Today show (attached as Exhibit B (DX

1813)) and the transcript of the July 28, 1998 broadcast of the Today show (attached as

Exhibit C (DX 1805)) (together, the "Impeachment Materials").[1]

The Impeachment Materials directly contradict Mr. Russert's sworn

testimony in this case.  All of these documents feature Mr. Russert making statements

---

[1]      Transcripts of the August 6, 1998, July 26, 1998, and May 12, 1997 broadcasts are
attached as Exhibits D (DX 1806), E (DX 1812), and F (DX 1804), respectively.

that unmistakably demonstrate that he had knowledge that a witness is not permitted to bring his or her lawyer into the grand jury room. For example, on the July 28, 1998 Today show broadcast, with respect to grand jury proceedings involving former President Clinton, Mr. Russert said: "The president is asking that his lawyer be present. Most Americans would find that reasonable, even though when you go to the grand jury, you don't normally have--you do not have your lawyer present."

## ARGUMENT

A.    A Witness May Be Impeached with Extrinsic Evidence of a Prior
Inconsistent Statement After Cross-Examination Has Concluded

Federal Rule of Evidence 613(b) governs impeachment with extrinsic evidence of a prior inconsistent statement. Under Rule 613(b), such statements are admissible "if the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." The Advisory Committee Notes to Rule 613(b) explain: "The traditional insistence that the attention of the witness be directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain and the opposite party an opportunity to examine on the statement, *with no specification of any particular time or sequence*." (emphasis added)

In general, evidentiary decisions are committed to the sound discretion of the trial court. *See, e.g., United States v. Edwards*, 388 F.3d 896, 899 (D.C. Cir. 2004). Here, the Court should permit the defense to introduce the Impeachment Materials because, if the government wishes, Mr. Russert can be recalled to the witness stand to explain his prior inconsistent statements on continued cross-examination, which is likely

to be brief.[2]  The government can then conduct redirect examination of Mr. Russert if it

so chooses.  We understand that Mr. Russert's counsel plans to be in court on February

14, 2007, to address the issue of Mr. Russert's continued availability.

        According to relevant caselaw, recalling a witness to explain inconsistent

statements introduced after cross-examination has concluded is entirely proper.  For

example, the First Circuit has held that a trial court erred in excluding extrinsic evidence

of an inconsistent statement by a prosecution witness merely on the ground that the

defense failed to satisfy the requirements of Rule 613(b) during cross-examination of that

witness where there was "no basis for assuming" that the prosecution witness "was not

available for recall."  *United States v. Hudson*, 970 F.2d 948, 955-56 (1st Cir. 1992).

Precisely the same analysis applies here.

        Similarly, the Eighth Circuit has held that a trial court correctly ruled that

a tape-recorded statement contradicting a witness' statement could be admitted after the

witness had testified, during the the government's rebuttal case, rather than at cross-

examination.  *United States v. Moore*, 149 F.3d 773, 781 (8th Cir. 1998).  The circuit

court agreed with the trial court that "Fed. R. Evid. 613(b) does not require an

opportunity to respond before the prior [inconsistent] statement is admitted, and that

defendants would be permitted to recall [the witness] to respond to the statement after it

was admitted into evidence."  *Id.*; *see also United States v. Young*, 86 F.3d 944, 949 (9th

Cir. 1996) (trial court did not err in permitting defense to offer extrinsic evidence of prior

inconsistent statement where prosecution witness being impeached was not asked about

---

[2]     The defense is willing to recall Mr. Russert as part of the defense case if the Court
deems it appropriate, although it appears that Rule 613(b) would be satisfied if the
government has an opportunity to recall Mr. Russert as a rebuttal witness.

statement during cross-examination because government was free to recall witness and give him an opportunity to explain or deny the statement); *United States v. McCall*, 85 F.3d 1193, 1197 (6th Cir. 1996) (trial court did not err in permitting prosecution to offer evidence of defense witness' prior inconsistent statement where prosecution did not question defense witness about statement on cross-examination; Rule 613(b) was satisfied because impeached witness could have been recalled during surrebuttal to explain); Wright and Miller, *Federal Practice & Procedure* § 6205 (2006) (Impeaching counsel can "offer extrinsic evidence after opposing counsel has completed his examination and the witness has been excused . . . so long as the witness then is available to be recalled by opposing counsel, the required opportunities to explain or deny and examine the witness can be provided.")

      B.    The Impeachment Materials Should Be Admitted Even If Mr. Russert Cannot Be Recalled to the Witness Stand

Defense counsel had every expectation that Mr. Russert (a "non-practicing" lawyer) would admit on cross-examination that he was aware that witnesses are not permitted to bring their lawyers into grand jury proceedings, and that the government had granted him a benefit by allowing him to be deposed with his attorney present. The defense was not aware of the Impeachment Materials until additional factual research on Mr. Russert's prior statements was conducted following his cross-examination. Accordingly, this is not a situation where counsel made a tactical decision to delay confronting a witness with a prior inconsistent statement, and the defense should not be penalized if Mr. Russert is not available to be recalled. *Cf. United States v. Bibbs*, 564 F.2d 1165, 1169 ("failure to recall [witness] before introducing evidence concerning her subsequent inconsistent statement was not a reversible error" and was not barred by

Rule 613(b); trial court had wide latitude to fashion an evidentiary procedure that would secure justice).

The "interests of justice" clause in Rule 613(b) permits the admission of statements that would be barred under traditional foundation requirements if the party did not learn of the prior inconsistent statement until after the witness left the courthouse. *Weinstein's Federal Evidence* § 613.05[4][a]; *see also Wammock v. Celotex Corp.*, 793 F.2d 1518, 1523 (11th Cir. 1986) (the interests of justice tilt toward admission where "the statement came to counsel's attention after the witness testified and the witness, through no fault of counsel, is not available to be recalled"). The following factors should govern the Court's determination of whether the interests of justice require admissibility: (1) the practicability of recalling the witness; (2) the significance of the issue to which the statement relates; (3) the probative value of the statement for impeachment purposes; (4) the consequences of not allowing the statement to be used; and (5) the efficacy of an instruction if the jury has been made aware of the statement. *Weinstein's Federal Evidence* § 613.05[4][b]. All of these factors weigh in favor of the admission of the Impeachment Materials.

   C.    Mr. Russert's Testimony About the Benefits He Received from the Government Is Highly Relevant and Is Not Collateral

On February 13, counsel for the government argued that Mr. Russert's testimony about whether he knew he was receiving benefits from the government is a collateral issue. This argument lacks merit.

The defense intends to argue that the jury should distrust Mr. Russert's testimony about his July 2003 conversation with Mr. Libby for many reasons, including that it was provided after the government offered him a deal. The benefits of the deal

included, among other things, that: (1) the government would not argue that Mr.

Russert's November 2003 conversation with the FBI was a confidentiality waiver; (2)

Mr. Russert would be questioned about only Mr. Libby; and (3) Mr. Russert would be

deposed in his attorney's office, with his attorney present.  On cross-examination, Mr.

Russert thwarted defense counsel's attempt to establish that he knew he was getting

special treatment from the government by denying he was familiar with standard grand

jury procedures.  He prevented the defense from presenting a crucial piece of evidence

that is necessary to establish his likely bias in favor of the government, due to the

concessions he was granted.

Showing that a witness got special treatment from the government is

always relevant to prove bias, which the Supreme Court has defined as "the relationship

between a party and a witness which might lead the witness to slant, unconsciously or

otherwise, his testimony in favor of or against a party."  *United States v. Abel*, 469 U.S.

45, 52 (1984).  Extrinsic evidence of facts that manifest bias is ordinarily admissible.  *See

id.*  This is another independent ground for admitting the Impeachment Materials.

# CONCLUSION

For the foregoing reasons, I. Lewis Libby respectfully requests that the

Court permit the Impeachment Materials to be introduced into evidence.

Dated:  February 14, 2007                   Respectfully submitted,


_____/s/_____          _____/s/_____
Theodore V. Wells, Jr.                 William H. Jeffress, Jr.
(DC Bar No. 468934)                    (DC Bar No. 041152)
James L. Brochin                       Alex J. Bourelly
(D.C. Bar No. 455456)                  (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton          Baker Botts LLP
 & Garrison LLP                        1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas            Washington, DC  20004
New York, NY  10019-6064               Tel:  (202) 639-7751
Tel:  (212) 373-3089                   Fax: (202) 585-1087
Fax: (212) 373-2217


_____/s/_____
John D. Cline
(D.C. Bar No. 403824)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax: (415) 875-5700