# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY | ) | |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## I. LEWIS LIBBY'S SECOND SET OF PROPOSED JURY INSTRUCTIONS

I. Lewis Libby, through undersigned counsel, respectfully submits the following proposed jury instructions pursuant to the Court's request of February 13, 2007. These instructions are intended to supplement the proposed instructions Mr. Libby submitted on November 13, 2006, and since then in pleadings and through oral requests in court.[1]

Mr. Libby requests that the Court give Instruction 2.23 (Testimony of Immunized Witness), with the "avoid prosecution" language, and Instruction 2.27 (Right of Defendant Not to Testify) from the *Criminal Jury Instructions for the District of Columbia* (4th ed. rev. 2005). Mr. Libby also withdraws his request for Instruction 2.42 (Character and Reputation of Defendant). Mr. Libby's Theory of the Defense instruction will not be complete until the jury has finished hearing testimony. We will submit a final version soon after that occurs. In addition, we expect to submit shortly an agreed-upon instruction regarding the stamp on Mr. Libby's note of his June 2003 conversation with the Vice President.

In addition, Mr. Libby requests that the Court give the instructions that follow.

---

[1] Specifically, Mr. Libby's first proposed set of jury instructions identified numerous Redbook instructions which he still requests be given, as appropriate, to the jury, with the exception of Instruction 2.42.

February 14, 2007                          Respectfully submitted,

/s/ Theodore V. Wells, Jr._____ ____       /s/ William H. Jeffress, Jr._____
Theodore V. Wells, Jr.                     William H. Jeffress, Jr.
(D.C. Bar No. 468934)                      (D.C. Bar No. 041152)
James L. Brochin                           Alex J. Bourelly
(D.C. Bar No. 455456)                      (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton              Baker Botts LLP
  & Garrison LLP                           1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas                Washington, DC  20004
New York, NY  10019-6064                   Tel:  (202) 639-7751
Tel:  (212) 373-3089                       Fax: (202) 585-1087
Fax: (212) 373-2217

/s/ John D. Cline_____
John D. Cline
(D.C. Bar No. 403824)
K.C. Maxwell
(*pro hac vice*)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax: (415) 875-5700

## DESCRIPTION OF ALLEGED CONDUCT

All counts of the indictment arise from the following allegedly false statements made by Mr. Libby to federal investigators and to the grand jury:

(1.)    When Mr. Libby spoke with Tim Russert of *NBC News* on or about July 10 or 11, 2003, Mr. Russert asked Mr. Libby if Mr. Libby knew that Joseph Wilson's wife worked for the CIA and told Mr. Libby that all reporters knew this and, at the time of this conversation, Mr. Libby was surprised to hear that Mr. Wilson's wife worked for the CIA; and

(2.)    Mr. Libby advised Matthew Cooper of *Time* magazine on or about July 12, 2003 that he had heard that other reporters were saying that Mr. Wilson's wife worked for the CIA, and further advised Mr. Cooper that Mr. Libby did not know whether this assertion was true.

I will give you additional details of the alleged false statements later in these instructions.

**INSTRUCTION REGARDING DISMISSAL OF JULY 12 MILLER CONVERSATION**

When this trial started, I described to you the charges against Mr. Libby.  I told you that Count One, which charges obstruction of justice, alleges that Mr. Libby falsely testified to the grand jury concerning conversations with three reporters, Mr. Russert, Mr. Cooper, and Ms. Miller.  Now, however, one of those allegations — that Mr. Libby lied about his conversation with Judith Miller on July 12, 2003 — has been dismissed.  That aspect of the obstruction of justice count must be of no further concern to you, and the fact that Mr. Libby was previously alleged to have obstructed justice by lying about his conversation with Ms. Miller on July 12, 2003, cannot in any way influence your verdict regarding the guilt or innocence of Mr. Libby on the remaining charges in the indictment.  Count One, the obstruction of justice count, is now based solely on the allegation that Mr. Libby falsely testified to the grand jury concerning his conversations with two reporters, Mr. Russert and Mr. Cooper.  You may consider the testimony insofar as you believe it assists your decision on the charges that remain.

## OBSTRUCTION OF JUSTICE

## (COUNT ONE)

The defendant is charged in count one of the indictment with obstruction of justice.

Section 1503 of Title 18 of the United States Code states that:

"Whoever corruptly, . . . endeavors to influence, obstruct, or impede, the due

administration of justice, . . ." is guilty of an offense against the United States.

Count one of the indictment charges that on or about March 5 and March 24, 2004, in the

District of Columbia, the defendant corruptly endeavored to influence, obstruct, or impede the

due administration of justice in a federal judicial proceeding, specifically, proceedings before a

federal grand jury, by knowingly and deliberately misleading and deceiving the grand jury by

making the allegedly materially false statements to the grand jury regarding his conversations

with Tim Russert of *NBC News* on or about July 10 or 11, 2003, and Matthew Cooper of *Time*

magazine on July 12, 2003, set forth below.

In order to prove the offense charged in count one of the indictment beyond a reasonable

doubt, the government must prove the following four elements:

(1.) That there was a proceeding pending before a federal grand jury in the District of

Columbia concerning the possible unauthorized disclosure of Valerie Wilson's affiliation with

the CIA;

(2.) That the defendant knew the judicial proceeding just described was pending;

(3.) That the defendant misled or deceived the grand jury as to when or how he acquired

or thereafter disclosed to the media information concerning the employment of Valerie Wilson

by the CIA by making the following allegedly materially false statements:

> 1. When Mr. Libby spoke with Tim Russert of *NBC News* on or about July 10 or
> July 11, 2003, Mr. Russert asked Mr. Libby if Mr. Libby knew that Joseph

Wilson's wife worked for the CIA and told Mr. Libby that all reporters knew this and, at the time of this conversation, Mr. Libby was surprised to hear that Mr. Wilson's wife worked for the CIA; and

2.  Mr. Libby advised Matthew Cooper of *Time* magazine on or about July 12, 2003 that he had heard that other reporters were saying that Mr. Wilson's wife worked for the CIA, and further advised Mr. Cooper that Mr. Libby did not know whether this assertion was true;

and

(4.)  That in doing what was just indicated, the defendant corruptly endeavored to influence, obstruct, or impede the due administration of justice.

To act "corruptly," as this word is used in these instructions, means to act voluntarily and deliberately and with an evil motive or improper purpose or intent to influence, or obstruct, or interfere with the administration of justice.

The term "endeavors," as used in these instructions, means to knowingly and deliberately act or to knowingly and deliberately make any effort which has a reasonable tendency to bring about the desired result.

It is not necessary for the government to prove that the "endeavor" was successful or, in fact, achieved the desired result.

To prove that the defendant's conduct corruptly endeavored to influence, obstruct, or impede the "due administration of justice" the government must show beyond a reasonable doubt that the defendant's corrupt acts related to a pending federal judicial proceeding.  You are instructed that a federal grand jury investigation is a federal judicial proceeding.

## FALSE STATEMENTS

## (COUNTS TWO AND THREE)

Mr. Libby is charged in counts two and three of the indictment with knowingly and willfully making false, fictitious, or fraudulent statements or representations concerning a material fact within the jurisdiction of the executive branch of the United States government, specifically the Federal Bureau of Investigation, which is commonly referred to as the FBI.

Count Two alleges that Mr. Libby falsely told the FBI that during a conversation with Tim Russert of *NBC News* on July 10 or 11, 2003, Mr. Russert asked Mr. Libby if Mr. Libby was aware that Joseph Wilson's wife worked for the CIA; that Mr. Libby responded to Mr. Russert that he did not know that and Mr. Russert replied that all the reporters knew it; and that Mr. Libby was surprised by this statement because, while speaking with Mr. Russert, Mr. Libby did not recall that he previously had learned about Mr. Wilson's wife's employment from the Vice President.

Count Three alleges that Mr. Libby falsely told the FBI that during a conversation with Matthew Cooper of *Time* magazine on July 12, 2003, Mr. Libby told Mr. Cooper that reporters were telling the administration that Mr. Wilson's wife worked for the CIA, but that Mr. Libby did not know if this was true.

Section 1001(a)(2) of Title 18 of the United States Code states that:

"Whoever, in any matter within the jurisdiction of the executive branch of the government of the United States knowingly and willfully. . . makes any materially false, fictitious, or fraudulent statements or representations . . ." is guilty of an offense against the United States.

In order to prove these offenses beyond a reasonable doubt, the government must prove the following four elements:

(1.) That the defendant knowingly made a false, fictitious, or fraudulent statement or representation to the government of the United States, namely, the FBI;

(2.) That the statement or representation was made in a matter within the jurisdiction of the executive branch of the United States;

(3.) That in making the false, fictitious, or fraudulent statement or representation, the defendant acted willfully, knowing that the statement or representation was false; and

(4.) That the statement or representation made by the defendant was material to the investigation being conducted by the FBI.

A false or fictitious statement or representation is an assertion which is untrue when made or when used and which is known by the person making it or using it be untrue.

A fraudulent statement or representation is an assertion which is known to be untrue and which is made or used with the intent to deceive.

A statement or representation is material if it had the natural tendency to influence, or be capable of affecting or influencing a governmental function. As related to this case, the question for you to answer in determining whether the statement or representation is material is whether it had the capacity to affect or influence the actions of the Federal Bureau of Investigation. The test is whether the false, fictitious, or fraudulent statement or representation had the capacity to impair or pervert the investigation that was being conducted by the FBI. In other words, a false, fictitious, or fraudulent statement or representation is material if it relates to an important fact that had the capacity to affect or influence the investigation being conducted by the FBI as distinguished from some unimportant or trivial fact that did not have the capacity to affect or

influence the investigation being conducted by the FBI. You may consider the nature of the

FBI's investigation, including the possible crimes that were being investigated, in determining

whether the alleged false statements and declarations were material to the investigation.

However, you should understand that the alleged false statement or representation need not have

actually influenced the actions of the FBI, and the agents need not have been actually deceived.

A person acts "knowingly," as this term is used in these instructions, if the person acts

consciously and with awareness and comprehension and not because of ignorance, mistake, or

misunderstanding or other similar innocent reasons.

A person acts "willfully," as the term is used in these instructions, when that person acts

deliberately, voluntarily, and intentionally.

As to both Counts Two and Three of the indictment, a number of false, fictitious, or

fraudulent statements or representations are alleged to have been made by the defendant.   The

government is not required to prove that all of the statements or representations alleged are, in

fact, false.

To find the defendant guilty of these two counts of the indictment, the government must

prove beyond a reasonable doubt that at least one of the alleged statements or representations

contained in each count was false, fictitious, or fraudulent.  And, as to each count, all of you

must agree on which statement or representation was false or fictitious or fraudulent.  If you are

unable to reach unanimous agreement, then you must find the defendant not guilty of the count

on which such agreement could not be reached.

Mr. Libby may have given incorrect statements to investigators because of an

honest mistake of fact, confusion, or faulty memory.  If you, the jury, find that he made

an erroneous and incorrect statement because he honestly could not remember, or

because of some kind of innocent misunderstanding or mistake, Mr. Libby would not be guilty of making the false statement knowingly and willfully.

# PERJURY

## (COUNTS FOUR AND FIVE)

The defendant is charged in counts four and five of the indictment with the

offense of perjury.

Count Four of the indictment alleges that Mr. Libby gave the following allegedly false

testimony regarding a conversation with Tim Russert of *NBC News*, on or about July 10 or 11,

2003 (italicized portions are alleged to be false):

> *. . . . And then he said, you know, did you know that this—excuse me, did you know that Ambassador Wilson's wife works at the CIA? And I was a little taken aback by that. I remember being taken aback by it. And I said—he may have said a little more but that was—he said that. And I said, no, I don't know that. And I said, no, I don't know that intentionally because I didn't want him to take anything I was saying as in any way confirming what he said, because at that point in time I did not recall that I had ever known, and I thought this is something that he was telling me that I was first learning. And so I said, no, I don't know that because I want to be very careful not to confirm it for him, so that he didn't take my statement as confirmation for him.*

> Now, I had said earlier in the conversation, which I omitted to tell you, that this—you know, as always, Tim, our discussion is off-the-record if that's okay with you, and he said, that's fine.

> *So then he said—I said—he said, sorry—he, Mr. Russert said to me, did you know that Ambassador Wilson's wife, or his wife, works at the CIA? And I said, no, I don't know that. And then he said, yeah—yes, all the reporters know it. And I said, again, I don't know that. I just wanted to be clear that I wasn't confirming anything for him on this. And you know, I was struck by what he was saying in that he thought it was an important fact, but I didn't ask him anymore about it because I didn't want to be digging in on him,* and he then moved on and finished the conversation, something like that.

Count Five alleges that Mr. Libby gave the following allegedly false testimony regarding

his conversations with reporters concerning the employment of Joseph Wilson's wife by the CIA

(italicized portions are alleged to be false):

Testimony given on or about March 5, 2004 regarding a conversation with Matthew Cooper on or about July 12, 2003:

Q.    And it's your specific recollection that when you told Cooper about Wilson's wife working at the CIA, you attributed that fact to what reporters—

A.    Yes.

Q.    —plural, were saying.  Correct?

A.    *I was very clear to say reporters are telling us that because in my mind I still didn't know it as a fact.  I thought I was—all I had was this information that was coming in from the reporters.*

. . . .

Q.    And at the same time you have a specific recollection of telling him, you don't know whether it's true or not, you're just telling him what reporters are saying?

A.    *Yes, that's correct, sir.  And I said, reporters are telling us that, I don't know if it's true.  I was careful about that because among other things, I wanted to be clear I didn't know Mr. Wilson.  I don't know—I think I said, I don't know if he has a wife, but this is what we're hearing.*

Testimony given on or about March 24, 2004:

Q.    And let me ask you this directly.  Did the fact that you knew that the law could turn, the law as to whether a crime was committed, could turn on where you learned the information from, affect your account for the FBI when you told them that you were telling reporters Wilson's wife worked at the CIA but your source was a reporter rather than the Vice-President?

A.    *No, it's a fact.  It was a fact, that's what I told the reporters.*

Q.    And you're, you're certain as you sit here today that every reporter you told that Wilson's wife worked at the CIA, you sourced it back to other reporters?

A.    *Yes, sir*, because it was important for what I was saying and because it was—that's what—*that's how I did it.*

. . . .

Q.    The next set of questions from the Grand Jury are—concern this fact.  If you did not understand the information about Wilson's wife to have been classified and didn't understand it when you heard it from Mr. Russert, why was it

that you were so deliberate to make sure that you told other reporters that reporters were saying it and not assert it as something you knew?

A.    I want—I didn't want to—I didn't know if it was true and I didn't want people—I didn't want the reporters to think it was true because I said it. I—*all I had was that reporters are telling us that, and by that I wanted them to understand it wasn't coming from me and that it might not be true.* Reporters write things that aren't true sometimes, or get things that aren't true. *So I wanted to be clear they didn't, they didn't think it was me saying it. I didn't know it was true and I wanted them to understand that.* Also, it was important to me to let them know that because what I was telling them was that I don't know Mr. Wilson. We didn't ask for his mission. That I didn't see his report. Basically, we didn't know anything about him until this stuff came out in June. And among the other things, I didn't know he had a wife. That was one of the things I said to Mr. Cooper. I don't know if he's married. And so I wanted to be very clear about all this stuff that I didn't, I didn't know about him. And the only thing I had, I thought at the time, was what reporters are telling us.

. . . .

    Well, talking to the other reporters about it, I don't see as a crime. What I said to the other reporters is what, you know—*I told a couple reporters what other reporters had told us*, and I don't see that as a crime.

Perjury is made a federal crime by Section 1623(a) of Title 18 of the United States Code. This statute states that:

"Whoever under oath... in any judicial proceeding before . . . any . . . grand jury of the United States knowingly makes any false material declaration . . ." is guilty of an offense against the United States.

In order to prove the defendant guilty of perjury, the government must prove beyond a reasonable doubt the following four elements:

(1.) That the defendant made a statement to the grand jury while he was under oath;

(2.) That the statement was false in one or more respects;

(3.) That the defendant knew when he made the statement that it was false; and

(4.) That the false statement was material to the matter that was being investigated by the grand jury.

A statement under oath is a false statement if it was untrue when made and the person making it knew it was untrue at that time.

The making of a false statement under oath is not an offense unless the falsity relates to a "material" fact. A false statement is "material" if it has a natural tendency to affect or influence, or is capable of affecting or influencing, the exercise of the Grand Jury's decision making process. The test is whether the false statement had the capacity to impair or pervert the functioning of the grand jury. In other words, a false statement is material if it relates to an important fact that had the capacity to affect or influence the decision of the grand jury as distinguished from some unimportant or trivial detail that did not have the capacity to affect or influence the decision of the grand jury. You may consider the nature of the grand jury's investigation, including the possible crimes that were being investigated, in determining whether the alleged false statements were material to the grand jury investigation. However, you should understand that it is not necessary for the government to prove that the grand jury was, in fact, misled or influenced in any way by the false statement.

In reviewing the testimony that is charged to have been false, you should consider the testimony in the context of the series of questions asked and answers given, and the words used should be given their common and ordinary meaning unless the context clearly shows the questioner and the witness mutually understood the words to have a different meaning.

Mr. Libby may have given incorrect statements to the grand jury because of an honest mistake of fact, confusion, or faulty memory. If you, the jury, find that he made an erroneous and incorrect statement because he honestly could not remember, or because of some kind of innocent misunderstanding or mistake, Mr. Libby would not be guilty of willfully making a false statement.

**INSTRUCTION ON NIE DECLASSIFICATION**

You have heard evidence regarding discussions Mr. Libby had with reporters about material contained in the October 2002 National Intelligence Estimate (or the NIE).   There is no dispute that the President has the power to declassify previously classified material and to authorize its disclosure to the press.   Nor is there any dispute that at least as of July 8, 2003, the President had exercised that power with respect to portions of the October 2002 NIE.  In other words, the government does not contend that Mr. Libby did anything improper during those parts of the conversations he had with reporters on or after July 8, 2003, when he discussed portions of the NIE that had been declassified by the President.

**INSTRUCTION ON VALERIE PLAME WILSON'S STATUS WITH THE CIA**

No evidence has been presented to you as to Valerie Plame Wilson's status with the Central Intelligence Agency, or the CIA, and whether or not disclosure of that status would pose a risk of damage to national security or Ms. Wilson herself. That is because what her actual status was or whether any damage would result from the disclosure of her status are totally irrelevant to your assessment of the defendant's guilt or innocence on the offenses the defendant has been charged with in this case. You must, therefore, not consider those matters in your deliberations or speculate or guess about them.

You may properly consider, however, what, if anything, Mr. Libby knew or believed about her status and any damage disclosure of her status could cause in assessing what his state of mind was when he spoke to the FBI agents and testified before the grand jury. You must, however, keep in mind that none of the evidence offered to show Mr. Libby's state of mind establishes anything about what Ms. Wilson's status actually was or what damage, if any, was or could have been caused by the disclosure of that status.

## MEMORY INSTRUCTION

As you have heard, the defense contends that Mr. Libby confused, forgot, or misremembered all or parts of some of the conversations that you have heard about during the trial. You are also being asked to evaluate the accuracy of the memory of other witnesses who testified in this trial. In considering Mr. Libby's position and the testimony of any other witness whose memory is at issue, it is appropriate for you to take into account the following:

(1.) Your assessment, based on your life experience, of the capacity of human beings to remember things they said and were told when asked to recall those matters at a later point in time;

(2.) The amount of time between when a person said or heard something and the impact the passage of time had on the person's memory to accurately recall those events;

(3.) The circumstances that existed when the person was exposed to the events he or she is asked to recall;

(4.) The circumstances that existed when the person was asked to recall the earlier event;

(5.) The circumstances that existed during the time between when the person was exposed to the events he or she is asked to recall and when that person was asked to recall the earlier events;

(6.) Your assessment of the memory capacity of the person whose memory is in question; and

(7.) Any evidence that was presented during this trial that shed light on any issues of memory you have to determine in this trial.

(8.)  A person's confidence in the accuracy of his recollection of an event has little, if any, relation to the accuracy of the person's recollection.  In other words, a person may be very confident that his memory of an event is accurate when in fact it is inaccurate.

(9.)  If a person remembers an event incorrectly the first time he tries to recall it, his later recollections of the event are likely to repeat that error.

**INSTRUCTION ON NEWSPAPER ARTICLES AND TRANSCRIPTS**

Several newspaper articles and transcripts of news programs have been admitted into evidence. They have not been admitted for the truth of the information contained in them. You may not assume that anything said in the articles and transcripts is true, or consider any information stated in the articles and transcripts as establishing any facts. Rather, the articles and transcripts have been admitted for a limited purpose. You may consider the articles and transcripts only in your assessment of what, if any, effect they had on Mr. Libby's state of mind when he spoke to the FBI agents and when he later testified before the grand jury. And you may consider the articles and transcripts for that purpose only if you find that the evidence establishes that Mr. Libby read the articles.

**INSTRUCTION ON NON-DISCLOSURE AGREEMENT**

The government has introduced as evidence a non-disclosure agreement that Mr. Libby signed in connection with the positions he held in the Office of the Vice President and the White House.  In considering this agreement, you must keep in mind that Mr. Libby is not charged with violating the agreement.  You may also consider it only in assessing what, if any, impact the agreement had on Mr. Libby's state of mind when he spoke to the FBI agents and when he testified before the grand jury.  In other words, you may consider the agreement only in your assessment of whether Mr. Libby had a motive to provide false information when he spoke to the FBI agents and testified before the grand jury.

## THE GOVERNMENT AS A PARTY

You are to perform the duty of finding the facts without bias or prejudice as to any party. You are to perform your final duty in an attitude of complete fairness and impartiality.

The fact that the prosecution is brought in the name of the United States of America entitles the prosecution to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration. All parties, whether government or individuals, stand as equals at the bar of justice.

## CREDIBILITY OF WITNESSES — LAW ENFORCEMENT WITNESSES

You have heard the testimony of a witness employed by a law enforcement agency.  The fact that a witness may be employed by a law enforcement agency does not mean that her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of the law enforcement witness on the ground that their testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witnesses and to give to that testimony whatever weight, if any, you find it deserves.

## CONSIDER ONLY THE CRIMES CHARGED

You are here to decide whether the government has proved beyond a reasonable doubt that Mr. Libby is guilty of the crimes charged.   Mr. Libby is not on trial for any act, conduct, or offense not alleged in the indictment.   Neither are you to be concerned with the guilt of any other person or persons not on trial as a defendant in this case.  The possible guilt of others is no defense to a criminal charge.  Your job, simply put, is to decide if the government has proved Mr. Libby guilty beyond a reasonable doubt of the charges in the indictment.

## DUTY TO DELIBERATE

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict. Remember at all times that you are not partisans. You are judges—judges of the facts of this case. Your sole interest is to seek the truth from the evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case. Nothing you have seen or read outside of court may be considered. Nothing that I have said or done during the course of the trial is intended in any way, to somehow suggest to you what I think your verdict should be. Nothing said in these instructions and nothing in any form of verdict, which has been prepared for your convenience, is to suggest or convey to you in any way or manner any intimation as to what verdicts I think you should return. What the verdicts shall be is the exclusive duty and responsibility of the jury. As I have told you many times, you are the sole judges of the facts.

## GOOD FAITH DEFENSE

The good faith of Mr. Libby is a complete defense to each of the charges in the indictment because good faith on the part of the defendant is inconsistent with a finding that he knowingly and intentionally committed any of the alleged offenses.

A person who makes a statement based on a belief or opinion honestly held is not punishable under these statutes merely because the statement turns out to be inaccurate, incorrect, or wrong.  Making an honest statement that turns out to be inaccurate, incorrect or wrong because of mistake, confusion, or faulty memory, or even carelessness in one's recollection, does not rise to the level of criminal conduct.  An honest belief or "good faith" belief is a complete defense to the charges because such an honest or "good faith" belief is inconsistent with the intent to commit the alleged offenses.

In determining whether or not the government has proven that Mr. Libby acted with an intent to commit the offenses alleged in the indictment or whether Mr. Libby acted in good faith, you must consider all of the evidence received in this case bearing on his state of mind.

The burden of proving good faith does not rest with Mr. Libby, because he does not have any obligation to prove anything in this case.  It is the government's burden to prove beyond a reasonable doubt that Mr. Libby acted with the intent to commit the offenses charged.  If the evidence in this case leaves you with a reasonable doubt as to whether Mr. Libby acted with criminal intent or in good faith, you must find Mr. Libby not guilty.

## INTELLIGENCE IDENTITIES PROTECTION ACT ("IIPA")

You have heard references to the Intelligence Identities Protection Act, or IIPA, which appears at Title 50 of the United States Code, Section 421. The IIPA makes it unlawful to disclose information identifying a covert agent to a person not authorized to receive classified information, when (1) the person making the disclosure knows that the United States is taking affirmative measures to conceal the covert agent's relationship to the United States, and (2) the person acts knowingly and intentionally. You should keep in mind that Mr. Libby is not charged with violating the IIPA. Evidence concerning the statute has been admitted solely for any bearing it may have on Mr. Libby's state of mind. You may not consider that evidence for any other purpose.