THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 05-394 (RBW) |
| | ) | |
| I. LEWIS LIBBY, | ) | |
| also known as "Scooter Libby," | ) | |
| Defendant. | ) | |

## I. LEWIS LIBBY'S MEMORANDUM IN SUPPORT OF
## PROVIDING A GOOD FAITH DEFENSE INSTRUCTION TO THE JURY

On November 13, 2006, Mr. Libby submitted to the Court a proposed set of jury instructions. Included among them was an instruction explaining that the "good faith of Mr. Libby is a complete defense to each of the charges in the indictment because good faith on the part of the defendant is inconsistent with a finding that he knowingly and intentionally committed any of the alleged defenses." Def.'s Proposed Jury Instructions at 33 (filed Nov. 13, 2006) (Dkt. 180).[1] Significantly, the government has at no time raised an objection to that proposed instruction. *See* Govt.'s Resp. to Def.'s Proposed Jury Instructions at 2 (filed December 23, 2006) (Dkt. 227); Govt.'s Reply in Support of Govt.'s Proposed Jury Instructions and in Opp'n to Def.'s Proposed Alternatives (filed January 4, 2007) (Dkt. 230).

Nonetheless, the Court did not include Mr. Libby's proposed good faith defense instruction in the final instructions provided to the parties on February 15. During the charging conference, the Court asked the defense to provide case authority establishing that such an instruction is appropriate here. As explained below, the law is clear that a defendant is entitled

---

[1] The full text of the proposed instruction is appended at the end of the memorandum as Exhibit A.

to a good faith instruction where there is evidence to warrant it. Such an instruction is appropriate here.

It bears repeating that evidence of good faith can negate the specific intent to commit the crimes charged in this case. *See Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005) (to act "corruptly" means to act "knowingly and dishonestly, with the specific intent to subvert or undermine the integrity" of the grand jury proceeding) (quoting pattern instruction); *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (the perjury statute requires proof that the defendant "g[ave] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory")*United States v. Pickett*, 353 F.3d 62, 66 (D.C. Cir. 2004) (Section 1001 requires proof that the defendant knew the statement at issue was false); *United States v. Baker*, 626 F.2d 512, 516 (5th Cir. 1980) (false statement cannot be predicated on statement made by "inadvertence, mistake, carelessness or for any other innocent reason"). *See also* Def.'s Brief on Admissibility of State of Mind Evidence Without Defendant's Testimony at 3-4 (filed February 5, 2007) (Dkt. 264).

As with other instructions, a good faith defense instruction is called for so long as there is evidence sufficient to support it. *See Mathews v. United States*, 485 U.S. 58, 62 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor"); *United States v. Scherer*, 653 F.2d 334, 337 (8th Cir. 1981). That evidentiary prerequisite *may* be satisfied by the defendant's own testimony. But such testimony is by no means required. *See United States v. Curry*, 681 F.2d 406, 416 n.25 (5th Cir. 1982) ("Good faith, just like bad faith, can be proved by circumstantial evidence. To hold otherwise would effectively eviscerate the accused's right not to testify in any criminal matter in which good faith was at issue.").

To the contrary, courts, including courts in this jurisdiction, rely on evidence other than a defendant's own testimony, including documentary evidence and the testimony of other witnesses, as a basis for providing the instruction Mr. Libby seeks here. *See, e.g., United States v. Schiff*, 801 F.2d 108, 110-11 (2nd Cir. 1986); *United States v. Goss*, 650 F.2d 1336, 1344-45 (5th Cir. 1981) (concluding that "we cannot say that there was no evidentiary basis upon which the defendants could rest a good faith defense," notwithstanding apparent lack of testimony by the defendants). As pointed out by counsel during the charging conference, a good faith instruction was given by the court in *United States v. Espy*, Cr. No. 97-0335 (RMU), and *United States v. Hemmingson*, Cr. No. 96-00181 (GK), even though the defendants in those cases, like Mr. Libby here, exercised their right not to testify.

In Mr. Libby's case, the evidence in the record plainly supports the giving of the proposed good faith defense instruction. Most importantly, that evidence includes Mr. Libby's grand jury testimony, in which he describes his efforts to recall accurately the conversations he was asked to recount, and explains how and why any inaccuracies may have innocently occurred. Tr. of Def.'s March 5, 2004 Testimony Before Grand Jury 03-3 at 195-96 (attached as Exhibit B). Indeed, though Mr. Libby chose not to take the stand at trial, the fact that the jury has been presented with a close surrogate to such testimony, in the form of Mr. Libby's grand jury transcripts, weighs strongly in favor of providing the proposed instruction. The defense submits that, for purposes of evaluating the propriety of a good faith instruction, there is no real difference between the two.

In addition to Mr. Libby's grand jury testimony, the evidence also includes the testimony of defense witness John Hannah, who described his own experience with Mr. Libby's faulty memory, as well as the nature and intensity of Mr. Libby's work during the period relevant to the

indictment, Tr. of Feb. 13, 2007 AM Session at 38 (attached as Exhibit C); and a stipulation by

the parties providing additional detail regarding the national security matters presented to Mr.

Libby during that period, DX1850. All of this evidence supports a reasonable inference that any

inaccuracies in Mr. Libby's statements were the result of a good faith mistake rather than a

knowing and intentional effort to lie or misrepresent the truth. Accordingly, the jury can and

should be instructed that a finding of good faith on Mr. Libby's part constitutes a complete and

total defense to each of the crimes charged.

## CONCLUSION

For the foregoing reasons, Mr. Libby respectfully requests that the Court include the

Good Faith Defense Instruction previously submitted by the defense in its final instructions to

the jury.

Dated:  February 16, 2007                                    Respectfully Submitted,

/s/ Theodore V. Wells, Jr.                                   /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                                       William H. Jeffress, Jr.
(D.C. Bar No. 468934)                                        (D.C. Bar No. 041152)
James L. Brochin                                             Alex J. Bourelly
(D.C. Bar No. 455456)                                        (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                                Baker Botts LLP
 & Garrison LLP                                              1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas                                  Washington, DC  20004
New York, NY  10019-6064                                     Tel:  (202) 639-7551
Tel:  (212) 373-3089

/s/ John D. Cline
John D. Cline
(D.C. Bar No. 403824)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939

# EXHIBIT A

## MR. LIBBY'S PROPOSED JURY INSTRUCTION NO. 17

(Good Faith Defense)

The good faith of Mr. Libby is a complete defense to each of the charges in the indictment because good faith on the part of the defendant is inconsistent with a finding that he knowingly and intentionally committed any of the alleged offenses.

A person who makes a statement based on a belief or opinion honestly held is not punishable under these statutes merely because the statement turns out to be inaccurate, incorrect, or wrong. Making an honest statement that turns out to be inaccurate, incorrect or wrong because of mistake, confusion, or faulty memory, or even carelessness in one's recollection, does not rise to the level of criminal conduct. An honest belief or "good faith" belief is a complete defense to the charges because such an honest or "good faith" belief is inconsistent with the intent to commit the alleged offenses.

In determining whether or not the government has proven that Mr. Libby acted with an intent to commit the offenses alleged in the indictment or whether Mr. Libby acted in good faith, you must consider all of the evidence received in this case bearing on his state of mind.

The burden of proving good faith does not rest with Mr. Libby, because he does not have any obligation to prove anything in this case. It is the government's burden to prove beyond a reasonable doubt that Mr. Libby acted with the intent to commit the offenses charged. If the evidence in this case leaves you with a reasonable doubt as to whether Mr. Libby acted with criminal intent or in good faith, you must find Mr. Libby not guilty.[19]

---

[19]    Adapted from O'Malley, § 19.06.

# EXHIBIT B



1

UNCLASSIFIED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - -x

IN RE: JOHN DOE



- - - - - - - - - - - -x

                    Grand Jury No. 03-3
                    3rd & Constitution, N.W.
                    Washington, D.C. 20001

                    Friday, March 5, 2004

          The testimony of I. LEWIS LIBBY was taken in the

presence of a full quorum of the Grand Jury, commencing at

10:40 a.m., before:

          RON ROOS
          Deputy Special Counsel
          United States Department of Justice

          PETER ZEIDENBERG
          Deputy Special Counsel
          United States Department of Justice

          KATHLEEN M. KEDIAN
          Deputy Special Counsel
          United States Department of Justice

          PATRICK FITZGERALD
          Special Counsel
          U.S. Attorney's Office, Chicago

1    Q.  And do you have any recollection of when it is that

2 you discussed with Vice President Cheney, his comments about

3 whether or not Ambassador Wilson had been sent on this trip by

4 his wife as a junket?

5    A.  I know that there -- that Vice President Cheney

6 asked -- made some comments like that.  I think of them in my

7 mind as later, you know, later in July or August or later,

8 asking not so much in me, but just sort of how did he come to

9 be sent on this?  I don't know if he also made them earlier.

10 That sort of runs together for me.

11    MR. FITZGERALD.  Why don't we adjourn --

12    WITNESS.  Can I just make one other comment about

13 this stuff?  I get a lot of information during the course of a

14 day.  I probably get -- you know, after this all came up I

15 sort of for a few days tried to take a census of how many

16 pages of stuff I get in a day, and I tend to get between 100

17 and 200 pages of material a day that I'm supposed to read and

18 understand and I -- you know, I start at 6:00 in the morning

19 and I go until 8:00 or 8:30 at night, and most of that is

20 meetings.  So a lot of information comes through to me, and I

21 can't possibly recall all the stuff that I think is important,

22 let alone other stuff that I don't think is as important.  And

23 so when a lot of this -- a lot of stuff that comes to me, what

24 I will normally do is I'll gather my staff together and say,

25 hey, what happened here?  You know, there was some meeting we

1  had on, let's say, Iraq.  What did, what did people say, or

2  what happened last week when we had that meeting?  Did State

3  agree to do something, or was the Defense Department supposed

4  to do something?  And we'll sort of pool our recollections of

5  it and that almost always bring me a fuller recollection of

6  what's happened.  I haven't done that here because as I

7  understand it, you don't want me to do that here.  I'm happy

8  to do it at some point, but I haven't.  So I apologize if my

9  recollection of this stuff is not perfect, but it's not in a

10  way that I would normally do these things.  I would normally --

11  in the normal course of what we do in a day, I would bring the

12  staff together or ask the Vice President and go through all

13  this, and I haven't done that here, and I apologize if there's

14  some stuff that I remember and some I don't, but it's -- I'm

15  just trying to tell you what I do in fact remember.

16          MR. FITZGERALD.   Okay.  We'll pick it up from

17  there.  I'm going to ask the foreperson to advise the witness

18  he remains under subpoena.  We'll talk with your counsel and

19  with the Grand Jury about scheduling so we minimize the

20  disruption, and I apologize.  Another matter ran long today

21  and we'll sort that out at the convenience of yourself,

22  counsel, and the Grand Jury and us.  So thank you.  And I

23  apologize for running a bit over, but we'll see --

24          GRAND JUROR.   Thank you, Mr. Libby.

25          WITNESS.   Thank you.

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES,        :
    GOVERNMENT,     :
                :
 VS.            :   CR. NO. 05-394
                :
                :  (SEALED BENCH CONFERENCES)
I. LEWIS LIBBY,     :
    DEFENDANT,      :
_____:

WASHINGTON, D. C.
FEBRUARY 13, 2007
A. M. SESSION

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE REGGIE B. WALTON

FOR THE GOVERNMENT:     PATRICK FITZGERALD, SPECIAL COUNSEL
U. S. DEPARTMENT OF JUSTICE
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS  60604
312-353-5300

DEBRA R. BONAMICI
OFFICE OF SPECIAL COUNSEL
219 SOUTH DEARBORN STREET
ROOM 500
CHICAGO, ILLINOIS  60604
312-353-3741

PETER ZEIDENBERG, AUSA
U. S. DEPARTMENT OF JUSTICE
1400 NEW YORK AVE., N. W.
ROOM 12-405.
WASHINGTON, D. C. 20005
202-514-1412

COURT REPORTER:     PHYLLIS MERANA
6423 U. S. COURTHOUSE
333 CONSTITUTION AVE., N. W.
WASHINGTON, D. C. 20001
202-354-3243

1 **Q. AND WHAT DID YOU OBSERVE?**

2 A. ON CERTAIN THINGS, SCOOTER JUST HAD AN AWFUL MEMORY.

3 **Q. CAN YOU GIVE US AN EXAMPLE FROM YOUR EXPERIENCE?**

4 A. TIMES TOO MANY TO COUNT, I WOULD COME IN TO SCOOTER IN

5 THE MORNING, AND WE WOULD DISCUSS AN ISSUE. I WOULD GIVE MY

6 VIEWS ON IT, GIVE A POLICY RECOMMENDATION, GIVE AN ANALYSIS,

7 AND SHOW UP SIX, SEVEN HOURS LATER THAT EVENING, AND HAVE

8 SCOOTER IN A VERY EXCITED FASHION REPEAT BACK TO ME THE

9 ANALYSIS, THE RECOMMENDATIONS, AND HAVE NO IDEA THAT I HAD

10 ACTUALLY TOLD HIM THAT THE VERY SAME MORNING. IT WAS VERY

11 STRIKING.

12 **Q. WOULD YOU SOMETIMES CALL THAT TO HIS ATTENTION?**

13 A. I THINK I DID IT ON OCCASION, JUST IN EXASPERATION, BUT

14 AT SOME POINT IN TIME -- THAT WAS MR. LIBBY.

15 **Q. ONE OTHER THING I WANT TO ASK YOU ABOUT BEFORE WE MOVE**

16 **INTO THE NATIONAL SECURITY AREA. DID MR. LIBBY MAINTAIN**

17 **FILES WHEN HE WAS THE NATIONAL SECURITY ADVISOR?**

18 A. HE CERTAINLY DID. I EXPERIENCED IT MOST CLOSELY -- HE

19 MAINTAINED THEM THROUGH HIS OWN ASSISTANT, I WOULD SAY.

20 **Q. AND CAN YOU CHARACTERIZE THE VOLUME OF THE FILES THAT**

21 **MR. LIBBY MAINTAINED?**

22 A. VERY, VERY LARGE. SEVERAL, I WOULD SAY, PERSON-SIZE

23 SAFES FILLED WITH -- MULTIPLE SAFES; I DON'T KNOW IF IT WAS

24 TWO, THREE, FOUR SAFES FILLED WITH -- TOP TO BOTTOM WITH

25 MATERIALS.