UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )  | |
| ) | CR. NO 05-394 (RBW) |
| v. ) | |
| ) | |
| I. LEWIS LIBBY, ) | |
|     also known as "Scooter Libby" ) | |

**GOVERNMENT'S OBJECTIONS AND PROPOSALS**
<u>**REGARDING FINAL JURY INSTRUCTIONS**</u>

    The UNITED STATES OF AMERICA, by PATRICK J. FITZGERALD, SPECIAL COUNSEL, respectfully submits the following objections and proposals regarding final jury instructions.

*Unanimity Instructions and Special Verdict Forms*

    The Court has requested that the government advise whether it objects to the use of a general verdict form for Counts 2 and 5 in light of the defense's request for a special verdict form for Count 1 and general verdict forms for Counts 2 and 5, despite the defense's concurrent request for special unanimity instructions for all three counts.

    The government does not object to the use of general verdict forms for Counts 2 and 5 if the Court supplements the current unanimity instructions by explaining to the jury the specific statements upon which they could unanimously agree to convict the defendant on each of those counts. The dispute between the parties regarding whether Count 1 charged two or three statements that would support a conviction demonstrates the need to spell out for the jury the specific statements that could support a conviction under Counts 2 and 5, in order to avoid confusion. The specific statements charged in the indictment must be identified for the jury based on the indictment, and any risk of confusion regarding this issue must be avoided. Needless to say, this is not a matter to be left

to argument, particularly at the risk that the issue would be presented by the parties in an inconsistent fashion. Thus, as was illustrated by the discussion in court yesterday, the jury requires guidance on this issue in order to fulfill its duty.

Accordingly, the government proposes the following amendments to the Court's current unanimity instructions regarding Counts 1, 2 and 5:

*Count 1*

> As to Count 1 of the indictment, the defendant is alleged to have obstructed justice by making three false statements or representations to the grand jury. The government is not required to prove that all of the alleged statements or representations were in fact false.
>
> To find the defendant guilty of Count 1, the government must prove beyond a reasonable doubt that at least one of the false statements or representations alleged in Count 1 was false, and all of you must agree on which statement or representation was false. If you are unable to unanimously agree that at least one of the statements or representations alleged in Count 1 was false, then you must find the defendant not guilty of Count 1.
>
> Count 1 alleges that the following three statements or representations made by the defendant to the grand jury were false:
>
> 1. That when Mr. Libby spoke with Tim Russert of *NBC News*, on or about July 10, 2003, Mr. Russert asked Mr. Libby if Mr. Libby knew that Wilson's wife worked for the CIA, and told Mr. Libby that all the reporters knew it.
>
> 2. That when Mr. Libby spoke with Tim Russert of *NBC News*, on or about July 10, 2003, Mr. Libby was surprised to hear that Wilson's wife worked for the CIA
>
> 3. That when Mr. Libby spoke with Mr. Cooper of *Time* magazine on or about July 12, 2003, Mr. Libby advised Mr. Cooper that he had heard that other reporters were saying that Wilson's wife worked for the CIA, and further advised him that Mr. Libby did not know whether this assertion was true.

*Count 2*

As to Count 2 of the indictment, two false, fictitious, or fraudulent statements or representations are alleged to have been made by the defendant. The government is not required to prove that all of the statements or representations are, in fact, false.

To find the defendant guilty of Count 2, the government must prove beyond a reasonable doubt that at least one of the statements or representations alleged in Count 2 was false, fictitious, or fraudulent, and all of you must agree on which statement or representation was false, fictitious or fraudulent. If you are unable to unanimously agree that at least one of the statements or representations alleged in Count 2 was false, fictitious or fraudulent, then you must find the defendant not guilty of Count 2.

Count 2 alleges that the following two statements or representations were false, fictitious or fraudulent:

1. During a conversation with Tim Russert of *NBC News* on July 10 or 11, 2003, Mr. Russert asked Mr. Libby if Mr. Libby was aware that Mr. Wilson's wife worked for the CIA; Mr. Libby responded to Mr. Russert that he did not know that, and Mr. Russert replied that all the reporters knew it.

2. During a conversation with Tim Russert of *NBC News* on July 10 or 11, 2003, Mr. Libby was surprised by Mr. Russert's statement that Mr. Wilson's wife worked for the CIA because, while speaking with Mr. Russert, Mr. Libby did not recall that he previously had learned about Wilson's wife's employment from the Vice President.

*Count 5*

As to Count 5 of the indictment, the defendant is alleged to have made false statements to the grand jury under oath on two separate occasions. The government is not required to prove that the defendant gave false testimony on both occasions.

To find the defendant guilty of Count 5, the government must prove beyond a reasonable doubt that the defendant made false statements to the grand jury under oath on at least one occasion alleged in Count 5, and all of you must agree on which occasion the defendant made the false statement. If you are unable to unanimously agree that the defendant gave false testimony under oath to the grand jury on at least one of the two occasions charged in Count 5, then you must find the defendant not guilty of Count 5.

Count 5 alleges that the following statements made by the defendant to the grand jury on the following two occasions were false (underlined portions alleged as false):

a.  **Testimony Given on or about March 5, 2004 Regarding a Conversation With Matthew Cooper on or About July 12, 2003:**

   Q.  And it's your specific recollection that when you told Cooper about Wilson's wife working at the CIA, you attributed that fact to what reporters –

   A.  <u>Yes</u>.

   Q.  – plural, were saying. Correct?

   A.  <u>I was very clear to say reporters are telling us that because in my mind I still didn't know it as a fact. I thought I was – all I had was this information that was coming in from the reporters.</u>

   . . . .

   Q.  And at the same time you have a specific recollection of telling him, you don't know whether it's true or not, you're just telling him what reporters are saying?

   A.  <u>Yes, that's correct, sir. And I said, reporters are telling us that, I don't know if it's true. I was careful about that because among other things, I wanted to be clear I didn't know Mr. Wilson. I don't know – I think I said, I don't know if he has a wife, but this is what we're hearing.</u>

b.  **Testimony Given on or about March 24, 2004 Regarding Conversations With Reporters:**

   Q.  And let me ask you this directly. Did the fact that you knew that the law could turn, the law as to whether a crime was committed, could turn on where you learned the information from, affect your account for the FBI when you told them that you were telling reporters Wilson's wife worked at the CIA but your source was a reporter rather than the Vice-President?

   A.  <u>No, it's a fact. It was a fact, that's what I told the reporters</u>.

> Q. And you're, you're certain as you sit here today that every reporter you told that Wilson's wife worked at the CIA, you sourced it back to other reporters?
>
> A. <u>Yes, sir</u>, because it was important for what I was saying and because it was – that's what – <u>that's how I did it.</u>
>
> . . . .
>
> Q. The next set of questions from the Grand Jury are – concern this fact. If you did not understand the information about Wilson's wife to have been classified and didn't understand it when you heard it from Mr. Russert, why was it that you were so deliberate to make sure that you told other reporters that reporters were saying it and not assert it as something you knew?
>
> A. I want – I didn't want to – I didn't know if it was true and I didn't want people – I didn't want the reporters to think it was true because I said it. I – <u>all I had was that reporters are telling us that, and by that I wanted them to understand it wasn't coming from me and that it might not be true.</u> Reporters write things that aren't true sometimes, or get things that aren't true. <u>So I wanted to be clear they didn't, they didn't think it was me saying it. I didn't know it was true and I wanted them to understand that.</u> Also, it was important to me to let them know that because what I was telling them was that I don't know Mr. Wilson. We didn't ask for his mission. That I didn't see his report. Basically, we didn't know anything about him until this stuff came out in June. And among the other things, I didn't know he had a wife. That was one of the things I said to Mr. Cooper. I don't know if he's married. And so I wanted to be very clear about all this stuff that I didn't, I didn't know about him. And the only thing I had, I thought at the time, was what reporters are telling us.
>
> . . . .
>
> Well, talking to the other reporters about it, I don't see as a crime. What I said to the other reporters is what, you know – <u>I told a couple reporters what other reporters had told us</u>, and I don't see that as a crime.

*Citations to Grand Jury Transcripts*

The government has attached a recitation of the charged language with citations to the grand jury transcripts as Exhibit A. As discussed in court, the government suggests that Exhibit A be provided as an aide to the jury for use in its deliberations.

*Tapes and Transcripts*

The government proposes that the following instruction, which is modified from the Bar Association of the District of Columbia's *Criminal Jury Instructions* (4th ed. Revised 2005)(The Red Book)("D.C. Form Instructions"), Instruction 2.30, be given regarding the grand jury transcripts and audio recordings that are in evidence:

> Audio recordings and transcripts of the defendant's grand jury testimony on March 5 and March 24, 2004 have been received in evidence. It has been stipulated that the transcripts were prepared by a court reporter, and are true and correct to the best of her ability. If you perceive any variation between the transcripts and the audio recordings, you must be guided by the audio recordings. If you cannot determine from the audio recording that particular words were spoken, you must disregard the transcripts so far as those words are concerned.

*Stipulations Offered as Impeachment*

The government proposes that the following instruction, which is modified from the D.C. Form Instruction 1.10, be given regarding the stipulated testimony of Inspector in Charge Jack Eckenrode and FBI Section Chief Timothy Fuhrman:

> You have seen two stipulations that set forth the testimony of Inspector in Charge Jack Eckenrode and FBI Section Chief Timothy Fuhrman regarding their descriptions of statements made by witnesses Tim Russert and David Addington, respectively, on earlier occasions when the witnesses were not under oath that may be inconsistent with the witnesses' testimony here at trial. The earlier statements were brought to your attention to help you in evaluating the witnesses' believability here in court. In other words, if on an earlier occasion a witness made a statement that is inconsistent with his or her testimony in court, you may consider the inconsistency in judging the credibility of the witness. You may not consider the

earlier statement that was not under oath as proof that what was said in the earlier statement was true.

It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the witness' testimony here.

*Instruction Regarding IIPA*

The government has noted its objection to providing the jury with an instruction regarding the elements of one of the statutes which, based on the evidence presented at trial, the defendant was aware could provide a basis for his prosecution, without instructing the jury regarding the elements of other such statutes.[1] It is the government's position that the proper course is to provide simplified instructions regarding the elements of all four statutes identified to the defendant as possible crimes being investigated by the grand jury, or none of them. However, in light of the Court's determination that the jury should be instructed regarding solely on the elements of the IIPA, the government requests that the Court add after the second sentence concerning the IIPA instruction: "You have also seen reference to other statutes that prohibit disclosure of classified information in Government Exhibit 5A." The sentence that follows should be amended to add "or those other statutes" after "not charged with violating the IIPA." And, in the next sentence, we suggest replacing "the statute" with "those statutes."

---

[1] As noted in court, evidence was presented at trial showing that defendant was advised orally and in writing regarding these other statutes in that (1) he was advised in writing through six nondisclosure agreements he signed; (2) being advised orally at the beginning of his first grand jury appearance that the grand jury was investigating possible violations of four statutes, 18 U.S.C. §§ 793, 641 and 1001 and 50 U.S.C. § 421. Other evidence presented at trial, such as the fact that the defendant generically denied leaking classified information after a criminal investigation was opened regarding disclosure of Ms. Wilson's employment, provided additional bases from which the jury could infer that the defendant was aware that criminal prosecution under statutes other than one that would require that defendant knew that Ms. Wilson was a covert agent.

*Defendant's Proposed Theory of Defense Instruction*

The defendant has submitted a Revised Proposed Theory of the Defense Instruction. One sentence in the proposed instruction currently reads as follows:

> Further, Mr. Libby was well aware when he was first interviewed by the FBI and when he testified to the grand jury that the investigators could and likely would talk to government officials and the journalists he spoke with concerning Ambassador Wilson and that those officials and journalists would truthfully recount their recollections of the conversations he had with them.

The government objects to this part of the Defense's Revised Theory of the Defense on three grounds. First, it purports to set forth a fact, rather than the defendant's *contention*, regarding defendant's state of mind. Second, there is no evidence in the record indicating that journalists "likely would" talk with the FBI, or that defendant believed that that was the case. Similarly, there is no evidence in the record that "the journalists [defendant] spoke with" would in fact "recount to the FBI their recollections of conversations they had with the defendant," let alone that they would do so "truthfully." In fact, the evidence showed that a number of individuals with whom Mr. Libby spoke refused to recount their recollections to the FBI and to prosecutors, and that court orders were required to obtain the testimony of numerous witnesses. The government therefore submits the following proposed revision to that sentence from the defendant's Proposed Theory of the Defense Instruction, which omits those aspects of the statement that are unsupported by evidence and also corrects the reference to "investigators" as the Court previously suggested:

> Further, Mr. Libby contends he was well aware when he was first interviewed by the FBI and when he testified to the grand jury that the FBI agents could talk to government officials and the journalists he spoke with concerning Ambassador Wilson.

*Memory*

The government understands that the defendant will be submitting proposed language to be added to the Court's current instruction on memory. The government will respond to the proposed language upon receipt.

Respectfully submitted,

/s/
PATRICK J. FITZGERALD
Special Counsel
Debra Riggs Bonamici
Kathleen M. Kedian
Peter R. Zeidenberg
*Deputy Special Counsels*

Office of the Special Counsel
U.S. Department of Justice
1400 New York Ave., N.W.
Washington, D.C. 20530
202-514-1187

Dated: February 16, 2007

## Exhibit A

1. **Grand Jury Testimony of the Defendant Which the Indictment Alleges in Count 4 Was False (underlined portions alleged as false)**

> <u>. . . . And then he said, you know, did you know that this – excuse me, did you know that Ambassador Wilson's wife works at the CIA? And I was a little taken aback by that. I remember being taken aback by it. And I said – he may have said a little more but that was – he said that. And I said, no, I don't know that. And I said, no, I don't know that intentionally because I didn't want him to take anything I was saying as in any way confirming what he said, because at that point in time I did not recall that I had ever known, and I thought this is something that he was telling me that I was first learning. And so I said, no, I don't know that because I want to be very careful not to confirm it for him, so that he didn't take my statement as confirmation for him.</u>
>
> Now, I had said earlier in the conversation, which I omitted to tell you, that this – you know, as always, Tim, our discussion is off-the-record if that's okay with you, and he said, that's fine.
>
> <u>So then he said – I said – he said, sorry – he, Mr. Russert said to me, did you know that Ambassador Wilson's wife, or his wife, works at the CIA? And I said, no, I don't know that. And then he said, yeah – yes, all the reporters know it. And I said, again, I don't know that. I just wanted to be clear that I wasn't confirming anything for him on this. And you know, I was struck by what he was saying in that he thought it was an important fact, but I didn't ask him anymore about it because I didn't want to be digging in on him</u>, and he then moved on and finished the conversation, something like that.

[This passage is from the March 5, 2004 transcript, page 146 line 10 – page 147 line 13.]

**2. Grand Jury Testimony of the Defendant Which the Indictment Alleges in Count 5 Was False (underlined portions alleged as false)**

    **a. Testimony Given on or about March 5, 2004 Regarding a Conversation With Matthew Cooper on or about July 11, 2003:**

> Q. And it's your specific recollection that when you told Cooper about Wilson's wife working at the CIA, you attributed that fact to what reporters –
>
> A. Yes.
>
> Q. – plural, were saying. Correct?
>
> A. I was very clear to say reporters are telling us that because in my mind I still didn't know it as a fact. I thought I was – all I had was this information that was coming in from the reporters.

[This passage is from the March 5, 2004 transcript, page 187 lines 14 - 22.]

. . . .

> Q. And at the same time you have a specific recollection of telling him, you don't know whether it's true or not, you're just telling him what reporters are saying?
>
> A. Yes, that's correct, sir. And I said, reporters are telling us that, I don't know if it's true. I was careful about that because among other things, I wanted to be clear I didn't know Mr. Wilson. I don't know – I think I said, I don't know if he has a wife, but this is what we're hearing.

[This passage is from the March 5, 2004 transcript, page 187 line 23 – page 188 line 5.]

    **b. Testimony Given on or about March 24, 2004 Regarding Conversations With Reporters:**

> Q. And let me ask you this directly. Did the fact that you knew that the law could turn, the law as to whether a crime was committed, could turn on where you learned the information from, affect your account for the FBI when you told them that you were telling reporters

>   Wilson's wife worked at the CIA but your source was a reporter rather than the Vice-President?
>
> A. <u>No, it's a fact. It was a fact, that's what I told the reporters</u>.
>
> Q. And you're, you're certain as you sit here today that every reporter you told that Wilson's wife worked at the CIA, you sourced it back to other reporters?
>
> A. <u>Yes, sir</u>, because it was important for what I was saying and because it was – that's what – <u>that's how I did it.</u>

[This passage is from the March 24, 2004 transcript, page 182 line 14 - page 183 line 3.]

>   . . . .
>
> Q. The next set of questions from the Grand Jury are – concern this fact. If you did not understand the information about Wilson's wife to have been classified and didn't understand it when you heard it from Mr. Russert, why was it that you were so deliberate to make sure that you told other reporters that reporters were saying it and not assert it as something you knew?
>
> A. I want – I didn't want to – I didn't know if it was true and I didn't want people – I didn't want the reporters to think it was true because I said it. I – <u>all I had was that reporters are telling us that, and by that I wanted them to understand it wasn't coming from me and that it might not be true.</u> Reporters write things that aren't true sometimes, or get things that aren't true. <u>So I wanted to be clear they didn't, they didn't think it was me saying it. I didn't know it was true and I wanted them to understand that.</u> Also, it was important to me to let them know that because what I was telling them was that I don't know Mr. Wilson. We didn't ask for his mission. That I didn't see his report. <u>Basically, we didn't know anything about him until this stuff came out in June. And among the other things, I didn't know he had a wife. That was one of the things I said to Mr. Cooper. I don't know if he's married. And so I wanted to be very clear about all this stuff that I didn't, I didn't know about him. And the only thing I had, I thought at the time, was what reporters are telling us.</u>

[This passage is from the March 24, 2004 transcript, page 191 line 22 - page 192 line 22.]

>   . . . .

3

>  Well, talking to the other reporters about it, I don't see as a crime.  What I said to the other reporters is what, you know – <u>I told a couple reporters what other reporters had told us</u>, and I don't see that as a crime.

[This passage is from the March 24, 2004 transcript, page 160 lines 8 - 11.]

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on this 16th day of February, 2006, I caused true and correct copies of the foregoing to be served on the following parties by electronic mail:

William Jeffress, Esq.
Baker Botts
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Facsimile: 202-585-1087

Theodore V. Wells, Esq.
Paul Weiss
1285 Avenue of the Americas
New York, NY 10019-6064
Facsimile: 212-373-2217

John D. Cline, Esq.
Jones Day
555 California Street
San Francisco, CA 94104
Facsimile: 415-875-5700

           Patrick J. Fitzgerald
           Special Counsel
           U.S. Department of Justice
           1400 New York Ave., N.W.
           Washington, D.C. 20530
           202-514-1187

           By: _____/s/_____
           Debra Riggs Bonamici
           Deputy Special Counsel