UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Cr. No. 05-394 (RBW) |
| ) | |
| I. LEWIS LIBBY ) | |
|    also known as "Scooter Libby," ) | |
|    Defendant. ) | |

### I. LEWIS LIBBY'S RESPONSE TO THE COURT'S PROPOSED JURY INSTRUCTIONS

I. Lewis Libby, through undersigned counsel, respectfully submits the following objections and requests regarding the set of jury instructions proposed by the Court on February 16, 2007.

**I.      Language Regarding Unanimity**

Mr. Libby requests that the Court clarify the unanimity language in the charging instructions to prevent jurors from believing they have reached unanimity when, in fact, they have not. The final sentence of the charging instructions for Counts One, Two and Five, all of which allege multiple false statements, states that if jurors "are unable to reach unanimous agreement that at least one of the statements or representations alleged in count [one/two/five] was false, fictitious, or fraudulent, then you must find the defendant not guilty of count [one/two/five]."[1] This suggests that if jurors are able to reach unanimity that, as a numerical proposition, "at least one" of the statements is false, then a finding of guilty is possible. This is incorrect. Take Count One as an example. If four jurors agree that the first statement was false,

---

[1] Count Five, as it is currently written, is worded differently; however, the defense below proposes changes that would bring it back in line with the language used in Counts One and Two.

four the second, and four the third, then there would be unanimity that "at least one" statement is false. Yet, there would not be the requisite unanimity as to which *particular* statement was false.

To cure this, Mr. Libby requests that the final sentences of the charge-specific instructions be reworded to read:

> If you cannot unanimously agree that a particular statement or representation alleged in count [one/two/five] was false, and that Mr. Libby knew this when he made the statement, then you must find Mr. Libby not guilty of count [one/two/five].

## II.   Obstruction of Justice

The Court has held that each of the three charged crimes in this case is a crime requiring that specific intent be shown. *United States v. Libby*, 429 F. Supp. 2d 1, 12 (D.D.C. 2006). Yet, the current instruction does not require such a showing of specific intent. Rather, it mentions intent only as part of a list of mental states in the definition of "corruptly." Element three merely requires a showing that Mr. Libby "misled or deceived" the grand jury, which goes to the objective effect Mr. Libby's testimony had on the grand jury and not Mr. Libby's intent when he testified. Mr. Libby therefore requests that element three be changed to require that the government show that "the defendant *specifically intended to mislead or deceive* the grand jury" as to when and how he learned and disclosed information about Mr. Wilson's wife.

The instruction incorrectly describes the first two statements alleged in the indictment. The first statement should be that Mr. Russert asked Mr. Libby if Mr. Libby knew that Mr. Wilson's wife worked for the CIA *and* that all the reporters knew it. The second statement should be that, at the time of the conversation, Mr. Libby was surprised to hear that Mr. Wilson's wife worked for the CIA. *See* Indictment, Count One, ¶ 32(a). As currently drafted, the fact that all the reporters knew this information is incorrectly listed with the second statement. It should be part of the first statement.

### III.   Perjury

Statement One in Count Five recites Mr. Libby's testimony on March 5, 2004, and is broken into two sub-statements with an ellipsis separating them.  The most reasonable interpretation of the ellipsis is that text has been removed from between the two sub-statements.  This is incorrect.  The two sub-statements are sequential (page 187, line 14, through page 188, line 5) and there is no evident reason to separate them.  Indeed, the present structure risks unduly prejudicing Mr. Libby.  The underlined passages in *both* sub-statements go to the same point and the jury should not be given the misimpression that they are independent.  Accordingly, the ellipsis and the second parenthetical should be removed and the first parenthetical should be edited to state that the statement extends from page 187, line 14, to page 188, line 5.

The language of the perjury instruction currently suggests that the Court may provide jurors with excerpts of the transcript of Mr. Libby's grand jury testimony.  *See* Perjury instruction at 2-3, 5 ("That portion of the grand jury testimony which the indictment alleges in count [four/five] was false, is being provided to you with these instructions").  The defense objects to providing excerpts in addition to those set forth in the instructions.  The perjury instruction excerpts Mr. Libby's testimony and places his testimony within the proper framework for the jury's deliberations — next to the elements of perjury and definitions of key terms.  Providing jurors with additional copies of Mr. Libby's testimony would not only be redundant, but would unnecessarily risk having jurors deliberate and reach a verdict without consulting the perjury instruction.

The final sentence of the perjury instruction refers to Mr. Libby's "two appearances" before the grand jury, whereas the preceding sentences refer to the four allegedly false statements made by Mr. Libby before the grand jury.  To be consistent with the previous

charging instructions, Mr. Libby requests that the final sentence be changed to reference the four allegedly false statements rather than the two appearances.

Finally, the first full sentence of page 13 of the instruction states "count two" when it means "count five."

**IV.    Beyond a Reasonable Doubt**

Currently, the instructions for all five counts state that in order to prove an offense "beyond a reasonable doubt," the government must prove four elements. This construction permits jurors to conclude — impermissibly and with undue prejudice to Mr. Libby's right to a fair trial — that each element need not be proved beyond a reasonable doubt. The defense proposes a simple solution, adding "beyond a reasonable doubt" between "the government must prove" and "the following four elements" to each of the charging instructions.

**V.    Good Faith Defense**

The defense agrees to the language proposed by the Court.

**VI.    Theory of the Defense**

The defense accepts the language proposed by the Court.

**VII.    Instruction 1.10: Evaluation of Prior Inconsistent Statement of a Witness**

This instruction currently states that jurors have heard prior statements made by witnesses, *when the witnesses were "not under oath,"* inconsistent with the witnesses' testimony in court. The italicized language suggests that a prior unsworn statement is, to some degree, inherently questionable because the declarant faced no criminal punishment for lying. Not only does this language not appear in the Redbook, but it ignores the fact that, as the government alleges occurred here, individuals lie or shade the truth even when providing *sworn* testimony, either before the grand jury or on the witness stand in open court. Further, it is inconsistent with

the fact that the prior statement could have been made before any motive to lie existed. Also, with respect to Mr. Russert and Mr. Addington, their prior unsworn statements were made to FBI agents and, if knowingly erroneous, would be subject to criminal prosecution. Therefore, the defense requests that, in accordance with how Instruction 1.10 appears in the Redbook, this language not be included.

### **VIII.   Intelligence Identities Protection Act Instruction**

The defense agrees to the Court's proposal of February 16 to reopen the defense case so that a copy of the Intelligence Identities Protection Act ("IIPA"), 50 U.S.C. § 421, can be admitted as evidence. The defense reiterates its opposition to the government's attempt to admit 18 U.S.C. § 793 or other statutes concerning the dissemination of classified information. While evidence was adduced at trial that Mr. Libby was given a copy of the IIPA by David Addington when the investigation began, there is *no* evidence in the record to support an inference that he read or was concerned with 18 U.S.C. § 793.

The government's argument that GX 5A (the Classified Information Nondisclosure Agreement admitted over objection by the defense) refers to Section 793 is not a sufficient basis for the statute to be admitted. The Nondisclosure Agreement, in paragraphs 4 and 10, cites no fewer than eleven criminal and civil statutes or regulations: Executive Order 12356, 5 U.S.C. § 7211, 10 U.S.C. § 1034, 5 U.S.C. § 2302(b)(8), 50 U.S.C. § 421, 18 U.S.C. § 641, 18 U.S.C. §793, 18 U.S.C. § 794, 18 U.S.C. § 798, 18 U.S.C. § 952, and 50 U.S.C. § 783(b). The form then acknowledges in Paragraph 11 that these provisions have been "made available to me" to read "if I so choose." That is hardly proof that Mr. Libby actively read any of these statutes in January 2001, when he signed the agreement, much less focused upon them during late September and early October 2003 when the government contends he concocted a false story to

tell investigators. The IIPA was the only statute discussed between Mr. Libby and Mr. Addington, and is the only statute referenced in the newspaper articles (GX 422 and GX 423) admitted to show Mr. Libby's state of mind at the time the investigation began.

### IX.    Instruction Regarding July 12 Miller Conversation

The most recent version of the Miller instruction deletes information necessary to ensure that Mr. Libby is not unfairly prejudiced. The instruction formerly, and properly, stated that "[t]he fact that Mr. Libby was previously alleged to have obstructed justice by lying about his conversation with Ms. Miller on July 12, 2003, cannot in any way influence your verdict regarding the guilt or innocence of Mr. Libby on the remaining allegations in the indictment." This statement merely instructs jurors not to consider the fact that Mr. Libby *was charged* with lying about the July 12 conversation. Without this simple limiting statement, jurors are free to allow the fact that Mr. Libby was indicted on this charge to affect their deliberations. The defense accordingly proposes that the following language be reinserted into the instruction:

> That Mr. Libby was charged with obstructing justice by allegedly providing false testimony about his July 12, 2003 conversation with Ms. Miller must be of no further concern to you and cannot in any way influence your verdict regarding the guilt or innocence of Mr. Libby on the remaining charges in the indictment.

Returning this language would not confuse jurors as to the continued relevance of Ms. Miller's testimony about all of her conversations with Mr. Libby in deciding Mr. Libby's guilt or innocence on the remaining charges. The final sentence of the proposed instruction simply and directly states that they may consider evidence about all of the conversations "in evaluating whether the government has proven all the remaining allegations against Mr. Libby." Nor will including this language limit the government's ability to present arguments at closing. We assume that the government will argue that Ms. Miller's testimony about the June 23 and July 8 conversations, like that of Mr. Fleischer and Mr. Addington, makes it unlikely that Mr. Libby

forgot his conversation with the Vice President and was surprised by what he heard from Mr. Russert. We further assume that the government will contend that Ms. Miller's brief testimony concerning the July 12 conversation is relevant to consideration of the charge relating to Mr. Libby's conversation that same day with Matt Cooper. The instruction clearly permits the jury to consider these arguments.

In addition, the third sentence should be edited to remove the statement that the government has completed the presentation of its case as it does not correctly reflect the present posture of the case.

### X.    Memory Instruction

Although we maintain that our original proposed memory instruction is appropriate, we ask that the Court at a minimum add to its current instruction the two points in Mr. Libby's second proposed memory instruction. We have attempted to revise those points in light of the concerns that the Court expressed at the instruction conference.

**A.    Background.**

As part of our initial instructions, we proposed an instruction on relevant findings from the science of memory.[2] The proposed instruction recited, in less technical language, the findings concerning memory about which Dr. Bjork intended to testify. The government has never challenged the reliability of those findings. Nor could it; as the scientific articles presented with our motion to admit Dr. Bjork's testimony establish, the findings rest on years of sound scientific research at some of this country's finest universities.

The Court rejected the defense memory instruction but proposed to give a different instruction that sets out eight circumstances for the jury to consider in assessing the memory of the witnesses and Mr. Libby. Without waiving our initial proposal, we requested that two points

---

[2] I. Lewis Libby's Proposed Jury Instructions, Instruction No. 8.

be added to the Court's proposed memory instruction: (1) that a person's confidence in the accuracy of his recollection of an event has little, if any, relation to the accuracy of the person's recollection--in other words, a person may be very confident that his memory of an event is accurate when in fact it is inaccurate; and (2) that if a person remembers an event incorrectly the first time he tries to recall it, his later recollections of the event are likely to repeat that error.[3]

At the instruction conference on February 15, the Court expressed dissatisfaction with the wording of the two additional points; it noted that it does not want to "tell [the jurors], this is how memory works and therefore you can reach this conclusion based on what I'm telling you." T. 2/15/07 at 78-79. The Court invited the defense to rephrase the two points "in some way that leaves it as an open issue." *Id.* at 79.

B.    **The Proposed Instructions.**

We submit that it would be entirely appropriate for the Court to instruct the jury on the two findings from memory science set forth in Mr. Libby's second proposed memory instruction. As noted, the government has never disputed the accuracy of these or any other of the findings set out in our proffer of Dr. Bjork's testimony. Moreover, it is difficult to convey these points to the jury as "open issue[s]."

The confidence-accuracy point is especially hard to present without explicitly informing the jury about the findings of memory science. If the Court merely invites the jurors to consider the confidence with which a person appears to remember events, they will almost certainly assume that the greater the person's confidence in the memory, the more likely it is that the memory is accurate and that the person is not mistaken. To assist the jury, the instruction must convey that this intuitive assumption is wrong: greater confidence does not mean greater

---

[3] I. Lewis Libby's Second Set of Proposed Jury Instructions, Memory Instruction.

accuracy, nor does it mean that the person stating the memory with confidence is not innocently mistaken.

The confidence/accuracy instruction is particularly important for the jury's evaluation of prosecution witnesses Ari Fleischer and Tim Russert. Both Mr. Fleischer and Mr. Russert testified with apparent confidence about their conversations with Mr. Libby. Without the proposed instruction, the jurors may conclude from these witnesses' seeming confidence that their recollections are accurate. To prevent the jurors from basing their assessment of the Fleischer and Russert testimony (or the testimony of any other witness) on an incorrect assumption, the Court should instruct them expressly that confidence is not a reliable predictor of accuracy.

Similarly, the confidence-accuracy instruction is essential for the jurors' understanding of Mr. Libby's grand jury testimony. The jurors have heard him testify with apparent confidence about his conversations with Mr. Russert, Mr. Cooper, and other reporters. They may conclude from Mr. Libby's seeming confidence that his recollection must either be correct or a deliberate lie. The confidence-accuracy instruction insures that the jurors will not rule out a third possibility--that Mr. Libby was innocently confused or mistaken in his memory of the conversations with reporters--merely because he appears to recall those conversations with confidence.

The second proposed instruction--pointing out, consistent with the findings of memory research, that if a person remembers an event incorrectly the first time he tries to recall it, his later recollections of the event are likely to repeat that error--is also significant under the circumstances of this case. The government has argued repeatedly that, once Mr. Libby spoke to the FBI on October 14, 2003, his "feet were set in concrete"--in other words, he could not change

his story and had to continue repeating it at his second FBI interview and before the grand jury. Memory science suggests a more benign explanation: to the extent Mr. Libby misremembered conversations and other events in his first FBI interview, he innocently repeated those erroneous recollections each time he spoke to the FBI or appeared before the grand jury.

The "repeated error" instruction, like the confidence-accuracy instruction, cannot readily be presented as an "open issue." For example, merely asking jurors to consider the *possibility* that an initial error in recollection may be repeated in later attempts to recall an event does not convey the critical point. Jurors may well consider that possibility and reject it, contrary to the findings of memory science. Thus, the Court should instruct the jurors expressly that errors in an initial recollection are likely to be repeated in later recollections of the same event.

Although we maintain that our confidence-accuracy and repeated error instructions are correct as originally proposed, we have modified those instructions in an effort to meet the Court's concerns without losing the key points outlined above. The amended proposed instructions, which we ask to be included as paragraphs (9) and (10) of the Court's memory instruction, are as follows:

> (9)    You should consider that a person's confidence in the accuracy of his recollection of an event may not correspond directly to the accuracy of the person's recollection. In other words, a person may be very confident that his memory of an event is accurate when in fact it is inaccurate.
>
> (10)    You should also consider that if a person remembers an event incorrectly the first time he tries to recall it, his later recollections of the event may repeat that error.

These proposed instructions do not compel the jurors to accept particular premises or draw particular conclusions. The instructions appropriately guide the jurors' consideration of the memory issues this case presents and thus should be given.

## XI.     Limiting Instructions — Jury Instruction on Newspaper Articles

This instruction currently states that jurors may consider what effect, if any, newspaper articles admitted at trial had on Mr. Libby's state of mind when he spoke to FBI agents and later when he testified before the grand jury.  Government Exhibits 412 and 413, however, were admitted to show Mr. Libby's state of mind in July 2003, when the articles contained in those two exhibits were published, and not in October 2003 after the investigation started.  Accordingly, we request that the Court change the penultimate sentence as follows (added language marked with italics, removed language with a strike through): "Thus, you may consider the articles only in your assessment of what, if any, effect they had on Mr. Libby's state of mind *at the time the articles appeared, or* when he *later* spoke to the FBI agents and when he later testified before the grand jury."

## CONCLUSION

For the foregoing reasons, Mr. Libby respectfully requests that the changes mentioned above be made to the jury instructions proposed by the Court.


February 17, 2007

/s/ Theodore V. Wells, Jr._____
Theodore V. Wells, Jr.
(D.C. Bar No. 468934)
James L. Brochin
(D.C. Bar No. 455456)
Paul, Weiss, Rifkind, Wharton
  & Garrison LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Tel:  (212) 373-3089
Fax: (212) 373-2217

Respectfully submitted,

/s/ William H. Jeffress, Jr._____
William H. Jeffress, Jr.
(D.C. Bar No. 041152)
Alex J. Bourelly
(D.C. Bar No. 441422)
Baker Botts LLP
1299 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 639-7751
Fax: (202) 585-1087

/s/ John D. Cline
John D. Cline
(D.C. Bar No. 403824)
K.C. Maxwell
(*pro hac vice*)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104
Tel:  (415) 626-3939
Fax: (415) 875-5700