UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.            )<br>)<br>)<br>I. LEWIS LIBBY,      )<br>    also known as "Scooter Libby."  )<br>) | CR. NO. 05-394 (RBW) |

**RESPONSE OF MR. I. LEWIS LIBBY TO COURT'S ORDER OF MAY 17, 2007**

In its Order of May 17, 2007, the Court sought the parties' views regarding whether it should disclose to the media certain letters it received from the public regarding Mr. Libby's sentence. Mr. Libby opposes disclosing these letters absent permission of those who wrote them. Courts traditionally do not disclose sentencing letters, and they are not subject to any First Amendment right of access. Additionally, the letters are not judicial records and therefore are not subject to a common law right of access. Even if the Court does find that a right of access did attach, substantial policy and privacy interests favor maintaining the confidentiality of these letters. Like pre-sentence reports, sentencing letters provide courts with information about the defendant critical to the court's responsibility to fashion a just sentence. Disclosure would also undermine the authors' interests in preserving the confidentiality of their private communications and would chill future authors from writing them. Further, disclosure would serve no beneficial purpose, such as ensuring public oversight over courts, given that the sentencing hearings are open to the public. Accordingly, because the historical, policy, and privacy considerations

against disclosure outweigh any interest the public has in access to the letters, the letters should not be disclosed.

## ARGUMENT

Letters submitted by private citizens regarding a defendant's sentencing are traditionally not disclosed to the public. *See United States v. Kushner,* 349 F. Supp. 2d 892, 903 (D.N.J. 2005) (disclosure of sentencing letters is "certainly not rooted in Anglo-American tradition"); *United States v. Gotti*, 322 F. Supp. 2d 230, 249-50 (E.D.N.Y. 2004) ("there is no historic basis for the disclosure of sentencing letters"); *United States v. Lawrence*, 167 F. Supp. 2d 504, 507-08 (N.D.N.Y. 2001) ("[w]hile the sentencing process has traditionally been open to the public, the documents involved in that process have not"). Still, representatives of the media may argue that the Court should disclose the letters under either the First Amendment or the common law (or both). As shown below, neither applies to the letters in question.

**I.    The First Amendment Affords the Media No Right to Documents Which Historically Have Not Been Disclosed and For Which Disclosure Serves No Beneficial Purpose.**

The First Amendment provides a "qualified right of access" to judicial documents only under narrow circumstances not present here. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986). Those seeking access must establish that "such access has historically been available," and "serves an important function of monitoring prosecutorial or judicial misconduct." *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997) (denying media access to unexecuted plea agreement) (citation and quotation marks omitted); *see id.* at 161 (noting that *both* conditions must be met for the right to exist). Courts routinely reject First Amendment claims of access to letters submitted by members of the public regarding a defendant's sentence. *See, e.g., Lawrence*, 167 F. Supp. 2d at 507-08 (denying access to

sentencing letters given the public's access to the sentencing hearing and transcript); *Kushner*, 349 F. Supp. 2d at 903. Indeed, courts have recognized that "the First Amendment does not reach sentencing letters." *Kushner*, 349 F. Supp. 2d at 902.

The Court need look no further than the first necessary criteria enunciated in *El-Sayegh* to understand why this is so. As noted above, access to sentencing letters is "not rooted in Anglo-American tradition," and these documents have historically not been made available to the public. *See supra* at 2. Absent such a historical precedent, the First Amendment cannot justify disclosing the sentencing letters at issue here.

Likewise, disclosure of these letters serves no useful oversight function but, rather, needlessly risks undermining the fair administration of justice. These letters assist the Court's pre-sentence fact-finding function by expanding the Court's access to information about the defendant. *Lawrence*, 167 F. Supp. 2d at 508. A practice of placing letters such as these into the public record would impair the frankness, and even the number, of letters submitted in future cases. *See id.*; *Kushner*, 349 F. Supp. 2d at 903. Further, persons who write to judges expressing their opinions of a defendant do not, and should not, expect that their letters will be circulated on the internet. Because the authors expressed their views in confidence to the Court, their interest in maintaining the confidentiality of the opinions and personal information revealed in the letters deserves rigorous safeguarding.

Finally, it merits noting that just because the media may seek access to the letters does not heighten the First Amendment interests before the Court, or otherwise tip the scales towards disclosure. "The First Amendment generally grants the press no right to information about a trial superior to that of the general public." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 609 (1978).

In any event, as neither of the conditions set for in *El-Sayegh* are met, no First Amendment right of access exists over these letters.

## II. No Common Law Right of Access Exists to Non-Judicial Documents, Much Less Where Disclosure Unnecessarily Violates the Authors' Privacy Interests and Sets a Harmful Precedent.

### A. These Sentencing Letters are Not Judicial Records and Thus Are Not Subject to a Common Law Right of Access.

For the common law right of access to attach in this case, the documents at issue must be judicial records, which they are not. "[W]hat makes a document a judicial record and subjects it to the common law right of access is the role it plays in the adjudicatory process." *El-Sayegh*, 131 F.3d at 163 (holding that an unexecuted plea agreement was not a judicial record). Filed documents, admitted exhibits, and transcripts are considered judicial records. *See Washington Legal Foundation v. United States Sentencing Comm'n*, 89 F.3d 897, 906 (D.C. Cir. 1996). These letters, though, have played no "role" in any adjudicatory process. Nor have they been filed with the court, or are part of any formal document docketed in this case. While the Court has reviewed these letters *in camera* before Mr. Libby's sentencing, this does not suffice to convert the letters into judicial records. *See Application of A.H. Belo Corp.*, 66 F. Supp. 2d 47, 48-49 (D.D.C. 1999) (tapes and transcripts reviewed by court are not judicial records). As these letters are not subject to any common law right of access, disclosure on this ground is not required.

### B. Even if Considered Judicial Records, Confidentiality and Policy Considerations Require That These Letters Not Be Disclosed.

Assuming, *arguendo*, that the Court finds these letters to be judicial records subject to a common law right of access, disclosure would be unwarranted. The common law right of access is "limited" in scope, *A.H. Belo Corp.*, 66 F. Supp. 2d at 48, and only requires disclosure of

judicial records where the policy and privacy interests in maintaining the confidentiality of the letters are outweighed by the public's interest in access to the letters, *see Washington Legal Foundation*, 89 F.3d at 902. Assertions of a right of access under the common law to sentencing letters are regularly rejected given the substantial benefits sentencing letters provide courts and the severe harms triggered by their disclosure. *See, e.g., Kushner*, 349 F. Supp. 2d at 908-10 (holding that sentencing letters "should generally not be accessible under the common law"); *Gotti*, 322 F. Supp. 2d at 250.

The same policy and privacy considerations that compel rejecting any First Amendment right of access apply equally here. *See supra* at 3. Sentencing letters provide a "valuable input as to the character of the defendant and other relevant sentencing concerns." *Lawrence*, 167 F. Supp. 2d at 508. The public's input expands the body of information available to courts as they fashion the sentence most appropriate under the circumstances. *See Kushner*, 349 F. Supp. 2d at 903 ("the free flow of these letters to the Court, . . . is crucial to the goal of achieving a just sentence"). Revealing these private communications, however, would chill the willingness of individuals in future cases from expressing their opinions in an honest and forthright manner or even at all. *See id.* at 908-09; *Lawrence*, 167 F. Supp. 2d at 508. Given the extraordinary media scrutiny here, if any case presents the real possibility that these letters, once released, would be published on the internet and their authors discussed, even mocked, by bloggers, it is this case.

Disclosure would also imperil the due process rights of criminal defendants by deterring future individuals from writing letters on a defendant's behalf. *See Kushner*, 349 F. Supp. 2d. at 908. Courts would thus be denied critical mitigating information, the absence of which would result in sentences more severe than actually warranted. *See id.* (noting that, but for the letters it

received, the court would not have been aware of the defendant's beneficence and conceivably would have imposed a harsher sentence).

Not surprisingly, courts have treated sentencing letters as akin to pre-sentence reports. *See Lawrence*, 167 F. Supp. 2d at 508 ("the rationales for keeping presentence reports confidential are equally applicable" to sentencing letters). As the Second Circuit has observed, "requiring disclosure of a presentence report is contrary to the public interest as it may adversely affect the sentencing court's ability to obtain data on a confidential basis from . . . sources independent of the accused, for use in the sentencing process." *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1171 (2d Cir. 1983). Just as these considerations compel courts not to provide access to pre-sentence reports, so should the Court maintain the confidentiality of these sentencing letters.

Likewise, the privacy and reputation interests of the letter writers merit significant protection. *See United States v. Boesky*, 674 F. Supp. 1128, 1129 (S.D.N.Y. 1987) (denying media access to letters due to the implicitly confidential nature of their contents). It is easy to imagine that once the letters are publicly disclosed, members of the media would attempt to track down and interview the authors. *See Kushner*, 349 F. Supp. 2d at 908. This is troubling because the letters here reveal no indication that the authors expect their words to be made public. Rather, the abundant and intensely personal details shared in these letters, such as the deep respect one author has for Mr. Libby or the interactions between another author's family and Mr. Libby's, clearly indicate that they wrote the Court in confidence. In writing the Court, these authors did not just provide personal details about Mr. Libby, but also about themselves. It is the Court's responsibility, therefore, to protect their interests in privacy and confidentiality from

undue and unnecessary intrusion. *See id.*[1] This duty applies not only to those who wrote on behalf of Mr. Libby, but also to those who harshly criticize him. In a highly publicized case as this, no public benefit is advanced by exposing individuals' reputations to potentially critical public scrutiny simply because they privately communicated their support for, or criticism of, a person convicted of a crime.

The well-recognized harms caused by disclosure would not be offset by any perceptible benefit to the Court or the public. *Nixon* viewed the interest vindicated by giving access to public records as "the citizen's desire to keep a watchful eye on the workings of [the government]." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). Other principles seen as favoring disclosure of judicial records are the need for fostering public confidence in the administration of justice and encouraging informed civic discourse. *Kushner*, 349 F. Supp. 2d at 898.

Yet none of these interests support disclosing private letters mailed to the Court. Unfettered access to the sentencing hearing alone "satisfies the interests of the press and the public in ensuring the fairness of the adjudicatory process." *A.H. Belo Corp.*, 66 F. Supp. 2d at 49. Likewise, the need to foster confidence in the judiciary's actions does not stretch so far as to require disclosure of every document reviewed by the court prior to sentencing. *See generally id.* ("the right to monitor public hearings does not guarantee a concomitant right to inspect all documents submitted to or reviewed by the court in connection with court proceedings"). Indeed, the fact that pre-sentence reports are not disclosed despite their substantial role at sentencing vividly illustrates how disclosing these letters is unnecessary to ensuring effective

---

[1] The Court's concern about disclosing personal information about the authors is well grounded. The media organizations may respond that redacting the names and addresses would satisfy this concern. Not so. As stated above, these letters contain substantial quantities of personal, identifying information that would also need to be redacted.

oversight of the judiciary. Nor would revealing these letters promote a more informed debate about this case.[2]

These letters provide unique insight into Mr. Libby's character and ties to the community, as well as the reaction by some to the jury's verdict, and, in so doing, serve the interests of justice by assisting the Court in crafting the most appropriate sentence. Disclosure would undermine this important goal without providing any evident benefit to the Court, Mr. Libby, the government, or the public. Because the letters "evince[] an expectation of privacy and confidentiality," respecting this expectation of privacy by maintaining the confidentiality of those letters "far outweigh[es] the need for public access to these letters." *Lawrence*, 167 F. Supp. 2d at 508. For these reasons, the letters should not be disclosed under the common law right of access to judicial records.

**CONCLUSION**

For the aforementioned reasons, Mr. Libby respectfully requests that the Court not disclose the private letters it received from members of the public.

Dated: May 25, 2007                                   Respectfully submitted,

/s/ Theodore V. Wells, Jr.                            /s/ William H. Jeffress, Jr.
Theodore V. Wells, Jr.                                William H. Jeffress, Jr.
(D.C. Bar No. 468934)                                 (D.C. Bar No. 041152)
James L. Brochin                                      Alex J. Bourelly
(D.C. Bar No. 455456)                                 (D.C. Bar No. 441422)
Paul, Weiss, Rifkind, Wharton                         Baker Botts LLP
  & Garrison LLP                                      1299 Pennsylvania Avenue, NW
1285 Avenue of the Americas                           Washington, DC  20004
New York, NY  10019-6064

---

[2] Even if the Court generally referred to these letters during the sentencing hearing, any interest by the press or the public in the contents of these letters would be minimal, if not non-existent. The Court's description from the bench of the letters would provide "most, if not all, of the value of the letters to the public interest." *Kushner*, 349 F. Supp. 2d at 908; *see also Lawrence*, 167 F. Supp. 2d at 509 (contents of letters were of "no value to the media and the public in their monitoring of this Court's functions").

- 9 -

/s/ John D. Cline
John D. Cline
(D.C. Bar No. 403824)
K.C. Maxwell
(*pro hac vice*)
Jones Day
555 California Street, 26th Floor
San Francisco, CA  94104