THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CR. NO. 05-394 (RBW) |
| v. ) | |
| ) | |
| I. LEWIS LIBBY, ) | |
|     also known as Scooter Libby ) | |

**GOVERNMENT'S POSITION STATEMENT
CONCERNING SUPERVISED RELEASE**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, Special Counsel, respectfully submits this Position Statement Concerning Supervised Release in response to the Court's order of July 3, 2007.

**Introduction**

On June 14, 2007, this Court entered the sentences against defendant I. LEWIS LIBBY on each of four felony counts (Counts One, Two, Four, and Five of the indictment). The Court sentenced the defendant to imprisonment on each of the counts, and the total sentence of imprisonment, 30 months, was at the low-end of the applicable Sentencing Guidelines range. The sentences imposed on each count were as follows: 30 months on Count One (obstruction of justice); 6 months on Count Two (false statements to the Federal Bureau of Investigation); and 24 months on Counts Four and Five (perjury before a federal grand jury). Judgment & Commitment Order ("J&C") at 3. In addition, the Court sentenced the defendant to two years of supervised release on each count, to run concurrent. J&C at 4. The conditions of supervised release included the standard conditions of supervision, as well as some special conditions, including 400 hours of community service. J&C at 5. The Court also imposed a $250,000 fine and a $400 special assessment ($100 per count of conviction), both of which the defendant paid on July 5, 2007. J&C at 7.

On July 2, 2007, the President of the United States commuted the defendant's sentences of imprisonment. In the Proclamation effectuating the commutation, the President stated that he does "hereby commute the prison terms imposed by the sentence upon the said Lewis Libby to expire immediately, leaving intact and in effect the two-year term of supervised release, with all its conditions, and all other components of the sentence."

The Court has requested that the parties explain their respective positions on the application of the two-year term of supervised release. The Court specifically noted that § 3583(a) contemplates supervised release "<u>after imprisonment</u>," R. 383 at 2 (emphasis in original). As discussed more fully below, it is the government's position that the supervised release term remains operative, and that, by effect of the commutation, the supervised release term began on July 2, 2007.[1]

Before setting forth the specific grounds for its position, the government acknowledges the absence of case law authority that directly addresses whether a term of supervised release may follow a commutation of a term of imprisonment where no actual imprisonment has been served. The government is aware of only one other instance since the passage of the Sentencing Reform Act of 1984 of a 'prospective' commutation, that is, where no imprisonment term was actually served, and no case law analysis arose from that other commutation.[2]

---

[1] The government consulted with the Office of the Pardon Attorney in formulating the position that the term of supervised release remains in effect. As the Court is aware, on July 6, 2007, the White House distributed a letter to the parties and the Court setting forth its views. *See* Exhibit 1.

[2] The other instance was *United States v. Arnold Prosperi*, Case No. 96-CR-08086, in the Southern District of Florida. In that case, the defendant had been on bond pending his appeal and the government's cross-appeal. After certain counts of conviction were re-instated by the court of appeals, the district court set a re-sentencing date in March 2001 and ordered the defendant to report to the Bureau of Prisons (BOP) whenever bed space became available. *See* 96-CR-08086, R. 241 at 1. On January 20, 2001, before the defendant reported to the BOP and before re-sentencing, the

**Analysis**

As detailed below, it is the government's position that the two-year term of supervised release remains in effect because, first, the sentence when imposed was valid in all regards and the commutation did not purport to alter any other component of the sentencing other than imprisonment. Second, even if actual service of some term of imprisonment were required for the supervised release to remain in effect, it is the policy of the Bureau of Prisons (BOP) to grant defendants one day of credit for the day during which defendants are processed by the Marshal's Service (even if the person is released on bail). Accordingly, for purposes of calculating the amount of time defendant Libby would have served in prison, the defendant, like all others processed and released on bail, would in fact be credited with one day of imprisonment, and thus supervised release may follow. And, finally, in any event, Supreme Court precedent holds that the presidential power of commutation includes the power to alter the sentence even to a sentence not authorized by statute, so long as the alteration itself does not violate the Constitution.

---

sentence was commuted as follows: any sentence of imprisonment to be imposed that was in excess of 36 months was commuted, and that any period of confinement imposed was to be served in home confinement. *See* 96-CR-08086, R. 253 at 1. The docket sheet for that case does not reflect an analysis of whether supervised release could apply where there was no actual service of imprisonment. Indeed, the 36 months of home confinement became a special condition of supervised release, *see* 96-CR-08086, R. 253 at 4, and thus it appears that the parties and the district court applied the term of supervised release despite the absence of an imprisonment sentence.

**I.    The Term of Supervised Release Was Lawful When Imposed, Remains Lawful, and There Is No Authority to Vacate Supervised Release.**

Supervised release is governed by Title 18, United States Code, Section 3583. Section 3583(a) states, in pertinent part:

> The court, in imposing a sentence to a term of imprisonment for a felony . . ., may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . .

18 U.S.C. § 3583(a).

In this case, the term of supervised release that the Court imposed was lawful when imposed, and nothing in the Proclamation altered its application to the defendant. That is, at sentencing, the Court imposed terms of imprisonment on the felony counts of conviction, and was thus authorized by § 3583(a) to "include as a part of the sentence" a period of supervised release, which would begin "after imprisonment." Upon the issuance of the Proclamation, the "prison terms" "expire[d] immediately," to use the words of the Proclamation. The Proclamation specifically left "intact and in effect" the two-year term of supervised release. Thus, the term of supervised release was lawfully included as part of the sentence when this Court imposed it, and the Proclamation's text expresses the intent to leave the supervised release intact.

The continued applicability of the supervised release term is supported by the limitations on federal courts' authority to alter or amend a federal criminal sentence. "Once a court sentences a criminal defendant, it has jurisdiction to continue hearing related issues only when authorized by statute or rule." *United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003) (citing *Carlisle v. United States*, 517 U.S. 416 (1996) (limits on motions for judgment of acquittal)). That jurisdictional limit applies to challenges to the lawfulness of supervised release conditions, *United States v. Gross*, 307

F.3d 1043, 1044 (9th Cir. 2002);[3] *United States v. Hatten*, 167 F.3d 884, 886 (5th Cir. 1999); *United States v. Lussier*, 104 F.3d 32, 34 (2d Cir. 1997), and by analogy, applies to the lawfulness of supervised release itself. Section 3583(e) sets forth the circumstances permitting termination, extension, modification, or revocation of supervised release, and not suprisingly, § 3583(e) contains no provision for vacating a lawfully-imposed term of supervised release because a Presidential commutation deemed the sentence of imprisonment to be "expire[d]."

It is true that the Presidential commutation, grounded in the exercise of constitutional authority in Article II, obviates the need for a statute or a rule to effectuate the commutation itself. However, the commutation did not purport to alter any other component of the sentence, and thus, in order to vacate the term of supervised release, there would have to be some other source of authority to do so. Because none exists, the term of supervised release remains in effect, and started on July 2, 2007, when the commutation provided that the sentences of imprisonment would "expire immediately."[4]

---

[3] In *Gross*, the court of appeals explained:

> Congress, by enacting the Sentencing Reform Act of 1984, limited the manner in which a defendant may challenge the legality of a supervised release condition to: (1) direct appeal, (2) § 2255 habeas corpus relief, and (3) within seven days of the district court's decision, Rule 35(c) [now Rule 35(a)] motion. It would frustrate Congress's intent if this court were to interpret § 3583(e)(2) to authorize a district court to modify or rescind an allegedly illegal condition.

307 F.3d at 1044.

[4] There has not otherwise been a stay of the sentence. *See* Fed. R. Crim. P. 38.

**II.    The Defendant's Processing by the Marshal's Service Qualifies as One Day in Official Detention for Purposes of Section 3585(b).**

Alternatively, if it is required that the term of supervised release must follow the actual service of a term of imprisonment, then the Court should hold that the defendant's processing by the United States Marshal's Service constituted one day of "official detention." *See* 18 U.S.C. § 3585(b). That interpretation applies the BOP's general policy, which is routinely applied to federal prisoners.

Section 3585 is entitled, "Calculation of a term of imprisonment." In pertinent part, § 3585(b) provides that "[a] defendant shall be given credit toward the service of a *term of imprisonment* for any time he has spent in *official detention* prior to the date the sentence commences – (1) as a result of the offense for which the sentence was imposed . . . ." § 3585(b) (emphases added). Thus, the statute governing the calculation of terms of imprisonment equates "official detention" with "term of imprisonment." The BOP has interpreted "official detention" to include the day that the defendant is required to report to the Marshal's Service for processing: "If the defendant is released on bail or on 'own personal recognizance' then that day [for processing] is treated as a day in official detention and shall be awarded as a day of prior custody time credit." Sentencing Computation Manual at Page 1-15A (1999) (the Manual's cover pages and a relevant excerpt is attached as Exhibit 2).[5] In this case, the defendant was released on bail, and pursuant to current BOP policy, the day during which he was processed by the Marshal's Service thus qualifies as service of one day of imprisonment. Accordingly, to the extent that it is necessary that the term

---

[5]The entire Manual may be accessed at www.bop.gov/policy/progstat/5880_028.pdf (visited July 5, 2007). An official of the Bureau of Prisons has advised the government that the credit for the day of Marshal's Service processing is routinely granted to all federal prisoners pursuant to the terms of the Manual.

of supervised release follow the actual service of imprisonment, that requirement has been satisfied here.[6]

### III. Even If Not Authorized by Statute, the Commutation Power Authorizes the President to Impose a Condition That Is Not Explicitly Authorized by Statute.

As a final alternative basis for upholding the term of supervised release, even if the Court were to hold that supervised release may apply only if it follows a term of imprisonment and that the Marshal's processing did not qualify as imprisonment, the Court should uphold the term of supervised release because the plenary power to commute authorizes the President to impose a condition to commutation that is not explicitly authorized by statute. *Schick v. Reed*, 419 U.S. 256, 264-66 (1974) (citing *Ex Parte Wells*, 59 U.S. 307, 15 L.Ed. 421 (1856)); *see also Hoffa v. Saxbe*, 378 F. Supp. 1221, 1232-33 (D.D.C. 1974) (refusing to lift condition of commutation that prohibited Jimmy Hoffa from participating in the management of union activities).

In *Schick*, the defendant had been convicted and sentenced to death under the Uniform Code of Military Justice. *Id.* at 257. In 1960, the death sentence was commuted to life imprisonment, but the commutation was explicitly conditioned on the defendant's ineligibility for parole. *Id.* at 258. However, the then-existing sentencing statutes did not provide for a sentence of life imprisonment without eligibility for parole, and the defendant brought suit against the United States Board of Parole, seeking to compel the Board to consider him for parole. *Id.* at 258.

---

[6]If the Court were to rely on this basis for upholding the term of supervised release, then supervised release began running on the date of commutation, July 2, 2007, because the defendant would already have "served" the one day of imprisonment when he was processed by the Marshal's Service upon his indictment in 2005.

The Supreme Court rejected the defendant's argument that the President had unlawfully imposed a condition to the commutation that was not authorized by statute, concluding that the only limitation on the type of condition that could be imposed was the Constitution itself:

> The plain purpose of the broad power conferred by § 2, cl. 1, was to allow plenary authority in the President to 'forgive' the convicted person in part or entirely, to reduce a penalty in terms of a specified number of years, or *to alter it with conditions which are in themselves constitutionally unobjectionable.*

*Id.* at 266 (emphasis added). In concluding that the conditions of a commutation were subject only to constitutional limits, the Court relied on historical practice: "we note that Presidents throughout our history as a Nation have exercised the power to pardon or commute sentences upon conditions that are not specifically authorized by statute. Such conditions have generally gone unchallenged and, as in the *Wells* case, attacks have been firmly rejected by the courts." *Id.*[7] In addition to the historical practice, the Court also reasoned that "[i]t would be a curious logic to allow a convicted person who petitions for mercy to retain the full benefit of a lesser punishment with conditions, yet escape burdens readily assumed in accepting the commutation which he sought." *Id.* at 267.

Although defendant Libby apparently did not submit a "petition[] for mercy," the holding of *Schick* should still apply here: the defendant has readily accepted the "full benefit of a lesser punishment," and thus it is appropriate that he still meet the much lesser burdens of the sentence he now faces. *Id.* at 267. Based on *Schick* and historical practice, even if the supervised release term

---

[7] The defendant in *Wells*, like the defendant in *Schick*, had been sentenced to death but was then pardoned on the condition that he be imprisoned for life. As in *Schick*, the Supreme Court rejected the defendant's challenge that, because the condition was not authorized by statute, the President could not condition the pardon on the substituted sentence of life imprisonment. 59 U.S. at 314-15.

is no longer a statutorily authorized component of the sentence, the commutation power authorized the President to condition the commutation on the continued effect of the term of supervised release.[8]

## Conclusion

For the reasons discussed above, it is the government's position that the defendant is subject to the two-year term of supervised release, the supervised release term began on July 2, 2007, and the defendant must report to the Probation Office immediately.

                                                    Respectfully submitted,

                                                    /s/
                                         PATRICK J. FITZGERALD
                                         Special Counsel
                                         219 South Dearborn, 5th Floor
                                         Chicago, Illinois 60604
                                         (312) 353-5300

Dated: July 9, 2007

---

[8] If the Court were to uphold the supervised release on this basis, then the supervised release began on July 2, 2007, the date of the commutation, because the Proclamation provided that the sentences of imprisonment expired "immediately."

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 9th day of July 2007, I caused true and correct copies of the foregoing to be served on the following parties by electronic mail:

William Jeffress, Esq.
Baker Botts
The Warner
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004-2400
Facsimile: 202-585-1087

Theodore V. Wells, Esq.
Paul Weiss
1285 Avenue of the Americas
New York, NY 10019-6064
Facsimile: 212-373-2217

John D. Cline, Esq.
Jones Day
555 California Street
San Francisco, CA 94104
Facsimile: 415-875-5700

Lawrence S. Robbins
Robb1ns, Russell, Englert,
Orseck & Untereiner LLP
1801 K Street, NW
Suite 411
Washington, DC 20006-1322

                                  Patrick J. Fitzgerald
                                  Special Counsel
                                  U.S. Department of Justice
                                  1400 New York Ave., N.W.
                                  Washington, D.C.  20530
                                  202-514-1187

By: _____/s/_____
       Kathleen M. Kedian
       Deputy Special Counsel