UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

JUL 1 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,       )
                                )
                                )
                                )
v.                              )   Criminal No. 05-394 (RBW)
                                )
I. LEWIS LIBBY,                 )
                                )
        Defendant.              )
_____)

## MEMORANDUM OPINION

On July 3, 2007, the Court directed the parties to submit their positions regarding an apparent tension between the President's July 2, 2007 Grant of Executive Clemency—which commuted the defendant's thirty-month prison sentence but left intact, inter alia, his two-year term of supervised release[1]—and the plain meaning of 18 U.S.C. § 3583, which "does not appear

---

[1] In commuting the defendant's thirty-month term of incarceration, the President stated that the sentence imposed by this Court was "excessive" and that two years of supervised release and a $250,000 fine alone are a "harsh punishment" for an individual convicted on multiple counts of perjury, obstruction of justice, and making false statements to federal investigators. July 2, 2007 Statement by the President on Executive Clemency for Lewis Libby at 1. Although it is certainly the President's prerogative to justify the exercise of his constitutional commutation power in whatever manner he chooses (or even to decline to provide a reason for his actions altogether), the Court notes that the term of incarceration imposed in this case was determined after a careful consideration of each of the requisite statutory factors, see 18 U.S.C. § 3553 (2000), and was consistent with the bottom end of the applicable sentencing range as properly calculated under the United States Sentencing Guidelines. See Rita v. United States, ___ U.S. ___, ___, 2007 WL 1772146, at *14 (June 21, 2007) (finding that a sentence of thirty-three months' incarceration was reasonable where the Court "applied, and did not depart from, the relevant sentencing [g]uideline," and where the defendant "ha[d] no countable prior offenses" and had been convicted of perjury, obstruction of justice, and false statements); see also id. at *3 (describing the application of the Sentencing Guidelines' cross-referencing provisions for perjury or obstruction of justice whereby "the judge, for calculation purposes, should take as a base offense level[] a level that is '6 levels below the offense level for the underlying offense[,]' [which is] the offense that the perjury [or obstruction of justice] may have helped someone commit") (quoting USSG § 2X3.1 (2006)) (emphasis omitted); USSG § 2J1.2(c) (2006) (directing the application of § 2X3.1 in the calculation of the applicable sentencing range "[i]f the offense involved obstructing the investigation or prosecution of a criminal offense"); cf. Brief of the United States in Rita v. United States, 2007 WL 186288, at *17 (U.S., Jan. 22, 2007) (arguing that the thirty-three month term of imprisonment for the defendant in that case was reasonable and observing that "Congress . . . required that, in formulating the Guidelines, the [United States Sentencing Commission] consider the appropriate role and weight, in light of Congress's policy choices, of various factors relating to the nature and circumstances of the offense and the history and characteristics of the defendant")

(continued...)

1

to contemplate a situation in which a defendant may be placed under supervised release without first completing a term of incarceration."[2] Order at 2; see 18 U.S.C. § 3583(a) (2000) (stating that a defendant "[may] be placed on a term of supervised release after imprisonment") (emphasis added); see also 18 U.S.C. § 3624(e) (2000) (stating that "[a] term of supervised release commences on the day [a] person is released from imprisonment"). The parties have done so.[3] See Government's Position Statement Concerning Supervised Release ("Govt.'s Resp."); Response of I. Lewis Libby to the Court's Order of July 3, 2007 ("Def.'s Resp."). In addition, the Office of Counsel to the President has provided its own interpretation of the breadth of the President's constitutional power of commutation. See July 6, 2007 Letter from Fred Fielding to Patrick Fitzgerald and William Jeffress ("Letter"). For the reasons set forth below,

---

[1](...continued)
(citing 28 U.S.C. § 994 (2000)) (other citations omitted). Indeed, only recently the President's Attorney General called for the passage of legislation to "restore the binding nature of the sentencing guidelines so that the bottom of the recommended sentencing range would be a minimum for judges, not merely a suggestion," June 1, 2007 Prepared Remarks of Attorney General Alberto R. Gonzales, available at http://www.usdoj.gov/ag/speeches/2007/ag_speech_070601.html, a stance that is fully consonant with the policies of this Administration as a whole. In light of these considerations, and given the indisputable importance of "provid[ing] certainty and fairness in sentencing . . . [and] avoid[ing] unwarranted sentencing disparities," Rita, ___ U.S. at ___, 2007 WL 1772146, at *7 (quoting 28 U.S.C. § 991(b) (2000) (internal quotation marks omitted), it is fair to say that the Court is somewhat perplexed as to how its sentence could accurately be characterized as "excessive."

[2] As discussed further below, a sentence of supervised release is related to, but wholly distinct from, a sentence of probation. Compare 18 U.S.C. § 3561 et seq. (2000) (probation) with 18 U.S.C. § 3583 (supervised release). Most notably, "[f]ederal supervised release, in contrast to probation, is meted out in addition to, not in lieu of, incarceration." Samson v. California, ___ U.S. ___, ___, 126 S.Ct. 2193, 2198 (2006) (internal quotation marks, ellipsis, and citation omitted) (emphasis added). As a result, like parole (which preceded it as a post-confinement term of supervision in federal sentencing), supervised release "is more akin to imprisonment than [is] probation." Id.; see United States v. Balon, 384 F.3d 38, 44 (2d Cir. 2004) (stating that "on the continuum of supervised release, parole, and probation, restrictions imposed by supervised release are the most severe") (internal quotation marks and citation omitted).

[3] The government and the defendant concur that "[a]s a constitutional matter, . . . the President had the power to commute a portion of Mr. Libby's sentence on the terms prescribed in the . . . Grant of Executive Clemency, notwithstanding any statutory provision that might otherwise conflict with the President's action." Def.'s Resp. at 1; see also Govt.'s Resp. at 8-9 (positing that "even if the supervised release term is no longer a statutorily authorized component of the sentence, the commutation power authorized the President to condition the commutation on the continued effect of the term of supervised release").

the Court agrees with the parties and the White House that the executive clemency power, as interpreted in Schick v. Reed, permits the President to disregard established statutory requirements in commuting the sentence of a criminal defendant, so long as the conditions placed upon the commutation "do[] not otherwise offend the Constitution."[4]  Schick v. Reed, 419 U.S. 256, 266 (1974).

In Schick, the Supreme Court confronted the question of whether the President was empowered pursuant to the authority granted to him in Article II, Section 2 of the United States Constitution to commute a sentence of death to a sentence of life imprisonment without the possibility of parole, despite the fact that the latter sentence "[was] not specifically provided for

---

[4] The government also contends, for two reasons, that "the two-year term of supervised release remains in effect" as a matter of pure statutory interpretation.  Govt.'s Resp. at 3; see id. at 4-7.  The Court is unpersuaded by the government's statutory arguments.  First, the government asserts that the commutation of the defendant's prison term does not conflict with § 3583 because "the term of supervised release was lawfully included as part of the sentence when this Court imposed it, and nothing in [the President's Grant of Executive Clemency] altered its application to the defendant."  Id. at 4; see Letter at 1 (arguing that § 3583 "addresses only the [C]ourt's options when it issues or imposes a sentence") (internal quotation marks omitted).  It is clear, however, that this assertion begs the question by assuming, as a statutory matter, that supervised release may be decoupled from imprisonment at some time subsequent to the imposition of the sentence.  Such an assumption is not, and cannot be, supported by any reference to statutory text.  As the Supreme Court has observed, "[s]upervised release has no statutory function until confinement ends," United States v. Johnson, 529 U.S. 53, 59 (2000) (citation omitted), and thus the imposition of supervised release in the absence of prior confinement plainly does not comport with the statutory scheme.  See id. at 58 (stating that § 3583(a) "clear[ly] and precise[ly] [directs that] . . . [supervised] [r]elease takes place on the day the prisoner in fact is freed from confinement"); see also 18 U.S.C. § 3624(e) (stating that "[a] term of supervised release commences on the day [a] person is released from imprisonment").  Second, the government argues that the defendant has already been imprisoned for the purposes of §§ 3583 and 3624 because "the defendant's processing by the United States Marshal's Service constituted one day of 'official detention.'"  Govt.'s Resp. at 6; see also 18 U.S.C. § 3585(b) (2000) (stating that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed").  However, such an exacting construction of the relevant statutes gives untenably short shrift to the evident intentions of Congress when it "eliminated most forms of parole in favor of supervised release" in the Sentencing Reform Act of 1984, § 212(a)(2), Pub. L. No. 98-143, 98 Stat. 1999.  Johnson v. United States, 529 U.S. 694, 696-97 (2000) (citation omitted); see also id. at 708-09 (stating that "[t]he congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty") (citation omitted); Johnson, 529 U.S. at 58 (stating that "Congress intended supervised release to assist individuals in their transition [from imprisonment] to community life").  Surely Congress did not contemplate that it would be necessary or appropriate to provide supervised release to an individual who, like the defendant, has spent so limited a time in the company of the United States Marshal's Service.  It is difficult to imagine anyone who would be in need of assistance to "transition [back] to community life" after spending several hours undergoing routine processing.  Id.  Accordingly, the Court does not accept the government's arguments in this regard.

by statute."[5] Id. at 264; see generally id. at 261-67.  In affirming the validity of the commutation, the Schick Court examined the historical underpinnings of the presidential pardon power and concluded that "[such] power flows from the Constitution alone, not from any legislative enactments, and that it cannot be modified, abridged, or diminished by the Congress."[6] Id. at 266.  The Supreme Court thus held that the President possessed "plenary authority [under Article II, § 2, cl. 1] . . . to 'forgive' the convicted person in part or entirely, to reduce a penalty in terms of a specified number of years, or to alter it with conditions which are in themselves constitutionally unobjectionable," id., and that this "broad power" permits the President to "attach[] . . . any condition [to a commutation] which does not otherwise offend the Constitution," id. (emphasis added); see also id. at 267 (holding that the power to commute sentences "is an enumerated power of the Constitution and that its limitations, if any, must be found in the Constitution itself") (emphasis added).  The Supreme Court did not attempt to describe the contours of constitutional objectionability or to determine the circumstances under which a commuted sentence might raise legitimate constitutional questions in Schick, nor has it done so since.  See generally id.; cf. Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 292 (1998) (Stevens, J., concurring in part and dissenting in part) (suggesting that "[the] use [of] race, religion, or political affiliation as a standard for granting or denying clemency" would offend the

---

[5] As the Schick Court observed, "[t]he express power of Art. II, [§] 2, cl. 1, from which the [p]residential power to commute criminal sentences derives, is to 'grant Reprieves and Pardons . . . except in Cases of Impeachment.'"  Schick, 419 U.S. at 260 (quoting U.S. Const. art. II, § 2, cl. 1) (ellipsis in original).

[6] The Court founded this conclusion in large part on "the English Crown authority to alter and reduce punishments as it existed in 1787," an authority that "was centuries old" and that "reveal[ed] a gradual contraction to avoid its abuse and misuse." Id. (footnote omitted).  The dissent in Schick, however, takes issue with the relevance of the majority's historical analysis, contending that "the antecedent English pardon power" does not "establish[] an [e]xecutive right to define extra-legislative punishments," id. at 276 (Marshall, J., dissenting), and stating that "[t]he great discretion available to the King to dispense mercy did not incorporate into the pardoning power the royal right to invade the legislative province of assessing punishments," id. at 278.

Equal Protection Clause). Rather, it simply stated that "[t]he no-parole condition attached to the commutation of [the petitioner's] death sentence . . . [did] not offend the Constitution" because it "is similar to sanctions imposed by legislatures such as mandatory minimum sentences or statutes otherwise precluding parole." Schick, 419 U.S. at 267 (footnote omitted).

  Writing in dissent, Justice Marshall argued that "the Chief Executive is not imbued with the constitutional power to create unauthorized punishments" when commuting a sentence pursuant to Article II. Id. at 274 (Marshall, J., dissenting). Specifically, Justice Marshall contended that "[t]he congressionally prescribed limits of punishment mark the boundaries within which the [President] must exercise his authority," and that while "the [President] may abstain from enforcing a judgment by judicial authorities" through the exercise of executive clemency, "he may not, under the aegis of that power, engage in lawmaking or adjudication." Id.; see also id. at 279 (asserting that "where the Executive elects to exercise the [p]residential power for commutation[,] the clear import of the Constitution mandates that the lesser punishment imposed be sanctioned by the legislature"). Thus, in the view of the dissent, "[t]he separation of powers doctrine does not vest the Chief Executive with an unrestrained clemency power, but views his functions as distinct from the other coordinate branches." Id. at 276 (citation omitted).

  This Court is, of course, bound by the holding of the Schick majority. Accordingly, the only appropriate inquiry is whether the decision of the President to require the defendant to serve a pre-imposed term of supervised release despite the commutation of the prerequisite sentence of imprisonment somehow "offend[s] the Constitution." Id. at 266. The Court concludes, with great reservation, that it does not.

As noted, the <u>Schick</u> Court does not provide any guidance as to when, or even whether, particular conditions imposed by the President in connection with the commutation of the sentence of a criminal defendant might be constitutionally problematic. Although the language of <u>Schick</u> is unmistakably broad, its conclusion that presidential commutations may include all "conditions which do not in themselves offend the Constitution," <u>id.</u> at 264, is not elaborated upon in any great detail and allows for little purchase when evaluating the propriety of a conditional commutation in factual circumstances that are not identical for all intents and purposes to those present in <u>Schick</u>.[7] In addition, this Court shares the concerns of the dissent in <u>Schick</u> that certain conditions of commutation could implicate the separation of powers doctrine by allowing the President to "engage in lawmaking or adjudication," <u>id.</u> at 274—an observation which does not, on its face, conflict with the admonition of the <u>Schick</u> majority that any limitations on the presidential pardon power "must be found in the Constitution itself," <u>id.</u> at 267. Indeed, because the separation of powers doctrine is a fundamental pillar of the constitutional structure "that underlies our tripartite system of Government," <u>Mistretta v. United States</u>, 488 U.S. 361, 371 (1989), it is certainly conceivable that the President, through the exercise of his commutation power, could encroach upon the authority or functions of one of the coordinate branches in a manner that would impermissibly "offend the Constitution," <u>Schick</u>, 419 U.S. at 266; <u>see</u> <u>Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise</u>, 501 U.S. 252,

---

[7] The <u>Schick</u> Court concluded that the commutation of the defendant's sentence in that case to a life sentence without the possibility of parole did not offend the Constitution because, although no applicable federal statute existed that allowed for a sentence of life without parole, such a sentence was "similar to sanctions imposed by legislatures such as mandatory minimum sentences or statutes otherwise precluding parole." <u>Schick</u>, 419 U.S. at 267 (footnote omitted). Here, however, it is not merely that Congress has not spoken as to whether supervised release can be imposed without an antecedent period of incarceration. Rather, the legislature has "clear[ly] and precise[ly]" directed, in an express and affirmative fashion, that supervised release can only occur after a criminal offender has served a term of imprisonment. <u>Johnson</u>, 529 U.S. at 58; <u>see also</u> 18 U.S.C. §§ 3583(a), 3624(e).

273 (1991) (stating that "the system of separated powers and checks and balances established in the Constitution was regarded by the Framers as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other") (internal quotation marks and citations omitted); see also Clinton v. City of New York, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring) (observing that "[s]eparation of powers was designed to implement [the] fundamental insight . . . [that] [c]oncentration of power in the hands of a single [governmental] branch is a threat to liberty"). And it could readily be argued that the President's decision to commute the prison sentence of a criminal defendant on the condition that he continue to serve a term of supervised release for which imprisonment is deemed a necessary statutory predicate constitutes just such an encroachment, disregarding as it does the considered judgment of Congress in exercising "the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Solem v. Helm, 463 U.S. 277, 290 (1983); see Loving v. United States, 517 U.S. 748, 757 (1996) (stating that "it remains a basic principle of our constitutional scheme that one branch of the [g]overnment may not intrude upon the central prerogatives of another") (citations omitted). "[T]he power of punishment is vested in the legislative, not in the judicial [or executive] department[s]," and "[i]t is the legislature, not the Court [or the President], which is to define a crime and ordain its punishment." Dowling v. United States, 473 U.S. 207, 214 (1985) (internal quotation marks and citation omitted). In enacting §§ 3583 and 3624 and requiring that criminal offenders serve a term of supervised release only after they have been incarcerated, Congress specifically and expressly limited the applicability of a particular sanction to a particular situation, as is its exclusive prerogative under the Constitution. See United States v. Johnson, 529 U.S. 53, 59 (2000) (stating that

"[s]upervised release has no statutory function until confinement ends") (citation omitted). Therefore, by commuting the defendant's prison sentence and leaving his term of supervised release in place, the President has effectively rewritten the statutory scheme on an ad hoc basis to make the punishment created by Congress applicable to a situation that Congress clearly did not intend. While the President is undeniably empowered through the Constitution to mitigate in length or severity, or annul altogether, a punishment determined by Congress and imposed by the Court, it is far more unsettled, even given the holding in Schick, whether the President may transmute a duly crafted form of punishment into one that is expressly proscribed by statute, such as a requirement that a criminal offender serve a term of supervised release without prior imprisonment.[8] Nevertheless, the Court is mindful that "pardon and commutation decisions have not traditionally been the business of courts . . . [and] are rarely, if ever, appropriate subjects for judicial review." Woodard, 523 U.S. at 276 (internal quotation marks and citation omitted); see also United States v. Pollard, 416 F.3d 48, 57 (D.C. Cir. 2005) (stating that "[c]lemency . . . is a matter of grace, over which courts have no review") (internal quotation marks and citation omitted). Thus, while the Court believes that the facts of this case are at least somewhat

---

[8] As noted above, the appropriate form of community supervision for criminal offenders who have not first been incarcerated is probation (to which the defendant in this case has not, of course, been sentenced), not supervised release. See 18 U.S.C. § 3561(a)(3) (providing that "[a] defendant who has been found guilty of an offense may be sentenced to a term of probation unless . . . the defendant is sentenced at the same time to a term of imprisonment for the same [offense] or a different offense that is not a petty offense"). Were the President to attempt to substitute a term of probation for the defendant's term of supervised release, he would, in effect, be resentencing the defendant, and such an action would almost surely transgress into an area of authority that is the "central prerogative[]" of the judicial branch. Loving, 517 U.S. at 757 (citations omitted); see Plaut v. Spendthrift Farms, Inc., 514 U.S. 211, 218 (1995) (stating that Article III of the Constitution "gives the [f]ederal [j]udiciary the power, not merely to rule on cases, but to decide them, subject to review only by superior courts in the Article III hierarchy," and "with an understanding . . . that a judgment conclusively resolves the case because a judicial power is one to render dispositive judgments") (citing Marbury v. Madison, 1 Cranch 137, 2 L.Ed. 60 (1803)) (internal quotation marks and other citation omitted) (emphasis in original). The Court would therefore have serious questions about the propriety of the President's exercise of his clemency power in that way. See Schick, 419 U.S. at 264 (stating that "the pardoning power was intended to include the power to commute sentences on conditions which do not in themselves offend the Constitution, but which are not specifically provided for by statute").

8

distinguishable from <u>Schick</u>, <u>see</u> <u>supra</u> n.7, and despite what this Court perceives to be a greater intrusion by the President into the legislative arena in this case than occurred in <u>Schick</u>, it is compelled, in the absence of more specific guidance from the Supreme Court that would merit a different result, to conclude that the sweeping and expansive language of the <u>Schick</u> majority sanctions what the President has done here. For this reason, the Court cannot say that the conditions of commutation imposed by the President in this instance are constitutionally objectionable.

Having concluded that the commutation of the defendant's prison sentence did not ineluctably extinguish his term of supervised release despite the plain language of §§ 3583 and 3624, the Court holds that these statutes, when applied to the unique circumstances of this case, mandate that the defendant begin his period of supervision immediately. Section 3624 provides that "[a] prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer." 18 U.S.C. § 3624(e). It further states that "the term of supervised release commences on the day the person is released from imprisonment." In this situation, it is the President, rather than the Bureau of Prisons, who is "releas[ing]" the defendant to a probation officer to begin his term of supervision. <u>Id.</u> Furthermore, the President's July 2, 2007 Grant of Executive Clemency declares that the defendant's sentence of incarceration "expire[s] immediately." Grant of Executive Clemency at 1. It is therefore reasonable, under § 3624(e), that the defendant be required to report to the Probation Office with all requisite haste.[9]

---

[9] Should the defendant fail to comply with any condition of his supervised release, an eventuality that this Court has no reason to believe will occur, the term of supervision may be revoked and the defendant may be required "to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision." 18 U.S.C. §
(continued...)

**SO ORDERED** this 12th day of July, 2007.[10]

/s/ Reggie B. Walton
REGGIE B. WALTON
United States District Judge

---

[9](...continued)
3583(e)(3). Moreover, the Court will consider the defendant's acquiescence to the President's preservation of his supervised release status as a waiver of any challenge to the legitimacy of that portion of his sentence remaining in effect despite the commutation of his sentence of incarcaration. See Def.'s Resp. at 2 (stating that "Mr. Libby does not take issue with the legal analysis contained in the July 6, 2007 letter from Fred F. Fielding, Counsel to the President").

[10] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.